# EXHIBIT A
# PART 2 OF 12

## CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. (collectively "Versata") respectfully file this First Amended Complaint for breach of contract and injunctive relief against Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively, "Ameriprise").

## DISCOVERY CONTROL PLAN

1.     Pursuant to Texas Rule of Civil Procedure 190.3, Versata intends to conduct discovery under Level 2.

1

## PARTIES

2.    Plaintiff Versata Software, Inc., f/k/a Trilogy Software, Inc., is a Delaware corporation with its principal place of business at 401 Congress, Suite 2650, Austin, Texas 78730.

3.    Plaintiff Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc., is a Delaware corporation with its principal place of business at 401 Congress, Suite 2650, Austin, Texas 78730.

4.    Defendant Ameriprise Financial, Inc. is a Delaware corporation with its principal place of business at 1099 Ameriprise Financial Center, Minneapolis, MN 55474.

5.    Defendant Ameriprise Financial, Inc. may be served with process through its President, William Frederick Truscott, 707 2nd Ave. South, Minneapolis, MN 55474.

6.    Defendant Ameriprise Financial Services, Inc. is a Delaware corporation with its principal place of business at 707 2nd Ave. South, Minneapolis, MN 55474.

7.    Defendant Ameriprise Financial Services, Inc. may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

8.    Defendant American Enterprise Investment Services, Inc. is a Minnesota corporation with its principal place of business at 200 Ameriprise Financial Center, Minneapolis, Minnesota 55474.

9.    Defendant American Enterprise Investment Services, Inc. may be served with process through its President, John Iachello, 200 Ameriprise Financial Center, Minneapolis, Minnesota 55474.

## JURISDICTION AND VENUE

10.   This Court has general jurisdiction over Defendants because they have continuous and systematic contacts with Texas.   Among other things, Defendants have property and employees throughout Texas; Defendants handle millions of dollars in financial transactions each year in Texas; and Defendants regularly conduct business throughout the state.

11.   This Court has specific jurisdiction over Defendants because the contract at issue was wholly or partially negotiated in Texas; the software at issue was developed in Texas; the parties' relationship centers around Texas; and Defendants have used the software to process compensation paid to Texas.

12.   This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirements of this Court.

### VENUE

13.   In accordance with Section 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County and Versata's principal office is in Travis County.

### FACTS

**A.   Ameriprise's use of Versata's Enterprise Software**

14.   Ameriprise is one of the country's largest financial services companies and has $631 billion in assets under management.

15.   With a network of approximately 10,000 advisors throughout the United States, Ameriprise provides a wide variety of investment, annuity, insurance, banking and other financial products to customers.

16.    The compensation system for Ameriprise advisors is heavily commission-based and involves sophisticated calculations, many of which are updated on a daily basis.

17.    To perform these calculations, Ameriprise uses proprietary enterprise software developed by Versata in Austin, Texas.

18.    Versata owns all title and rights to this software.

**B.    The Master License Agreement**

19.    Versata entered into a Master License Agreement (MLA) dated October 4, 1999 to provide enterprise software to Ameriprise.

20.    Because the specific terms of the MLA are confidential, a copy is not attached to this pleading.

21.    Versata negotiated and signed the MLA in Austin, Texas.

22.    Under the MLA, Versata's software, product documentation, and related materials are strictly confidential (§ 10.2) and the property of Versata (§ 4.9).

23.    Under the MLA, Ameriprise agreed to limit access to the software, product documentation, and related materials to Ameriprise employees and "Permitted Contractors" - i.e., contractors that do not compete with Versata in the development of enterprise compensation or configuration software and that have signed a non-disclosure agreement (§ 4.8).

24.    The MLA strictly prohibits any kind of copying, decompiling, or reverse engineering of Versata's software by Ameriprise or its agents (§ 10.1).

25.    A breach of these confidentiality or anti-decompiling requirements is sufficient grounds for Versata to terminate the MLA and revoke Ameriprise's license to the software (§ 12.2).

4

26.  If Versata terminates the MLA for any breach by Ameriprise, Ameriprise's rights in the software shall cease, Ameriprise must return the software to Versata, and Ameriprise must certify in writing that it has destroyed or returned all copies (§ 12.2).

**C.     Ameriprise's Use of Infosys**

27.  As early as 2007, Ameriprise began using Infosys—an outsourcing services provider based in Bangalore, India—to perform maintenance and customization work on Versata's proprietary software.

28.  Ameriprise gave Infosys's consultants in India access to Versata's confidential information, including Versata's software (both source code and object code), product documentation, and training materials.

29.  Infosys competes with Versata in the development of enterprise compensation and configuration software. In fact Infosys provides this kind of software to numerous customers in the United States and around the world. Therefore Infosys is not a "permitted contractor" as that term is used in the MLA (§ 4.8).

30.  Upon information and belief Infosys ceased being a permitted contractor no later than November of 2009 when Infosys acquired McCamish Systems, a company that develops and sells its own brand of enterprise compensation software, a product that directly competes with Versata's proprietary software.

**D.     Infosys's theft of Versata's proprietary source code at Ameriprise**

31.  Through litigation pending the Western District of Texas Versata learned that Infosys decompiled or copied more than 5,000 Versata source code files while working at Ameriprise, transported those files to India, and stored them on hard drives in Bangalore.

32.  Based on these revelations, it is becoming apparent to Versata that Infosys has incorporated these files into its own software that competes with Versata; used these files to train

5

technical consultants to compete with Versata at rates that are significantly cheaper than Versata's rates; and developed its own enterprise software based on knowledge and understanding gained from these decompiled files.

33.  Furthermore, neither Ameriprise nor Infosys have fully explained to Versata the extent of these activities or their consequences for the security of Versata's software.  In 2010, Infosys claimed that it had decompiled two files and that this behavior was an isolated incident involving low-level employees.  In early 2012, Versata discovered evidence that Infosys may have decompiled up to 25 files.

34.  Then, following significant discovery against Infosys in litigation over these issues, Infosys admitted on October 25, 2012 that it had approximately 5,000 Versata software files on a hard drive in Bangalore, India.

35.  These files appear to be to constitute the key source code for Versata's enterprise software.

36.  Even when Versata believed the problem was relatively limited, Versata had numerous discussions with Ameriprise about the need to stop Infosys from having access to Versata's software.

37.  During these discussions, Ameriprise agreed to remove Infosys from projects that involve Versata software.

38.  However, at the present time Infosys contractors are still performing customization and maintenance work on Versata's software.

39.  This creates a substantial risk that Infosys will steal additional trade secrets from Versata.

40.  In addition, in 2011, Ameriprise began using TCS, another India-based outsourced services provider, to perform maintenance and customization work on Versata's software.

41.   Like Infosys, TCS is not a "Permitted Contractor" under the MLA.

42.   To Versata's knowledge, none of TCS's contractors has signed a non-disclosure agreement that relates to Versata's software, as required by the MLA.

43.   Versata is concerned about the security risk of Ameriprise giving yet another offshore competitor unauthorized access to Versata's source code.

44.   Despite multiple discussions about this issue, Ameriprise has not removed TCS from having access to Versata's software.

45.   Because of these actions, Versata sent a letter to Ameriprise providing the contractually mandated 30 day notice of breach of the MLA on September 17, 2012.

46.   The letter identified multiple breaches of the MLA by Ameriprise related to Infosys's and TCS's unauthorized access to Versata's software, including the fact that neither Infosys nor TCS were permitted contractors under the MLA. Versata further stated that if Ameriprise did not take steps to cure these breaches, the MLA would terminate automatically within thirty days.

47.   Because Ameriprise did not cure these violations, the MLA terminated on October 17, 2012.

48.   Ameriprise has refused to return Versata's software and other confidential information to Versata as required by the MLA.

49.   Today, Ameriprise is using Versata's software and other confidential information without authorization.

## CAUSES OF ACTION

### A.   Breach of Contract

50.   Versata incorporates the foregoing paragraphs as if fully set forth here.

7

51.   Versata and Ameriprise entered into a Master License Agreement effective October 4, 1999.

52.   The MLA prohibits Ameriprise and its agents from decompiling, reverse engineering, or copying Versata's confidential information and prohibits Ameriprise from using third-parties, which are not permitted contractors or third-parties that have not signed non-disclosure agreements.

53.   Ameriprise has breached these provisions of the MLA and consequently Versata terminated the MLA effective October 17, 2012.

54.   The MLA requires Ameriprise to stop using Versata's software and confidential information, to return all of this software and other confidential information to Versata, and to certify that it has destroyed or returned any copies.

55.   Ameriprise has unjustifiably refused to comply with this requirement and therefore is in breach of the MLA.

56.   Ameriprise's breaches—coupled with its continued refusal to stop providing Infosys and TCS with access to Versata's software and other confidential information- create a high risk of irreparable harm to Versata.

**B.      Specific Performance**

57.   Versata incorporates the foregoing paragraphs as if fully set forth here.

58.   The MLA requires Ameriprise to stop using Versata's software and confidential information, to return all of this software and other confidential information to Versata, and to certify that it has destroyed or returned any copies. This obligation survives Versata's rightful termination of the contract.

8

59.  To date Ameriprise has refused to stop using Versata software and confidential information, has refused to return the software and other confidential information to Versata and has not certified that it has destroyed or returned any copies.

60.  Versata would therefore ask the court to order Ameriprise to specifically perform these obligations under the MLA.

**C.**  **Declaratory Judgment**

61.  Versata incorporates the foregoing paragraphs as if fully set forth here.

62.  For the reasons set forth above, Versata seeks a declaration as follows: (a) that TCS and Infosys are not a permitted contractors under the MLA (§ 4.8); (b) that Ameriprise has breached the MLA (§ 12.2) by failing to stop using Versata's software, by failing to return this software and other confidential information to Versata, and by failing to certify that it has destroyed or returned any copies; (c) That Ameriprise has breached the MLA (§10.1) by failing to secure adequate confidentiality agreements from Infosys, TCS, and from their respective employees and contractors.

**D.**  **Attorneys' Fees**

63.  Versata incorporates the foregoing paragraphs as if fully set forth here.

64.  As a result of Ameriprise's wrongful conduct, Versata has been required to retain counsel to prosecute this action. Consequently, in accordance with Sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code, Versata is entitled to recover its costs and reasonable and necessary attorney's fees from Ameriprise.

**E.**  **Conditions**

65.  Versata incorporates the foregoing paragraphs as if fully set forth here.

66.  All conditions precedent have been met or have occurred.

9

## Application for Temporary Injunction

67.   In accordance with Section 65.011 of the Texas Civil Practice and Remedies Code,
Versata is entitled to injunctive relief and requests a temporary injunction from the Court
ordering Ameriprise to cease allowing Infosys and TCS to use Versata's "Software" as that term
is defined in the MLA including any source code, object code, product documentation, or other
materials related to Versata's Software.

68.   Versata is likely to prevail on its claims after a trial on the merits.

69.   Because of the imminent threat posed to Versata's confidential information and
Versata's rights under the MLA Versata will be irreparably harmed and have no adequate
remedy at law if this injunction request is not granted.

70.   Versata is willing to provide security in the amount that this Court deems
appropriate in accordance with Texas Rule of Civil Procedure 684.

## Application for Permanent Injunction

71.   Versata incorporates the foregoing paragraphs as if fully set forth here.

72.   Versata requests a permanent injunction ordering Ameriprise (a) to cease using
Versata's enterprise software and confidential information, including any source code, object
code, product documentation, or other materials related to Versata's enterprise software; and (b)
to return to Versata or destroy all copies of Versata's enterprise software and confidential
information, including any source code, object code, product documentation, or other materials
related to Versata's enterprise software.

## Jury Demand

73.   Plaintiffs hereby demand a trial by jury and have tendered the appropriate fee.

### Requests for Disclosure to Defendants

74.   Pursuant to Texas Rule of Civil Procedure 194, Defendants are requested to disclose within fifty (50) days of service of this request the information and material described in Rule 194.2(a) through (1).

### PRAYER FOR RELIEF

For these reasons, Plaintiffs respectfully request that the Court:

a.   enter judgment in favor of Versata and against Ameriprise on all claims asserted by Versata;

b.   issue a judicial declaration that Ameriprise has breached the MLA.

c.   issue a temporary injunction ordering Ameriprise to cease providing or permitting Infosys and TCS access to Versata's confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software.

d.   issue a permanent injunction ordering Ameriprise (a) to cease using Versata's enterprise software and confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software; and (b) to return to Versata or destroy all copies of Versata's enterprise software and confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software;

e.   award Versata its reasonable and necessary attorney's fees and expenses;

f.   award Versata all costs of court;

g.   award Versata all actual and punitive damages; and

h.   grant all other relief to which Versata may show it is justly entitled.

Date: 05/03/2013                    Respectfully submitted,

                                    AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
                                    P.C.

                                    /s/ Benjamin F. Foster
                                    Demetrios Anaipakos
                                    State Bar No. 00793258
                                    Amir Alavi
                                    State Bar No. 00793239
                                    Steven J. Mitby
                                    State Bar No. 27037123
                                    Benjamin F. Foster
                                    State Bar No. 24080898
                                    1221 McKinney Street, Suite 3460
                                    Houston, Texas 77010
                                    Telephone: (713) 655-1101
                                    Facsimile: (713) 655-0062


                                    MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.


                                    /s/ Benjamin F. Foster
                                    Travis Barton
                                    State Bar No. 00790276
                                    600 Congress Avenue, Suite 2100
                                    Austin, Texas 78701
                                    Telephone: (512) 495-6000
                                    Facsimile: (512) 495-6093
                                    ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested and/or via facsimile and/or via hand-delivery on May 3, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com


*/s/ Benjamin F. Foster*
Benjamin F. Foster


4836-7402-1907, v. 1

Filed in The District Court
of Travis County, Texas

**LM** MAY 0 3 2013

At_____*7:10A.*___M.

Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53RD JUDICIAL DISTRICT |

## ORDER GRANTING PETER M. LANCASTER PRO HAC VICE

The Court, having considered the Unopposed Motion to Admit Peter M. Lancaster Pro Hac Vice finds the Motion to be meritorious and should be GRANTED.

IT IS THEREFORE ORDERED that the Unopposed Motion to Admit Peter M. Lancaster Pro Hac Vice is, hereby, GRANTED.

