# EXHIBIT A
# PART 4 OF 12

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and VERSATA | § | |
| DEVELOPMENT GROUP, INC., f/k/a | § | |
| TRILOGY DEVELOPMENT GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, INC., | § | |
| AMERICAN ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |
| | § | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that a hearing on third party McCamish Systems, L.L.C.'s Motion to Quash Plaintiffs' Notice of Intent to Take the Oral and Videotaped Deposition of the Corporate Representative of McCamish Systems and *Subpoena Duces Tecum*, and Motion for Protective Order, has been set for Thursday, the 13th of June, 2013, at 2:00 pm.

Respectfully submitted this 5th day of June, 2013.

FISH & RICHARDSON P.C.

By:   /s/ William Tommy Jacks
    William Tommy Jacks
    Texas Bar No. 10452000
    FISH & RICHARDSON P.C.
    One Congress Plaza, Suite 810
    111 Congress Avenue
    Austin, Texas 78701
    (512) 472-5070 (Telephone)
    (512) 320-8935 (Facsimile)
    jacks@fr.com

    John Michael Gaddis
    Texas Bar No. 24069747
    FISH & RICHARDSON P.C.
    1717 Main Street, Suite 5000
    Dallas, Texas  75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    gaddis@fr.com

    David M. Barkan
    Roger S. Borovoy
    FISH & RICHARDSON P.C.
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    (650) 839-5070 (Telephone)
    (650) 839-5071 (Facsimile)
    barkan@fr.com
    borovoy@fr.com

    ***Attorneys for Third Party Witness***
    MCCAMISH SYSTEMS, L.L.C.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 5, 2013, to all counsel of record in the manner indicated below, pursuant to Rule 21a of the Texas Rules of Civil Procedure.

**VIA ELECTRONIC MAIL**
**AND U.S. MAIL**

Patton G. Lochridge
Travis C. Barton
McGinnis Lochridge & Kilgore, L.L.P.
600 Congress Avenue, Suite 2100
Austin, Texas  78701
(512) 495-6000
(512) 495-6093 fax
plochridge@mcginnislaw.com
tcbarton@mcginnislaw.com

Demetrios Anaipakos
Steven Mitby
Ahmad, Zavitsanos & Anaipakos, P.C.
3460 One Houston Center
1221 McKinney
Houston, Texas 77010
(713) 655-1101
(713) 655-0062 fax

*Attorneys for Plaintiffs*
Versata Software, Inc.,
f/k/a Trilogy Software, Inc., and
Versata Development Group, Inc.,
f/k/a Trilogy Development Group, Inc.

Steve McConnico
smcconnico@scottdoug.com
Christopher D. Sileo
csileo@scottdoug.com
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas  78701
(512) 495-6300
(512) 474-0731 fax

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
(612) 340-2600
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

*Attorneys for Defendants*
Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc.

*/s/ William Tommy Jacks*

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs | § § | OF TRAVIS COUNTY, TEXAS |
| v. | § § | |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| Defendants | § | 53RD JUDICIAL DISTRICT |

## SECOND AMENDED NOTICE OF TEMPORARY INJUNCTION HEARING

PLEASE TAKE NOTICE that Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. have re-set the hearing for a temporary injunction to July 1, 2013, at 9:00 a.m. in the 53rd Judicial District Court of Travis County, Texas.

Respectfully submitted,

McGinnis, Lochridge & Kilgore, L.L.P.
Patton G. Lochridge
State Bar No. 12458500
Travis C. Barton
State Bar No. 00790276
plochridge@mcginnislaw.com
tcbarton@mcginnislaw.com
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512)495-6000
(512)495-6093 Fax


_Travis C. Barton_
Travis C. Barton


Ahmad Zavitsanos Anaipakos Alavi, Mensing, P.C.
Amir Alavi
State Bar No. 00793239
aalavi@azalaw.com
Steven J. Mitby
State Bar No. 24037123
smitby@azalaw.com
Benjamin F. Foster
State Bar. No. 24080898
bfoster@azalaw.com
Megan Bibb
State Bar No. 24073924
mbibb@azalaw.com
1221 McKinney Street, Suite 3460
Houston, Texas 77010
(713) 655-1101
(713) 655-0062 Fax

ATTORNEYS FOR PLAINTIFFS

- 2 -

## CERTIFICATE OF SERVICE

I certify that on June 7, 2013, I served a true and correct copy of this instrument on the following counsel of record via electronic mail:

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minneosta  55402-1498
(612) 340-2600 (Telephone)
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Travis C. Barton

## NO. D-1-GN-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC.; and VERSATA DEVELOPMENT GROUP, INC.,  F/K/A TRILOGY DEVELOPMENT GROUP, INC. | § § § § § | IN THE DISTRICT COURT OF |
| | § | TRAVIS COUNTY, TEXAS |
| Plaintiffs, | § § | |
| v. | § § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC. | § § § § | |

### PLAINTIFFS' REPLY IN OPPOSITION TO MCCAMISH SYSTEMS' MOTION TO QUASH AND FOR A PROTECTIVE ORDER AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO MCCAMISH SYSTEMS

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. ("Versata") file this Reply in Opposition to McCamish Systems' Motion to Quash and for a Protective Order and Motion to Compel McCamish Systems ("McCamish") to produce a corporate representative for deposition and produce documents, and in support thereof respectfully states:

### I.    Introduction

A temporary injunction hearing is currently scheduled for July 1st and 2nd. McCamish's Motion to Quash and for a Protective Order is an attempt by McCamish to delay the Temporary Injunction hearing by denying Versata access to critical evidence. McCamish has admitted in its motion that it has already collected documents responsive to the subpoena. McCamish further admits it can prepare a witness to testify on the topics. McCamish is seeking a delay of only a few days, not because significant work remains or the topics selected for deposition are onerous,

1

and not because they need these few extra days to fully respond, but because this critical delay would require Versata to reschedule the already-set Temporary Injunction hearing.

### I.   Versata's Subpoena to McCamish was Proper

On May 19, 2013, counsel for Infosys informed counsel for Versata in writing that he was "authorized to accept service of the subpoena, as long as Versata agrees that my accepting service of the subpoena doesn't waive any rights of McCamish/Infosys respecting the subpoena, except that McCamish/Infosys will not claim that the service itself was defective because the subpoena was served upon me rather than directly upon McCamish Systems." *See* Exhibit A. Therefore, Versata did exactly what counsel suggested and served a subpoena seeking testimony of a corporate representative and production of documents on May 29, 2013. *See* Exhibit B (Subpoena).

The subpoena complied with Texas Rule of Civil Procedure 176, and was permissible under Texas Rule of Civil Procedure 205.1 which provides that "a party may compel discovery from a non-party...by serving a subpoena compelling...an oral deposition...[and] a request for production of documents or tangible things...served with a notice of deposition on oral examination." The subpoena contains narrowly-defined subject matters on which Versata seeks documents and testimony which are critical to proving Versata's claim against Ameriprise.

In its motion to quash, Infosys appears to be taking the position that Versata should have followed the letter rogatory process outlined in Texas Rule of Civil Procedure 201. Forcing Versata to comply with the letter rogatory process is not accepting service, but is instead requiring proper service. Versata does not understand the parties' agreement to be that Versata had to go to court in Austin and get a letter rogatory sent to Georgia instructing the Georgia court to send a subpoena back to Infosys' counsel in Austin. That process would have been no less

2

burdensome than simply complying with the letter of rule and was not the agreement of the
parties. By agreeing to accept service, McCamish has waived the right to challenge what court
the subpoena is issued from.

## II. The Deposition Topics Are Narrowly Tailored and Seek Only Information Critical to Versata's Claims Against Ameriprise

### a. The dispute between Versata and Ameriprise

Versata entered into a Master License Agreement (MLA) with Ameriprise to provide
enterprise software to Ameriprise. See Exhibit C (MLA). Since entering this agreement,
Ameriprise has used Versata's software to support complex internal calculations including
commissions for its approximate 10,000 agents.

Under the MLA, Ameriprise agreed to limit access to the software, product
documentation and related materials to Ameriprise employees and "permitted contractors" - i.e.,
contractors that do not compete with Versata in the development of enterprise compensation or
configuration software and that have signed a non-disclosure agreement. (§ 4.8) A breach of
this provision is sufficient grounds, after thirty days' notice and an opportunity to cure, for
Versata to terminate the MLA and revoke Ameriprise's license to the software (§ 12.2).

Although Ameriprise has breached various provisions of the MLA, the provision relevant
to this motion is that Ameriprise has given Infosys access to Versata's Software. Infosys is not a
"permitted contractor" as that term is used in the MLA (§ 4.8). Infosys is a company that,
among other things, develops and sells its own brand of enterprise compensation software which
is a product that directly competes with Versata's proprietary software. Infosys began competing
with Versata when it acquired McCamish in 2009. Since this acquisition, Infosys and McCamish
have provided competing software to numerous customers in the United States and around the
world. Specifically, McCamish competes with Versata by selling products called PMACS and

VPAS. These products perform similar functions to the software that Ameriprise licensed from Versata.

Despite giving Ameriprise notice and an opportunity to cure, Ameriprise has not cured the breach and has refused to return Versata's software and other confidential information as required by the MLA.  Today, Ameriprise is using Versata's software and other confidential information without authorization.  Therefore, Versata seeks a temporary injunction to halt one of Ameriprise's abuses by discontinuing Infosys' impermissible access to Versata's software.

**III.   McCamish's Objections Are Without Merit.**

In order to demonstrate to the Court that Infosys is not a permitted contractor, and that their access to the software may be enjoined under the terms of the contract between Ameriprise and Versata, Versata must show that McCamish's products compete with Versata's. Each of the deposition topics are narrowly tailored to this specific issue.  Counsel for McCamish has objected in correspondence to the breadth and nature of the subpoena, has argued that only high-ranking executives might serve as corporate representatives, and that those executives are unavailable.  *See* Exhibit D.  The three points described below demonstrate that these objections are without merit, and compliance with the reasonable terms of the subpoena should be enforced.

First, a review of the categories of information sought is basic and would not require a high-ranking executive or software expert to answer.  For example, three of the topics listed seek information on what products McCamish sells, what the products do and what markets they are sold in.  These topics should not require a senior executive to answer.  Second, a corporate representative need not be a high-ranking executive in order to respond on behalf of the corporation.  *See* Tex. R. Civ. P. 199.2(b)(1) (requiring only that the "individual" designated testify "as to matters that are known or reasonably available" to the organization).  Third, the

4

witness has not been designated so it cannot be said he/she is unavailable. While counsel for McCamish has stated that two high-ranking executives are unavailable, there is nothing to prevent McCamish's selection and preparation of a witness who is available at the time the deposition is noticed.

McCamish has articulated no specific objection to all but one of the categories of documents sought in the subpoena duces tecum; however, as McCamish has not agreed to comply with the subpoena, Versata prays the Court order compliance with that portion of the subpoena as well.

