# EXHIBIT A
# PART 5 OF 12

Filed
13 June 19 A10:58
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-003588

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a<br>TRILOGY SOFTWARE, INC., and VERSATA<br>DEVELOPMENT GROUP, INC., f/k/a<br>TRILOGY DEVELOPMENT GROUP, INC., | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
|     Plaintiffs, | §<br>§<br>§ | |
| v | §<br>§ | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC.,<br>AMERIPRISE FINANCIAL SERVICES, INC.,<br>AMERICAN ENTERPRISE INVESTMENT<br>SERVICES, INC., | §<br>§<br>§<br>§<br>§ | |
|     Defendants. | §<br>§ | 53rd JUDICIAL DISTRICT |

## DEFENDANTS' FIRST AMENDED COUNTERCLAIM
## AND APPLICATION FOR TEMPORARY AND PERMANENT
## INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME Defendants Ameriprise Financial, Inc. ("Ameriprise"), Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively "Defendants") and file this First Amended Counterclaim and Application for Temporary and Permanent Injunctive Relief and state as follows.

## COUNTERCLAIM

Counterclaimant Ameriprise, for its Counterclaim against all Plaintiffs (collectively, "Versata"), states and alleges as follows:

1002507

## DISCOVERY

1.      Discovery should be conducted pursuant to Level 3, Texas Rule of Civil Procedure 190.4, and Ameriprise moves that discovery be conducted in accordance with a discovery control plan tailored to the specific circumstances of this suit.

## INTRODUCTION AND PARTIES

2.      Ameriprise is a Delaware corporation with its principal place of business located at 55 Ameriprise Financial Center in Minneapolis, Minnesota.  Ameriprise is a leading financial planning and services company.  Ameriprise subsidiaries serve individual investors' and institutions' financial needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance.  Ameriprise was formerly named American Express Financial Corporation.  Ameriprise's field force includes numerous personnel within Travis County and elsewhere in Texas.

3.      Versata is a Delaware corporation with its principal place of business in Austin, Texas.  On information and belief, Versata conducts business with fewer than five employees in Texas or anywhere else in the United States.  Versata provides software and other technology products and services to companies in the financial services industry, among other areas.  Versata was formerly named Trilogy Software, Inc.

4.      At the center of this action is a Master License Agreement ("Agreement") by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from an enterprise compensation software product currently called "Distribution Channel Management" or "DCM." The terms of the Agreement are binding upon Versata and Ameriprise.

2

1002507

5.      In breach of its contractual obligations, Versata has threatened to terminate, and has stated that it has already terminated, Ameriprise's perpetual and worldwide license to use DCM, software that is a necessary component of an Ameriprise system called "Distribution Management Utility," or "DMU."

## JURISDICTION AND VENUE

6.      This Court has general jurisdiction over Plaintiffs because their principal place of business is in Travis County, Texas, and because they subjected themselves to the jurisdiction of this Court by commencing this action.  This Court has specific jurisdiction in connection with these Counterclaims because these Counterclaims relate to issues presented in Plaintiffs' Petition.

7.      In accordance with § 15.002 of  the Texas Civil Practice and Remedies Code, venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County and Versata's principal place of business in in Travis County.

## FACTS

**A.      The Master License Agreement**

8.      The predecessors of Ameriprise and Versata entered into the Agreement, effective October 4, 1999, by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from DCM.  The core software and documentation relating to the DCM software are referred to in the Agreement as the "Products."

3

1002507

9.      DCM is Java-based software. It was designed by Versata to be extended (*i.e.*, modified and enhanced), and at Ameriprise DCM has been extended and customized with as much as a million lines of additional computer code, added by Ameriprise over many years through the use of different contractors and with Versata's full knowledge.

10.     DCM is a key component of Ameriprise's DMU system, which is part of the compensation and recordkeeping operations for all Ameriprise personnel registered to perform securities work. It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.     The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work. Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise. Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM. Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products." The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.     Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, and the predecessor

4

versions of DCM called first SC Commission and then DMS, as explicitly authorized by section 4.4 of the Agreement. Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys"). Indeed, Versata has worked with such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's various versions of what is now called DCM code, pursuant to Ameriprise's rights under the Agreement. In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into source code (readable by programmers) - through the use of readily-available software.

13.      Despite this acquiescence, in 2010 Versata raised concerns about Infosys decompiling DCM code. In response, Ameriprise, though it had no obligation to do so, began to phase Infosys out of its contractor role with respect to DCM-related work. To date, more than 90% of previously-engaged Infosys personnel have been removed from such work, leaving fewer than ten Infosys employees with access to DCM.

**B.      Versata's Efforts to Force Ameriprise to Convert to A New, Risky, Unproven, Unsafe Software System Or Additional Payments**

14.      Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven, and substantially more expensive replacement for DCM. Versata called its sales proposal the "DCM Enterprise Cloud." Versata's new DCM Enterprise Cloud proposal would require Ameriprise to drastically increase its payments to Versata and to entrust the operation, storage and security of Ameriprise's highly sensitive and confidential business functions and information to a third-party service provider's public cloud environment. A "public cloud" is a shared

storage and computing environment delivered over a network. In this case, the network is the public Internet.

15.     Ameriprise expressed skepticism about and reluctance to accept Versata's DCM Enterprise Cloud proposal for sound business judgment reasons, including but not limited to: security concerns associated with Ameriprise's highly confidential information and dependence on a fully functioning DCM, dissatisfaction with Versata's personnel, and greatly increased costs.

16.     On September 17, 2012, two business days after receiving Ameriprise's initial reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an alleged "material breach" of the Agreement and demanding that Ameriprise cure such alleged breach within thirty days. Fully aware that Ameriprise depends upon DCM and the contractors who customize and maintain it and fully aware that the "breaches" it alleged were impossible to "cure" within 30 days, Versata nonetheless threatened to terminate the Agreement at the end of the 30-day period. In that event, Versata threatened, by the October 17, 2012 deadline, "Ameriprise … must immediately stop using all Versata-developed software and immediately must return all of Versata's software and other confidential information." Versata's letter culminated in a demand for an immediate mediation to discuss the issues Versata raised. Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the resolution of Versata's concerns.

17.     On November 12, 2012, despite Ameriprise's acquiescence to Versata's request for a prompt mediation, and in the midst of the parties' discussions with a third-party mediator, Versata filed suit against Ameriprise in Texas state court.

6

1002507

18.     Versata's conduct in wrongfully threatening to terminate the Agreement constitutes wrongful termination and a breach of the Agreement.  The conduct is a willful and malicious act within the meaning of Article 11 of the Agreement.

19.     Ameriprise has provided Versata notice of its material breaches of the Agreement.

**C.      Ameriprise's Right to Relief**

20.     Because Versata has purported to terminate the Agreement and has not withdrawn its purported termination, and Ameriprise has previously provided notice of Versata's breaches, Ameriprise must conclude that granting Versata any additional cure period ordinarily available under the Agreement would be futile.  An effective cure by Versata would have required, among other actions to cure its breaches, (a) withdrawal of its purported termination and (b) withdrawal and dismissal of its pending lawsuit.

21.     Ameriprise has paid Versata all sums owed to it.

22.     Ameriprise is entitled to engage third-party contractors to provide software services for DCM who do not compete with Versata in the development of enterprise compensation or configuration software.

23.     Ameriprise is entitled to continue to use DCM.

24.     The harm that Versata's actions have caused and threaten to cause to Ameriprise is irreparable, with no adequate remedy at law.

**CAUSES OF ACTION**

**I.      BREACH OF CONTRACT THROUGH WRONGFUL TERMINATION**

25.     Ameriprise realleges and reincorporates paragraphs 1-24 as if set forth herein.

26.     New York law governs the interpretation of the parties' Agreement.

7

27.     Pursuant to New York law, Versata is subject to an implied covenant of good faith and fair dealing in fulfilling the parties' Agreement.

28.     Versata's purported termination of the Agreement is a material breach of its own contractual obligations, which include these specific obligations:  upon notice and payment by Ameriprise, to provide maintenance services for the software (section 6.1); to provide "[u]pdates to each Product and" relevant Documentation (section 6.6); to make available to Ameriprise "any and all modifications to the Products" without additional cost to Ameriprise (section 6.7); and to warrant that Ameriprise's "use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement)" (section 8.1).  Versata's purported termination also is a breach of the covenant of good faith and fair dealing implied in the Agreement.

29.     In addition, Versata's purported termination of the Agreement is a material breach of the Agreement because Versata demanded a forfeiture of Ameriprise's rights and Versata failed to comply with the Agreement's termination requirements.

30.     Nothing in the Agreement or Ameriprise's actions justifies Versata's precipitous attempts to terminate the Agreement.

31.     Versata knew when it sent its September 17, 2012, letter that its demands could not be satisfied, and it knew or should have known that its letter failed to comply with the Agreement's termination requirements.

32.     Without the ability to use DCM as contemplated in the Agreement, Ameriprise and its advisors, franchisees and their employees will suffer irreparable injury.

8

1002507

33.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately.

34.     As a result of Versata's material breach of the Agreement through its legally deficient attempt at termination and forfeiture demand, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

35.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to obtain and use all escrowed versions of DCM and all related documentation.

36.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

37.     Ameriprise is also entitled to damages as a result of Versata's material and uncured and incurable breaches.

## II.     BREACH OF CONTRACTUAL WARRANTIES

38.     Ameriprise realleges and reincorporates paragraphs 1-37 as if set forth herein.

39.     In Section 8.1 of the Agreement, Versata warranted that (i) Licensor has the right to furnish [DCM] … free of all liens, claims, encumbrances and other restrictions; [and] (ii) to the best of its knowledge, the Product Materials and Services furnished by [Versata] and/or [Ameriprise's] use of the same hereunder do not violate or infringe the rights of any third party …"

40.     The Agreement also required Versata to provide Ameriprise with "updates" of the

9

1002507

Product. Updates were explicitly covered by (section 8.1) and "subject to the Warranty provisions" of the Agreement (section 4.1).

41.     In 2011, Versata provided Ameriprise with a very substantial update to DCM ("DCM 3.9"). The DCM 3.9 update effectively replaced, in its entirety, the immediately preceding version of DCM that had been in use at Ameriprise, which was version 3.3.

42.     In fact the DCM 3.9 update was so substantial that Ameriprise was required to pay and did pay to Versata millions of dollars to assist Ameriprise with the installation of DCM 3.9 into Ameriprise's DMU program.

43.     Versata's DCM 3.9 software incorporates software subject to claims, encumbrances, restrictions and/or claims of violation or infringement of rights of third parties.

44.     On information and belief, Versata knew that its DCM 3.9 software violated and/or infringed the rights of third parties.

45.     Versata failed to inform Ameriprise of all the third parties with rights to subject DCM 3.9 to claims, encumbrances, restrictions, and/or claims of violation or infringement of rights of third parties.

46.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately or following a thirty-day notice period.

47.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," including the DCM 3.9 software pursuant to section 12.2 of the Agreement.

10

1002507

48. As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to obtain and use all escrowed versions of DCM, including DCM 3.9 and all related documentation.

49. Ameriprise also is or will be entitled to damages as a result of Versata's material and uncured and incurable breaches whether by way of counterclaim or recoupment.

### III.   BREACH OF ESCROW OBLIGATIONS

50. Ameriprise realleges and reincorporates paragraphs 1-49 as if set forth herein.

51. The parties' Agreement requires Versata to "deposit the ["source code and all the generally available Documentation thereto, for a Product or Updates"] with Data Securities International Inc. ("DSI") no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI."  Versata is obligated to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms.  Versata is obligated to "update the escrow at least every six months" and "upon delivery of an Update" (sections 5.1 and 5.2).

52. The parties' Escrow Agreement, an exhibit to the Agreement, acknowledges that "the availability of or access to certain proprietary data related to the proprietary technology and other materials is critical to [Ameriprise] in the conduct of its business."

53. Section 5.1 of the Escrow Agreement similarly requires Versata to deposit "source code and all the generally available Documentation thereto for a Product or Updates" with Data Securities International, Inc. or a successor escrow agent.

