# EXHIBIT A
# PART 6 OF 12

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF A CORPORATE REPRESENTATIVE AND EXCLUDE EVIDENCE AT TEMPORARY INJUNCTION

Plaintiff Versata Software, Inc. ("Versata") files this Motion to Compel Deposition of a Corporate Representative of Defendant Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (hereinafter collectively "Ameriprise") and to Exclude Evidence at Temporary Injunction, and in support thereof respectfully states:

### I.    Introduction

Ameriprise's Minnesota counsel is hiding the ball in attempt to conduct litigation-by-ambush. These tactics violate the Texas Rules. Among other things, Minnesota counsel has:

- Failed to provide even basic disclosures regarding the legal and factual bases of its claims;

- Refused to present a corporate representative for deposition on those same claims; and

- Asserted privilege in an effort to shield all corporate decision-making from Versata while simultaneously making offensive use of that same privileged information.

This motion addresses the first and second of these violations. Ameriprise's refusal to provide its Texas Rule of Civil Procedure 194 disclosures has already prejudiced Versata since Versata's corporate representative was ambushed through extensive deposition questioning on Ameriprise's counterclaims— claims for which Versata had received no notice.  By contrast, Ameriprise's refusal to provide a corporate representative for deposition will prejudice Versata if Versata is forced to go into the Temporary Injunction hearing on Monday July 1, 2013 blind— with no ability to learn even basic facts regarding Ameriprise's claims. The Court should act swiftly to prevent trial by ambush and should order the deposition of an Ameriprise Corporate Representative prior to the Temporary Injunction or, in the alternative, exclude Ameriprise from presenting evidence on its undisclosed breach of warranty claim at the Temporary Injunction.

## II.    Background of the Case

Versata entered into a Master License Agreement ("MLA") with Ameriprise to provide enterprise software to Ameriprise.  *See* **Exhibit A** (MLA).   Since entering this agreement, Ameriprise has used Versata's software to support complex internal calculations, including commissions for its approximate 10,000 agents.

In the MLA, Ameriprise promised to keep Versata's software, product documentation, and related materials strictly confidential (§ 10.2) and acknowledged that the software was strictly the property of Versata (§ 4.9).  Under the MLA, Ameriprise also agreed to limit access to the software, product documentation, and related materials to Ameriprise employees and "Permitted Contractors" - i.e., contractors that do not compete with Versata in the development of enterprise compensation or configuration software and that have signed a non-disclosure agreement (§ 4.8).   Finally the MLA strictly prohibits all copying, decompiling, or reverse engineering of Versata's software by Ameriprise or its agents (§ 10.1).  A breach of any of these

provisions is sufficient grounds, after thirty days' notice and an opportunity to cure, for Versata to terminate the MLA and revoke Ameriprise's license to the software (§ 12.2).

Ameriprise has breached these provisions of the MLA. First, Ameriprise has given Infosys access to Versata's Software even though Infosys is not a "permitted contractor", as that term is used in the MLA (§ 4.8). Infosys is a company that, among other things, develops and sells its own brand of enterprise compensation software, a product that directly competes with Versata's proprietary software. Second, Ameriprise permitted Infosys to wrongfully access 5,000 of Versata's proprietary source code files.

Because of this and other violations of the MLA, Versata sent a letter to Ameriprise on September 17, 2012 identifying multiple breaches of the MLA and providing the contractually mandated 30-day notice of breach of the MLA. Versata further stated that if Ameriprise did not take steps to cure these breaches, the MLA would terminate automatically within 30 days. Because Ameriprise did not cure these violations, the MLA terminated on October 17, 2012. Ameriprise has refused to return Versata's software and other confidential information to Versata as required by the MLA. Today, Ameriprise is using Versata's software and other confidential information without authorization. Therefore, Versata seeks a temporary injunction to halt Ameriprise's abuses by discontinuing Infosys's impermissible access to Versata software.

Ameriprise has cross-claimed against Versata alleging that Versata itself breached the MLA, including breaches of the escrow, warranty and termination provisions of the agreement. *See* **Exhibit B** (Amended Counterclaims). During the parties' contractual relationship, Ameriprise sent no notice of breach to Versata regarding any of the "breaches" it now alleges. These litigation-based so-called "breaches" are a feeble attempt to point the finger back at

Versata when it is Ameriprise who has breached the contract, and Ameriprise who must be enjoined.

**III.   Discovery**

Ameriprise's original counterclaims were filed on April 16, 2013. *See* **Exhibit C** (Original Counterclaims). This pleading presented no factual basis whatsoever for Ameriprise's breach of warranty claim. Versata promptly wrote to Ameriprise asking them to update their initial disclosures to provide the factual basis of their counterclaims, especially the factual basis of their breach of warranty claim. *See* **Exhibit D** (May 7, 2013 Letter) and **Exhibit E** (Request for Disclosures Response). Counsel received no response. Again on June 5, 2013 Versata contacted Minnesota counsel and asked them to update their disclosures. *See* **Exhibit F** (June 5, 2013 Email). This time Minnesota counsel indicated that they would do so by June 12, 2013. This date was important because Versata's corporate representative was being presented by agreement on June 14, 2013. However, when Ameriprise ultimately updated their disclosures on June 13, 2013 at approximately 5 p.m. they provided *no factual basis whatsoever for their breach of warranty claim*. *See* **Exhibit G** (Amended Request for Disclosures Response).

At the time Ameriprise filed these amended disclosures it knew the factual basis of its breach of warranty claim. The very next day Ameriprise's Minnesota counsel ambushed Versata's corporate representative with streams of questions about Versata's use of open source libraries.[1] Below is just a sample of this questioning.

_____

[1] Note that this represents Versata's best guess at the factual basis of Ameriprise's breach of warranty claim. Ameriprise still has not disclosed the basis of its claims. For example, Versata has no idea what library or libraries Ameriprise believes breach the warranty. Furthermore, Versata was not even aware until it deposed Versata's corporate representative that Ameriprise considered open source libraries — which are, by necessity, used by every computer program written in the java programming language — to be "components of DCM".

> MR. LANCASTER:  What we're talking about is licenses relating to DCM code. Versata is breaching open source licenses constantly.  That's what we're talking about here. 97:9-12

> MR. LANCASTER:  Q.   Is it your view that Versata is entitled to take public open source code, put it in DCM, and then call it Versata's secret? 99:6-8

In total, Minnesota counsel spent approximately half the deposition on this one topic ambushing Versata's corporate representative with Ameriprise's breach of warranty theory.

To make matters worse, Ameriprise's fact witnesses refused to answer any questions about the factual basis of Ameriprise's claims. On June 17, 2013, counsel for Versata travelled to Minnesota and deposed two Ameriprise fact witnesses, Bryan Doherty, who is in charge of Ameriprise's version of the software in dispute and R. Ryan MacComb, who reports directly to Mr. Doherty. However, both of these witnesses refused to answer questions about the breach of warranty claim taking the position that every fact they knew about the claim was privileged.[2]

Finally, Ameriprise has moved to quash a deposition of an Ameriprise Corporate Representative. On June 5, 2013, Versata served a corporate representative deposition notice upon Ameriprise, setting the deposition date for June 28, 2013.  *See* **Exhibit H** (Notice of Deposition). The notice of deposition contains narrowly-defined subject matters on which Versata seeks testimony.  Specifically, each of the first four topics merely seeks the factual basis of each of Ameriprise's four counterclaims, including seeking the factual basis of Ameriprise's mysterious breach of warranty claim. Ameriprise moved to quash that deposition as well.

By refusing to adequately amend its disclosures, by seeking to avoid deposition of a corporate representative, and by refusing to answer questions in depositions, Ameriprise is

---

[2] Because Ameriprise has designated the entirety of the depositions as "attorney's eyes only" under the terms of the protective order in this case, the deposition excerpts are not reproduced here. However, available for the courts inspection at the hearing will be the Deposition of Bryan Doherty 153:8-155:19 where Mr. Doherty claims privilege with respect to Ameriprise's counterclaim and the Deposition of R. Ryan MacComb 80:22-83:6 where Mr. MacComb does the same.

preventing Versata's access to *any* of the factual bases of Ameriprise's claims prior to the Temporary Injunction hearing on July 1 and 2, 2013. Because Minnesota counsel has refused to play by the rules, reasonable discovery has failed. Therefore, Versata is left with no choice but to seek relief from the court.[3]

**IV.     Ameriprise's Motion to Quash Should Be Denied.**

> *a.   The Corporate Representative Deposition Topics are Narrowly Tailored and Seek Only Critical Information.*

The notice of deposition contains narrowly-defined subject matters on which Versata seeks testimony.  Specifically, each of the first four topics merely seeks the factual basis of each of Ameriprise's four counterclaims. The next three topics seek to determine when Ameriprise received notice of various breaches from Versata and what investigation Ameriprise did to determine whether those breaches were occurring. The last topic seeks specific limited information decompiling, which is one of the core issues in this case.

This testimony is limited and critical.  Versata does not know or understand Ameriprise's core factual allegations with respect to most of its claims and defenses and, as detailed above, Ameriprise has done all it can to prevent meaningful discovery into these claims.

This discovery cannot wait. There is a Temporary Injunction set for July 1st and 2nd, and this information is necessary in advance of that hearing. Therefore, the Court should order that the deposition be held before the Temporary Injunction hearing.  Doing so is the only way to avoid Temporary Injunction by ambush.

> *b.   Ameriprise's Objections are Without Merit.*

Ameriprise's slender objections to the notice of deposition consist of a recitation of the schedule of depositions in the case.  Ameriprise appears to object to presenting a witness for

---

[3] Although Ameriprise recently amended its counterclaims, these new allegations also do not contain even the basic factual basis of its claims.

deposition in Austin, Texas – despite the fact that counsel for Ameriprise will already be in Austin, Texas two days before the requested deposition for a hearing, and the following Monday for the Temporary Injunction.  The date of the deposition, as currently scheduled, actually *minimizes* the travel Ameriprise would be required to undertake, and moving the deposition date, as they now request, may increase the burden.[4]  Although Ameriprise characterizes the deposition topics as "broad," the topics are in fact narrowly tailored to information that Ameriprise should have reasonably investigated prior to making its claims.  The argument that Ameriprise cannot present evidence on the factual bases of its claims suggests that Ameriprise is not aware of the factual bases of its claims.  The three reasons outlined below demonstrate why Ameriprise's motion to quash the notice of deposition should be denied.

First, the information sought is basic and likely seeks information already assembled by Ameriprise.  For example, the topics seek information on the factual bases of the claim.  These should not require answers by a senior executive or other individual whose absence would burden the business.  Second, the witness has not been designated so cannot be said to be unavailable – there is nothing to stop counsel from selecting and preparing a witness who will not be unavailable at the time of the deposition.  Third, and most critically, Ameriprise's motion to quash,[5] when taken with its impermissible failure to update its disclosures, is simply an effort to conceal the factual bases of its claims until the last possible moment.  This is litigation by ambush, and should not be countenanced.  Therefore, Ameriprise's motion to quash should be denied.

---

[4] Of course counsel for Versata is willing to work with Ameriprise on date and location; however, Ameriprise has refused to provide any date in advance of the Temporary Injunction.

[5] Ameriprise's motion to quash is also procedurally improper under Tex. R. Civ. P. 192.6 for failing to state an alternate time and place.

    *c.   Granting Ameriprise's Motion Will Further Prejudice Versata.*

Ameriprise's suggestion in its motion to quash that other witnesses will testify on the factual bases of Ameriprise's counterclaims is inconsistent with Ameriprise's conduct since, as detailed above, Minnesota counsel has instructed Ameriprise witnesses *not to answer* questions on the factual bases of Ameriprise's claims on the grounds of privilege.   Finally, although Ameriprise asserted in its motion to quash that "the parties have conferred to the extent to which some of these topics might be handled by witnesses who are already scheduled to be deposed in Minneapolis during the course of this month." Ameriprise has not cooperated in this goal. On the Friday before the deposition, counsel for Versata asked Ameriprise to tell it if it was going to designate either of the Monday witnesses as corporate representatives. *See* **Exhibit I** (June 14, 2013 Email). Ameriprise simply chose not to answer. In Plaintiffs estimation, the witnesses already deposed were mostly likely to be designated and therefore Plaintiff has not received, and does not expect to receive, any cooperation from Ameriprise on this issue.

**V.   Ameriprise Should be Excluded from Continuing its Pattern of Ambush at the Temporary Injunction Hearing.**

Pursuant to Texas Rule of Civil Procedure 193.6(a), "A party who fails to make, amend or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed."   As discussed above, Ameriprise has not disclosed the factual basis of its breach of warranty counterclaim. However, Ameriprise clearly could have disclosed its breach of warranty claim on June 13, because less than 12 hours later it interrogated a Versata witness on the basis of this undisclosed claim. This was not "timely" updating its disclosures. Nor does the expedited nature of a Temporary Injunction hearing excuse Ameriprise's conduct. See *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 202 (Tex.

App.—Fort Worth 2005) (Upholding the exclusion of an undisclosed witness from a Temporary Injunction hearing).

Under Rule 193.6 the exclusion of undisclosed evidence is mandatory. *Oscar Luis Lopez v. La Madeleine of Texas, Inc.*, 200 S.W.3d 854, 860 (Tex. App.—Dallas 2006) and the party offering the undisclosed evidence has the burden to establish good cause or lack of surprise, which must be supported by the record. *Id.* Here, where Ameriprise has intentionally and strategically failed to comply with Rule 194 and has already successfully ambushed a corporate representative with undisclosed factual and legal theories, the remedy of exclusion is not only proper, but is in fact the most modest remedy which will correct the harm already inflicted.

## VI.    Prayer

Wherefore, Plaintiff Versata prays that this Court order Ameriprise to present a corporate representative for deposition on June 28, 2013 on the topics listed in the Notice of Deposition; that the Court exclude Ameriprise from presenting evidence on its undisclosed breach of warranty theory at the Temporary Injunction Hearing; and that the Court award whatever further relief as the Court deems just, equitable, and appropriate under the circumstances.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
P.C.

 _/s/ Benjamin F. Foster_____
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on June 21, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com


                                          /s/ Benjamin F. Foster
                                         Benjamin F. Foster

# EXHIBIT A

## MASTER LICENSE AGREEMENT

Licensor (Name and Address):                   Agreement No.:  AEFA100499-JW01
Trilogy Software, Inc. ( "Licensor")
6034 West Courtyard Drive
Austin, TX 78730                               Effective Date:  October 4, 1999

This Master License Agreement ("Agreement") is made and entered into as of the Effective Date above between American Express Financial Corporation having an office at IDS Tower 10, Minneapolis, Minnesota 55440 ("Amexco") and the Licensor specified above.

