# EXHIBIT A
# PART 7 OF 12

AZA Law                    Fax:7136550062          Jun 24 2013 03:26pm P002/006

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| **Plaintiffs,** | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

---

## PLAINTIFF'S MOTION TO QUASH THE ORAL AND VIDEOTAPED DEPOSITION OF KENNETH BRIDGEMAN

---

Plaintiffs file this Motion to Quash the Oral and Videotaped Deposition of Kenneth

Bridgeman served on June 21, 2013 which is noticed to take place in Minneapolis, Minnesota

tomorrow, June 25, 2013, and would show the Court as follows:

1.    The parties are conducting discovery by agreement in advance of a Temporary

Injunction hearing set for July 1, 2013. By agreement, the parties exchanged lists of witnesses for

depositions on May 31, 2013. Defendants did not include Mr. Bridgeman on that list.

2.    The parties have worked to schedule as many depositions as possible in advance

of the Temporary Injunction hearing. In the end, six depositions have occurred or been scheduled

to occur. Perhaps as many as five additional depositions have been discussed between the parties,

and various days have been discussed for each deposition.

3.    Versata originally listed Mr. Bridgeman as someone Versata would like to

depose; however, due to the case schedule, Ameriprise's representations that it does not intend to

call Mr. Bridgeman live at the Temporary Injunction hearing, and because of the difficulty

travelling to Minnesota to take these depositions, Versata decided that this deposition is not necessary prior to the Temporary Injunction hearing.

    4.    On Thursday June 20, 2013, Ameriprise's counsel surprisingly informed counsel for Versata that Mr. Bridgeman had been reached and is available for deposition on Tuesday June 25[1]. Ameriprise noticed Mr. Bridgeman's deposition the very next day. Four days over a weekend is not reasonable notice for a deposition. *See Bloyed v. General Motors Corp.*, 881 S.W.2d 422, 437 (Tex. App.—Texakana 1994). Moreover, counsel for Versata is taking two depositions on Wednesday in Minnesota. Additionally, lead counsel for Versata is attending mediation in an unrelated matter on Tuesday in Delaware therefore Versata is unavailable to travel to Minnesota for a deposition tomorrow and is not willing to conduct the deposition by telephone.

    5.    More fundamentally, written discovery in this case is far from complete. Ameriprise produced an initial round of documents, and late last week produced an additional 150,000 pages of documents. Processing and reviewing this latest production in advance of the depositions on Wednesday is substantially occupying counsel's time. Particularly in light of this witness' status as a former employee, Versata does not want to impose on him more than once. As such, in the interest of the witness's time and the parties' convenience, there should be a single complete deposition of this witness after written discovery is substantially complete. Counsel for Versata is available to depose Mr. Bridgeman on a variety of dates in July or August. However, in order to comply with the rules, Versata will represent to the Court that it is available to conduct this deposition in Minnesota beginning at 9 a.m. on July 15, 2013, or at such other mutually agreeable place and time as the parties may elect.

---

[1] One issue which complicates Mr. Bridgeman's deposition is Ameriprise's continuing evasiveness about whether or not they represent Mr. Bridgeman, who is a former Ameriprise manager. Ameriprise continually refers to him as a third party, and yet can compel him to attend a deposition without the need for a subpoena.

2

6.     Because this motion is filed within three (3) business days of the date the notice was served, this motion objecting to the time/date of the deposition stays the deposition until the motion can be determined by the Court pursuant to Rule 199.4 of the Texas Rules of Civil Procedure.

## PRAYER

For these reasons, Plaintiffs request that the Court quash the deposition of Kenneth Bridgeman.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

*/s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on June 24, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

_/s/ Benjamin F. Foster_
Benjamin F. Foster

4

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## ORDER

The Court has considered Plaintiff Versata Software, Inc.'s Motion to Quash the Oral and Videotaped Deposition of Kenneth Bridgeman, the response and the arguments of counsel, if any, and finds that the motion should be and hereby is GRANTED. It is therefore,

ORDERED that the oral and videotaped deposition noticed for June 25, 2013 is cancelled and shall be rescheduled for a date and time convenient for the witness and all parties.

SO ORDERED ON THIS _____ day of _____, 2013.

_____
JUDGE PRESIDING

4851-8152-9108, v. 1

**CAUSE NO. D-1-GN-12-003588**

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| **PLAINTIFFS** | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| V. | § | |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| **DEFENDANTS** | § | |

## NOTICE OF HEARING ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF NON-PRIVILEDGED DOCUMENT

Please take notice that a hearing will be held on July 1, 2013, at 9:00am on Plaintiffs'

Motion to Compel Production of Non-Privileged Document.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

*/s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

McGinnis, Lochridge & Kilgore, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on June 26, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com


　　　　　/s/ Benjamin F. Foster
　　　　　Benjamin F. Foster

4821-6189-4932, v. 1

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## PLAINTIFF'S MOTION TO COMPEL
## PRODUCTION OF NON-PRIVILEGED DOCUMENT

Plaintiff Versata Software, Inc. ("Versata") files this Motion to Compel the Production of

a Document and Testimony from Defendant Ameriprise Financial, Inc., Ameriprise Financial

Services, Inc., and American Enterprise Investment Services, Inc. (hereinafter collectively

"Ameriprise"), and in support thereof respectfully states:

### I.    Introduction

This motion addresses Ameriprise's assertion of privilege to a document, Bates No.

AMP00046690 to AMP00046694, hereinafter referred to as "The Document."  The Document is

within the scope of discovery provided by the Texas Rules of Civil Procedure.  Tex. R. Civ. P.

192.3(a) (discovery includes nonprivileged matter relevant to the subject matter of the action).

The Document does not fall within the preclusion of discovery of privileged material provided

by Texas Rule of Evidence 503.

### II.    The Document is not Privileged

In order to properly assert privilege, Ameriprise must plead the particular privilege, and

produce evidence to support the privilege through affidavits or testimony.  *Marathon Oil Co. v.*

*Moye,* 893 S.W.2d 585, 589 (Tex. App.—Dallas 1994, no writ); Tex. R. Civ. P. 193.3(B)(1)(withholding party must provide information sufficient to enable the other party to assess the applicability of the privilege).

Ameriprise produced The Document to Versata during the course of discovery in this litigation. When Versata showed that document to Ameriprise's witness and counsel during the deposition of Ryan Macomb.[1] The witness identified himself (not an attorney) as the sender and other non-attorneys as the recipients of the message. Counsel for Ameriprise then requested a brief recess, at the close of which she notified Versata's counsel that they would be clawing back the document (Exhibit 58 to the deposition) as privileged. Counsel did not identify the nature of the privilege asserted. *See* Macomb Dep. Tr. at 15:3-16:1. Counsel questioned the witness regarding the basis for the privilege claim. *See* Macomb Dep. Tr. At 18:21-19:1. The witness stated that the communication was not sent at the direction of an attorney, and that the witness did not recall with certainty whether he was seeking legal advice, nor whether he learned the information in the communication from counsel or other means. *Id.* at 19:3-22:1. Ameriprise has not adduced information sufficient for Versata to assess the privilege, and indeed has adduced information sufficient for Versata to infer that the information is not privileged.

Versata therefore prays that the court review The Document *in camera* in order to assess whether the communication among non-attorneys is somehow privileged, and after so assessing, order Ameriprise to re-produce the document to Versata. *See In re JDN Real Estate-McKinney L.P.,* 211 S.W.3d 907, 926 (Tex. App.—Dallas 2006, no pet.) (court may conduct *in camera* review to determine privilege status of documents ).

---

[1] This deposition, as others in the action, is designated Attorneys' Eyes Only and is therefore not attached to the motion. Counsel will make a copy of the deposition available for the court's review.

### III.    Prayer

Wherefore, Plaintiff Versata prays that this Court order Ameriprise to produce the document bearing Bates No. AMP00046690 to AMP00046694; and that the Court award whatever further relief as the Court deems just, equitable, and appropriate under the circumstances.

.                          Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

 /s/ Benjamin F. Foster
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

3

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on June 26, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

　　　　　　　　　　　　　　　　　　　/s/ Benjamin F. Foster
　　　　　　　　　　　　　　　　　　　Benjamin F. Foster

4

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
|       Plaintiffs, | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## ORDER

The Court has considered Plaintiff Versata Software, Inc.'s Motion to Compel Production of Document AMP00046690 to AMP00046694, the response and the arguments of counsel, if any, and finds that the motion should be and hereby is GRANTED.

It is therefore, ORDERED that Defendants produce an unredacted copy of Document AMP00046690 to AMP00046694.

SO ORDERED ON THIS _____ day of _____, 2013.


_____

JUDGE PRESIDING

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| V. | § | |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| DEFENDANTS | § | |

## AMENDED NOTICE OF HEARING ON PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF A CORPORATE REPRESENTATIVE AND EXCLUDE EVIDENCE AT TEMPORARY INJUNCTION

Please take notice that a hearing will be held on July 1, 2013, at 9:00am on Plaintiffs'

Motion to Compel Deposition of a Corporate Representative and Exclude Evidence at

Temporary Injunction.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

 */s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by facsimile and email on June 26, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

_/s/ Benjamin F. Foster_____
Benjamin F. Foster

4829-8371-6372, v. 1

2

NO. D-1-GN-12-003588

VERSATA SOFTWARE, INC., f/k/a § IN THE DISTRICT COURT
TRILOGY SOFTWARE, INC., and VERSATA §
DEVELOPMENT GROUP, INC., f/k/a §
TRILOGY DEVELOPMENT GROUP, INC., §
§
Plaintiffs, §
§
v. §   TRAVIS COUNTY, TEXAS
§
AMERIPRISE FINANCIAL, INC., §
AMERIPRISE FINANCIAL SERVICES, INC., §
AMERICAN ENTERPRISE INVESTMENT §
SERVICES, INC., §
§
Defendants. §   53rd JUDICIAL DISTRICT



## STIPULATED TEMPORARY INJUNCTION ORDER

The parties to the above-captioned action have stipulated to a temporary injunction while

litigation between the parties remains pending.  Therefore, based on the parties' stipulation, this

Court issues the following temporary injunction:

1.      Ameriprise Financial, Inc. ("Ameriprise"):  (a) by no later than June 12, 2013,

shall disable the user IDs and passwords that Infosys Technologies, Ltd. ("Infosys") employees

and contractors (the "Infosys personnel") have used to gain access to Ameriprise's code

repository in which Ameriprise houses Versata Software Inc.'s ("Versata") "Software," as that

term is defined in the parties' October 4, 1999 Master Licensing Agreement (the "MLA") (the

"Credentials"); (b) shall not disclose its Credentials to any Infosys personnel; (c) shall not allow

Infosys personnel retained by Ameriprise to directly manipulate Versata's Software within the

possession or control of Ameriprise; (d) shall not decompile Versata Software; and (e) by no

later than December 20, 2013, shall cease using Infosys personnel who previously had such

Credentials to train or otherwise advise Ameriprise employees with respect to Versata's Software

(the "Training Period").  Ameriprise shall, whether directly or indirectly through Infosys,

maintain during the Training Period a weekly log containing the following information whenever Infosys personnel train or consult with Ameriprise personnel with respect to the Versata Software: (i) the name of the Infosys personnel involved; (ii) the date such training or consulting was provided; (iii) a general description of the training or advice given; and (iv) the specific Versata Software module involved, if any.

2.      Versata shall continue to provide consulting, maintenance, development and support services to Ameriprise in accordance with the MLA, and the October 24, 2011 Master Services Agreement between Versata and Ameriprise for the Distribution Channel Management ("DCM") software currently being used by Ameriprise.  Ameriprise shall compensate Versata for these services in accordance with such agreements.  Versata shall also cause its affiliated entities currently under contract with Ameriprise to continue to provide consulting, maintenance, development, and support services to Ameriprise in accordance with the terms and conditions of such agreements between Ameriprise and any such entities.

The parties consent to this Court's issuance of this injunction, which shall be without prejudice to any final determination by the Court of rights of the parties in this, or any other, litigation.

SO ORDERED:

Dated: _____ 27, 2013.

Stipulated by:

Dated:  June 27, 2013.

By:_____

Amir Alavi (SBN 00793239)
Steven J. Mitby (SBN 27037123)
Benjamin F. Foster (SBN 24080898)
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI
  & MENSING, PC
1221 McKinney Street, Suite 3460
Houston, TX  77010
Phone: (713) 655-1101

Travis Barton (SBN 00790276)
MCGINNIS, LOCHRIDGE & KILGORE, LLP
600 Congress Avenue, Suite 2100
Austin, TX  78701
Phone: (512) 495-6000

*ATTORNEYS FOR PLAINTIFFS*

Dated:  June 27, 2013.

By:_____

Peter M. Lancaster (SBN 0159840)
Heather D. Redmond (SBN 0313233)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Phone: (612) 340-2600

Stephen E. McConnico (SBN 13450300)
Christopher D. Sileo (SBN 2402977)
SCOTT, DOUGLASS & McCONNICO, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-3234
Phone: (512) 495-6300

*ATTORNEYS FOR DEFENDANTS*

Page 3

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |
| | § | |
| **Defendants.** | § | 53rd JUDICIAL DISTRICT |

## PLAINTIFFS' JOINDER IN SUPPORT OF
## AGREED TEMPORARY MOTION TO SEAL COURT RECORDS

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development  Group, Inc. (collectively "Versata") respectfully file this Joinder in Support of the Agreed Temporary Motion to Seal Court Records filed by Defendants Ameriprise  Financial,  Inc.,  Ameriprise  Financial  Services,  Inc.,  and  American  Enterprise Investment Services, Inc. and would show the Court as follows:

### BACKGROUND

1.     On June 19, 2013, Defendants filed an Agreed Temporary Motion to Seal Court Records ("Motion") requesting that the Court enter a Temporary Order sealing the following documents:

a.     A document entitled "DCM 3.9 Executive Summary" produced in this case by Plaintiffs and labeled "Confidential" pursuant to the Agreed Protective Order, and which is attached to the Affidavit of Richard Ryan Macomb, which was filed as Exhibit B to the Response to Summary Judgment.

1

b.    The parties' "Master License Agreement" and associated Schedules, which are attached to the Affidavit of Richard Ryan Macomb, which was filed as Exhibit B to the Response to Summary Judgment.

c.    Excerpts of the Deposition of Scott Brighton taken on June 13, 2013, as well as Deposition Exhibit No. 16, which were filed as Exhibit D to the Response to Summary Judgment.

2.    The Motion was supported by the affidavit of Christopher Sileo, which established that he had conferred with opposing counsel regarding the above-described documents and that opposing counsel (the undersigned) believed that such documents must be sealed to protect their confidential nature. The affidavit also sets forth the reasons necessitating the immediate issuance of a temporary sealing order.

3.    Versata agreed to the Motion.

4.    On June 19, 2013, this Court signed its Order on Agreed Temporary Motion to Seal Court Records ("Order"), sealing the above-described records and ordering the Clerk of Court to keep the sealed documents confidential and made available to the public only as authorized by the Court. The Order set a hearing on the Motion for July 3, 2013.

## ARGUMENT

5.    Versata agrees with Defendants that the above described documents contain confidential information regarding the software and business pricing information of Versata and hereby formally joins in the Motion filed by Defendants. *See* Affidavit of Travis Barton attached hereto. The above described documents have been designated as Confidential or Attorneys' Eyes Only pursuant to the Protective Order entered in this case and in a related case in federal court styled Case No. 1:10-CV-00792-SS; *Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc. v. Infosys Technologies Ltd.*; In the United States District Court, Western District of Texas, Austin Division. *Id.*

2

6.      Because the documents at issue contain information regarding Versata's confidential and proprietary business pricing and software, Versata has a serious, specific and substantial interest in sealing these documents to prevent harm to its competitive standing in the event a competitor were to gain access to this information. *Id.*

7.      Versata's interest in sealing these documents clearly outweighs (1) the presumption of openness applied to court records as defined in Tex. R. Civ. P. 76a(2) and (2) any probable adverse effect that the sealing will have on the general public health or safety. *Id.*; Tex. R. Civ. P. 76a(1)(a). No less restrictive means than permanently sealing these records will adequately and effectively protect the specific interest asserted. Affidavit of Travis Barton; Tex. R. Civ. P. 76a(1)(b).

## PRAYER FOR RELIEF

Versata respectfully requests that the Court Order that the following documents be permanently sealed:

a.      A document entitled "DCM 3.9 Executive Summary" produced in this case by Plaintiffs and labeled "Confidential" pursuant to the Agreed Protective Order, and which is attached to the Affidavit of Richard Ryan Macomb, which was filed as Exhibit B to the Response to Summary Judgment.

b.      The parties' "Master License Agreement" and associated Schedules, which are attached to the Affidavit of Richard Ryan Macomb, which was filed as Exhibit B to the Response to Summary Judgment.

c.      Excerpts of the Deposition of Scott Brighton taken on June 13, 2013, as well as Deposition Exhibit No. 16, which were filed as Exhibit D to the Response to Summary Judgment.

Versata further requests that this Court grant Versata any other relief, at law or in equity, to which it may be entitled.

Date:  07/02/2013

Respectfully submitted,

_____

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062


ATTORNEYS FOR PLAINTIFFS

4

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record on July 2, 2013 in the manner described below:

***Via Facsimile and Email***
Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2600
(612) 340-2868 Fax
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

***Via Hand Delivery and Email***
Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 495-6300
(512) 474-0731 Fax
smcconnico@scottdoug.com
csileo@scottdoug.com

_____
Travis Barton

# AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned notary, on this day personally appeared Travis Barton, who, being by me first duly sworn, stated upon his oath as follows:

1.  My name is Travis Barton. I am over 21 years of age. I am competent to make this affidavit. I have personal knowledge of the facts set forth in this Affidavit and they are true and correct. I am a partner at McGinnis, Lochridge & Kilgore, LLP, which is one of the counsel for Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. in this case.

2.  I have reviewed the documents sought to be sealed in the Agreed Temporary Motion to Seal Court Records. Those records include confidential and proprietary information of Versata pertaining to its software and business pricing information.

3.  Each of these documents have been designated as Confidential or Attorneys' Eyes Only pursuant to the Protective Order entered into in this case and in a related case in federal court styled Case No. 1:10-CV-00792-SS; *Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc. v. Infosys Technologies Ltd.*; In the United States District Court, Western District of Texas, Austin Division.

4.  Because the documents at issue contain information regarding Versata's confidential and proprietary business pricing and software, Versata has a serious, specific and substantial interest in sealing these documents to prevent harm to its competitive standing in the event a competitor were to gain access to this information.