IT IS FURTHER ORDERED that Peter M. Lancaster is hereby admitted to the Bar of this Court for the limited purpose of representing Defendants in the above-captioned matter.

SIGNED on the _3 cd_ day of _May_, 2013.

_____
JUDGE PRESIDING

979225

Filed in The District Court
of Travis County, Texas

LM MAY 0 3 2013

At _____ 9:10 _____ M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53RD JUDICIAL DISTRICT |

## ORDER GRANTING HEATHER D. REDMOND PRO HAC VICE

The Court, having considered the Unopposed Motion to Admit Heather Redmond Pro

Hac Vice finds the Motion to be meritorious and should be GRANTED.

IT IS THEREFORE ORDERED that the Unopposed Motion to Admit Heather Redmond

Pro Hac Vice is, hereby, GRANTED.

IT IS FURTHER ORDERED that Heather Redmond is hereby admitted to the Bar of this

Court for the limited purpose of representing Defendants in the above-captioned matter.

SIGNED on the 3rd day of May , 2013.

_____
JUDGE PRESIDING

979644

1

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO OVERRULE OBJECTIONS AND TO COMPEL DISCOVERY RESPONSES AND DEPOSITIONS

### I.    Introduction

Ameriprise has not produced a single page of documents in this case. Nor has it committed to producing any documents in advance of the Temporary Injunction. Versata, pending the entry of a protective order, is ready to produce more than 200,000 documents. However, Ameriprise has dragged its feet on finalizing the protective order.  Instead it has filed this motion to compel as an opening shot to avoid a Temporary Injunction which Ameriprise does not want. The motion is a distraction. Versata is ready and willing to produce more than enough discovery for a Temporary Injunction which should be the parties immediate concern. Other issues related to final judgment can wait until the Temporary Injunction is over.

### II.    Factual Background

This is a simple case. One of Versata Software's most valuable assets is its proprietary Distribution Channel Management ("DCM") software, which Versata spent more than $85

million to develop.  In 2010, Infosys Technologies, ("Infosys") a direct competitor of Versata, decompiled significant portions of Versata's DCM software while performing work at Ameriprise.  When Versata discovered this theft in late 2010, Versata immediately requested that Ameriprise remove Infosys from having access to Versata's DCM software.  Even though two high ranking Ameriprise executives promised to remove Infosys because of this conduct, Ameriprise has not honored this commitment and continues to use approximately 30 Infosys contractors on DCM today.

For the past two years, Versata has repeatedly tried to resolve the problem of having a direct competitor working on its software through business solutions that Versata was willing to provide on heavily-discounted terms.  However, Ameriprise has rejected every one of these offers and continues to give Infosys unfettered access to Versata's DCM software.  Ultimately Versata had no choice but to provide notice of breach, and then, when that breach was not cured, terminate the contract between Ameriprise and Versata.  As a consequence of that termination Ameriprise no longer has any right to use DCM.  However, Ameriprise has refused to stop using the software.  This case's primary focus is to effectuate that termination.

However, rather than ask for that relief in the form of a Temporary Injunction which would risk requiring a full trial on the merits under the time constraints of a Temporary Injunction, Versata is seeking only limited temporary relief.  Specifically, Versata seeks to remove Infosys the decompiling third party, from continuing to use DCM.  This is a simple issue controlled exclusively by unambiguous contractual terms and facts that are not in dispute.  However, in an effort to avoid this Temporary Injunction Ameriprise has raised a host of discovery "issues" which certainly do not relate to any issue at stake at the Temporary Injunction.  In fact, many of these issues do not relate to any issue at stake in the litigation.

2

### III.    State of Discovery

To date Ameriprise has not produced a single document in this case.  They have also not committed to producing a single page of documents prior to the Temporary Injunction Hearing scheduled on May 20, 2013.  In light of that fact it is shocking that Ameriprise would file a motion to compel.

In fact the only Ameriprise documents Versata has in its possession are the result of a Third Party Subpoena served over a year ago in another piece of litigation.  Not only was the scope of that subpoena extremely narrow, but the documents produced were produced pursuant to a protective order which prohibits their use in this case. Although the parties are close to entering into a Protective Order permitting the use of those documents the agreement is not yet finalized.  This delay is largely Ameriprise's fault.  Ameriprise has sought a variety of extremely onerous and unusual conditions in this Protective Order.  Versata has worked to address those concerns.  However, since this May 20, 2013, Temporary Injunction date was set back in mid-March Ameriprise has worked only very slowly to resolve the Protective Order disputes, taking almost a month to respond to Versata's concerns.

The reason for this delay is simple.  Ameriprise does not want to have a Temporary Injunction.  And so as a strategic move they have filed this Motion to Compel and noticed it for hearing a mere 12 days before the scheduled Temporary Injunction Hearing.

The reality is this: once the Protective Order is in place Versata stands ready and able to produce nearly 200,000 documents. These documents were identified by bates number in Versata's March 15, 2013, cover letter.  They have been sitting ready to be produced since that date.  Additionally, should Ameriprise desire them, Versata stands ready to produce about a million and a half documents produced by Infosys in Versata's litigation with Infosys. These

3

documents are not going to be produced in some un-digestible fashion. Instead Versata will be producing searchable native and TIFF files with metadata. Whatever Ameriprise needs for the Temporary Injunction it should be able to search for and locate in advance of the hearing.

This is more document production then any party in any case can reasonably expect in advance of a Temporary Injunction Hearing. Moreover, as should be clear to the Court from the motion itself Ameriprise has no idea what it wants. It has moved to compel on twelve requests for production and on six interrogatories however, most of these requests are irrelevant to the core issues in this case.

Nor has Ameriprise ever made a serious attempt at narrowing the issues in advance of the hearing or identifying what documents it actually thinks it needs to get ready for the Temporary Injunction. Therefore, Versata has taken it upon itself to remove objections and agree to production wherever possible in an effort to reduce the burden on the Court. To this end Versata is amending its responses to Amerprises Request for Production and Versata's Responses to Interrogatories. Unfortunately because of Ameriprise's shotgun approach to discovery disputes this still leaves a number of issues for the Court to address

### 1. Burden Objections

With respect to Interrogatory Nos. 10 and 11 and Document Request 21, these requests are facially burdensome. Ameriprise is asking Versata to identify every individual it employed and every individual that had access to its source code since 2007. It is ridiculous for a company which develops a major piece of software like DCM to identify every programmer it has used in the last five years. Identifying those individuals would require combing through personnel records and trying to match those records to job duties; a daunting task that has no connection to the issues at stake in this case.

4

With respect to Interrogatory No. 12, Ameriprise seeks information regarding patents which contain claims covering and feature of DCM. To perform a reasonably diligent search for information related to this request would require Versata to compare every software patent in existence to the DCM software. That is not reasonable. All patents are public record and Ameriprise has DCM. If Ameriprise thinks this exercise is worthwhile, either in whole or in part, it should shoulder the burden of doing it.

Request for Production No. 12 asks Versata to expand it search for documents to include communications with customers other than Ameriprise. This is incredibly burdensome. At the moment Versata has been able to confine its search for relevant documents to documents which relate in some fashion to Ameriprise. Broadening this task to all customers of DCM would dramatically increase the number of documents that need to be gathered and produced. Additionally, as seen in sections 2 and 3 below, Versata has confidentiality concerns with producing these documents and does not think these documents are relevant to any claim in the case.

With respect to Request 13 which seeks the production of Versata's other licenses the burden is that Versata cannot produce these documents without approval from its customers. It is burdensome and harassing to expect Versata to go to each and every customer and secure approval for production.

With respect to the other requests: Interrogatory Nos. 7, 8, and Document Requests 14, 16, 17, 18, 19, 20 are all burdensome. It is the combined burden of these requests especially in advance of a Temporary Injunction hearing would place an undue burden on Versata.

### 2. Confidentiality Objections

In an effort to harass Versata Ameriprise seeks extensive discovery into Versata's other, non-party, DCM customers. Versata has confidentiality obligations to its other customers which prevents it from disclosing this information regardless of whether there is a valid protective order in place between Ameriprise and Versata. This prevents responding to Requests 12, 13 and 21, all of which call for information to be produced relating to third parties.

With respect to Requests 16, 17, 19, and 21, these requests seek trade secret and other confidential business information protected from disclosure by Texas Rule of Evidence 507. In order to compel the production of these documents Ameriprise must do more than just agree to a protective order. Instead they "must make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 611 (Tex. 1998). This is especially true for Request 16 which seeks the production of Versata's source code. Ameriprise must demonstrate that access to this source code is necessary to a fair adjudication of the case. At this time they have failed to even articulate how the source code is within the scope of discovery. Ameriprise has made no effort to meet that standard and so cannot compel the production of these documents in violation of Versata's Trade Secret Privilege.

### 3. Relevancy Objections

- Document Request 12, other customer complaints: Ameriprise says this request will help them establish Versata's intent. However, Versata's claims are confined to breach of contract. Ameriprise's counterclaims are limited to breach of contract and breach of warranty. "A successful breach of contract claim requires proof of the

following elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex.App.-Dallas 2008, no pet.). The intent of either party is not relevant to breach of contract or warranty. In fact, Ameriprise is not even seeking evidence of Versata's intentions with respect to Ameriprise. Instead Versata is wants evidence of Versata's intentions with respect to at least five non-parties. There is simply no basis for this discovery.

- Document Request 13: Ameriprise seeks information relating to other customer contracts. Setting aside the confidentiality and burden issues the terms of the agreements themselves are not relevant to any issue in the case since Ameriprise contractually agreed to keep DCM confidential.

- Document Request 16:  Versata cannot understand why Ameriprise would need the source code for DCM to prove a breach of contract or breach of warranty claim.  Nor can Versata understand how the Source Code is relevant to the issue of damages.

- Document Request 19, 20: All Versata seeks in this case is to enforce its contractual right to prevent Ameriprise from using DCM. Versata's profits are therefore completely irrelevant to this case.

- Document Request 21 and Interrogatory 10-11: Versata has identified individuals with knowledge of relevant facts in its disclosures. Information related to people who worked for Versata but who do not have knowledge of relevant facts is totally unnecessary.

- Interrogatory 12: Patents relating to DCM have absolutely no relevance to damages. Moreover as discussed above Ameriprise has equal access to this information.  If Ameriprise wishes to find patents it thinks cover DCM in an effort to make an argument about the software's confidentiality it can do so. There is no justification for placing this burden on Versata.

**4. Other Responses**

The first time Ameriprise ever identified the following defects was in this motion to compel.  Although Ameriprise has certainly made no sincere effort to meet and confer on any of

these discovery issues it has not even made a formalistic effort to meet and confer on these additional issues.  As such the Court should not consider them.  However if the Court is included to consider issues Versata responds as follows:

- Request 15: Ameriprise wants information related to the procedures Versata used to keep its information confidential. This is irrelevant because Ameriprise was contractually obligated to protect the confidentiality of Versata's DCM.
- Request 25 is the quintessential catch all discovery request. Ameriprise's breach of the License Agreement is the only cause of action in this case. Therefore, this request is seeking every document relevant to Versata's cause of action. It is too broad to even begin to respond to. If Ameriprise has other specific documents it wishes produced it should send additional Requests for Production. If Ameriprise was correct that this is permissible discovery then drafting Request for Production would be as simple as

### 5.  Identification of witnesses and provision of witnesses for Deposition

There is no rule in Texas that requires a party to provide a witness list in advance of a temporary injunction hearing.  There is no rule in Texas that requires a party to make anyone available for a deposition prior to a temporary injunction.  Ameriprise has not served deposition notices and so there is nothing for it to move to compel on.  This request is therefore completely improper.

### IV.   Conclusion

For all the forgoing reasons and others to be presented at the hearing Versata is opposed to its objections being overruled and asks this Court to enter an order denying the relief Ameriprise seeks.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

 /s/ Benjamin F. Foster

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

9

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on May 7, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

                              ___/s/ Benjamin F. Foster_____
                              Benjamin F. Foster

4846-3865-1411, v. 1

10

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court is the motion of Defendants Ameriprise Financial, Inc. Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. to Overrule Objections and to Compel Discovery Responses and Depositions, and the response of Plaintiffs Versata Software, Inc. and Versata Development Group, Inc.  After consideration of the same, all responsive briefing, and all evidence presented, the Court is of the opinion that said motion should be DENIED.

IT IS THEREFORE ORDERED that Defendants' Motion to Overrule Objections and to Compel Discovery Responses and Depositions is hereby DENIED.

SIGNED this _____ day of _____, 2013.

<br>

_____
TRAVIS COUNTY DISTRICT JUDGE

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC., AND VERSATA DEVELOPMENT GROUP, INC., F/K/A TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| V. | § § | OF TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § § | |
| Defendants. | § | 53RD JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

T? MAY 0 8 2013

10:58 A.M.
Amalia Rodriguez-Mendoza, Clerk

## ORDER

Now before the Court is the Motion to Overrule Objections and to Compel Discovery Responses and Depositions filed by Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (together "Ameriprise"). The Court's rulings are set forth below.

### DISCOVERY REQUESTED IN ADVANCE OF TI HEARING

#### Rulings on Written Discovery

Plaintiffs are ordered to provide additional documents and interrogatory answers in accordance with their amended responses and with the below rulings within 3 days of the date of this Order. *Parties agree that Versata will provide license agreements where Versata is "buyer" ~~but~~ not where Versata is "seller".*

**Document Request No. 13:**
All licenses covering or relating to DCM code or components of DCM code effective at any time after October 1999.

| | | | |
|---|---|---|---|
| Overly Broad | ✓ Overruled | _____ | Sustained |
| Unduly Burdensome | ✓ Overruled | _____ | Sustained |

090546

Relevance _____ ✓ Overruled _____ Sustained

*confidentiality* *Objection is sustained* *402.*

**Interrogatory No. 7:**
Identify all third-party licensors of any components of DCM.

Overly Broad _____ ✓ Overruled _____ Sustained

Unduly Burdensome _____ ✓ Overruled _____ Sustained

Relevance _____ ✓ Overruled _____ Sustained

**Document Request No. 15:**
All documents relating to security measures taken to protect the confidentiality of DCM code.