IV.    **Prayer**

Wherefore, Versata prays that this Court deny McCamish's Motion to Quash and for a Protective Order, and order McCamish to comply with the terms of the subpoena by presenting a corporate representative for deposition and producing responsive documents on or before June 24, 2013, and that the Court award Versata such other and further relief as the Court deems just, equitable and appropriate under the circumstances.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

/s/ Benjamin F. Foster
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

5

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

     I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via facsimile and/or certified mail, postage prepaid, return receipt requested and/or email on June 10, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

                /s/ Benjamin F. Foster
                Benjamin F. Foster

4845-2464-5652, v. 1

6

# EXHIBIT A

AZA Law                    Fax:7136550062          Jun 10 2013 02:32pm  P009/041

**From:** Tommy Jacks <Jacks@fr.com>
**Date:** May 19, 2013, 9:53:33 PM CDT
**To:** "tcbarton@mcginnislaw.com" <tcbarton@mcginnislaw.com>
**Cc:** "Steve Mitby (smitby@AZALAW.COM)" <smitby@AZALAW.COM>, Roger Borovoy
<Borovoy@fr.com>, David Barkan <Barkan@fr.com>, Mike Gaddis <gaddis@fr.com>, Penelope Gamer
<gamer@fr.com>, Debbie Schumann <Schumann@fr.com>
**Subject:** Third Party Subpoena to McCamish in Versata v. Ameriprise state court litigation


Travis,

Thank you for informing me that Versata intends to issue a third party subpoena to McCamish Systems
in the Texas state court litigation brought by Versata against Ameriprise.  I am authorized to accept
service of the subpoena, as long as Versata agrees that my accepting service of the subpoena doesn't
waive any rights of McCamish/Infosys respecting the subpoena, except that McCamish/Infosys will not
claim that the service itself was defective because the subpoena was served upon me rather than
directly upon McCamish Systems.  In particular, you and I have previously discussed
McCamish's/Infosys's concerns about the breadth of discovery that you've said Versata may seek from
McCamish Systems in the federal court case brought by Versata against Infosys, and we reserve the
right, on behalf of McCamish/Insosys, to move for protection and/or to quash the subpoena if the
breadth of the subpoena is, in our view, excessive or objectionable on any ground.

Best regards,

Tommy

Tommy Jacks
Fish & Richardson P.C.
111 Congress Avenue
Suite 810
Austin, Texas 78701
Direct: 512-226-8171
Cell: 512-422-7195

1

**********************************************************************************
***********************************
This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized use or disclosure is
prohibited. If you are not the intended recipient, please contact the sender by reply
email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication
(including any attachments) is not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or matter
addressed herein.(FR08-i203d)
**********************************************************************************
***********************************

# EXHIBIT B

STATE OF TEXAS
TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER
PERSON AUTHORIZED TO SERVE SUBPOENAS AS PROVIDED IN RULE 176.5
T.R.C.P.

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC.; and VERSATA DEVELOPMENT GROUP, INC., F/K/A TRILOGY DEVELOPMENT GROUP, INC. | § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC. | § § § § § | |
| Defendants. | § § | 53ʳᵈ JUDICIAL DISTRICT |

YOU ARE HEREBY COMMANDED TO SUBPOENA & SUMMON:

CORPORATE REPRESENTATIVE OF
McCAMISH SYSTEMS BY AND THROUGH THEIR ATTORNEYS
William Tommy Jacks, Fish & Richardson, 111 Congress, Suite 810, Austin, Texas
78701; David M. Barkan and Roger S. Borovoy, Fish & Richardson P.C., 500 Arguello St., Suite
500, Redwood City, CA 94063; and John Michael Gaddis, Martha Deacon Jones, Scott Cashion
Thomas, and Thomas H. Reger , II, Fish & Richardson P.C., 1717 Main Street, Suite 5000,
Dallas, TX 75201.

To appear before a certified court reporter by Henjum Goucher, for a deposition to be held at the
offices of FISH & RICHARDSON, P.C., 111 CONGRESS AVENUE, SUITE 810, AUSTIN, TX 78701,
on June 26, 2013, at 9:00 a.m., to testify as a witness and to produce the documents as
requested in the attached Notice of Intention to Take the Oral and Videotaped Deposition of the
Corporate Representative of McCamish Systems and Subpoena Duces Tecum in the above styled
Civil Action to attend from day to day until lawfully discharged. This subpoena is issued in
accordance to Rule 176, TRCP.

DO NOT FAIL to return this writ to the 53rd Judicial District Court of Travis County, TX with
either the attached officer's return showing the manner of execution or the witness's signed
memorandum showing that the witness accepted the subpoena.

## DUTIES OF PERSON SERVED WITH SUBPOENA

You are advised that under Texas Rule of Civil Procedure 176, a person served with a subpoena has certain rights and obligations. Rule 176.6 provides:

(a)     *Compliance required.* Except as provided in this subdivision, a person served with a subpoena must comply with the command stated therein unless discharged by the court or by the party summoning such witness.

(b)     *Organizations.* If a subpoena commanding testimony is directed to a corporation, partnership, association, governmental agency, or other organization, and the matters on which examination is requested are described with reasonable particularity, the organization must designate one or more persons to testify on its behalf as to matters known or reasonably available to the organization.

(c)     *Production of documents or tangible things.* A person commanded to produce documents or tangible things need not appear in person at the time and place of production unless the person is also commanded to attend and give testimony, either in the same subpoena or a separate one. A person must produce documents are they are kept in the usual course of business or must organize and label them to correspond with the categories in the demand. A person may withhold material or information claimed to be privileged but must comply with Rule 193.3. A nonparty's production of a document authenticates the document for use against the nonparty to the same extent as a party's production of a document is authenticated for use against the party under Rule 193.7.

(d)     *Objections.* A person commanded to produce and permit inspection and copying of designated documents and things may serve on the party requesting issuance of the subpoena – before the time specified for compliance – written objections to producing any or all of the designated materials. A person need not comply with the part of a subpoena to which objection is made as provided in this paragraph unless ordered to do so by the court. The party requesting the subpoena may move for such an order at any time after an objection is made.

(e)     *Protective orders.* A person commanded to appear at a deposition, hearing, or trial, or to produce and permit inspection and copy of designated documents and things may move for a protective order under Rule 192.6(b) – before the time specified for compliance – either in the court in which the action is pending or in a district court in the county where the subpoena was served. The person must serve the motion on all parties in accordance with Rule 21a. A person need not comply with the part of the subpoena from which protection is sought under this paragraph unless ordered to do so by the court. The party requesting the subpoena may seek such an order at any time after the motion for protection is filed.

(f)     *Trial subpoenas.* A person commanded to attend and give testimony, or to produce documents or things, at a hearing or trial, may object or move for protective order before the court at the time and place specified for compliance, rather than paragraphs (c) and (d).

2

(Rule 176.8a Contempt); Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

PLEASE SEE ATTACHED SUBPOENA DUCES TECUM.

> **Requested by: Benjamin Foster**
> State Bar No. 24080898
> AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.
> 1221 McKinney, Suite 3460
> Houston, TX 77010
>
> Attorney for Plaintiff

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the 28th day of May 2013.

3

## OFFICER'S RETURN

Came to hand the ____ day of May, 2013, at ____ o'clock _____ a.m./p.m. and executed by delivering a copy of this Subpoena to the within-named _____ in person at _____, in _____ County, Texas, on the ____ day of May, 2013 at ____ o'clock _____ a.m./p.m., and tendered to the witness a fee of $10.00 in cash.

BY: _____

Person who is not a party to the suit, and is not less than 18 years of age

**I hereby accept service of the attached subpoena and will comply as directed in the subpoena. Per Rule 176.5 T.R.C.P.**

_____        _____        $ _____
Witness                       Date              Fee

Not executed as to the witness for the following reasons: _____

_____

_____

_____

_____

4

**EXHIBIT A**

## CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC.; and VERSATA DEVELOPMENT GROUP, INC., F/K/A TRILOGY DEVELOPMENT GROUP, INC. | § § § § § § | IN THE DISTRICT COURT |
| **Plaintiffs,** | § § | |
| v. | § § | OF TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC. | § § § § § § | 53rd JUDICIAL DISTRICT |
| **Defendants.** | § | |

---

### NOTICE OF INTENTION TO TAKE THE ORAL AND VIDEOTAPED DEPOSITION OF THE CORPORATE REPRESENTATIVE OF MCCAMISH SYSTEMS AND SUBPOENA DUCES TECUM

---

To:    McCamish Systems, by and through their counsel of record, William Tommy Jacks, Fish & Richardson, 111 Congress, Suite 810, Austin, Texas 78701; David M. Barkan and Roger S. Borovoy, Fish & Richardson P.C., 500 Arguello St., Suite 500, Redwood City, CA 94063; and John Michael Gaddis, Martha Deacon Jones, Scott Cashion Thomas, and Thomas H. Reger , II, Fish & Richardson P.C., 1717 Main Street, Suite 5000, Dallas, TX 75201.

Please take notice that, under Texas Rule of Civil Procedure 199.2, Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development, Inc. (collectively, "Versata") will take the oral and videotaped deposition of the Corporate Representative of McCasmish Systems beginning at 9:00 a.m. on Wednesday, June 26, 2013, at the offices of FISH & RICHARDSON, P.C., 111 CONGRESS AVENUE, SUITE 810, AUSTIN, TX 78701.

Please take further notice that the Corporate Representative will provide testimony on the subjects attached as Exhibit 1 and the witness is asked to bring with him documents listed on the Subpoena Duces Tecum, attached as Exhibit 2.

Henjum Goucher will stenographically record the deposition, which will also be videotaped. The deposition will continue from day to day until completed.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING, P.C.

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

2

Case 1:14-cv-00012-SS   Document 1-4   Filed 01/07/14   Page 25 of 77

AZA Law                    Fax:7136550062          Jun 10 2013 02:33pm  P018/041


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested and/or via facsimile and/or via hand-delivery on May 29, 2013:

William Tommy Jacks
Fish & Richardson
111 Congress, Suite 810
Austin, Texas 78701

David M. Barkan
Roger S. Borovoy
Fish & Richardson P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063

John Michael Gaddis
Martha Deacon Jones
Scott Cashion Thomas
Thomas H. Reger , II
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201.

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

3

JUN-10-2013 14:36   From:7136550062           ID:SCOTT DOUGLASS        Page:018  R=97%

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

Benjamin F. Foster

4

## EXHIBIT 1

## SUBJECTS FOR WHICH CORPORATE REPRESENTATIVE TESTIMONY IS SOUGHT FROM PLAINTIFFS

1. The ownership and management of McCamish Systems including but not limited to Infosys's acquisition of McCamish Systems and the role Infosys has in the daily management of McCamish.

2. McCamish's development of Enterprise software. Including where and how the development is performed.

3. McCamish's PMACS and VPAS systems, including its features, functionality and markets in which McCamish markets PMACS and VPAS.

4. Other enterprise compensation or configuration software McCamish develops or sells and the markets in which it is sold.

5. Knowledge of the Documents produced in response to attached Subpoena Duces Tecum.

5

## EXHIBIT 2 – SUBPOENA DUCES TECUM

## DEFINITIONS AND INSTRUCTIONS

1. The term "You" or "Yours" refers to McCamish Systems as well as its agents, employees, partners, affiliated entities, parents, and subsidiaries.

2. The terms "Plaintiffs" refers to "Versata" means Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc.; any parents, subsidiaries, or affiliates of Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc.; and any employees, agents, contractors, or lawyers.

3. The terms "Defendants" refers to Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc., and any employees, agents, contractors, or lawyers.

4. The terms "Infosys" refers to and means Infosys Technologies, Ltd.; any parents, subsidiaries, or affiliates of Infosys Technologies, Ltd.; and any employees, agents, contractors, or lawyers.

5. The terms "document" and "documents" are to be construed broadly and as defined in TEXAS RULE OF CIVIL PROCEDURE 192.3(b), including but not limited to originals, non-identical copies, and electronically stored information, including but not limited to emails, web pages, temporary files, and downloaded files.

6. The terms "communication" and "correspondence" refers to any contact whatsoever and any transmission or exchange of words, numbers, graphic material, or other information, either orally, electronically, or in writing, whether made, received, or participated in, and includes but is not limited to, any conversation, correspondence, letter, note, memorandum, inter-office or intra-office correspondence, telephone call, telegraph, telegram, telex, telecopy, facsimile, e-mail, text message, internet communication, telefax, cable, electronic message, audio or video recording, discussion, face-to-face meeting, or conference of any kind, whether in person, by audio, video, telephone, or any other form.

7. The terms "and" and "or" shall be construed either disjunctively or conjunctively whenever appropriate in order to bring within the scope of these Requests information or documents which might otherwise be considered to be beyond their scope.

8. The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular whenever appropriate in order to bring within the scope of these Requests any information which might otherwise be considered to be beyond their scope.