54. On information and belief, Versata failed to establish an accessible escrow account with Data Securities International, Inc. for the benefit of Ameriprise and failed to deposit

11

source code or documentation into escrow as required by the Agreement and/or the Escrow Agreement.

55.     Ameriprise provided written notice to Versata of its breach of its escrow obligations over thirty days ago.

56.     Versata has materially breached its contractual obligations relating to the deposit and updating of source code on deposit from time to time, including these obligations:   to "deposit the ["source code and related documentation] … no later than forty five (45) days after the execution of any Schedule" and to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms (Agreement sections 5.1 and 5.2); to deposit the "source code and all the generally available Documentation thereto, for a Product or Updates" with the escrow agreement (section 5.1 of the Escrow Agreement); to update the escrow at least every six months and also use commercially reasonable efforts to update the escrow upon delivery of a software update to Ameriprise (section 5.2 of the Escrow Agreement); to update the deposited software code and related documentation within thirty days after distribution of a technology release, with such deposits occurring at least every twelve months, or, alternatively, to "certify to [Ameriprise] that the Deposit contains the latest technology release" (section 3 of the Escrow Agreement).

57.     Ameriprise is damaged by not having available to it current and/or updated software as contemplated by the Escrow Agreement.

58.     Ameriprise is entitled to remedies following termination of the Agreement as a result of Versata's breach pursuant to section 12.2 of the Agreement.

1002507

59.     In section 5.3, the Agreement provides for the release to Ameriprise of the source code held in escrow if Versata commits an "uncured, material breach of its maintenance or support obligations." Such uncured, material breaches have occurred.

60.     Versata's breaches entitle Ameriprise to obtain from the escrow agent and/or Versata, all "source code . . ., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

61.     Pursuant to section 14 of the Escrow Agreement, Ameriprise will be entitled to decompile, disassemble, or reverse engineer the escrowed code and documentation.

62.     As a result of Versata's material breach of the Agreement and the Escrow Agreement, Ameriprise is entitled to obtain from the escrow agent and/or Versata, and to use without constraint, all versions of DCM and all related documentation that have been escrowed or that Versata had a duty to place in escrow.

## IV.     IMPOSITION OF CONSTRUCTIVE TRUST

63.     Ameriprise realleges and reincorporates paragraphs 1-62 as if set forth herein.

64.     The Agreement governs the scope of the business relationship between Ameriprise and Versata and obligates Versata to act for the benefit of Ameriprise. Both parties have confidentiality obligations under the Agreement, and the nature of the services provided by Versata requires Ameriprise to trust Versata with significant amounts of proprietary information and trust in Versata's ability and willingness to maintain a fully and continuously functioning DCM. The existence of such duties in turn gives rise to fiduciary obligations by Versata to

13

Ameriprise. Specifically, the Agreement encompasses promises made by Versata with respect to DCM.

65.     Over thirteen years of operations, Ameriprise has contributed financially, operationally, and creatively to the development of DCM.

66.     The current version of DCM is as much the work product of Ameriprise as of Versata.

67.     Versata would be unjustly enriched if it were allowed to keep DCM for its own use and profit, and to prohibit Ameriprise from accessing the software.

68.     Ameriprise is entitled to a constructive trust preserving its access to DCM, prohibiting any interference with its use of DCM, and sharing in any revenue gained by Versata through exploitation of DCM, or variants or derivatives of DCM to which Ameriprise has contributed and which Versata has subsequently sold, licensed, or otherwise made available to any other party.

## V.     DECLARATION OF AMERIPRISE'S RIGHTS

69.     Ameriprise realleges and reincorporates paragraphs 1-68 as if set forth herein.

70.     Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Ameriprise requests, and the interests of the parties to this action require, a judicial determination of Ameriprise's rights and Versata's obligations under the Agreement.

71.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise possesses a "perpetual license to use the Product,

14

1002507

Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

72.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to obtain and use all escrowed versions of the DCM and all related documentation without constraint.

73.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to employ as contractors, to help enhance and maintain DCM, at least the following companies:  Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

74.     A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future obligations of the parties to this action.  Ameriprise requests that the Court grant relief by declaring the rights of the parties pursuant to New York law, as provided by the parties' Agreement.

75.     Accordingly, Ameriprise requests judicial declaration that: (1) Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement; (2) Ameriprise is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed; and (3) Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM,

1002507

at least the following companies:   Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

## APPLICATION FOR PERMANENT INJUNCTION

76.     Ameriprise realleges and reincorporates paragraphs 1-75 as if set forth herein.

77.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

78.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to obtain and use, enhance, modify, and customize, all escrowed versions of DCM, or versions that should have been escrowed, and all related documentation without constraint.

79.     Ameriprise requests an injunction barring Versata from taking any action in furtherance of its purported termination of the Agreement.

80.     Ameriprise requests a permanent injunction compelling Versata to make delivery to Ameriprise of a current copy of all "source code ..., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

## APPLICATION FOR TEMPORARY INJUNCTION

81.     Ameriprise realleges and reincorporates paragraphs 1-80 as if set forth herein.

16

82.     Ameriprise has established that it is likely to prevail on its first Cause of Action, which alleges that Versata breached the Agreement when it wrongfully and improperly purported to terminate the Agreement.

83.     Ameriprise has established that it is likely to prevail on its second Cause of Action, which alleges that Versata breached the Agreement when it incorporated software to which third parties own rights into DCM.

84.     Ameriprise has established that it is likely to prevail on its third Cause of Action, which alleges that Defendant breached the Agreement when it failed to comply with its escrow obligations.

85.     The requested temporary injunction is necessary to prevent irreparable harm to Ameriprise and will cause no harm to Versata.

86.     Because the requested temporary injunction is consistent with the parties' contract, and because the public interest favors enforcement of valid contracts, the temporary injunction is consistent with public policy considerations.

87.     The requested temporary injunction is unlikely to impose burdens on the Court.

88.     Ameriprise accordingly requests that Versata be temporarily enjoined from acting on, or taking any action in furtherance of, its letter purporting to terminate the Agreement, including but not limited to (a) taking any action to disable DCM; (b) taking any action to force Ameriprise to prohibit contractors from Infosys Technologies, Ltd. or TCS from having access to the licensed Products in order to provide services in support of the operation of Ameriprise's business; and (c) refusing to fulfill its contractual maintenance and support obligations so long as Ameriprise makes its contractually required payments for such services.

17

1002507

89.     Ameriprise further requests that Versata be ordered, within ten (10) days after the date of the Court's Order, to deposit with a third party escrow agent, identifying Ameriprise as a beneficiary of such deposit, the original source code for DCM (along with all updates to the source code) and available Documentation; and to provide Ameriprise written confirmation that it has done so, such written confirmation to include the name and contact information for the escrow agent, the account number of the escrow account, and the date and content of all deposits into the escrow account.  Until otherwise ordered by the Court, Versata shall thereafter continue to meet its escrow obligations under the Agreement by making timely escrow deposits of updates and upgrades to DCM and provide the required confirmation to Ameriprise.

## PRAYER FOR RELIEF

WHEREFORE, Ameriprise requests that this Court enter a judgment and decree against Versata as follows:

(a)     Temporarily and permanently enjoining Versata from taking any actions adverse to Ameriprise with respect to its purported termination of the Agreement as more specifically set forth above;

(b)     Declaring that as a result of Versata's breaches of contract, Ameriprise is entitled to a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement and is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed;

18

1002507

(c)     Declaring that Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies:  Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services;

(d)     Imposing a constructive trust protecting Ameriprise's investment in DCM;

(e)     Awarding damages in an amount to be proven at trial, which damages sought are within the jurisdictional limits of the court;

(f)     Attorney fees and costs pursuant to Texas Civil Practice and Remedies Code § 37.09 and § 38.01, *et seq.*, and other applicable law;

(g)     Awarding Ameriprise its costs of court;

(h)     Awarding Ameriprise pre and post judgment interest; and

(i)     Awarding Ameriprise such other and further general relief, at law or in equity, to which Ameriprise may be entitled.

19

1002507

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas  78701
Phone: (512) 495-6300
Fax:  (512) 474-0731


By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail:  smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail:  csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

***ATTORNEYS FOR DEFENDANTS***

20

1002507

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on June 19, 2013.

Travis Barton                                          *VIA FACSIMILE* 512.495.6093
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                                           *VIA FACSIMILE* 713.655.0062
Ben Foster
Amir Alavi
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010


                                    /s/ Christopher D. Sileo
                                    Christopher D. Sileo

21

Filed
13 June 19 P3:38
Amalia Rodriguez-Mendoza
District Clerk
Travis District
12-003588

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v | § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

## AMERIPRISE'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM FOR BREACH OF WARRANTY

TO THE HONORABLE COURT:

Counterclaimant Ameriprise Financial, Inc. ("Ameriprise") files this Response to Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim for Breach of Warranty.

### I.   SUMMARY OF RESPONSE

A breach of warranty claim is subject to a four year statute of limitations, and a claim for breach of warranty accrues no sooner than the date a product is delivered to a buyer. Versata's Motion on limitations grounds fails, because less than two years ago, in August 2011, Versata delivered to Ameriprise a new version of Versata's DCM software ("DCM 3.9"). This new version, DCM 3.9, entirely replaced an older DCM product that Ameriprise had previously been using. DCM 3.9 is the basis of Ameriprise's counterclaim, and limitations does not bar Ameriprise's counterclaim concerning Versata's August 2011 delivery of DCM 3.9.

Alternatively, the hearing on the Motion must be continued because Versata pleaded

limitations as an affirmative defense for the first time just four weeks ago and filed its Motion for Summary Judgment just one day after asserting the defense.  As a result, Ameriprise has not had any reasonable opportunity to conduct discovery regarding this affirmative defense on which Versata bears the burden of proof.

## II.    FACTS

### A.    General Background.

Ameriprise is a financial planning and services company.  Ameriprise subsidiaries serve individual investors' and institutions' needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance.  Versata is a software company.

At the center of this action is a Master License Agreement pursuant to which Versata granted to Ameriprise a "nonexclusive, nontransferable . . . perpetual, worldwide license" to a software product currently called "Distribution Channel Management" or "DCM."  In breach of its contractual obligations, Versata has threatened to terminate Ameriprise's license to use DCM software that is a necessary component of an Ameriprise software system called "Distribution Management Utility," or "DMU."  The DMU program is part of the compensation and recordkeeping operations for all Ameriprise personnel registered to perform securities work. DMU manages Ameriprise's personnel's licenses and registrations and ensures that personnel are licensed to perform work and are properly paid for doing that work.

Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven, and substantially more expensive replacement for DCM.  Versata called its sales proposal the "DCM Enterprise Cloud."  Versata's new DCM Enterprise Cloud proposal would require Ameriprise to

2

drastically increase its payments to Versata and to entrust the operation, storage, and security of Ameriprise's highly sensitive and confidential business functions and information to a third party service provider's public cloud environment.  A "public cloud" is a shared storage and computing environment delivered over a network.  In this case, the network is the public Internet.  In contrast, the current non-cloud version of DCM is hosted on a Ameriprise-dedicated, servers that run over a private network dedicated to Ameriprise.

Ameriprise expressed skepticism about and reluctance to accept Versata's DCM Enterprise Cloud proposal for sound business reasons, including security concerns, dissatisfaction with Versata's personnel, and greatly increased costs.  On September 17, 2012, two business days after receiving Ameriprise's initial negative reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an alleged "material breach" of the Agreement and demanded that Ameriprise cure the alleged breach within thirty days.  The alleged breach concerned Ameriprise's use of third party contractors to work on the DCM software system.[1]  Fully aware that Ameriprise depends upon DCM and the contractors who customize and maintain it, and fully aware that the alleged "breaches" were impossible to "cure" within thirty days, Versata nonetheless threatened to terminate the Agreement at the end of the thirty-day period, and that upon the deadline "Ameriprise … must immediately stop using all

---

[1] Throughout the life of the parties' thirteen-year Agreement, Ameriprise has relied upon third party contractors to assist with the operation, maintenance, and enhancement activities related to DCM (and prior products called SC Commission and DMS that were previously delivered to Ameriprise but which DCM replaced), as explicitly authorized by the Agreement. Versata has been fully aware of Ameriprise's use of third party contractors.  Indeed, Versata has worked with Ameriprise's third party contractors to upgrade and customize various versions of first SC Commission, then DMS, and now DCM code that Versata licensed and delivered to Ameriprise pursuant to Ameriprise's rights under the Agreement. Versata itself trained third party contractor Infosys when Infosys started to work for Ameriprise in that capacity.