### ARTICLE 1:  PROVISION OF PROGRAMS

1.1    Under the provisions of this Agreement, Licensor agrees to grant Amexco licenses to use Licensor's proprietary computer programs in object code only (the "**Software**") and the documentation that Licensor makes generally available in hard copy or electronic form, to its general customer base in conjunction with the licensing of such thereto (the "**Documentation**") (Software and Documentation are referred to collectively as the "**Products**") which are listed on Schedules substantially in the form attached as Exhibit A ("**Schedule**").

        1.1.1    The parties agree to enter into good faith negotiations to execute a mutually agreeable agreement for consulting services.  Until such an agreement is executed, this Agreement permits Amexco to obtain Licensor's pre-installation services to customize, modify and/or enhance Products, to develop programs, software and materials related to Products, and/or such other services as the parties mutually agree upon ("**Custom Services**") on an interim basis and at Licensor's standard rates. Custom Services along with the applicable rates shall be specified on an Interim Custom Service Attachment substantially in the form attached hereto as Exhibit B.

1.2    Each Schedule shall be numbered and dated to facilitate identification and when executed by both parties shall form a separate agreement which hereby incorporates by reference, without any further reference in the applicable Schedule, the terms and conditions of this Agreement, as amended or modified on the applicable Schedule.  Each Schedule shall include: (i) the Amexco site where each Product is to be delivered ("**Installation Site**"); (ii) the name and/or other description of each Product; (iii) the date each Product is to arrive at the Installation Site ("**Scheduled Delivery Date**"); (iv) the scope of each Product license, if different than as defined in Article 4;  (v) the charge for the license for each Product ("**License Fee**"); (vi) the maintenance charges for each Product, ("**Maintenance Fee**") and whether such Maintenance Fees are monthly, quarterly, annual or otherwise; and (vii) any other provisions the parties mutually agree upon.

        1.2.1   In the event of any inconsistency between this Agreement and any Schedule, the provisions of such Schedule shall govern for purposes of such Schedule.

1

# 99547 (revised 1/14/98)

TRILOGY 00001

1.3   Amexco, its parent, subsidiaries and "Affiliates" (as defined herein) (collectively, "Amexco Entities") may execute Schedules with Licensor under this Agreement and for purposes of such Schedule shall be considered "Amexco" as that term is used throughout this Agreement. An Affiliate shall mean any company, which shares with Amexco a common owner who owns 50%, or more of the outstanding voting stock in both Amexco and such company. Amexco agrees to ensure that all Amexco Entities must have agreed in writing to be bound by the terms and conditions of this Agreement prior to use of the Software. Amexco hereby agrees to provide to Licensor, within thirty (30) days of request, a then current list of Amexco Entities for whom Software may be licensed hereunder.

## ARTICLE 2: DELIVERY; -REPRODUCTION, DISTRIBUTION AND REPORTS

2.1   Unless otherwise defined on the applicable Schedule, Licensor shall deliver one master copy of each Product (the "Master Copy") to Amexco on or before, but in no event later than ten (10) days after its Scheduled Delivery Date solely for the purpose of allowing Amexco to make copies of the Product that are reasonably necessary for distribution to and use by each user or server authorized per the license scope defined herein and on the applicable Schedule. For purposes of this Agreement, delivery shall be deemed complete when Licensor physically delivers or causes a third party to deliver, a Master Copy to Amexco, or makes the Master Copy available to Amexco for downloading from Licensor's File Transfer Protocol ("FTP") site, and has provided Amexco with the appropriate password to access the FTP site. Amexco's right to reproduce the Master Copy shall be limited to the Installation Site. Amexco shall assume all responsibility for the quality of the copies made hereunder.

2.2   Without limiting the foregoing, Amexco shall have the right to use the Software on temporary substitute or back-up equipment.  Subject to the terms of the Schedule, Amexco shall also be entitled to make and keep a reasonable number of copies of each Product, Update and its Documentation for its own internal use.

2.3   Amexco shall include all copyright notices, proprietary legends, and trademark and service mark attributions, any patent markings, and other indicia of ownership on all copies of the Product in the content and format as those, which were contained on the Master Copy. Amexco shall pay all duplication and distribution costs incurred by Amexco in making copies of the Products, and any updates, new releases or enhancements that Licensor makes generally available and provides to Amexco pursuant to the maintenance provisions hereunder (the "Updates"), and shall also pay all custom duties and fees if applicable. Subject only to the license granted herein, all copies of the Software are the property of Licensor or its third party licensors, if any, from whom Licensor has obtained the marketing rights (the "Third Party Licensors").

2.4   Amexco agrees that Licensor subject to this section may, upon thirty (30) days prior written notice, enter Amexco's premises to verify Amexco's compliance with the provisions of this Agreement.   Licensor's inspections shall be limited to (i) one annual inspection; (ii) Amexco's normal business hours; and (iii) those records pertaining to the Products and Updates (as delivered to Amexco under any Schedule) licensed hereunder. Licensor's rights of inspection shall remain in effect through the period ending six (6) months from the termination or expiration of this Agreement.

2

# 99547 (revised 1/14/98)

TRILOGY 00002

## ARTICLE 3:  DOCUMENTATION AND TRAINING

3.1    Upon delivery of each Product or any Update of the Product to be made available to Amexco pursuant to the maintenance provisions herein, and contemporaneously with such delivery whenever possible, Licensor shall deliver to Amexco one (1) copy of all generally available Documentation (if applicable) for such Product or Update, and any necessary and generally available release notes or other written descriptions relating to any Update sufficient to enable a reasonable person, who is skilled in the software industry to use and to understand the use and operations of the Product or Update.  Amexco may copy the Documentation only to the extent reasonably necessary to satisfy its own internal requirements or may request Licensor to furnish additional copies at Licensor's current standard prices less any applicable discounts.

3.2    If training is required and/or included for a Product, the charge, duration, nature and other particulars applicable to such training shall be arranged pursuant to the terms and conditions of the Education Services Schedule, attached hereto as Exhibit C.

## ARTICLE 4:  SCOPE OF LICENSE AND PROPRIETARY RIGHTS

4.1    Unless otherwise agreed in this Agreement or on an applicable Schedule, subject to Amexco's fulfillment of all of its obligations hereunder, Licensor grants to Amexco a non-exclusive, nontransferable (except as permitted herein), perpetual, worldwide license to use the Software, including any Updates, and all related Documentation, commencing upon its delivery to Amexco and continuing thereafter from the date of Amexco's acceptance of the Product or Update subject to the Warranty provisions herein, as the case may be, for the License Term specified on the Schedule, unless terminated earlier in accordance with this Agreement.

4.2    Unless otherwise agreed on an applicable Schedule, if the applicable Schedule does not define a limited number of users then the license granted shall be a Site License with unlimited users.  For the purpose of this Agreement, the parties agree that "Site License" shall mean that Amexco may use the Product(s), Updates, and related Documentation, in Amexco's business on any of its computers and at the Installation Site or any other Amexco data center location and on more than one computer at a time subject to any additional license scope restrictions provided on the Schedule.

4.3    If the default provisions of Section 5.2 do not apply, and if the Schedule designates a limited number of users then the Product licensed pursuant to the Schedule may be accessed by that designated number of individual users. Amexco may designate different users at any time without notice to Licensor so long as the permitted number of users is not exceeded.

4.4    Unless otherwise agreed and specified in the applicable Schedule, Licensor agrees that Amexco shall have the right, to (a) use, copy, execute, display, enhance, update, maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products, Updates and Documentation and/or materials provided to Amexco hereunder only to the

3

# 99547 (revised 1/14/98)

TRILOGY 00003

extent that such use, copying, executing, displaying, enhancing, updating, and maintaining are described in the applicable Documentation and (b) use the Products in conjunction with other programs and/or materials.

4.5 Amexco shall not (i) use the Products to process, or permit to be processed, the data of any other party unless such data is processed for Amexco purposes only; or (ii) use the Products for service bureau or commercial time-sharing use, unless otherwise expressly permitted in the License Schedule.

4.6 Unless otherwise agreed and specified in the applicable Schedule, with regard to the object code and source code version of any software code developed by Licensor in its performance of Custom Services for Amexco as defined in Section 1.1.1 of this Agreement (the "Programs"), Licensor hereby grants to Amexco, at no additional charge (upon payment of all service fees attributable to such services), a worldwide, nonexclusive, license (i) to modify and otherwise create derivative works based on the Programs and (ii) to reproduce, distribute, perform and display (publicly or otherwise), and otherwise use and exploit the Programs and derivative works thereof in connection with the Software as defined herein.

4.7 Amexco's use of any Products labeled on Schedules as "Software Tools" is limited to those locations where Amexco conducts its business in the ordinary course (the "Authorized Locations") and Amexco shall use reasonable efforts to ensure that all such users have been adequately trained and are competent in the use of the Software Tools.

4.8 Unless otherwise specifically provided in the License Schedule, users of the Software may include only (i) employees of the Amexco Entity or Entities who have entered into the applicable Schedule and; (ii) subject to Article 10, "Confidential Information", third party contractors of Amexco Entities who do not, to the best of Amexco's knowledge, compete with Licensor in the development of enterprise compensation or configuration software ("Permitted Contractors").   Amexco shall ensure that all Permitted Contractors have signed a Non-Disclosure Agreement substantially the same as that attached hereto.

   4.8.1   Nothing herein shall limit Amexco's right to access and use Products in connection with any associated or interconnected networks, peripherals, equipment and devices, unless otherwise specifically prohibited or limited in an applicable Schedule.

4.9 Licensor retains title to the Products provided hereunder and does not convey any proprietary rights or other interest therein to Amexco, other than the licenses granted hereunder. Amexco agrees not to sell, assign or otherwise transfer the Product(s) or the license granted hereunder, or sublicense the Products to any third party, except as otherwise provided in this Agreement.

4.10 At least sixty (60) days prior to the expiration of each License Term (if applicable), Licensor shall notify Amexco of such expiration and Amexco shall have the option to continue the license of such Product for any additional License Term selected by Amexco. Amexco shall notify Licensor in writing if it opts to continue a Product license and License Term for any such continuation. The License Fee applicable to any continuation of a Product license

4

TRILOGY 00004

("Renewal Fee") shall be the lesser of: (a) the License Fee applicable to the current License Term (if the terms are equivalent); (b) Licensor's then current License Fee applicable to the renewal License Term; or (c) such other license fee as is mutually agreed upon by the parties. Notwithstanding anything herein to the contrary, License Terms shall continue at no additional charge to the end of the License Term or for sixty (60) days after receipt of Licensor's notice referred to above, whichever is later, and thereafter, if Amexco exercises the option to continue the license as provided hereunder.

## Article 5: ESCROW AGREEMENT

5.1 The parties agree to put source code and all the generally available Documentation thereto, for a Product or Updates ("Deposit Materials") in escrow with an independent third party escrow agent in accordance with the terms and conditions of a source escrow agreement materially similar to that which has been attached hereto as Exhibit D. Documentation will be placed in escrow within ten (10) days of when the Software is placed in escrow.

5.2 Licensor shall deposit the Deposit Materials with Data Securities International Inc. ("DSI), no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI. Licensor shall employ reasonable efforts to confirm that Amexco has received notice of any deposit pursuant to the terms of the attached escrow agreement. Licensor agrees to update the escrow at least every six (6) months. In addition to the periodic update in the preceding sentence, Licensor shall also use commercially reasonable efforts to update the escrow upon delivery of an Update (not including patches or other minor Updates) to Amexco pursuant to the support and maintenance provisions herein.

5.3 The release conditions triggering the notification and release provisions of the source code escrow agreement shall be:

   a.  Licensor's uncured, material breach of its maintenance or support obligations imposed on it pursuant to a license agreement between Licensor and Amexco provided that Amexco has paid all applicable fees for such maintenance and support; or

   b.  Licensor's failure to continue to do business in the ordinary course and it's business is not continued by another corporation or entity; The institution of bankruptcy, receivership, insolvency, reorganization or other similar proceedings by or against Licensor under the Federal Bankruptcy Code, if such proceedings have not been dismissed or discharged within sixty (60) calendar days after they are instituted; the insolvency or making of an assignment for the benefit of creditors or the admittance of any involuntary debts as they mature by Licensor; or

   c. Licensor materially breaches the Year 2000 Warranty as specified in Article 8 of this Agreement and fails to cure such breach pursuant to the support and maintenance provisions.

## ARTICLE 6: MAINTENANCE

5

# 99547 (revised 1/14/98)

TRILOGY 00005

6.1

6.2

6.3

6.4

6

6.5

6.6.

6.7 .

6.8

ARTICLE 7:  INVOICING; PAYMENT; DISCOUNTS

7.1

    7.1.1

    7.1.2

7

# 99547 (revised 1/14/98)

TRILOGY 00007

7.2

7.3

## ARTICLE 8: WARRANTIES

8.1   Licensor warrants to Amexco that:   (i) Licensor has the right to furnish the Products, Documentation, and other materials and perform the Maintenance and other services as specified in this Agreement ("Product Materials and Services") covered hereunder free of all liens, claims, encumbrances and other restrictions; (ii) to the best of its knowledge, the Product Materials and Services furnished by Licensor and/or Amexco's use of the same hereunder do not violate or infringe the rights of any third party or the laws or regulations of any governmental or judicial authority; (iii) Amexco's use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement) or any entity asserting a claim under or through Licensor;   (iv) Licensor has not knowingly and shall not knowingly insert any code which would have the affect of disabling or otherwise shutting down all or any portion of any Product licensed hereunder; (v) Licensor shall use its reasonable commercial efforts to ensure that no viruses or similar items are knowingly coded or introduced in any Product licensed hereunder; and (vi) that at the time this Agreement is executed, Licensor is not a party to any litigation that Licensor reasonably believes will adversely affect the rights granted to Amexco by Licensor hereunder.

8.2   Licensor warrants that the Software shall materially conform to the applicable Documentation, including but not limited to operating in conjunction with any third party software that is expressly referenced in the Documentation, for a period of one hundred and eighty (180) days, not including any Cure Period or Second Cure Period as defined herein, following delivery of the applicable Software, upon delivery to the Installation Site (the "Warranty Period"). If prior to the end of the Warranty Period, Amexco has not notified Licensor of the non-conformity of the Software, Licensor shall have met its warranty obligations under this Article 8.