5.  Versata's interest in sealing these documents clearly outweighs the presumption of openness applied to court records as defined in Tex. R. Civ. P. 76a(2), and any probable adverse effect that the sealing will have on the general public health or safety.

6.  Given that the documents at issue have been filed with the Court as exhibits to Defendants' Response to Plaintiffs' Motion for Summary Judgment, no less restrictive means than permanently sealing these records will adequately and effectively protect Versata's interest in maintaining the confidentiality of these records.

Further affiant sayeth not.

TRAVIS BARTON

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, on this _1st_ day of July, 2013.

Annette M Weingartner
Notary Public
State of Texas
My Commission Expires
July 26, 2013

Notary Public in and for
The State of TEXAS

7

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |
| | § | |
| **Defendants.** | § | 53rd JUDICIAL DISTRICT |

## ORDER PERMANENTLY SEALING DOCUMENTS

On July 3, 2013, this Court heard the parties' Agreed Temporary Motion to Seal Court Records filed by Defendants and Plaintiffs' Joinder in Support of Agreed Temporary Motion to Seal Court Records (collectively "Motions"). After reviewing the Motions, the evidence, and hearing arguments of counsel, the Court finds that the requirements of Rule 76a for permanently sealing the documents described in the Motions has been satisfied and that the Motions of the parties should be and is hereby GRANTED.

The Court finds that Defendants in the above-described and numbered cause have filed the following documents ("Subject Documents") into the Court record:

    a.    A document entitled "DCM 3.9 Executive Summary" which is attached to the Affidavit of Richard Ryan Macomb, which was filed as Exhibit B to the Response to Summary Judgment.

    b.    A document entitled "Master License Agreement" and associated Schedules, which are attached to the Affidavit of Richard Ryan Macomb, which was filed as Exhibit B to the Response to Summary Judgment.

1

c.   Excerpts of the Deposition of Scott Brighton taken on June 13, 2013, as well as Deposition Exhibit No. 16, which were filed as Exhibit D to the Response to Summary Judgment.

The Court finds that attached to the Subject Documents or discussed therein is information that contain confidential and proprietary information of Versata pertaining to its software and business pricing information and that such documents have been designated as Confidential or Attorneys' Eyes Only pursuant to the Protective Order entered into in this case.

The Court further finds that Versata has a serious, specific and substantial interest in sealing these documents to prevent harm to its competitive standing in the event a competitor were to gain access to this information.

The Court further finds that Versata's interest in sealing these documents clearly outweighs the presumption of openness applied to court records as defined in Tex. R. Civ. P. 76a(2), and any probable adverse effect that the sealing will have on the general public health or safety.

The Court further finds that given that the documents at issue have been filed with the Court as exhibits to Defendants' Response to Plaintiffs' Motion for Summary Judgment, no less restrictive means than permanently sealing these records will adequately and effectively protect Versata's interest in maintaining the confidentiality of these records.

The Court further finds that the parties have followed the procedures in Rule 76a, including the posting of notices, serving all parties and filing notice with the Texas Supreme Court.

IT IS THEREFORE ORDERED that the Subject Documents are hereby permanently sealed and that the Clerk of the Court shall permanently seal the Subject Documents in accordance with this Order.

Signed July 3, 2013

Judge Orlund

2

Filed
13 July 24 P5:36
Amalia Rodriguez-Mendoza
District Clerk
Travis District
003588

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v | § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Pursuant to Texas Rule of Civil Procedure 166a(c), Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively, "Ameriprise") move for partial summary judgment declaring as a matter of law that certain software licensed to Ameriprise by Plaintiffs Versata Software, Inc. and Versata Development Group, Inc. (together, "Versata") is subject to and governed by the attached open source license, and declaring that Ameriprise is therefore entitled, pursuant to the open source license, to obtain and freely use the software source code in accordance with the terms and conditions of that open source license.

## I.    SUMMARY

Versata obtained a third party's software and incorporated that software, referred to as the Ximpleware parser, into software sold by Versata called DCM Version 3.9. The Ximpleware

Defendants' Motion for Partial Summary Judgment (Redacted)

software that Versata downloaded and incorporated into DCM Version 3.9 is subject to an "open source" software license that states, in part:

> The licenses for most software are designed to take away your freedom to share and change it.  By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software – to make sure the software is free for all users …
>
> To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights.  These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it . . . [including:]
>
> - to cause any works based on the Program to be licensed as a whole at no charge to third parties under the terms of the GNU GPL; and
>
> - to provide or offer in writing to provide to recipients "the complete corresponding machine-readable source code" for any Program or work based on a Program.

By choosing to incorporate Ximpleware's open source code into its product and distribute it as a single, integrated package, Versata subjected DCM Version 3.9 to the terms and conditions of Ximpleware's open source license.  Under the explicit, unambiguous terms of the open source license, Ameriprise is entitled to obtain the source code for DCM Version 3.9 in its entirety and to use it freely, consistent with the terms of the open source license.

## II.   FACTS

### A.   Background on the Parties and Their Dispute

Ameriprise is a financial planning and services company. Am. Petition ¶15.  Ameriprise subsidiaries serve individual investors' and institutions' needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance.  *Id.*  Ameriprise has relationships with thousands of advisors throughout the United States.

2

In 1999 Ameriprise and Versata entered into a Master License Agreement ("MLA") pursuant to which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license" to a software product called "Distribution Channel Management" or "DCM." Redmond Ex. A.  Over succeeding years and pursuant to the MLA, Ameriprise has acquired and installed upgrades to DCM, most recently acquiring and installing DCM Version 3.9 beginning in 2011.

In this action Versata wrongly alleges that Ameriprise breached the MLA by using two contractors, Infosys Technologies, Ltd. ("Infosys") and Tata Consultancy Services ("TCS"), to perform development and maintenance services relating to DCM in the Ameriprise computing environment.  Versata threatens to terminate Ameriprise's license to use DCM, even though it is an essential component of compensation and recordkeeping operations for all Ameriprise personnel registered to perform securities work, and even though Ameriprise was explicitly granted the right under the MLA to use contractors like Infosys and TCS.  Ameriprise has filed counterclaims alleging, among other claims, claims for breach of contract and breach of the warranties contained in the MLA and applicable to DCM Version 3.9, which Versata had delivered to Ameriprise in August 2011.

**B.      Open Source Software in Versata's DCM Version 3.9**

Although Versata originally claimed that it owned all rights in DCM Version 3.9, and although it denied in multiple discovery responses that it had licensed any components of DCM from third parties, Versata has now been forced to admit that DCM contains dozens of open source software components.  Redmond Ex H (deposition exhibit 34).  Open source software is

3

computer software publicly available in source code (human-readable) form that can be used without charge and for any purpose, subject to the terms and conditions of the relevant open source license. Collins Decl. ¶ 5. Virtually all open source licenses require a subsequent distributor of the open source software (like Versata) to notify the recipient (like Ameriprise) of the existence of open source software in the package delivered to the recipient. Most open source licenses require the subsequent distributor of the software to provide or make available the source code to any recipients of the software and prohibit the distributor from imposing additional restrictions on the recipients' use of the software. A few open source licenses are "viral" licenses, in that their terms and conditions apply to any proprietary program that contains the open source software, even if other portions of the program were otherwise considered proprietary and were developed separately from the open source software with which it is integrated. *Id.*

One prominent type of open source license, the General Public License or "GPL," encompasses these viral features:

- A requirement to give the recipient notice of the existence of the GPL-licensed software in the combined work (GPL §1);

- A requirement that the entire package containing the open source software is to be licensed as a whole under the terms and conditions of the GPL (*Id.*, §§2(b), 4 and 6); and

- A requirement that the user/distributor must provide or make available to the recipient the source code for the combined package, may not restrict the customer's use of the modified open source software, and must comply with any additional terms of the open source license (*Id.*, §§3, 5 and 6).

*See* Collins Ex. B.

4

After Versata sued Ameriprise, claiming that DCM was entirely Versata's own proprietary and confidential software, Ameriprise learned of the extent of open source software embedded within DCM. Versata documents establish that DCM is nowhere near entirely owned by Versata, because nearly one hundred third party open source programs have been incorporated into DCM. Redmond Ex. H (deposition exhibit 34). One example of open source software in DCM, identified on an internal list of open source components, is a file called "vtd-xml.jar," an XML parser offered by a company called Ximpleware.[1]  Ximpleware's XML parser is open source software that enables DCM to read and parse XML files pulled from external sources, so that DCM can understand, manipulate, and use the contents of such files. The current DCM version installed at Ameriprise, DCM Version 3.9, incorporates the Ximpleware parser into multiple portions of DCM code. Collins Decl. ¶ 11. The Ximpleware parser is highly integrated into DCM; indeed, more than half of the hundreds of component files of DCM that appear to originate with Versata depend directly or indirectly on the Ximpleware parser. *Id.*

Ximpleware is an open source program readily downloadable from the Internet. Its use is conditioned upon and governed by an open source license, specifically Version 2 of the GNU GPL. Collins Decl. ¶¶ 8-9 and Ex. B. The GPL is an open source software license written and

---

[1] "XML" refers to "eXtensible Markup Language," a language for communicating structured data in a format that is both human-readable and machine-readable. An XML "parser" is a decoder that converts the human readable textual form of code into a binary data structure, commonly in the form of a tree. Ximpleware's parser is open source software that enables a program to read and parse XML files pulled from external sources, so that the program can understand and manipulate the contents of such files. Parsers are critical to making large enterprise software programs work, because they provide for a universal exchange language that ties together various pieces of a large, complex system. Collins Decl. ¶ 7.

promulgated by the Free Software Foundation principally to ensure two things: that parties cannot misappropriate the work product of open source software developers for commercial gain without severe consequences; and to ensure that all recipients of GPL-licensed software continue to have access to at least its source code, and remain free to use and modify the source code for their own purposes without restriction. The GPL states:

> The licenses for most software are designed to take away your freedom to share and change it. By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software – to make sure the software is free for all users …
>
> Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software …, that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free programs; and that you know you can do these things.
>
> To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights. These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.

Collins Ex. B, Preamble. Among the obligations that Versata accepted to be able to incorporate the Ximpleware parser into DCM were the following obligations:

- to "conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty;"

- to "give any other recipients of the Program a copy of [the GPL] along with the Program;"

- to cause any works based on the Program to be licensed as a whole at no charge to third parties under the terms of the GPL; and

- to provide or offer in writing to provide to recipients "the complete corresponding machine-readable source code."

Collins Ex. B §§ 1, 2, 3. When Versata delivered DCM Version 3.9 to Ameriprise, it violated

6

each of these obligations.[2]

### C. Versata's Discovery Responses Confirm That It Lacks Any License from Ximpleware Other Than the GPL

Early in this case, Ameriprise served interrogatories and document requests, and notified Versata of its intent to take a corporate deposition. Redmond Decl. ¶ 3. Among its requests, Ameriprise asked Versata:

- To "[i]dentify all third-party licensors of any components of DCM." (Interrogatory 7);

- To produce "[a]ll licenses covering or relating to DCM code or components of DCM code effective at any time after October 1999." (Document Request 13); and

- To make available a Versata representative to testify regarding "[a]ll licenses covering, or relating to, DCM code or components of DCM code" (Deposition Topic 2) and regarding "[t]he genesis of the code included in DCM" (Topic 3).

Redmond Exs. B, C, D.

In its responses to those discovery requests, Versata initially objected and refused to provide responsive information or documents. Redmond Exs. C, D. Versata also refused to supply the corporate representative whose testimony Ameriprise had first requested on January 30, 2013. Redmond Decl. ¶ 6. Ameriprise moved to compel responses, and on May 8, 2013, the Court overruled Versata's objections and ordered Versata to identify its third-party licensors of components of DCM (Interrogatory 7), to produce all licenses from such licensors (Document

---

[2] Versata's failure to comply with the GPL when it delivered DCM Version 3.9 also breached its MLA warranty that, among other things, "Licensor has the right to furnish the Products, Documentation, and other materials … free of all liens, claims, encumbrances and other restrictions… ." Redmond Ex. A § 8.1.

Defendants' Motion for Partial Summary Judgment (Redacted)

Request 13), and to designate witnesses to testify on the topics in Ameriprise's notice. Redmond Ex. E. Although the Court's Order required Versata's compliance within three days, the parties agreed that Versata could have two weeks – until May 22, 2013 – to respond and produce documents. Redmond Decl. ¶ 7.

In its May 22 responses, Versata identified no open source licensors. Instead, Vesata represented that the *only* licensor of any component of DCM was Versata's Dubai-based affiliate G-Dev FZ-LLC:

Interrogatory No. 7:  Identify all third-party licensors of any components of DCM.

Response:  *Redacted Pursuant to Agreed Protective Order*

Redmond Ex. F.  Consistent with its interrogatory response, Versata's May 22 production of more than 175,000 documents contained only *one* license agreement – the agreement between Versata and G-Dev.  Redmond Decl. ¶ 8.  On the morning of June 14, 2013, immediately before the court-ordered deposition of Versata's corporate representative, Versata produced two additional agreements with companies Versata has used for development services – Accolite, Inc. and oDesk.  Redmond Ex. H at 46-52.  Versata's representative, designated to testify on behalf of the company as to "all licenses covering, or relating to, DCM code or components of DCM," could not identify any other third party hired to provide development work in connection with DCM and could not identify any additional contracts or agreements with such developers or any other contributor.  Redmond Ex. H at 55-57.  Although he identified several examples of third party software included in DCM, Versata's corporate representative claimed to be unfamiliar with Ximpleware:

8

Q: Are you aware of there being XimpleWare code within DCM?

A: *Redacted Pursuant to Agreed Protective Order*

Q: XimpleWare, like Simpleware except the first letter is X.

A: *Redacted Pursuant to Agreed Protective Order*

Redmond Ex. H at 88-90.

More than two months after the Court ordered Versata to identify all of its licensors, and to produce all of its license agreements with such licensors within three days, Versata still has not produced any evidence that it has a license agreement with Ximpleware other than the GPL attached as Exhibit B to the Collins Declaration.  Redmond Decl. ¶ 10.

## III.   ARGUMENT

### A.   Summary Judgment Standard

Under Rule 166a(c), summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Fort Worth Osteopathic Hosp. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).  After the movant produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence creating a fact issue.  *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).  An issue is conclusively established, and will support entry of summary judgment, when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn.  *Triton Oil & Gas Corp. v. Marine Contractors and Supply, Inc.*, 644 S.W.2d 443, 445 (Tex. 1982); *Rakowski v. Committee to Protect Clear Creek Village Homeowner's Rights and Preserve Our Park*, 252 S.W.3d 673, 675-76 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

9

Versata now admits that DCM Version 3.9 incorporates a variety of open source software, including the file containing the Ximpleware parser.  In fact, Versata even concedes that its DCM Version 3.9 is inextricably linked with the Ximpleware parser.  Despite an interrogatory, a document request, and a corporate deposition requesting that Versata identify, produce, and testify regarding its third party licenses, and despite a Court order compelling Versata to do so, Versata has provided no evidence that its use of the open source Ximpleware parser was subject to any license other than the GPL.   As a matter of law, the GPL governs Versata's distribution of DCM Version 3.9, and Ameriprise is entitled to obtain the source code for DCM Version 3.9 from Versata without constraints other than the restrictions of the GPL.

**B.**     **Use of Ximpleware's Open Source Software is Governed by the GPL**

Ximpleware's XML parser is a third party, open source software program readily downloadable from the Internet.  Its use is conditioned upon and governed by the GPL.  *See* Collins Decl. ¶ 8 and Ex. B § 0.  The GPL is an enforceable contract.  The United States Court of Appeals for the Federal Circuit has determined that open source licenses are enforceable not only under contract law, but also under copyright law.  "Copyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material." *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008).  Thus, the developers of open source software obtain copyright protection in their software code, and they offer the GPL as a license to third parties allowing them to copy, distribute, and modify the software *so long as* the third parties agree to the license terms in the relevant open source license.  *See* Collins Ex. B, Preamble.

10

Any third party who chooses to copy, distribute, or modify software to which the GPL applies is bound by the terms and conditions of the GPL.  The GPL makes this consequence abundantly clear:

> You are not required to accept this License, since you have not signed it. However, nothing else grants you permission to modify or distribute the Program or its derivative works.  These actions are prohibited by law if you do not accept this License.  Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.

Collins Ex. B § 5.  *See also id.*, Preamble ("These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it."); *id., Preamble* ("The precise terms and conditions for copying, distribution and modification follow.").  Courts have recognized this consequence of the use of open source software governed by the GPL:

> One publicly available program used ... was ... [specified] open source code ... .  Any user of that code is, however, bound by the terms of the GNU General Public License (GPL).  The GPL puts restrictions on the modification and subsequent distribution of freeware programs.  Essentially, once the programs are freely released into the public domain, the creators intend for them to stay free.

*Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 697-98 (N.D. Ill. 2004)

Thus, when Versata copied, modified, and distributed the Ximpleware parser as part of DCM Version 3.9, it did so pursuant to the terms and conditions of the GPL and not the MLA.

## C.   Versata's DCM Version 3.9 Is A "Work Based On The Program" Under the GPL, and Ameriprise is Therefore Entitled to a Declaration that DCM Version 3.9 is Governed by the GPL

The GPL applies to copying, modification, and distribution of the "Program" (here, the Ximpleware software) and also to copying, modification, and distribution of any "work based on

11

the Program." Collins Ex. B § 0.  Under the GPL, a work is "based on the Program" if it

"contains the Program or a portion of it, either verbatim or with modifications."  Collins Ex. B §

0.  The requirements of the GPL "apply to the modified work as a whole."  *Id.* § 2.  It is

undisputed that DCM Version 3.9 incorporates the Ximpleware parser and is therefore a "work

based on the Program" under the GPL.  *See* Redmond Ex. H (deposition ex. 34); Collins Decl. ¶

11.