Objected to producing documents related to the confidentiality of DCM source code.

_____ ✓ Overruled _____ Sustained

**Document Request No. 16:**
A copy of the source code for the version of DCM currently licensed to Ameriprise. *— not enough info to rule*

Overly Broad _____ Overruled _____ Sustained

Unduly Burdensome _____ Overruled _____ Sustained

Relevance _____ Overruled _____ Sustained

### Ruling on Depositions

Plaintiffs are further ordered to (1) designate witnesses for each of the six topics in Ameriprise's notice of deposition, (2) identify any witnesses who will testify on Plaintiffs' behalf at the temporary injunction hearing, and (3) provide at least two dates on which the corporate representative as well as any other injunction hearing witness(s) will be available for deposition with such dates being at least three (3) business days after Versata serves its amended discovery responses and documents required by the above rulings. All such depositions shall be completed at least three business days prior to a Temporary Injunction hearing.

2

# OTHER DISCOVERY

## Rulings on Plaintiffs' Objections as to Overly Broad, Unduly Burdensome and Relevance

**Document Request No. 12:**
All documents constituting or relating to complaints to Versata about software or service issues (other than standard problem logs) by other customers of DCM software, including without limitation, to the extent applicable, Waddell & Reed, Mass Mutual Life Insurance Company, MetLife, Pacific Life and Penn Mutual.

*not ruled upon MSv*

Overly Broad          _____ Overruled          _____ Sustained

Unduly Burdensome     _____ Overruled          _____ Sustained

Relevance             _____ Overruled          _____ Sustained


**Document Request No. 25:**
All documents relating to Ameriprise's alleged material breach of the Agreement.

Objected that overly broad and improper pursuant to Tex. R. Civ. P. 193 cmt. 2.

_____ Overruled     _____ Sustained

*not ruled upon MSv*

**Interrogatory No. 8:**
Identify all licensees of DCM.

Overly Broad          ✓ Overruled          _____ Sustained

Unduly Burdensome     ✓ Overruled          _____ Sustained

Relevance             ✓ Overruled          _____ Sustained

**Interrogatory No. 10:**
Identify all Versata employees since January 1, 2007.

Overly Broad          ✓ Overruled          _____ Sustained

Unduly Burdensome     ✓ Overruled          _____ Sustained

Relevance             ✓ Overruled          _____ Sustained

**Document Request No. 21:**
Documents sufficient to identify all employees of Versata at all times since January 1, 2007.

Overly Broad          _____ Overruled          _____ Sustained

*not ruled upon*

3

| | | | | |
|---|---|---|---|---|
| Unduly Burdensome | _____ Overruled | _____ Sustained |

| | | |
|---|---|---|
| Relevance | _____ Overruled | _____ Sustained |

**Interrogatory No. 11:** *Parties agree that Versata will provide identify all entities with access to DCM source code since Jan 1, 2007*

Identify all ~~persons~~ *users* with access to DCM source code since January 1, 2007.

| | | |
|---|---|---|
| Overly Broad | _____ Overruled | ____✓____ Sustained |
| Unduly Burdensome | _____ Overruled | ____✓____ Sustained |
| Relevance | _____ Overruled | ____/____ Sustained |

**Interrogatory No. 12:** *Versata agrees to provide a list of patent numbers it believes may relate to DCM.*

Identify all patents you own relating in whole or in part to DCM.

| | | |
|---|---|---|
| Overly Broad | ____✓____ Overruled | _____ Sustained |
| Unduly Burdensome | ____✓____ Overruled | _____ Sustained |
| Relevance | ____✗____ Overruled | ____✓____ Sustained |

## Confidentiality Objections -- (Request for Production Nos. 12-13, 16, and 21)

In response to Request for Production Nos. 12-13, 16, and 21, Plaintiffs asserted confidentiality objections stating that the requests "would require the disclosure of sensitive, confidential, proprietary and/or trade secret information," (the "confidentiality objection") among other objections, and did not produce documents. Upon the entry of a protective order, Plaintiffs are ordered to produce any documents otherwise withheld on the basis of the confidentiality objection.

IT IS SO ORDERED on this _____8_____ day of May 2013.

_____
JUDGE PRESIDING

4

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |
| | § | |
| **Defendants.** | § | 53rd JUDICIAL DISTRICT |

## PLAINTIFFS' ANSWER, SPECIFIC DENIALS AND AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIM

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development  Group, Inc. (collectively "Versata")  respectfully file this Answer to the Counterclaims raised by Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively, "Ameriprise").  Plaintiffs state and allege as follows:

## GENERAL DENIAL

Pursuant to Texas Rule of Civil Procedure 92, Plaintiffs generally denies the allegations raised in Defendant's Original Counterclaim.

## AFFIRMATIVE DEFENSES

1

### FIRST DEFENSE

Ameriprise's claims are barred, in whole or in part, because Plaintiffs performed their contractual obligations.

### SECOND DEFENSE

Ameriprise's claims are barred, in whole or in part, by the doctrines of estoppel and waiver.

### THIRD DEFENSE

Ameriprise's claims are barred, in whole or in part, due to the applicable statutes of limitation.

### FOURTH DEFENSE

Ameriprise fails to state a claim, in whole or in part, upon which relief can be granted.

### FIFTH DEFENSE

Ameriprise's claims are barred, in whole or in part, due to laches and unreasonable delay in seeking recovery.

### SIXTH DEFENSE

Ameriprise's claims are barred, in whole or in part, by the doctrine of unclean hands. Ameriprise breached the agreement between the parties by allowing Infosys who was not a permitted contractor under that agreement, to access the Software and steal Versata's trade secrets. Ameriprise has not agreed to cease dealing with Infosys. Ameriprise also breached the agreement by allowing TCS, another non-permitted contractor, to access and use Versata's software. Ameriprise has not agreed to cease dealing with TCS. Ameriprise's disregard of their contractual obligations alone would be sufficient to bar recovery. But even now, Ameriprise

continues using Versata's software after Versata terminated Ameriprise's license.   For all the foregoing reasons, the doctrine of unclean hands bars Ameriprise's claims.

## SEVENTH DEFENSE

Ameriprise's claims are barred, in whole or in part, by the doctrine of waiver.   The contract between the parties provides a clear procedure for notification in the event of a breach. Ameriprise has not followed this notice procedure – indeed, their only notice of breaches has been via litigation.   After these alleged breaches, Ameriprise not only provided no notice, they also continued to perform under the contract.   Ameriprise has therefore waived any claims with respect to their alleged breaches.

## SPECIFIC DENIALS

1.     Ameriprise has failed to satisfy the condition precedent of providing notice to Versata of any alleged breach of the contract, in the manner specified by the contract.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

a.     enter judgment in favor of Versata and against Ameriprise on all claims asserted by Ameriprise;

b.     award Versata its reasonable and necessary attorney's fees and expenses;

c.     award Versata all costs of court;

d.     award Versata all actual and punitive damages; and

e.     grant all other relief to which Versata may show it is justly entitled.

Date:  05/23/2013

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

*/s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

Travis C. Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093

ATTORNEYS FOR PLAINTIFFS

4

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested, electronic mail, US Mail, and/or hand delivery on May 23, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

*/s/ Benjamin F. Foster*
Benjamin F. Foster

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |
| | § | |
| Defendants. | § | 53ʳᵈ JUDICIAL DISTRICT |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM FOR BREACH OF WARRANTY**

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development  Group, Inc. (collectively "Versata"), pursuant to Texas Rule of Civil Procedure 166(a)(c), respectfully file this Motion for Summary Judgment on the Counterclaim  for Breach  of  Warranty  raised  by  Defendants  Ameriprise  Financial,  Inc., Ameriprise  Financial  Services,  Inc.,  and  American  Enterprise  Investment  Services,  Inc. (collectively, "Ameriprise").  Plaintiffs state and allege as follows:

## SUMMARY OF THE ARGUMENT

Ameriprise received Versata's software in 1999. Fourteen years later, in 2013, Amerprise has now raised a breach of warranty claim. A claim for breach of warranty accrues upon delivery of a product. The statute of limitation for a breach of warranty claim is four years. Ameriprise is nearly ten years too late to raise its breach of warranty claim.

After getting sued for breaching is license agreement with Versata, Ameriprise has manufactured a number of alleged breaches by Versata. Each so-called breach is pure pretext designed to distract from Ameriprise's simple wrongful conduct. In its statement of counterclaims filed on April 16, 2013, almost fourteen years after Ameriprise began using Versata's software, Ameriprise alleged that Versata breached the warranty contained in the MLA. Specifically, Ameriprise alleges that "Versata's DCM software incorporates software subject to claims, encumbrances, restrictions and/or claims of violation or infringement of rights of third parties." *See* Exhibit A (Def's Orig. Counterclaim) at 9 (Paragraph 40). The MLA became effective on October 4, 1999. *Id.* at 3 (Paragraph 8). Ameriprise began using Versata's software in or around 1999. *Id.* at 4 (Paragraph 12). Ameriprise's April 2013 pleading represents the first time Amerprise has raised a breach of warranty allegation against Versata. Despite this failure, Ameriprise alleges that "[it] is entitled to the identified contractual remedies immediately or following a thirty-day notice period." *Id.* at 9 (Paragraph 43). But Ameriprise's claim is nearly ten years too late, and the facts show that Ameriprise is entitled to no relief on its breach of warranty claim. Therefore Versata brings this motion to eliminate this counterclaim which is clearly barred by the statute of limitations.

## BACKGROUND OF THE CASE

Versata entered into a Master License Agreement (MLA) on October 4, 1999 to provide enterprise software to Ameriprise. *See* Exhibit B (MLA). Versata delivered the

software to Ameriprise before the end of the year. Ameriprise uses Versata's software to support complex internal calculations including commissions for its approximately 10,000 agents.

In the MLA, Ameriprise promised to keep Versata's software, product documentation, and related materials strictly confidential (§ 10.2) and that the software was strictly the property of Versata (§ 4.9). Under the MLA, Ameriprise also agreed to limit access to the software, product documentation, and related materials to Ameriprise employees and "Permitted Contractors" - i.e., contractors that do not compete with Versata in the development of enterprise compensation or configuration software and that have signed a non-disclosure agreement (§ 4.8). Finally the MLA strictly prohibits any kind of copying, decompiling, or reverse engineering of Versata's software by Ameriprise or its agents (§ 10.1). A breach of any of these provisions is sufficient grounds, after thirty days' notice and an opportunity to cure, for Versata to terminate the MLA and revoke Ameriprise's license to the software (§ 12.2). The MLA is governed by New York law.

Ameriprise has breached these provisions of the MLA. First, Ameriprise has given Infosys access to Versata's Software. Infosys is a company that, among other things, develops and sells its own brand of enterprise compensation software, a product that directly competes with Versata's proprietary software. In fact Infosys provides this kind of software to numerous customers in the United States and around the world. Therefore Infosys is not a "permitted contractor" as that term is used in the MLA (§ 4.8).

More shockingly, through litigation pending the Western District of Texas Versata learned that Infosys decompiled or copied more than 5,000 Versata source code files while working at Ameriprise, transported those files to India, and stored them on hard drives in Bangalore. Infosys has used these files to train technical consultants to compete with Versata at

3

rates that are significantly cheaper than Versata's rates and has developed its own enterprise software based on knowledge and understanding gained from these decompiled files.

Because of these and other violations of the MLA, Versata sent a letter to Ameriprise providing the contractually mandated thirty-day notice of breach of the MLA on September 17, 2012. *See* Exhibit C (notice letter). The letter identified multiple breaches of the MLA by Ameriprise related to unauthorized access to Versata's software by contractors. Versata further stated that if Ameriprise did not take steps to cure these breaches, the MLA would terminate automatically within thirty days. Because Ameriprise did not cure these violations, the MLA terminated on October 17, 2012. Ameriprise has refused to return Versata's software and other confidential information to Versata as required by the MLA. Today, Ameriprise is using Versata's software and other confidential information without authorization.

After this lawsuit was filed to secure the return of Versata's software Ameriprise raised a number of pretextual allegations of breach of contract. Although the allegations are new, the factual contentions underlying them are ancient. Therefore, in an effort to streamline this case to its essential issues Versata files this motion seeking summary judgment on Ameriprise's breach of warranty claim as barred by the statute of limitation.

## BASIS OF MOTION

Plaintiff's motion is based on the pleadings of the parties, including Defendant's Original Counterclaim and Application for Temporary and Permanent Injunction attached hereto as Exhibit A, and the Master License Agreement attached hereto as Exhibit B, and the notification sent from Versata to Ameriprise on September 17, 2012 attached hereto as Exhibit C.

## ARGUMENT

**I.   Texas Procedural Law, Including Statutes of Limitation, Apply to Ameriprise's Claim for Breach of Warranty.**

The MLA contains a choice of law clause that provides that the agreement is governed by the substantive laws of the State of New York without regard to conflict of law principles. *See* Exhibit B (MLA) at § 12.8. Texas courts apply the law of the jurisdiction chosen by the parties to govern their rights and duties, under the principle of "party autonomy." *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677 (Tex. 1990).[1] While the substantive law of New York governs interpretation of the contract terms, however, Texas law governs issues of procedure. Procedural law includes statutes of limitation. *Boustany v. Monsanto Co.,* 6 S.W.3d 596, 599 (Tex. App. 1999) rev'd on other grounds, 73 S.W.3d 225 (Tex. 2002). Therefore, Texas' statute of limitations for breach of warranty claims applies to the breach of warranty claim raised by Ameriprise.[2]

## II.     Ameriprise's Breach of Contractual Warranty Claim Fails

Ameriprise cannot prevail on its breach of contractual warranty claim because it pleads a claim that accrued nearly fourteen years ago.

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has

---

[1] The choice of law clause may not apply, however, where "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 678 (Tex. 1990). Here, while the contract does not call for the performance of work in New York, neither party is a New York corporation, and neither party is headquartered in New York, Ameriprise appears to maintain offices in New York. Further, New York substantive law on the claim at issue, breach of warranty, does not appear so fundamentally different from the law of Texas that a violation of public policy would take place.