6

9. All documents withheld on a claim of privilege must be preserved. If any documents are so withheld, you shall identify in a privilege list or log each such document by the following information:

   (1) The name, address, and title of all author(s);
   (2) The name, address, and title of all addressee(s);
   (3) Each person to whom copies were sent or distributed, and any other person to whom such document or its contents were disclosed in any manner whatsoever (whether in writing, verbally, or otherwise);
   (4) The date and subject matter of the document;
   (5) The current location of the document; and
   (6) A complete statement of the basis on which the privilege is claimed.

10. Under Texas Rule of Civil Procedure 196.4, you are requested to produce any information or documents responsive to these requests that is maintained in electronic or magnetic form in an accessible manner similar to the way it is maintained in the ordinary course of business. If a document is maintained in both hard copy and electronic or magnetic formats, you should produce both the hard copy and electronic or magnetic format. If documents are produced in their native format (.doc, .xls, .pdf, etc.) please also produce a static image (.tiff) file of each document with a corresponding Bates label.

11. <u>Manner of Production.</u>   The documents produced in response to this Request For Production of Documents shall be segregated and clearly marked or labeled as to the specific request to which such documents are responsive and being produced. Otherwise, such documents shall be produced as they are kept in the usual course of business, including the production of the files from which such documents are taken. Electronic data produced in response to this request should be produced in native format or in TIFF, PDF, or another form that preserves and reflects any metadata, formatting, or other information associated with the documents in its native format. If documents, such as electronic mail, are produced, they must be produced in a form so that the relationship between related electronic documents (e.g. email attachments) is preserved and reflected in the production.

## DOCUMENTS REQUESTED

1. A document or documents sufficient to identify every individual who has contributed to the development of McCamish systems products since Infosys's acquisition of McCamish Systems.
2. Any and all Versata source code including but not limited to DCM source code.
3. A Document or documents sufficient to show McCamish's current efforts to sell enterprise compensation or configuration software. This include a document or documents sufficient to show what customers or markets McCamish is targeting for sales.
4. A Document or documents sufficient to show the features and functionalities of PMACS and VPAS.

4835-5948-7508, v. 1

AZA Law          Fax:7136550062          Jun 10 2013 02:33pm  P023/041

# EXHIBIT C

## MASTER LICENSE AGREEMENT

Licensor (Name and Address):                    Agreement No.:  AEPA100499-JW01
Trilogy Software, Inc. ("Licensor")
6034 West Courtyard Drive
Austin, TX 78730                                Effective Date:  October 4, 1999

This Master License Agreement ("Agreement") is made and entered into as of the Effective Date above between American Express Financial Corporation having an office at IDS Tower 10, Minneapolis, Minnesota 55440 ("Amexco") and the Licensor specified above.

### ARTICLE 1:  PROVISION OF PROGRAMS

1.1   Under the provisions of this Agreement, Licensor agrees to grant Amexco licenses to use Licensor's proprietary computer programs in object code only (the "Software") and the documentation that Licensor makes generally available in hard copy or electronic form, to its general customer base in conjunction with the licensing of such thereto (the "Documentation") (Software and Documentation are referred to collectively as the "Products") which are listed on Schedules substantially in the form attached as Exhibit A ("Schedule").

1.1.1   The parties agree to enter into good faith negotiations to execute a mutually agreeable agreement for consulting services.  Until such an agreement is executed, this Agreement permits Amexco to obtain Licensor's pre-installation services to customize, modify and/or enhance Products, to develop programs, software and materials related to Products, and/or such other services as the parties mutually agree upon ("Custom Services") on an interim basis and at Licensor's standard rates. Custom Services along with the applicable rates shall be specified on an Interim Custom Service Attachment substantially in the form attached hereto as Exhibit B.

1.2   Each Schedule shall be numbered and dated to facilitate identification and when executed by both parties shall form a separate agreement which hereby incorporates by reference, without any further reference in the applicable Schedule, the terms and conditions of this Agreement, as amended or modified on the applicable Schedule.  Each Schedule shall include: (i) the Amexco site where each Product is to be delivered ("Installation Site"); (ii) the name and/or other description of each Product; (iii) the date each Product is to arrive at the Installation Site ("Scheduled Delivery Date"); (iv) the scope of each Product license, if different than as defined in Article 4; (v) the charge for the license for each Product ("License Fee"); (vi) the maintenance charges for each Product, ("Maintenance Fee") and whether such Maintenance Fees are monthly, quarterly, annual or otherwise; and (vii) any other provisions the parties mutually agree upon.

1.2.1   In the event of any inconsistency between this Agreement and any Schedule, the provisions of such Schedule shall govern for purposes of such Schedule.

# 99547 (revised 1/14/98)                                1



EXHIBIT
B

TRILOGY 00001

1.3    Amexco, its parent, subsidiaries and "Affiliates" (as defined herein) (collectively, "Amexco Entities") may execute Schedules with Licensor under this Agreement and for purposes of such Schedule shall be considered "Amexco" as that term is used throughout this Agreement. An Affiliate shall mean any company, which shares with Amexco a common owner who owns 50%, or more of the outstanding voting stock in both Amexco and such company. Amexco agrees to ensure that all Amexco Entities must have agreed in writing to be bound by the terms and conditions of this Agreement prior to use of the Software. Amexco hereby agrees to provide to Licensor, within thirty (30) days of request, a then current list of Amexco Entities for whom Software may be licensed hereunder.

## ARTICLE 2: DELIVERY: REPRODUCTION, DISTRIBUTION AND REPORTS

2.1    Unless otherwise defined on the applicable Schedule, Licensor shall deliver one master copy of each Product (the "Master Copy") to Amexco on or before, but in no event later than ten (10) days after its Scheduled Delivery Date solely for the purpose of allowing Amexco to make copies of the Product that are reasonably necessary for distribution to and use by each user or server authorized per the license scope defined herein and on the applicable Schedule. For purposes of this Agreement, delivery shall be deemed complete when Licensor physically delivers or causes a third party to deliver, a Master Copy to Amexco, or makes the Master Copy available to Amexco for downloading from Licensor's File Transfer Protocol ("FTP") site, and has provided Amexco with the appropriate password to access the FTP site. Amexco's right to reproduce the Master Copy shall be limited to the Installation Site. Amexco shall assume all responsibility for the quality of the copies made hereunder.

2.2    Without limiting the foregoing, Amexco shall have the right to use the Software on temporary substitute or back-up equipment. Subject to the terms of the Schedule, Amexco shall also be entitled to make and keep a reasonable number of copies of each Product, Update and its Documentation for its own internal use.

2.3    Amexco shall include all copyright notices, proprietary legends, and trademark and service mark attributions, any patent markings, and other indicia of ownership on all copies of the Product in the context and format as those, which were contained on the Master Copy. Amexco shall pay all duplication and distribution costs incurred by Amexco in making copies of the Products, and any updates, new releases or enhancements that Licensor makes generally available and provides to Amexco pursuant to the maintenance provisions hereunder (the "Updates"), and shall also pay all custom duties and fees if applicable. Subject only to the license granted herein, all copies of the Software are the property of Licensor or its third party licensors, if any, from whom Licensor has obtained the marketing rights (the "Third Party Licensors").

2.4    Amexco agrees that Licensor subject to this section may, upon thirty (30) days prior written notice, enter Amexco's premises to verify Amexco's compliance with the provisions of this Agreement.   Licensor's inspections shall be limited to (i) one annual inspection; (ii) Amexco's normal business hours; and (iii) those records pertaining to the Products and Updates (as delivered to Amexco under any Schedule) licensed hereunder. Licensor's rights of inspection shall remain in effect through the period ending six (6) months from the termination or expiration of this Agreement.

2

TRILOGY 00002

## ARTICLE 3: DOCUMENTATION AND TRAINING

3.1   Upon delivery of each Product or any Update of the Product to be made available to Amexco pursuant to the maintenance provisions herein, and contemporaneously with such delivery whenever possible, Licensor shall deliver to Amexco one (1) copy of all generally available Documentation (if applicable) for such Product or Update, and any necessary and generally available release notes or other written descriptions relating to any Update sufficient to enable a reasonable person, who is skilled in the software industry to use and to understand the use and operations of the Product or Update. Amexco may copy the Documentation only to the extent reasonably necessary to satisfy its own internal requirements or may request Licensor to furnish additional copies at Licensor's current standard prices less any applicable discounts.

3.2   If training is required and/or included for a Product, the charge, duration, nature and other particulars applicable to such training shall be arranged pursuant to the terms and conditions of the Education Services Schedule, attached hereto as Exhibit C.

## ARTICLE 4: SCOPE OF LICENSE AND PROPRIETARY RIGHTS

4.1   Unless otherwise agreed in this Agreement or on an applicable Schedule, subject to Amexco's fulfillment of all of its obligations hereunder, Licensor grants to Amexco a non-exclusive, nontransferable (except as permitted herein), perpetual, worldwide license to use the Software, including any Updates, and all related Documentation, commencing upon its delivery to Amexco and continuing thereafter from the date of Amexco's acceptance of the Product or Update subject to the Warranty provisions herein, as the case may be, for the License Term specified on the Schedule, unless terminated earlier in accordance with this Agreement.

4.2   Unless otherwise agreed on an applicable Schedule, if the applicable Schedule does not define a limited number of users then the license granted shall be a Site License with unlimited users.  For the purpose of this Agreement, the parties agree that "Site License" shall mean that Amexco may use the Product(s), Updates, and related Documentation, in Amexco's business on any of its computers and at the Installation Site or any other Amexco data center location and on more than one computer at a time subject to any additional license scope restrictions provided on the Schedule.

4.3   If the default provisions of Section 5.2 do not apply, and if the Schedule designates a limited number of users then the Product licensed pursuant to the Schedule may be accessed by that designated number of individual users. Amexco may designate different users at any time without notice to Licensor so long as the permitted number of users is not exceeded.

4.4   Unless otherwise agreed and specified in the applicable Schedule, Licensor agrees that Amexco shall have the right, to (a) use, copy, execute, display, enhance, update, maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products, Updates and Documentation and/or materials provided to Amexco hereunder only to the

3

# 99547 (revised 1/14/98)

TRILOGY 00003

extent that such use, copying, executing, displaying, enhancing, updating, and maintaining are described in the applicable Documentation and (b) use the Products in conjunction with other programs and/or materials.

4.5   Amexco shall not (i) use the Products to process, or permit to be processed, the data of any other party unless such data is processed for Amexco purposes only; or (ii) use the Products for service bureau or commercial time-sharing use, unless otherwise expressly permitted in the License Schedule.

4.6   Unless otherwise agreed and specified in the applicable Schedule, with regard to the object code and source code version of any software code developed by Licensor in its performance of Custom Services for Amexco as defined in Section 1.1.1 of this Agreement (the "Programs"), Licensor hereby grants to Amexco, at no additional charge (upon payment of all service fees attributable to such services), a worldwide, nonexclusive, license (i) to modify and otherwise create derivative works based on the Programs and (ii) to reproduce, distribute, perform and display (publicly or otherwise), and otherwise use and exploit the Programs and derivative works thereof in connection with the Software as defined herein.

4.7   Amexco's use of any Products labeled on Schedules as "Software Tools" is limited to those locations where Amexco conducts its business in the ordinary course (the "Authorized Locations") and Amexco shall use reasonable efforts to ensure that all such users have been adequately trained and are competent in the use of the Software Tools.

4.8   Unless otherwise specifically provided in the License Schedule, users of the Software may include only (i) employees of the Amexco Entity or Entities who have entered into the applicable Schedule and; (ii) subject to Article 10, "Confidential Information", third party contractors of Amexco Entities who do not, to the best of Amexco's knowledge, compete with Licensor in the development of enterprise compensation or configuration software ("Permitted Contractors").   Amexco shall ensure that all Permitted Contractors have signed a Non-Disclosure Agreement substantially the same as that attached hereto.

   4.8.1   Nothing herein shall limit Amexco's right to access and use Products in connection with any associated or interconnected networks, peripherals, equipment and devices, unless otherwise specifically prohibited or limited in an applicable Schedule.