Versata-developed software and immediately must return all of Versata's software and other confidential information."

Versata's letter culminated in a demand for an immediate mediation to discuss the issues Versata raised. Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the resolution of Versata's concerns. On November 12, 2012, despite Ameriprise's acquiescence to Versata's request for a prompt mediation, and in the midst of the parties' discussions with a third party mediator, Versata filed suit against Ameriprise.

### B.   Versata's Warranty Obligations.

The Agreement expressly states that each time Versata delivers Ameriprise an upgraded software package, as an update, the delivery is "subject to the Warranty provisions herein." Ex. F, Agt. at ¶ 4.1.[2]   Under those warranty provisions, which apply to all software and other materials delivered to Ameriprise by Versata (Agreement at ¶ 8.1), Versata expressly warranted that all of Versata's materials are: (i) "free of all liens, claims, encumbrances and other restrictions" and (ii) to the best of Versata's knowledge, "do not violate or infringe the rights of any third party or the law or regulations of any governmental or judicial authority."

After Versata suddenly sued Ameriprise, Ameriprise naturally took a closer look at some of the elements of Versata's DCM 3.9 software (the current version at the time), and determined that DCM 3.9 incorporates software subject to claims, encumbrances, and restrictions, and

---

[2] Ameriprise pays Versata significant annual fees to receive deliveries of new software updates from Versata when those new versions become available. Some updates are minor patches or bug fixes. Ex. D, Depo of S. Brighton at 41:7-16. Other updates, like DCM 3.9, are significant "upgrades." *Id.* at 41:7-16, 80:13 – 81:5, Depo. Ex. 16. It is unremarkable that just as a home computer user would expect Microsoft to provide new warranties when the user upgrades from Windows 95 to Windows 98 to Windows 2000 and so forth, that Ameriprise insisted that Versata do the same here when Ameriprise received and implemented at great expense new versions of Versata's software and warrant its products.

4

violates or infringes on the rights of third parties in various respects. Those title and ownership issues that are just now coming to light are the subject of Ameriprise's breach of warranty counterclaims.[3]

### C.   Versata Delivered DCM 3.9 to Ameriprise in August 2011.

In 2011, pursuant to the parties' Agreement, Versata provided Ameriprise with an updated version of the DCM software called DCM 3.9. Ex. B. DCM 3.9 was a "significant" "major release" of new code. Ex D, Depo. of S. Brighton at 41:7-16; Ex. B, Aff. of R. Macomb at ¶ 7. This new version replaced, in its entirety, the immediately preceding version of DCM that had been in use at Ameriprise for several years, which was DCM 3.3. Ex D, Depo. of S. Brighton at 41:7-16; Ex. B, Aff. of R. Macomb at ¶ 12. Versata delivered DCM 3.9 on August 26, 2011. Ex. B, Aff. of R. Macomb at ¶ 8. Due to the differences in software versions, when Ameriprise received DCM 3.9 from Versata in 2011, Ameriprise invested thousands of personnel hours over the course of some nine months or more at a cost of a million dollars or more, to implement the DCM 3.9 into Ameriprise's systems. *Id.* at ¶ 11. In other words, it was a large, complicated undertaking to implement Versata's August 2011 delivery of DCM 3.9. *Id.*

### III.   ARGUMENT

### A.   Versata Must Conclusively Prove When Ameriprise's Claim Accrued.

Versata filed a traditional motion for summary judgment pursuant to Texas Rule of Civil Procedure 166a(c). Summary judgment under Rule 166a(c) is proper when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a

---

[3] Because Versata's Motion concerns only when Ameriprise's pleaded breach of warranty claim accrued, *i.e.*, when was the last delivery, and does not challenge the existence of the warranty, and because discovery on the substance of this claim is just beginning, Ameriprise is dispensing with elaborating on the substance of its breach of warranty claim.

matter of law; *Fort Worth Osteopathic Hosp. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). An issue is conclusively established, and will support entry of summary judgment, only when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn. *Triton Oil & Gas Corp. v. Marine Contractors and Supply, Inc.*, 644 S.W.2d 443, 445 (Tex. 1982). A party moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish its limitations defense, including "conclusively prov[ing] when the cause of action accrued." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

Generally, a breach of warranty cause of action accrues when delivery of a product is made. Tex. Bus. & Com. Code § 2.725(b); N.Y.U.C.C. Law § 2-275. If there is a dispute about when delivery was made, that is a fact question that must be decided by the jury. *Conquest Drilling Fluids, Inc. v. Tri-Flo Int'l, Inc.*, 137 S.W.3d 299, 305-08 (Tex. App. – Beaumont 2004, no pet.) ("The trial court erred in refusing to submit a jury question concerning tender of delivery.").[4] Because Versata offered no evidence of when it delivered the most recently licensed version of DCM 3.9 to Ameriprise, the Court should deny the Motion.

Versata's Motion is based primarily on Ameriprise's original but now superseded pleadings. Versata's Motion is doubly improper. When a motion for summary judgment turns (as Versata's does) on the allegations in a pleading, courts must "accept all facts and inferences in the pleadings as true in the light most favorable to the nonmovant." *Delgado v. Combs*, 2012 WL 4867600, *2 (Tex. App. – Amarillo 2012, no pet.). Ameriprise has timely filed,

---

[4] Versata asserts that Texas' limitations provisions, and the U.C.C. in particular, govern its Motion. Because the Motion fails under all potentially applicable New York and Texas laws, Ameriprise accepts Versata's assertion solely for the purposes of this Motion.

6

contemporaneously with this Response, its First Amended Counterclaim clarifying the relevant dates with respect to its breach of warranty claim. As explained below, in addition to the summary judgment evidence, the pleadings make abundantly clear that Versata delivered the product that is the subject of Ameriprise's breach of warranty claim in August 2011.

**B.   Breach of Warranty Claims Accrue Upon Each and Every Delivery; Versata Made Multiple Deliveries of Software.**

When there are multiple deliveries of a product, each delivery is a separate limitations event for the U.C.C.'s statute of limitations. *City of New York v. Pullman Inc.*, 662 F.2d 910, 918 n.10 (2d Cir. 1981). Thus, the United States Second Circuit has harshly rejected the argument that limitations begins running upon the first delivery of a good, calling it "unsupportable." *Id.* There is "no justification," the court explained, for interpreting the U.C.C. to "bar warranty actions with respect to defective goods which may not even have been built" at the time the first delivery was made. *Id.*

Versata's Motion ignores the multiple software deliveries it has made and bases its entire Motion on a paraphrasing of Ameriprise's now superseded original counterclaim, which correctly described that the *relationship* between Versata and Ameriprise extended back to 1999, but made no specific mention of when Versata last *delivered* software to Ameriprise pursuant to the parties' Agreement.[5] Versata's Motion disregards the indisputable facts:

- that Versata's software named "DCM" did not exist in 1999.

- that Versata's version of DCM that Ameriprise is using today (DCM 3.9) was

---

[5] Versata states that Ameriprise "began using the software, including engaging third-party contractors to customize the software, in 1999." Mot. p. 6. Without citing any summary judgment evidence, Versata then states that "[s]ince use of the merchandise commenced in 1999, delivery could have occurred no later than 1999." Mot. p. 6. That is the sum and substance of the "factual" foundation of Versata's Motion. Versata falls far short of carrying its burden of proving accrual.

7

delivered to Ameriprise in August 2011.

- that DCM 3.9 completely replaced Ameriprise's prior DCM software, which was DCM 3.3.

- that 2011 is well within four years of the filing of Ameriprise's counterclaim.

Ex. B, Aff. of R. Macomb at ¶¶ 6-14; *see also* Ex. D, Depo of S. Brighton at 41:7-16.[6]

No Texas court has had a chance to join the Second Circuit and reject Versata's remarkable position that, under the U.C.C., the first delivery in a series of product deliveries starts the limitations clock running on the last delivery of a product *before the last product even exists*. However, just like the Second Circuit, the Austin Court of Appeals has concluded, in the analogous leasing context, that a cause of action accrues upon each missed lease obligation, such that a failure to bring suit timely on the first breach does not bar suit as to those breaches occurring within four years of suit. *F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 464-66 (Tex. App. – Austin 1994, no writ). After canvassing Texas cases in similar situations, Justice Jones explained that "[l]imitations runs separately as to each . . . [breach of] performance when it becomes due." *Id.* at 466.[7]

Conceptualizing software as a "good" within the meaning of the U.C.C. can be confusing

---

[6] Ameriprise has filed a First Amended Counterclaim explaining that DCM 3.9, which was delivered to Ameriprise in August 2011, forms the basis of its breach of warranty counterclaim. Ex. A. As a result, there can be no doubt that Ameriprise has pleaded a timely claim. Given Versata's lack of any independent evidence of when it actually delivered its software to Ameriprise, the pleading amendment alone requires the Court to deny Versata's Motion.

[7] Numerous courts in other jurisdictions have also applied this commonsense rule. *See, e.g., Moncrief v. Williston Basin Interstate Pipeline Co.*, 880 F. Supp. 1495, 1505-06 (D. Wyo. 1995) ("[A] cause of action accrues, and the statute of limitations begins to run on each occasion that a party fails to render performance in accordance with the terms of the contract."); *Medcap Corp. v. Betsy Johnson Health Care Sys. Inc.*, 2001 WL 880097, **3 (4th Cir. 2001) (explaining that "to require [plaintiff] to bring lawsuit within four years of the first breach or forfeit all claims would be unreasonable and impractical" and would violate "commonsense").

8

because software is so intangible. An analogy to a more common and tangible good, like a car, helps clear the confusion. If, pursuant to a master sales contract (instead of a master license agreement), Versata warranted that it had good title to cars it was selling and then sold and delivered Ameriprise one car in 1999 and then later sold and delivered a second car in 2011, and the 2011 car failed to live up to its warranty of title, there would be no question Ameriprise would have until 2015 to sue Versata for breach of warranty concerning title to the 2011 car.

There is no difference in the software context. The new software Versata delivered to Ameriprise in 2011 is not the same software that Versata delivered to Ameriprise in 1999 (even though both the 1999 and 2011 software are, generally speaking, compensation programs), any more than the 1999 car and the 2011 car are the same car (even though they were both transportation). Ex. B, Aff. of R. Macomb at ¶¶ 10-11. Each delivery of software to Ameriprise is a new limitations-triggering event, and it is Versata's 2011 delivery of the DCM code, DCM 3.9, that is the topic of Ameriprise's breach of warranty counterclaim. Ex. A, 1st Am. Counterclaim at ¶¶ 12, 38-49. Because the undisputed summary judgment evidence shows that DCM 3.9 was delivered to Ameriprise less than two years ago, well within any potentially applicable statute of limitations, Ameriprise's breach of warranty counterclaim is timely concerning DCM 3.9, and the Court should deny Versata's Motion. *Conquest Drilling Fluids*, 137 S.W.3d at 310 (reversing summary judgment because "nothing in this record conclusively establishes the shipment date of the unit."); *Dimon v. Trendmaker, Inc.*, 1998 WL 19861, *4 (Tex. App. – Houston [14th Dist.] 1998, no pet.) (reversing summary judgment because the "pleadings do not admit the contract was breached more than four years before suit was filed.").