8.2.1 If, during the Warranty Period, any Software fails to materially conform to the applicable Documentation and Amexco notifies Licensor in writing setting forth in reasonable detail the degree and nature of the non-conformity and reproducing the non-conformity. Licensor shall promptly review the claim by Amexco.  If Licensor confirms that the reported non-conformity is a non-conformity to the

8

applicable Software Documentation and is not due to (i) modifications made to the Software by someone other than Licensor; (ii) combination of the Software with other product(s) where such other product(s) cause(s) the non-conformity; or (iii) negligence or misuse, then Licensor shall use commercially reasonable efforts to repair or replace the materially non-conforming Software and deliver to Amexco repaired or replacement Software that materially conforms to the applicable Documentation within the time period quoted by Licensor to Amexco (the "Cure Period"), or if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) days following confirmation by Licensor of the non-conformity. The time elapsed during such Cure Period shall not count against the Warranty Period, and the Warranty Period shall recommence from the point in time where it was suspended, thirty (30) days from the time that Licensor delivers to Amexco the repaired or replaced Software. Unless Licensor receives a written notification from Amexco that the repaired or replaced Software does not materially conform to the applicable Documentation within thirty (30) business days following receipt of the repaired or replaced Software, Licensor shall have met its warranty obligation under this Article 8. Notwithstanding the foregoing and provided that Amexco has paid the appropriate Support and Maintenance Service fees pursuant to this Agreement or an applicable schedule, Licensor shall continue to support and maintain the accepted Software pursuant to the Support and Maintenance provisions herein.

8.2.2   If Licensor receives a written notification from Amexco within such thirty (30) business day period that a non-conformity continues to exist, the Warranty Period applicable to such Software shall be extended and Licensor shall continue to have the right to use commercially reasonable efforts to either repair/replace the materially nonconforming Software within the time period quoted by Licensor to Amexco, if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) business days following confirmation by Licensor of the nonconformity (the "Second Cure Period), whereupon the previous provisions for Licensor to fulfill or be deemed to have fulfilled its warranty obligations and the suspension of the Warranty Period shall apply. If Licensor is unable to repair/replace non-conformities of any Software subject to a Software warranty under this Article 8 after two (2) attempts to do so, then Amexco's remedy shall be as follows: Amexco shall be relieved of any obligation to pay the License Fee applicable to the materially nonconforming Software and shall receive a full refund for any fees already paid to Licensor, provided that upon the parties' mutual written agreement that the Software continues to not conform to the applicable Documentation after two (2) attempts to do so, Amexco immediately ceases further use of the applicable Software, destroys all copies of the applicable Software and certifies such destruction in writing to Licensor.

8.2.3   If Licensor does not confirm that the reported non-conformity is a non-conformity or if the non-conformity reported is due to (i) modifications made to the Software by someone other than Licensor, (ii) functions contained in Software operating in the combinations that may be selected for use by Amexco other than as stated in the Documentation, or (iii) negligence or misuse, then Licensor shall have no obligation to take any action as part of any Software warranty.

9

8.3   Other Exclusions. Licensor does not warrant and the Licensor warranties contained herein expressly do not provide or assure that:

- Use of Products shall meet Customer's requirements;

- Operation of Products shall be uninterrupted or error free.

8.4   Licensor warrants that: (i) during the Warranty Period, all media, if any, containing the Software that is delivered to Amexco shall be free from any defects in materials and workmanship and (ii) updates to the Documentation provided by Licensor hereunder shall be at a minimum, the level of and comprehensiveness reflected in the previous version of the Documentation.

8.5   Year 2000 Compliance and Warranty. Licensor warrants to Amexco that the Products provided hereunder have been fully tested and will accurately process all dates including, but not limited to, between the twentieth and twenty-first century in either direction, including leap years, when properly installed, properly used in accordance with the applicable Documentation, and unmodified by Amexco, provided all items used in combination with Products properly exchange unambiguous and year 2000 compliant date data. Without limiting the generality of the foregoing, Licensor warrants that all Software licensed from Licensor shall (a) manage and manipulate data involving all dates from the 20th and 21st centuries without functional or data abnormality related to such dates; and (b) manage and manipulate data involving all dates from the 20th and 21st centuries without inaccurate results related to such dates. At no additional cost to Amexco (beyond payment of the license fees), Licensor shall continue to support and maintain the Software so that it complies with the provisions of this warranty and any non-compliance will be addressed through the Support and Maintenance provisions of this Agreement at no additional charge and addressed as a Severity Level One error. Licensor shall have no warranty obligation for any nonconformance with the above warranty, which arises:

   i)   out of a defect in any third party software, or other software or hardware product in use by Amexco not acquired from Licensor, which causes the Software not to conform to this warranty when used in combination with such other software or hardware product;

   ii)  when Amexco has not installed the most recent Update of the Software, where use of such Update would avoid the nonconformance; or

   iii) when such nonconformance is caused, present or inherent in the data, database or native file system that the Software accesses, including, but not limited to, dates or date formats that do not reflect the century.

8.6   Licensor warrants to Amexco that Updates to the Software provided to Amexco hereunder shall not materially degrade, impair or otherwise materially adversely affect the essential functionality of the Software provided hereunder.

8.7   Licensor warrants that any Maintenance or other services provided by Licensor hereunder shall be performed in a good, workmanlike and professional manner by qualified personnel. Licensor personnel will observe and comply with Amexco's security procedures, rules,

regulations, policies, working hours and holiday schedules.  In performing Maintenance services at Amexco locations, Licensor personnel will use reasonable commercial efforts to minimize any disruption to Amexco's normal business operations.

8.8    EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

ARTICLE 9:  INTELLECTUAL PROPERTY INFRINGEMENT

9.1    Licensor agrees to defend and/or handle at its own expense, any claim or action against Amexco for actual or alleged infringement of any intellectual or industrial property right, including, without limitation, trademarks, service marks, United States or Canadian patents, copyrights, misappropriation of trade secrets or any similar proprietary rights (other than patents issued in foreign jurisdictions not expressly provided herein), based upon the Software furnished hereunder by Licensor or based on Amexco's use thereof in accordance with the applicable Documentation.  Licensor further agrees to indemnify and hold Amexco harmless from and against any and all liabilities, losses, costs, damages finally awarded or settled and expenses (including reasonable attorneys' fees) associated with any such claim or action.  Amexco may participate in the defense provided it pays its own costs associated with such participation.

9.2    Licensor shall have no liability under this Article 9 unless:

   9.2.1    Amexco notifies Licensor in writing immediately after Amexco becomes aware of a claim or the possibility thereof and Licensor is unaware of such claim;

   9.2.2    Licensor has sole control of the settlement, compromise, negotiation, and defense of any such action consistent with Amexco's rights hereunder unless otherwise mutually agreed to in writing and provided however that Licensor shall seek Amexco's consent prior to a settlement in which Amexco's rights, other than those addressed in this Section 9, are affected, or in which Amexco is otherwise obligated; and

   Amexco cooperates, in good faith, in the defense of any such legal action.

9.3    Licensor shall have no liability for any claim of infringement based on (i) Software that has been modified by parties other than Licensor or parties acting as agents of Licensor; (ii) Amexco's use of the Software in conjunction with data where such data gave rise to the infringement claim; or (iii) Amexco's use of the Software with non-Licensor Software or hardware, where such other software or hardware gave rise to the infringement claim, and absent use of such hardware or software no claim would have been valid.

9.4    If any Product becomes, or in Licensor's opinion are likely to become, the subject of any such claim or action, then, Licensor, at its expense may either:  (i) procure for Amexco the right to

11

# 99547 (revised 1/14/98)

TRILOGY 00011

continue using same as contemplated hereunder; (ii) modify same to render same non-infringing (provided such modification does not adversely affect Amexco's use as contemplated hereunder); (iii) replace same with equally suitable, functionally equivalent, compatible, non-infringing products, materials and/or services; or iv) if neither of the foregoing options is commercially reasonable, terminate the license for the Product. Upon such termination of the license upon Amexco's return Product, Licensor will refund to Amexco, as Amexco's sole remedy for such license termination, all License fees paid by Amexco for the terminated license, less an amount equal to one-sixtieth (1/60th) of the license fees for each month or any portion thereof which has elapsed since the Schedule Effective Date of such terminated license. THIS SECTION STATES THE ENTIRE LIABILITY OF LICENSOR WITH RESPECT TO ANY CLAIM OF INFRINGEMENT REGARDING THE PRODUCT.

ARTICLE 10: CONFIDENTIAL INFORMATION

10.1    Each party agrees to regard and preserve as confidential, all Confidential Information of the other which may be obtained from any source. In maintaining the confidentiality of Confidential Information hereunder, each party agrees it shall not, without first obtaining the written consent of the other, disclose or make available to any person, firm, or enterprise, reproduce or transmit, or use for its own benefit or the benefit of others, any such Confidential Information. Each party agrees that its own use and/or distribution of the other party's Confidential Information shall be limited to its own employees on a "need to know" basis; provided, however, that Amexco may also disclose Licensor's Confidential Information to employees of Amexco, its parent, subsidiary and affiliates, and to Permitted Contractors retained by Amexco for purposes specifically related to Amexco's use or evaluation of such Confidential Information, and who agree in writing to be bound by provisions no less restrictive than those herein. Neither party shall disassemble, decompile or otherwise reverse engineer any software product of the other party and, to the extent any such activity may be permitted, the results thereof shall be deemed Confidential Information subject to the requirements of this Agreement.

10.2    "Confidential Information" of Amexco shall include both specific information relating to the project or work effort which originated Amexco's desire to exchange information and the entering into of this Agreement or any Schedule issued hereunder, as well as all other information relating to the past, present and future plans, businesses, activities, customers and suppliers of Amexco, its parent, subsidiaries and affiliates which is obtained by Licensor in connection with the exchange of information contemplated hereunder. "Confidential Information" of Licensor shall include both specific information relating to the project or work effort for which Licensor's provision of products, software, or services may be provided to Amexco, as well as other information related to Licensor's past, present and future plans, businesses, activities, customers, suppliers, its subsidiaries and affiliates which is obtained by Amexco in connection with the exchange of information as contemplated hereunder. Without limiting the generality of the foregoing, Licensor's "Confidential Information" shall also include all information and materials disclosed to Amexco regarding Licensor's software products or software product development. In preserving the confidentiality of the disclosing party's Confidential Information, the receiving party shall not be required to take any greater steps than it takes to protect the confidentiality of its own similar information, but in no event shall such steps be less than reasonable.

12

TRILOGY 00012

10.3  Both parties acknowledge and agree information shall not be considered "Confidential Information" to the extent, but only to the extent, that such information: (a) is already known to the receiving party free of any confidentiality obligation at the time it is obtained from the other party; (b) is or becomes publicly known or available through no wrongful act of the receiving party; (c) is rightfully received from a third party without restriction; (d) is independently discovered or developed by the receiving party using individuals who have had no contact with the Confidential Information of the other party; or (e) is required to be disclosed in response to a valid order of a court or authorized agency of government, provided that notice is given promptly to the party whose Confidential Information is to be so disclosed so that such party may seek a protective order and/or engage in other efforts to minimize the required disclosure.

10.4  Each party further acknowledges and agrees that in the event of a breach or threatened breach by it of the provisions of this Confidentiality Agreement, the other party will have no adequate remedy in money or damages and accordingly shall be entitled to seek an injunction against such breach or threatened breach; provided, however, no specification in this Confidentiality Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition of any legal or equitable remedies in the event of a breach or threatened breach of this Confidentiality Agreement.

10.5  Information that Licensor considers "Highly Confidential" (documents, notes, or other physical embodiments of or reflecting the Confidential Information) must be marked as such with appropriate notification to Amexco prior to deliver of the "Highly Confidential" information.  Licensor may request the return of any information marked as "Highly Confidential" including any copies thereof that are in the possession or control of Amexco. Upon the request of Licensor, a project manager of Amexco shall verify, and provide to Licensor written certification of, the completeness of the delivery of such materials. Notwithstanding any of the foregoing, in the event of a breach by Amexco of the Confidentiality provisions herein, or Licensor's termination of a license issued to Amexco under the applicable schedule in accordance with the termination provisions herein, Licensor may request the return of any Software Tools and related documentation including any copies thereof that are in the possession or control of Amexco regardless of whether such Software Tools or related documentation are designated as "Highly Confidential".

ARTICLE 11:  LIMITATION OF LIABILITY

IN NO EVENT SHALL EITHER PARTY BE LIABLE, ONE TO THE OTHER, FOR ANY INDIRECT, SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

IN ADDITION TO THE FOREGOING, EXCEPT FOR LICENSOR'S LIABILITY ARISING FROM (I) ITS GROSS NEGLIGENCE WHILE PERFORMING ANY SERVICES HEREUNDER; (II) DEATH, BODILY INJURY OR TANGIBLE PROPERTY DAMAGE CAUSED BY LICENSOR WHILE PERFORMING SERVICES HEREUNDER; (III) INDEMNIFICATION OBLIGATIONS, UNDER ARTICLE 9 OF THIS AGREEMENT; (IV) LICENSOR'S FAILURE TO MEET ANY OF ITS OBLIGATIONS RELATING TO CONFIDENTIAL INFORMATION UNDER ARTICLE 10 OF THIS AGREEMENT; AND/OR (V) ANY WILLFUL MISCONDUCT

13

OR MALICIOUS ACTS, THE LIMIT OF LICENSOR'S LIABILITY (IN TORT (INCLUDING CLAIMS OF NEGLEGENCE) OR BY STATUTE OR OTHERWISE) TO AMEXCO FOR DIRECT DAMAGES CONCERNING  PERFORMANCE OR NON-PERFORMANCE, OR OTHERWISE, BY LICENSOR IN ANY MANNER RELATED TO THIS AGREEMENT OR ANY APPLICABLE SCHEDULE, FOR ANY AND ALL CLAIMS SHALL NOT, IN THE AGGREGATE, EXCEED THE TOTAL FEES PAID BY AMEXCO TO LICENSOR UNDER THE APPLICABLE SCHEDULE FOR THE SOFTWARE OR SERVICES THAT GAVE RISE TO SUCH LIABILITY.