      DCM is a single integrated product, provided to the customer on a disk or downloaded by

the customer from an online secure system.  Redmond Ex. H at 119.  DCM Version 3.9

incorporates Ximpleware into multiple portions of DCM code.  Versata's corporate

representative testified that DCM is a single, integrated whole, all of whose files are interrelated:

> Q: But you can't just pluck [open source code] out of DCM?
>
> A: *Redacted Pursuant to Agreed Protective Order*
>
>
> Q:  And is it complicated just because of all the connections between this code and other code within DCM?
>
> A: *Redacted Pursuant to Agreed Protective Order*
>
>
> Q:  Could you identify any particular open source code that would be easier to pull out than others or are they all integrated?
>
> A: *Redacted Pursuant to Agreed Protective Order*

Redmond Ex. H at 113-114; *see also id.* at 113 (open source is "an integral part and the code is

well merged"); *id.* at 118 ("It is integrated software, yes.").  The integration of Ximpleware's

parser into DCM is further illustrated by Dr. Collins' analysis showing that, of 701 component parts of DCM that appear to originate with Versata, 362 depend directly or indirectly on the Ximpleware parser. Collins Decl. ¶ 12. If Ximpleware's software were to be removed from Version 3.9 of DCM, DCM would not function. Versata has admitted that fact:

> Q: And I gather what you were saying … is that if you pulled a few packages out of this set of packages it would have an effect on other packages within DCM?
>
> A: *Redacted Pursuant to Agreed Protective Order*
>
> Q: Okay. And – and depending upon the package, pulling a package out might make DCM not function at all?
>
> A: *Redacted Pursuant to Agreed Protective Order*
>
> Q: And are there particular packages within DCM that you could identify as being more or less important in terms of the overall functioning of DCM than others?
>
> A: *Redacted Pursuant to Agreed Protective Order*

Redmond Ex. H at 121-122.

As a work incorporating and integrating the Ximpleware parser, DCM Version 3.9, *as a whole*, is governed by the terms and conditions of the GPL.

- "These requirements apply to the modified work as a whole." (§ 5)

- "[B]y modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it." (*Id.*)

Collins Ex. B.

Defendants' Motion for Partial Summary Judgment (Redacted)

Ameriprise is accordingly entitled to a declaration that DCM Version 3.9 is subject to and governed by the GNU General Public License attached as Exhibit B to the Collins Declaration.

**D.    Under The GPL, Ameriprise is Entitled to the Source Code for DCM Version 3.9**

Versata's decision to incorporate the free GPL-licensed Ximpleware software in DCM Version 3.9 imposes upon Versata the obligations of the GPL.  Versata was required, among other things, to publish an appropriate copyright notice and disclaimer of warranty on each copy of DCM Version 3.9; to provide recipients of DCM Version 3.9 with a copy of the GPL; and to license DCM 3.9 at no charge to recipients.  *See* Collins Ex. B §§ 1-3, 6.  The GPL also prohibits anyone who incorporates a GPL-licensed program from imposing any restrictions on the recipient's use of the distributed program that differ from those in the GPL.  *Id.* § 6.  Versata has not complied with *any* of these obligations.  *See* Collins Decl. ¶¶ 10.

The key obligation relevant to this case is that, when Versata incorporated and integrated the open source Ximpleware parser into DCM Version 3.9 and distributed it to Ameriprise (among other customers), Versata agreed to accompany any distribution of the computer-executable version of DCM with the DCM source code, or with a written offer to provide the source code.  The GPL expressly states this obligation in several sections:

> These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.  For example, if you distribute copies of such a program, whether gratis or for a fee, you must give the recipients all the rights that you have.  *You must make sure that they, too, receive or can get the source code.*

Collins Ex. B, Preamble (emphasis added).

14

You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above *provided that you also do one of the following*:

>a)  Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or

>b)  Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange …

Collins Ex. B § 3 (emphasis added).  Versata did not provide Ameriprise with DCM source code when it delivered DCM Version 3.9 to Ameriprise; nor did it accompany the delivery with a written offer to do so.  And despite Ameriprise's demand, Versata has refused to provide Ameriprise with the source code for DCM Version 3.9.  *See* Redmond Ex. G; Redmond Decl. ¶ 9.

Ameriprise is accordingly entitled now to partial summary judgment establishing that Versata's provision of DCM Version 3.9 is subject to the terms and conditions of the GPL submitted as Collins Ex. B and, more specifically, that Ameriprise is entitled to the source code for DCM Version 3.9 in its entirety, subject only to the terms and conditions of the GPL.

## IV.  SUMMARY JUDGMENT EVIDENCE

In support of its motion, Ameriprise relies on the following evidence:

- Exhibit 1 – July 22, 2013 Declaration of Dr. John Collins ("Collins Decl."), with attached exhibits ("Collins Ex.").  *(Served but not yet filed with the Court in conformance with Agreed Protective Order pending Versata's opportunity to seek a sealing order )*

- o   Collins Ex. A – Resume of Dr. John Collins  *(Served on the Parties but not yet filed with the Court in conformance with Agreed Protective Order pending Versata's opportunity to seek a sealing order )*

- o   Collins Ex. B – Version 2 of the GNU General Public License  *(Served but not yet filed with the Court in conformance with Agreed Protective Order pending Versata's opportunity to seek a sealing order )*

- • Exhibit 2 – July 23, 2013 Declaration of Heather Redmond ("Redmond Decl."), with attached exhibits ("Redmond Ex.").

  - o   Redmond Ex. A – Redacted Version of October 1999 Master License Agreement

  - o   Redmond Ex. B – Draft Notice of Deposition of Versata Corporate Representative

  - o   Redmond Ex. C – Versata's original response and objections to Interrogatory No. 7

  - o   Redmond Ex. D – Versata's original response and objections to Request for Production No. 13

  - o   Redmond Ex. E – Court Order overruling Versata's discovery objections

  - o   Redmond Ex. F – Versata's supplemental Response to Interrogatory No. 7 *(Served but not yet filed with the Court in conformance with Agreed Protective Order pending Versata's opportunity to seek a sealing order )*

  - o   Redmond Ex. G – Letter from Ameriprise's counsel to Versata's counsel

  - o   Redmond Ex. H – Excerpts of the Deposition of Versata's Corporate Representative, including Exhibit 34 to the Deposition *(Served but not yet filed with the Court in conformance with Agreed Protective Order pending Versata's opportunity to seek a sealing order )*

## V.    CONCLUSION AND REQUEST FOR RELIEF

Versata did not need to incorporate a third party's intellectual property into DCM.  It

could have created an entirely proprietary set of software.  But once it chose to incorporate

Ximpleware open source code into its product and distributed it as a single, integrated package,

16

Versata accepted the terms and conditions of the GPL and subjected its DCM software to a license – the GPL – that governs the distribution of DCM Version 3.9.  Under the explicit, straightforward terms of the GPL, Ameriprise is entitled to obtain the source code for DCM Version 3.9 in its entirety and to use it freely, consistent with the terms of the GPL.

The Court should therefore grant Ameriprise's Motion for Partial Summary Judgment and make the following declarations:

1.      Versata's DCM Version 3.9 software licensed to Ameriprise is subject to and governed by Version 2 of the GNU General Public License submitted as Collins Ex. B; and

2.      Ameriprise is entitled, pursuant to the terms of Version 2 of the GNU General Public License, to obtain and freely use the source code for DCM Version 3.9 subject only to the terms and conditions of the GPL.

17

Defendants' Motion for Partial Summary Judgment (Redacted)

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, LLP


By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail:  smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail:  csileo@scottdoug.com
600 Congress Avenue, Suite 1500
Austin, Texas  78701
Phone: (512) 495-6300
Fax:  (512) 474-0731


**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

**ATTORNEYS FOR COUNTERCLAIMANT
AND DEFENDANTS**

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on July 24, 2013.

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Ave., Suite 2100
Austin, TX 78701
Facsimile: (512) 495-6093
*Attorneys for Plaintiffs*

**Via Email (tcbarton@ mcginnislaw.com) and Hand Delivery**

Steven J. Mitby
Benjamin F. Foster
Ahmad, Zavitsanos, Anaipakos, Alavi
& Mensing, PC
1221 McKinney Street, Suite 3460
Houston, TX 77010
Facsimile: (713) 655-0062
*Attorneys for Plaintiffs*

**Via Email (smitby@azalaw.com / bfoster@azalaw.com ) and Facsimile**

/s/ Christopher D. Sileo
Christopher D. Sileo

19

# EXHIBIT 1
## (Redacted pursuant to Agreed Protective Order)

# EXHIBIT A
## (Redacted pursuant to Agreed Protective Order)

# EXHIBIT B
## (Redacted pursuant to Agreed Protective Order)

# EXHIBIT 2

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v | § § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § § | |
| Defendants. | § § | 53rd JUDICIAL DISTRICT |

## DECLARATION OF HEATHER D. REDMOND IN SUPPORT OF AMERIPRISE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Heather D. Redmond, state and declare as follows:

1.      I am over the age of 21 and competent to make this Declaration. I have personal knowledge of the facts set forth herein and I offer this declaration in connection with Defendants' Motion for Partial Summary Judgment. I am a partner in the law firm of Dorsey & Whitney LLP and one of the outside counsel representing Defendants in this case.

2.      Attached as Exhibit A is a true and correct redacted copy of the October 1999 Master License Agreement ("MLA") between Ameriprise and Versata. The MLA is redacted as agreed by the parties to allow for public filing.

3.      On January 30, 2013, Ameriprise served Versata with a set of interrogatories and document requests, and also with a Notice of Taking Corporate Deposition, in connection with a related proceeding in Minnesota state court. Attached as Exhibit B is a true and correct copy of the Notice of Deposition. The Minnesota litigation was subsequently stayed, and the parties

agreed that Ameriprise could re-serve its discovery requests in connection with this action, and that Versata's written responses would be served on or before March 15, 2013. The parties also agreed that Versata would provide Ameriprise with some possible dates for the corporate deposition.

4.      Attached as Exhibit C is a true and correct copy of Versata's original response and objections to Ameriprise's Interrogatory No. 7.

5.      Attached as Exhibit D is a true and correct copy of Versata's original response and objections to Ameriprises Request for Production No. 13.

6.      Despite several subsequent requests by Ameriprise, Versata refused to identify a corporate representative or to provide dates for the corporate deposition of Versata.

7.      Ameriprise moved to compel responses, and on May 8, 2013, the Court overruled Versata's objections and ordered Versata to identify its third-party licensors of components of DCM (Interrogatory 7), to produce all licenses from such licensors (Document Request 13), and to designate witnesses to testify on the topics in Ameriprise's notice. Attached as Exhibit E is a true and correct copy of the Order. Although the Court's Order required Versata's compliance within three days, the parties agreed that Versata could have two weeks – until May 22, 2013 – to respond and produce documents.

8.      Attached as Exhibit F is a true and correct copy of Versata's May 22, 2013 supplemental response to Interrogatory No. 7. Consistent with its interrogatory response, we could locate within Versata's May 22 production of more than 175,000 documents only one license agreement, an agreement between Versata and its affiliate G-Dev FZ-LLC.

9.      Attached as Exhibit G is a true and correct copy of June 19, 2013 correspondence from Peter Lancaster, counsel for Ameriprise, to Amir Alavi, counsel for Versata.  Versata has refused to provide Ameriprise with the source code for DCM Version 3.9.

10.     As of the date I executed this Declaration, I have seen no evidence that Versata has produced any evidence of any license or agreement with Ximpleware other than the GPL attached as Exhibit B to the Declaration of John Collins.

11.     Attached as Exhibit H is a true and correct copy of the transcript of the June 14, 2013 deposition of Versata, along with Exhibit 34 to the deposition.  Versata designated the transcript as Confidential – Attorneys' Eyes Only under the Stipulated Protective Order.

My name is Heather Dawn Redmond, my date of birth is July 26, 1975, and my business address is Dorsey & Whitney, Suite 1500, 50 South Sixth Street, Minneapolis, Minnesota, 55402.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Hennepin County, State of Minnesota on the 24th of July 2013.

*Heather D. Redmond*

Heather D. Redmond

3

# EXHIBIT A

## MASTER LICENSE AGREEMENT

Licensor (Name and Address):                    Agreement No.:  AEFA100499-JW01
Trilogy Software, Inc. ( "Licensor")
  6034 West Courtyard Drive
Austin, TX 78730                                Effective Date:  October 4, 1999

This Master License Agreement ("Agreement") is made and entered into as of the Effective Date above between American Express Financial Corporation having an office at IDS Tower 10, Minneapolis, Minnesota 55440 ("Amexco") and the Licensor specified above.

## ARTICLE 1: PROVISION OF PROGRAMS

1.1   Under the provisions of this Agreement, Licensor agrees to grant Amexco licenses to use Licensor's proprietary computer programs in object code only (the "Software") and the documentation that Licensor makes generally available in hard copy or electronic form, to its general customer base in conjunction with the licensing of such thereto (the "Documentation") (Software and Documentation are referred to collectively as the "Products") which are listed on Schedules substantially in the form attached as Exhibit A ("Schedule").

    1.1.1   The parties agree to enter into good faith negotiations to execute a mutually agreeable agreement for consulting services.   Until such an agreement is executed, this Agreement permits Amexco to obtain Licensor's pre-installation services to customize, modify and/or enhance Products, to develop programs, software and materials related to Products, and/or such other services as the parties mutually agree upon ("Custom Services") on an interim basis and at Licensor's standard rates. Custom Services along with the applicable rates shall be specified on an Interim Custom Service Attachment substantially in the form attached hereto as Exhibit B.

1.2   Each Schedule shall be numbered and dated to facilitate identification and when executed by both parties shall form a separate agreement which hereby incorporates by reference, without any further reference in the applicable Schedule, the terms and conditions of this Agreement, as amended or modified on the applicable Schedule.   Each Schedule shall include: (i) the Amexco site where each Product is to be delivered ("Installation Site"); (ii) the name and/or other description of each Product; (iii) the date each Product is to arrive at the Installation Site ("Scheduled Delivery Date"); (iv) the scope of each Product license, if different than as defined in Article 4;  (v) the charge for the license for each Product ("License Fee"); (vi) the maintenance charges for each Product, ("Maintenance Fee") and whether such Maintenance Fees are monthly, quarterly, annual or otherwise; and (vii) any other provisions the parties mutually agree upon.

    1.2.1   In the event of any inconsistency between this Agreement and any Schedule, the provisions of such Schedule shall govern for purposes of such Schedule.

1

# 99547 (revised 1/14/98)

EXHIBIT

TRILOGY 00001

**EXHIBIT A**

1.3     Amexco, its parent, subsidiaries and "Affiliates" (as defined herein) (collectively, "Amexco Entities") may execute Schedules with Amexco under this Agreement and for purposes of such Schedule shall be considered "Amexco" as that term is used throughout this Agreement. An Affiliate shall mean any company, which shares with Amexco a common owner who owns 50%, or more of the outstanding voting stock in both Amexco and such company. Amexco agrees to ensure that all Amexco Entities must have agreed in writing to be bound by the terms and conditions of this Agreement prior to use of the Software. Amexco hereby agrees to provide to Licensor, within thirty (30) days of request, a then current list of Amexco Entities for whom Software may be licensed hereunder.

## ARTICLE 2: DELIVERY: -REPRODUCTION, DISTRIBUTION AND REPORTS

2.1     Unless otherwise defined on the applicable Schedule, Licensor shall deliver one master copy of each Product (the "Master Copy") to Amexco on or before, but in no event later than ten (10) days after its Scheduled Delivery Date solely for the purpose of allowing Amexco to make copies of the Product that are reasonably necessary for distribution to and use by each user or server authorized per the license scope defined herein and on the applicable Schedule. For purposes of this Agreement, delivery shall be deemed complete when Licensor physically delivers or causes a third party to deliver, a Master Copy to Amexco, or makes the Master Copy available to Amexco for downloading from Licensor's File Transfer Protocol ("FTP") site, and has provided Amexco with the appropriate password to access the FTP site. Amexco's right to reproduce the Master Copy shall be limited to the Installation Site. Amexco shall assume all responsibility for the quality of the copies made hereunder.

2.2     Without limiting the foregoing, Amexco shall have the right to use the Software on temporary substitute or back-up equipment. Subject to the terms of the Schedule, Amexco shall also be entitled to make and keep a reasonable number of copies of each Product, Update and its Documentation for its own internal use.

2.3     Amexco shall include all copyright notices, proprietary legends, and trademark and service mark attributions, any patent markings, and other indicia of ownership on all copies of the Product in the content and format as those, which were contained on the Master Copy. Amexco shall pay all duplication and distribution costs incurred by Amexco in making copies of the Products, and any updates, new releases or enhancements that Licensor makes generally available and provides to Amexco pursuant to the maintenance provisions hereunder (the "Updates"), and shall also pay all custom duties and fees if applicable. Subject only to the license granted herein, all copies of the Software are the property of Licensor or its third party licensors, if any, from whom Licensor has obtained the marketing rights (the "Third Party Licensors").

2.4     Amexco agrees that Licensor subject to this section may, upon thirty (30) days prior written notice, enter Amexco's premises to verify Amexco's compliance with the provisions of this Agreement.    Licensor's inspections shall be limited to (i) one annual inspection; (ii) Amexco's normal business hours; and (iii) those records pertaining to the Products and Updates (as delivered to Amexco under any Schedule) licensed hereunder. Licensor's rights of inspection shall remain in effect through the period ending six (6) months from the termination or expiration of this Agreement.

2

TRILOGY 00002

## ARTICLE 3:   DOCUMENTATION AND TRAINING

3.1   Upon delivery of each Product or any Update of the Product to be made available to Amexco pursuant to the maintenance provisions herein, and contemporaneously with such delivery whenever possible, Licensor shall deliver to Amexco one (1) copy of all generally available Documentation (if applicable) for such Product or Update, and any necessary and generally available release notes or other written descriptions relating to any Update sufficient to enable a reasonable person, who is skilled in the software industry to use and to understand the use and operations of the Product or Update.  Amexco may copy the Documentation only to the extent reasonably necessary to satisfy its own internal requirements or may request Licensor to furnish additional copies at Licensor's current standard prices less any applicable discounts.

3.2   If training is required and/or included for a Product, the charge, duration, nature and other particulars applicable to such training shall be arranged pursuant to the terms and conditions of the Education Services Schedule, attached hereto as <u>Exhibit C</u>.

## ARTICLE 4:   SCOPE OF LICENSE AND PROPRIETARY RIGHTS

4.1   Unless otherwise agreed in this Agreement or on an applicable Schedule, subject to Amexco's fulfillment of all of its obligations hereunder, Licensor grants to Amexco a non-exclusive, nontransferable (except as permitted herein), perpetual, worldwide license to use the Software, including any Updates, and all related Documentation, commencing upon its delivery to Amexco and continuing thereafter from the date of Amexco's acceptance of the Product or Update subject to the Warranty provisions herein, as the case may be, for the License Term specified on the Schedule, unless terminated earlier in accordance with this Agreement.