[2] Although Texas' statute of limitation law applies here, the limitation period under New York law is the same. Under both Texas and New York law, a software license is governed by the UCC. *Hou-Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 108 (Tex. App.–Houston [14th Dist.] 2000, no pet.); *Commc'ns Groups, Inc. v. Warner Commc'ns, Inc.,* 527 N.Y.S.2d 341, 343 (Civ. Ct. 1988). The UCC, as adopted by Texas in the Texas Business and Commercial Code, provides a four-year limitation period in which to bring a breach of warranty claim. Tex. Bus. & Com. Code Section 2.725; *compare* N.Y. U.C.C. Law § 2-725 (McKinney) (providing four-year statute of limitation to breach of warranty claims).

been pleaded or otherwise raised." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).    The discovery rule does not apply to a breach of warranty claim unless the warranty is for future performance. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 546 (Tex. 1986).   Ameriprise has not pleaded that the discovery rule should apply, nor has it alleged any facts suggesting that it was in some way prevented from discovering its cause of action.[3]

Texas law provides that a claim for breach of warranty must be brought within four years. Tex. Bus. & Com. Code Section 2.725.  The warranty in the MLA, by its own terms, lasts only one-hundred eighty days.  MLA Section 8.2.[4]  Even if the warranty time limitation in the MLA were not effective, however, Ameriprise's claim is still untimely.  Under Texas law, a breach of an express contractual warranty accrues upon delivery of the merchandise. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d at 548 (Tex. 1986).[5]  Ameriprise pleads that the contract was effective October 4, 1999. Exhibit A at p. 3 (Paragraph 8).   According to Ameriprise's allegations, it began using the software, including engaging third-party contractors to customize the software, in 1999. *Id.* at 4 (Paragraph 12).   Since use of the merchandise commenced in 1999, delivery could have occurred no later than 1999.  Therefore, any breach of warranty claim would have had to have been filed in 2003 – not in 2013.

---

[3] Ameriprise also should not be heard to argue that the Texas Civil Practice and Remedies Code Section 16.069 exception to the statute of limitation for counterclaims applies.  That statute only applies to claims "filed not later than the 30th day after the date on which the party's answer is required."  Versata filed its original petition November 13, 2012, and Ameriprise did not raise its counterclaim until April 16, 2013, far outside the limitation period. *See* Exhibit A.

[4] Parties are generally permitted to agree by contract to shorten the statutory four-year warranty period; however, the parties cannot shorten the period to less than twelve months. Tex. Bus. & Com. Code § 2.725(a). N.Y. U.C.C. Law Section 2-725(a).

[5] Even if New York law were to apply to Ameriprise's claim, the claim for breach of warranty is still untimely. New York law provides a claim for breach of warranty accrues when delivery is made. *Ito v. Marvin Lumber & Cedar Co.*, 865 N.Y.S.2d 118, 119 (2008).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

a.   enter judgment in favor of Versata by granting its motion for summary judgment on the breach of warranty claim asserted by Ameriprise;

b.   award Versata its reasonable and necessary attorney's fees and expenses;

c.   award Versata all costs of court;

d.   award Versata all actual and punitive damages; and

e.   grant all other relief to which Versata may show it is justly entitled.


Date:  05/24/2013                Respectfully submitted,

                                AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

                                /s/ Benjamin F. Foster
                                Demetrios Anaipakos
                                State Bar No. 00793258
                                Amir Alavi
                                State Bar No. 00793239
                                Benjamin F. Foster
                                State Bar No. 24080898
                                1221 McKinney Street, Suite 3460
                                Houston, Texas 77010
                                Telephone:  (713) 655-1101
                                Facsimile:  (713) 655-0062


                                Travis Barton
                                McGinnis, Lochridge & Kilgore, LLP
                                600 Congress Avenue, Suite 2100
                                Austin, Texas 78701
                                (512) 495-6000 (Telephone)
                                (512) 495-6093 (Facsimile)
                                tcbarton@mcginnislaw.com


                                ATTORNEYS FOR PLAINTIFFS

7

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested, electronic mail, US Mail, and/or hand-delivery on May 24, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2600
(612) 340-2868 Fax
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 495-6300
(512) 474-0731 Fax
smcconnico@scottdoug.com
csileo@scottdoug.com

*/s/ Benjamin F. Foster*
Benjamin F. Foster

8

AZA Law                Fax:7136550062          Apr 16 2013 01:19pm  P002/005
                Received:                        Apr 16 2013 01:18pm
APR-16-2013 13:22 From:SCOTT DOUGLASS      5124740731      To:1591O4*2#91713655006 Page:2/19

## NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and VERSATA | § | |
| DEVELOPMENT GROUP, INC., f/k/a | § | |
| TRILOGY DEVELOPMENT GROUP, INC., | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| v | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, INC., | § | |
| AMERICAN ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| | § | |
|     Defendants. | § | 53rd JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL COUNTERCLAIM AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THE COURT:

    NOW COME Defendants Ameriprise Financial, Inc. ("Ameriprise"), Ameriprise

Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively

"Defendants") and file this Answer and Original Counterclaim and Application for Temporary

and Permanent Injunctive Relief and state as follows.

## COUNTERCLAIM

    Counterclaimant Ameriprise, for its Counterclaim against all Plaintiffs (collectively,

"Versata"), states and alleges as follows:

## DISCOVERY

    1.    Discovery should be conducted pursuant to Level 3, Texas Rule of Civil

Procedure 190.4, and Ameriprise moves that discovery be conducted in accordance with a

discovery control plan tailored to the specific circumstances of this suit.



AZA Law                    Fax:7136550062           Apr 16 2013 01:19pm  P003/005
                    Received:                        Apr 16 2013 01:18pm
APR-16-2013 13:22 From:SCOTT DOUGLASS      5124740731        To:159104*2#91713655006 Page:3/19

## INTRODUCTION AND PARTIES

2.      Ameriprise is a Delaware corporation with its principal place of business located at 55 Ameriprise Financial Center in Minneapolis, Minnesota.  Ameriprise is a leading financial planning and services company.  Ameriprise subsidiaries serve individual investors' and institutions' financial needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance.  Ameriprise was formerly named American Express Financial Corporation.  Ameriprise's field force includes numerous personnel within Travis County and elsewhere in Texas.

3.      Versata is a Delaware corporation with its principal place of business in Austin, Texas.  On information and belief, Versata conducts business with fewer than five employees in Texas or anywhere else in the United States.  Versata provides software and other technology products and services to companies in the financial services industry, among other areas. Versata was formerly named Trilogy Software, Inc.

4.      At the center of this action is a Master License Agreement ("Agreement") by which Versata granted to Ameriprise a "nonexclusive, nontransferable ... perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from an enterprise compensation software product called "Distribution Channel Management" or "DCM."  The terms of the Agreement are binding upon Versata and Ameriprise.

5.      In breach of its contractual obligations, Versata has threatened to terminate, and has stated that it has already terminated, Ameriprise's perpetual and worldwide license to use DCM, software that is a necessary component of an Ameriprise system called "Distribution Management Utility," or "DMU."

AZA Law                    Fax:7136550062              Apr 16 2013 01:19pm   P004/005
                Received:                             Apr 16 2013 01:18pm
APR-16-2013 13:22 From:SCOTT DOUGLASS        5124740731        To:159104*2#91713655006 Page:4/19

## JURISDICTION AND VENUE

6.      This Court has general jurisdiction over Plaintiffs because their principal place of

business is in Travis County, Texas, and because they subjected themselves to the jurisdiction of

this Court by commencing this action. This Court has specific jurisdiction in connection with

these Counterclaims because these Counterclaims relate to issues presented in Plaintiffs'

Petition.

7.      In accordance with § 15.002 of the Texas Civil Practice and Remedies Code,

venue is proper in Travis County, Texas because all or a substantial part of the events or

omissions giving rise to the claim occurred in Travis County and Versata's principal place of

business in in Travis County.

## FACTS

### A.      The Master License Agreement

8.      The predecessors of Ameriprise and Versata entered into the Agreement, effective

October 4, 1999, by which Versata granted to Ameriprise a "nonexclusive, nontransferable ...

perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from

DCM. The core software and documentation relating to the DCM software are referred to in the

Agreement as the "Products."

9.      DCM is Java-based software. It was designed by Versata to be extended (i.e.,

modified and enhanced), and at Ameriprise DCM has been extended and customized with as

much as a million lines of additional computer code, added by Ameriprise over many years

through the use of different contractors and with Versata's full knowledge.

10.     DCM is a key component of Ameriprise's DMU system, which is part of the

compensation and recordkeeping operations for all Ameriprise personnel registered to perform

AZA Law                    Fax:7136550062           Apr 16 2013 01:19pm   P005/005
Received:                              Apr 16 2013 01:18pm
APR-16-2013 13:22 From:SCOTT DOUGLASS      5124740731          To:159104*2#91713655006 Page:5/19

securities work. It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.     The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work. Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise. Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM. Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products." The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.     Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, as explicitly authorized by section 4.4 of the Agreement. Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys"). Indeed, Versata has worked with such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's version of the DCM code, pursuant to Ameriprise's rights under the Agreement. In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into source code (readable by programmers) - through the use of readily-available software.

AZA Law                     Fax:7136550062          Apr 16 2013 01:25pm  P001/015
                        Received:                           Apr 16 2013 01:23pm
APR-16-2013 13:26 From:SCOTT DOUGLASS        5124740731        To:159104*2#91713655006  Page:5/19

securities work. It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.     The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work. Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise. Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM. Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products." The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.     Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, as explicitly authorized by section 4.4 of the Agreement. Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys"). Indeed, Versata has worked with such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's version of the DCM code, pursuant to Ameriprise's rights under the Agreement. In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into source code (readable by programmers) - through the use of readily-available software.

13.     Despite this acquiescence, in 2010 Versata raised concerns about Infosys

decompiling DCM code. In response, Ameriprise, though it had no obligation to do so, began to

phase Infosys out of its contractor role with respect to DCM-related work. To date, more than

90% of previously-engaged Infosys personnel have been removed from such work, leaving fewer

than ten Infosys employees with access to DCM.

**B.      Versata's Efforts to Force Ameriprise to Convert to A New, Risky, Unproven, Unsafe Software System Or Additional Payments**

14.     Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven,

and substantially more expensive replacement for DCM. Versata called its sales proposal the

"DCM Enterprise Cloud." Versata's new DCM Enterprise Cloud proposal would require

Ameriprise to drastically increase its payments to Versata and to entrust the operation, storage

and security of Ameriprise's highly sensitive and confidential business functions and information

to a third-party service provider's public cloud environment. A "public cloud" is a shared

storage and computing environment delivered over a network. In this case, the network is the

public Internet.

15.     Ameriprise expressed skepticism about and reluctance to accept Versata's DCM

Enterprise Cloud proposal for sound business judgment reasons, including but not limited to:

security concerns associated with Ameriprise's highly confidential information and dependence

on a fully functioning DCM, dissatisfaction with Versata's personnel, and greatly increased

costs.

16.     On September 17, 2012, two business days after receiving Ameriprise's initial

reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an

alleged "material breach" of the Agreement and demanding that Ameriprise cure such alleged

breach within thirty days. Fully aware that Ameriprise depends upon DCM and the contractors

who customize and maintain it and fully aware that the "breaches" it alleged were impossible to

Page 5

AZA Law                    Fax:7136550062          Apr 16 2013 01:25pm  P003/015
                    Received:              Apr 16 2013 01:23pm
APR-16-2013 13:27 From:SCOTT DOUGLASS        5124740731            To:159104*2#91713655006  Page:7/19

"cure" within 30 days, Versata nonetheless threatened to terminate the Agreement at the end of

the 30-day period. In that event, Versata threatened, by the October 17, 2012 deadline,

"Ameriprise ... must immediately stop using all Versata-developed software and immediately

must return all of Versata's software and other confidential information." Versata's letter

culminated in a demand for an immediate mediation to discuss the issues Versata raised.

Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the

resolution of Versata's concerns.

17.    On November 12, 2012, despite Ameriprise's acquiescence to Versata's request

for a prompt mediation, and in the midst of the parties' discussions with a third-party mediator,

Versata filed suit against Ameriprise in Texas state court.

18.    Versata's conduct in wrongfully threatening to terminate the Agreement

constitutes wrongful termination and a breach of the Agreement. The conduct is a willful and

malicious act within the meaning of Article 11 of the Agreement.

19.    Ameriprise has provided Versata notice of its material breaches of the Agreement.

## C.    Ameriprise's Right to Relief

20.    Because Versata has purported to terminate the Agreement and has not withdrawn

its purported termination, and Ameriprise has previously provided notice of Versata's breaches,

Ameriprise must conclude that granting Versata any additional cure period ordinarily available

under the Agreement would be futile. An effective cure by Versata would have required, among

other actions to cure its breaches, (a) withdrawal of its purported termination and (b) withdrawal

and dismissal of its pending lawsuit.

21.    Ameriprise has paid Versata all sums owed to it.

AZA Law                     Fax:7136550062          Apr 16 2013 01:25pm  P004/015
                    Received:                     Apr 16 2013 01:23pm
APR-16-2013 13:27 From:SCOTT DOUGLASS         5124740731          To:159104*2#91713655006 Page:8/19

22.     Ameriprise is entitled to engage third-party contractors to provide software services for DCM who do not compete with Versata in the development of enterprise compensation or configuration software.

23.     Ameriprise is entitled to continue to use DCM.

24.     The harm that Versata's actions have caused and threaten to cause to Ameriprise is irreparable, with no adequate remedy at law.

## CAUSES OF ACTION

## I.     BREACH OF CONTRACT THROUGH WRONGFUL TERMINATION

25.     Ameriprise realleges and reincorporates paragraphs 1-24 as if set forth herein.

26.     New York law governs the interpretation of the parties' Agreement.

27.     Pursuant to New York law, Versata is subject to an implied covenant of good faith and fair dealing in fulfilling the parties' Agreement.

28.     Versata's purported termination of the Agreement is a material breach of its own contractual obligations, which include these specific obligations: upon notice and payment by Ameriprise, to provide maintenance services for the software (section 6.1); to provide "[u]pdates to each Product and" relevant Documentation (section 6.6); to make available to Ameriprise "any and all modifications to the Products" without additional cost to Ameriprise (section 6.7); and to warrant that Ameriprise's "use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement)" (section 8.1). Versata's purported termination also is a breach of the covenant of good faith and fair dealing implied in the Agreement.