4.9   Licensor retains title to the Products provided hereunder and does not convey any proprietary rights or other interest therein to Amexco, other than the licenses granted hereunder. Amexco agrees not to sell, assign or otherwise transfer the Product(s) or the license granted hereunder, or sublicense the Products to any third party, except as otherwise provided in this Agreement.

4.10  At least sixty (60) days prior to the expiration of each License Term (if applicable), Licensor shall notify Amexco of such expiration and Amexco shall have the option to continue the license of such Product for any additional License Term selected by Amexco.  Amexco shall notify Licensor in writing if it opts to continue a Product license and License Term for any such continuation.  The License Fee applicable to any continuation of a Product license

4

# 99547 (revised 1/14/98)

TRILOGY 00004

("Renewal Fee") shall be the lesser of: (a) the License Fee applicable to the current License Term (if the terms are equivalent); (b) Licensor's then current License Fee applicable to the renewal License Term; or (c) such other license fee as is mutually agreed upon by the parties. Notwithstanding anything herein to the contrary, License Terms shall continue at no additional charge to the end of the License Term or for sixty (60) days after receipt of Licensor's notice referred to above, whichever is later, and thereafter, if Amexco exercises the option to continue the license as provided hereunder.

## Article 5: ESCROW AGREEMENT

5.1 The parties agree to put source code and all the generally available Documentation thereto, for a Product or Updates ("Deposit Materials") in escrow with an independent third party escrow agent in accordance with the terms and conditions of a source escrow agreement materially similar to that which has been attached hereto as Exhibit D. Documentation will be placed in escrow within ten (10) days of when the Software is placed in escrow.

5.2 Licensor shall deposit the Deposit Materials with Data Securities International Inc. ("DSI"), no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI. Licensor shall employ reasonable efforts to confirm that Amexco has received notice of any deposit pursuant to the terms of the attached escrow agreement. Licensor agrees to update the escrow at least every six (6) months. In addition to the periodic update in the preceding sentence, Licensor shall also use commercially reasonable efforts to update the escrow upon delivery of an Update (not including patches or other minor Updates) to Amexco pursuant to the support and maintenance provisions herein.

5.3 The release conditions triggering the notification and release provisions of the source code escrow agreement shall be:

a. Licensor's uncured, material breach of its maintenance or support obligations imposed on it pursuant to a license agreement between Licensor and Amexco provided that Amexco has paid all applicable fees for such maintenance and support; or

b. Licensor's failure to continue to do business in the ordinary course and it's business is not continued by another corporation or entity; The institution of bankruptcy, receivership, insolvency, reorganization or other similar proceedings by or against Licensor under the Federal Bankruptcy Code, if such proceedings have not been dismissed or discharged within sixty (60) calendar days after they are instituted; the insolvency or making of an assignment for the benefit of creditors or the admittance of any involuntary debts as they mature by Licensor; or

c. Licensor materially breaches the Year 2000 Warranty as specified in Article 8 of this Agreement and fails to cure such breach pursuant to the support and maintenance provisions.

## ARTICLE 6: MAINTENANCE

# 99547 (revised 1/14/98)

TRILOGY 00005

6.1

6.2

6.3

6.4

6

# 99547 (revised 1/14/98)

TRILOGY 00006

AZA Law                    Fax:7136550062          Jun 10 2013 02:34pm P030/041

6.5

6.6.

6.7 .

6.8

ARTICLE 7: INVOICING; PAYMENT; DISCOUNTS

7.1

   7.1.1

   7.1.2

7

# 99547 (revised 1/14/98)                    TRILOGY 00007

7.2

7.3

## ARTICLE 8:  WARRANTIES

8.1   Licensor warrants to Amexco that:   (i) Licensor has the right to furnish the Products, Documentation, and other materials and perform the Maintenance and other services as specified in this Agreement ("Product Materials and Services'") covered hereunder free of all liens, claims, encumbrances and other restrictions; (ii) to the best of its knowledge, the Product Materials and Services furnished by Licensor and/or Amexco's use of the same hereunder do not violate or infringe the rights of any third party or the laws or regulations of any governmental or judicial authority; (iii) Amexco's use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement) or any entity asserting a claim under or through Licensor;  (iv) Licensor has not knowingly and shall not knowingly insert any code which would have the affect of disabling or otherwise shutting down all or any portion of any Product licensed hereunder; (v) Licensor shall use its reasonable commercial efforts to ensure that no viruses or similar items are knowingly coded or introduced in any Product licensed hereunder; and (vi) that at the time this Agreement is executed, Licensor is not a party to any litigation that Licensor reasonably believes will adversely affect the rights granted to Amexco by Licensor hereunder.

8.2   Licensor warrants that the Software shall materially conform to the applicable Documentation, including but not limited to operating in conjunction with any third party software that is expressly referenced in the Documentation, for a period of one hundred and eighty (180) days, not including any Cure Period or Second Cure Period as defined herein, following delivery of the applicable Software, upon delivery to the Installation Site (the "Warranty Period"). If prior to the end of the Warranty Period, Amexco has not notified Licensor of the non-conformity of the Software, Licensor shall have met its warranty obligations under this Article 8.

8.2.1 If, during the Warranty Period, any Software fails to materially conform to the applicable Documentation and Amexco notifies Licensor in writing setting forth in reasonable detail the degree and nature of the non-conformity and reproducing the non-conformity.  Licensor shall promptly review the claim by Amexco.  If Licensor confirms that the reported non-conformity is a non-conformity to the

8

# 99547 (revised 1/14/98)

TRILOGY 00008

applicable Software Documentation and is not due to (i) modifications made to the Software by someone other than Licensor; (ii) combination of the Software with other product(s) where such other product(s) cause(s) the non-conformity, or (iii) negligence or misuse, then Licensor shall use commercially reasonable efforts to repair or replace the materially non-conforming Software and deliver to Amexco repaired or replacement Software that materially conforms to the applicable Documentation within the time period quoted by Licensor to Amexco (the "Cure Period"), or if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) days following confirmation by Licensor of the non-conformity. The time elapsed during such Cure Period shall not count against the Warranty Period, and the Warranty Period shall recommence from the point in time where it was suspended, thirty (30) days from the time that Licensor delivers to Amexco the repaired or replaced Software. Unless Licensor receives a written notification from Amexco that the repaired or replaced Software does not materially conform to the applicable Documentation within thirty (30) business days following receipt of the repaired or replaced Software, Licensor shall have met its warranty obligation under this Article 8. Notwithstanding the foregoing and provided that Amexco has paid the appropriate Support and Maintenance Service fees pursuant to this Agreement or an applicable schedule, Licensor shall continue to support and maintain the accepted Software pursuant to the Support and Maintenance provisions herein.

8.2.2  If Licensor receives a written notification from Amexco within such thirty (30) business day period that a non-conformity continues to exist, the Warranty Period applicable to such Software shall be extended and Licensor shall continue to have the right to use commercially reasonable efforts to either repair/replace the materially nonconforming Software within the time period quoted by Licensor to Amexco, if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) business days following confirmation by Licensor of the nonconformity (the "Second Cure Period), whereupon the previous provisions for Licensor to fulfill or be deemed to have fulfilled its warranty obligations and the suspension of the Warranty Period shall apply. If Licensor is unable to repair/replace non-conformities of any Software subject to a Software warranty under this Article 8 after two (2) attempts to do so, then Amexco's remedy shall be as follows: Amexco shall be relieved of any obligation to pay the License Fee applicable to the materially nonconforming Software and shall receive a full refund for any fees already paid to Licensor, provided that upon the parties' mutual written agreement that the Software continues to not conform to the applicable Documentation after two (2) attempts to do so, Amexco immediately ceases further use of the applicable Software, destroys all copies of the applicable Software and certifies such destruction in writing to Licensor.

8.2.3  If Licensor does not confirm that the reported non-conformity is a non-conformity or if the non-conformity reported is due to (i) modifications made to the Software by someone other than Licensor, (ii) functions contained in Software operating in the combinations that may be selected for use by Amexco other than as stated in the Documentation, or (iii) negligence or misuse, then Licensor shall have no obligation to take any action as part of any Software warranty.

9

# 99547 (revised 1/14/98)

TRILOGY 00009

8.3  Other Exclusions. Licensor does not warrant and the Licensor warranties contained herein expressly do not provide or assure that:

- Use of Products shall meet Customer's requirements;

- Operation of Products shall be uninterrupted or error free.

8.4  Licensor warrants that:  (i) during the Warranty Period, all media, if any, containing the Software that is delivered to Amexco shall be free from any defects in materials and workmanship and (ii) updates to the Documentation provided by Licensor hereunder shall be at a minimum, the level of and comprehensiveness reflected in the previous version of the Documentation.

8.5  Year 2000 Compliance and Warranty. Licensor warrants to Amexco that the Products provided hereunder have been fully tested and will accurately process all dates including, but not limited to, between the twentieth and twenty-first century in either direction, including leap years, when properly installed, properly used in accordance with the applicable Documentation, and unmodified by Amexco, provided all items used in combination with Products properly exchange unambiguous and year 2000 compliant date data. Without limiting the generality of the foregoing, Licensor warrants that all Software licensed from Licensor shall (a) manage and manipulate data involving all dates from the 20th and 21st centuries without functional or data abnormality related to such dates; and (b) manage and manipulate data involving all dates from the 20th and 21st centuries without inaccurate results related to such dates.  At no additional cost to Amexco (beyond payment of the license fees), Licensor shall continue to support and maintain the Software so that it complies with the provisions of this warranty and any non-compliance will be addressed through the Support and Maintenance provisions of this Agreement at no additional charge and addressed as a Severity Level One error. Licensor shall have no warranty obligation for any nonconformance with the above warranty, which arises:

   i)    out of a defect in any third party software, or other software or hardware product in use by Amexco not acquired from Licensor, which causes the Software not to conform to this warranty when used in combination with such other software or hardware product;

   ii)   when Amexco has not installed the most recent Update of the Software, where use of such Update would avoid the nonconformance; or

   iii)  when such nonconformance is caused, present or inherent in the data, database or native file system that the Software accesses, including, but not limited to, dates or date formats that do not reflect the century.

8.6  Licensor warrants to Amexco that Updates to the Software provided to Amexco hereunder shall not materially degrade, impair or otherwise materially adversely affect the essential functionality of the Software provided hereunder.

8.7  Licensor warrants that any Maintenance or other services provided by Licensor hereunder shall be performed in a good, workmanlike and professional manner by qualified personnel. Licensor personnel will observe and comply with Amexco's security procedures, rules,

10

# 99547 (revised 1/14/98)

TRILOGY 00010

regulations, policies, working hours and holiday schedules. In performing Maintenance services at Amexco locations, Licensor personnel will use reasonable commercial efforts to minimize any disruption to Amexco's normal business operations.

8.8    EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## ARTICLE 9: INTELLECTUAL PROPERTY INFRINGEMENT

9.1   Licensor agrees to defend and/or handle at its own expense, any claim or action against Amexco for actual or alleged infringement of any intellectual or industrial property right, including, without limitation, trademarks, service marks, United States or Canadian patents, copyrights, misappropriation of trade secrets or any similar proprietary rights (other than patents issued in foreign jurisdictions not expressly provided herein), based upon the Software furnished hereunder by Licensor or based on Amexco's use thereof in accordance with the applicable Documentation. Licensor further agrees to indemnify and hold Amexco harmless from and against any and all liabilities, losses, costs, damages finally awarded or settled and expenses (including reasonable attorneys' fees) associated with any such claim or action. Amexco may participate in the defense provided it pays its own costs associated with such participation.

9.2   Licensor shall have no liability under this Article 9 unless:

   9.2.1   Amexco notifies Licensor in writing immediately after Amexco becomes aware of a claim or the possibility thereof and Licensor is unaware of such claim;

   9.2.2   Licensor has sole control of the settlement, compromise, negotiation, and defense of any such action consistent with Amexco's rights hereunder unless otherwise mutually agreed to in writing and provided however that Licensor shall seek Amexco's consent prior to a settlement in which Amexco's rights, other than those addressed in this Section 9, are affected, or in which Amexco is otherwise obligated; and

   Amexco cooperates, in good faith, in the defense of any such legal action.