9

### C.   Dismissing the Claim Will Create No Efficiencies.

Versata suggests that its unfounded and premature Motion will streamline this case. Mot. at 2. Dismissing Ameriprise's breach of warranty counterclaim will do nothing to expedite this complex case, however, because Ameriprise can assert defensive counterclaims in "recoupment" that negate Versata's cause of action at any time, even if limitations had expired. *Morriss-Buick Co. v. Davis*, 127 Tex. 41, 91 S.W.2d 313, 314 (1936).[8] "As a purely defensive procedure, [recoupment] is available to [a] defendant so long as [the] plaintiff's claim survives – even though an affirmative action by defendant is barred by limitations." *Distrib. Servs., Ltd. v. Eddie Parker Interests, Inc.*, 897 F.2d 811, 812 (5th Cir.1990); *Pennsylvania R.R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1942) (explaining that recoupment allows a defendant "all just allowances or demands accruing to him in respect of the same transaction that forms the ground of the action. This is not a set-off or counterclaim in the strict sense . . . but rather it lessens or defeats any recovery by the plaintiff. It goes to the existence of plaintiff's claim.").[9]

Thus, a breach of warranty claim is properly asserted as a defense to a breach of contract claim, even if the breach of warranty would otherwise be time-barred. *See De Witt v. Kent County*, 148 S.W.2d 213, 214-15, 217 (Tex. Civ. App. 1940, writ dism'd judgm't cor.) (holding that breach of warranty "operates merely as a negation of the demand asserted by the plaintiff," and that therefore "the statute of limitations does not apply."). Likewise, a defensive

---

[8] All opinions of the Commission of Appeals issued after 1934, such as this, have the full authority of a Texas Supreme Court decision. *See* Tex. Rules of Form, Rule 5.2.1 (9th Ed. 1997).

[9] The U.C.C. expressly contemplates that recoupment claims are allowed. N.Y. U.C.C. § 2–607, official comment 6 (explaining that a dissatisfied buyer may complain "by way of recoupment"); Tex. Bus. & Com. Code § 2.607, official comment 6 (same); *see also Sears, Roebuck & Co. v. Galloway*, 600 N.Y.S.2d 773, 775 (N.Y.A.D. 1993). Ameriprise has pleaded this counterclaim, in the alternative, as a defensive claim for recoupment. *See* Ex. A (1st Am. Counterclaim ¶ 49).

10

counterclaim concerning whether a plaintiff's technology was already in the public domain such that the plaintiff did not possess all the ownership rights it claimed to possess was properly brought as a recoupment claim. *Rolls-Royce Corp. v. Hellos, Inc.*, 576 F. Supp. 2d 765, 790-91 (N.D. Tex. 2008). As a result, even if Ameriprise's counterclaim were barred by limitations, and it is not, the issue of whether Versata complied with its warranties goes to the heart of Versata's case and Ameriprise can and will continue to present that issue defensively.

**D.     Any Effort to Shorten Limitations to 180-Days Would Be Void.**

Versata also drags a red herring across the page when it briefly states that "[t]he warranty in the MLA, by its own terms, lasts only one-hundred eighty days." Mot. p. 6. Versata's statement misconstrues the Agreement, because the 180-day period only concerns the "documentation" warranty set forth in section 8.2 of the Agreement and does not apply to "title" and other warranties set forth in section 8.1, or to various warranties in sections 8.5, 8.6, or 8.7. A simple comparison of those sections (8.1, 8.5, 8.6, and 8.7) that *do not* reference the 180-day period with those sections that *do* reference the 180-day period (sections 8.2 and 8.4) shows this to be the case.

However, even if the 180-day reference applied here (and it does not), Versata correctly notes that the parties cannot lawfully shorten the limitations period to 180 days. Mot. p. 6, n. 4. On this point, Versata is correct; a 180-day limitations period is void under Texas and New York laws. Tex. Bus. & Com. Code § 2.725; N.Y. U.C.C. Law § 2.725. *See also, e.g., Spicewood Summit Office Condominiums Ass'n, Inc. v. America First Lloyd's Ins. Co.*, 287 S.W.3d 461, 466 (Tex. App. – Austin 2009, pet. denied) (holding that when a contract purported to make limitations shorter than allowed by law, the provision was void and the normal four-year

11

997788

limitations period therefore applied).   It is therefore unclear why Versata raised the 180-day provision at all.

>        **E.        In the Alternative, the Court Should Continue the Motion, Because It Is Unfairly Premature.**

A trial court may continue a summary judgment hearing to allow for adequate discovery. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).   Courts consider the following factors when deciding whether to grant a motion for continuance seeking additional time to conduct discovery: (i) the length of time the case has been on file, (ii) the materiality and purpose of the discovery sought, and (iii) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.*   A continuance is normally required when summary judgment is filed just a few months into litigation.   *Levinthal v. Kelsey-Seybold Clinic, P.A.*, 902 S.W.2d 508, 512 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Verkin v. S.W. Ctr. One, Ltd.*, 784 S.W.2d 92, 94 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

If the Court does not deny the Motion outright, these factors, as well as common sense and fairness, require granting a continuance of the hearing.   Although the case has been on file since November 2012, Versata asserted its statute of limitations defense *just four weeks ago*, and filed its Motion for Summary Judgment just *one day later*.   *See* Pls.' Answer, Specific Denials and Aff. Defenses to Def.'s Countercl.   (May 23, 2013); Pls.' Mot. for Summary Judgment on Def.'s Countercl. for Breach of Warranty (May 24, 2013).   In none of its discovery responses, including its disclosures of its defenses served on May 7, 2013, did Versata reveal an intent to rely on a limitations defense. *Id.* at ¶ 6.

12

997788

In March 2013, Ameriprise served Versata with a request for disclosure, interrogatories, and numerous requests for production. Ex. C, Aff. of C. Sileo at ¶ 3. Despite these efforts, it was not until May 22, 2013 that Versata began to produce documents. *Id.* at ¶ 4. The amount of production that has been made in recent days is voluminous, numbering 180,000 or more documents, and production is ongoing.[10] *Id.*

Ameriprise has been diligent in pursuing discovery from Versata. For instance, Ameriprise was concerned about Versata's objections to certain of its discovery and therefore, after conferring unsuccessfully with Versata, filed a Motion to Compel. *See* Defendant's Mot. to Overrule Objections and to Compel Discovery Responses and Depositions (April 26, 2013) (on file with the Court). Judge Triana heard that Motion to Compel and entered an order granting Ameriprise's Motion in nearly all respects. Order (May 8, 2013). *See* Ex. C, Aff. of C. Sileo at Ex. 1. For months, Ameriprise has also sought to take the very first deposition in this case. Ex. C, Aff. of C. Sileo at ¶ 7, Ex. 2. Ameriprise also had to compel Versata to present that witness. *Id.* at ¶ 7, Ex. 2. The first deposition finally occurred six days ago.

All of this discovery wrangling, however, preceded Versata's Motion, because it would have been impossible for Ameriprise to review hundreds of thousands of documents and seek discovery regarding Versata's statute of limitations defense in the one day that elapsed between the filing of its answer and the filing of its Motion or even in the three weeks between the filing of the Motion and the due date of this Response. Parties "are entitled to full, fair discovery

---

[10] Much of the delays in document production have related to a complex negotiation regarding a protective order that involved not just the parties to this case, but an interested non-party called Infosys, who was being asked to share millions of pages of information with Versata and Ameriprise. After protracted efforts, an Agreed Protective Order was entered just a few days ago on June 13, 2013. As a result, document discovery is just now getting underway, and Ameriprise has not had a reasonable opportunity to review Versata's documents and conduct follow-up discovery regarding limitations. *Id.* at ¶¶ 5-8.

13

within a reasonable period of time." *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998). If the Court does not deny the Motion outright, at a minimum Versata's premature Motion should be continued until the close of discovery in the case or for at least ninety (90) days to allow some reasonable discovery.

## IV.   SUMMARY JUDGMENT EVIDENCE

Ameriprise relies on the following summary judgment evidence as well as the pleadings on file with the Court for its Response:

| | |
|---|---|
| Exhibit A | Ameriprise's First Amended Counterclaim |
| Exhibit B | Affidavit of Richard Ryan Macomb |
| | Exhibit 1 – DCM 3.9 Executive Summary (FILED SEPARATELY UNDER SEAL) |
| | Exhibit 2 –Master License Agreement and Schedules (FILED UNDER SEAL) |
| Exhibit C | Affidavit of Christopher D. Sileo |
| | Exhibit 1 – Plaintiffs' Responses to Defendants' Request for Disclosure |
| | Exhibit 2 – Court's Order on Motion to Compel |
| Exhibit D | Excerpts of the Deposition of Scott Brighton (CEO of Plaintiffs) (FILED SEPARATELY UNDER SEAL) |

## V.   REQUEST FOR RELIEF

Ameriprise Financial, Inc. requests that the Court deny Versata's Motion for Summary Judgment. Versata delivered to Ameriprise a new version of Versata's DCM software in August 2011, well within the applicable four year limitations period, and Ameriprise's breach of warranty claims are based on that new version, DCM 3.9. In the alternative, Ameriprise requests

that the Court continue Counter-Defendants' Motion until the close of discovery or for a minimum of 90 days from the date of this hearing, to allow reasonable discovery to occur.

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, LLP

By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail: smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail: csileo@scottdoug.com
        600 Congress Avenue, Suite 1500
        Austin, Texas 78701
        Phone: (512) 495-6300
        Fax: (512) 474-0731


**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

***ATTORNEYS FOR COUNTERCLAIMANT AND DEFENDANTS***

15

CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on June 19, 2013.


Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

*VIA FACSIMILE* 512.495.6093 *AND EMAIL*

Amir Alavi
Steven Mitby
Ben Foster
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010

*VIA FACSIMILE* 713.655.0062 *AND EMAIL*


/s/ Christopher D. Sileo
Christopher D. Sileo


16

997788

# EXHIBIT A

**NO. D-1-GN-12-003588**

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and VERSATA | § | |
| DEVELOPMENT GROUP, INC., f/k/a | § | |
| TRILOGY DEVELOPMENT GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, INC., | § | |
| AMERICAN ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |
| | § | |

<u>**DEFENDANTS' FIRST AMENDED COUNTERCLAIM**</u>
<u>**AND APPLICATION FOR TEMPORARY AND PERMANENT**</u>
<u>**INJUNCTIVE RELIEF**</u>

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME Defendants Ameriprise Financial, Inc. ("Ameriprise"), Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively "Defendants") and file this First Amended Counterclaim and Application for Temporary and Permanent Injunctive Relief and state as follows.

<u>**COUNTERCLAIM**</u>

Counterclaimant Ameriprise, for its Counterclaim against all Plaintiffs (collectively, "Versata"), states and alleges as follows:

**Exhibit**
**A**

## DISCOVERY

1.      Discovery should be conducted pursuant to Level 3, Texas Rule of Civil Procedure 190.4, and Ameriprise moves that discovery be conducted in accordance with a discovery control plan tailored to the specific circumstances of this suit.

## INTRODUCTION AND PARTIES

2.      Ameriprise is a Delaware corporation with its principal place of business located at 55 Ameriprise Financial Center in Minneapolis, Minnesota. Ameriprise is a leading financial planning and services company. Ameriprise subsidiaries serve individual investors' and institutions' financial needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance. Ameriprise was formerly named American Express Financial Corporation. Ameriprise's field force includes numerous personnel within Travis County and elsewhere in Texas.

3.      Versata is a Delaware corporation with its principal place of business in Austin, Texas. On information and belief, Versata conducts business with fewer than five employees in Texas or anywhere else in the United States. Versata provides software and other technology products and services to companies in the financial services industry, among other areas. Versata was formerly named Trilogy Software, Inc.

4.      At the center of this action is a Master License Agreement ("Agreement") by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from an enterprise compensation software product currently called "Distribution Channel Management" or "DCM." The terms of the Agreement are binding upon Versata and Ameriprise.

2

1002507

5.      In breach of its contractual obligations, Versata has threatened to terminate, and has stated that it has already terminated, Ameriprise's perpetual and worldwide license to use DCM, software that is a necessary component of an Ameriprise system called "Distribution Management Utility," or "DMU."

## JURISDICTION AND VENUE

6.      This Court has general jurisdiction over Plaintiffs because their principal place of business is in Travis County, Texas, and because they subjected themselves to the jurisdiction of this Court by commencing this action.  This Court has specific jurisdiction in connection with these Counterclaims because these Counterclaims relate to issues presented in Plaintiffs' Petition.