## 12. GENERAL

12.1 TERM: This Agreement shall commence as of the Effective Date and continue thereafter unless terminated as provided hereunder. Each Schedule shall become binding when duly executed by both parties and shall continue thereafter unless terminated as permitted hereunder. Notice of termination of any Schedule shall not be considered notice of termination of this Agreement.

12.2 TERMINATION: In the event of any material breach of this Agreement by one party, the other party may (reserving cumulatively all other remedies and rights under this Agreement and at law and in equity) terminate the Schedule(s) involved, in whole or in part, by giving thirty (30) days' written notice thereof; provided, however, that any such termination shall not be effective if the party in breach has cured the breach of which it has been notified in writing prior to the expiration of said thirty (30) days. In the event of any termination by Amexco in accordance with this provision, Amexco shall, effective as of the date of such termination, have a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee (upon full payment of all fees due under the Schedule), but otherwise subject to and in accordance with all the provisions of this Agreement.

In addition to the foregoing, Amexco shall have the right to terminate this Agreement and/or any applicable Schedule(s), by giving ninety (90) days written notice to Licensor. Except for the case of termination by Amexco due to Licensor's material breach of this agreement (as described above), upon termination of this Agreement and/or any Schedule or license hereunder, Amexco's rights to the affected Software shall cease. Amexco shall immediately stop using such Software and shall return such Software to Licensor, or destroy all copies thereof. In addition, Amexco shall provide Licensor with notarized, written certification signed by an officer of Amexco, that all copies of the Software have been returned or destroyed and that no copies have been retained by Amexco for any purpose whatsoever.

Termination of this Agreement or any license created hereunder shall not limit either party from pursuing other remedies available to it, including injunctive relief, nor shall such termination relieve Amexco's obligation to pay all fees that have accrued and are due or are otherwise owed by Amexco under any Schedule or exhibit.

12.3 TAXES: Amexco agrees to pay all taxes levied against or upon the Products and any services or their use hereunder, exclusive, however, of taxes based on Licensor's income, which taxes shall be paid by Licensor. If Licensor pays any tax for which Amexco is

14

responsible hereunder, Amexco will reimburse Licensor upon Amexco's receipt of written proof of payment.

12.4    EXCUSABLE DELAYS:  In no event shall either party be liable to the other for any delay or failure to perform due to cause or causes beyond the reasonable control and without the fault or negligence of the party claiming excusable delay.  Such causes shall include, but are not limited to, acts of God, floods, fires, loss of electricity or other utilities.

12.5    NOTICES:  Unless otherwise specified all notices shall be in writing and delivered personally or mailed, first class mail, postage prepaid, to the addresses of the parties set forth at the beginning of this Agreement, to the attention of the undersigned; provided, however, that a copy of any Licensor notice of material breach to Amexco shall also be sent to the Office of the General Counsel Technology Law Group, World Financial Center, American Express Tower, 200 Vesey Street, 49th floor, New York, New York 10285-4900.  A copy of any Amexco notice of material breach to Licensor shall also be sent to the Office of the General Counsel, 6034 West Courtyard Drive, Austin, TX 78735. As to any Schedule, notices shall also be sent to the signatories of the Schedule involved. Either party may change the address(es) or addressee(s) for notice hereunder upon written notice to the other.  All notices shall be deemed given on the date delivered or when placed in the mail as specified herein.

12.6    ADVERTISING OR PUBLICITY:  Except as set forth in any Schedule, neither party shall use the name or marks, refer to or identify the other party in advertising or publicity releases, promotional or marketing correspondence to others without first securing the written consent of such other party's authorized representative.

12.7    ASSIGNMENT:  Neither party may assign this Agreement, any Schedule and/or any rights and/or obligations hereunder without the written consent of the other party, such consent not to be unreasonably withheld, and any such attempted assignment shall be void. Notwithstanding the foregoing, Amexco may assign this Agreement, any Schedule and/or any of its rights and/or obligations hereunder  (including all licenses granted to Amexco hereunder) to any Amexco Entity .

12.8    GOVERNING LAW: In all respects this Agreement shall be governed by the substantive laws of the State of New York without regard to conflict of law principles.

12.9    MODIFICATION, AMENDMENT, SUPPLEMENT AND WAIVER:  No modification, course of conduct, amendment, supplement to or waiver of this Agreement, any Schedule, or any provisions hereof shall be binding upon the parties unless made in writing and duly signed by both parties.  At no time shall any failure or delay by either party in enforcing any provisions, exercising any option, or requiring performance of any provisions, be construed to be a waiver of same.

12.10   SEVERABILITY:  If any of the provisions of this Agreement are held invalid, illegal or unenforceable, the remaining provisions shall be unimpaired.

12.11   HEADINGS:  Headings are for reference and shall not affect the meaning of any of the provisions of this Agreement.

15

TRILOGY 00015

12.12   ENTIRE AGREEMENT:  The Exhibits, Schedules and attachments to this Agreement are incorporated by this reference and shall constitute part of this Agreement.  This Agreement constitutes the entire agreement between the parties and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day, month and year first written above.

American Express Financial Corporation     Trilogy Software, Inc.

By: _____              By: _____

Name: _____              Name: _____
        (Type or Print)                            (Type or Print)

Title: _____            Title: Associate General Counsel

Date: _____             Date: 10-26-99

16

# EXHIBIT B

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v | § § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| Defendants. | § § | 53rd JUDICIAL DISTRICT |

## **DEFENDANTS' FIRST AMENDED COUNTERCLAIM AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME Defendants Ameriprise Financial, Inc. ("Ameriprise"), Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively "Defendants") and file this First Amended Counterclaim and Application for Temporary and Permanent Injunctive Relief and state as follows.

## **COUNTERCLAIM**

Counterclaimant Ameriprise, for its Counterclaim against all Plaintiffs (collectively, "Versata"), states and alleges as follows:

1002507

Received:
Jun 19 2013 11:19am

## NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a<br>TRILOGY SOFTWARE, INC., and VERSATA<br>DEVELOPMENT GROUP, INC., f/k/a<br>TRILOGY DEVELOPMENT GROUP, INC.,<br><br>    Plaintiffs,<br><br>v<br><br>AMERIPRISE FINANCIAL, INC.,<br>AMERIPRISE FINANCIAL SERVICES, INC.,<br>AMERICAN ENTERPRISE INVESTMENT<br>SERVICES, INC.,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT<br><br><br><br><br><br>TRAVIS COUNTY, TEXAS<br><br><br><br><br><br>53rd JUDICIAL DISTRICT |

## DEFENDANTS' FIRST AMENDED COUNTERCLAIM
## AND APPLICATION FOR TEMPORARY AND PERMANENT
## INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME Defendants Ameriprise Financial, Inc. ("Ameriprise"), Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively "Defendants") and file this First Amended Counterclaim and Application for Temporary and Permanent Injunctive Relief and state as follows.

## COUNTERCLAIM

Counterclaimant Ameriprise, for its Counterclaim against all Plaintiffs (collectively, "Versata"), states and alleges as follows:

1002507

## DISCOVERY

1.      Discovery should be conducted pursuant to Level 3, Texas Rule of Civil Procedure 190.4, and Ameriprise moves that discovery be conducted in accordance with a discovery control plan tailored to the specific circumstances of this suit.

## INTRODUCTION AND PARTIES

2.      Ameriprise is a Delaware corporation with its principal place of business located at 55 Ameriprise Financial Center in Minneapolis, Minnesota. Ameriprise is a leading financial planning and services company. Ameriprise subsidiaries serve individual investors' and institutions' financial needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance. Ameriprise was formerly named American Express Financial Corporation. Ameriprise's field force includes numerous personnel within Travis County and elsewhere in Texas.

3.      Versata is a Delaware corporation with its principal place of business in Austin, Texas. On information and belief, Versata conducts business with fewer than five employees in Texas or anywhere else in the United States. Versata provides software and other technology products and services to companies in the financial services industry, among other areas. Versata was formerly named Trilogy Software, Inc.

4.      At the center of this action is a Master License Agreement ("Agreement") by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from an enterprise compensation software product currently called "Distribution Channel Management" or "DCM." The terms of the Agreement are binding upon Versata and Ameriprise.

2

1002507

5.        In breach of its contractual obligations, Versata has threatened to terminate, and has stated that it has already terminated, Ameriprise's perpetual and worldwide license to use DCM, software that is a necessary component of an Ameriprise system called "Distribution Management Utility," or "DMU."

## JURISDICTION AND VENUE

6.        This Court has general jurisdiction over Plaintiffs because their principal place of business is in Travis County, Texas, and because they subjected themselves to the jurisdiction of this Court by commencing this action.  This Court has specific jurisdiction in connection with these Counterclaims because these Counterclaims relate to issues presented in Plaintiffs' Petition.

7.        In accordance with § 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County and Versata's principal place of business in in Travis County.

## FACTS

**A.        The Master License Agreement**

8.        The predecessors of Ameriprise and Versata entered into the Agreement, effective October 4, 1999, by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from DCM.  The core software and documentation relating to the DCM software are referred to in the Agreement as the "Products."

3

9.      DCM is Java-based software. It was designed by Versata to be extended (*i.e.*, modified and enhanced), and at Ameriprise DCM has been extended and customized with as much as a million lines of additional computer code, added by Ameriprise over many years through the use of different contractors and with Versata's full knowledge.

10.      DCM is a key component of Ameriprise's DMU system, which is part of the compensation and recordkeeping operations for all Ameriprise personnel registered to perform securities work. It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.      The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work. Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise. Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM. Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products." The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.      Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, and the predecessor

4

versions of DCM called first SC Commission and then DMS, as explicitly authorized by section 4.4 of the Agreement. Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys"). Indeed, Versata has worked with such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's various versions of what is now called DCM code, pursuant to Ameriprise's rights under the Agreement. In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into source code (readable by programmers) - through the use of readily-available software.

13.        Despite this acquiescence, in 2010 Versata raised concerns about Infosys decompiling DCM code. In response, Ameriprise, though it had no obligation to do so, began to phase Infosys out of its contractor role with respect to DCM-related work. To date, more than 90% of previously-engaged Infosys personnel have been removed from such work, leaving fewer than ten Infosys employees with access to DCM.

**B.    Versata's Efforts to Force Ameriprise to Convert to A New, Risky, Unproven, Unsafe Software System Or Additional Payments**

14.        Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven, and substantially more expensive replacement for DCM. Versata called its sales proposal the "DCM Enterprise Cloud." Versata's new DCM Enterprise Cloud proposal would require Ameriprise to drastically increase its payments to Versata and to entrust the operation, storage and security of Ameriprise's highly sensitive and confidential business functions and information to a third-party service provider's public cloud environment. A "public cloud" is a shared

5

1002507

storage and computing environment delivered over a network. In this case, the network is the public Internet.

15.    Ameriprise expressed skepticism about and reluctance to accept Versata's DCM Enterprise Cloud proposal for sound business judgment reasons, including but not limited to: security concerns associated with Ameriprise's highly confidential information and dependence on a fully functioning DCM, dissatisfaction with Versata's personnel, and greatly increased costs.

16.    On September 17, 2012, two business days after receiving Ameriprise's initial reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an alleged "material breach" of the Agreement and demanding that Ameriprise cure such alleged breach within thirty days. Fully aware that Ameriprise depends upon DCM and the contractors who customize and maintain it and fully aware that the "breaches" it alleged were impossible to "cure" within 30 days, Versata nonetheless threatened to terminate the Agreement at the end of the 30-day period. In that event, Versata threatened, by the October 17, 2012 deadline, "Ameriprise ... must immediately stop using all Versata-developed software and immediately must return all of Versata's software and other confidential information." Versata's letter culminated in a demand for an immediate mediation to discuss the issues Versata raised. Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the resolution of Versata's concerns.

17.    On November 12, 2012, despite Ameriprise's acquiescence to Versata's request for a prompt mediation, and in the midst of the parties' discussions with a third-party mediator, Versata filed suit against Ameriprise in Texas state court.

6

18.     Versata's conduct in wrongfully threatening to terminate the Agreement constitutes wrongful termination and a breach of the Agreement. The conduct is a willful and malicious act within the meaning of Article 11 of the Agreement.

19.     Ameriprise has provided Versata notice of its material breaches of the Agreement.

**C.     Ameriprise's Right to Relief**

20.     Because Versata has purported to terminate the Agreement and has not withdrawn its purported termination, and Ameriprise has previously provided notice of Versata's breaches, Ameriprise must conclude that granting Versata any additional cure period ordinarily available under the Agreement would be futile. An effective cure by Versata would have required, among other actions to cure its breaches, (a) withdrawal of its purported termination and (b) withdrawal and dismissal of its pending lawsuit.

21.     Ameriprise has paid Versata all sums owed to it.

22.     Ameriprise is entitled to engage third-party contractors to provide software services for DCM who do not compete with Versata in the development of enterprise compensation or configuration software.

23.     Ameriprise is entitled to continue to use DCM.

24.     The harm that Versata's actions have caused and threaten to cause to Ameriprise is irreparable, with no adequate remedy at law.

## CAUSES OF ACTION

## I.     BREACH OF CONTRACT THROUGH WRONGFUL TERMINATION

25.     Ameriprise realleges and reincorporates paragraphs 1-24 as if set forth herein.

26.     New York law governs the interpretation of the parties' Agreement.

7

27.     Pursuant to New York law, Versata is subject to an implied covenant of good faith and fair dealing in fulfilling the parties' Agreement.

28.     Versata's purported termination of the Agreement is a material breach of its own contractual obligations, which include these specific obligations:  upon notice and payment by Ameriprise, to provide maintenance services for the software (section 6.1); to provide "[u]pdates to each Product and" relevant Documentation (section 6.6); to make available to Ameriprise "any and all modifications to the Products" without additional cost to Ameriprise (section 6.7); and to warrant that Ameriprise's "use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement)" (section 8.1).  Versata's purported termination also is a breach of the covenant of good faith and fair dealing implied in the Agreement.

29.     In addition, Versata's purported termination of the Agreement is a material breach of the Agreement because Versata demanded a forfeiture of Ameriprise's rights and Versata failed to comply with the Agreement's termination requirements.

30.     Nothing in the Agreement or Ameriprise's actions justifies Versata's precipitous attempts to terminate the Agreement.

31.     Versata knew when it sent its September 17, 2012, letter that its demands could not be satisfied, and it knew or should have known that its letter failed to comply with the Agreement's termination requirements.

32.     Without the ability to use DCM as contemplated in the Agreement, Ameriprise and its advisors, franchisees and their employees will suffer irreparable injury.

8

33.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately.