4.2   Unless otherwise agreed on an applicable Schedule, if the applicable Schedule does not define a limited number of users then the license granted shall be a Site License with unlimited users.  For the purpose of this Agreement, the parties agree that "Site License" shall mean that Amexco may use the Product(s), Updates, and related Documentation, in Amexco's business on any of its computers and at the Installation Site or any other Amexco data center location and on more than one computer at a time subject to any additional license scope restrictions provided on the Schedule.

4.3   If the default provisions of Section 5.2 do not apply, and if the Schedule designates a limited number of users then the Product licensed pursuant to the Schedule may be accessed by that designated number of individual users. Amexco may designate different users at any time without notice to Licensor so long as the permitted number of users is not exceeded.

4.4   Unless otherwise agreed and specified in the applicable Schedule, Licensor agrees that Amexco shall have the right, to (a) use, copy, execute, display, enhance, update, maintain (directly or through a third party pursuant to the provisions of this Agreement) the Products, Updates and Documentation and/or materials provided to Amexco hereunder only to the

3

TRILOGY 00003

extent that such use, copying, executing, displaying, enhancing, updating, and maintaining are described in the applicable Documentation and (b) use the Products in conjunction with other programs and/or materials.

4.5     Amexco shall not (i) use the Products to process, or permit to be processed, the data of any other party unless such data is processed for Amexco purposes only; or (ii) use the Products for service bureau or commercial time-sharing use, unless otherwise expressly permitted in the License Schedule.

4.6     Unless otherwise agreed and specified in the applicable Schedule, with regard to the object code and source code version of any software code developed by Licensor in its performance of Custom Services for Amexco as defined in Section 1.1.1 of this Agreement (the "Programs"), Licensor hereby grants to Amexco, at no additional charge (upon payment of all service fees attributable to such services), a worldwide, nonexclusive, license (i) to modify and otherwise create derivative works based on the Programs and (ii) to reproduce, distribute, perform and display (publicly or otherwise), and otherwise use and exploit the Programs and derivative works thereof in connection with the Software as defined herein.

4.7     Amexco's use of any Products labeled on Schedules as "Software Tools" is limited to those locations where Amexco conducts its business in the ordinary course (the "Authorized Locations") and Amexco shall use reasonable efforts to ensure that all such users have been adequately trained and are competent in the use of the Software Tools.

4.8     Unless otherwise specifically provided in the License Schedule, users of the Software may include only (i) employees of the Amexco Entity or Entities who have entered into the applicable Schedule and; (ii) subject to Article 10, "Confidential Information", third party contractors of Amexco Entities who do not, to the best of Amexco's knowledge, compete with Licensor in the development of enterprise compensation or configuration software ("Permitted Contractors").     Amexco shall ensure that all Permitted Contractors have signed a Non-Disclosure Agreement substantially the same as that attached hereto.

4.8.1     Nothing herein shall limit Amexco's right to access and use Products in connection with any associated or interconnected networks, peripherals, equipment and devices, unless otherwise specifically prohibited or limited in an applicable Schedule.

4.9     Licensor retains title to the Products provided hereunder and does not convey any proprietary rights or other interest therein to Amexco, other than the licenses granted hereunder. Amexco agrees not to sell, assign or otherwise transfer the Product(s) or the license granted hereunder, or sublicense the Products to any third party, except as otherwise provided in this Agreement.

4.10    At least sixty (60) days prior to the expiration of each License Term (if applicable), Licensor shall notify Amexco of such expiration and Amexco shall have the option to continue the license of such Product for any additional License Term selected by Amexco.  Amexco shall notify Licensor in writing if it opts to continue a Product license and License Term for any such continuation.  The License Fee applicable to any continuation of a Product license

4

TRILOGY 00004

("Renewal Fee") shall be the lesser of: (a) the License Fee applicable to the current License Term (if the terms are equivalent); (b) Licensor's then current License Fee applicable to the renewal License Term; or (c) such other license fee as is mutually agreed upon by the parties. Notwithstanding anything herein to the contrary, License Terms shall continue at no additional charge to the end of the License Term or for sixty (60) days after receipt of Licensor's notice referred to above, whichever is later, and thereafter, if Amexco exercises the option to continue the license as provided hereunder.

## Article 5: ESCROW AGREEMENT

5.1   The parties agree to put source code and all the generally available Documentation thereto, for a Product or Updates ("Deposit Materials") in escrow with an independent third party escrow agent in accordance with the terms and conditions of a source escrow agreement materially similar to that which has been attached hereto as Exhibit D. Documentation will be placed in escrow within ten (10) days of when the Software is placed in escrow.

5.2   Licensor shall deposit the Deposit Materials with Data Securities International Inc. ("DSI"), no later than forty five (45) days after the execution of any Schedule issued hereunder, if such Deposit Materials are not already in escrow with DSI. Licensor shall employ reasonable efforts to confirm that Amexco has received notice of any deposit pursuant to the terms of the attached escrow agreement.   Licensor agrees to update the escrow at least every six (6) months. In addition to the periodic update in the preceding sentence, Licensor shall also use commercially reasonable efforts to update the escrow upon delivery of an Update (not including patches or other minor Updates) to Amexco pursuant to the support and maintenance provisions herein.

5.3   The release conditions triggering the notification and release provisions of the source code escrow agreement shall be:

a.   Licensor's uncured, material breach of its maintenance or support obligations imposed on it pursuant to a license agreement between Licensor and Amexco provided that Amexco has paid all applicable fees for such maintenance and support; or

b.   Licensor's failure to continue to do business in the ordinary course and it's business is not continued by another corporation or entity; The institution of bankruptcy, receivership, insolvency, reorganization or other similar proceedings by or against Licensor under the Federal Bankruptcy Code, if such proceedings have not been dismissed or discharged within sixty (60) calendar days after they are instituted; the insolvency or making of an assignment for the benefit of creditors or the admittance of any involuntary debts as they mature by Licensor; or

c. Licensor materially breaches the Year 2000 Warranty as specified in Article 8 of this Agreement and fails to cure such breach pursuant to the support and maintenance provisions.

## ARTICLE 6: MAINTENANCE

5

TRILOGY 00005

6.1

6.2

6.3

6.4

6

# 99547 (revised 1/14/98)

TRILOGY 00006

6.5

6.6.

6.7

6.8

ARTICLE 7:  INVOICING; PAYMENT; DISCOUNTS

7.1

    7.1.1

    7.1.2

7

TRILOGY 00007

7.2

7.3

## ARTICLE 8: WARRANTIES

8.1   Licensor warrants to Amexco that:   (i) Licensor has the right to furnish the Products, Documentation, and other materials and perform the Maintenance and other services as specified in this Agreement ("Product Materials and Services") covered hereunder free of all liens, claims, encumbrances and other restrictions; (ii) to the best of its knowledge, the Product Materials and Services furnished by Licensor and/or Amexco's use of the same hereunder do not violate or infringe the rights of any third party or the laws or regulations of any governmental or judicial authority; (iii) Amexco's use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement) or any entity asserting a claim under or through Licensor;   (iv) Licensor has not knowingly and shall not knowingly insert any code which would have the affect of disabling or otherwise shutting down all or any portion of any Product licensed hereunder; (v) Licensor shall use its reasonable commercial efforts to ensure that no viruses or similar items are knowingly coded or introduced in any Product licensed hereunder; and (vi) that at the time this Agreement is executed, Licensor is not a party to any litigation that Licensor reasonably believes will adversely affect the rights granted to Amexco by Licensor hereunder.

8.2   Licensor warrants that the Software shall materially conform to the applicable Documentation, including but not limited to operating in conjunction with any third party software that is expressly referenced in the Documentation, for a period of one hundred and eighty (180) days, not including any Cure Period or Second Cure Period as defined herein, following delivery of the applicable Software, upon delivery to the Installation Site (the "Warranty Period").  If prior to the end of the Warranty Period, Amexco has not notified Licensor of the non-conformity of the Software, Licensor shall have met its warranty obligations under this Article 8.

8.2.1  If, during the Warranty Period, any Software fails to materially conform to the applicable Documentation and Amexco notifies Licensor in writing setting forth in reasonable detail the degree and nature of the non-conformity and reproducing the non-conformity.  Licensor shall promptly review the claim by Amexco.  If Licensor confirms that the reported non-conformity is a non-conformity to the

8

TRILOGY 00008

applicable Software Documentation and is not due to (i) modifications made to the Software by someone other than Licensor; (ii) combination of the Software with other product(s) where such other product(s) cause(s) the non-conformity; or (iii) negligence or misuse, then Licensor shall use commercially reasonable efforts to repair or replace the materially non-conforming Software and deliver to Amexco repaired or replacement Software that materially conforms to the applicable Documentation within the time period quoted by Licensor to Amexco (the "Cure Period"), or if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) days following confirmation by Licensor of the non-conformity. The time elapsed during such Cure Period shall not count against the Warranty Period, and the Warranty Period shall recommence from the point in time where it was suspended, thirty (30) days from the time that Licensor delivers to Amexco the repaired or replaced Software. Unless Licensor receives a written notification from Amexco that the repaired or replaced Software does not materially conform to the applicable Documentation within thirty (30) business days following receipt of the repaired or replaced Software, Licensor shall have met its warranty obligation under this Article 8. Notwithstanding the foregoing and provided that Amexco has paid the appropriate Support and Maintenance Service fees pursuant to this Agreement or an applicable schedule, Licensor shall continue to support and maintain the accepted Software pursuant to the Support and Maintenance provisions herein.

8.2.2  If Licensor receives a written notification from Amexco within such thirty (30) business day period that a non-conformity continues to exist, the Warranty Period applicable to such Software shall be extended and Licensor shall continue to have the right to use commercially reasonable efforts to either repair/replace the materially nonconforming Software within the time period quoted by Licensor to Amexco, if no time period is quoted by Licensor, such time period shall in no event be longer than thirty (30) business days following confirmation by Licensor of the nonconformity (the "Second Cure Period), whereupon the previous provisions for Licensor to fulfill or be deemed to have fulfilled its warranty obligations and the suspension of the Warranty Period shall apply. If Licensor is unable to repair/replace non-conformities of any Software subject to a Software warranty under this Article 8 after two (2) attempts to do so, then Amexco's remedy shall be as follows: Amexco shall be relieved of any obligation to pay the License Fee applicable to the materially nonconforming Software and shall receive a full refund for any fees already paid to Licensor, provided that upon the parties' mutual written agreement that the Software continues to not conform to the applicable Documentation after two (2) attempts to do so, Amexco immediately ceases further use of the applicable Software, destroys all copies of the applicable Software and certifies such destruction in writing to Licensor.

8.2.3  If Licensor does not confirm that the reported non-conformity is a non-conformity or if the  non-conformity reported is due to (i) modifications made to the Software by someone other than Licensor, (ii) functions contained in Software operating in the combinations that may be selected for use by Amexco other than as stated in the Documentation, or (iii) negligence or misuse, then Licensor shall have no obligation to take any action as part of any Software warranty.

9

TRILOGY 00009

8.3  Other Exclusions. Licensor does not warrant and the Licensor warranties contained herein expressly do not provide or assure that:

- Use of Products shall meet Customer's requirements;
- Operation of Products shall be uninterrupted or error free.

8.4  Licensor warrants that: (i) during the Warranty Period, all media, if any, containing the Software that is delivered to Amexco shall be free from any defects in materials and workmanship and (ii) updates to the Documentation provided by Licensor hereunder shall be at a minimum, the level of and comprehensiveness reflected in the previous version of the Documentation.

8.5  Year 2000 Compliance and Warranty. Licensor warrants to Amexco that the Products provided hereunder have been fully tested and will accurately process all dates including, but not limited to, between the twentieth and twenty-first century in either direction, including leap years, when properly installed, properly used in accordance with the applicable Documentation, and unmodified by Amexco, provided all items used in combination with Products properly exchange unambiguous and year 2000 compliant date data. Without limiting the generality of the foregoing, Licensor warrants that all Software licensed from Licensor shall (a) manage and manipulate data involving all dates from the 20th and 21st centuries without functional or data abnormality related to such dates; and (b) manage and manipulate data involving all dates from the 20th and 21st centuries without inaccurate results related to such dates. At no additional cost to Amexco (beyond payment of the license fees), Licensor shall continue to support and maintain the Software so that it complies with the provisions of this warranty and any non-compliance will be addressed through the Support and Maintenance provisions of this Agreement at no additional charge and addressed as a Severity Level One error. Licensor shall have no warranty obligation for any nonconformance with the above warranty, which arises:

i)  out of a defect in any third party software, or other software or hardware product in use by Amexco not acquired from Licensor, which causes the Software not to conform to this warranty when used in combination with such other software or hardware product;

ii)  when Amexco has not installed the most recent Update of the Software, where use of such Update would avoid the nonconformance; or

iii)  when such nonconformance is caused, present or inherent in the data, database or native file system that the Software accesses, including, but not limited to, dates or date formats that do not reflect the century.

8.6  Licensor warrants to Amexco that Updates to the Software provided to Amexco hereunder shall not materially degrade, impair or otherwise materially adversely affect the essential functionality of the Software provided hereunder.

8.7  Licensor warrants that any Maintenance or other services provided by Licensor hereunder shall be performed in a good, workmanlike and professional manner by qualified personnel. Licensor personnel will observe and comply with Amexco's security procedures, rules,

10

TRILOGY 00010

regulations, policies, working hours and holiday schedules.  In performing Maintenance services at Amexco locations, Licensor personnel will use reasonable commercial efforts to minimize any disruption to Amexco's normal business operations.

8.8     EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

ARTICLE 9:  INTELLECTUAL PROPERTY INFRINGEMENT

9.1    Licensor agrees to defend and/or handle at its own expense, any claim or action against Amexco for actual or alleged infringement of any intellectual or industrial property right, including, without limitation, trademarks, service marks, United States or Canadian patents, copyrights, misappropriation of trade secrets or any similar proprietary rights (other than patents issued in foreign jurisdictions not expressly provided herein), based upon the Software furnished hereunder by Licensor or based on Amexco's use thereof in accordance with the applicable Documentation. Licensor further agrees to indemnify and hold Amexco harmless from and against any and all liabilities, losses, costs, damages finally awarded or settled and expenses (including reasonable attorneys' fees) associated with any such claim or action.  Amexco may participate in the defense provided it pays its own costs associated with such participation.

9.2    Licensor shall have no liability under this Article 9 unless:

9.2.1     Amexco notifies Licensor in writing immediately after Amexco becomes aware of a claim or the possibility thereof and Licensor is unaware of such claim;

9.2.2     Licensor has sole control of the settlement, compromise, negotiation, and defense of any such action consistent with Amexco's rights hereunder unless otherwise mutually agreed to in writing and provided however that Licensor shall seek Amexco's consent prior to a settlement in which Amexco's rights, other than those addressed in this Section 9, are affected, or in which Amexco is otherwise obligated; and

Amexco cooperates, in good faith, in the defense of any such legal action.

9.3    Licensor shall have no liability for any claim of infringement based on (i) Software that has been modified by parties other than Licensor or parties acting as agents of Licensor; (ii) Amexco's use of the Software in conjunction with data where such data gave rise to the infringement claim; or (iii) Amexco's use of the Software with non-Licensor Software or hardware, where such other software or hardware gave rise to the infringement claim, and absent use of such hardware or software no claim would have been valid.

9.4    If any Product becomes, or in Licensor's opinion are likely to become, the subject of any such claim or action, then, Licensor, at its expense may either:  (i) procure for Amexco the right to

11

TRILOGY 00011

continue using same as contemplated hereunder; (ii) modify same to render same non-infringing (provided such modification does not adversely affect Amexco's use as contemplated hereunder); (iii) replace same with equally suitable, functionally equivalent, compatible, non-infringing products, materials and/or services; or iv) if neither of the foregoing options is commercially reasonable, terminate the license for the Product. Upon such termination of the license upon Amexco's return Product, Licensor will refund to Amexco, as Amexco's sole remedy for such license termination, all License fees paid by Amexco for the terminated license, less an amount equal to one-sixtieth (1/60ᵗʰ) of the license fees for each month or any portion thereof which has elapsed since the Schedule Effective Date of such terminated license. THIS SECTION STATES THE ENTIRE LIABILITY OF LICENSOR WITH RESPECT TO ANY CLAIM OF INFRINGEMENT REGARDING THE PRODUCT.

## ARTICLE 10: CONFIDENTIAL INFORMATION

10.1   Each party agrees to regard and preserve as confidential, all Confidential Information of the other which may be obtained from any source. In maintaining the confidentiality of Confidential Information hereunder, each party agrees it shall not, without first obtaining the written consent of the other, disclose or make available to any person, firm, or enterprise, reproduce or transmit, or use for its own benefit or the benefit of others, any such Confidential Information. Each party agrees that its own use and/or distribution of the other party's Confidential Information shall be limited to its own employees on a "need to know" basis; provided, however, that Amexco may also disclose Licensor's Confidential Information to employees of Amexco, its parent, subsidiary and affiliates, and to Permitted Contractors retained by Amexco for purposes specifically related to Amexco's use or evaluation of such Confidential Information, and who agree in writing to be bound by provisions no less restrictive than those herein. Neither party shall disassemble, decompile or otherwise reverse engineer any software product of the other party and, to the extent any such activity may be permitted, the results thereof shall be deemed Confidential Information subject to the requirements of this Agreement.

10.2   "Confidential Information" of Amexco shall include both specific information relating to the project or work effort which originated Amexco's desire to exchange information and the entering into of this Agreement or any Schedule issued hereunder, as well as all other information relating to the past, present and future plans, businesses, activities, customers and suppliers of Amexco, its parent, subsidiaries and affiliates which is obtained by Licensor in connection with the exchange of information contemplated hereunder. "Confidential Information" of Licensor shall include both specific information relating to the project or work effort for which Licensor's provision of products, software, or services may be provided to Amexco, as well as other information related to Licensor's past, present and future plans, businesses, activities, customers, suppliers, its subsidiaries and affiliates which is obtained by Amexco in connection with the exchange of information as contemplated hereunder. Without limiting the generality of the foregoing, Licensor's "Confidential Information" shall also include all information and materials disclosed to Amexco regarding Licensor's software products or software product development. In preserving the confidentiality of the disclosing party's Confidential Information, the receiving party shall not be required to take any greater steps than it takes to protect the confidentiality of its own similar information, but in no event shall such steps be less than reasonable.