29.     In addition, Versata's purported termination of the Agreement is a material breach of the Agreement because Versata demanded a forfeiture of Ameriprise's rights and Versata failed to comply with the Agreement's termination requirements.

AZA Law          Fax:7136550062          Apr 16 2013 01:25pm  P005/015
                    Received:                    Apr 16 2013 01:23pm
APR-16-2013 13:27 From:SCOTT DOUGLASS      5124740731      To:159104*2#91713655006 Page:9/19

30.     Nothing in the Agreement or Ameriprise's actions justifies Versata's precipitous attempts to terminate the Agreement.

31.     Versata knew when it sent its September 17, 2012, letter that its demands could not be satisfied, and it knew or should have known that its letter failed to comply with the Agreement's termination requirements.

32.     Without the ability to use DCM as contemplated in the Agreement, Ameriprise and its advisors, franchisees and their employees will suffer irreparable injury.

33.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately.

34.     As a result of Versata's material breach of the Agreement through its legally deficient attempt at termination and forfeiture demand, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

35.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to obtain and use all escrowed versions of DCM and all related documentation.

36.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

37.     Ameriprise is also entitled to damages as a result of Versata's material and uncured and incurable breaches.

## II.     BREACH OF CONTRACTUAL WARRANTIES

38.     Ameriprise realleges and reincorporates paragraphs 1-37 as if set forth herein.

AZA Law          Fax:7136550062          Apr 16 2013 01:25pm   P006/015
                Received:                Apr 16 2013 01:24pm
APR-16-2013 13:27 From:SCOTT DOUGLASS        5124740731          To:159104*2#91713655006 Page:10/19

39.     In Section 8.1 of the Agreement, Versata warranted that (i) Licensor has the right to furnish [DCM] ... free of all liens, claims, encumbrances and other restrictions; [and] (ii) to the best of its knowledge, the Product Materials and Services furnished by [Versata] and/or [Ameriprise's] use of the same hereunder do not violate or infringe the rights of any third party ..."

40.     Versata's DCM software incorporates software subject to claims, encumbrances, restrictions and/or claims of violation or infringement of rights of third parties.

41.     On information and belief, Versata knew that its DCM software violated and/or infringed the rights of third parties.

42.     Versata failed to inform Ameriprise of all the third parties with rights to subject DCM to claims, encumbrances, restrictions, and/or claims of violation or infringement of rights of third parties.

43.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately or following a thirty-day notice period.

44.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

45.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to obtain and use all escrowed versions of DCM and all related documentation.

46.     Ameriprise also is or will be entitled to damages as a result of Versata's material and uncured and incurable breaches.

### III.     BREACH OF ESCROW OBLIGATIONS

47.     Ameriprise realleges and reincorporates paragraphs 1-46 as if set forth herein.

AZA Law          Fax:7136550062           Apr 16 2013 01:25pm  P007/015
Received:                              Apr 16 2013 01:24pm
APR-16-2013 13:28 From:SCOTT DOUGLASS          5124740731          To:159104*2#91713655006 Page:11/19

48.     The parties' Agreement requires Versata to "deposit the ["source code and all the generally available Documentation thereto, for a Product or Updates"] with Data Securities International Inc. ("DSI") no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI." Versata is obligated to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms. Versata is obligated to "update the escrow at least every six months" and "upon delivery of an Update" (sections 5.1 and 5.2).

49.     The parties' Escrow Agreement, an exhibit to the Agreement, acknowledges that "the availability of or access to certain proprietary data related to the proprietary technology and other materials is critical to [Ameriprise] in the conduct of its business."

50.     Section 5.1 of the Escrow Agreement similarly requires Versata to deposit "source code and all the generally available Documentation thereto for a Product or Updates" with Data Securities International, Inc. or a successor escrow agent.

51.     On information and belief, Versata failed to establish an accessible escrow account with Data Securities International, Inc. for the benefit of Ameriprise and failed to deposit source code or documentation into escrow as required by the Agreement and/or the Escrow Agreement.

52.     Ameriprise provided written notice to Versata of its breach of its escrow obligations over thirty days ago.

53.     Versata has materially breached its contractual obligations relating to the deposit and updating of source code on deposit from time to time, including these obligations: to "deposit the ["source code and related documentation] ... no later than forty five (45) days after the execution of any Schedule" and to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms (Agreement sections 5.1 and 5.2); to

AZA Law          Fax:7136550062        Apr 16 2013 01:25pm  P008/015
Received:                      Apr 16 2013 01:24pm
APR-16-2013 13:28 From:SCOTT DOUGLASS     5124740731      To:159104*2#91713655006 Page:12/19

deposit the "source code and all the generally available Documentation thereto, for a Product or Updates" with the escrow agreement (section 5.1 of the Escrow Agreement); to update the escrow at least every six months and also use commercially reasonable efforts to update the escrow upon delivery of a software update to Ameriprise (section 5.2 of the Escrow Agreement); to update the deposited software code and related documentation within thirty days after distribution of a technology release, with such deposits occurring at least every twelve months, or, alternatively, to "certify to [Ameriprise] that the Deposit contains the latest technology release" (section 3 of the Escrow Agreement).

54.     Ameriprise is damaged by not having available to it current and/or updated software as contemplated by the Escrow Agreement.

55.     Ameriprise is entitled to remedies following termination of the Agreement as a result of Versata's breach pursuant to section 12.2 of the Agreement.

56.     In section 5.3, the Agreement provides for the release to Ameriprise of the source code held in escrow if Versata commits an "uncured, material breach of its maintenance or support obligations." Such uncured, material breaches have occurred.

57.     Versata's breaches entitle Ameriprise to obtain from the escrow agent and/or Versata, all "source code . . ., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

58.     Pursuant to section 14 of the Escrow Agreement, Ameriprise will be entitled to decompile, disassemble, or reverse engineer the escrowed code and documentation.

59.     As a result of Versata's material breach of the Agreement and the Escrow Agreement, Ameriprise is entitled to obtain from the escrow agent and/or Versata, and to use

AZA Law                    Fax:7136550062           Apr 16 2013 01:26pm  P009/015
                Received:                    Apr 16 2013 01:24pm
APR-16-2013 13:28 From:SCOTT DOUGLASS        5124740731        To:159104*2#91713655006 Page:13/19

without constraint, all versions of DCM and all related documentation that have been escrowed or that Versata had a duty to place in escrow.

## IV.  IMPOSITION OF CONSTRUCTIVE TRUST

60.   Ameriprise realleges and reincorporates paragraphs 1-59 as if set forth herein.

61.   The Agreement governs the scope of the business relationship between Ameriprise and Versata and obligates Versata to act for the benefit of Ameriprise. Both parties have confidentiality obligations under the Agreement, and the nature of the services provided by Versata requires Ameriprise to trust Versata with significant amounts of proprietary information and trust in Versata's ability and willingness to maintain a fully and continuously functioning DCM. The existence of such duties in turn gives rise to fiduciary obligations by Versata to Ameriprise. Specifically, the Agreement encompasses promises made by Versata with respect to DCM.

62.   Over thirteen years of operations, Ameriprise has contributed financially, operationally, and creatively to the development of DCM.

63.   The current version of DCM is as much the work product of Ameriprise as of Versata.

64.   Versata would be unjustly enriched if it were allowed to keep DCM for its own use and profit, and to prohibit Ameriprise from accessing the software.

65.   Ameriprise is entitled to a constructive trust preserving its access to DCM, prohibiting any interference with its use of DCM, and sharing in any revenue gained by Versata through exploitation of DCM, or variants or derivatives of DCM to which Ameriprise has contributed and which Versata has subsequently sold, licensed, or otherwise made available to any other party.

## V.   DECLARATION OF AMERIPRISE'S RIGHTS

66.      Ameriprise realleges and reincorporates paragraphs 1-65 as if set forth herein.

67.      Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Ameriprise requests, and the interests of the parties to this action require, a judicial determination of Ameriprise's rights and Versata's obligations under the Agreement.

68.      As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

69.      As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to obtain and use all escrowed versions of the DCM and all related documentation without constraint.

70.      As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to employ as contractors, to help enhance and maintain DCM, at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

71.      A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future obligations of the parties to this action. Ameriprise requests that the Court grant relief by declaring the rights of the parties pursuant to New York law, as provided by the parties' Agreement.

AZA Law                    Fax:7136550062              Apr 16 2013 01:26pm  P011/015
                    Received:                    Apr 16 2013 01:24pm
APR-16-2013 13:28 From:SCOTT DOUGLASS        5124740731         To:159104*2#91713655006 Page:15/19

72.     Accordingly, Ameriprise requests judicial declaration that: (1) Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement; (2) Ameriprise is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed; and (3) Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

## APPLICATION FOR PERMANENT INJUNCTION

73.     Ameriprise realleges and reincorporates paragraphs 1-72 as if set forth herein.

74.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

75.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to obtain and use, enhance, modify, and customize, all escrowed versions of DCM, or versions that should have been escrowed, and all related documentation without constraint.

76.     Ameriprise requests an injunction barring Versata from taking any action in furtherance of its purported termination of the Agreement.

77.     Ameriprise requests a permanent injunction compelling Versata to make delivery to Ameriprise of a current copy of all "source code ..., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create,

maintain and/or enhance the licensed material without the aid of [Versata] or any other person
…"

## APPLICATION FOR TEMPORARY INJUNCTION

78.     Ameriprise realleges and reincorporates paragraphs 1-77 as if set forth herein.

79.     Ameriprise has established that it is likely to prevail on its first Cause of Action,
which alleges that Versata breached the Agreement when it wrongfully and improperly purported
to terminate the Agreement.

80.     Ameriprise has established that it is likely to prevail on its second Cause of
Action, which alleges that Versata breached the Agreement when it incorporated software to
which third parties own rights into DCM.

81.     Ameriprise has established that it is likely to prevail on its third Cause of Action,
which alleges that Defendant breached the Agreement when it failed to comply with its escrow
obligations.

82.     The requested temporary injunction is necessary to prevent irreparable harm to
Ameriprise and will cause no harm to Versata.

83.     Because the requested temporary injunction is consistent with the parties'
contract, and because the public interest favors enforcement of valid contracts, the temporary
injunction is consistent with public policy considerations.

84.     The requested temporary injunction is unlikely to impose burdens on the Court.

85.     Ameriprise accordingly requests that Versata be temporarily enjoined from acting
on, or taking any action in furtherance of, its letter purporting to terminate the Agreement,
including but not limited to (a) taking any action to disable DCM; (b) taking any action to force
Ameriprise to prohibit contractors from Infosys Technologies, Ltd. or TCS from having access to
the licensed Products in order to provide services in support of the operation of Ameriprise's

AZA Law                    Fax:7136550062              Apr 16 2013 01:26pm   P013/015
                    Received:                      Apr 16 2013 01:26pm
APR-16-2013 13:29 From:SCOTT DOUGLASS        5124740731         To:159104*2#91713655006 Page:17/19

business; and (c) refusing to fulfill its contractual maintenance and support obligations so long as Ameriprise makes its contractually required payments for such services.

86.     Ameriprise further requests that Versata be ordered, within ten (10) days after the date of the Court's Order, to deposit with a third party escrow agent, identifying Ameriprise as a beneficiary of such deposit, the original source code for DCM (along with all updates to the source code) and available Documentation; and to provide Ameriprise written confirmation that it has done so, such written confirmation to include the name and contact information for the escrow agent, the account number of the escrow account, and the date and content of all deposits into the escrow account. Until otherwise ordered by the Court, Versata shall thereafter continue to meet its escrow obligations under the Agreement by making timely escrow deposits of updates and upgrades to DCM and provide the required confirmation to Ameriprise.

## PRAYER FOR RELIEF

WHEREFORE, Ameriprise requests that this Court enter a judgment and decree against Versata as follows:

(a)     Temporarily and permanently enjoining Versata from taking any actions adverse to Ameriprise with respect to its purported termination of the Agreement as more specifically set forth above;

(b)     Declaring that as a result of Versata's breaches of contract, Ameriprise is entitled to a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement and is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed;

AZA Law                     Fax:7136550062          Apr 16 2013 01:26pm  P014/015
                 Received:                  Apr 16 2013 01:25pm
APR-16-2013 13:29 From:SCOTT DOUGLASS        5124740731        To:159104*2#91713655006 Page:18/19

(c)    Declaring that Ameriprise is entitled to employ as contractors, to help

enhance and maintain the DCM, at least the following companies:  Cognizant Technology

Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services;

(d)    Imposing a constructive trust protecting Ameriprise's investment in DCM;

(e)    Awarding damages in an amount to be proven at trial, which damages

sought are within the jurisdictional limits of the court;

(f)    Attorney fees and costs pursuant to Texas Civil Practice and Remedies

Code § 37.09 and § 38.01, *et seq.*, and other applicable law;

(g)    Awarding Ameriprise its costs of court;

(h)    Awarding Ameriprise pre and post judgment interest; and

(i)    Awarding Ameriprise such other and further general relief, at law or in

equity, to which Ameriprise may be entitled.

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas  78701
Phone: (512) 495-6300
Fax:  (512) 474-0731


By     /s/ Christopher D. Sileo
       Steve McConnico
       Texas Bar No. 13450300
       E-Mail: smcconnico@scottdoug.com
       Christopher D. Sileo
       Texas Bar No. 24027977
       E-Mail: csileo@scottdoug.com

AZA Law                 Fax:7136550062          Apr 16 2013 01:26pm   P015/015
                    Received:                    Apr 16 2013 01:25pm
APR-16-2013 13:29 From:SCOTT DOUGLASS       5124740731          To:159104*2#91713655006 Page:19/19

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on April 16, 2013.

Travis Barton                          *VIA FACSIMILE* 512.495.6093
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                           *VIA FACSIMILE* 713.655.0062
Megan Bibb
Ahmad, Zavitsanos, Anaipakos, Alvi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010

/s/ Christopher D. Sileo
Christopher D. Sileo

# MASTER LICENSE AGREEMENT

Licensor (Name and Address):                    Agreement No.: AEFA100499-JW01
Trilogy Software, Inc. ( "Licensor")
6034 West Courtyard Drive
Austin, TX 78730                                Effective Date:  October 4, 1999

This Master License Agreement ("Agreement") is made and entered into as of the Effective Date
above between American Express Financial Corporation having an office at IDS Tower 10,
Minneapolis, Minnesota 55440 ("Amexco") and the Licensor specified above.