9.3   Licensor shall have no liability for any claim of infringement based on (i) Software that has been modified by parties other than Licensor or parties acting as agents of Licensor, (ii) Amexco's use of the Software in conjunction with data where such data gave rise to the infringement claim, or (iii) Amexco's use of the Software with non-Licensor Software or hardware, where such other software or hardware gave rise to the infringement claim, and absent use of such hardware or software no claim would have been valid.

9.4   If any Product becomes, or in Licensor's opinion are likely to become, the subject of any such claim or action, then, Licensor, at its expense may either: (i) procure for Amexco the right to

11

# 90547 (revised 1/14/98)

TRILOGY 00011

continue using same as contemplated hereunder; (ii) modify same to render same non-infringing (provided such modification does not adversely affect Amexco's use as contemplated hereunder); (iii) replace same with equally suitable, functionally equivalent, compatible, non-infringing products, materials and/or services; or iv) if neither of the foregoing options is commercially reasonable, terminate the license for the Product. Upon such termination of the license upon Amexco's return Product, Licensor will refund to Amexco, as Amexco's sole remedy for such license termination, all License fees paid by Amexco for the terminated license, less an amount equal to one-sixtieth (1/60th) of the license fees for each month or any portion thereof which has elapsed since the Schedule Effective Date of such terminated license.  THIS SECTION STATES THE ENTIRE LIABILITY OF LICENSOR WITH RESPECT TO ANY CLAIM OF INFRINGEMENT REGARDING THE PRODUCT.

ARTICLE 10: CONFIDENTIAL INFORMATION

10.1    Each party agrees to regard and preserve as confidential, all Confidential Information of the other which may be obtained from any source.  In maintaining the confidentiality of Confidential Information hereunder, each party agrees it shall not, without first obtaining the written consent of the other, disclose or make available to any person, firm, or enterprise, reproduce or transmit, or use for its own benefit or the benefit of others, any such Confidential Information. Each party agrees that its own use and/or distribution of the other party's Confidential Information shall be limited to its own employees on a "need to know" basis; provided, however, that Amexco may also disclose Licensor's Confidential Information to employees of Amexco, its parent, subsidiary and affiliates, and to Permitted Contractors retained by Amexco for purposes specifically related to Amexco's use or evaluation of such Confidential Information, and who agree in writing to be bound by provisions no less restrictive than those herein. Neither party shall disassemble, decompile or otherwise reverse engineer any software product of the other party and, to the extent any such activity may be permitted, the results thereof shall be deemed Confidential Information subject to the requirements of this Agreement.

10.2    "Confidential Information" of Amexco shall include both specific information relating to the project or work effort which originated Amexco's desire to exchange information and the entering into of this Agreement or any Schedule issued hereunder, as well as all other information relating to the past, present and future plans, businesses, activities, customers and suppliers of Amexco, its parent, subsidiaries and affiliates which is obtained by Licensor in connection with the exchange of information contemplated hereunder.  "Confidential Information" of Licensor shall include both specific information relating to the project or work effort for which Licensor's provision of products, software, or services may be provided to Amexco, as well as other information related to Licensor's past, present and future plans, businesses, activities, customers, suppliers, its subsidiaries and affiliates which is obtained by Amexco in connection with the exchange of information as contemplated hereunder.  Without limiting the generality of the foregoing, Licensor's "Confidential Information" shall also include all information and materials disclosed to Amexco regarding Licensor's software products or software product development.  In preserving the confidentiality of the disclosing party's Confidential Information, the receiving party shall not be required to take any greater steps than it takes to protect the confidentiality of its own similar information, but in no event shall such steps be less than reasonable.

12

10.3  Both parties acknowledge and agree information shall not be considered "Confidential Information" to the extent, but only to the extent, that such information: (a) is already known to the receiving party free of any confidentiality obligation at the time it is obtained from the other party; (b) is or becomes publicly known or available through no wrongful act of the receiving party; (c) is rightfully received from a third party without restriction; (d) is independently discovered or developed by the receiving party using individuals who have had no contact with the Confidential Information of the other party; or (e) is required to be disclosed in response to a valid order of a court or authorized agency of government, provided that notice is given promptly to the party whose Confidential Information is to be so disclosed so that such party may seek a protective order and/or engage in other efforts to minimize the required disclosure.

10.4  Each party further acknowledges and agrees that in the event of a breach or threatened breach by it of the provisions of this Confidentiality Agreement, the other party will have no adequate remedy in money or damages and accordingly shall be entitled to seek an injunction against such breach or threatened breach; provided, however, no specification in this Confidentiality Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition of any legal or equitable remedies in the event of a breach or threatened breach of this Confidentiality Agreement.

10.5  Information that Licensor considers "Highly Confidential" (documents, notes, or other physical embodiments of or reflecting the Confidential Information) must be marked as such with appropriate notification to Amexco prior to deliver of the "Highly Confidential" information.  Licensor may request the return of any information marked as "Highly Confidential" including any copies thereof that are in the possession or control of Amexco. Upon the request of Licensor, a project manager of Amexco shall verify, and provide to Licensor written certification of, the completeness of the delivery of such materials. Notwithstanding any of the foregoing, in the event of a breach by Amexco of the Confidentiality provisions herein, or Licensor's termination of a license issued to Amexco under the applicable schedule in accordance with the termination provisions herein, Licensor may request the return of any Software Tools and related documentation including any copies thereof that are in the possession or control of Amexco regardless of whether such Software Tools or related documentation are designated as "Highly Confidential".

ARTICLE 11:  LIMITATION OF LIABILITY

IN NO EVENT SHALL EITHER PARTY BE LIABLE, ONE TO THE OTHER, FOR ANY INDIRECT, SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

IN ADDITION TO THE FOREGOING, EXCEPT FOR LICENSOR'S LIABILITY ARISING FROM (I) ITS GROSS NEGLIGENCE WHILE PERFORMING ANY SERVICES HEREUNDER; (II) DEATH, BODILY INJURY OR TANGIBLE PROPERTY DAMAGE CAUSED BY LICENSOR WHILE PERFORMING SERVICES HEREUNDER; (III) INDEMNIFICATION OBLIGATIONS, UNDER ARTICLE 9 OF THIS AGREEMENT; (IV) LICENSOR'S FAILURE TO MEET ANY OF ITS OBLIGATIONS RELATING TO CONFIDENTIAL INFORMATION UNDER ARTICLE 10 OF THIS AGREEMENT; AND/OR (V) ANY WILLFUL MISCONDUCT

13

# 99647 (revised 1/14/98)                                                    TRILOGY 00013

OR MALICIOUS ACTS, THE LIMIT OF LICENSOR'S LIABILITY (IN TORT (INCLUDING CLAIMS OF NEGLEGENCE) OR BY STATUTE OR OTHERWISE) TO AMEXCO FOR DIRECT DAMAGES CONCERNING PERFORMANCE OR NON-PERFORMANCE, OR OTHERWISE, BY LICENSOR IN ANY MANNER RELATED TO THIS AGREEMENT OR ANY APPLICABLE SCHEDULE, FOR ANY AND ALL CLAIMS SHALL NOT, IN THE AGGREGATE, EXCEED THE TOTAL FEES PAID BY AMEXCO TO LICENSOR UNDER THE APPLICABLE SCHEDULE FOR THE SOFTWARE OR SERVICES THAT GAVE RISE TO SUCH LIABILITY.

12. GENERAL

12.1   TERM: This Agreement shall commence as of the Effective Date and continue thereafter unless terminated as provided hereunder. Each Schedule shall become binding when duly executed by both parties and shall continue thereafter unless terminated as permitted hereunder. Notice of termination of any Schedule shall not be considered notice of termination of this Agreement.

12.2   TERMINATION: In the event of any material breach of this Agreement by one party, the other party may (reserving cumulatively all other remedies and rights under this Agreement and at law and in equity) terminate the Schedule(s) involved, in whole or in part, by giving thirty (30) days' written notice thereof; provided, however, that any such termination shall not be effective if the party in breach has cured the breach of which it has been notified in writing prior to the expiration of said thirty (30) days. In the event of any termination by Amexco in accordance with this provision, Amexco shall, effective as of the date of such termination, have a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee (upon full payment of all fees due under the Schedule), but otherwise subject to and in accordance with all the provisions of this Agreement.

In addition to the foregoing, Amexco shall have the right to terminate this Agreement and/or any applicable Schedule(s), by giving ninety (90) days written notice to Licensor. Except for the case of termination by Amexco due to Licensor's material breach of this agreement (as described above), upon termination of this Agreement and/or any Schedule or license hereunder, Amexco's rights to the affected Software shall cease. Amexco shall immediately stop using such Software and shall return such Software to Licensor, or destroy all copies thereof. In addition, Amexco shall provide Licensor with notarized, written certification signed by an officer of Amexco, that all copies of the Software have been returned or destroyed and that no copies have been retained by Amexco for any purpose whatsoever.

Termination of this Agreement or any license created hereunder shall not limit either party from pursuing other remedies available to it, including injunctive relief, nor shall such termination relieve Amexco's obligation to pay all fees that have accrued and are due or are otherwise owed by Amexco under any Schedule or exhibit.

12.3   TAXES: Amexco agrees to pay all taxes levied against or upon the Products and any services or their use hereunder, exclusive, however, of taxes based on Licensor's income, which taxes shall be paid by Licensor. If Licensor pays any tax for which Amexco is

14

responsible hereunder, Amexco will reimburse Licensor upon Amexco's receipt of written proof of payment.

12.4   EXCUSABLE DELAYS:  In no event shall either party be liable to the other for any delay or failure to perform due to cause or causes beyond the reasonable control and without the fault or negligence of the party claiming excusable delay.  Such causes shall include, but are not limited to, acts of God, floods, fires, loss of electricity or other utilities.

12.5   NOTICES:  Unless otherwise specified all notices shall be in writing and delivered personally or mailed, first class mail, postage prepaid, to the addresses of the parties set forth at the beginning of this Agreement, to the attention of the undersigned; provided, however, that a copy of any Licensor notice of material breach to Amexco shall also be sent to the Office of the General Counsel Technology Law Group, World Financial Center, American Express Tower, 200 Vesey Street, 49th floor, New York, New York 10285-4900.  A copy of any Amexco notice of material breach to Licensor shall also be sent to the Office of the General Counsel, 6034 West Courtyard Drive, Austin, TX 78735.  As to any Schedule, notices shall also be sent to the signatories of the Schedule involved.  Either party may change the address(es) or addressee(s) for notice hereunder upon written notice to the other.  All notices shall be deemed given on the date delivered or when placed in the mail as specified herein.

12.6   ADVERTISING OR PUBLICITY:  Except as set forth in any Schedule, neither party shall use the name or marks, refer to or identify the other party in advertising or publicity releases, promotional or marketing correspondence to others without first securing the written consent of such other party's authorized representative.

12.7   ASSIGNMENT:  Neither party may assign this Agreement, any Schedule and/or any rights and/or obligations hereunder without the written consent of the other party, such consent not to be unreasonably withheld, and any such attempted assignment shall be void.  Notwithstanding the foregoing, Amexco may assign this Agreement, any Schedule and/or any of its rights and/or obligations hereunder (including all licenses granted to Amexco hereunder) to any Amexco Entity.

12.8   GOVERNING LAW:  In all respects this Agreement shall be governed by the substantive laws of the State of New York without regard to conflict of law principles.

12.9   MODIFICATION, AMENDMENT, SUPPLEMENT AND WAIVER:  No modification, course of conduct, amendment, supplement to or waiver of this Agreement, any Schedule, or any provisions hereof shall be binding upon the parties unless made in writing and duly signed by both parties.  At no time shall any failure or delay by either party in enforcing any provisions, exercising any option, or requiring performance of any provisions, be construed to be a waiver of same.