7.      In accordance with § 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County and Versata's principal place of business in in Travis County.

## FACTS

**A.      The Master License Agreement**

8.      The predecessors of Ameriprise and Versata entered into the Agreement, effective October 4, 1999, by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from DCM.  The core software and documentation relating to the DCM software are referred to in the Agreement as the "Products."

3

9.      DCM is Java-based software.  It was designed by Versata to be extended (*i.e.*, modified and enhanced), and at Ameriprise DCM has been extended and customized with as much as a million lines of additional computer code, added by Ameriprise over many years through the use of different contractors and with Versata's full knowledge.

10.     DCM is a key component of Ameriprise's DMU system, which is part of the compensation and recordkeeping operations for all Ameriprise personnel registered to perform securities work.  It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.     The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work. Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise.   Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM.   Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products."  The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.     Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, and the predecessor

4

1002507

versions of DCM called first SC Commission and then DMS, as explicitly authorized by section 4.4 of the Agreement.  Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys").  Indeed, Versata has worked with such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's various versions of what is now called DCM code, pursuant to Ameriprise's rights under the Agreement.  In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into source code (readable by programmers) - through the use of readily-available software.

13.     Despite this acquiescence, in 2010 Versata raised concerns about Infosys decompiling DCM code.  In response, Ameriprise, though it had no obligation to do so, began to phase Infosys out of its contractor role with respect to DCM-related work.  To date, more than 90% of previously-engaged Infosys personnel have been removed from such work, leaving fewer than ten Infosys employees with access to DCM.

**B.     Versata's Efforts to Force Ameriprise to Convert to A New, Risky, Unproven, Unsafe Software System Or Additional Payments**

14.     Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven, and substantially more expensive replacement for DCM.  Versata called its sales proposal the "DCM Enterprise Cloud."  Versata's new DCM Enterprise Cloud proposal would require Ameriprise to drastically increase its payments to Versata and to entrust the operation, storage and security of Ameriprise's highly sensitive and confidential business functions and information to a third-party service provider's public cloud environment.  A "public cloud" is a shared

5

1002507

storage and computing environment delivered over a network.  In this case, the network is the public Internet.

15.      Ameriprise expressed skepticism about and reluctance to accept Versata's DCM Enterprise Cloud proposal for sound business judgment reasons, including but not limited to: security concerns associated with Ameriprise's highly confidential information and dependence on a fully functioning DCM, dissatisfaction with Versata's personnel, and greatly increased costs.

16.      On September 17, 2012, two business days after receiving Ameriprise's initial reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an alleged "material breach" of the Agreement and demanding that Ameriprise cure such alleged breach within thirty days.  Fully aware that Ameriprise depends upon DCM and the contractors who customize and maintain it and fully aware that the "breaches" it alleged were impossible to "cure" within 30 days, Versata nonetheless threatened to terminate the Agreement at the end of the 30-day period.  In that event, Versata threatened, by the October 17, 2012 deadline, "Ameriprise … must immediately stop using all Versata-developed software and immediately must return all of Versata's software and other confidential information."  Versata's letter culminated in a demand for an immediate mediation to discuss the issues Versata raised.  Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the resolution of Versata's concerns.

17.      On November 12, 2012, despite Ameriprise's acquiescence to Versata's request for a prompt mediation, and in the midst of the parties' discussions with a third-party mediator, Versata filed suit against Ameriprise in Texas state court.

18.     Versata's conduct in wrongfully threatening to terminate the Agreement constitutes wrongful termination and a breach of the Agreement.  The conduct is a willful and malicious act within the meaning of Article 11 of the Agreement.

19.     Ameriprise has provided Versata notice of its material breaches of the Agreement.

**C.     Ameriprise's Right to Relief**

20.     Because Versata has purported to terminate the Agreement and has not withdrawn its purported termination, and Ameriprise has previously provided notice of Versata's breaches, Ameriprise must conclude that granting Versata any additional cure period ordinarily available under the Agreement would be futile.  An effective cure by Versata would have required, among other actions to cure its breaches, (a) withdrawal of its purported termination and (b) withdrawal and dismissal of its pending lawsuit.

21.     Ameriprise has paid Versata all sums owed to it.

22.     Ameriprise is entitled to engage third-party contractors to provide software services for DCM who do not compete with Versata in the development of enterprise compensation or configuration software.

23.     Ameriprise is entitled to continue to use DCM.

24.     The harm that Versata's actions have caused and threaten to cause to Ameriprise is irreparable, with no adequate remedy at law.

## CAUSES OF ACTION

**I.     BREACH OF CONTRACT THROUGH WRONGFUL TERMINATION**

25.     Ameriprise realleges and reincorporates paragraphs 1-24 as if set forth herein.

26.     New York law governs the interpretation of the parties' Agreement.

7

27.     Pursuant to New York law, Versata is subject to an implied covenant of good faith and fair dealing in fulfilling the parties' Agreement.

28.     Versata's purported termination of the Agreement is a material breach of its own contractual obligations, which include these specific obligations:  upon notice and payment by Ameriprise, to provide maintenance services for the software (section 6.1); to provide "[u]pdates to each Product and" relevant Documentation (section 6.6); to make available to Ameriprise "any and all modifications to the Products" without additional cost to Ameriprise (section 6.7); and to warrant that Ameriprise's "use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement)" (section 8.1).  Versata's purported termination also is a breach of the covenant of good faith and fair dealing implied in the Agreement.

29.     In addition, Versata's purported termination of the Agreement is a material breach of the Agreement because Versata demanded a forfeiture of Ameriprise's rights and Versata failed to comply with the Agreement's termination requirements.

30.     Nothing in the Agreement or Ameriprise's actions justifies Versata's precipitous attempts to terminate the Agreement.

31.     Versata knew when it sent its September 17, 2012, letter that its demands could not be satisfied, and it knew or should have known that its letter failed to comply with the Agreement's termination requirements.

32.     Without the ability to use DCM as contemplated in the Agreement, Ameriprise and its advisors, franchisees and their employees will suffer irreparable injury.

8

33.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately.

34.     As a result of Versata's material breach of the Agreement through its legally deficient attempt at termination and forfeiture demand, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

35.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to obtain and use all escrowed versions of DCM and all related documentation.

36.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

37.     Ameriprise is also entitled to damages as a result of Versata's material and uncured and incurable breaches.

## II.     BREACH OF CONTRACTUAL WARRANTIES

38.     Ameriprise realleges and reincorporates paragraphs 1-37 as if set forth herein.

39.     In Section 8.1 of the Agreement, Versata warranted that (i) Licensor has the right to furnish [DCM] … free of all liens, claims, encumbrances and other restrictions; [and] (ii) to the best of its knowledge, the Product Materials and Services furnished by [Versata] and/or [Ameriprise's] use of the same hereunder do not violate or infringe the rights of any third party …"

40.     The Agreement also required Versata to provide Ameriprise with "updates" of the

9

Product.  Updates were explicitly covered by (section 8.1) and "subject to the Warranty provisions" of the Agreement (section 4.1).

41.     In 2011, Versata provided Ameriprise with a very substantial update to DCM ("DCM 3.9").  The DCM 3.9 update effectively replaced, in its entirety, the immediately preceding version of DCM that had been in use at Ameriprise, which was version 3.3.

42.     In fact the DCM 3.9 update was so substantial that Ameriprise was required to pay and did pay to Versata millions of dollars to assist Ameriprise with the installation of DCM 3.9 into Ameriprise's DMU program.

43.     Versata's DCM 3.9 software incorporates software subject to claims, encumbrances, restrictions and/or claims of violation or infringement of rights of third parties.

44.     On information and belief, Versata knew that its DCM 3.9 software violated and/or infringed the rights of third parties.

45.     Versata failed to inform Ameriprise of all the third parties with rights to subject DCM 3.9 to claims, encumbrances, restrictions, and/or claims of violation or infringement of rights of third parties.

46.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately or following a thirty-day notice period.

47.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," including the DCM 3.9 software pursuant to section 12.2 of the Agreement.

10

48.    As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to obtain and use all escrowed versions of DCM, including DCM 3.9 and all related documentation.

49.    Ameriprise also is or will be entitled to damages as a result of Versata's material and uncured and incurable breaches whether by way of counterclaim or recoupment.

## III.    BREACH OF ESCROW OBLIGATIONS

50.    Ameriprise realleges and reincorporates paragraphs 1-49 as if set forth herein.

51.    The parties' Agreement requires Versata to "deposit the ["source code and all the generally available Documentation thereto, for a Product or Updates"] with Data Securities International Inc. ("DSI") no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI." Versata is obligated to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms.  Versata is obligated to "update the escrow at least every six months" and "upon delivery of an Update" (sections 5.1 and 5.2).

52.    The parties' Escrow Agreement, an exhibit to the Agreement, acknowledges that "the availability of or access to certain proprietary data related to the proprietary technology and other materials is critical to [Ameriprise] in the conduct of its business."

53.    Section 5.1 of the Escrow Agreement similarly requires Versata to deposit "source code and all the generally available Documentation thereto for a Product or Updates" with Data Securities International, Inc. or a successor escrow agent.

54.    On information and belief, Versata failed to establish an accessible escrow account with Data Securities International, Inc. for the benefit of Ameriprise and failed to deposit

11

source code or documentation into escrow as required by the Agreement and/or the Escrow Agreement.

55.    Ameriprise provided written notice to Versata of its breach of its escrow obligations over thirty days ago.

56.    Versata has materially breached its contractual obligations relating to the deposit and updating of source code on deposit from time to time, including these obligations:  to "deposit the ["source code and related documentation] ... no later than forty five (45) days after the execution of any Schedule" and to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms (Agreement sections 5.1 and 5.2); to deposit the "source code and all the generally available Documentation thereto, for a Product or Updates" with the escrow agreement (section 5.1 of the Escrow Agreement); to update the escrow at least every six months and also use commercially reasonable efforts to update the escrow upon delivery of a software update to Ameriprise (section 5.2 of the Escrow Agreement); to update the deposited software code and related documentation within thirty days after distribution of a technology release, with such deposits occurring at least every twelve months, or, alternatively, to "certify to [Ameriprise] that the Deposit contains the latest technology release" (section 3 of the Escrow Agreement).

57.    Ameriprise is damaged by not having available to it current and/or updated software as contemplated by the Escrow Agreement.

58.    Ameriprise is entitled to remedies following termination of the Agreement as a result of Versata's breach pursuant to section 12.2 of the Agreement.

12

59.     In section 5.3, the Agreement provides for the release to Ameriprise of the source code held in escrow if Versata commits an "uncured, material breach of its maintenance or support obligations." Such uncured, material breaches have occurred.

60.     Versata's breaches entitle Ameriprise to obtain from the escrow agent and/or Versata, all "source code . . ., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person …"

61.     Pursuant to section 14 of the Escrow Agreement, Ameriprise will be entitled to decompile, disassemble, or reverse engineer the escrowed code and documentation.

62.     As a result of Versata's material breach of the Agreement and the Escrow Agreement, Ameriprise is entitled to obtain from the escrow agent and/or Versata, and to use without constraint, all versions of DCM and all related documentation that have been escrowed or that Versata had a duty to place in escrow.

## IV.     IMPOSITION OF CONSTRUCTIVE TRUST

63.     Ameriprise realleges and reincorporates paragraphs 1-62 as if set forth herein.

64.     The Agreement governs the scope of the business relationship between Ameriprise and Versata and obligates Versata to act for the benefit of Ameriprise. Both parties have confidentiality obligations under the Agreement, and the nature of the services provided by Versata requires Ameriprise to trust Versata with significant amounts of proprietary information and trust in Versata's ability and willingness to maintain a fully and continuously functioning DCM. The existence of such duties in turn gives rise to fiduciary obligations by Versata to

13

Ameriprise. Specifically, the Agreement encompasses promises made by Versata with respect to DCM.

65.     Over thirteen years of operations, Ameriprise has contributed financially, operationally, and creatively to the development of DCM.

66.     The current version of DCM is as much the work product of Ameriprise as of Versata.

67.     Versata would be unjustly enriched if it were allowed to keep DCM for its own use and profit, and to prohibit Ameriprise from accessing the software.