34.     As a result of Versata's material breach of the Agreement through its legally deficient attempt at termination and forfeiture demand, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

35.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to obtain and use all escrowed versions of DCM and all related documentation.

36.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

37.     Ameriprise is also entitled to damages as a result of Versata's material and uncured and incurable breaches.

## II.     BREACH OF CONTRACTUAL WARRANTIES

38.     Ameriprise realleges and reincorporates paragraphs 1-37 as if set forth herein.

39.     In Section 8.1 of the Agreement, Versata warranted that (i) Licensor has the right to furnish [DCM] ... free of all liens, claims, encumbrances and other restrictions; [and] (ii) to the best of its knowledge, the Product Materials and Services furnished by [Versata] and/or [Ameriprise's] use of the same hereunder do not violate or infringe the rights of any third party ..."

40.     The Agreement also required Versata to provide Ameriprise with "updates" of the

9

Product. Updates were explicitly covered by (section 8.1) and "subject to the Warranty provisions" of the Agreement (section 4.1).

41.    In 2011, Versata provided Ameriprise with a very substantial update to DCM ("DCM 3.9"). The DCM 3.9 update effectively replaced, in its entirety, the immediately preceding version of DCM that had been in use at Ameriprise, which was version 3.3.

42.    In fact the DCM 3.9 update was so substantial that Ameriprise was required to pay and did pay to Versata millions of dollars to assist Ameriprise with the installation of DCM 3.9 into Ameriprise's DMU program.

43.    Versata's DCM 3.9 software incorporates software subject to claims, encumbrances, restrictions and/or claims of violation or infringement of rights of third parties.

44.    On information and belief, Versata knew that its DCM 3.9 software violated and/or infringed the rights of third parties.

45.    Versata failed to inform Ameriprise of all the third parties with rights to subject DCM 3.9 to claims, encumbrances, restrictions, and/or claims of violation or infringement of rights of third parties.

46.    As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately or following a thirty-day notice period.

47.    As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee." including the DCM 3.9 software pursuant to section 12.2 of the Agreement.

10

48.     As a result of Versata's material breach of the Agreement, Ameriprise is or will
be entitled to obtain and use all escrowed versions of DCM, including DCM 3.9 and all related
documentation.

49.     Ameriprise also is or will be entitled to damages as a result of Versata's material
and uncured and incurable breaches whether by way of counterclaim or recoupment.

### III.    BREACH OF ESCROW OBLIGATIONS

50.     Ameriprise realleges and reincorporates paragraphs 1-49 as if set forth herein.

51.     The parties' Agreement requires Versata to "deposit the ["source code and all the
generally available Documentation thereto, for a Product or Updates"] with Data Securities
International Inc. ("DSI") no later than forty five (45) days after the execution of any Schedule
issued hereunder, if such Deposit Materials are not already in escrow with DSI." Versata is
obligated to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any
deposit pursuant to" stated terms. Versata is obligated to "update the escrow at least every six
months" and "upon delivery of an Update" (sections 5.1 and 5.2).

52.     The parties' Escrow Agreement, an exhibit to the Agreement, acknowledges that
"the availability of or access to certain proprietary data related to the proprietary technology and
other materials is critical to [Ameriprise] in the conduct of its business."

53.     Section 5.1 of the Escrow Agreement similarly requires Versata to deposit
"source code and all the generally available Documentation thereto for a Product or Updates"
with Data Securities International, Inc. or a successor escrow agent.

54.     On information and belief, Versata failed to establish an accessible escrow
account with Data Securities International, Inc. for the benefit of Ameriprise and failed to deposit

11

1002507

source code or documentation into escrow as required by the Agreement and/or the Escrow Agreement.

55.     Ameriprise provided written notice to Versata of its breach of its escrow obligations over thirty days ago.

56.     Versata has materially breached its contractual obligations relating to the deposit and updating of source code on deposit from time to time, including these obligations:  to "deposit the ["source code and related documentation] ... no later than forty five (45) days after the execution of any Schedule" and to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms (Agreement sections 5.1 and 5.2); to deposit the "source code and all the generally available Documentation thereto, for a Product or Updates" with the escrow agreement (section 5.1 of the Escrow Agreement); to update the escrow at least every six months and also use commercially reasonable efforts to update the escrow upon delivery of a software update to Ameriprise (section 5.2 of the Escrow Agreement); to update the deposited software code and related documentation within thirty days after distribution of a technology release, with such deposits occurring at least every twelve months, or, alternatively, to "certify to [Ameriprise] that the Deposit contains the latest technology release" (section 3 of the Escrow Agreement).

57.     Ameriprise is damaged by not having available to it current and/or updated software as contemplated by the Escrow Agreement.

58.     Ameriprise is entitled to remedies following termination of the Agreement as a result of Versata's breach pursuant to section 12.2 of the Agreement.

12

59.     In section 5.3, the Agreement provides for the release to Ameriprise of the source code held in escrow if Versata commits an "uncured, material breach of its maintenance or support obligations." Such uncured, material breaches have occurred.

60.     Versata's breaches entitle Ameriprise to obtain from the escrow agent and/or Versata, all "source code . . ., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

61.     Pursuant to section 14 of the Escrow Agreement, Ameriprise will be entitled to decompile, disassemble, or reverse engineer the escrowed code and documentation.

62.     As a result of Versata's material breach of the Agreement and the Escrow Agreement, Ameriprise is entitled to obtain from the escrow agent and/or Versata, and to use without constraint, all versions of DCM and all related documentation that have been escrowed or that Versata had a duty to place in escrow.

## IV.     IMPOSITION OF CONSTRUCTIVE TRUST

63.     Ameriprise realleges and reincorporates paragraphs 1-62 as if set forth herein.

64.     The Agreement governs the scope of the business relationship between Ameriprise and Versata and obligates Versata to act for the benefit of Ameriprise. Both parties have confidentiality obligations under the Agreement, and the nature of the services provided by Versata requires Ameriprise to trust Versata with significant amounts of proprietary information and trust in Versata's ability and willingness to maintain a fully and continuously functioning DCM. The existence of such duties in turn gives rise to fiduciary obligations by Versata to

13

Ameriprise. Specifically, the Agreement encompasses promises made by Versata with respect to DCM.

65.     Over thirteen years of operations, Ameriprise has contributed financially, operationally, and creatively to the development of DCM.

66.     The current version of DCM is as much the work product of Ameriprise as of Versata.

67.     Versata would be unjustly enriched if it were allowed to keep DCM for its own use and profit, and to prohibit Ameriprise from accessing the software.

68.     Ameriprise is entitled to a constructive trust preserving its access to DCM, prohibiting any interference with its use of DCM, and sharing in any revenue gained by Versata through exploitation of DCM, or variants or derivatives of DCM to which Ameriprise has contributed and which Versata has subsequently sold, licensed, or otherwise made available to any other party.

## V.     DECLARATION OF AMERIPRISE'S RIGHTS

69.     Ameriprise realleges and reincorporates paragraphs 1-68 as if set forth herein.

70.     Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Ameriprise requests, and the interests of the parties to this action require, a judicial determination of Ameriprise's rights and Versata's obligations under the Agreement.

71.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise possesses a "perpetual license to use the Product,

Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

72.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to obtain and use all escrowed versions of the DCM and all related documentation without constraint.

73.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to employ as contractors, to help enhance and maintain DCM, at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

74.     A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future obligations of the parties to this action. Ameriprise requests that the Court grant relief by declaring the rights of the parties pursuant to New York law, as provided by the parties' Agreement.

75.     Accordingly, Ameriprise requests judicial declaration that: (1) Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement; (2) Ameriprise is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed; and (3) Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM,

1002507

at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

## APPLICATION FOR PERMANENT INJUNCTION

76.     Ameriprise realleges and reincorporates paragraphs 1-75 as if set forth herein.

77.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

78.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to obtain and use, enhance, modify, and customize, all escrowed versions of DCM, or versions that should have been escrowed, and all related documentation without constraint.

79.     Ameriprise requests an injunction barring Versata from taking any action in furtherance of its purported termination of the Agreement.

80.     Ameriprise requests a permanent injunction compelling Versata to make delivery to Ameriprise of a current copy of all "source code ..., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

## APPLICATION FOR TEMPORARY INJUNCTION

81.     Ameriprise realleges and reincorporates paragraphs 1-80 as if set forth herein.

16

1002507

82.     Ameriprise has established that it is likely to prevail on its first Cause of Action, which alleges that Versata breached the Agreement when it wrongfully and improperly purported to terminate the Agreement.

83.     Ameriprise has established that it is likely to prevail on its second Cause of Action, which alleges that Versata breached the Agreement when it incorporated software to which third parties own rights into DCM.

84.     Ameriprise has established that it is likely to prevail on its third Cause of Action, which alleges that Defendant breached the Agreement when it failed to comply with its escrow obligations.

85.     The requested temporary injunction is necessary to prevent irreparable harm to Ameriprise and will cause no harm to Versata.

86.     Because the requested temporary injunction is consistent with the parties' contract, and because the public interest favors enforcement of valid contracts, the temporary injunction is consistent with public policy considerations.

87.     The requested temporary injunction is unlikely to impose burdens on the Court.

88.     Ameriprise accordingly requests that Versata be temporarily enjoined from acting on, or taking any action in furtherance of, its letter purporting to terminate the Agreement, including but not limited to (a) taking any action to disable DCM; (b) taking any action to force Ameriprise to prohibit contractors from Infosys Technologies, Ltd. or TCS from having access to the licensed Products in order to provide services in support of the operation of Ameriprise's business; and (c) refusing to fulfill its contractual maintenance and support obligations so long as Ameriprise makes its contractually required payments for such services.

89.    Ameriprise further requests that Versata be ordered, within ten (10) days after the date of the Court's Order, to deposit with a third party escrow agent, identifying Ameriprise as a beneficiary of such deposit, the original source code for DCM (along with all updates to the source code) and available Documentation; and to provide Ameriprise written confirmation that it has done so, such written confirmation to include the name and contact information for the escrow agent, the account number of the escrow account, and the date and content of all deposits into the escrow account.  Until otherwise ordered by the Court, Versata shall thereafter continue to meet its escrow obligations under the Agreement by making timely escrow deposits of updates and upgrades to DCM and provide the required confirmation to Ameriprise.

## PRAYER FOR RELIEF

WHEREFORE, Ameriprise requests that this Court enter a judgment and decree against Versata as follows:

(a)    Temporarily and permanently enjoining Versata from taking any actions adverse to Ameriprise with respect to its purported termination of the Agreement as more specifically set forth above;

(b)    Declaring that as a result of Versata's breaches of contract, Ameriprise is entitled to a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement and is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed;

18

       (c)     Declaring that Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services;

       (d)     Imposing a constructive trust protecting Ameriprise's investment in DCM;

       (e)     Awarding damages in an amount to be proven at trial, which damages sought are within the jurisdictional limits of the court;

       (f)     Attorney fees and costs pursuant to Texas Civil Practice and Remedies Code § 37.09 and § 38.01, *et seq.*, and other applicable law;

       (g)     Awarding Ameriprise its costs of court;

       (h)     Awarding Ameriprise pre and post judgment interest; and

       (i)     Awarding Ameriprise such other and further general relief, at law or in equity, to which Ameriprise may be entitled.

1002507

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
Phone: (512) 495-6300
Fax: (512) 474-0731


By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail: smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail: csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

*ATTORNEYS FOR DEFENDANTS*

1002507

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on June 19, 2013.

Travis Barton                          *VIA FACSIMILE* 512.495.6093
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                           *VIA FACSIMILE* 713.655.0062
Ben Foster
Amir Alavi
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010


/s/ Christopher D. Sileo
Christopher D. Sileo

1002507

# EXHIBIT C

NO. D-1-GN-12-003588

| | |
|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., §§§§§§ | IN THE DISTRICT COURT |
| Plaintiffs, | |
| v | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | |
| Defendants. | 53rd JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL COUNTERCLAIM AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME Defendants Ameriprise Financial, Inc. ("Ameriprise"), Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively "Defendants") and file this Answer and Original Counterclaim and Application for Temporary and Permanent Injunctive Relief and state as follows.

## COUNTERCLAIM

Counterclaimant Ameriprise, for its Counterclaim against all Plaintiffs (collectively, "Versata"), states and alleges as follows:

## DISCOVERY

1.     Discovery should be conducted pursuant to Level 3, Texas Rule of Civil Procedure 190.4, and Ameriprise moves that discovery be conducted in accordance with a discovery control plan tailored to the specific circumstances of this suit.

## INTRODUCTION AND PARTIES

2.       Ameriprise is a Delaware corporation with its principal place of business located at 55 Ameriprise Financial Center in Minneapolis, Minnesota. Ameriprise is a leading financial planning and services company. Ameriprise subsidiaries serve individual investors' and institutions' financial needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance. Ameriprise was formerly named American Express Financial Corporation. Ameriprise's field force includes numerous personnel within Travis County and elsewhere in Texas.

3.       Versata is a Delaware corporation with its principal place of business in Austin, Texas. On information and belief, Versata conducts business with fewer than five employees in Texas or anywhere else in the United States. Versata provides software and other technology products and services to companies in the financial services industry, among other areas. Versata was formerly named Trilogy Software, Inc.

4.       At the center of this action is a Master License Agreement ("Agreement") by which Versata granted to Ameriprise a "nonexclusive, nontransferable ... perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from an enterprise compensation software product called "Distribution Channel Management" or "DCM." The terms of the Agreement are binding upon Versata and Ameriprise.

5.       In breach of its contractual obligations, Versata has threatened to terminate, and has stated that it has already terminated, Ameriprise's perpetual and worldwide license to use DCM, software that is a necessary component of an Ameriprise system called "Distribution Management Utility," or "DMU."

## JURISDICTION AND VENUE

6.      This Court has general jurisdiction over Plaintiffs because their principal place of business is in Travis County, Texas, and because they subjected themselves to the jurisdiction of this Court by commencing this action. This Court has specific jurisdiction in connection with these Counterclaims because these Counterclaims relate to issues presented in Plaintiffs' Petition.

7.      In accordance with § 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County and Versata's principal place of business in in Travis County.

## FACTS

### A.      The Master License Agreement

8.      The predecessors of Ameriprise and Versata entered into the Agreement, effective October 4, 1999, by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from DCM. The core software and documentation relating to the DCM software are referred to in the Agreement as the "Products."