12

TRILOGY 00012

10.3   Both parties acknowledge and agree information shall not be considered "Confidential Information" to the extent, but only to the extent, that such information: (a) is already known to the receiving party free of any confidentiality obligation at the time it is obtained from the other party; (b) is or becomes publicly known or available through no wrongful act of the receiving party; (c) is rightfully received from a third party without restriction; (d) is independently discovered or developed by the receiving party using individuals who have had no contact with the Confidential Information of the other party; or (e) is required to be disclosed in response to a valid order of a court or authorized agency of government, provided that notice is given promptly to the party whose Confidential Information is to be so disclosed so that such party may seek a protective order and/or engage in other efforts to minimize the required disclosure.

10.4   Each party further acknowledges and agrees that in the event of a breach or threatened breach by it of the provisions of this Confidentiality Agreement, the other party will have no adequate remedy in money or damages and accordingly shall be entitled to seek an injunction against such breach or threatened breach; provided, however, no specification in this Confidentiality Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition of any legal or equitable remedies in the event of a breach or threatened breach of this Confidentiality Agreement.

10.5   Information that Licensor considers "Highly Confidential" (documents, notes, or other physical embodiments of or reflecting the Confidential Information) must be marked as such with appropriate notification to Amexco prior to deliver of the "Highly Confidential" information.   Licensor may request the return of any information marked as "Highly Confidential" including any copies thereof that are in the possession or control of Amexco. Upon the request of Licensor, a project manager of Amexco shall verify, and provide to Licensor written certification of, the completeness of the delivery of such materials. Notwithstanding any of the foregoing, in the event of a breach by Amexco of the Confidentiality provisions herein, or Licensor's termination of a license issued to Amexco under the applicable schedule in accordance with the termination provisions herein, Licensor may request the return of any Software Tools and related documentation including any copies thereof that are in the possession or control of Amexco regardless of whether such Software Tools or related documentation are designated as "Highly Confidential".

### ARTICLE 11:   LIMITATION OF LIABILITY

IN NO EVENT SHALL EITHER PARTY BE LIABLE, ONE TO THE OTHER, FOR ANY INDIRECT, SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

IN ADDITION TO THE FOREGOING, EXCEPT FOR LICENSOR'S LIABILITY ARISING FROM (I) ITS GROSS NEGLIGENCE WHILE PERFORMING ANY SERVICES HEREUNDER; (II) DEATH, BODILY INJURY OR TANGIBLE PROPERTY DAMAGE CAUSED BY LICENSOR WHILE PERFORMING SERVICES HEREUNDER; (III) INDEMNIFICATION OBLIGATIONS, UNDER ARTICLE 9 OF THIS AGREEMENT; (IV) LICENSOR'S FAILURE TO MEET ANY OF ITS OBLIGATIONS RELATING TO CONFIDENTIAL INFORMATION UNDER ARTICLE 10 OF THIS AGREEMENT; AND/OR (V) ANY WILLFUL MISCONDUCT

13

OR MALICIOUS ACTS, THE LIMIT OF LICENSOR'S LIABILITY (IN TORT (INCLUDING CLAIMS OF NEGLEGENCE) OR BY STATUTE OR OTHERWISE) TO AMEXCO FOR DIRECT DAMAGES CONCERNING PERFORMANCE OR NON-PERFORMANCE, OR OTHERWISE, BY LICENSOR IN ANY MANNER RELATED TO THIS AGREEMENT OR ANY APPLICABLE SCHEDULE, FOR ANY AND ALL CLAIMS SHALL NOT, IN THE AGGREGATE, EXCEED THE TOTAL FEES PAID BY AMEXCO TO LICENSOR UNDER THE APPLICABLE SCHEDULE FOR THE SOFTWARE OR SERVICES THAT GAVE RISE TO SUCH LIABILITY.

## 12. GENERAL

12.1    TERM: This Agreement shall commence as of the Effective Date and continue thereafter unless terminated as provided hereunder. Each Schedule shall become binding when duly executed by both parties and shall continue thereafter unless terminated as permitted hereunder. Notice of termination of any Schedule shall not be considered notice of termination of this Agreement.

12.2    TERMINATION: In the event of any material breach of this Agreement by one party, the other party may (reserving cumulatively all other remedies and rights under this Agreement and at law and in equity) terminate the Schedule(s) involved, in whole or in part, by giving thirty (30) days' written notice thereof; provided, however, that any such termination shall not be effective if the party in breach has cured the breach of which it has been notified in writing prior to the expiration of said thirty (30) days. In the event of any termination by Amexco in accordance with this provision, Amexco shall, effective as of the date of such termination, have a perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee (upon full payment of all fees due under the Schedule), but otherwise subject to and in accordance with all the provisions of this Agreement.

In addition to the foregoing, Amexco shall have the right to terminate this Agreement and/or any applicable Schedule(s), by giving ninety (90) days written notice to Licensor. Except for the case of termination by Amexco due to Licensor's material breach of this agreement (as described above), upon termination of this Agreement and/or any Schedule or license hereunder, Amexco's rights to the affected Software shall cease. Amexco shall immediately stop using such Software and shall return such Software to Licensor, or destroy all copies thereof. In addition, Amexco shall provide Licensor with notarized, written certification signed by an officer of Amexco, that all copies of the Software have been returned or destroyed and that no copies have been retained by Amexco for any purpose whatsoever.

Termination of this Agreement or any license created hereunder shall not limit either party from pursuing other remedies available to it, including injunctive relief, nor shall such termination relieve Amexco's obligation to pay all fees that have accrued and are due or are otherwise owed by Amexco under any Schedule or exhibit.

12.3    TAXES: Amexco agrees to pay all taxes levied against or upon the Products and any services or their use hereunder, exclusive, however, of taxes based on Licensor's income, which taxes shall be paid by Licensor. If Licensor pays any tax for which Amexco is

14

TRILOGY 00014

responsible hereunder, Amexco will reimburse Licensor upon Amexco's receipt of written proof of payment.

12.4   EXCUSABLE DELAYS:  In no event shall either party be liable to the other for any delay or failure to perform due to cause or causes beyond the reasonable control and without the fault or negligence of the party claiming excusable delay.  Such causes shall include, but are not limited to, acts of God, floods, fires, loss of electricity or other utilities.

12.5   NOTICES:  Unless otherwise specified all notices shall be in writing and delivered personally or mailed, first class mail, postage prepaid, to the addresses of the parties set forth at the beginning of this Agreement, to the attention of the undersigned; provided, however, that a copy of any Licensor notice of material breach to Amexco shall also be sent to the Office of the General Counsel Technology Law Group, World Financial Center, American Express Tower, 200 Vesey Street, 49th floor, New York, New York 10285-4900.  A copy of any Amexco notice of material breach to Licensor shall also be sent to the Office of the General Counsel, 6034 West Courtyard Drive, Austin, TX 78735. As to any Schedule, notices shall also be sent to the signatories of the Schedule involved. Either party may change the address(es) or addressee(s) for notice hereunder upon written notice to the other.  All notices shall be deemed given on the date delivered or when placed in the mail as specified herein.

12.6   ADVERTISING OR PUBLICITY: Except as set forth in any Schedule, neither party shall use the name or marks, refer to or identify the other party in advertising or publicity releases, promotional or marketing correspondence to others without first securing the written consent of such other party's authorized representative.

12.7   ASSIGNMENT:  Neither party may assign this Agreement, any Schedule and/or any rights and/or obligations hereunder without the written consent of the other party, such consent not to be unreasonably withheld, and any such attempted assignment shall be void. Notwithstanding the foregoing, Amexco may assign this Agreement, any Schedule and/or any of its rights and/or obligations hereunder  (including all licenses granted to Amexco hereunder) to any Amexco Entity .

12.8   GOVERNING LAW: In all respects this Agreement shall be governed by the substantive laws of the State of New York without regard to conflict of law principles.

12.9   MODIFICATION, AMENDMENT, SUPPLEMENT AND WAIVER:  No modification, course of conduct, amendment, supplement to or waiver of this Agreement, any Schedule, or any provisions hereof shall be binding upon the parties unless made in writing and duly signed by both parties.  At no time shall any failure or delay by either party in enforcing any provisions, exercising any option, or requiring performance of any provisions, be construed to be a waiver of same.

12.10   SEVERABILITY:  If any of the provisions of this Agreement are held invalid, illegal or unenforceable, the remaining provisions shall be unimpaired.

12.11   HEADINGS:  Headings are for reference and shall not affect the meaning of any of the provisions of this Agreement.

15

TRILOGY 00015

12.12   ENTIRE AGREEMENT: The Exhibits, Schedules and attachments to this Agreement are incorporated by this reference and shall constitute part of this Agreement. This Agreement constitutes the entire agreement between the parties and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day, month and year first written above.

American Express Financial Corporation

By: _____

Name: _____
         (Type or Print)

Title: _____

Date: _____

Trilogy Software, Inc.

By: _____

Name: Karll A. Jones
         (Type or Print)

Title: Associate General Counsel

Date: 10-26-99

16

# 99547 (revised 1/14/98)

# EXHIBIT B

Electronically Served
1/30/2013 5:38:57 PM
Hennepin County Civil, MN

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
Case Type:  Contract

---

AMERIPRISE FINANCIAL, INC.,

Plaintiff,

v.

VERSATA SOFTWARE, INC.,

Defendant.

File No. 27-CV-13-211
Judge Marilyn Brown Rosenbaum

**PLAINTIFF'S NOTICE OF TAKING
DEPOSITION OF DEFENDANT**

---

TO:  Defendants and their attorneys Sam Hanson, Esq., Briggs and Morgan, P.A., 2200 IDS
Center, 80 South Eighth Street, Minneapolis, MN 55402 and Mr. Steven J. Mitby,
Ahmad, Zavitsanos, Anaipakos, Alavi, & Mensing, 3460 One Houston Center, 1221
McKinney Street, Houston, TX 77010-2009:

    **PLEASE TAKE NOTICE** that Plaintiff Ameriprise Financial, Inc. will take the

deposition upon oral examination pursuant to Minn. R. Civ. P. 30.02(f) of the person(s)

designated to testify on behalf of Defendant Versata Software, Inc. regarding the topics listed

below at the offices of Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, on March 10,

2013, at 9:00 a.m., and continuing until completed. The deposition will be taken before and

transcribed by a notary public or other officer qualified by the law to administer oaths and will

be recorded stenographically and by videotape (sound and visual).

<u>DEFINITIONS AND INSTRUCTIONS</u>

    This notice is to be responded to with reference to the following definitions and

instructions:

    1.    "Agreement" means the October 4, 1999 Master License Agreement between

Ameriprise and Versata.

**EXHIBIT B**

Electronically Served
1/30/2013 5:38:57 PM
Hennepin County Civil, MN

2.      "Ameriprise" means Plaintiff, Ameriprise Financial, Inc. and its predecessors and its and their current and former affiliates and subsidiaries.

3.      "DCM" means the software product known as Distribution Channel Management and licensed at any time to Ameriprise.

4.      "License" means any written, oral or other agreement or arrangement, formal or informal, between Versata Software, Inc. and another entity or individual.

5.      "Versata" means Defendant, Versata Software, Inc., and any current and former parent, subsidiary or affiliate of Versata Software, Inc., including, without limitation, Trilogy Software, Inc., Versata Development Group, Inc., and Trilogy Development Group, Inc.

Defendant shall designate a representative knowledgeable on these topics:

## TOPICS FOR DEPOSITION

1.      A description of all code and documentation that Versata has escrowed pursuant to the Agreement for the benefit of Ameriprise.

2.      All licenses covering, or relating to, DCM code or components of DCM.

3.      The genesis of the code included in DCM.

4.      Versata's DCM development, maintenance, and support staffing models and processes, including, without limitation, any efforts to maintain quality and confidentiality of code in DCM.

5.      The structure, features, and functions of DCM, including the relationships of class files to other class files and the relationship of stock DCM code to custom code.

6.      Key class files, including those class files essential to operate DCM.

Electronically Served
1/30/2013 5:38:57 PM
Hennepin County Civil, MN

DORSEY & WHITNEY LLP

Dated:  January 30, 2013

By *s/ Peter M. Lancaster*
    Peter M. Lancaster #0159840
    Heather D. Redmond #0313233
    Andrea Caron Wiltrout #0391768
    Kristin K. Zinsmaster #0391299
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600

**Attorneys for Plaintiff Ameriprise Financial, Inc.**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be imposed under Minn. Stat. § 549.211.

DORSEY & WHITNEY LLP

*s/ Peter M. Lancaster*

3

# EXHIBIT C

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC., AND VERSATA DEVELOPMENT GROUP, INC., F/K/A TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS | § § | |
| V. | § § | OF TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| DEFENDANTS | § | 53RD JUDICIAL DISTRICT |

### PLAINTIFFS' OBJECTIONS AND ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

TO:   Plaintiff, Ameriprise Financial, Inc., by and through its attorneys of record, Peter M. Lancaster, Heather D. Redmond, Andrea Caron Wiltrout, and Kristin K. Zinsmaster; Dorsey & Whitney LLP; 50 South Sixth Street, Suite 1500; Minneapolis, Minnesota 55402-1498.

Pursuant to the Texas Rules of Civil Procedure, Plaintiffs Versata Software, Inc. and

Versata Development Group, Inc., respond to Defendants' First Set of Interrogatories.

**EXHIBIT C**

Respectfully Submitted,

**AHMAD ZAVITSANOS ANAIPAKOS,
ALAVI, MENSING , P.C.**

Steven J. Mitby
State Bar No. 24037123
smitby@azalaw.com
Benjamin F. Foster
State Bar. No. 24080898
bfoster@azalaw.com
Megan Bibb
State Bar No. 24073924
mbibb@azalaw.com
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the foregoing document upon the following counsel by U.S. mail on March 15, 2013:

G. Alan Waldrop
John R. Nelson
Locke Lord LLP
100 Congress Avenue, Suite 300
Austin, Texas 78701
(512) 305-4700 (Telephone)
(512) 305-4800 (Facsimile)
awaldrop@lockelord.com
jnelson@lockelord.com

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600 (Telephone)
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

Benjamin F. Foster

2

## OBJECTIONS AND ANSWERS TO FIRST SET OF INTERROGATORIES

1.      Substantiate all occasions on which Versata instructed Ameriprise or Infosys not to

decompile files.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome; impermissibly requires Versata to marshal its evidence through the use of the word "all"; and is not reasonably calculated to lead to the discovery of admissible evidence in that Versata had no obligation to "instruct" Ameriprise regarding obligations that were explicitly stated in the 1999 Master License Agreement that Ameriprise executed with Versata.

Subject to and without waiving the forgoing objections, Versata responds as follows: Versata has repeatedly instructed both Ameriprise and Infosys that de-compilation is not permitted. By way of example, and without limitation, Section 10.1 of the 1999 Master License Agreement between Versata and Ameriprise specifically prohibits decompilation, copying, or reverse-engineering. Other parts of the MLA also prohibit Ameriprise from misusing of Versata's confidential information (e.g., Section 10.1) and from using competitors like Infosys as contractors on Versata software (e.g., Section 4.8). In addition, the MLA contains strict anti-waiver provisions (e.g., Section 12.9).

Versata reiterated its instruction that decompilation is impermissible in correspondence, including, for example, an August 2, 2010 email and August 19, 2010 letter from Hemant Shah to Ryan Macomb and subsequent correspondence between Versata and Ameriprise. Versata also had multiple discussions with Ameriprise in 2010, 2011, and 2012 in which Versata representatives continued to reiterate this instruction. In addition, Versata also sued Infosys in 2010 for decompiling software files and has reiterated its objections to decompilation in multiple public court filings.

Versata reserves the right to supplement this response as it continues to marshal its evidence, investigate its claims, and conduct discovery.

2.      Substantiate any alleged occasions that DCM files at Ameriprise have been

decompiled, including without limitation the dates, circumstances, and identities of persons

involved.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome; and impermissibly requires Versata to marshal its evidence through the use of the word "any." Plaintiff further objects on the grounds that the information responsive to this request for production is governed by the protective order in place in *Versata Software et al v. Infosys Technologies LTD.*,

Case No. 1:10-cv-00792 pending in the Western District of Texas Austin Division, which restricts Versata's ability to produce information to Ameriprise in this litigation.

Subject to and without waiving the foregoing, Versata responds as follows: Through its ligation with Infosys Versata has uncovered significant evidence of DCM decompilation. Specifically, on October 25, 2012, in response to discovery, Infosys identified approximately 99 discrete instances of decompilation in a spreadsheet. This spreadsheet will be produced once Ameriprise, Infosys and Versata reach terms on a protective order permitting the production of Infosys Attorney's Eyes Only materials to Ameriprise in this litigation. On that same date, Infosys also separately identified the 5,000 decompiled Versata DCM files that, at the time, Infosys claimed were stored on a laptop in Bangalore. Versata recently learned that these files are actually on an Infosys server in India to which Versata believes that multiple Infosys personnel have had access.

Versata reserves the right to supplement this response as it continues to marshal its evidence, investigate its claims, and conduct discovery.

3.      Identify all competitors of Versata with respect to the development of enterprise compensation or configuration software since January 1, 2007, including without limitation identification of the specific software product that makes such entity a competitor.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome. Plaintiff further objects that to the extent this interrogatory seeks information regarding entities not utilized by Ameriprise such information is not relevant, and is not reasonable calculated to lead to the discovery of relevant information and is therefore outside the scope of discovery.

Subject to and without waiving the foregoing, Versata answers as follows: Infosys which owns MacCamish Systems is a competitor of Versata in the development of compensation and configuration software because MacCamish develops and sells enterprise compensation and configuration software (including its PMACS product) that competes directly with Versata. TCS is also a competitor of Versata because TCS develops and sells enterprise compensation and configuration software (including its BANCS product) that competes directly with Versata. Versata has many other competitors in the enterprise compensation and configuration software space, but has limited its answer to the two competitors that Ameriprise has admitted to giving access to Versata's software in violation of the Master License Agreement.

Versata reserves the right to supplement this response as it continues to marshal its evidence, investigate its claims, and conduct discovery.

4.      Substantiate any claim that Infosys, TCS, or any other third party providing services relating to Ameriprise's DCM is a competitor of Versata with respect to the development

4

of enterprise compensation or configuration software, including without limitation identification of the specific competing software product or service and any occasion on which Versata has lost revenues as a result of such alleged competitor.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, relevant information is provided in response to Interrogatory No. 3 above.

Versata reserves the right to supplement this response as it continues to marshal its evidence, investigate its claims, and conduct discovery.