## ARTICLE 1:  PROVISION OF PROGRAMS

1.1   Under the provisions of this Agreement, Licensor agrees to grant Amexco licenses to use
Licensor's proprietary computer programs in object code only (the "**Software**") and the
documentation that Licensor makes generally available in hard copy or electronic form, to its
general customer base in conjunction with the licensing of such thereto (the
"**Documentation**") (Software and Documentation are referred to collectively as the
"**Products**") which are listed on Schedules substantially in the form attached as Exhibit A
("**Schedule**").

   1.1.1   The parties agree to enter into good faith negotiations to execute a mutually agreeable
   agreement for consulting services.  Until such an agreement is executed, this
   Agreement permits Amexco to obtain Licensor's pre-installation services to
   customize, modify and/or enhance Products, to develop programs, software and
   materials related to Products, and/or such other services as the parties mutually agree
   upon ("**Custom Services**") on an interim basis and at Licensor's standard rates.
   Custom Services along with the applicable rates shall be specified on an Interim
   Custom Service Attachment substantially in the form attached hereto as Exhibit B.

1.2   Each Schedule shall be numbered and dated to facilitate identification and when executed by
both parties shall form a separate agreement which hereby incorporates by reference, without
any further reference in the applicable Schedule, the terms and conditions of this Agreement,
as amended or modified on the applicable Schedule.  Each Schedule shall include: (i) the
Amexco site where each Product is to be delivered ("**Installation Site**"); (ii) the name and/or
other description of each Product; (iii) the date each Product is to arrive at the Installation
Site ("**Scheduled Delivery Date**"); (iv) the scope of each Product license, if different than as
defined in Article 4;  (v) the charge for the license for each Product ("**License Fee**"); (vi) the
maintenance charges for each Product, ("**Maintenance Fee**") and whether such Maintenance
Fees are monthly, quarterly, annual or otherwise; and (vii) any other provisions the parties
mutually agree upon.

   1.2.1   In the event of any inconsistency between this Agreement and any Schedule, the
   provisions of such Schedule shall govern for purposes of such Schedule.

1



EXHIBIT
B

TRILOGY 00001

1.3   Amexco, its parent, subsidiaries and "Affiliates" (as defined herein) (collectively, "**Amexco Entities**") may execute Schedules with Licensor under this Agreement and for purposes of such Schedule shall be considered "Amexco" as that term is used throughout this Agreement. An Affiliate shall mean any company, which shares with Amexco a common owner who owns 50%, or more of the outstanding voting stock in both Amexco and such company. Amexco agrees to ensure that all Amexco Entities must have agreed in writing to be bound by the terms and conditions of this Agreement prior to use of the Software. Amexco hereby agrees to provide to Licensor, within thirty (30) days of request, a then current list of Amexco Entities for whom Software may be licensed hereunder.

## ARTICLE 2:  DELIVERY; -REPRODUCTION, DISTRIBUTION AND REPORTS

2.1   Unless otherwise defined on the applicable Schedule, Licensor shall deliver one master copy of each Product (the "**Master Copy**") to Amexco on or before, but in no event later than ten (10) days after its Scheduled Delivery Date solely for the purpose of allowing Amexco to make copies of the Product that are reasonably necessary for distribution to and use by each user or server authorized per the license scope defined herein and on the applicable Schedule. For purposes of this Agreement, delivery shall be deemed complete when Licensor physically delivers or causes a third party to deliver, a Master Copy to Amexco, or makes the Master Copy available to Amexco for downloading from Licensor's File Transfer Protocol ("FTP") site, and has provided Amexco with the appropriate password to access the FTP site. Amexco's right to reproduce the Master Copy shall be limited to the Installation Site. Amexco shall assume all responsibility for the quality of the copies made hereunder.

2.2   Without limiting the foregoing, Amexco shall have the right to use the Software on temporary substitute or back-up equipment.  Subject to the terms of the Schedule, Amexco shall also be entitled to make and keep a reasonable number of copies of each Product, Update and its Documentation for its own internal use.

2.3   Amexco shall include all copyright notices, proprietary legends, and trademark and service mark attributions, any patent markings, and other indicia of ownership on all copies of the Product in the content and format as those, which were contained on the Master Copy. Amexco shall pay all duplication and distribution costs incurred by Amexco in making copies of the Products, and any updates, new releases or enhancements that Licensor makes generally available and provides to Amexco pursuant to the maintenance provisions' hereunder (the "Updates"), and shall also pay all custom duties and fees if applicable. Subject only to the license granted herein, all copies of the Software are the property of Licensor or its third party licensors, if any, from whom Licensor has obtained the marketing rights (the "Third Party Licensors").

2.4   Amexco agrees that Licensor subject to this section may, upon thirty (30) days prior written notice, enter Amexco's premises to verify Amexco's compliance with the provisions of this Agreement.   Licensor's inspections shall be limited to (i) one annual inspection; (ii) Amexco's normal business hours; and (iii) those records pertaining to the Products and Updates (as delivered to Amexco under any Schedule) licensed hereunder. Licensor's rights of inspection shall remain in effect through the period ending six (6) months from the termination or expiration of this Agreement.

2

# 99547 (revised 1/14/98)

TRILOGY 00002

## ARTICLE 3:  DOCUMENTATION AND TRAINING

3.1   Upon delivery of each Product or any Update of the Product to be made available to Amexco pursuant to the maintenance provisions herein, and contemporaneously with such delivery whenever possible, Licensor shall deliver to Amexco one (1) copy of all generally available Documentation (if applicable) for such Product or Update, and any necessary and generally available release notes or other written descriptions relating to any Update sufficient to enable a reasonable person, who is skilled in the software industry to use and to understand the use and operations of the Product or Update.  Amexco may copy the Documentation only to the extent reasonably necessary to satisfy its own internal requirements or may request Licensor to furnish additional copies at Licensor's current standard prices less any applicable discounts.

3.2   If training is required and/or included for a Product, the charge, duration, nature and other particulars applicable to such training shall be arranged pursuant to the terms and conditions of the Education Services Schedule, attached hereto as Exhibit C.

## ARTICLE 4:  SCOPE OF LICENSE AND PROPRIETARY RIGHTS

4.1   Unless otherwise agreed in this Agreement or on an applicable Schedule, subject to Amexco's fulfillment of all of its obligations hereunder, Licensor grants to Amexco a non-exclusive,  nontransferable (except as permitted herein), perpetual, worldwide license to use the Software, including any Updates, and all related Documentation, commencing upon its delivery to Amexco and continuing thereafter from the date of Amexco's acceptance of the Product or Update subject to the Warranty provisions herein, as the case may be, for the License Term specified on the Schedule, unless terminated earlier in accordance with this Agreement.

4.2   Unless otherwise agreed on an applicable Schedule, if the applicable Schedule does not define a limited number of users then the license granted shall be a Site License with unlimited users.  For the purpose of this Agreement, the parties agree that "Site License" shall mean that Amexco may use the Product(s), Updates, and related Documentation, in Amexco's business on any of its computers and at the Installation Site or any other Amexco data center location and on more than one computer at a time subject to any additional license scope restrictions provided on the Schedule.

4.3   If the default provisions of Section 5.2 do not apply, and if the Schedule designates a limited number of users then the Product licensed pursuant to the Schedule may be accessed by that designated number of individual users. Amexco may designate different users at any time without notice to Licensor so long as the permitted number of users is not exceeded.

4.4   Unless otherwise agreed and specified in the applicable Schedule, Licensor agrees that Amexco shall have the right, to (a) use, copy, execute, display, enhance, update, maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products, Updates and Documentation and/or materials provided to Amexco hereunder only to the

3

TRILOGY 00003

extent that such use, copying, executing, displaying, enhancing, updating, and maintaining are described in the applicable Documentation and (b) use the Products in conjunction with other programs and/or materials.

4.5   Amexco shall not (i) use the Products to process, or permit to be processed, the data of any other party unless such data is processed for Amexco purposes only; or (ii) use the Products for service bureau or commercial time-sharing use, unless otherwise expressly permitted in the License Schedule.

4.6   Unless otherwise agreed and specified in the applicable Schedule, with regard to the object code and source code version of any software code developed by Licensor in its performance of Custom Services for Amexco as defined in Section 1.1.1 of this Agreement (the "Programs"), Licensor hereby grants to Amexco, at no additional charge (upon payment of all service fees attributable to such services), a worldwide, nonexclusive, license (i) to modify and otherwise create derivative works based on the Programs and (ii) to reproduce, distribute, perform and display (publicly or otherwise), and otherwise use and exploit the Programs and derivative works thereof in connection with the Software as defined herein.

4.7   Amexco's use of any Products labeled on Schedules as "Software Tools" is limited to those locations where Amexco conducts its business in the ordinary course (the "Authorized Locations") and Amexco shall use reasonable efforts to ensure that all such users have been adequately trained and are competent in the use of the Software Tools.

4.8   Unless otherwise specifically provided in the License Schedule, users of the Software may include only (i) employees of the Amexco Entity or Entities who have entered into the applicable Schedule and; (ii) subject to Article 10, "Confidential Information", third party contractors of Amexco Entities who do not, to the best of Amexco's knowledge, compete with Licensor in the development of enterprise compensation or configuration software ("Permitted Contractors").    Amexco shall ensure that all Permitted Contractors have signed a Non-Disclosure Agreement substantially the same as that attached hereto.

   4.8.1   Nothing herein shall limit Amexco's right to access and use Products in connection with any associated or interconnected networks, peripherals, equipment and devices, unless otherwise specifically prohibited or limited in an applicable Schedule.

4.9   Licensor retains title to the Products provided hereunder and does not convey any proprietary rights or other interest therein to Amexco, other than the licenses granted hereunder. Amexco agrees not to sell, assign or otherwise transfer the Product(s) or the license granted hereunder, or sublicense the Products to any third party, except as otherwise provided in this Agreement.

4.10   At least sixty (60) days prior to the expiration of each License Term (if applicable), Licensor shall notify Amexco of such expiration and Amexco shall have the option to continue the license of such Product for any additional License Term selected by Amexco. Amexco shall notify Licensor in writing if it opts to continue a Product license and License Term for any such continuation.   The License Fee applicable to any continuation of a Product license

4

("Renewal Fee") shall be the lesser of: (a) the License Fee applicable to the current License Term (if the terms are equivalent); (b) Licensor's then current License Fee applicable to the renewal License Term; or (c) such other license fee as is mutually agreed upon by the parties. Notwithstanding anything herein to the contrary, License Terms shall continue at no additional charge to the end of the License Term or for sixty (60) days after receipt of Licensor's notice referred to above, whichever is later, and thereafter, if Amexco exercises the option to continue the license as provided hereunder.

## Article 5: ESCROW AGREEMENT

5.1 The parties agree to put source code and all the generally available Documentation thereto, for a Product or Updates ("Deposit Materials") in escrow with an independent third party escrow agent in accordance with the terms and conditions of a source escrow agreement materially similar to that which has been attached hereto as Exhibit D. Documentation will be placed in escrow within ten (10) days of when the Software is placed in escrow.

5.2 Licensor shall deposit the Deposit Materials with Data Securities International Inc. ("DSI"), no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI. Licensor shall employ reasonable efforts to confirm that Amexco has received notice of any deposit pursuant to the terms of the attached escrow agreement. Licensor agrees to update the escrow at least every six (6) months. In addition to the periodic update in the preceding sentence, Licensor shall also use commercially reasonable efforts to update the escrow upon delivery of an Update (not including patches or other minor Updates) to Amexco pursuant to the support and maintenance provisions herein.

5.3 The release conditions triggering the notification and release provisions of the source code escrow agreement shall be:

    a. Licensor's uncured, material breach of its maintenance or support obligations imposed on it pursuant to a license agreement between Licensor and Amexco provided that Amexco has paid all applicable fees for such maintenance and support; or

    b. Licensor's failure to continue to do business in the ordinary course and it's business is not continued by another corporation or entity; The institution of bankruptcy, receivership, insolvency, reorganization or other similar proceedings by or against Licensor under the Federal Bankruptcy Code, if such proceedings have not been dismissed or discharged within sixty (60) calendar days after they are instituted; the insolvency or making of an assignment for the benefit of creditors or the admittance of any involuntary debts as they mature by Licensor; or

    c. Licensor materially breaches the Year 2000 Warranty as specified in Article 8 of this Agreement and fails to cure such breach pursuant to the support and maintenance provisions.

## ARTICLE 6: MAINTENANCE

6.1

6.2

6.3

6.4

6

TRILOGY 00006

6.5

6.6.

6.7

6.8

ARTICLE 7:  INVOICING; PAYMENT; DISCOUNTS

7.1

    7.1.1

    7.1.2

# 99547 (revised 1/14/98)

TRILOGY 00007

7.2

7.3

## ARTICLE 8: WARRANTIES

8.1   Licensor warrants to Amexco that:   (i) Licensor has the right to furnish the Products, Documentation, and other materials and perform the Maintenance and other services as specified in this Agreement ("Product Materials and Services") covered hereunder free of all liens, claims, encumbrances and other restrictions; (ii) to the best of its knowledge, the Product Materials and Services furnished by Licensor and/or Amexco's use of the same hereunder do not violate or infringe the rights of any third party or the laws or regulations of any governmental or judicial authority; (iii) Amexco's use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement) or any entity asserting a claim under or through Licensor; (iv) Licensor has not knowingly and shall not knowingly insert any code which would have the affect of disabling or otherwise shutting down all or any portion of any Product licensed hereunder; (v) Licensor shall use its reasonable commercial efforts to ensure that no viruses or similar items are knowingly coded or introduced in any Product licensed hereunder; and (vi) that at the time this Agreement is executed, Licensor is not a party to any litigation that Licensor reasonably believes will adversely affect the rights granted to Amexco by Licensor hereunder.