12.10  SEVERABILITY:  If any of the provisions of this Agreement are held invalid, illegal or unenforceable, the remaining provisions shall be unimpaired.

12.11  HEADINGS:  Headings are for reference and shall not affect the meaning of any of the provisions of this Agreement.

15

# 99547 (revised 1/14/98)

TRILOGY 00015

12.12   ENTIRE AGREEMENT: The Exhibits, Schedules and attachments to this Agreement are incorporated by this reference and shall constitute part of this Agreement. This Agreement constitutes the entire agreement between the parties and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day, month and year first written above.

American Express Financial Corporation

By: _____

Name: _____
           (Type or Print)

Title: _____

Date: _____

Trilogy Software, Inc.

By: _____

Name: Karey A. Jones
           (Type or Print)

Title: Associate General Counsel

Date: 10-26-99

16

# 99547 (revised 1/14/98)

TRILOGY 00016

# EXHIBIT D

AZA Law                    Fax:7136550062              Jun 10 2013 02:36pm  P041/041

Begin forwarded message:

**From:** Tommy Jacks <Jacks@fr.com>
**Date:** June 3, 2013, 6:17:00 PM CDT
**To:** "Steve Mitby (smitby@AZALAW.COM)" <smitby@AZALAW.COM>
**Cc:** Roger Borovoy <Borovoy@fr.com>, David Barkan <Barkan@fr.com>, Mike Gaddis <gaddis@fr.com>,
"smcconnico@scottdoug.com" <smcconnico@scottdoug.com>, "csileo@scottdoug.com"
<csileo@scottdoug.com>, Debbie Schumann <Schumann@fr.com>, Penelope Garner <garner@fr.com>,
"Lancaster.Peter@dorsey.com" <Lancaster.Peter@dorsey.com>
**Subject: Deposition of corporate representative of McCamish Systems**

Hello, Steve,

On Thursday I received from Ben Foster a deposition notice for a corporate representative of McCamish
Systems, Inc., with a subpoena duces tecum attached. I had expected a subpoena calling for the
production of documents but hadn't reckoned on needing to identify, prepare and present one or more
corporate representatives for a deposition, at least not in the time frame you've asked for. Because of
the nature and breadth of the testimony being sought, either Roger Borovoy or David Barkan must be
personally involved in preparing and presenting any corporate representative of McCamish. Roger is out
of the country all of June and the first week of July. In addition, David will be out of the country for
almost all of June (departing this week) and will not return to the office until July 1st. And, because we
haven't yet had time to identify a corporate witness for McCamish, we don't yet know who that person
is and what his/her availability will be.

Ben's email indicated that you want the subpoenaed documents and the deposition of a McCamish
corporate witness for a hearing on July 1st. Obviously, that isn't workable for us. If you're able to move
your hearing date to later in July, then there should be no problem – can you agree to do so? While we
may well have some issues with parts of the subpoena/notice in terms of their breadth or relevance,
given our history with one another, we should be able to work those out with you. In addition, since
McCamish is in Atlanta, it's likely the deposition (and our work to prepare for document production and
for the deposition) will be done there, not in Austin.

If you can't accommodate our request to move the deposition to early July, we'll need to file a motion
and seek protection from the Court. I sincerely hope that won't be necessary.

Please let me know as soon as possible whether you can accommodate our request.

Please feel free to call me on my direct line or cell phone if you'd like to talk about this.

Thank you,

Tommy

Tommy Jacks
Fish & Richardson P.C.
111 Congress Avenue
Suite 810
Austin, Texas 78701
Direct: 512-226-8171
Cell: 512-422-7195

2

Filed
13 June 12 P4:06
Amalia Rodriguez-Mendoza
District Clerk
Travis District
12-003588

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and VERSATA | § | |
| DEVELOPMENT GROUP, INC., f/k/a | § | |
| TRILOGY DEVELOPMENT GROUP, INC., | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, INC., | § | |
| AMERICAN ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| | § | 53rd JUDICIAL DISTRICT |
| *Defendants.* | § | |

## MOTION TO QUASH NOTICE OF DEPOSITION

TO THE HONORABLE COURT:

Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively, "Ameriprise" or "Defendants")[1] file this Motion to Quash Deposition Notice pursuant to Texas Rule of Civil Procedure 199.4.

### THE NOTICE

On Friday June 7, 2013, Plaintiffs served via facsimile a Notice of Intention to Take Oral and Videotaped Deposition of Defendants. The Notice sought to depose a corporate representative or representatives of Defendants regarding a number of broad topics. A true and correct copy of the Notice is attached hereto as Exhibit A.

### OBJECTIONS TO TIME AND PLACE

Defendants object to the time and place of the depositions. Ameriprise (and the various persons who will likely be necessary to provide even preliminary answers to the non-

---

[1] Ameriprise Financial, Inc. is also a Counterclaimant.

1000444

objectionable aspects of the topics noticed) is located in Minneapolis, Minnesota and is not available for a corporate representative deposition on June 28, 2013 in Austin. The deposition topics noticed are broad, discovery in this case has only just begun, and a draft set of the topics were sent to Defendants for the first time on June 5, 2013. Several other depositions are already scheduled in this case, including depositions in Austin, Texas on June 14 and 15; in Minneapolis, Minnesota on June 17; in Naples, Florida on June 24; and on June 26 in Minneapolis, Minnesota. Two additional depositions are likely to be scheduled on June 25 and 26 in Minneapolis, and Plaintiffs' motion for summary judgment will be heard in Austin on June 26 as well. It is simply not possible for Ameriprise to identify and make available its corporate representatives for deposition in Austin on June 28. The parties have conferred to the extent to which some of these topics might be handled by witnesses who are already scheduled to be deposed in Minneapolis during the course of this month. Defendants will continue to confer with Plaintiffs about these topics and a time and place for this deposition.[2]

## DEPOSITION AUTOMATICALLY STAYED

This Motion is filed within three business days of service of the Notice, and the deposition is therefore automatically stayed pending ruling by the Court. Tex. R. Civ. P. 199.4.

## REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. request that the Court grant this Motion to Quash and grant Defendants such further relief to which they are justly entitled.

---

[2] In the hope that the parties' conferencing about these topics can result in discovery agreements, Ameriprise is not at this time seeking protection or objecting to substance of the topics. Ameriprise reserves the right to do so.

2

SCOTT, DOUGLASS & McCONNICO, LLP

600 Congress Avenue, Suite 1500
Austin, Texas  78701
Phone: (512) 495-6300
Fax:  (512) 474-0731

By    /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail:  smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail:  csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

*ATTORNEYS FOR COUNTERCLAIMANT AND
DEFENDANTS*

3

1000444

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on June 12, 2013.

Travis Barton                            *VIA FACSIMILE* 512.495.6093 *AND*
McGinnis, Lochridge & Kilgore, LLP     *EMAIL*
600 Congress Avenue, No. 2100
Austin, Texas

Amir Alavi                               *VIA FACSIMILE* 713.655.0062
Steven Mitby
Ben Foster
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010

                                   /s/ Christopher D. Sileo
                                   Christopher D. Sileo

4

1000444

NO. D-1-GN-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## PLAINTIFFS' NOTICE OF INTENTION TO TAKE
## ORAL AND VIDEOTAPED DEPOSITION OF DEFENDANTS
## AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC. AND
## AMERICAN ENTERPRISE INVESTMENT SERVICES, INC.

TO:     Defendants, by and through their attorneys of record, Peter M. Lancaster and Heather D. Redmond, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402-1498; and Steve McConnico and Christopher D. Silco, Scott, Douglass & McConnico, LLP, 600 Congress Avenue, Suite 1500, Austin, Texas 78701.

Please take notice that, under Texas Rule of Civil Procedure 199, Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development, Inc. (collectively, "Versata") will take the oral and videotaped deposition of the Corporate Representative of Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc. and American Enterprise Investment Services, Inc. (collectively, "Ameriprise") beginning at 9:00 a.m. on Friday, June 28, 2013, at the offices of Scott, Douglass & McConnico, LLP, 600 Congress Avenue, Suite 1500, Austin, Texas 78701.

Please take further notice that the Corporate Representative will provide testimony on the subjects attached as Exhibit 1.

**Exhibit ___A___**

Henjum Goucher will stenographically record the deposition, which will also be videotaped. The deposition will continue from day to day until completed.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via hand-delivery and/or via facsimile and/or via regular U.S. Mail and/or via electronic mail on June 7, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

Benjamin F. Foster

## DEFINITIONS AND INSTRUCTIONS

The following definitions shall apply to these requests:

1.      "Defendants", "Ameriprise", "you", "your", "yours" means, unless otherwise specified in a particular request, Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment Services, Inc., and any parent companies, subsidiaries, affiliates, predecessor in interest, successor in interest, directors, officers, employees, agents and other representatives, including attorneys, of Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment Services, Inc., and each other person acting or authorized to act on behalf of Defendants.

2.      "Versata" and "Plaintiffs" mean Plaintiffs Versata Software, Inc., f/k/a, Trilogy Software, Inc.; and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc., individually and collectively, as well as any employee, agent, representative, affiliate, predecessor in interest, successor in interest, parent, or subsidiary of Versata Software, Inc., f/k/a, Trilogy Software, Inc.; and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. and each person acting or having actual or apparent authority to act on behalf of Versata Software, Inc., f/k/a, Trilogy Software, Inc.; and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc.

3.      An "affiliate" of a specific person means another person that directly, or indirectly through one or more intermediaries, controls or owns, is controlled or owned by, or is under common control or ownership with, the person specified. For purposes of this definition, "own" means to hold the power to vote five percent or more of the outstanding voting securities of the person and "control" means to hold either the legal right or practical ability to direct the actions of another person.

4.      "DCM" means the software product know as Distribution Channel Management and licensed at any time to Ameriprise.

## EXHIBIT 1

## SUBJECTS FOR WHICH CORPORATE REPRESENTATIVE
## TESTIMONY IS SOUGHT FROM PLAINTIFFS

1) The factual basis for Ameriprise's breach of warranty counterclaim. This topic includes but is not limited to, what parts of the DCM software Ameriprise contends are subject to claims, encumbrances, restrictions and/or claims of third parties as described in paragraph 40 of Ameriprise's counterclaims and what the nature of those third party claims are.

2) The factual basis of Ameriprise's wrongful termination claim. This topic includes but is not limited to what facts underlie the alleged breach of sections 6.1, 6.6, 6.7 and 8.1 of the Master License Agreement.

3) The factual basis of Ameriprise's constructive trust claim. This topic includes but is not limited to what facts underlie the allegation that "The current version of DCM is as much the work product of Ameriprise as of Versata." And the factual basis for the allegation that Versata owes fiduciary duties to Ameriprise.

4) The factual basis of Ameriprise's breach of the escrow agreement. This topic includes but is not limited to Ameriprise's actions with respect to escrow back in 1999 and the steps, if any, that Ameriprise has taken to provide notice to Versata or to cooperate with Versata in establishing an escrow account.

5) The various notices of breach that Ameriprise received from Versata and Versata's lawyers. Including Ameriprise's efforts to investigate and cure these breaches.

6) Ameriprise's knowledge and investigation regarding Infosys's status as a permitted contractor.

7) Ameriprise's investigation into decompilation and the results of that investigation.

8) The factual basis for Ameriprise's claim that Versata either authorized decompilation or that Versata knew about decompilation.

4820-0321-1796, v. 1

Filed
13 June 12 P5:02
Amalia Rodriguez-Mendoza
District Clerk
Travis District
12-003588

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., f/k/a TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
|       *Plaintiffs,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
|       *Defendants.* | § | 53rd JUDICIAL DISTRICT |

## MOTION FOR ENTRY OF AGREED PROTECTIVE ORDER

Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. file this unopposed Motion for Entry of Agreed Protective Order:

Defendants move the Court to enter the attached Agreed Protective Order to protect the confidentiality and proprietary nature of the documents produced. Plaintiffs do not oppose this Motion.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray that this Court grant its Motion and enter the Agreed Protective Order attached hereto.