68.     Ameriprise is entitled to a constructive trust preserving its access to DCM, prohibiting any interference with its use of DCM, and sharing in any revenue gained by Versata through exploitation of DCM, or variants or derivatives of DCM to which Ameriprise has contributed and which Versata has subsequently sold, licensed, or otherwise made available to any other party.

## V.     DECLARATION OF AMERIPRISE'S RIGHTS

69.     Ameriprise realleges and reincorporates paragraphs 1-68 as if set forth herein.

70.     Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Ameriprise requests, and the interests of the parties to this action require, a judicial determination of Ameriprise's rights and Versata's obligations under the Agreement.

71.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise possesses a "perpetual license to use the Product,

14

Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

72.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to obtain and use all escrowed versions of the DCM and all related documentation without constraint.

73.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to employ as contractors, to help enhance and maintain DCM, at least the following companies:  Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

74.     A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future obligations of the parties to this action.  Ameriprise requests that the Court grant relief by declaring the rights of the parties pursuant to New York law, as provided by the parties' Agreement.

75.     Accordingly, Ameriprise requests judicial declaration that: (1) Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement; (2) Ameriprise is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed; and (3) Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM,

15

at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

## APPLICATION FOR PERMANENT INJUNCTION

76.     Ameriprise realleges and reincorporates paragraphs 1-75 as if set forth herein.

77.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

78.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to obtain and use, enhance, modify, and customize, all escrowed versions of DCM, or versions that should have been escrowed, and all related documentation without constraint.

79.     Ameriprise requests an injunction barring Versata from taking any action in furtherance of its purported termination of the Agreement.

80.     Ameriprise requests a permanent injunction compelling Versata to make delivery to Ameriprise of a current copy of all "source code ..., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

## APPLICATION FOR TEMPORARY INJUNCTION

81.     Ameriprise realleges and reincorporates paragraphs 1-80 as if set forth herein.

16

1002507

82.     Ameriprise has established that it is likely to prevail on its first Cause of Action, which alleges that Versata breached the Agreement when it wrongfully and improperly purported to terminate the Agreement.

83.     Ameriprise has established that it is likely to prevail on its second Cause of Action, which alleges that Versata breached the Agreement when it incorporated software to which third parties own rights into DCM.

84.     Ameriprise has established that it is likely to prevail on its third Cause of Action, which alleges that Defendant breached the Agreement when it failed to comply with its escrow obligations.

85.     The requested temporary injunction is necessary to prevent irreparable harm to Ameriprise and will cause no harm to Versata.

86.     Because the requested temporary injunction is consistent with the parties' contract, and because the public interest favors enforcement of valid contracts, the temporary injunction is consistent with public policy considerations.

87.     The requested temporary injunction is unlikely to impose burdens on the Court.

88.     Ameriprise accordingly requests that Versata be temporarily enjoined from acting on, or taking any action in furtherance of, its letter purporting to terminate the Agreement, including but not limited to (a) taking any action to disable DCM; (b) taking any action to force Ameriprise to prohibit contractors from Infosys Technologies, Ltd. or TCS from having access to the licensed Products in order to provide services in support of the operation of Ameriprise's business; and (c) refusing to fulfill its contractual maintenance and support obligations so long as Ameriprise makes its contractually required payments for such services.

17

89.     Ameriprise further requests that Versata be ordered, within ten (10) days after the date of the Court's Order, to deposit with a third party escrow agent, identifying Ameriprise as a beneficiary of such deposit, the original source code for DCM (along with all updates to the source code) and available Documentation; and to provide Ameriprise written confirmation that it has done so, such written confirmation to include the name and contact information for the escrow agent, the account number of the escrow account, and the date and content of all deposits into the escrow account.  Until otherwise ordered by the Court, Versata shall thereafter continue to meet its escrow obligations under the Agreement by making timely escrow deposits of updates and upgrades to DCM and provide the required confirmation to Ameriprise.

### PRAYER FOR RELIEF

WHEREFORE, Ameriprise requests that this Court enter a judgment and decree against Versata as follows:

(a)     Temporarily and permanently enjoining Versata from taking any actions adverse to Ameriprise with respect to its purported termination of the Agreement as more specifically set forth above;

(b)     Declaring that as a result of Versata's breaches of contract, Ameriprise is entitled to a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement and is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed;

18

1002507

(c)     Declaring that Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies:   Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services;

(d)     Imposing a constructive trust protecting Ameriprise's investment in DCM;

(e)     Awarding damages in an amount to be proven at trial, which damages sought are within the jurisdictional limits of the court;

(f)     Attorney fees and costs pursuant to Texas Civil Practice and Remedies Code § 37.09 and § 38.01, *et seq.*, and other applicable law;

(g)     Awarding Ameriprise its costs of court;

(h)     Awarding Ameriprise pre and post judgment interest; and

(i)     Awarding Ameriprise such other and further general relief, at law or in equity, to which Ameriprise may be entitled.

19

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas  78701
Phone: (512) 495-6300
Fax:  (512) 474-0731


By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail:  smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail:  csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

***ATTORNEYS FOR DEFENDANTS***

20

1002507

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on June 19, 2013.

Travis Barton                                           *VIA FACSIMILE* 512.495.6093
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                                            *VIA FACSIMILE* 713.655.0062
Ben Foster
Amir Alavi
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010


/s/ Christopher D. Sileo
Christopher D. Sileo

21

1002507

# EXHIBIT B

### NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v. | § § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

## AFFIDAVIT OF RICHARD RYAN MACOMB

| | |
|---|---|
| STATE OF MINNESOTA | § |
| | § |
| COUNTY OF HENNEPIN | § |

Before me, the undersigned notary, on this day personally appeared Richard Ryan Macomb, who, being by me first duly sworn, stated upon his oath as follows:

1.   My name is Richard Ryan Macomb. I am over 21 years of age. I am competent to make this Affidavit. I have personal knowledge of the facts set forth in this Affidavit and they are true and correct.

2.   I am employed by Ameriprise Financial Inc. ("Ameriprise").

3.   I joined Ameriprise in 1999 as a software engineer. At that time, Ameriprise was known as American Express Financial Advisors. Since 1999, I have worked continually at Ameriprise serving in various software related roles.

4.   My current job title is Senior Director - Application Development, Advice & Wealth Management Solutions - DMU. Since late 2007, I have led Ameriprise's team that manages, develops, and supports Versata's software products, which are integrated

**Exhibit B**

into an overall software program called Distribution Management Utility or DMU.[1]

5.   From early 2008, I have been the primary day-to-day point of contact for Ameriprise pertaining to the management of Versata's software. As a result of my work, I am familiar with the software provided by Versata to Ameriprise, including the most recent updates provided to Ameriprise and the dates on which Versata has delivered software updates to Ameriprise. Since early 2008, I have been personally involved in the receipt of all of Versata's software updates.

6.   Currently, Ameriprise is using version 3.9 of Versata's "DCM" software.

7.   Version 3.9 of DCM was a significant update to the software Ameriprise was running prior to that update, which was version 3.3.

8.   Ameriprise downloaded DCM version 3.9 from Versata on August 26, 2011. Version 3.9 was a new software product with significant changes from version 3.3 and prior versions.

9.   Attached to this Affidavit as Exhibit 1, is a true and correct copy of Versata's DCM 3.9 Product Executive Summary, which was provided to Ameriprise by Versata. This document provides Versata's overview of some of the differences between DCM 3.9 and prior versions.

10.  The way I explain the difference in software versions is to compare those versions to cars. Each version is like a car, in that each version has four wheels, an engine, a steering wheel, and other basic attributes. Some versions may share components (like cars from the same manufacturer). However, like cars, each version is a different make and model. Thus, version 3.9 might be a 2011 Ford Taurus while version 3.3 might be a 2008 Ford Explorer. They are that dissimilar.

11.  Due to the differences in software versions, when Ameriprise received the 2011 version 3.9 update from Versata, Amerprise invested thousands of personnel hours over the course of some nine months or more of time, at a cost of a million dollars or more to implement the new software update into Ameriprise's systems. In other words, it was a large, complicated undertaking to implement Versata's delivery of DCM version 3.9.

12.  Once installation of version 3.9 was completed, version 3.3 is completely eliminated from our active user environment. In other words, version 3.9 completely replaced version 3.3.

---

[1] DMU is Amerprise's central system for managing compensation and credentials for our large network of financial and other advisors. Paying some 10,000 commissioned employees is complicated. DMU allows us to do this. Versata's software is a key component of DMU.

13.    In addition, prior to approximately 2005, Versata did not even name or identify its software "car" DCM. Originally, in 1999, when I worked on the implementation of Versata's software at Ameriprise, Versata's software was called "SC Commission." A few years later, Versata further changed its software and released a program called "DMS." Again, all of these software packages can be analogized to cars, but over the course of many years, it is fair to think of them as not even being the same make of car, much less the same model.

14.    Ameriprise and Versata are parties to a Master License Agreement that contains certain terms regarding software maintenance. Ameriprise pays Versata substantial amounts of money each and every year so that Ameriprise will have the right to receive over time updated versions of Versata's software. The precise annual figures are set forth in the Master License Agreement and its schedules. In addition, when Ameriprise receives a new software update from Versata, Ameriprise pays Versata significant additional sums for consulting services associated with implementing that update.

15.    A true and correct copy of the Master License Agreement with its Schedules is attached hereto as Exhibit 2.

FURTHER AFFIANT SAYETH NOT.

_R. Ryan Macomb_
R. RYAN MACOMB

   SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, on this 19 day of June 2013.


Notary Public

NICOLE MAE - PETERSEN LINDBERG
Notary Public
Minnesota
My Commission Expires Jan. 31, 2016

3

1000243

# EXHIBIT 1 TO AFFIDAVIT OF RICHARD RYAN MACOMB

# DCM 3.9 Executive Summary (FILED SEPARATELY UNDER SEAL)

# EXHIBIT 2 TO AFFIDAVIT OF RICHARD RYAN MACOMB

# MASTER LICENSE AGREEMENT AND SCHEDULES

# (FILED SEPARATELY UNDER SEAL)

# EXHIBIT C

**Exhibit C**

## NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v | § § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

## AFFIDAVIT OF CHRISTOPHER D. SILEO

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned notary, on this day personally appeared Christopher D. Sileo, who, being by me first duly sworn, stated upon his oath as follows:

1.  My name is Christopher D. Sileo. I am over 21 years of age. I am competent to make this Affidavit. I have personal knowledge of the facts set forth in this Affidavit and they are true and correct.

2.  I am a partner at Scott, Douglass & McConnico, LLP, which is one of the outside counsel for the Defendants in this case.

3.  On March 8, 2013, Defendants served Plaintiffs with a request for disclosure, interrogatories, and numerous requests for production.

4.  In response to Defendants' March 8, 2013 requests for production, Plaintiffs first produced documents to Defendants on May 22, 3013. Plaintiffs' production numbered more than 185,000 documents. It is my understanding that Plaintiffs' collection, review, and production of documents is not complete.

5.  Defendants' counsel have begun the process of reviewing these voluminous

1002511

documents. That review has not been completed, and could not have been completed in the short time available between the start of production and a June 26, 20113 hearing on Plaintiffs' Motion for Summary Judgment. It will take many weeks or months to complete the review of such a significant production to identify documents that would assist Defendants in responding to Plaintiffs' Motion for Summary Judgment and the identification of relevant witnesses, and to schedule depositions that will be needed to follow-up on the document review.

6.    Plaintiffs' discovery responses that pre-date the service of Plaintiffs' May 23, 2013 answer and Plaintiffs' May 24, 2013, including in its disclosures of its defenses,[1] which were served as recently prior to those dates as May 7, 2013, do not disclose that Plaintiffs intended to rely on a statute of limitations defense in response to Defendants' breach of warranty counterclaim.

7.    For months, Ameriprise had also repeatedly sought to take the very first deposition in this case. Eventually, Ameriprise filed a motion to Versata to present a witness. That witness was deposed on Friday, June 14, 2013. The first deposition in this case occurred six days ago on Thursday, June 13, 2013.