9.      DCM is Java-based software. It was designed by Versata to be extended (i.e., modified and enhanced), and at Ameriprise DCM has been extended and customized with as much as a million lines of additional computer code, added by Ameriprise over many years through the use of different contractors and with Versata's full knowledge.

10.      DCM is a key component of Ameriprise's DMU system, which is part of the compensation and recordkeeping operations for all Ameriprise personnel registered to perform

securities work. It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.     The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work. Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise. Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM. Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products." The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.     Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, as explicitly authorized by section 4.4 of the Agreement. Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys"). Indeed, Versata has worked with such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's version of the DCM code, pursuant to Ameriprise's rights under the Agreement. In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into source code (readable by programmers) - through the use of readily-available software.

Page 4

securities work. It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.     The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work. Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise. Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM. Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products." The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.     Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, as explicitly authorized by section 4.4 of the Agreement. Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys"). Indeed, Versata has worked with such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's version of the DCM code, pursuant to Ameriprise's rights under the Agreement. In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into source code (readable by programmers) - through the use of readily-available software.

Page 4

13.     Despite this acquiescence, in 2010 Versata raised concerns about Infosys

decompiling DCM code.  In response, Ameriprise, though it had no obligation to do so, began to

phase Infosys out of its contractor role with respect to DCM-related work.  To date, more than

90% of previously-engaged Infosys personnel have been removed from such work, leaving fewer

than ten Infosys employees with access to DCM.

**B.      Versata's Efforts to Force Ameriprise to Convert to A New, Risky, Unproven, Unsafe Software System Or Additional Payments**

14.     Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven,

and substantially more expensive replacement for DCM.  Versata called its sales proposal the

"DCM Enterprise Cloud."  Versata's new DCM Enterprise Cloud proposal would require

Ameriprise to drastically increase its payments to Versata and to entrust the operation, storage

and security of Ameriprise's highly sensitive and confidential business functions and information

to a third-party service provider's public cloud environment.  A "public cloud" is a shared

storage and computing environment delivered over a network.  In this case, the network is the

public Internet.

15.     Ameriprise expressed skepticism about and reluctance to accept Versata's DCM

Enterprise Cloud proposal for sound business judgment reasons, including but not limited to:

security concerns associated with Ameriprise's highly confidential information and dependence

on a fully functioning DCM, dissatisfaction with Versata's personnel, and greatly increased

costs.

16.     On September 17, 2012, two business days after receiving Ameriprise's initial

reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an

alleged "material breach" of the Agreement and demanding that Ameriprise cure such alleged

breach within thirty days.  Fully aware that Ameriprise depends upon DCM and the contractors

who customize and maintain it and fully aware that the "breaches" it alleged were impossible to

"cure" within 30 days, Versata nonetheless threatened to terminate the Agreement at the end of the 30-day period. In that event, Versata threatened, by the October 17, 2012 deadline, "Ameriprise ... must immediately stop using all Versata-developed software and immediately must return all of Versata's software and other confidential information." Versata's letter culminated in a demand for an immediate mediation to discuss the issues Versata raised. Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the resolution of Versata's concerns.

17.     On November 12, 2012, despite Ameriprise's acquiescence to Versata's request for a prompt mediation, and in the midst of the parties' discussions with a third-party mediator, Versata filed suit against Ameriprise in Texas state court.

18.     Versata's conduct in wrongfully threatening to terminate the Agreement constitutes wrongful termination and a breach of the Agreement. The conduct is a willful and malicious act within the meaning of Article 11 of the Agreement.

19.     Ameriprise has provided Versata notice of its material breaches of the Agreement.

## C.     Ameriprise's Right to Relief

20.     Because Versata has purported to terminate the Agreement and has not withdrawn its purported termination, and Ameriprise has previously provided notice of Versata's breaches, Ameriprise must conclude that granting Versata any additional cure period ordinarily available under the Agreement would be futile. An effective cure by Versata would have required, among other actions to cure its breaches, (a) withdrawal of its purported termination and (b) withdrawal and dismissal of its pending lawsuit.

21.     Ameriprise has paid Versata all sums owed to it.

22.     Ameriprise is entitled to engage third-party contractors to provide software services for DCM who do not compete with Versata in the development of enterprise compensation or configuration software.

23.     Ameriprise is entitled to continue to use DCM.

24.     The harm that Versata's actions have caused and threaten to cause to Ameriprise is irreparable, with no adequate remedy at law.

## CAUSES OF ACTION

## I.     BREACH OF CONTRACT THROUGH WRONGFUL TERMINATION

25.     Ameriprise realleges and reincorporates paragraphs 1-24 as if set forth herein.

26.     New York law governs the interpretation of the parties' Agreement.

27.     Pursuant to New York law, Versata is subject to an implied covenant of good faith and fair dealing in fulfilling the parties' Agreement.

28.     Versata's purported termination of the Agreement is a material breach of its own contractual obligations, which include these specific obligations:  upon notice and payment by Ameriprise, to provide maintenance services for the software (section 6.1); to provide "[u]pdates to each Product and" relevant Documentation (section 6.6); to make available to Ameriprise "any and all modifications to the Products" without additional cost to Ameriprise (section 6.7); and to warrant that Ameriprise's "use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement)" (section 8.1).  Versata's purported termination also is a breach of the covenant of good faith and fair dealing implied in the Agreement.

29.     In addition, Versata's purported termination of the Agreement is a material breach of the Agreement because Versata demanded a forfeiture of Ameriprise's rights and Versata failed to comply with the Agreement's termination requirements.

Page 7

30.     Nothing in the Agreement or Ameriprise's actions justifies Versata's precipitous attempts to terminate the Agreement.

31.     Versata knew when it sent its September 17, 2012, letter that its demands could not be satisfied, and it knew or should have known that its letter failed to comply with the Agreement's termination requirements.

32.     Without the ability to use DCM as contemplated in the Agreement, Ameriprise and its advisors, franchisees and their employees will suffer irreparable injury.

33.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately.

34.     As a result of Versata's material breach of the Agreement through its legally deficient attempt at termination and forfeiture demand, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

35.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to obtain and use all escrowed versions of DCM and all related documentation.

36.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

37.     Ameriprise is also entitled to damages as a result of Versata's material and uncured and incurable breaches.

## II.     BREACH OF CONTRACTUAL WARRANTIES

38.     Ameriprise realleges and reincorporates paragraphs 1-37 as if set forth herein.

39.     In Section 8.1 of the Agreement, Versata warranted that (i) Licensor has the right to furnish [DCM] … free of all liens, claims, encumbrances and other restrictions; [and] (ii) to the best of its knowledge, the Product Materials and Services furnished by [Versata] and/or [Ameriprise's] use of the same hereunder do not violate or infringe the rights of any third party …"

40.     Versata's DCM software incorporates software subject to claims, encumbrances, restrictions and/or claims of violation or infringement of rights of third parties.

41.     On information and belief, Versata knew that its DCM software violated and/or infringed the rights of third parties.

42.     Versata failed to inform Ameriprise of all the third parties with rights to subject DCM to claims, encumbrances, restrictions, and/or claims of violation or infringement of rights of third parties.

43.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately or following a thirty-day notice period.

44.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

45.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to obtain and use all escrowed versions of DCM and all related documentation.

46.     Ameriprise also is or will be entitled to damages as a result of Versata's material and uncured and incurable breaches.

## III.    BREACH OF ESCROW OBLIGATIONS

47.     Ameriprise realleges and reincorporates paragraphs 1-46 as if set forth herein.

48.     The parties' Agreement requires Versata to "deposit the ["source code and all the generally available Documentation thereto, for a Product or Updates"] with Data Securities International Inc. ("DSI") no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI." Versata is obligated to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms. Versata is obligated to "update the escrow at least every six months" and "upon delivery of an Update" (sections 5.1 and 5.2).

49.     The parties' Escrow Agreement, an exhibit to the Agreement, acknowledges that "the availability of or access to certain proprietary data related to the proprietary technology and other materials is critical to [Ameriprise] in the conduct of its business."

50.     Section 5.1 of the Escrow Agreement similarly requires Versata to deposit "source code and all the generally available Documentation thereto for a Product or Updates" with Data Securities International, Inc. or a successor escrow agent.

51.     On information and belief, Versata failed to establish an accessible escrow account with Data Securities International, Inc. for the benefit of Ameriprise and failed to deposit source code or documentation into escrow as required by the Agreement and/or the Escrow Agreement.

52.     Ameriprise provided written notice to Versata of its breach of its escrow obligations over thirty days ago.

53.     Versata has materially breached its contractual obligations relating to the deposit and updating of source code on deposit from time to time, including these obligations:  to "deposit the ["source code and related documentation] ... no later than forty five (45) days after the execution of any Schedule" and to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms (Agreement sections 5.1 and 5.2); to

deposit the "source code and all the generally available Documentation thereto, for a Product or Updates" with the escrow agreement (section 5.1 of the Escrow Agreement); to update the escrow at least every six months and also use commercially reasonable efforts to update the escrow upon delivery of a software update to Ameriprise (section 5.2 of the Escrow Agreement); to update the deposited software code and related documentation within thirty days after distribution of a technology release, with such deposits occurring at least every twelve months, or, alternatively, to "certify to [Ameriprise] that the Deposit contains the latest technology release" (section 3 of the Escrow Agreement).

54.     Ameriprise is damaged by not having available to it current and/or updated software as contemplated by the Escrow Agreement.

55.     Ameriprise is entitled to remedies following termination of the Agreement as a result of Versata's breach pursuant to section 12.2 of the Agreement.

56.     In section 5.3, the Agreement provides for the release to Ameriprise of the source code held in escrow if Versata commits an "uncured, material breach of its maintenance or support obligations." Such uncured, material breaches have occurred.

57.     Versata's breaches entitle Ameriprise to obtain from the escrow agent and/or Versata, all "source code . . ., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

58.     Pursuant to section 14 of the Escrow Agreement, Ameriprise will be entitled to decompile, disassemble, or reverse engineer the escrowed code and documentation.

59.     As a result of Versata's material breach of the Agreement and the Escrow Agreement, Ameriprise is entitled to obtain from the escrow agent and/or Versata, and to use

without constraint, all versions of DCM and all related documentation that have been escrowed or that Versata had a duty to place in escrow.

## IV.  IMPOSITION OF CONSTRUCTIVE TRUST

60.     Ameriprise realleges and reincorporates paragraphs 1-59 as if set forth herein.

61.     The Agreement governs the scope of the business relationship between Ameriprise and Versata and obligates Versata to act for the benefit of Ameriprise. Both parties have confidentiality obligations under the Agreement, and the nature of the services provided by Versata requires Ameriprise to trust Versata with significant amounts of proprietary information and trust in Versata's ability and willingness to maintain a fully and continuously functioning DCM. The existence of such duties in turn gives rise to fiduciary obligations by Versata to Ameriprise. Specifically, the Agreement encompasses promises made by Versata with respect to DCM.

62.     Over thirteen years of operations, Ameriprise has contributed financially, operationally, and creatively to the development of DCM.

63.     The current version of DCM is as much the work product of Ameriprise as of Versata.

64.     Versata would be unjustly enriched if it were allowed to keep DCM for its own use and profit, and to prohibit Ameriprise from accessing the software.

65.     Ameriprise is entitled to a constructive trust preserving its access to DCM, prohibiting any interference with its use of DCM, and sharing in any revenue gained by Versata through exploitation of DCM, or variants or derivatives of DCM to which Ameriprise has contributed and which Versata has subsequently sold, licensed, or otherwise made available to any other party.

## V.     DECLARATION OF AMERIPRISE'S RIGHTS

66.     Ameriprise realleges and reincorporates paragraphs 1-65 as if set forth herein.

67.     Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Ameriprise requests, and the interests of the parties to this action require, a judicial determination of Ameriprise's rights and Versata's obligations under the Agreement.

68.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

69.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to obtain and use all escrowed versions of the DCM and all related documentation without constraint.

70.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to employ as contractors, to help enhance and maintain DCM, at least the following companies:  Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

71.     A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future obligations of the parties to this action.  Ameriprise requests that the Court grant relief by declaring the rights of the parties pursuant to New York law, as provided by the parties' Agreement.

72.     Accordingly, Ameriprise requests judicial declaration that: (1) Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement; (2) Ameriprise is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed; and (3) Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

## APPLICATION FOR PERMANENT INJUNCTION

73.     Ameriprise realleges and reincorporates paragraphs 1-72 as if set forth herein.

74.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

75.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, Ameriprise is entitled to obtain and use, enhance, modify, and customize, all escrowed versions of DCM, or versions that should have been escrowed, and all related documentation without constraint.

76.     Ameriprise requests an injunction barring Versata from taking any action in furtherance of its purported termination of the Agreement.

77.     Ameriprise requests a permanent injunction compelling Versata to make delivery to Ameriprise of a current copy of all "source code ..., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create,

maintain and/or enhance the licensed material without the aid of [Versata] or any other person
…"

## APPLICATION FOR TEMPORARY INJUNCTION

78.     Ameriprise realleges and reincorporates paragraphs 1-77 as if set forth herein.

79.     Ameriprise has established that it is likely to prevail on its first Cause of Action,
which alleges that Versata breached the Agreement when it wrongfully and improperly purported
to terminate the Agreement.

80.     Ameriprise has established that it is likely to prevail on its second Cause of
Action, which alleges that Versata breached the Agreement when it incorporated software to
which third parties own rights into DCM.

81.     Ameriprise has established that it is likely to prevail on its third Cause of Action,
which alleges that Defendant breached the Agreement when it failed to comply with its escrow
obligations.

82.     The requested temporary injunction is necessary to prevent irreparable harm to
Ameriprise and will cause no harm to Versata.

83.     Because the requested temporary injunction is consistent with the parties'
contract, and because the public interest favors enforcement of valid contracts, the temporary
injunction is consistent with public policy considerations.

84.     The requested temporary injunction is unlikely to impose burdens on the Court.

85.     Ameriprise accordingly requests that Versata be temporarily enjoined from acting
on, or taking any action in furtherance of, its letter purporting to terminate the Agreement,
including but not limited to (a) taking any action to disable DCM; (b) taking any action to force
Ameriprise to prohibit contractors from Infosys Technologies, Ltd. or TCS from having access to
the licensed Products in order to provide services in support of the operation of Ameriprise's

business; and (c) refusing to fulfill its contractual maintenance and support obligations so long as Ameriprise makes its contractually required payments for such services.