5.      Substantiate all efforts you have made since January 1, 2007 to maintain confidentiality of DCM code.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. These objections specifically include, but are not limited to, defendants use of the word "all" as unduly burdensome, requires plaintiff to marshal all its evidence and is beyond the scope of discovery.

Subject to and without waiving the foregoing Versata answers as follows: The efforts Versata has undertaken to protect the confidentiality of DCM source code include, by way of example and not limitation, the following: (1) requiring confidentiality agreements with customers that contain similar requirements to the ones in the MLA, including prohibitions on decompilation, copying, reverse-engineering, or disclosure to competitors; (2) requiring confidentiality agreements with employees and contractors; (3) limiting access to DCM source code to employees and contractors who work on source code; (4) storing source code on secure servers; (5) denying customers and competitors access to source code; (6) requiring customers to grant Versata audit rights; (7) engaging in litigation against Infosys to enforce Versata's policy against decompilation.

Versata reserves the right to supplement this response as it continues to marshal its evidence, investigate its claims, and conduct discovery.

6.      Substantiate any damage caused by Ameriprise's alleged breach of the Agreement, including without limitation any damage claimed in connection with any decompilation.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome. Furthermore as discovery in this case is just beginning and Plaintiff reserves the right to supplement this response.

Subject to and without waiving the foregoing objections Versata answers as follows: Ameriprise's breach of the MLA has caused multiple categories of damages to Versata, including, by way of example and without limitation, the following: (1) Unjust enrichment from Ameriprise's wrongful use of the DCM software after Versata terminated the MLA, including all of the economic gain to Ameriprise by such use; (2) Partial or total destruction of the value of the Versata's DCM software, trade secrets, and confidential information; (3) lost profits based on Versata's loss of consulting and other DCM-related work to Infosys; and (4) in the alternative, licensing fees and reasonable royalties for Ameriprise's continued use of DCM after termination.

Versata reserves the right to supplement this response as it continues to marshal its evidence, investigate its claims, and conduct discovery.

7.      Identify all third-party licensors of any components of DCM.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome. Plaintiff further objects that to the extent this interrogatory seeks information which is not relevant, and is not reasonable calculated to lead to the discovery of relevant information and is therefore outside the scope of discovery.

8.      Identify all licensees of DCM.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome. Plaintiff further objects that to the extent this interrogatory seeks information which is not relevant, and is not reasonable calculated to lead to the discovery of relevant information and is therefore outside the scope of discovery.

9.      Identify all legal proceedings, pending at any time since January 1, 2005, involving intellectual property claims or claims relating to DCM in which you have been a party.

**ANSWER:**

Plaintiff answers as follows:

- This lawsuit.

6

- Ameriprise Financial, Inc., V. Versata Software, Inc., Court File No. 27-cv-13-211 Filed by Ameriprise Financial in Minnesota. Stayed by the Minnesota Court.

- Versata Software et al v. Infosys Technologies LTD., Case No. 1:10-cv-00792 pending in the Western District of Texas Austin Division.

10.    Identify all Versata employees since January 1, 2007.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome. Plaintiff further objects that to the extent this interrogatory seeks information which is not relevant, and is not reasonable calculated to lead to the discovery of relevant information and is therefore outside the scope of discovery.

11.    Identify all persons with access to DCM source code since January 1, 2007.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome. Plaintiff further objects that to the extent this interrogatory seeks information which is not relevant, and is not reasonable calculated to lead to the discovery of relevant information and is therefore outside the scope of discovery.

12.    Identify all patents you own relating in whole or in part to DCM.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome. Plaintiff further objects that to the extent this interrogatory seeks information which is not relevant, and is not reasonable calculated to lead to the discovery of relevant information and is therefore outside the scope of discovery. Finally Plaintiff objects that this interrogatory is impermissibly vague. It is not clear what Amerirpise means by patents "relating to" DCM.

13.    Identify the dates and circumstances relating to (a) the occasion on which You first learned that decompilation of DCM code had occurred with respect to Ameriprise's DCM and (b) the occasion on which you first objected to decompilation of DCM code with respect to Ameriprise's DCM.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overbroad and unduly burdensome.

Subject to and without waiving the forgoing defendant answers as follows:

Versata management first learned of decompilation on or around July 30, 2010. Versata objected immediately thereafter, including in an August 2, 2010 email and August 19, 2010 letter from Hemant Shah to Ryan Macomb.

4828-4370-0755, v. 2

# EXHIBIT D

**CAUSE NO. D-1-GN-12-003588**

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
|     PLAINTIFFS | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | |
|     DEFENDANTS | § | 53RD JUDICIAL DISTRICT |

## PLAINTIFFS' OBJECTIONS AND ANSWERS TO
## DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

TO:    Plaintiff, Ameriprise Financial, Inc., by and through its attorneys of record, Peter M. Lancaster, Heather D. Redmond, Andrea Caron Wiltrout, and Kristin K. Zinsmaster; Dorsey & Whitney LLP; 50 South Sixth Street, Suite 1500; Minneapolis, Minnesota 55402-1498.

Pursuant to the Texas Rules of Civil Procedure, Plaintiffs Versata Software, Inc. and Versata Development Group, Inc., respond to Defendants' First Set of Requests for Production of Documents.

**EXHIBIT D**

Respectfully Submitted,

AHMAD ZAVITSANOS ANAIPAKOS,
ALAVI, MENSING , P.C.

Steven J. Mitby
State Bar No. 24037123
smitby@azalaw.com
Benjamin F. Foster
State Bar. No. 24080898
bfoster@azalaw.com
Megan Bibb
State Bar No. 24073924
mbibb@azalaw.com
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the foregoing document upon the following counsel by U.S. mail on March 15, 2013:

G. Alan Waldrop
John R. Nelson
Locke Lord LLP
100 Congress Avenue, Suite 300
Austin, Texas 78701
(512) 305-4700 (Telephone)
(512) 305-4800 (Facsimile)
awaldrop@lockelord.com
jnelson@lockelord.com

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2600 (Telephone)
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

Benjamin F. Foster

2

## OBJECTIONS AND RESPONSES TO
## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All documents identified in Defendant's responses to Plaintiff's interrogatories.

**RESPONSE:**

Plaintiff will produce non-privileged responsive documents and supplement as needed.

2.    All documents relating to decompilation of Ameriprise DCM code by anyone other than You.

**RESPONSE:**

Plaintiff objects to the phrase "Ameriprise DCM code" as vague and ambiguous.

Subject to and without waiving the forgoing, and construing "Ameriprise DCM code" to mean the object code for DCM residing on Ameriprise's servers. Plaintiff will produce non-privileged documents once a valid protective order is in place in this case and once Infosys, Ameriprise and Versata have come to terms on a mechanism for producing documents governed by the Infosys Versata protective order to Ameriprise. In fact, Plaintiff has responsive documents ready for immediate production once Ameriprise agrees to a protective order. Plaintiff reserves the right to supplement as needed.

3.    All documents constituting or relating to Versata instructions not to decompile DCM code.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence and is therefore outside the scope of discovery.

Subject to and without waiving the forgoing plaintiff answers as follows:  Plaintiff will produce non-privileged documents relating to Versata's instruction not to decompile directed at Ameriprise or contractors working at or for Ameriprise. In fact, Plaintiff has responsive documents ready for immediate production once Ameriprise agrees to a protective order. Plaintiff reserves the right to supplement as needed.

3

4.     All documents constituting or relating to any Versata communication that refers or relates to any entity being a competitor to Versata in the development of enterprise compensation or configuration software.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence and is therefore outside the scope of discovery.

Subject to and without waiving the forgoing plaintiff answers as follows:  Plaintiff will produce communications to Ameriprise identifying competitors and will produce internal non-privileged Versata communications, if any, identifying competitors. In fact, Plaintiff has responsive documents ready for immediate production once Ameriprise agrees to a protective order. Plaintiff reserves the right to supplement as needed.

5.     All documents, including but not limited to calendar entries, agenda, presentations, or other materials, relating to or used in any training of Infosys personnel or consultants to conduct work on DCM for Versata licensees, including but not limited to Ameriprise.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence and is therefore outside the scope of discovery. In fact, Plaintiff has responsive documents ready for immediate production once Ameriprise agrees to a protective order.

Subject to and without waiving the forgoing plaintiff answers as follows:  Plaintiff will produce non-privileged responsive documents and supplement as needed.

6.     Copies of all screen shots taken by Versata of the Ameriprise CVS.

**RESPONSE:**

Plaintiff will produce non-privileged responsive documents and supplement as needed.

7.     All documents designated as exhibits in depositions in the Infosys Litigation.

4

**RESPONSE:**

Plaintiff will produce these documents once a valid protective order is in place in this case and once Infosys, Amerirprise and Versata have come to terms on a mechanism for producing documents governed by the Infosys Versata protective order to Ameriprise.

8.    All discovery responses served in the Infosys Litigation.

**RESPONSE:**

Plaintiff will produce these documents once a valid protective order is in place in this case and once Infosys, Amerirprise and Versata have come to terms on a mechanism for producing documents governed by the Infosys Versata protective order to Ameriprise. In fact, Plaintiff has responsive documents ready for immediate production once Ameriprise agrees to a protective order.

9.    All documents relating to Ameriprise produced by Infosys in the Infosys

Litigation.

**RESPONSE:**

Plaintiff will produce these documents once a valid protective order is in place in this case and once Infosys, Amerirprise and Versata have come to terms on a mechanism for producing documents governed by the Infosys Versata protective order to Ameriprise.

10.    All documents relating to Ameriprise produced by Versata in the Infosys

Litigation.

**RESPONSE:**

Plaintiff will produce these documents once a valid protective order is in place in this case and once Infosys, Amerirprise and Versata have come to terms on a mechanism for producing documents governed by the Infosys Versata protective order to Ameriprise. In fact, Plaintiff has responsive documents ready for immediate production once Ameriprise agrees to a protective order.

11.    All documents filed with the Court by any party in the Infosys Litigation.

**RESPONSE:**

Plaintiff object that the information sought is obtainable from some other source that is more convenient, less burdensome, or less expensive. The only exception to the forgoing objections is for documents filed under seal in the Infosys Litigation. Plaintiff will produce these documents once a valid protective order is in place in this case and once Infosys, Amerirprise

and Versata have come to terms on a mechanism for producing documents governed by the Infosys Versata protective order to Ameriprise. In fact, Plaintiff has responsive documents ready for immediate production once Ameriprise agrees to a protective order.

12.    All documents constituting or relating to complaints to Versata about software or

service issues (other than standard problem logs) by other customers of DCM software, including

without limitation, to the extent applicable, Waddell & Reed, Mass Mutual Life Insurance

Company, MetLife, Pacific Life, and Penn Mutual.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence and is therefore outside the scope of discovery. Plaintiff further objects to this request because it would require the disclosure of sensitive, confidential, and/or proprietary business information.

13.    All licenses covering or relating to DCM code or components of DCM code

effective at any time after October 1999.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request because it would require the disclosure of sensitive, confidential, and/or proprietary business information.

14.    All internal reviews, evaluations, reports, or other analyses of work performed by

Versata at Ameriprise.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.

15.    All documents relating to security measures taken to protect the confidentiality of

DCM code.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the phrase "DCM code" as vague and ambiguous since it is not clear if Ameriprise means DCM object code or DCM source code. Plaintiff has construed this phrase to mean object code for DCM residing on Ameriprise's servers

Subject to and without waiving the forgoing plaintiff answers as follows: Plaintiff will produce non-privileged responsive documents and supplement as needed.

16.     A copy of the source code for the version of DCM currently licensed to

Ameriprise.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request because it would require the disclosure of sensitive, confidential, proprietary and/or trade secret information.

17.     All documents constituting or relating to business plans, strategies, or projections

referencing or relating to Ameriprise.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request because it would require the disclosure of sensitive, confidential, and/or proprietary business information.

18.     All documents relating to Versata's efforts to sell to Ameriprise Versata's DCM

Enterprise Cloud.

**RESPONSE:**

7

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.

19.     Copies of all annual financial statements, audited if available, for Versata since January 1, 2007.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request because it would require the disclosure of sensitive, confidential, and/or proprietary business information.

20.     Documents sufficient to demonstrate Versata's revenues, costs, and margins on DCM licenses since January 1, 2007.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request because it would require the disclosure of sensitive, confidential, and/or proprietary business information.

21.     Documents sufficient to identify all employees of Versata at all times since January 1, 2007.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request because it would require the disclosure of sensitive, confidential, and/or proprietary business information.

22.     Documents sufficient to identify all persons with access to DCM source code since January 1, 2007.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the forgoing plaintiff answers as follows: Plaintiff will produce non-privileged responsive documents and supplement as needed.

23. All Documents constituting or relating to DCM code supplied to the escrow agent prescribed for Ameriprise by the Agreement.

**RESPONSE:**

Plaintiff objects to this request as overly broad and unduly burdensome. Furthermore Plaintiff objects that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.

24. All statements taken from any person concerning the subject matter of this litigation.

**RESPONSE:**

Plaintiff will produce non-privileged responsive documents and supplement as needed.

25. All documents relating to Ameriprise's alleged material breach of the Agreement.

**RESPONSE:**

Plaintiff objects to this request for production as overly broad. This is a request for all documents relevant to the lawsuit and is therefore improper pursuant to Tex. R. of Civ. P. 193 *cmt 2*. Therefore no response to this request is required.

4835-2255-9762, v. 1

# EXHIBIT E

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| Defendants. | § | |

Filed in The District Court
of Travis County, Texas

T : MAY 0 8 2013

At __10:53A.m.
Amalia Rodriguez-Mendoza, Clerk

## ORDER

Now before the Court is the Motion to Overrule Objections and to Compel Discovery Responses and Depositions filed by Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (together "Ameriprise"). The Court's rulings are set forth below.

### DISCOVERY REQUESTED IN ADVANCE OF TI HEARING

#### Rulings on Written Discovery

Plaintiffs are ordered to provide additional documents and interrogatory answers in accordance with their amended responses and with the below rulings within 3 days of the date of this Order.

*Parties agree that Versata will provide license agreements where Versata is "buyer" and not where Versata is "seller".*

**Document Request No. 13:**
All licenses covering or relating to DCM code or components of DCM code effective at any time after October 1999.

Overly Broad        ✓ Overruled        _____ Sustained

Unduly Burdensome   ✓ Overruled        _____ Sustained

**EXHIBIT E**

090346

Relevance _____ ✓ Overruled _____ Sustained

*Confidentiality* objection is sustained 102.

**Interrogatory No. 7:**
Identify all third-party licensors of any components of DCM.

Overly Broad _____ ✓ Overruled _____ Sustained

Unduly Burdensome _____ ✓ Overruled _____ Sustained

Relevance _____ ✓ Overruled _____ Sustained

**Document Request No. 15:**
All documents relating to security measures taken to protect the confidentiality of DCM code.

Objected to producing documents related to the confidentiality of DCM source code.

_____ ✓ Overruled _____ Sustained

**Document Request No. 16:**
A copy of the source code for the version of DCM currently licensed to Ameriprise. — *not enough info to rule*

Overly Broad _____ Overruled _____ Sustained

Unduly Burdensome _____ Overruled _____ Sustained

Relevance _____ Overruled _____ Sustained

### Ruling on Depositions

Plaintiffs are further ordered to (1) designate witnesses for each of the six topics in Ameriprise's notice of deposition, (2) identify any witnesses who will testify on Plaintiffs' behalf at the temporary injunction hearing, and (3) provide at least two dates on which the corporate representative as well as any other injunction hearing witness(s) will be available for deposition with such dates being at least three (3) business days after Versata serves its amended discovery responses and documents required by the above rulings. All such depositions shall be completed at least three business days prior to a Temporary Injunction hearing.

2

# OTHER DISCOVERY

## Rulings on Plaintiffs' Objections as to Overly Broad, Unduly Burdensome and Relevance

**Document Request No. 12:**
All documents constituting or relating to complaints to Versata about software or service issues (other than standard problem logs) by other customers of DCM software, including without limitation, to the extent applicable, Waddell & Reed, Mass Mutual Life Insurance Company, MetLife, Pacific Life and Penn Mutual.

*not ruled upon MSJ*

| | | |
|---|---|---|
| Overly Broad | _____ Overruled | _____ Sustained |
| Unduly Burdensome | _____ Overruled | _____ Sustained |
| Relevance | _____ Overruled | _____ Sustained |

**Document Request No. 25:**
All documents relating to Ameriprise's alleged material breach of the Agreement.

Objected that overly broad and improper pursuant to Tex. R. Civ. P. 193 cmt. 2.

_____ Overruled    _____ Sustained

*not ruled upon MSJ*

**Interrogatory No. 8:**
Identify all licensees of DCM.

| | | |
|---|---|---|
| Overly Broad | ✓ Overruled | _____ Sustained |
| Unduly Burdensome | ✓ Overruled | _____ Sustained |
| Relevance | ✓ Overruled | _____ Sustained |

**Interrogatory No. 10:**
Identify all Versata employees since January 1, 2007.

| | | |
|---|---|---|
| Overly Broad | ✓ Overruled | _____ Sustained |
| Unduly Burdensome | ✓ Overruled | _____ Sustained |
| Relevance | ✓ Overruled | _____ Sustained |

**Document Request No. 21:**
Documents sufficient to identify all employees of Versata at all times since January 1, 2007.

Overly Broad    _____ Overruled    _____ Sustained

*not ruled upon*

3

990346

| | | | | |
|---|---|---|---|---|
| Unduly Burdensome | _____ | Overruled | _____ | Sustained |
| Relevance | _____ | Overruled | _____ | Sustained |

**Interrogatory No. 11:** *Parties agree that Versata will provide identify all entities with access to DCM source code since January 1, 2007.*
Identify all persons with access to DCM source code since January 1, 2007.

| | | | | |
|---|---|---|---|---|
| Overly Broad | _____ | Overruled | ✓ | Sustained |
| Unduly Burdensome | _____ | Overruled | ✓ | Sustained |
| Relevance | _____ | Overruled | / | Sustained |

**Interrogatory No. 12:** *Versata agrees to provide a list of patent numbers it believes may relate to DCM.*
Identify all patents you own relating in whole or in part to DCM.

| | | | | |
|---|---|---|---|---|
| Overly Broad | ✓ | Overruled | _____ | Sustained |
| Unduly Burdensome | ✓ | Overruled | _____ | Sustained |
| Relevance | _____ | Overruled | ✓ | Sustained |

### Confidentiality Objections – (Request for Production Nos. 12-13, 16, and 21)

In response to Request for Production Nos. 12-13, 16, and 21, Plaintiffs asserted confidentiality objections stating that the requests "would require the disclosure of sensitive, confidential, proprietary and/or trade secret information," (the "confidentiality objection") among other objections, and did not produce documents. Upon the entry of a protective order, Plaintiffs are ordered to produce any documents otherwise withheld on the basis of the confidentiality objection.