8.2   Licensor warrants that the Software shall materially conform to the applicable Documentation, including but not limited to operating in conjunction with any third party software that is expressly referenced in the Documentation, for a period of one hundred and eighty (180) days, not including any Cure Period or Second Cure Period as defined herein, following delivery of the applicable Software, upon delivery to the Installation Site (the "Warranty Period"). If prior to the end of the Warranty Period, Amexco has not notified Licensor of the non-conformity of the Software, Licensor shall have met its warranty obligations under this Article 8.

   8.2.1 If, during the Warranty Period, any Software fails to materially conform to the applicable Documentation and Amexco notifies Licensor in writing setting forth in reasonable detail the degree and nature of the non-conformity and reproducing the non-conformity.  Licensor shall promptly review the claim by Amexco.  If Licensor confirms that the reported non-conformity is a non-conformity to the

8

TRILOGY 00008

applicable Software Documentation and is not due to (i) modifications made to the Software by someone other than Licensor; (ii) combination of the Software with other product(s) where such other product(s) cause(s) the non-conformity; or (iii) negligence or misuse, then Licensor shall use commercially reasonable efforts to repair or replace the materially non-conforming Software and deliver to Amexco repaired or replacement Software that materially conforms to the applicable Documentation within the time period quoted by Licensor to Amexco (the "Cure Period"), or if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) days following confirmation by Licensor of the non-conformity. The time elapsed during such Cure Period shall not count against the Warranty Period, and the Warranty Period shall recommence from the point in time where it was suspended, thirty (30) days from the time that Licensor delivers to Amexco the repaired or replaced Software. Unless Licensor receives a written notification from Amexco that the repaired or replaced Software does not materially conform to the applicable Documentation within thirty (30) business days following receipt of the repaired or replaced Software, Licensor shall have met its warranty obligation under this Article 8. Notwithstanding the foregoing and provided that Amexco has paid the appropriate Support and Maintenance Service fees pursuant to this Agreement or an applicable schedule, Licensor shall continue to support and maintain the accepted Software pursuant to the Support and Maintenance provisions herein.

8.2.2 If Licensor receives a written notification from Amexco within such thirty (30) business day period that a non-conformity continues to exist, the Warranty Period applicable to such Software shall be extended and Licensor shall continue to have the right to use commercially reasonable efforts to either repair/replace the materially nonconforming Software within the time period quoted by Licensor to Amexco, if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) business days following confirmation by Licensor of the nonconformity (the "Second Cure Period), whereupon the previous provisions for Licensor to fulfill or be deemed to have fulfilled its warranty obligations and the suspension of the Warranty Period shall apply. If Licensor is unable to repair/replace non-conformities of any Software subject to a Software warranty under this Article 8 after two (2) attempts to do so, then Amexco's remedy shall be as follows: Amexco shall be relieved of any obligation to pay the License Fee applicable to the materially nonconforming Software and shall receive a full refund for any fees already paid to Licensor, provided that upon the parties' mutual written agreement that the Software continues to not conform to the applicable Documentation after two (2) attempts to do so, Amexco immediately ceases further use of the applicable Software, destroys all copies of the applicable Software and certifies such destruction in writing to Licensor.

8.2.3 If Licensor does not confirm that the reported non-conformity is a non-conformity or if the non-conformity reported is due to (i) modifications made to the Software by someone other than Licensor, (ii) functions contained in Software operating in the combinations that may be selected for use by Amexco other than as stated in the Documentation, or (iii) negligence or misuse, then Licensor shall have no obligation to take any action as part of any Software warranty.

9

TRILOGY 00009

8.3   Other Exclusions. Licensor does not warrant and the Licensor warranties contained herein expressly do not provide or assure that:

- Use of Products shall meet Customer's requirements;

- Operation of Products shall be uninterrupted or error free.

8.4   Licensor warrants that:  (i) during the Warranty Period, all media, if any, containing the Software that is delivered to Amexco shall be free from any defects in materials and workmanship and (ii) updates to the Documentation provided by Licensor hereunder shall be at a minimum, the level of and comprehensiveness reflected in the previous version of the Documentation.

8.5   Year 2000 Compliance and Warranty. Licensor warrants to Amexco that the Products provided hereunder have been fully tested and will accurately process all dates including, but not limited to, between the twentieth and twenty-first century in either direction, including leap years, when properly installed, properly used in accordance with the applicable Documentation, and unmodified by Amexco, provided all items used in combination with Products properly exchange unambiguous and year 2000 compliant date data. Without limiting the generality of the foregoing, Licensor warrants that all Software licensed from Licensor shall (a) manage and manipulate data involving all dates from the 20th and 21st centuries without functional or data abnormality related to such dates; and (b) manage and manipulate data involving all dates from the 20th and 21st centuries without inaccurate results related to such dates.  At no additional cost to Amexco (beyond payment of the license fees), Licensor shall continue to support and maintain the Software so that it complies with the provisions of this warranty and any non-compliance will be addressed through the Support and Maintenance provisions of this Agreement at no additional charge and addressed as a Severity Level One error. Licensor shall have no warranty obligation for any nonconformance with the above warranty, which arises:

   i)   out of a defect in any third party software, or other software or hardware product in use by Amexco not acquired from Licensor, which causes the Software not to conform to this warranty when used in combination with such other software or hardware product;

   ii)   when Amexco has not installed the most recent Update of the Software, where use of such Update would avoid the nonconformance; or

   iii)   when such nonconformance is caused, present or inherent in the data, database or native file system that the Software accesses, including, but not limited to, dates or date formats that do not reflect the century.

8.6   Licensor warrants to Amexco that Updates to the Software provided to Amexco hereunder shall not materially degrade, impair or otherwise materially adversely affect the essential functionality of the Software provided hereunder.

8.7   Licensor warrants that any Maintenance or other services provided by Licensor hereunder shall be performed in a good, workmanlike and professional manner by qualified personnel. Licensor personnel will observe and comply with Amexco's security procedures, rules,

10

TRILOGY 00010

regulations, policies, working hours and holiday schedules.  In performing Maintenance services at Amexco locations, Licensor personnel will use reasonable commercial efforts to minimize any disruption to Amexco's normal business operations.

8.8    EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## ARTICLE 9: INTELLECTUAL PROPERTY INFRINGEMENT

9.1    Licensor agrees to defend and/or handle at its own expense, any claim or action against Amexco for actual or alleged infringement of any intellectual or industrial property right, including, without limitation, trademarks, service marks, United States or Canadian patents, copyrights, misappropriation of trade secrets or any similar proprietary rights (other than patents issued in foreign jurisdictions not expressly provided herein), based upon the Software furnished hereunder by Licensor or based on Amexco's use thereof in accordance with the applicable Documentation.  Licensor further agrees to indemnify and hold Amexco harmless from and against any and all liabilities, losses, costs, damages finally awarded or settled and expenses (including reasonable attorneys' fees) associated with any such claim or action.  Amexco may participate in the defense provided it pays its own costs associated with such participation.

9.2    Licensor shall have no liability under this Article 9 unless:

9.2.1    Amexco notifies Licensor in writing immediately after Amexco becomes aware of a claim or the possibility thereof and Licensor is unaware of such claim;

9.2.2    Licensor has sole control of the settlement, compromise, negotiation, and defense of any such action consistent with Amexco's rights hereunder unless otherwise mutually agreed to in writing and provided however that Licensor shall seek Amexco's consent prior to a settlement in which Amexco's rights, other than those addressed in this Section 9, are affected, or in which Amexco is otherwise obligated; and

Amexco cooperates, in good faith, in the defense of any such legal action.

9.3    Licensor shall have no liability for any claim of infringement based on (i) Software that has been modified by parties other than Licensor or parties acting as agents of Licensor; (ii) Amexco's use of the Software in conjunction with data where such data gave rise to the infringement claim; or (iii) Amexco's use of the Software with non-Licensor Software or hardware, where such other software or hardware gave rise to the infringement claim, and absent use of such hardware or software no claim would have been valid.

9.4    If any Product becomes, or in Licensor's opinion are likely to become, the subject of any such claim or action, then, Licensor, at its expense may either:  (i) procure for Amexco the right to

11

TRILOGY 00011

continue using same as contemplated hereunder; (ii) modify same to render same non-infringing (provided such modification does not adversely affect Amexco's use as contemplated hereunder); (iii) replace same with equally suitable, functionally equivalent, compatible, non-infringing products, materials and/or services; or iv) if neither of the foregoing options is commercially reasonable, terminate the license for the Product. Upon such termination of the license upon Amexco's return Product, Licensor will refund to Amexco, as Amexco's sole remedy for such license termination, all License fees paid by Amexco for the terminated license, less an amount equal to one-sixtieth (1/60th) of the license fees for each month or any portion thereof which has elapsed since the Schedule Effective Date of such terminated license. THIS SECTION STATES THE ENTIRE LIABILITY OF LICENSOR WITH RESPECT TO ANY CLAIM OF INFRINGEMENT REGARDING THE PRODUCT.

ARTICLE 10: CONFIDENTIAL INFORMATION

10.1    Each party agrees to regard and preserve as confidential, all Confidential Information of the other which may be obtained from any source. In maintaining the confidentiality of Confidential Information hereunder, each party agrees it shall not, without first obtaining the written consent of the other, disclose or make available to any person, firm, or enterprise, reproduce or transmit, or use for its own benefit or the benefit of others, any such Confidential Information. Each party agrees that its own use and/or distribution of the other party's Confidential Information shall be limited to its own employees on a "need to know" basis; provided, however, that Amexco may also disclose Licensor's Confidential Information to employees of Amexco, its parent, subsidiary and affiliates, and to Permitted Contractors retained by Amexco for purposes specifically related to Amexco's use or evaluation of such Confidential Information, and who agree in writing to be bound by provisions no less restrictive than those herein. Neither party shall disassemble, decompile or otherwise reverse engineer any software product of the other party and, to the extent any such activity may be permitted, the results thereof shall be deemed Confidential Information subject to the requirements of this Agreement.

10.2    "Confidential Information" of Amexco shall include both specific information relating to the project or work effort which originated Amexco's desire to exchange information and the entering into of this Agreement or any Schedule issued hereunder, as well as all other information relating to the past, present and future plans, businesses, activities, customers and suppliers of Amexco, its parent, subsidiaries and affiliates which is obtained by Licensor in connection with the exchange of information contemplated hereunder. "Confidential Information" of Licensor shall include both specific information relating to the project or work effort for which Licensor's provision of products, software, or services may be provided to Amexco, as well as other information related to Licensor's past, present and future plans, businesses, activities, customers, suppliers, its subsidiaries and affiliates which is obtained by Amexco in connection with the exchange of information as contemplated hereunder. Without limiting the generality of the foregoing, Licensor's "Confidential Information" shall also include all information and materials disclosed to Amexco regarding Licensor's software products or software product development. In preserving the confidentiality of the disclosing party's Confidential Information, the receiving party shall not be required to take any greater steps than it takes to protect the confidentiality of its own similar information, but in no event shall such steps be less than reasonable.

12

10.3 Both parties acknowledge and agree information shall not be considered "Confidential Information" to the extent, but only to the extent, that such information: (a) is already known to the receiving party free of any confidentiality obligation at the time it is obtained from the other party; (b) is or becomes publicly known or available through no wrongful act of the receiving party; (c) is rightfully received from a third party without restriction; (d) is independently discovered or developed by the receiving party using individuals who have had no contact with the Confidential Information of the other party; or (e) is required to be disclosed in response to a valid order of a court or authorized agency of government, provided that notice is given promptly to the party whose Confidential Information is to be so disclosed so that such party may seek a protective order and/or engage in other efforts to minimize the required disclosure.

10.4 Each party further acknowledges and agrees that in the event of a breach or threatened breach by it of the provisions of this Confidentiality Agreement, the other party will have no adequate remedy in money or damages and accordingly shall be entitled to seek an injunction against such breach or threatened breach; provided, however, no specification in this Confidentiality Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition of any legal or equitable remedies in the event of a breach or threatened breach of this Confidentiality Agreement.

10.5 Information that Licensor considers "Highly Confidential" (documents, notes, or other physical embodiments of or reflecting the Confidential Information) must be marked as such with appropriate notification to Amexco prior to deliver of the "Highly Confidential" information. Licensor may request the return of any information marked as "Highly Confidential" including any copies thereof that are in the possession or control of Amexco. Upon the request of Licensor, a project manager of Amexco shall verify, and provide to Licensor written certification of, the completeness of the delivery of such materials. Notwithstanding any of the foregoing, in the event of a breach by Amexco of the Confidentiality provisions herein, or Licensor's termination of a license issued to Amexco under the applicable schedule in accordance with the termination provisions herein, Licensor may request the return of any Software Tools and related documentation including any copies thereof that are in the possession or control of Amexco regardless of whether such Software Tools or related documentation are designated as "Highly Confidential".

## ARTICLE 11: LIMITATION OF LIABILITY

IN NO EVENT SHALL EITHER PARTY BE LIABLE, ONE TO THE OTHER, FOR ANY INDIRECT, SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

IN ADDITION TO THE FOREGOING, EXCEPT FOR LICENSOR'S LIABILITY ARISING FROM (I) ITS GROSS NEGLIGENCE WHILE PERFORMING ANY SERVICES HEREUNDER; (II) DEATH, BODILY INJURY OR TANGIBLE PROPERTY DAMAGE CAUSED BY LICENSOR WHILE PERFORMING SERVICES HEREUNDER; (III) INDEMNIFICATION OBLIGATIONS, UNDER ARTICLE 9 OF THIS AGREEMENT; (IV) LICENSOR'S FAILURE TO MEET ANY OF ITS OBLIGATIONS RELATING TO CONFIDENTIAL INFORMATION UNDER ARTICLE 10 OF THIS AGREEMENT; AND/OR (V) ANY WILLFUL MISCONDUCT

13

TRILOGY 00013

OR MALICIOUS ACTS, THE LIMIT OF LICENSOR'S LIABILITY (IN TORT (INCLUDING CLAIMS OF NEGLEGENCE) OR BY STATUTE OR OTHERWISE) TO AMEXCO FOR DIRECT DAMAGES CONCERNING  PERFORMANCE OR NON-PERFORMANCE, OR OTHERWISE, BY LICENSOR IN ANY MANNER RELATED TO THIS AGREEMENT OR ANY APPLICABLE SCHEDULE, FOR ANY AND ALL CLAIMS SHALL NOT, IN THE AGGREGATE, EXCEED THE TOTAL FEES PAID BY AMEXCO TO LICENSOR UNDER THE APPLICABLE SCHEDULE FOR THE SOFTWARE OR SERVICES THAT GAVE RISE TO SUCH LIABILITY.