1000641

Respectfully submitted,

SCOTT, DOUGLASS & MCCONNICO, LLP


By: /s/ Christopher D. Sileo
     Steve McConnico
     Texas Bar No. 13450300
     Christopher D. Sileo
     Texas Bar No. 24027977
     600 Congress Avenue, Suite 1500
     Austin, Texas  78701
     (512) 495-6300 (Telephone)
     (512) 474-0731 (Facsimile)
     smcconnico@scottdoug.com
     csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
*Admitted Pro Hac Vice*
Heather D. Redmond (MN ID # 0313233)
*Admitted Pro Hac Vice*
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
(612) 340-2600 (Telephone)
(612) 340-3868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com


**ATTORNEYS FOR
DEFENDANTS/COUNTER - PLAINTIFFS**

2

1000641

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this Motion for Entry of Agreed Protective Order was served on the following counsel of record by the methods stated below on the 12th day of June 2013:

**Via Facsimile: 512-495-6093**
Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Ave., Suite 2100
Austin, TX 78701
*Attorneys for Plaintiffs*

**Via Facsimile: 713-655-0062**
Amir Alavi
Steven J. Mitby
Ben Foster
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC
1221 McKinney Street, Suite 3460
Houston, TX 77010
*Attorneys for Plaintiffs*

/s/ Christopher D. Sileo
Christopher D. Sileo

3

1000641

Filed in The District Court
of Travis County, Texas

TJ   JUN 1 3 2013                M.
At_____8:41A_____
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | |
| DEFENDANTS | § | 53RD JUDICIAL DISTRICT |

## AGREED PROTECTIVE ORDER

The Court enters this Agreed Protective Order to govern the treatment of confidential information in this action:

1.   As used in the Protective Order, these terms have the following meanings:

"Attorneys" means counsel of record in this action and the Infosys Litigation and the parties' inside counsel (including Versata's counsel Lance Jones and Lisa George and Infosys' counsel Jeffrey Friedel);

"Documents" are all materials within the scope of Texas Rule of Civil Procedure 192.3(b);

"Restricted Information" means all documents or information designated as (1) Confidential, (2) Confidential – Attorneys' Eyes Only, or (3) Confidential – Attorneys' Eyes Only – Parties Only pursuant to this Order;

1

"Infosys Litigation" means the federal court litigation styled *Versata Software, Inc., et al. v. Infosys Technologies, Ltd.*, W.D. Tex. Case No. 1:10-cv-00792-SS;

"Outside Vendors" means messenger, copy, coding, and other clerical-services vendors not employed by a party, Infosys, or their Attorneys; and

"Written Assurance" means an executed document in the form attached as Exhibit A.

2.     A Party or Infosys may designate a document "Confidential" to protect information that is business-sensitive or a trade secret.  Access to any Confidential document shall be limited to:

(a)     the Court and its staff;

(b)     Attorneys, their law firms, and their Outside Vendors;

(c)     persons shown on the face of the document to have authored or received it;

(d)     court reporters retained to transcribe testimony;

(e)     the parties;

(f)     outside independent persons (i.e., persons not currently employed by any party or Infosys) who are retained by a party, Infosys, or their Attorneys to provide assistance as mock jurors or focus group members or the like; and

(g)     persons who are retained by a party, Infosys, or their Attorneys to furnish technical or expert services in this action.

3.     A Party or Infosys may designate a document "Confidential – Attorneys' Eyes Only" to protect Confidential information that constitutes software source code, object code, or other sensitive technical information or documentation; non-public financial information; or strategic planning information.  Access to any Confidential – Attorneys' Eyes Only document shall be limited to:

2

(a)   the Court and its staff;

(b)   Attorneys, their law firms, and their Outside Vendors;

(c)   persons shown on the face of the document to have authored or received it;

(d)   court reporters retained to transcribe testimony;

(e)   outside independent persons (i.e., persons not employed by, consulting with, or otherwise associated with any party or Infosys, or any persons formerly in those capacities) who are retained by a party, Infosys, or their Attorneys to provide assistance as mock jurors or focus group members or the like;

(f)   outside independent persons (i.e., persons not employed by, consulting with, or otherwise associated with any party or Infosys, or any persons formerly in those capacities) who are retained by a party, Infosys, or their Attorneys to furnish consulting expert services; provided, however, that each side and Infosys may utilize not more than two, party-affiliated or former, party-affiliated technical subject matter experts to review Confidential – Attorneys' Eyes Only designated source code, object code and technical information and documentation, such individuals not to review non-public financial or strategic planning information; and

(g)   designated testifying experts and their staff.

4.   Nothing shall be designated as "Confidential – Attorneys' Eyes Only" except software source code, object code, technical information and documentation, and non-public financial or strategic planning information of the most sensitive nature which, if disclosed to persons of expertise in the area, would reveal significant technical or business advantages of the producing or designating party or Infosys, or would provide third parties a competitive advantage, and which includes as a major portion subject matter which is believed to be

3

unknown to the opposing party or parties, or any of the employees of the corporate parties. Nothing shall be regarded as Restricted Information if it is information that either:

    a.  is in the public domain at the time of disclosure, as evidenced by a written document;

    b.  becomes part of the public domain through no fault of the other party, as evidenced by a written document;

    c.  the receiving party can show by written document that the information was in its rightful and lawful possession at the time of disclosure; or

    d.  the receiving party lawfully receives such information at a later date from a third party without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.  Notwithstanding the foregoing, any source code may be marked "Confidential – Attorneys' Eyes Only."

    5.    In designating Restricted Information a party or Infosys will make such designation only as to the information that it in good faith believes is Restricted Information.

    6.    All Restricted Information shall be used solely for the purpose of this action or the Infosys Litigation, and no person receiving Restricted Information shall, directly or indirectly, use, transfer, disclose, or communicate in any way the information to any person other than those specified in paragraphs 2 and 3, as applicable.

    7.    A party or Infosys may further designate Confidential – Attorneys' Eyes Only documents as "Parties Only" to prevent the disclosure of a third party's confidential information to Infosys (in this litigation) or to Ameriprise (in the Infosys Litigation) in violation of a contractual obligation.  With the exception of documents designated "Confidential – Attorneys'

Eyes Only – Parties Only," the parties and Infosys agree that Infosys shall have access to documents, testimony, and other evidence produced, provided, or discovered in this litigation, and that Ameriprise shall have access to documents, testimony, and other evidence produced, provided, or discovered in the Infosys Litigation.

8.    Infosys shall be given notice and opportunity to attend and examine the witness in any deposition taking place in this action, and Ameriprise shall be given the same notice and opportunity with regard to any deposition taking place in the Infosys Litigation.  With the exception of documents designated "Confidential – Attorneys' Eyes Only – Parties Only," the parties and Infosys also agree that the parties and Infosys may, consistent with the restrictions in paragraphs 2 and 3, use documents, testimony, and other evidence produced, provided, or discovered in connection with either this litigation or the Infosys Litigation as evidence in the other action (if otherwise admissible); provided, however, that no deposition testimony may be used against a party or Infosys unless that party or Infosys had the opportunity to attend the deposition and examine the witness.  Any such documents, testimony, or other evidence so used shall retain the same confidentiality designation under which they were produced, provided, or discovered in the litigation from which they originated, with the designations "Confidential" and "Confidential – Attorneys' Eyes Only" as used herein being deemed identical, respectively, to the designations "Confidential" and "For Counsel Only / Attorneys' Eyes Only" as used in the December 17, 2010 Agreed Protective Order in the Infosys Litigation.

9.    Third parties producing documents in the course of this action may also designate documents as Restricted Information, subject to the same protections and constraints as the parties to the action.  A copy of the Protective Order shall be served along with any subpoena served in connection with this action.  All documents produced by such third parties shall be

5

treated as "Confidential – Attorneys' Eyes Only – Parties Only" for a period of 14 days from the date of their production, and during that period any party may designate such documents pursuant to the terms of the Protective Order.

       10.    Documents produced in this action may be designated by any party or parties or Infosys as Restricted Information by marking each page of the document(s) so designated with a stamp identifying the designation." In lieu of marking the original of a document, if the original is not produced, the designating party or Infosys may mark the copies that are produced or exchanged. Originals shall be preserved for inspection.

       11.    Each person appropriately designated pursuant to paragraphs 2(f) and 2(g), 3(e), 3(f) and 3(g) to receive Restricted Information shall execute a "Written Assurance" in the form attached as Exhibit A. Opposing counsel shall be notified at least 7 days prior to disclosure to any such person who is known to be an employee, former employee, consultant or former consultant to, any party, or any competitor of the party whose designated documents are sought to be disclosed. Such notice shall provide a reasonable description of the outside independent person to whom disclosure is sought sufficient to permit objection to be made. If a party objects in writing to such disclosure within 7 days after receipt of notice, no disclosure shall be made until agreement is reached between the parties or the matter is adjudicated by the Court. The party resisting disclosure must file a motion within 7 days of objecting to disclosure or the objection is waived. The party objecting to disclosure must notice a hearing on the matter for the first available court date. Any delay caused by the time required to adjudicate the dispute shall

be sufficient grounds upon which to request related case deadlines to be extended by the same amount of time.[1]

12.    All depositions or portions of depositions taken in this action that contain confidential information may be designated "Confidential" or "Confidential – Attorneys' Eyes Only" and thereby obtain the protections accorded other such documents.  Confidentiality designations for depositions shall be made either on the record or by written notice to the other party within 30 days of receipt of the transcript.  Unless otherwise agreed, depositions shall be treated as "Confidential – Attorneys' Eyes Only" during the 30-day period following receipt of the transcript.   The deposition of any witness (or any portion of such deposition) that encompasses Confidential or Confidential – Attorneys' Eyes Only information shall be taken only in the presence of persons who are qualified to have access to such information.  To the extent possible, the court reporter shall segregate into separate transcripts information designated as "Confidential" or "Confidential – Attorneys' Eyes Only" with blank, consecutively numbered pages being provided in a nondesignated main transcript.  The separate transcript containing such information shall have page numbers that correspond to the blank pages in the main transcript.

13.    Any party or Infosys who inadvertently fails to identify documents as Restricted Information shall, promptly upon discovery of its oversight, provide written notice of the error and substitute appropriately-designated documents.  Any party or Infosys receiving such improperly-designated documents shall retrieve such documents from persons not entitled to receive those documents and, upon receipt of the substitute documents, shall return or destroy the improperly-designated documents.  Documents to be inspected shall be treated as "Confidential

---

[1] Nothing beyond the first sentence of this Paragraph 11 applies to information produced or contemplated to be produced by Infosys or Versata in the Infosys Litigation.

7

– Attorneys' Eyes Only – Parties Only" during inspection.  At the time of copying for the receiving parties, such inspected documents shall be stamped prominently as Restricted Information, if so designated, by the producing party.

14.   Nothing herein shall prevent disclosure beyond the terms of this order if the party designating the information as Restricted Information consents to such disclosure or, if the court, after notice to all affected parties orders such disclosures.   Nor shall any constraint on information designated as Restricted Information bar decompilation of software code claimed to be owned by any party by persons identified in paragraph 3(f) and 3(g) herein. The results of any such decompilation will be treated as "Attorneys' Eyes Only" and nothing contained herein constitutes a waiver or otherwise prejudices either party's claims and defenses in this action or the Infosys Litigation or any other case.

15.   In the event that counsel for any party or Infosys determines to file with, or submit to, the Court any Restricted Information, or documents or papers referencing Restricted Information, the parties and their counsel shall give written notice to the other party's counsel at least five (5) business days, excluding legal holidays, before such filing or submission.