8.    Ameriprise has steadily and diligently pursued discovery in this case, including filing a Motion to Compel, which was granted in nearly all respects that were argued to the Court.[2]

FURTHER AFFIANT SAYETH NOT.

_____
CHRISTOPHER D. SILEO

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, on this 19th day of June 2013.

_____
Notary Public

[1] A true and correct copy of Plaintiffs' May 7, 2013 disclosure response, which is the Plaintiffs' live disclosure response, is attached hereto as Exhibit 1.

[2] A true and correct copy of the Court's order dated May 8, 2013 is attached hereto as Exhibit 2.

2

# EXHIBIT C-1

**Exhibit
C-1**

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' RESPONSES TO DEFENDANTS' REQUEST FOR DISCLOSURE

Pursuant to the Texas Rules of Civil Procedure, Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. (collectively "Versata") serve their responses to Defendants' Request for Disclosure.

Plaintiffs disclose the information and materials described in Rule 194.2:

(a)  the correct names of the parties to the lawsuit;

  Versata Software, Inc., f/k/a Trilogy Software, Inc., Plaintiff
  Versata Development Group, Inc. f/k/a Trilogy Development Group, Inc.,
  Plaintiff
  Ameriprise Financial, Inc., Defendant
  Ameriprise Financial Services, Inc., Defendant
  American Enterprise Investment Services, Inc., Defendant

(b)  the name, address, and telephone number of any potential parties;

  Plaintiffs are not aware of any additional potential parties at this time.

(c)  the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);

  Versata is suing Ameriprise for breaches of the October 4, 1999 Master License Agreement ("MLA"). Under the MLA, Versata's software, product

1

documentation, and related materials are strictly confidential (§ 10.2) and the property of Versata (§ 4.9). Under the MLA, Ameriprise agreed to limit access to the software, product documentation, and related materials to Ameriprise employees and "Permitted Contractors" - i.e., contractors that do not compete with Versata in the development of enterprise compensation or configuration software and that have signed a non-disclosure agreement (§ 4.8). The MLA strictly prohibits any kind of copying, decompiling, or reverse engineering of Versata's software by Ameriprise or its agents (§ 10.1).

A breach of these confidentiality or anti-decompiling requirements is sufficient grounds for Versata to terminate the MLA and revoke Ameriprise's license to the software (§ 12.2). If Versata terminates the MLA for any breach by Ameriprise, Ameriprise's rights in the software shall cease, Ameriprise must return the software to Versata, and Ameriprise must certify in writing that it has destroyed or returned all copies (§ 12.2).

As early as 2007, Ameriprise began using Infosys—an outsourcing services provider based in Bangalore, India—to perform maintenance and customization work on Versata's proprietary software. Infosys competes with Versata in the development of enterprise compensation and configuration software. In fact Infosys provides this kind of software to numerous customers in the United States and around the world. Therefore, Infosys is not a "permitted contractor" as that term is used in the MLA (§ 4.8). Upon information and belief Infosys ceased being a permitted contractor no later than November of 2009 when Infosys acquired McCamish Systems, a company that develops and sells its own brand of enterprise compensation software, a product that directly competes with Versata's proprietary software. Therefore, Infosys is barred from using DCM under the contract.

In 2010 Versata discovered that Infosys was decompiling Versata object code that it had gained access to through its work at Ameriprise. At first this misconduct seemed limited to a few key files. However, even at that time Versata began telling Ameriprise that it had to stop using Infosys. Versata also initiated litigation against Infosys which is pending in Federal Court. Through discovery in that case Versata has discovered that Infosys's misconduct was much more extensive. In fact Versata discovered that Infosys had 5,000 Versata source code files stored on hard drives in Bangalore.

Despite Ameriprise's representations that it would do so, Ameriprise has not removed Infosys from DCM and in fact at the present time Infosys contractors are still performing customization and maintenance work on Versata's software.

In addition, in 2011, Ameriprise began using TCS, another India-based outsourced services provider, to perform maintenance and customization work on Versata's software. Like Infosys, TCS is not a "Permitted Contractor" under the MLA. Additionally to Versata's knowledge, none of TCS's contractors has signed a non-disclosure agreement that relates to Versata's software, as required by the MLA.

Because of these actions, Versata sent a letter to Ameriprise providing the contractually mandated 30 day notice of breach of the MLA on September 17, 2012. The letter identified multiple breaches of the MLA by Ameriprise related to Infosys's and TCS's unauthorized access to Versata's software, including the fact that neither Infosys nor TCS were permitted contractors under the MLA. Versata

2

further stated that if Ameriprise did not take steps to cure these breaches, the MLA would terminate automatically within thirty days. Because Ameriprise did not cure these violations, the MLA terminated on October 17, 2012. Despite a clear contractual mandate which requires Ameriprise to stop using DCM after its uncured breach Ameriprise has refused to return Versata's software and other confidential information to Versata as required by the MLA. This lawsuit seeks to enforce Versata's contractual rights and prevent Ameriprise's use of DCM and to prevent unauthorized contractors from continuing to access DCM.

Versata has property rights in DCM. Versata gave Ameriprise a limited use right to DCM it did not in any way sell the software to Ameriprise. Ameriprise has used the software beyond its use rights. They have used the software in a way that Versata would not allow them to use the software for any price. Specifically Ameriprise has permitted Infosys, a direct competitor of Versata in the enterprise compensation space, to decompile Versata's code and learn critical information related to the software's functionality. This access has allowed Infosys to unfairly compete with Versata in the DCM services market as well as in the sale of enterprise compensation software. But for the bad acts Ameriprise allowed Infosys to commit, Infosys could not perform its work as quickly or as efficiently. In fact, in some instances, Infosys could not have performed the work requested of it at all but for decompiling. Although some of the damages for these bad acts are calculable others are not.

Additionally, Ameriprise's refusal to respect Versata's termination rights risk causing incalculable damage to Versata. If Versata is not able to prevent customers from breaching its software license agreement then it will be deprived of its intellectual property entirely since any customer of Versata's can simply breach their software contracts with Versata and then refuse to return the software or cure the breach. License Agreements are meaningless, and a software licensing business is worthless, if Licensors are incapable of excluding breaching customers from their software.

(d)     the amount and any method of calculating economic damages;

Versata is not seeking the recovery of money damages in this case at this time. Instead Versata does not belive it can be compensated by economic damages and instead seeks to enforce through specific performance or Permanent Injunction its rights under the MLA. In addition Versata will be seeking the attorneys fees in incures in this action under Sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code.

(e)     the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

The following Versata persons/representatives have knowledge of Versata's software licensing, development, and support and maintenance services provided

3

to Ameriprise pursuant to various software consulting, development, and maintenance agreements. They also have knowledge of the software information that is confidential to Versata and that qualifies as a Versata trade secret.

Leela Kaza
Mr. Kaza is Versata's project manager for the Ameriprise project and has knowledge of software development, and support and maintenance services. Versata provided Ameriprise and other customers using Versata's Distribution Channel Management ("DCM") programs. He has knowledge of the features and functionality of Versata's source code and object code for the DCM programs and the confidential and secret nature of such code.
IN DEFENDANTS' DISCLOSURES THEY LISTED HIM AS FINANCIAL SERVICES AT VERSATA SOFTWARE, INC.

Abinesh Sikka
Mr. Sikka is a software programmer/coder/developer for Versata who worked on the Ameriprise project. He has knowledge of the software development, and support and maintenance services Versata provided to Ameriprise. He also has knowledge of the features and functionality of Versata's source code and object code and the confidential and secret nature of such code.

Hemant Shah
Mr. Shah is a software programmer/coder for Versata who worked on the Ameriprise project. He has knowledge of the software development, and support and maintenance services Versata provided to Ameriprise. He also has knowledge of the features and functionality of Versata's source code and object code and the confidential and secret nature of such code.
IN DEFENDANTS' DISCLOSURES LISTED HIM AS SENIOR PROGRAM DIRECTOR IN THE FINANCIAL SERVICES BUSINESS UNIT AT VERSATA SOFTWARE, INC.

Tushar Jasrotia
Mr. Jasrotia is a software programmer/coder for Versata who worked on the Ameriprise project. He has knowledge of the software development, and support and maintenance services Versata provided to Ameriprise. He also has knowledge of the features and functionality of Versata's source code and object code and the confidential and secret nature of such code.

Chris Smith
Mr. Smith is the Chief Operating Officer and Vice President of Operations of Versata. He has knowledge of the software development, and support and maintenance services of Versata provided to Ameriprise and other customers using Versata's Distribution Channel Management ("DCM") programs. He also has knowledge of the features and functionality of Versata's source code and object code and the confidential and secret nature of such code. He further has knowledge of Versata's business and licensing arrangements with Ameriprise and other customers using the DCM programs and the financial benefits and profits

4

Versata earned by licensing such software.  In addition, he has knowledge of Versata's business and licensing with Infosys.
IN DEFENDANTS' DISCLOSURES LISTED HIM AS FORMER COO OF TRILOGY DEVELOPMENT GROUP.

Chris Strahorn
Mr. Strahorn is the Financial Services Project Manager for Versata.  He has knowledge of the software development, and support and maintenance services of Versata provided to Ameriprise and other customers using Versata's Distribution Channel Management ("DCM") programs.  He also has knowledge of the features and functionality of Versata's DCM source code and object code and the confidential and secret nature of such code.  In addition, he has knowledge of the validators used with Versata's DCM software at Versata and whether such features are secret and proprietary to Versata.
IN DEFENDANTS' DISCLOSURES LISTED HIM AS FORMER VICE PRESIDENT OF PRODUCTS AT VERSATA SOFTWARE, INC.

Andrew Price
Mr. Price is the Chief Financial Officer for Versata.  He has knowledge of the business arrangements with Ameriprise and other customers using the DCM programs and the financial benefits and profits Versata earned by licensing such software.

Lance Jones
Mr. Jones has knowledge of Versata's business and licensing agreements with Ameriprise and other customers using the DCM programs and the financial benefits and profits Versata earned by licensing such software.  In addition, he has knowledge of Versata's business and licensing arrangement with Infosys.

The following Infosys persons/employees/representatives have knowledge of Infosys' software maintenance, development, customization, and configuration work at Ameriprise, including but not limited to Infosys' conduct in accessing and decompiling Trilogy's confidential code:

Deep Kulshreshtha
Mr. Kulshreshtha is the Tech Lead (TLG005 LISTED HIM AS SOFTWARE PROGRAMMER/CODER) at Infosys Technologies, Ltd.  He is responsible for understanding business requirements and helping the team code per the requirements.

Bhuvaneswari Muralikrishnan
Mr. Muralikrishnan is a software programmer/coder for Infosys who worked on the Ameriprise project.

Kunal Chowdury
Mr. Chowdury is a software programmer/coder for Infosys who worked on the Ameriprise project.

5

Vikash Kodati
Mr. Kodati is a software programmer/coder for Infosys who worked on the Ameriprise project.

Laksmidhar Bonigi
Mr. Bonigi is a software programmer/coder for Infosys who worked on the Ameriprise project.

Aniket Bhatt
Mr. Bhatt is a software programmer/coder for Infosys who worked on the Ameriprise project.

Bhargavi Allaparthi
Mr. Allaparthi is a software programmer/coder for Infosys who worked on the Ameriprise project.

Sushil Kumar
Mr. Kumar is a software programmer/coder for Infosys who worked on the Ameriprise project.

Sivaraman P. Balasubramaniam
Project Manager for Infosys at Ameriprise
Mr. Balasubramaniam is a software programmer/coder for Infosys who worked on the Ameriprise project.

These individuals are employees or agents of Infosys and may be contacted through counsel for Infosys or they may be contacted direct at:

Infosys Technologies, Ltd.
Plot No. 44 & 97A, Eelectronics City
Hosur Road, Bangalore India, 560 100


The following Ameriprise persons/employees/representatives have knowledge of Infosys' work at Ameriprise, as well as knowledge of Ameriprise's use and procurement of Versata's software and Ameriprise's conduct in procuring Versata's software:

Mike Noto
2085 Ameriprise Financial Center
Minneapolis, MN 55474
(612) 678-4250
Mr. Noto is/was a project manager for the Versata project at Ameriprise and has knowledge of the business, legal, and financial arrangements between Versata and Ameriprise.