86.    Ameriprise further requests that Versata be ordered, within ten (10) days after the date of the Court's Order, to deposit with a third party escrow agent, identifying Ameriprise as a beneficiary of such deposit, the original source code for DCM (along with all updates to the source code) and available Documentation; and to provide Ameriprise written confirmation that it has done so, such written confirmation to include the name and contact information for the escrow agent, the account number of the escrow account, and the date and content of all deposits into the escrow account. Until otherwise ordered by the Court, Versata shall thereafter continue to meet its escrow obligations under the Agreement by making timely escrow deposits of updates and upgrades to DCM and provide the required confirmation to Ameriprise.

### PRAYER FOR RELIEF

WHEREFORE, Ameriprise requests that this Court enter a judgment and decree against Versata as follows:

(a)    Temporarily and permanently enjoining Versata from taking any actions adverse to Ameriprise with respect to its purported termination of the Agreement as more specifically set forth above;

(b)    Declaring that as a result of Versata's breaches of contract, Ameriprise is entitled to a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement and is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed;

Page 16

(c)     Declaring that Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services;

(d)     Imposing a constructive trust protecting Ameriprise's investment in DCM;

(e)     Awarding damages in an amount to be proven at trial, which damages sought are within the jurisdictional limits of the court;

(f)     Attorney fees and costs pursuant to Texas Civil Practice and Remedies Code § 37.09 and § 38.01, *et seq.*, and other applicable law;

(g)     Awarding Ameriprise its costs of court;

(h)     Awarding Ameriprise pre and post judgment interest; and

(i)     Awarding Ameriprise such other and further general relief, at law or in equity, to which Ameriprise may be entitled.

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
Phone: (512) 495-6300
Fax: (512) 474-0731


By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail: smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail: csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

### *ATTORNEYS FOR DEFENDANTS*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on April 16, 2013.

Travis Barton                          *VIA FACSIMILE* 512.495.6093
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                           *VIA FACSIMILE* 713.655.0062
Megan Bibb
Ahmad, Zavitsanos, Anaipakos, Alvi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010


/s/ Christopher D. Sileo
Christopher D. Sileo

# EXHIBIT D



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

**BENJAMIN F. FOSTER**
DIRECT 713.600.4914
MAIN 713.655.1101
FAX 713.655.0062
BFOSTER@AZALAW.COM

May 7, 2013

Steve McConnico          ***Via Email:*** **smcconnico@scottdoug.com**
Christopher Silco         ***Via Email:*** **csilco@scottdoug.com**
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701

Peter M. Lancaster        ***Via Email:*** **lancaster.peter@dorsey.com**
Heather D. Redmond        ***Via Email:*** **redmond.heather@dorsey.com**
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498

> Re:   Cause No. D-1-GN-12-003588; *Versata Software, Inc., f/k/a Trilogy
>       Software, Inc., et al v. Ameriprise Financial, Inc., Ameriprise Financial
>       Services, Inc., and Ameriprise Investment Services, Inc.;* In the 53rd
>       Judicial District Court of Travis County, Texas.

Dear Counsel:

On April 16, 2013 you asserted a variety of counterclaims in this case. You have indicated that you view some of these counterclaims as potential defenses to our Temporary Injunction. On February 2, 2013 you served initial disclosures in this case which do not disclose the legal and factual theories underlying your counterclaims.

In light of the fact that you intend to put your counterclaims at issue at the Temporary Injunction hearing, please amend your request for disclosures by Friday, May 10, 2013. The need for Amerprise to supplement its initial disclosures is acute since Versata has absolutely no idea what the factual basis is for Ameriprise's breach of warranty claim.

Sincerely,

Benjamin F. Foster

BFF/nm

May 7, 2013
Page 2


cc:    Travis Barton               **_Via Email:_**  **tcbarton@mcginnislaw.com**
       McGinnis, Lochridge & Kilgore, LLP
       600 Congress Avenue, Suite 2100
       Austin, Texas 78701

4852-5980-1107, v. 1

# EXHIBIT E

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and VERSATA | § | |
| DEVELOPMENT GROUP, INC., f/k/a | § | |
| TRILOGY DEVELOPMENT GROUP, INC., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, INC., | § | |
| AMERICAN ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| *Defendants.* | § | 53rd JUDICIAL DISTRICT |

## DEFENDANTS' RESPONSE TO REQUEST FOR DISCLOSURE

To:   Versata Software, Inc. f/k/a Trilogy Software, Inc. and Versata Development Group, Inc. f/k/a Trilogy Development Group, Inc., by and through their attorneys of record, Travis Barton, McGinnis, Lochridge & Kilgore, LLP, 600 Congress Ave., Suite 2100, Austin, TX 78701 and Steven J. Mitby & Megan Bibb, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC, 1221 McKinney Street, Suite 3460, Houston, TX 77010.

Pursuant to the Texas Rules of Civil Procedure, Defendants Ameriprise Financial, Inc.,

Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc.

(collectively "Defendants") serve their Response to Plaintiff's Request for Disclosure.

Respectfully submitted,

LOCKE LORD LLP

By: _S. Alan Waldrop_

G. Alan Waldrop
State Bar No. 20685700
John R. Nelson
State Bar No. 0159840
100 Congress Avenue, Suite 300
Austin, Texas 78701
(512) 305-4700 (Telephone)
(512) 305-4800 (Facsimile)
E-Mail: awaldrop@lockelord.com
E-Mail: jnelson@lockelord.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
(612) 340-2600 (Telephone)
(612) 340-3868 (Facsimile)
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Response was served on the following counsel of record by the methods stated below on the 8th day of February 2013:

**Via Facsimile: 512-495-6093**
Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Ave., Suite 2100
Austin, TX 78701
*Attorneys for Plaintiffs*

**Via Facsimile: 713-655-0062**
Steven J. Mitby
Megan Bibb
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC
1221 McKinney Street, Suite 3460
Houston, TX 77010
*Attorneys for Plaintiffs*

G. Alan Waldrop

a.    **The correct names of the parties to the lawsuit.**

**RESPONSE:**

> Ameriprise Financial, Inc.
> Ameriprise Financial Services, Inc.
> American Enterprise Investment Services, Inc.

b.    **The name, address, and telephone number of any potential parties.**

**RESPONSE:**

> Ameriprise is not aware of additional potential parties as of this time.

c.    **The legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial).**

**RESPONSE:**

> Ameriprise has not breached any term of the parties' Master License Agreement ("Agreement"). Specifically, Ameriprise denies that the Agreement prohibits decompiling of Versata's code in all circumstances and, in fact, contemplates that decompiling may occur under certain confidentiality restrictions. *See* Agreement § 10.1. The parties' e-mail communications establish that, since at least as early as 2008, Versata has known about and participated in decompiling to resolve issues with Versata's code.

> Versata has not established that Infosys or TCS competed with Versata in the development of enterprise compensation or configuration software as contemplated by the Agreement § 4.8. In the event Infosys or TCS are found to be such competitors, Ameriprise denies that it knew or should have known at the relevant times that Infosys and TCS were Versata's competitors, as contemplated by Agreement § 4.8. Versata knew of Ameriprise's use of Infosys and TCS, and in fact worked with both contractors to upgrade and customize the software for substantial periods before informing Ameriprise that it objected to their involvement.

> To the extent Infosys obtained Versata's confidential information through its work with Ameriprise, Ameriprise denies any knowledge that Infosys used any such confidential information for Infosys's own benefit.

> Ameriprise has not misappropriated any of Versata's trade secrets. Versata has not taken reasonable measures to protect the confidentiality of its source code.

Ameriprise has paid Versata many millions of dollars for its use of the software, and Ameriprise denies that it has been unjustly enriched by its continued use of the software.

Ameriprise denies that it has unlawfully appropriated or unlawfully used any of Versata's property or trade secrets.

Versata has not been damaged by any actions of Ameriprise.

Ameriprise has committed no malicious acts toward Versata that would justify the imposition of punitive damages.

There is no risk that Versata could be irreparably harmed by any actions of Ameriprise.

**d.      The amount and any method of calculating economic damages.**

RESPONSE:

Not applicable.

**e.      The name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case.**

RESPONSE:

Bryan P. Doherty – Vice President at Ameriprise Financial, Inc. (responsible for management of the system at Amerirprise that uses the DCM software ("DMU") from July 21, 2012 to present). Contact through Ameriprise counsel at Dorsey & Whitney.

Ken Bridgeman – Vice President at Ameriprise Financial, Inc. (responsible for management of DMU from December 2008 through July 21, 2012). Contact through Ameriprise counsel at Dorsey & Whitney.

Ryan Macomb – Senior Director at Ameriprise Financial, Inc. (involved in working on DMU since approximately 2000). Contact through Ameriprise counsel at Dorsey & Whitney.

Deep Kulshreshtha – Tech Lead at Infosys Technologies, Ltd. (responsible for understanding business requirements and helping the team code per the requirements)

Shashank Sagar – Infosys Technologies, Ltd.

Noumit Pathak – software engineer / program analyst at Infosys Technologies, Ltd.

Sunil Kadumata – Technology Lead at Infosys Technologies, Ltd.

Leela Kaza – financial services at Versata Software, Inc.

Tushar Jasrotia – Versata Software, Inc.

Christopher Brandon Smith – former COO of Trilogy Development Group

Abhinesh Sikka – Software Developer at Versata Software, Inc.

Chris Strayhorn – former Vice President of Products – Versata Software, Inc.

Hemant Shah – Senior Program Director in the Financial Services Business Unit at Versata Software, Inc.

Scott Brighton – CEO of Versata Software, Inc.

**f.**     **For any testifying expert:**
  **(1) the expert's name, address, and telephone number;**
  **(2) the subject matter on which the expert will testify;**
  **(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;**
  **(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:**
    **(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and**
    **(B) the expert's current resume and bibliography.**

RESPONSE:

Ameriprise has not designated any testifying experts as of this time.

**g.**     **Any indemnity and insuring agreements described in Rule 192.3(f).**

RESPONSE:

There is an indemnification agreement between Ameriprise and Infosys.

**h.**     **Any settlement agreements described in Rule 192.3(g).**

**RESPONSE:**

None.

**i.**     **Any witness statements described in Rule 192.3(h).**

**RESPONSE:**

None.

**j.**     **In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.**

**RESPONSE:**

Not applicable.

**k.**     **In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.**

**RESPONSE:**

Not applicable.

**l.**     **The name, address, and telephone number of any person who may be designated as a responsible third party.**

**RESPONSE:**

None at this time.

# EXHIBIT F

## Benjamin Foster

| | |
|---|---|
| **From:** | Benjamin Foster |
| **Sent:** | Wednesday, June 05, 2013 10:42 AM |
| **To:** | 'Redmond.Heather@dorsey.com' |
| **Cc:** | Amir Alavi; 'Lancaster.Peter@dorsey.com'; csileo@scottdoug.com; tcbarton@mcginnislaw.com |
| **Subject:** | Ameriprise's Disclosure deficiancies |
| **Attachments:** | 2013-05-07 BFF to Opposing Counsel RE Def's Counterclaims.pdf |

Heather,

I sent you a letter a while back about deficiencies in your disclosures. I've reattached it here. I never got a response. That was nearly a month ago now. Since that time another major deficiency has emerged. You have designated John Collins as an expert on your witness list. However, your disclosure of him there does not comply with Tex. R. Civ. P. 194.2(f). Nor do you disclose him at all in your disclosures. Please provide us with his expert designation. Unless we have a commitment by you that you will update your disclosures as outlined in the letter and in this email we will have no choice but to file a motion to compel and set it for hearing as quickly as practicable.

Therefore please let me know before noon on Friday that you will commit to amending or supplementing your disclosures by Wednesday of next week. Otherwise we will file a motion to compel on this topic this Friday.

-Ben

**Benjamin F. Foster**
Attorney-at-Law



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

**AZA**

1221 MCKINNEY, SUITE 3460  |  HOUSTON, TEXAS 77010
713.600.4914 (direct)  |  713.655.1101 (main)
832.799.9842 (cell)  |  713.655.0062 (fax)
AZALAW.COM

# EXHIBIT G

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and VERSATA | § | |
| DEVELOPMENT GROUP, INC., f/k/a | § | |
| TRILOGY DEVELOPMENT GROUP, INC., | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, INC., | § | |
| AMERICAN ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
|     *Defendants.* | § | 53rd JUDICIAL DISTRICT |

## DEFENDANTS' AMENDED RESPONSE TO REQUEST FOR DISCLOSURE

To:    Versata Software, Inc. f/k/a Trilogy Software, Inc. and Versata Development Group, Inc. f/k/a Trilogy Development Group, Inc., by and through their attorneys of record, Travis Barton, McGinnis, Lochridge & Kilgore, LLP, 600 Congress Ave., Suite 2100, Austin, TX 78701 and Steven J. Mitby & Megan Bibb, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC, 1221 McKinney Street, Suite 3460, Houston, TX 77010.

Pursuant to the Texas Rules of Civil Procedure, Defendants Ameriprise Financial, Inc.,

Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc.

(collectively "Defendants") serve their Amended Response to Plaintiffs' Request for Disclosure.

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.

By: _____

    Stephen E. McConnico
    State Bar No. 13450300
    Christopher D. Sileo
    State Bar No. 2402977
    600 Congress Avenue, Suite 1500
    Austin, Texas 78701-3234
    (512) 495-6300 – Telephone
    (512) 474-0731 – Facsimile

1001108

Peter M. Lancaster (SBN 0159840)
Heather D. Redmond (SBN 0313233)
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Phone: (612) 340-2600
E-Mail: Lancaster.peter@dorsey.com
E-Mail: Redmond.heather@dorsey.com

***ATTORNEYS FOR DEFENDANTS***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record by the methods stated below on the 13th day of June, 2013:

**Via Email: tcbarton@mcginnislaw.com**
Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Ave., Suite 2100
Austin, TX 78701
*Attorneys for Plaintiffs*

**Via Email: smitby@azalaw.com / bfoster@azalaw.com**
Steven J. Mitby
Benjamin F. Foster
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC
1221 McKinney Street, Suite 3460
Houston, TX 77010
*Attorneys for Plaintiffs*

Christopher D. Sileo

2

1001108

a.      **The correct names of the parties to the lawsuit.**

RESPONSE:

>   Ameriprise Financial, Inc.
>   Ameriprise Financial Services, Inc.
>   American Enterprise Investment Services, Inc.


b.      **The name, address, and telephone number of any potential parties.**

RESPONSE:

>   Ameriprise is not aware of additional potential parties as of this time.


c.      **The legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial).**

RESPONSE:

>   Ameriprise's Defenses

>   Ameriprise has not breached any term of the parties' Master License Agreement ("Agreement").  Specifically, Ameriprise denies that the Agreement prohibits decompiling of Versata's code in all circumstances and, in fact, contemplates that decompiling may occur under certain confidentiality restrictions. *See* Agreement § 10.1. The parties' e-mail communications establish that, since at least as early as 2008, Versata has known about and participated in decompiling to resolve issues with Versata's code.