IT IS SO ORDERED on this ___8___ day of May 2013.

_____
JUDGE PRESIDING

4

990346

# EXHIBIT F
## (Redacted pursuant to Agreed Protective Order)

# EXHIBIT G



PETER M. LANCASTER
(612) 340-7811
FAX (612) 340-8856
lancaster.peter@dorsey.com

June 19, 2013

**_BY E-MAIL_**

Amir Alavi, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, P.C.
1221 McKinney Street, Suite 3460
Houston, TX 77010

     Re:   *Versata Software v. Ameriprise Financial*

Dear Amir:

     We have become aware of an issue that persuades us that it would benefit both Ameriprise and Versata to end this litigation promptly.

     Discovery has confirmed the presence of third-party software within what Versata has asserted to be proprietary and confidential DCM code. We have also learned that Versata has not complied with the terms and conditions of the licenses for some or all of that software, thereby terminating Versata's right to use and distribute such software within DCM. Versata's failure to comply with third-party licenses supports Ameriprise's claim that Versata breached its warranty in §8.1 of the Master License Agreement that, among other things, "Licensor has the right to furnish the Products, Documentation, and other materials ... free of all liens, claims, encumbrances and other restrictions... ."

     In addition, certain of the third-party software Versata has incorporated within DCM is open source software with significant consequences to this case. Recently obtained Versata documents confirm the presence of dozens of open source programs in DCM that are subject to various open source licenses. One example of open source software in DCM is Ximpleware's XML parser, contained in the vtd-xml.jar file. This parser enables DCM to read and parse XML files that get pulled from external sources, so that DCM can understand and manipulate the contents of such files. The current DCM version installed at Ameriprise, Version 3.9, incorporates Ximpleware into at least three distinct portions of DCM code. The integration of Ximpleware's parser into DCM is illustrated by the fact that of the 700 or so component parts of DCM that appear to originate with Versata, 362 depend directly or indirectly on Ximpleware. DCM uses this open-source parser to perform core functions like compensation and licensure verification. We understand that if Ximpleware's software were to be removed from Version 3.9 of DCM, DCM would not function. Versata's representative confirmed at the deposition on Friday that DCM is a single, integrated whole, all of whose files are interrelated.

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • **T** 612.340.2600 • **F** 612.340.2868
SUITE 1500 • 50 SOUTH SIXTH STREET • MINNEAPOLIS, MINNESOTA 55402-1498
USA  CANADA  EUROPE  ASIA-PACIFIC

**EXHIBIT G**



Amir Alavi, Esq.
June 19, 2013
Page 2

Ximpleware's parser is a third-party, open-source program readily downloadable from the Internet. Its use is conditioned upon and governed by Version 2 of the GNU General Public License, or "GPL." The GPL is an open source software license written and promulgated by the Free Software Foundation ("FSF") to ensure two things: that parties cannot misappropriate the work product of open-source developers for commercial gain without severe consequences; and to ensure that all recipients of GPL-licensed software continue to have access to at least its source code, and remain free to use and modify source code for their own purposes without restriction. A copy of version 2 of the GPL is enclosed.

The GPL is considered a "viral" license in that its terms and conditions apply to any program that includes GPL code. A GPL licensee "must cause any work that you distribute or publish, that in whole or in part contains or is derived from the [GPL] Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License." §0; §2(b). "These requirements apply to the modified work as a whole." §2. The terms and conditions of the GPL, rather than those of the MLA, govern Versata's distribution of DCM, because Versata chose to incorporate and distribute a program that incorporates the GPL-licensed Ximpleware software. *Id.* §5. In other words, because Ximpleware is provided under the terms of the GPL, and DCM incorporates Ximpleware as a key component, DCM in its entirety is now governed by the terms and conditions of the GPL.

The GPL requires anyone who incorporates a GPL-licensed program in a broader program, and particularly those who integrate such software into a broader program, to make the broader program's source code available to its recipients. It also prohibits anyone who incorporates a GPL-licensed program from imposing any restrictions on the recipients' use of the distributed program as a whole. As stated in the GPL:

> You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also ... [a]ccompany it with the complete corresponding machine-readable source code [or an offer to do so]. *Id.* §3

> Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute, or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. *Id.* §6.

Because a work based on the Program is defined in Section 0 of the GPL to include works like DCM that contain the open source software, Ameriprise is entitled to have and use the DCM source code for its own purposes free from the restrictions found in the MLA. For at least these



Amir Alavi, Esq.
June 19, 2013
Page 3

reasons, we cannot see any plausible basis for any Versata claim that it is entitled to prevent Ameriprise or any other DCM customer from free use of DCM source code. We accordingly demand release of the source code without restriction for DCM Version 3.9, including all software incorporated from prior or subsequent versions or patches, and related documentation.

We think it is in Versata's interest to resolve this case now, because it is likely that before and during any temporary injunction hearing, summary judgment hearing, and/or trial we will be compelled to explain to the Court this additional reason that Versata's case has no basis. A public debate between the parties could have a substantial impact on Versata's business wholly apart from its relationship with Ameriprise. The author and owner of the copyright to Ximpleware's software and the Free Software Foundation may also have an interest in Versata's actions, and we believe that it would benefit Ameriprise and the Court to involve one or both entities in this case should it continue much longer.

Please let us know by June 27, 2013 whether Versata has any interest in meeting to resolve Versata's obligations under the GPL without further hearings or motion practice. We will assume that a failure to respond indicates Versata's preference to resolve this debate through Court processes.

Very truly yours,

Peter M. Lancaster

PML:dbr

DORSEY & WHITNEY LLP

Giants like Microsoft and Apple are trying harder than ever to control the software you use. The FSF brings software freedom supporters together to amplify your voices and make an impact.

In 2013, we want to grow the free software movement. Start your membership today with a $10 donation and help us crank up the volume.

# GNU General Public License, version 2

- The latest version of the GPL, version 3

**Help crank it up.** What to do if you see a possible GPL violation

**Donate now!** Translations of GPLv2
- GPLv2 Frequently Asked Questions
- The GNU General Public License version 2 (GPLv2) in other formats: plain text, Texinfo, LaTeX, standalone HTML, Docbook

## Table of Contents

- GNU GENERAL PUBLIC LICENSE
  - Preamble
  - TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION
  - How to Apply These Terms to Your New Programs

## GNU GENERAL PUBLIC LICENSE

Version 2, June 1991

```
Copyright (C) 1989, 1991 Free Software Foundation, Inc.
51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA

Everyone is permitted to copy and distribute verbatim copies
of this license document, but changing it is not allowed.
```

## Preamble

The licenses for most software are designed to take away your freedom to share and change it. By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software--to make sure the software is free for all its users. This General Public License applies to most of the Free Software Foundation's software and to any other program whose authors commit to using it. (Some other Free Software Foundation software is covered by the GNU Lesser General Public License instead.) You can apply it to your programs, too.

When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software (and charge for this service if you wish), that you receive source code or can get it if you want it, that you can

change the software or use pieces of it in new free programs; and that you know you can do these things.

To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights. These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.

For example, if you distribute copies of such a program, whether gratis or for a fee, you must give the recipients all the rights that you have. You must make sure that they, too, receive or can get the source code. And you must show them these terms so they know their rights.

We protect your rights with two steps: (1) copyright the software, and (2) offer you this license which gives you legal permission to copy, distribute and/or modify the software.

Also, for each author's protection and ours, we want to make certain that everyone understands that there is no warranty for this free software. If the software is modified by someone else and passed on, we want its recipients to know that what they have is not the original, so that any problems introduced by others will not reflect on the original authors' reputations.

Finally, any free program is threatened constantly by software patents. We wish to avoid the danger that redistributors of a free program will individually obtain patent licenses, in effect making the program proprietary. To prevent this, we have made it clear that any patent must be licensed for everyone's free use or not licensed at all.

The precise terms and conditions for copying, distribution and modification follow.

## TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION

**0.** This License applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License. The "Program", below, refers to any such program or work, and a "work based on the Program" means either the Program or any derivative work under copyright law: that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/or translated into another language. (Hereinafter, translation is included without limitation in the term "modification".) Each licensee is addressed as "you".

Activities other than copying, distribution and modification are not covered by this License; they are outside its scope. The act of running the Program is not restricted, and the output from the Program is covered only if its contents constitute a work based on the Program (independent of having been made by running the Program). Whether that is true depends on what the Program does.

**1.** You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

You may charge a fee for the physical act of transferring a copy, and you may at your option offer warranty protection in exchange for a fee.

**2.** You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work under the terms of Section 1 above, provided that you also meet all of these conditions:

**a)** You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.

**b)** You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.

**c)** If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License. (Exception: if the Program itself is interactive but does not normally print such an announcement, your work based on the Program is not required to print an announcement.)

These requirements apply to the modified work as a whole. If identifiable sections of that work are not derived from the Program, and can be reasonably considered independent and separate works in themselves, then this License, and its terms, do not apply to those sections when you distribute them as separate works. But when you distribute the same sections as part of a whole which is a work based on the Program, the distribution of the whole must be on the terms of this License, whose permissions for other licensees extend to the entire whole, and thus to each and every part regardless of who wrote it.

Thus, it is not the intent of this section to claim rights or contest your rights to work written entirely by you; rather, the intent is to exercise the right to control the distribution of derivative or collective works based on the Program.

In addition, mere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this License.

**3.** You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following:

**a)** Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,

**b)** Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,

**c)** Accompany it with the information you received as to the offer to distribute corresponding source code. (This alternative is allowed only for noncommercial distribution and only if you received the program in object code or executable form with such an offer, in accord with Subsection b above.)

The source code for a work means the preferred form of the work for making modifications to it. For an executable work, complete source code means all the source code for all modules it contains, plus any associated interface definition files, plus the scripts used to control compilation and installation of the executable. However, as a special exception, the source code distributed need not include anything that is normally distributed (in either source or binary form) with the major components (compiler, kernel, and so on) of the operating system on which the executable runs, unless that component itself accompanies the executable.

If distribution of executable or object code is made by offering access to copy from a designated place, then offering equivalent access to copy the source code from the same place counts as distribution of

the source code, even though third parties are not compelled to copy the source along with the object code.

4. You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

5. You are not required to accept this License, since you have not signed it. However, nothing else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.

6. Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. You are not responsible for enforcing compliance by third parties to this License.

7. If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program.

If any portion of this section is held invalid or unenforceable under any particular circumstance, the balance of the section is intended to apply and the section as a whole is intended to apply in other circumstances.

It is not the purpose of this section to induce you to infringe any patents or other property right claims or to contest validity of any such claims; this section has the sole purpose of protecting the integrity of the free software distribution system, which is implemented by public license practices. Many people have made generous contributions to the wide range of software distributed through that system in reliance on consistent application of that system; it is up to the author/donor to decide if he or she is willing to distribute software through any other system and a licensee cannot impose that choice.

This section is intended to make thoroughly clear what is believed to be a consequence of the rest of this License.

8. If the distribution and/or use of the Program is restricted in certain countries either by patents or by copyrighted interfaces, the original copyright holder who places the Program under this License may add an explicit geographical distribution limitation excluding those countries, so that distribution is permitted only in or among countries not thus excluded. In such case, this License incorporates the limitation as if written in the body of this License.

9. The Free Software Foundation may publish revised and/or new versions of the General Public License from time to time. Such new versions will be similar in spirit to the present version, but may differ in detail to address new problems or concerns.

Case 1:14-cv-00012-SS   Document 1-7   Filed 01/07/14   Page 108 of 131

Each version is given a distinguishing version number. If the Program specifies a version number of this License which applies to it and "any later version", you have the option of following the terms and conditions either of that version or of any later version published by the Free Software Foundation. If the Program does not specify a version number of this License, you may choose any version ever published by the Free Software Foundation.

**10.** If you wish to incorporate parts of the Program into other free programs whose distribution conditions are different, write to the author to ask for permission. For software which is copyrighted by the Free Software Foundation, write to the Free Software Foundation; we sometimes make exceptions for this. Our decision will be guided by the two goals of preserving the free status of all derivatives of our free software and of promoting the sharing and reuse of software generally.

**NO WARRANTY**

**11.** BECAUSE THE PROGRAM IS LICENSED FREE OF CHARGE, THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY APPLICABLE LAW. EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM IS WITH YOU. SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

**12.** IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MAY MODIFY AND/OR REDISTRIBUTE THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS), EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**END OF TERMS AND CONDITIONS**

**How to Apply These Terms to Your New Programs**

If you develop a new program, and you want it to be of the greatest possible use to the public, the best way to achieve this is to make it free software which everyone can redistribute and change under these terms.

To do so, attach the following notices to the program. It is safest to attach them to the start of each source file to most effectively convey the exclusion of warranty; and each file should have at least the "copyright" line and a pointer to where the full notice is found.

```
one line to give the program's name and an idea of what it does.
Copyright (C) yyyy  name of author

This program is free software; you can redistribute it and/or
modify it under the terms of the GNU General Public License
as published by the Free Software Foundation; either version 2
of the License, or (at your option) any later version.

This program is distributed in the hope that it will be useful,
but WITHOUT ANY WARRANTY; without even the implied warranty of
MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
```

```
GNU General Public License for more details.

You should have received a copy of the GNU General Public License
along with this program; if not, write to the Free Software
Foundation, Inc., 51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA.
```

Also add information on how to contact you by electronic and paper mail.

If the program is interactive, make it output a short notice like this when it starts in an interactive mode:

```
Gnomovision version 69, Copyright (C) year name of author
Gnomovision comes with ABSOLUTELY NO WARRANTY; for details
type `show w'.  This is free software, and you are welcome
to redistribute it under certain conditions; type `show c'
for details.
```

The hypothetical commands `show w' and `show c' should show the appropriate parts of the General Public License. Of course, the commands you use may be called something other than `show w' and `show c'; they could even be mouse-clicks or menu items--whatever suits your program.

You should also get your employer (if you work as a programmer) or your school, if any, to sign a "copyright disclaimer" for the program, if necessary. Here is a sample; alter the names:

```
Yoyodyne, Inc., hereby disclaims all copyright
interest in the program `Gnomovision'
(which makes passes at compilers) written
by James Hacker.

signature of Ty Coon, 1 April 1989
Ty Coon, President of Vice
```

This General Public License does not permit incorporating your program into proprietary programs. If your program is a subroutine library, you may consider it more useful to permit linking proprietary applications with the library. If this is what you want to do, use the GNU Lesser General Public License instead of this License.

# EXHIBIT H
## (Redacted pursuant to Agreed Protective Order)

Filed
13 July 24 P5:40
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-003588

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY | § | |
| DEVELOPMENT GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL | § | |
| SERVICES, INC., AMERICAN | § | |
| ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| Defendants. | | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Defendants' Motion for Partial Summary Judgment will be heard on Thursday, August 15, 2013 at 9:00 a.m. in the 53rd Judicial Court of Travis County, Texas. You are invited to attend.

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.

By: /s/ Christopher D. Sileo
Stephen E. McConnico
State Bar No. 13450300
Christopher D. Sileo
State Bar No. 24027977
600 Congress Avenue, Suite 1500
Austin, Texas 78701-2589
Phone | (512) 495-6300
Fax | (512) 474-0731

## ATTORNEYS FOR DEFENDANTS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on July 24, 2013.

Travis Barton                              *VIA HAND DELIVERY*
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                               *VIA FACSIMILE* 713.655.0062
Amir Alavi
Ben Foster
Ahmad, Zavitsanos, Anaipakos, Alvi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010

                              /s/ Christopher D. Sileo
                              Christopher D. Sileo

2

987387

SCOTT BRIGHTON                                    6/13/2013

128

1                        NO. D-1-GN-12-003588

2    VERSATA SOFTWARE, INC.,    ) IN THE DISTRICT COURT
     f/k/a TRILOGY SOFTWARE,    )
3    INC., and VERSATA          )
     DEVELOPMENT GROUP, INC.,   )
4    f/k/a TRILOGY DEVELOPMENT   )
     GROUP, INC.,               )
5         Plaintiffs,           )
                                )
6    VS.                        ) TRAVIS COUNTY, TEXAS
                                )
7    AMERIPRISE FINANCIAL,      )
     INC., AMERIPRISE           )
8    FINANCIAL SERVICES, INC.,  )
     AMERICAN ENTERPRISE        )
9    INVESTMENT SERVICES,       )
     INC.,                      )
10        Defendants.           ) 53RD JUDICIAL DISTRICT

11

12                    REPORTER'S CERTIFICATION
              VIDEOTAPED DEPOSITION OF SCOTT BRIGHTON
                         JUNE 13, 2013
13

14        I, KIM SEIBERT, Certified Shorthand Reporter in and

15   for the State of Texas, hereby certify to the

16   following:

17        That the witness, SCOTT BRIGHTON, was duly sworn by

18   the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21        That the deposition transcript was submitted on

22   10 - 17    , 2013, to the witness or to the

23   attorney for the witness for examination, signature and

24   return to me by    7 . 10    , 2013;

25        That the amount of time used by each party at the

Filed in The District Court
of Travis County, Texas

AUG 0 5 2013

At_____10:44_____A.M.
Amalia Rodriguez-Mendoza, Clerk

U.S. LEGAL SUPPORT - AUSTIN, TEXAS
(800) 734-4995

14U870

SCOTT BRIGHTON                                              6/13/2013

129

1    deposition is as follows:

2         Mr. Richard D. Milvenan -
          Mr. Peter M. Lancaster - 2 hrs. 58 min.
3

4         That pursuant to information given to the

5    deposition officer at the time said testimony was

6    taken, the following includes counsel for all parties

7    of record:

8         Mr. Richard D. Milvenan and Mr. Travis Barton and
     Mr. Ben Foster, Attorneys for Plaintiffs;
9         Mr. Peter M. Lancaster and Mr. Christopher D.
     Sileo, Attorneys for Defendant.
10

11        I further certify that I am neither counsel for,

12   related to, nor employed by any of the parties or

13   attorneys in the action in which this proceeding was

14   taken, and further that I am not financially or

15   otherwise interested in the outcome of the action.