## 12. GENERAL

12.1    TERM: This Agreement shall commence as of the Effective Date and continue thereafter unless terminated as provided hereunder.  Each Schedule shall become binding when duly executed by both parties and shall continue thereafter unless terminated as permitted hereunder.  Notice of termination of any Schedule shall not be considered notice of termination of this Agreement.

12.2    TERMINATION:  In the event of any material breach of this Agreement by one party, the other party may (reserving cumulatively all other remedies and rights under this Agreement and at law and in equity) terminate the Schedule(s) involved, in whole or in part, by giving thirty (30) days' written notice thereof; provided, however, that any such termination shall not be effective if the party in breach has cured the breach of which it has been notified in writing prior to the expiration of said thirty (30) days.  In the event of any termination by Amexco in accordance with this provision, Amexco shall, effective as of the date of such termination, have a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee (upon full payment of all fees due under the Schedule), but otherwise subject to and in accordance with all the provisions of this Agreement.

In addition to the foregoing, Amexco shall have the right to terminate this Agreement and/or any applicable Schedule(s), by giving ninety (90) days written notice to Licensor. Except for the case of termination by Amexco due to Licensor's material breach of this agreement (as described above), upon termination of this Agreement and/or any Schedule or license hereunder, Amexco's rights to the affected Software shall cease. Amexco shall immediately stop using such Software and shall return such Software to Licensor, or destroy all copies thereof.  In addition, Amexco shall provide Licensor with notarized, written certification signed by an officer of Amexco, that all copies of the Software have been returned or destroyed and that no copies have been retained by Amexco for any purpose whatsoever.

Termination of this Agreement or any license created hereunder shall not limit either party from pursuing other remedies available to it, including injunctive relief, nor shall such termination relieve Amexco's obligation to pay all fees that have accrued and are due or are otherwise owed by Amexco under any Schedule or exhibit.

12.3    TAXES:  Amexco agrees to pay all taxes levied against or upon the Products and any services or their use hereunder, exclusive, however, of taxes based on Licensor's income, which taxes shall be paid by Licensor.  If Licensor pays any tax for which Amexco is

14

responsible hereunder, Amexco will reimburse Licensor upon Amexco's receipt of written proof of payment.

12.4    EXCUSABLE DELAYS:  In no event shall either party be liable to the other for any delay or failure to perform due to cause or causes beyond the reasonable control and without the fault or negligence of the party claiming excusable delay.  Such causes shall include, but are not limited to, acts of God, floods, fires, loss of electricity or other utilities.

12.5    NOTICES:  Unless otherwise specified all notices shall be in writing and delivered personally or mailed, first class mail, postage prepaid, to the addresses of the parties set forth at the beginning of this Agreement, to the attention of the undersigned; provided, however, that a copy of any Licensor notice of material breach to Amexco shall also be sent to the Office of the General Counsel Technology Law Group, World Financial Center, American Express Tower, 200 Vesey Street, 49th floor, New York, New York 10285-4900.  A copy of any Amexco notice of material breach to Licensor shall also be sent to the Office of the General Counsel, 6034 West Courtyard Drive, Austin, TX 78735.  As to any Schedule, notices shall also be sent to the signatories of the Schedule involved.  Either party may change the address(es) or addressee(s) for notice hereunder upon written notice to the other.  All notices shall be deemed given on the date delivered or when placed in the mail as specified herein.

12.6    ADVERTISING OR PUBLICITY:  Except as set forth in any Schedule, neither party shall use the name or marks, refer to or identify the other party in advertising or publicity releases, promotional or marketing correspondence to others without first securing the written consent of such other party's authorized representative.

12.7    ASSIGNMENT:  Neither party may assign this Agreement, any Schedule and/or any rights and/or obligations hereunder without the written consent of the other party, such consent not to be unreasonably withheld, and any such attempted assignment shall be void. Notwithstanding the foregoing, Amexco may assign this Agreement, any Schedule and/or any of its rights and/or obligations hereunder  (including all licenses granted to Amexco hereunder) to any Amexco Entity .

12.8    GOVERNING LAW: In all respects this Agreement shall be governed by the substantive laws of the State of New York without regard to conflict of law principles.

12.9    MODIFICATION, AMENDMENT, SUPPLEMENT AND WAIVER:  No modification, course of conduct, amendment, supplement to or waiver of this Agreement, any Schedule, or any provisions hereof shall be binding upon the parties unless made in writing and duly signed by both parties.  At no time shall any failure or delay by either party in enforcing any provisions, exercising any option, or requiring performance of any provisions, be construed to be a waiver of same.

12.10    SEVERABILITY:  If any of the provisions of this Agreement are held invalid, illegal or unenforceable, the remaining provisions shall be unimpaired.

12.11    HEADINGS:  Headings are for reference and shall not affect the meaning of any of the provisions of this Agreement.

# 99547 (revised 1/14/98)

TRILOGY 00015

12.12    ENTIRE AGREEMENT: The Exhibits, Schedules and attachments to this Agreement are incorporated by this reference and shall constitute part of this Agreement.    This Agreement constitutes the entire agreement between the parties and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day, month and year first written above.


American Express Financial Corporation        Trilogy Software, Inc.

By: _____                By: _____

Name: _____                Name: _____
        (Type or Print)                              (Type or Print)

Title: _____                Title: Associate General Counsel

Date: _____                 Date: 10-26-99



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

STEVEN J. MITBY
DIRECT 713.600.4910
MAIN 713.655.1101
FAX 713.655.0062

SMITBY@AZALAW.COM

September 17, 2012

*Via Email: jporadek@faegre.com*
Mr. James W. Poradek
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

Re:   Termination of October 4, 1999 Master License Agreement

Dear Jim:

This letter shall serve as notice that Ameriprise has materially breached the confidentiality provisions of its October 4, 1999 Master License Agreement (the "Agreement") with Versata Software, Inc. (f.k.a., Trilogy Software, Inc.)  Unless Ameriprise cures these breaches within thirty (30) days or less, the Agreement will terminate effective October 17, 2012.  If the Agreement terminates, Ameriprise (and its affiliates and subsidiaries) must immediately stop using all Versata-developed software and immediately must return all of Versata's software and other confidential information by the October 17, 2012 deadline.  This notice is given pursuant to Section 12.2 of the Agreement and a copy is being provided to the office specified in Section 12.5 of the Agreement.

As you know, the Agreement contains a number of specific provisions designed to protect Versata's software and other confidential information against unauthorized disclosure or misuse.  Among other things, the Agreement restricts access to Versata's software to "Permitted Contractors" that "do not compete with" Versata "in the development of enterprise compensation or configuration software" (Section 4.1); requires that any contractor having access to Versata's software or other confidential information execute a non-disclosure agreement that is at least as restrictive as the one signed by Ameriprise (Sections 4.1 and 10.1); and prohibits any disassembling, decompiling, or reverse-engineering of Versata's software by anyone working for Ameriprise (Section 10.1).

These provisions are absolutely essential to protect Versata's intellectual property.  For this reason, the Agreement provides that Versata is entitled to seek injunctive relief to stop potential violations, along with a host of other remedies (Section 10.4).

**EXHIBIT**
C

Mr. James W. Poradek
September 17, 2012
Page 2

Versata is deeply concerned about Ameriprise's apparent failure to honor the confidentiality provisions of the Agreement. Ameriprise has known since at least 2010 that one of its contractors, Infosys, has been accused of decompiling and reverse-engineering Versata source code at Ameriprise. Indeed, when Versata first discovered these violations, Versata immediately notified Ameriprise. At the time, Ameriprise agreed to cooperate with the enforcement of Versata's rights and ensure compliance with the Agreement. Most importantly, Ameriprise agreed to remove Infosys from any roles where Infosys would act as a "Permitted Contractor" under the Agreement and ensure that Infosys would no longer have access to, or use, Versata's technology. Specifically we were told that Infosys would immediately be moved to a project manager role where they would have no access or use of our software.

It recently has come to Versata's attention that Ameriprise has never acted on its promises to prevent Infosys from using and accessing Versata's software. In a recent discussion, Ameriprise officials have stated that at least thirty Infosys employees continue to use, and have access to, Versata's software. This violates Infosys's previous commitments to Versata and is not permitted under the Agreement.

In recent court filings, Infosys has taken the position that Ameriprise is solely responsible for protecting Versata's software and other confidential information. While we disagree with Infosys's view that its separate agreements with Versata do not also prohibit this reverse-engineering of our software, Versata refuses to allow its intellectual property to be compromised while Ameriprise's agent engages in a tug-of-war of fault with Ameriprise. Therefore, we demand termination of all access of any kind that Infosys may have to Versata's software, source code, documentation, and other confidential information. We also require that Ameriprise produce any non-disclosure agreements signed by Infosys (referenced in Section 4.2 of the Agreement).

In addition, Versata is concerned that Ameriprise has not taken steps to prevent TCS from having access to Versata's software and other confidential information. TCS is not a "Permitted Contractor" and has not been authorized to do work by Versata. Moreover, TCS is a direct competitor of Versata in the enterprise compensation and configuration software markets. For these reasons, Ameriprise's use of TCS is an additional violation of the Agreement. Versata put Ameriprise on notice of this issue on August 17, 2011, yet Ameriprise continues to persist in this this activity with TCS. We also request that Ameriprise produce any non-disclosure agreements signed by TCS.

Finally, we also have received information that Ameriprise may have allowed IBM Global Services to work on Versata's software. If this is true, it would constitute yet another violation of the Agreement. We request that Ameriprise advise us immediately whether IBM – or any other third parties – have had access to Versata's software.

Mr. James W. Poradek
September 17, 2012
Page 3

Versata values its relationship with Ameriprise and remains hopeful that a healthy relationship can emerge in which both parties honor their confidentiality obligations. However, Ameriprise's apparent indifference as to protecting Versata's intellectual property rights from competitor use (and misuse) is extremely disturbing and very dangerous to the business. This problem requires immediate correction if Ameriprise wishes to continue using any Versata software after October 17, 2012.

Without any firsthand knowledge yet as to Ameriprise's role in the Infosys matter, my client continues to take Ameriprise at its word and believe Ameriprise's promise that Ameriprise has had no role in the reverse-engineering and confidentiality breaches that are currently being litigated in Texas. However, my client also believes that Ameriprise's failure to remove Infosys, TCS and other competitors from having access and use of the software shows a level of indifference that is both disappointing and dangerous. Infosys's recent filing (mentioned above) is also a very complicating development. For these reasons we respectfully propose that the parties convene an immediate mediation (within the next 15 days) where we would engage a neutral third party to help the two companies resolve what is becoming a very tense situation.

If Ameriprise is interested in engaging in a mediated dispute resolution process, please contact me at your earliest convenience to discuss potential mediators and scheduling.

Sincerely,

Steven J. Mitby

Cc:     Ameriprise Financial, Inc.
        IDS Tower 10
        Minneapolis, Minnesota 55440

        Office of the General Counsel Technology Law Group
        World Financial Center
        American Express Tower
        200 Vesey Street, 49th Floor
        New York, New York 10285-4900

SJM/cb

4827-8425-2433, v. 1

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs | § § | OF TRAVIS COUNTY, TEXAS |
| v. | § § | |
| | § | |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| Defendants | § | 53RD JUDICIAL DISTRICT |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. have set a hearing on Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaim for Breach of Warranty on Thursday, June 27, 2013, at 2:00 p.m. in the 53rd Judicial District Court of Travis County, Texas.

Respectfully submitted,

McGinnis, Lochridge & Kilgore, L.L.P.
Patton G. Lochridge
State Bar No. 12458500
Travis C. Barton
State Bar No. 00790276
plochridge@mcginnislaw.com
tcbarton@mcginnislaw.com
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512)495-6000
(512)495-6093 Fax


_Travis C. Barton_
_____
Travis C. Barton


Ahmad Zavitsanos Anaipakos Alavi, Mensing, P.C.
Amir Alavi
State Bar No. 00793239
aalavi@azalaw.com
Demetrios Anaipakos
State Bar No. 00793258
danaipakos@azalaw.com
Benjamin F. Foster
State Bar. No. 24080898
bfoster@azalaw.com
1221 McKinney Street, Suite 3460
Houston, Texas 77010
(713) 655-1101
(713) 655-0062 Fax

ATTORNEYS FOR PLAINTIFFS

- 2 -

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via electronic mail, on May 24, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2600 (Telephone)
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Ave., Suite 1500
Austin, TX 78701
smcconnico@scottdoug.com
csileo@scottdoug.com

_Travis C. Barton_
_____
Travis C. Barton

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs | § § | OF TRAVIS COUNTY, TEXAS |
| v. | § § | |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| Defendants | § | 53RD JUDICIAL DISTRICT |

## AMENDED NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. have re-set a hearing on Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaim for Breach of Warranty for Wednesday, June 26, 2013, at 2:00 p.m. in the 53rd Judicial District Court of Travis County, Texas.

Respectfully submitted,

McGinnis, Lochridge & Kilgore, L.L.P.
Patton G. Lochridge
State Bar No. 12458500
Travis C. Barton
State Bar No. 00790276
plochridge@mcginnislaw.com
tcbarton@mcginnislaw.com
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512)495-6000
(512)495-6093 Fax


_Travis C. Barton_

Travis C. Barton


Ahmad Zavitsanos Anaipakos Alavi, Mensing, P.C.
Amir Alavi
State Bar No. 00793239
aalavi@azalaw.com
Demetrios Anaipakos
State Bar No. 00793258
danaipakos@azalaw.com
Benjamin F. Foster
State Bar. No. 24080898
bfoster@azalaw.com
1221 McKinney Street, Suite 3460
Houston, Texas 77010
(713) 655-1101
(713) 655-0062 Fax

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via electronic mail, on May 31, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600 (Telephone)
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Ave., Suite 1500
Austin, TX 78701
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis C. Barton

_____
Travis C. Barton