16.   Upon such notice, the party who has designated the underlying materials as Restricted Information shall file a motion to seal and set a hearing date to seal the documents and, to the extent required by law, comply with, and make the required showing under Texas Rules of Civil Procedure 76a for sealing court records, namely that (a) a specific, serious and substantial interest clearly outweighs (1) the presumption for openness for court records, and (2) any probable adverse effect that sealing will have on the general public health or safety, and (b) that no less restrictive means than sealing records will adequately and effectively protect the

8

specific interest asserted.  If a motion to seal is filed, no party shall file the document(s) at issue until the Court rules on the motion.[2]

17.    A party shall not be obligated to challenge the propriety of a designation as Restricted Information at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.  In the event any party to this litigation or Infosys disagrees at any stage of these proceedings with the designation by the designating party of any information as Restricted Information the parties shall first try to resolve such dispute in good faith and on an informal basis, such as by production of redacted copies.  If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who has designated the document or information as Restricted Information.  Any such document shall be treated as designated unless change is agreed to or ordered by the Court.  If the requested change in designation is not agreed to, the party seeking the change shall be required to move the Court for an order preserving the designated status of such information within fourteen (14) days of receipt of the written objection, and failure to do so shall constitute a termination of the restricted status of such item.  The moving party must provide notice to any third party whose designation of produced documents in the action may be affected.  The party asserting that the material is Restricted Information shall have the burden of proving that the information in question is within the scope of protection above.

18.    Within 120 days of the termination of either this action or the Infosys Litigation, including any appeals, whichever occurs later, each party and Infosys shall either destroy or return to the producing party all documents designated by the producing party as Restricted

---

[2] Paragraphs 15 and 16 do not apply to any filling made or contemplated to be made by Infosys or Versata in the Infosys Litigation.

9

Information and all copies of such documents, and shall destroy all extracts and/or data taken from such documents. Each party and Infosys shall provide a certification as to such return or destruction within the 120-day period. However, Attorneys shall be entitled to retain attorney work product and a set of all documents filed with the Court and all correspondence generated in connection with this action or the Infosys Litigation.

19.    The inadvertent production of any document or other information during discovery in this action shall be without prejudice to any claim that such material is privileged under the attorney-client privilege, or protected from discovery as work product within the meaning of the Texas Rules of Civil Procedure, and no party or entity shall be held to have waived any rights by such inadvertent production. Upon written request by the inadvertently producing party or entity, the receiving party shall (i) return the original and all copies of such documents within ten (10) days of receiving the request, and (ii) shall not use such information for any purpose until further order of the Court. Any analyses, memoranda, or notes which were internally generated based upon such information shall be destroyed. Upon written request by the receiving party, the advertently producing party shall make the document available for *in camera* inspection by the Court in connection with any challenge to the claim of privilege or work product protection. Nothing herein will restrict the party from whom the return of the documents is requested from filing a motion with the Court contesting the designation of the material as privileged or protected by the work product doctrine or from referring to the fact that the material had been produced; provided, however, the party filing the motion cannot disclose the content of the document nor contend that any privilege has been waived.

10

20.     Any party or Infosys may apply to the Court for a modification of the Protective Order, and nothing in this Protective Order shall be construed to prevent a party or Infosys from seeking such further provisions enhancing or limiting confidentiality as may be appropriate.

21.     No action taken in accordance with the Protective Order shall be construed as a waiver of any claim or defense in the action or of any position as to discoverability or admissibility of evidence.

22.     The obligations imposed by the Protective Order shall survive the termination of this action.

23.     This order shall not bar any attorney herein in the course of rendering advice to his client with respect to this litigation and/or the Infosys Litigation from conveying to any party client his evaluation in a general way of Restricted Information produced or exchanged herein; provided, however, that in rendering such advice and otherwise communicating with his client, the attorney shall not disclose the specific contents of any Restricted Information produced by another party herein, which disclosure would be contrary to the terms of the Protective Order.

June 13, 2013 _____
                    JUDGE PRESIDING

11

Stipulated to:

DATED: June 10, 2013

DORSEY & WHITNEY LLP

By _Heather D. Redmond_
    Peter M. Lancaster #0159840
    Heather D. Redmond #0313233
    Andrea Caron Wiltrout #0391768
    Suite 1500, 50 South Sixth Street
    Minneapolis, MN 55402-1498
    Telephone: (612) 340-2600

SCOTT, DOUGLASS & McCONNICO, L.L.P.
Stephen E. McConnico
State Bar No. 13450300
Christopher D. Sileo
State Bar No. 2402977
600 Congress Avenue, Suite 1500
Austin, Texas 78701-3234
(512) 495-6300 – Telephone
(512) 474-0731 – Facsimile

**Attorneys for Defendant Ameriprise Financial, Inc.**

12

AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING, P.C.

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062


McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093


**ATTORNEYS FOR PLAINTIFFS**


Agreed to by Infosys Technologies, Ltd.

By: _____

Its: _Tommy Jacks_
_Fish & Richardson, PC_
_State Bar No 10452000_

_ATTORNEYS FOR INFOSYS_
_Technologies, Ltd._

13

**EXHIBIT A**

**WRITTEN ASSURANCE**

_____ declares that:

I reside at _____ in the City of _____,

County of _____, State of _____ . My telephone number is _____.

I am currently employed by _____, located at

_____, and my current job title is _____.

I have read and I understand the terms of the Protective Order dated _____.

I agree to comply with and be bound by the provisions of the Protective Order. I understand that

any violation of the Protective Order may subject me to sanctions by the Court.

I shall not divulge any documents, or copies of documents, designated as Restricted

Information obtained pursuant to such Protective Order, or the contents of such documents, to

any person other than those specifically authorized by the Protective Order. I shall not copy or

use such documents except for the purposes of this action and/or the related Infosys Litigation

and pursuant to the terms of the Protective Order.

Within 30 days after I am notified of the final termination of this action or of the Infosys

Litigation (whichever is later), I shall return to the attorney from whom I have received them,

any documents in my possession designated as Restricted Information, and all copies, excerpts,

summaries, notes, digests, abstracts, and indices relating to such documents.

I submit myself to the jurisdiction of the courts of the State of Texas for the purpose of

enforcing or otherwise providing relief relating to the Protective Order.

Executed on _____        _____
                 (Date)                              (Signature)

14



**261ST DISTRICT COURT**

Filed in The District Court
of Travis County, Texas

JUN 12 2013

At 2:23 P.
Amalia Rodriguez-
RUBEN TAMEZ
Court Clerk
(512) 854-9457

LA SONYA THOMAS
Official Court Reporter
(512) 854-9331

**LORA J. LIVINGSTON**
Judge
(512) 854-9309

DELAINE J. FOSS
Staff Attorney
(512) 854-9625

MARY JANE LAWSON
Court Operations Officer
(512) 854-9337

TRAVIS COUNTY COURTHOUSE
P. O. BOX 1748
AUSTIN, TEXAS 78767
FAX (512) 854-9332

June 12, 2013

Travis C. Barton
McGinnis, Lochridge & Kilgore, L.L.P.
600 Congress Avenue, Suite 2100
Austin, Texas 78701

Steve McConnico
Scott, Douglass & McConnico, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas 78701

Re:   Cause No. D-1-GN-12-003588, *Versata Software, Inc. f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. v. Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc.*, in the 53rd Judicial District Court of Travis County, Texas

Dear Counsel:

I have received your letter requesting that the above-referenced cause be specially assigned. While your letter states that the case is complex, the letter does not demonstrate the complexity or differentiate it from any other potentially complex case. We have received a great number of requests for special assignment and have had to monitor and carefully select those cases that would need such care. Special assignment can inherently cause problems on our central docket and can further result in delays to those cases assigned.

While it is our practice to assign those cases in which attorneys agree and request such an assignment, or in which the complexity of the cases requires such assignment, I find that this case does not meet the criteria and deny your requested assignment. Thank you for your understanding.

Sincerely,

Lora J. Livingston
Local Administrative Judge
Travis County Texas

cc: Ms. Amalia Rodriguez-Mendoza, Travis County District Clerk

Filed in The District Court
of Travis County, Texas

JUN 12 2013

2:23 p. m.

Amalia Rodriguez-Mendoza, District Clerk

**LAW OFFICES**

# McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

**600 CONGRESS AVENUE**
**SUITE 2100**
**AUSTIN, TEXAS 78701**

HOUSTON, TEXAS OFFICE
1111 LOUISIANA STREET, SUITE 4500
HOUSTON, TEXAS 77002
(713) 615-8500
FAX (713) 615-8585

AUSTIN, TEXAS OFFICE
(512) 495-6000
FAX (512) 495-6093

WRITER'S DIRECT DIAL NUMBER:
(512) 495-6041
tcbarton@mcginnislaw.com
Fax: (512) 505-6341

May 30, 2013

The Honorable Lora Livingston                                    Via Hand Delivery
261st Civil District Court
1000 Guadalupe, Room 327
Austin, TX 78701

Re:    Cause No. D-1-GN-12-003588; *Versata Software, Inc. f/k/a Trilogy Software, Inc., and
       Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. v. Ameriprise
       Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment
       Services, Inc.*; In the 53rd Judicial District of Travis County, Texas

Dear Judge Livingston:

       Pursuant to Local Rule 2.6, Plaintiffs/Counter-Defendants Versata Software, Inc. f/k/a
Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group,
Inc. and Defendants/Counter-Plaintiffs Ameriprise Financial, Inc., Ameriprise Financial
Services, Inc., American Enterprise Investment Services, Inc. request that above-referenced
lawsuit be assigned to a particular judge.

       This case is a complex software case involving alleged breaches of a software license
agreement. The case is related to an ongoing federal lawsuit pending before Judge Sam Sparks,
and the parties have discussed potential coordination between these matters. Because of the
nature of this case, the parties respectfully request that Judge Jenkins, Judge Sulak, or Judge
Meachum be appointed to hear the case. An application for a temporary injunction is scheduled
to be heard on July 1, so it would be preferable to have an assignment made in the next couple of
weeks if possible.

       If you have any questions, please do not hesitate to contact me or counsel for
Defendants/Counter-Plaintiffs, Steve McConnico or Chris Silco (495-6300)

                                        Sincerely,

                                        *Tom C Barton*

                                        Travis C. Barton

Copies, via e-mail to:
       Steve McConnico
       Chris Silco

LAW OFFICES

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

600 CONGRESS AVENUE
SUITE 2100
AUSTIN, TEXAS 78701

HOUSTON, TEXAS OFFICE
1111 LOUISIANA STREET, SUITE 4500
HOUSTON, TEXAS 77002
(713) 615-8500
FAX (713) 615-8585

Filed in The District Court
of Travis County, Texas

JUN 1 2 2013

At _____ 2:23 PM.
Amelia Rodriguez AUSTIN, TEXAS OFFICE
(512) 495-6000
FAX (512) 495-6093

WRITER'S DIRECT DIAL NUMBER:
(512) 495-6041
tcbarton@mcginnislaw.com
Fax: (512) 505-6341

May 30, 2013

Via Hand Delivery

The Honorable Lora Livingston
261st Civil District Court
1000 Guadalupe, Room 327
Austin, TX 78701

Re:    Cause No. D-1-GN-12-003588; *Versata Software, Inc. f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. v. Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment Services, Inc.*; In the 53rd Judicial District of Travis County, Texas

Dear Judge Livingston:

Pursuant to Local Rule 2.6, Plaintiffs/Counter-Defendants Versata Software, Inc. f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. and Defendants/Counter-Plaintiffs Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment Services, Inc. request that above-referenced lawsuit be assigned to a particular judge.

This case is a complex software case involving alleged breaches of a software license agreement. The case is related to an ongoing federal lawsuit pending before Judge Sam Sparks, and the parties have discussed potential coordination between these matters. Because of the nature of this case, the parties respectfully request that Judge Jenkins, Judge Sulak, or Judge Meachum be appointed to hear the case. An application for a temporary injunction is scheduled to be heard on July 1, so it would be preferable to have an assignment made in the next couple of weeks if possible.

If you have any questions, please do not hesitate to contact me or counsel for Defendants/Counter-Plaintiffs, Steve McConnico or Chris Sileo (495-6300)

Sincerely,

*Tra C Barton*

Travis C. Barton

Copies, via e-mail to:
      Steve McConnico
      Chris Sileo