Ryan R. Macomb
c/o Dorsey & Whitney LLP

6

50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600
(612) 340-3868 Facsimile
Mr. Macomb is the Senior Director at Ameriprise Financial, Inc., and involved in
working on the DMU since approximately 2000.

Jackie Glockner
245 Ameriprise Financial Center
Minneapolis, MN 55474
(612) 678-5620
Ms. Glockner is/was a procurement manager for the Versata project at Ameriprise
and has knowledge of the business, legal, and financial arrangements between
Versata and Ameriprise.

Robert Kasak
245 Ameriprise Financial Center
Minneapolis, MN 55474
(612) 678-6645
Mr. Kasak is/was a procurement manager for the Versata project at Ameriprise
and has knowledge of the business, legal, and financial arrangements between
Versata and Ameriprise.

Bryan P. Doherty
c/o Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600
(612) 340-3868 Facsimile
Mr. Doherty is Vice President at Ameriprise Financial, Inc. He is responsible for
management of the system at Ameriprise that uses the DCM software ("DMU")
from July 21, 2012 to present.

Ken Bridgeman
c/o Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600
(612) 340-3868 Facsimile
Mr. Bridgeman is Vice President at Ameriprise Financial, Inc. He is responsible
for management of DMU from December 2008 through July 21, 2012.

Shashank Sagar
Infosys Technologies, Ltd.

Noumit Pathak
Mr. Pathak is a software engineer/program analyst at Infosys Technologies, Ltd.

Sunil Kadumata
Mr. Kadumata is Technology Lead at Infosys Technologies, Ltd.

Scott Brighton
Mr. Brighton is CEO of Versata Software, Inc.

Plaintiffs reserve the right to supplement these disclosures.

(f)     for any testifying expert:

    (1)     the expert's name, address, and telephone number;

    (2)     the subject matter on which the expert will testify;

    (3)     the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

    (4)     if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

        (A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

        (B) the expert's current resume and bibliography;

(g)     any indemnity and insuring agreements described in Rule 192.3(f);

(h)     any settlement agreements described in Rule 192.3(g);

(i)     any witness statements described in Rule 192.3(h);

(j)     in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;

(k)     in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by requesting party;

(l)     the name, address, and telephone number of any person who may be designated as a responsible third party.

Date:  May 7, 2013                    Respectfully submitted,

                                      AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
                                      P.C.

                                      Demetrios Anaipakos
                                      State Bar No. 00793258
                                      Amir Alavi
                                      State Bar No. 00793239
                                      Steven J. Mitby
                                      State Bar No. 27037123
                                      Benjamin F. Foster
                                      State Bar No. 24080898
                                      1221 McKinney Street, Suite 3460
                                      Houston, Texas 77010
                                      Telephone:  (713) 655-1101
                                      Facsimile:  (713) 655-0062


                                      McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
                                      Travis Barton
                                      State Bar No. 00790276
                                      600 Congress Avenue, Suite 2100
                                      Austin, Texas  78701
                                      Telephone:  (512) 495-6000
                                      Facsimile:  (512) 495-6093
                                      ATTORNEYS FOR PLAINTIFFS

9

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on May 7, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

Benjamin F. Foster

4851-1129-6787, v. 1

10

# EXHIBIT C-2

```
Exhibit
C-2
```

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| Defendants. | § | |

*Filed in The District Court of Travis County, Texas*
*MAY 0 8 2013*
*T   10:58 A.M.*
*At                     .M.*
*Amalia Rodriguez-Mendoza, Clerk*

## ORDER

Now before the Court is the Motion to Overrule Objections and to Compel Discovery Responses and Depositions filed by Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (together "Ameriprise"). The Court's rulings are set forth below.

## DISCOVERY REQUESTED IN ADVANCE OF TI HEARING

### Rulings on Written Discovery

Plaintiffs are ordered to provide additional documents and interrogatory answers in accordance with their amended responses and with the below rulings within 3 days of the date of this Order.

*Parties agree that Versata will provide license agreements where Versata is "buyer" and not where Versata is "seller".*

**Document Request No. 13:**
All licenses covering or relating to DCM code or components of DCM code effective at any time after October 1999.

| | | | | |
|---|---|---|---|---|
| Overly Broad | ✓ | Overruled | | Sustained |
| Unduly Burdensome | ✓ | Overruled | | Sustained |

000346

Relevance _____✓_____ Overruled _____ Sustained

*Confidentiality* ~ *Objection is sustained* *102*

**Interrogatory No. 7:**
Identify all third-party licensors of any components of DCM.

Overly Broad _____✓_____ Overruled _____ Sustained

Unduly Burdensome _____✓_____ Overruled _____ Sustained

Relevance _____✓_____ Overruled _____ Sustained

**Document Request No. 15:**
All documents relating to security measures taken to protect the confidentiality of DCM code.

Objected to producing documents related to the confidentiality of DCM source code.

_____✓_____ Overruled _____ Sustained

**Document Request No. 16:**
A copy of the source code for the version of DCM currently licensed to Ameriprise. ~ *not enough info to rule*

Overly Broad _____ Overruled _____ Sustained

Unduly Burdensome _____ Overruled _____ Sustained

Relevance _____ Overruled _____ Sustained

<u>**Ruling on Depositions**</u>

Plaintiffs are further ordered to (1) designate witnesses for each of the six topics in Ameriprise's notice of deposition, (2) identify any witnesses who will testify on Plaintiffs' behalf at the temporary injunction hearing, and (3) provide at least two dates on which the corporate representative as well as any other injunction hearing witness(s) will be available for deposition with such dates being at least three (3) business days after Versata serves its amended discovery responses and documents required by the above rulings. All such depositions shall be completed at least three business days prior to a Temporary Injunction hearing.

2

# OTHER DISCOVERY

## Rulings on Plaintiffs' Objections as to Overly Broad, Unduly Burdensome and Relevance

**Document Request No. 12:**
All documents constituting or relating to complaints to Versata about software or service issues (other than standard problem logs) by other customers of DCM software, including without limitation, to the extent applicable, Waddell & Reed, Mass Mutual Life Insurance Company, MetLife, Pacific Life and Penn Mutual.

*not ruled upon MSL*

| | | |
|---|---|---|
| Overly Broad | _____ Overruled | _____ Sustained |
| Unduly Burdensome | _____ Overruled | _____ Sustained |
| Relevance | _____ Overruled | _____ Sustained |

**Document Request No. 25:**
All documents relating to Ameriprise's alleged material breach of the Agreement.

Objected that overly broad and improper pursuant to Tex. R. Civ. P. 193 cmt. 2.

_____ Overruled     _____ Sustained        *not ruled upon MSL*

**Interrogatory No. 8:**
Identify all licensees of DCM.

| | | |
|---|---|---|
| Overly Broad | ✓ Overruled | _____ Sustained |
| Unduly Burdensome | ✓ Overruled | _____ Sustained |
| Relevance | ✓ Overruled | _____ Sustained |

**Interrogatory No. 10:**
Identify all Versata employees since January 1, 2007.

| | | |
|---|---|---|
| Overly Broad | ✓ Overruled | _____ Sustained |
| Unduly Burdensome | ✓ Overruled | _____ Sustained |
| Relevance | ✓ Overruled | _____ Sustained |

**Document Request No. 21:**
Documents sufficient to identify all employees of Versata at all times since January 1, 2007.

| | | |
|---|---|---|
| Overly Broad | _____ Overruled | _____ Sustained |

3

*not ruled upon*

Unduly Burdensome                 _____ Overruled   _____ Sustained

Relevance                         _____ Overruled   _____ Sustained

**Interrogatory No. 11:** *Parties agree that Versata will produce identify all entities*
Identify all ~~persons~~ *using* with access to DCM source code since January 1, 2007. *with access to DCM source code since 1, 207 for [MPJ]*

Overly Broad                      _____ Overruled   ✓ Sustained

Unduly Burdensome                 _____ Overruled   ✓ Sustained

Relevance                         _____ Overruled   ✓ Sustained

**Interrogatory No. 12:** *Versata agrees to provide a list of patent numbers it believes may relate to DCM.*
Identify all patents you own relating in whole or in part to DCM. *[MPJ]*

Overly Broad                      ✓ Overruled   _____ Sustained

Unduly Burdensome                 ✓ Overruled   _____ Sustained

Relevance                         _____ Overruled   ✓ Sustained

## Confidentiality Objections -- (Request for Production Nos. 12-13, 16, and 21)

In response to Request for Production Nos. 12-13, 16, and 21, Plaintiffs asserted confidentiality objections stating that the requests "would require the disclosure of sensitive, confidential, proprietary and/or trade secret information," (the "confidentiality objection") among other objections, and did not produce documents. Upon the entry of a protective order, Plaintiffs are ordered to produce any documents otherwise withheld on the basis of the confidentiality objection.

IT IS SO ORDERED on this ____8____ day of May 2013.

_____
JUDGE PRESIDING

000346

**EXHIBIT D**
**EXCERPTS OF THE DEPOSITION**
**OF SCOTT BRIGHTON,**
**CEO OF PLAINTIFFS**
**(FILED SEPARATELY UNDER SEAL)**

Filed
13 June 19 P3:51
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-003588

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53RD JUDICIAL DISTRICT |

## PUBLIC NOTICE OF HEARING ON MOTION TO SEAL COURT RECORDS

PLEASE TAKE NOTICE that a hearing will be held in open court on July 3, 2013 at

9:00 a.m. on a Motion to Seal Court Records in the above-entitled cause at the Travis County

District Courthouse in the 53rd District Court.  Any person may intervene in this case and be

heard concerning the sealing of court records.

A true and correct copy of Defendants' Agreed Temporary Motion to Seal Court Records

is attached hereto for your reference and incorporated herein for all purposes, which Motion sets

forth the court records that are sought to be sealed.

406958

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas  78701
Phone: (512) 495-6300
Fax:  (512) 474-0731


By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail:  smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail:  csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

*ATTORNEYS FOR DEFENDANTS*

2

1002747

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on June 19, 2013.

Travis Barton                                        *VIA FACSIMILE* 512.495.6093
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                                         *VIA FACSIMILE* 713.655.0062
Ben Foster
Amir Alavi
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010


                          /s/ Christopher D. Sileo
                          Christopher D. Sileo

3

1002747

## VERIFICATION

STATE OF TEXAS            §
                          §
COUNTY OF TRAVIS          §

 Before me, the undersigned notary, on this day, personally appeared Christopher D. Sileo, a person whose identity is known to me.  After I administered an oath to him, upon his oath, he stated that he had read the *Public Notice of Hearing on Agreed Temporary Motion to Seal Court Records* and that the facts stated therein are within his personal knowledge and are true and correct.

           _____
           Christopher D. Sileo

 SUBSCRIBED AND SWORN TO before me this 19th day of June, 2013.

           _____
           NOTARY PUBLIC in and for
           the State of Texas

MARISA FRANK
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
JAN. 4, 2017

4

1002747

Filed in The District Court
of Travis County, Texas

JUN 1 9 2013

At_____2:02_____P-M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53RD JUDICIAL DISTRICT |

**ORDER ON AGREED TEMPORARY MOTION TO SEAL COURT RECORDS**

On this day, the Court considered the Agreed Temporary Motion to Seal Court Records in this cause. The Court is of the opinion that the Motion should be GRANTED.

It is therefore, ORDERED that the Clerk of the Court shall seal the records attached to the Motion, and keep the sealed documents confidential. It is further ORDERED that the sealed documents will be made available to the public only as authorized by the Court.

It is further ORDERED that a hearing is set on a Motion for Sealing Order for July 3, 2013 at 9:00 a.m., pursuant to Texas Rule of Civil Procedure 76a(4).

It is further ORDERED that the movant is ordered to immediately give the public notice as required by Texas Rule of Civil Procedure 76a(3).

SIGNED this the 19TH day of JUNE_____, 2013.

_____
PRESIDING JUDGE
TIM SULAK

1002753