>   Versata has not established that Infosys, TCS or IBM competed with Versata in the development of enterprise compensation or configuration software as contemplated by the Agreement § 4.8.  Even if Infosys,TCS or IBM were considered to be such competitors, Ameriprise denies that it knew or should have known at the relevant times that Infosys, TCS or IBM were Versata's competitors, as contemplated by Agreement § 4.8.  Versata knew of Ameriprise's use of Infosys, TCS and IBM, and in fact worked with all contractors to upgrade and customize the software for substantial periods before informing Ameriprise that it objected to their involvement.

>   To the extent Infosys obtained Versata's confidential information through its work with Ameriprise, Ameriprise lacks any knowledge that Infosys used any such confidential information for the benefit of any entity that was not a customer of Versata.

>   Ameriprise has not misappropriated any of Versata's trade secrets.  Versata has not taken reasonable measures to protect the confidentiality of its source code.

3

Ameriprise has paid Versata many millions of dollars for its use of the software, and Ameriprise denies that it has been unjustly enriched by its continued use of the software.

Ameriprise denies that it has unlawfully appropriated or unlawfully used any of Versata's property or trade secrets.

Versata has not been damaged by any actions of Ameriprise.

Ameriprise has committed no malicious acts toward Versata that would justify the imposition of punitive damages.

There is no risk that Versata could be irreparably harmed by any actions of Ameriprise.

Ameriprise's Counterclaims

Pursuant to the express terms of the Agreement, Versata granted to Ameriprise a "nonexclusive, nontransferable… perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from an enterprise compensation software product called "Distribution Channel Management" or "DCM."   The Agreement also gives Ameriprise the right to engage third parties to perform work on DCM. Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products."   The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."   Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, as explicitly authorized by section 4.4 of the Agreement.   Throughout that same period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys.   Indeed, Versata has worked with such third-party contractors, including Infosys, to upgrade and customize Ameriprise's version of the DCM code, pursuant to Ameriprise's rights under the Agreement.

Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven, and substantially more expensive replacement for DCM.   Versata called its sales proposal the "DCM Enterprise Cloud." Ameriprise expressed skepticism about and reluctance to accept Versata's DCM Enterprise Cloud proposal due to security concerns associated with Ameriprise's highly confidential information and dependence on a fully functioning DCM, dissatisfaction with Versata's personnel, and greatly increased costs.   On September 17, 2012, two business days after receiving Ameriprise's initial reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an alleged "material breach" of the Agreement and demanding that Ameriprise cure such alleged breach within thirty days.   The "breach" letter did not comply with contractual notice requirements.

4

When this demand was made, Versata was fully aware that Ameriprise depends upon DCM and the contractors who customize and maintain it and was fully aware that the "breaches" it alleged were impossible to "cure" within 30 days. Versata nonetheless threatened to terminate the Agreement at the end of the 30-day period and demanded that Ameriprise "immediately stop using all Versata-developed software and immediately must return all of Versata's software and other confidential information" by October 17, 2012. Versata's letter culminated in a demand for an immediate mediation to discuss the issues Versata raised.

Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the resolution of Versata's concerns.   On November 12, 2012, despite Ameriprise's acquiescence to Versata's request for a prompt mediation, and in the midst of the parties' discussions with a third-party mediator, Versata filed this suit against Ameriprise.

Pursuant to the express terms of the Agreement, as well as the parties' course of dealing for the past thirteen years, Ameriprise is entitled to engage third-party contractors to provide software services for DCM who do not compete with Versata in the development of enterprise compensation or configuration software. Ameriprise is entitled to continue to use DCM. Versata's attempt to terminate Ameriprise's use of DCM based on conduct expressly contemplated and permitted by the Agreement and Versata itself for more than a decade constitutes a willful and malicious breach of the Agreement, a breach of the covenant of good faith and fair dealing and threatens to cause irreparable harm to Ameriprise.   Without the ability to use DCM as contemplated in the Agreement, Ameriprise and its advisors, franchisees and their employees will suffer irreparable injury.

Versata's conduct in wrongfully threatening to terminate the Agreement constitutes wrongful termination and a breach of the Agreement.   The conduct is a willful and malicious act within the meaning of Article 11 of the Agreement.   With respect to the DCM version 3.9, Versata has also breached specific warranties and escrow provisions of the Agreement, as fully set forth in Ameriprise's Counterclaim.   As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to several express contractual remedies including but not limited to (1) a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement; (2) delivery and use of all escrowed versions of DCM and all related documentation; (3) to obtain from the escrow agent and/or Versata, all "source code . . ., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."; (4) to decompile, disassemble, or reverse engineer the escrowed code and documentation; and (5) to obtain from the escrow agent and/or Versata, and to use without constraint, all versions of DCM and all related documentation that have been escrowed or that Versata had a duty to place in escrow.

Ameriprise also incorporates by reference its Answer and Counterclaim, as each may be amended from time to time.

5

**d.      The amount and any method of calculating economic damages.**

<u>RESPONSE</u>:

      Ameriprise cannot be fully compensated by an award of economic damages in this matter.  Thus, Ameriprise is seeking declaratory, temporary, and permanent injunctive relief to enforce and preserve its rights pursuant to the Agreement.  In addition to injunctive relief, Ameriprise also seeks enforcement of the contractual remedies above noted including but not limited to a perpetual license and access to the source code.  Ameriprise also seeks direct damages resulting from Versata's willful and malicious material breach of the Agreement, including but not limited to the increased costs associated with maintenance, extension and modification of DCM.  The amount of damages will be proven at trial.  Ameriprise also seeks its attorneys' fees and costs pursuant to Texas Civil Practice and Remedies Code § 37.09 and § 38.01, *et seq.*, and other applicable law.

**e.      The name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case.**

<u>RESPONSE</u>:

      Bryan P. Doherty – Vice President at Ameriprise Financial, Inc. (responsible for management of the system at Ameriprise that uses the DCM software ("DMU") from July 21, 2012 to present).  Contact through Ameriprise counsel at Dorsey & Whitney.

      Ken Bridgeman – Vice President at Ameriprise Financial, Inc. (responsible for management of DMU from December 2008 through July 21, 2012).  Contact through Ameriprise counsel at Dorsey & Whitney.

      Ryan Macomb – Senior Director at Ameriprise Financial, Inc. (involved in working on DMU since approximately 2000).  Contact through Ameriprise counsel at Dorsey & Whitney.

      Deep Kulshreshtha – Tech Lead at Infosys Technologies, Ltd. (responsible for understanding business requirements and helping the team code per the requirements)

      Shashank Sagar – Infosys Technologies, Ltd.

      Noumit Pathak – software engineer / program analyst at Infosys Technologies, Ltd.

      Sunil Kadumata – Technology Lead at Infosys Technologies, Ltd.

      Leela Kaza – financial services at Versata Software, Inc.

      Tushar Jasrotia – Versata Software, Inc.

1001108

Christopher Brandon Smith – former COO of Trilogy Development Group

Abhinesh Sikka – Software Developer at Versata Software, Inc.

Chris Strayhorn – former Vice President of Products – Versata Software, Inc.

Hemant Shah – Senior Program Director in the Financial Services Business Unit at Versata Software, Inc.

Scott Brighton – CEO of Versata Software, Inc.

**f.     For any testifying expert:**
**(1) the expert's name, address, and telephone number;**
**(2) the subject matter on which the expert will testify;**
**(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;**
**(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:**
**(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and**
**(B) the expert's current resume and bibliography.**

RESPONSE:

Ameriprise expects to provide testimony from Dr. John Collins and will provide further disclosures at the appropriate time.

**g.     Any indemnity and insuring agreements described in Rule 192.3(f).**

RESPONSE:

There is an indemnification agreement between Ameriprise and Infosys.

**h.     Any settlement agreements described in Rule 192.3(g).**

7

RESPONSE:

    None.

**i.    Any witness statements described in Rule 192.3(h).**

RESPONSE:

    None.

**j.    In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.**

RESPONSE:

    Not applicable.

**k.    In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.**

RESPONSE:

    Not applicable.

**l.    The name, address, and telephone number of any person who may be designated as a responsible third party.**

RESPONSE:

    None at this time.

1001108

# EXHIBIT H

NO. D-1-GN-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

**PLAINTIFFS' NOTICE OF INTENTION TO TAKE
ORAL AND VIDEOTAPED DEPOSITION OF DEFENDANTS
AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC. AND
AMERICAN ENTERPRISE INVESTMENT SERVICES, INC.**

TO:   Defendants, by and through their attorneys of record, Peter M. Lancaster and Heather D. Redmond, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402-1498; and Steve McConnico and Christopher D. Silco, Scott, Douglass & McConnico, LLP, 600 Congress Avenue, Suite 1500, Austin, Texas 78701.

Please take notice that, under Texas Rule of Civil Procedure 199, Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development, Inc. (collectively, "Versata") will take the oral and videotaped deposition of the Corporate Representative of Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc. and American Enterprise Investment Services, Inc. (collectively, "Ameriprise") beginning at 9:00 a.m. on Friday, June 28, 2013, at the offices of Scott, Douglass & McConnico, LLP, 600 Congress Avenue, Suite 1500, Austin, Texas 78701.

Please take further notice that the Corporate Representative will provide testimony on the subjects attached as Exhibit 1.

Henjum Goucher will stenographically record the deposition, which will also be videotaped.  The deposition will continue from day to day until completed.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via hand-delivery and/or via facsimile and/or via regular U.S. Mail and/or via electronic mail on June 7, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

Benjamin F. Foster

## DEFINITIONS AND INSTRUCTIONS

The following definitions shall apply to these requests:

1.     "Defendants", "Ameriprise", "you", "your", "yours" means, unless otherwise specified in a particular request, Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment Services, Inc., and any parent companies, subsidiaries, affiliates, predecessor in interest, successor in interest, directors, officers, employees, agents and other representatives, including attorneys, of Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment Services, Inc., and each other person acting or authorized to act on behalf of Defendants.

2.     "Versata" and "Plaintiffs" mean Plaintiffs Versata Software, Inc., f/k/a, Trilogy Software, Inc.; and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc., individually and collectively, as well as any employee, agent, representative, affiliate, predecessor in interest, successor in interest, parent, or subsidiary of Versata Software, Inc., f/k/a, Trilogy Software, Inc.; and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. and each person acting or having actual or apparent authority to act on behalf of Versata Software, Inc., f/k/a, Trilogy Software, Inc.; and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc.

3.     An "affiliate" of a specific person means another person that directly, or indirectly through one or more intermediaries, controls or owns, is controlled or owned by, or is under common control or ownership with, the person specified.  For purposes of this definition, "own" means to hold the power to vote five percent or more of the outstanding voting securities of the person and "control" means to hold either the legal right or practical ability to direct the actions of another person.

4.     "DCM" means the software product know as Distribution Channel Management and licensed at any time to Ameriprise.

# EXHIBIT 1

## SUBJECTS FOR WHICH CORPORATE REPRESENTATIVE TESTIMONY IS SOUGHT FROM PLAINTIFFS

1) The factual basis for Ameriprise's breach of warranty counterclaim. This topic includes but is not limited to, what parts of the DCM software Ameriprise contends are subject to claims, encumbrances, restrictions and/or claims of third parties as described in paragraph 40 of Ameriprise's counterclaims and what the nature of those third party claims are.

2) The factual basis of Ameriprise's wrongful termination claim. This topic includes but is not limited to what facts underlie the alleged breach of sections 6.1, 6.6, 6.7 and 8.1 of the Master License Agreement.

3) The factual basis of Ameriprise's constructive trust claim. This topic includes but is not limited to what facts underlie the allegation that "The current version of DCM is as much the work product of Ameriprise as of Versata." And the factual basis for the allegation that Versata owes fiduciary duties to Ameriprise.

4) The factual basis of Ameriprise's breach of the escrow agreement. This topic includes but is not limited to Ameriprise's actions with respect to escrow back in 1999 and the steps, if any, that Ameriprise has taken to provide notice to Versata or to cooperate with Versata in establishing an escrow account.

5) The various notices of breach that Ameriprise received from Versata and Versata's lawyers. Including Ameriprise's efforts to investigate and cure these breaches.

6) Ameriprise's knowledge and investigation regarding Infosys's status as a permitted contractor.

7) Ameriprise's investigation into decompilation and the results of that investigation.

8) The factual basis for Ameriprise's claim that Versata either authorized decompilation or that Versata knew about decompilation.

4820-0321-1796, v. 1

# EXHIBIT I

**Benjamin Foster**

| | |
|---|---|
| **From:** | Benjamin Foster |
| **Sent:** | Friday, June 14, 2013 7:48 PM |
| **To:** | Redmond.Heather@dorsey.com; Lancaster.Peter@dorsey.com |
| **Cc:** | Amir Alavi; Travis Barton; csileo@scottdoug.com |
| **Subject:** | Corporate representative. |

In light of the upcoming depositions and silence from you on issue of Ameriprise presenting a corporate representative, please let us know if you intend to designate either Mr. Macomb or Mr. Doherty on any of the corporate representative topics we previously served upon you. Please provide us this information by 5 pm tomorrow. If you are not designating them and unless you will tell us who you are designating on those topics by close of business Monday our intention is to file a motion to compel on this issue.

Benjamin F Foster - Attorney
Sent from a mobile device.

**CAUSE NO. D-1-GN-12-003588**

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| V. | § | |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| DEFENDANTS | § | |

**NOTICE OF HEARING ON PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF A CORPORATE REPRESENTATIVE AND EXCLUDE EVIDENCE AT TEMPORARY INJUNCTION**

Please take notice that a hearing will be held on June 26, 2013, at 2:00pm on Plaintiffs' Motion to Compel Deposition of a Corporate Representative and Exclude Evidence at Temporary Injunction.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

_/s/ Benjamin F. Foster_
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

McGinnis, Lochridge & Kilgore, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on June 21, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

_/s/ Benjamin F. Foster_____
Benjamin F. Foster

4838-4400-3604, v. 1