16        Further certification requirements pursuant to Rule

17   203 of TRCP will be certified to after they have

18   occurred.

19

20

21

22

23

24

25

SCOTT BRIGHTON                                    6/13/2013

130

1       Certified to by me this ___17___ of __Jun___ ,

2    2013.

3

4

5

6                          Kim Seibert, Texas CSR 4589
7                          Expiration Date 12-31-2014
                           U.S. Legal Support, Inc.
8                          701 Brazos, Suite 380
                           Austin, Texas  78701
9                          Firm Registration 344
                           Expiration Date 12-31-2014

10

11      Job No. 4-AUSTIN-144870 KS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SCOTT BRIGHTON                                              6/13/2013

                                                                    131

1              FURTHER CERTIFICATION UNDER RULE 203 TRCP

2          The original deposition was/was not returned to the

3    deposition officer on July 10th, 2013          ;

4          If returned, the attached Changes and Signature

5    page contains any changes and the reasons therefor;

6          If returned, the original deposition was delivered

7    to Mr. Peter M. Lancaster, Custodial Attorney;

8          That $ 1472.36     is the deposition officer's

9    charges to the Defendants for preparing the original

10   deposition transcript and any copies of exhibits;

11         That the deposition was delivered in accordance

12   with Rule 203.3, and that a copy of this certificate

13   was served on all parties shown herein on and filed

14   with the Clerk.

15         Certified to by me this    25th     day of

16   July                  , 2013.

17

18

19             Kim Seibert BP.AC.

                Kim Seibert, Texas CSR 4589

20              Expiration Date 12-31-2014
                U.S. Legal Support, Inc.

21              701 Brazos, Suite 380
                Austin, Texas  78701

22              Firm Registration 344
                Expiration Date 12-31-2014

23

24         Job No. 4-AUSTIN-144870 KS

25

                 U.S. LEGAL SUPPORT - AUSTIN, TEXAS
                        (800) 734-4995

RANGARAJAN VENKATESAN                                6/14/2013

147

1                        NO. D-1-GN-12-003588

2    VERSATA SOFTWARE, INC.,    ) IN THE DISTRICT COURT
     f/k/a TRILOGY SOFTWARE,    )
3    INC., and VERSATA          )
     DEVELOPMENT GROUP, INC.,   )
4    f/k/a TRILOGY DEVELOPMENT   )
     GROUP, INC.,               )
5         Plaintiffs,           )
                                )
6    VS.                        ) TRAVIS COUNTY, TEXAS
                                )   Filed in The District Court
7    AMERIPRISE FINANCIAL,      )     of Travis County, Texas
     INC., AMERIPRISE           )
8    FINANCIAL SERVICES, INC.,  )       AUG 0 5 2013
     AMERICAN ENTERPRISE        )
9    INVESTMENT SERVICES,       )   At_____10:44_____A.M.
     INC.,                      )     Amalia Rodriguez-Mendoza, Clerk
10        Defendants.           ) 53RD JUDICIAL DISTRICT

11

12                    REPORTER'S CERTIFICATION
        VIDEOTAPED DEPOSITION OF THE CORPORATE REPRESENTATIVE
13                  OF VERSATA SOFTWARE, INC.
                      (RANGARAJAN VENKATESAN)
                         JUNE 14, 2013

14

15        I, KIM SEIBERT, Certified Shorthand Reporter in and

16   for the State of Texas, hereby certify to the

17   following:

18        That the witness, RANGARAJAN VENKATESAN, was duly

19   sworn by the officer and that the transcript of the

20   oral deposition is a true record of the testimony given

21   by the witness;

22        That the deposition transcript was submitted on

23   _6/17_____, 2013, to the witness or to the

24   attorney for the witness for examination, signature and

25   return to me by _7/9/_____, 2013;

144/8/62

RANGARAJAN VENKATESAN                                    6/14/2013

148

1        That the amount of time used by each party at the

2   deposition is as follows:

3        Mr. Benjamin Foster -
     Mr. Peter M. Lancaster - 3 hrs. 42 min.
4

5        That pursuant to information given to the

6   deposition officer at the time said testimony was

7   taken, the following includes counsel for all parties

8   of record:

9        Messrs. Ben Foster and Travis Barton, Attorneys for
     Plaintiffs;
10       Messrs. Peter M. Lancaster and Christopher Sileo,
     Attorney for Defendants.
11       I further certify that I am neither counsel for,

12   related to, nor employed by any of the parties or

13   attorneys in the action in which this proceeding was

14   taken, and further that I am not financially or

15   otherwise interested in the outcome of the action.

16       Further certification requirements pursuant to Rule

17   203 of TRCP will be certified to after they have

18   occurred.

19

20

21

22

23

24

25

RANGARAJAN VENKATESAN                                        6/14/2013

149

1          Certified to by me this _17_ of _June_,

2    2013.

3

4

5

6                                    Kim Seibert, Texas CSR 4589
7                                    Expiration Date 12-31-2014
                                     U.S. Legal Support, Inc.
8                                    701 Brazos, Suite 380
                                     Austin, Texas  78701
9                                    Firm Registration 344
                                     Expiration Date 12-31-2014
10

11   Job No. 4-AUSTIN-144862 KS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RANGARAJAN VENKATESAN                                    6/14/2013

                                                                    150

1          FURTHER CERTIFICATION UNDER RULE 203 TRCP

2          The original deposition was/was not returned to the

3      deposition officer on _July 9th, 2013_____;

4          If returned, the attached Changes and Signature

5      page contains any changes and the reasons therefor;

6          If returned, the original deposition was delivered

7      to Mr. Peter M. Lancaster, Custodial Attorney;

8          That $ 1897.50 __ is the deposition officer's

9      charges to the Defendants for preparing the original

10     deposition transcript and any copies of exhibits;

11         That the deposition was delivered in accordance

12     with Rule 203.3, and that a copy of this certificate

13     was served on all parties shown herein on and filed

14     with the Clerk.

15         Certified to by me this __25th___ day of

16     _July,_____, 2013.

17

18

19              _Kim Seibert_ BP.AC.

20              Kim Seibert, Texas CSR 4589
                Expiration Date 12-31-2014
21              U.S. Legal Support, Inc.
                701 Brazos, Suite 380
22              Austin, Texas  78701
                Firm Registration 344
23              Expiration Date 12-31-2014

24

25     Job No. 4-AUSTIN-144862 KS

Filed in The District Court
of Travis County, Texas

STEVEN MITCHELL STRAUSS - CONFIDENTIAL - AEO

AUG 0 1 2013

At_____11:02 A.M.
Amalia Rodriguez-Mendoza, Clerk      Page 94

1   STATE OF MINNESOTA        )
                              )   ss.       CERTIFICATE
2   COUNTY OF BLUE EARTH      )

3              Be it known that I, Timothy J. McGowan,
    recorded the foregoing videotaped deposition of
4   STEVEN MITCHELL STRAUSS;
               That I was then and there a notary public
5   in and for the County of Blue Earth and State of
    Minnesota;
6              That by virtue thereof I was then and
    there duly authorized to administer an oath;
7              That the witness, before testifying, was
    by me first duly sworn to testify to the truth, the
8   whole truth, and nothing but the truth relative to
    said cause;
9              That the testimony of said witness was
    recorded in stenotypy by me and was reduced to
10  typewriting by me or under my direction, and that
    the transcript is a true record, to the best of my
11  ability, of the testimony given by the witness;
               That the right to read and sign the
12  transcript by the said witness was reserved;
               That the cost of the original was charged
13  to the attorney noticing the deposition and that
    all parties that ordered copies were charged
14  equally;
               That I am not related to or employed by
15  or contracting with any of the parties or attorneys
    in this matter, nor am I interested in the outcome
16  of the action; and
               That the reading and signing has been
17  executed as evidenced by the following page(s).
               WITNESS my hand and seal this 27th day of
18  June, 2013.

19

20  TIMOTHY J. McGOWAN          Timothy J. McGowan, Notary Public
    Notary Public-Minnesota
21  My Commission Expires Jan 31, 2015   My commission expires
                                         January 31, 2015.
22

23

24                       Firm No. Dallas: 69 Houston: 373

25



**Deposition and Litigation Services**

www.hglitigation.com        1-888-656-DEPO (3376)

July 26, 2013

**Via United Parcel Services**
Amalia Rodriguez-Mendoza
Travis County District Clerk
PO Box 679003
Austin, TX  78767

Re:    Deposition of Steven M. Strauss
       Deposition Date: 06/26/2013
       Versata Software, Inc., et al v Ameriprise Financial, Inc. et al
       Cause No.: D-1-GN-003588

Dear Ms. Rodriguez-Mendoza:

Enclosed for filing, please find the Court Reporter Certificate Page:

**X**  As of today's date our office has not received the witness errata & signature page.

_  Errata with changes (Copy/Original)
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_  Errata without changes
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_  Signature page with signature (Copy/Original)
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_  Signature page without signature
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

Please do not hesitate to contact our office should you need further assistance.

              Respectfully yours,

              Amanda Reyes
              HG Litigation Services

DH/ar
Enclosure
Demetrios Anaipakos
Heather Redmond
Theresa Bevilacqua

# 888.656.DEPO
# www.hglitigation.com
### 2501 Oak Lawn Avenue, Suite 600 • Dallas, Texas 75219

 **Deposition and Litigation Services**

www.hglitigation.com        1-888-656-DEPO (3376)

June 28, 2013

Heather Redmond
Dorsey & Whitney, LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498

Re:     Deposition of Steven M. Strauss
        Deposition Date: 06/26/2013
        Versata Software, Inc., et al v Ameriprise Financial, Inc. et al
        Cause No.: D-1-GN-003588

Dear Heather Redmond:

        Please have your client read and sign the attached Oral Deposition, making any necessary changes on the errata sheet that is provided.

        Please return the original errata and witness signature page to the office listed below within <u>twenty (20)</u> days or before <u>July 18, 2013</u> for filing, as agreed by the parties.

        If we can be further assistance to you, please do not hesitate to contact our office.


                        Respectfully yours,

                        Amanda Reyes
                        HG Litigation Services
                        1-888-656-DEPO


DH/ar
Enclosure


# 888.656.DEPO
# www.hglitigation.com
2501 Oak Lawn Avenue, Suite 600 • Dallas, Texas 75219

Filed
13 August 9 A11:19
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-003588

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY | § | |
| DEVELOPMENT GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL | § | |
| SERVICES, INC., AMERICAN | § | |
| ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| Defendants. | | |

## <u>AMENDED NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that, pursuant to an agreement of the Parties, Defendants' Motion for Partial Summary Judgment will now be heard on Thursday, August 29, 2013 at 2:00 p.m. in the 53rd Judicial Court of Travis County, Texas.  You are invited to attend.

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.


By: <u>/s/ Christopher D. Sileo</u>
     Stephen E. McConnico
     State Bar No. 13450300
     Christopher D. Sileo
     State Bar No. 24027977
     600 Congress Avenue, Suite 1500
     Austin, Texas  78701-2589
     Phone | (512) 495-6300
     Fax | (512) 474-0731

1017410

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

**ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on August 9, 2013.

Travis Barton                                   *VIA HAND DELIVERY AND EMAIL*
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                                    *VIA FACSIMILE 713.655.0062 AND*
Ben Foster                                      *EMAIL*
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010

                                /s/ Christopher D. Sileo
                                Christopher D. Sileo

2

1017410

BRYAN DOHERTY - CONFIDENTIAL - AEO

Filed in The District Court
of Travis County, Texas

AUG 1 3 2013

Amalia Rodriguez-Mendoza, Clerk

At ____ 11:05 A ____ M.

Page 164

1           REPORTER'S CERTIFICATE

2          BE IT KNOWN that I, Carol Danielson Bille,

3     RPR, took the foregoing videotaped deposition of

4     BRYAN P. DOHERTY;

5          That the witness, before testifying, was first

6     duly sworn to testify as to the whole truth and

7     nothing but the truth relative to said cause;

8          That the testimony of said witness was

9     recorded in shorthand by me and transcribed by me

10    and that the foregoing deposition is a true record

11    of the testimony given by said witness, and that

12    the reading and signing of the foregoing deposition

13    by said witness was not waived by the witness and

14    respective counsel;

15         That I am not related to any of the parties

16    hereto, nor an employee of them, nor interested in

17    the outcome of the action, and that the cost of the

18    original has been charged to the party who noticed

19    the deposition, and all parties who ordered copies

20    have been charged at the same rate for such copies.

21         WITNESS my hand and seal this 19th day of

22    June, 2013.                    _Carol Danielson Bille_

23

24                    Carol Danielson Bille
                      Registered Professional Reporter

25    My Commission Expires:  1/31/15

 **Deposition and Litigation Services**

www.hglitigation.com          1-888-656-DEPO (3376)

June 20, 2013

Heather Redmond
Dorsey & Whitney, LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498

Re:      Deposition of Bryan Doherty
         Deposition Date: 06/17/2013
         Versata Software, Inc., et al v Ameriprise Financial, Inc. et al
         Cause No.: D-1-GN-003588

Dear Heather Redmond:

         Please have your client read and sign the attached Oral Deposition, making any
necessary changes on the errata sheet that is provided.

         Please return the original errata and witness signature page to the office listed
below within thirty (30) days or before July 20, 2013 for filing, as agreed by the parties.

         If we can be further assistance to you, please do not hesitate to contact our office.


                                    Respectfully yours,

                                    Amanda Reyes
                                    HG Litigation Services
                                    1-888-656-DEPO


DH/ar
Enclosure


# 888.656.DEPO
## www.hglitigation.com
2501 Oak Lawn Avenue, Suite 600 • Dallas, Texas 75219



**Deposition and Litigation Services**

www.hglitigation.com       1-888-656-DEPO (3376)

Filed in The District Court
of Travis County, Texas

AUG 13 2013 **MR**

At_____A.M.
Amalia Rodriguez-Mendoza, Clerk

August 5, 2013

**Via CMRRR**
Amalia Rodriguez-Mendoza
Travis County District Clerk
PO Box 679003
Austin, TX 78767

Re:     Deposition of Bryan Doherty
        Deposition Date: 06/17/2013
        Versata Software, Inc., et al v Ameriprise Financial, Inc. et al
        Cause No.: D-1-GN-003588

Dear Ms. Rodriguez-Mendoza:

Enclosed for filing, please find the Court Reporter Certificate Page:

**X** As of today's date our office has not received the witness errata & signature page.

_ Errata with changes (Copy/Original)
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_ Errata without changes
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_ Signature page with signature (Copy/Original)
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_ Signature page without signature
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

Please do not hesitate to contact our office should you need further assistance.

                        Respectfully yours,

                        Amanda Reyes
                        HG Litigation Services

DH/ar
Enclosure
Demetrios Anaipakos
Heather Redmond

# 888.656.DEPO
# www.hglitigation.com

2501 Oak Lawn Avenue, Suite 600 • Dallas, Texas 75219

RICHARD RYAN MACOMB – CONFIDENTIAL – AEO

Filed in The District Court
of Travis County, Texas

AUG 1 3 2013

Page 100

At_____ M.

1    REPORTER'S CERTIFICATE   Amalia Rodriguez-Mendoza, Clerk

2        BE IT KNOWN that I, Carol Danielson Bille,

3    RPR, took the foregoing videotaped deposition of

4    RICHARD RYAN MACOMB;

5        That the witness, before testifying, was first

6    duly sworn to testify as to the whole truth and

7    nothing but the truth relative to said cause;

8        That the testimony of said witness was

9    recorded in shorthand by me and transcribed by me

10   and that the foregoing deposition is a true record

11   of the testimony given by said witness, and that

12   the reading and signing of the foregoing deposition

13   by said witness was not waived by the witness and

14   respective counsel;

15       That I am not related to any of the parties

16   hereto, nor an employee of them, nor interested in

17   the outcome of the action, and that the cost of the

18   original has been charged to the party who noticed

19   the deposition, and all parties who ordered copies

20   have been charged at the same rate for such copies.

21       WITNESS my hand and seal this 19th day of

22   June, 2013.

23   _Carol Danielson Bille_
     Carol Danielson Bille

24   Registered Professional Reporter
     My Commission Expires:  1/31/15

25



**Deposition and Litigation Services**

www.hglitigation.com          1-888-656-DEPO (3376)

Filed in The District Court
of Travis County, Texas

AUG 13 2013   **MR**

At _____ M.
Amalia Rodriguez-Mendoza, Clerk

August 5, 2013

**Via CMRRR**
Amalia Rodriguez-Mendoza
Travis County District Clerk
PO Box 679003
Austin, TX  78767

Re:     Deposition of Ryan Macomb
        Deposition Date: 06/17/2013
        Versata Software, Inc., et al v Ameriprise Financial, Inc. et al
        Cause No.: D-1-GN-003588

Dear Ms. Rodriguez-Mendoza:

Enclosed for filing, please find the Court Reporter Certificate Page:

**X**  As of today's date our office has not received the witness errata & signature page.

_  Errata with changes (Copy/Original)
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_  Errata without changes
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_  Signature page with signature (Copy/Original)
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

_  Signature page without signature
   FedEx/UPS/CMRRR/USPS/Email *For office use only*

Please do not hesitate to contact our office should you need further assistance.

                    Respectfully yours,

                    Amanda Reyes
                    HG Litigation Services

DH/ar
Enclosure
Demetrios Anaipakos
Heather Redmond

# 888.656.DEPO
# www.hglitigation.com
### 2501 Oak Lawn Avenue, Suite 600 • Dallas, Texas 75219



**Deposition and Litigation Services**

www.hglitigation.com          1-888-656-DEPO (3376)

June 20, 2013

Heather Redmond
Dorsey & Whitney, LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498

Re:     Deposition of Ryan Macomb
        Deposition Date: 06/17/2013
        Versata Software, Inc., et al v Ameriprise Financial, Inc. et al
        Cause No.: D-1-GN-003588

Dear Heather Redmond:

        Please have your client read and sign the attached Oral Deposition, making any
necessary changes on the errata sheet that is provided.

        Please return the original errata and witness signature page to the office listed
below within thirty (30) days or before July 20, 2013 for filing, as agreed by the parties.

        If we can be further assistance to you, please do not hesitate to contact our office.


                        Respectfully yours,

                        Amanda Reyes
                        HG Litigation Services
                        1-888-656-DEPO


DH/ar
Enclosure


# 888.656.DEPO
## www.hglitigation.com

2501 Oak Lawn Avenue, Suite 600 • Dallas, Texas 75219

186505