# EXHIBIT A
# PART 9 OF 12

CAUSE NO. D-1-GN-12-003588

| | |
|---|---|
| VERSATA SOFTWARE, INC., F/K/A §<br>TRILOGY SOFTWARE, INC.; and §<br>VERSATA DEVELOPMENT GROUP, §<br>INC., F/K/A TRILOGY DEVELOPMENT §<br>GROUP, INC. §<br> §<br>Plaintiffs, §<br>v. §<br> §<br>AMERIPRISE FINANCIAL, INC., §<br>AMERIPRISE FINANCIAL SERVICES, §<br>INC., AMERICAN ENTERPRISE §<br>INVESTMENT SERVICES, INC. §<br> §<br>Defendants. § | IN THE DISTRICT COURT<br><br><br><br><br><br><br>OF TRAVIS COUNTY, TEXAS<br><br><br><br>53rd JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED ANSWER, SPECIFIC DENIALS AND AFFIRMATIVE DEFENSES TO DEFENDANT'S FIRST AMENDED COUNTERCLAIMS

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. (collectively "Versata") respectfully file this First Amended Answer to the First Amended Counterclaims raised by Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively, "Ameriprise"). Plaintiffs state and allege as follows:

### GENERAL DENIAL

Pursuant to Texas Rule of Civil Procedure 92, Plaintiff generally denies the allegations raised in Defendant's First Amended Counterclaim.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Ameriprise' s claims are barred, in whole or in part, because Plaintiffs performed their contractual obligations.

## SECOND DEFENSE

Ameriprise's claims are barred, in whole or in part, by the doctrines of estoppel and waiver, including but not limited to contractual estoppel.

## THIRD DEFENSE

Ameriprise's claims are barred, in whole or in part, due to the applicable statutes of limitation.

## FOURTH DEFENSE

Ameriprise fails to state a claim, in whole or in part, upon which relief can be granted.

## FIFTH DEFENSE

Ameriprise's claims are barred, in whole or in part, due to laches and unreasonable delay in seeking recovery.

## SIXTH DEFENSE

Ameriprise's claims are barred, in whole or in part, by the doctrine of unclean hands. Ameriprise breached the agreement between the parties by allowing Infosys who was not a permitted contractor under that agreement, to access the Software and steal Versata's trade secrets. Ameriprise has not agreed to cease dealing with Infosys. Ameriprise also breached the agreement by allowing TCS, another non-permitted contractor, to access and use Versata's software. Ameriprise has not agreed to cease dealing with TCS. Ameriprise's disregard of their contractual obligations alone would be sufficient to bar recovery. But even now, Ameriprise continues using Versata's software after Versata terminated Ameriprise's license. For all the foregoing reasons, the doctrine of unclean hands bars Ameriprise's claims.

## SEVENTH DEFENSE

Ameriprise's claims are barred, in whole or in part, by the doctrine of waiver. The contract between the parties provides a clear procedure for notification in the event of a breach.

Ameriprise has not followed this notice procedure - indeed, their only notice of breaches has been via litigation. After these alleged breaches, Ameriprise not only provided no notice, they also continued to perform under the contract. Ameriprise has therefore waived any claims with respect to their alleged breaches.

## EIGHTH DEFENSE

Ameriprise's claims are barred in whole or in part because Ameriprise lacks standing to raise the claims.[1]

## VERIFIED DENIALS

1.    Ameriprise does not have the legal capacity to raise claims asserting violations of the alleged GPL between Ximpleware and Versata because Ameriprise is not a party to the GPL.

2.    To the extent that Ameriprise claims that the terms of the GPL, as opposed to the MLA govern the rights and obligations of Ameriprise and Versata as to each other, Versata denies that the GPL is the contract between Versata and Ameriprise. *See* Ameriprise's Motion for Partial Summary Judgment, Exh. B.[2]

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

a.    enter judgment in favor of Versata and against Ameriprise on all claims asserted by Ameriprise;

b.    award Versata its reasonable and necessary attorney's fees and expenses;

c.    award Versata all costs of court;

---

[1] Versata amends its answer in response to Ameriprise's Partial Motion for Summary Judgment, which appears to allege unpleaded claims that Ameriprise does not have standing to raise. Amendment of Versata's Answer should not be construed as consent to have the claims tried, and Versata does not consent to the adjudication of Ameriprise's unpleaded claims.

[2] This claim is not pleaded by Ameriprise, but raised by way of its partial motion for summary judgment. Versata does not consent or agree that the claim is properly pleaded but asserts this verified denial out of an abundance of caution.

d.   award Versata all actual and punitive damages; and

e.   grant all other relief to which Versata may show it is justly entitled.


Date: August 22, 2013                Respectfully submitted,

                                     AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
                                     P.C.

                                     */s/ Benjamin F. Foster*
                                     Demetrios Anaipakos
                                     State Bar No. 00793258
                                     Amir Alavi
                                     State Bar No. 00793239
                                     Steven J. Mitby
                                     State Bar No. 27037123
                                     Benjamin F. Foster
                                     State Bar No. 24080898
                                     1221 McKinney Street, Suite 3460
                                     Houston, Texas 77010
                                     Telephone: (713) 655-1101
                                     Facsimile: (713) 655-0062

                                     MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.

                                     Travis Barton
                                     State Bar No. 00790276
                                     600 Congress Avenue, Suite 2100
                                     Austin, Texas 78701
                                     Telephone: (512) 495-6000
                                     Facsimile: (512) 495-6093
                                     ATTORNEYS FOR PLAINTIFFS

4

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested on August 22, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com


*/s/ Benjamin F. Foster*
Benjamin F. Foster

5

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |

## DECLARATION OF ANDREW PRICE

1.    "My name is Andrew Price. I am over the age of 18, have never been convicted of a felony, and am in all ways competent to make this Declaration. I swear under penalty of perjury that the statements herein are true and correct and that they are based on my personal knowledge.

2.    I have read the Verified denies contained within Plaintiffs' First Amended Answer, Specific Denials and Affirmative Defenses to Defendant's First Amended Counterclaims that have personal knowledge of the facts, if any, in the verified denials and that all such statements are true and correct to the best of my knowledge.

I declare under penalty of perjury that the forgoing is true and correct.

_____
Andrew Price

Executed on the 22nd day of August, 2013.

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| V. | § | |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| DEFENDANTS | § | |

## NOTICE OF HEARING ON PLAINTIFFS' OBJECTIONS TO AMERIPRISE'S SUMMARY JUDGMENT EVIDENCE

Please take notice that a hearing will be held on August 29, 2013, at 2:00 p.m. on Plaintiffs' Objections to Ameriprise's Summary Judgment Evidence.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

*/s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by certified mail, return receipt requested on August 22, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

_/s/ Benjamin F. Foster_
Benjamin F. Foster

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' OBJECTIONS TO
## AMERIPRISE'S SUMMARY JUDGMENT EVIDENCE

Ameriprise has a long history of proceeding by ambush in this case. To this day, Ameriprise's Minnesota counsel has refused to update their disclosures to disclose the factual and legal bases of their claims in violation of Tex. R. Civ. P. 194.2(c). As described more fully in Versata's opposition to Ameriprise's summary judgment motion, this attempt at ambush continues by moving for summary judgment on unpled claims. However, as if that were not enough, Ameriprise also seeks to ambush Versata with undisclosed and improper expert testimony in support of its motion for summary judgment. This must not stand. Therefore, paragraphs 5, 6, 8, and 9 of Dr. Collins' Declaration must be stricken, along with Exhibit B.

### Arguments and Authorities

1. **Collins has admitted he is not competent to testify as to Paragraphs 5 and 6 and is not designated on those topics.**

Versata objects to Paragraphs 5 and 6 of the Declaration of Dr. Collins for several reasons. First, the paragraphs are opinions about the meaning of the GPL license and as such are

not the proper subject for expert testimony. Second, the opinions were not disclosed by Ameriprise in its disclosure of Dr. Collins' opinions, and Dr. Collins affirmatively stated that he would not be offering legal opinions about the meaning of the GPL. *Collins Deposition* at 23:15-23:25 attached as Exhibit 1. Finally, even if such legal opinions were allowed, Dr. Collins is not qualified to offer legal opinions about the meaning of the GPL license. *See Collins Deposition* (Ex. 1) at 23:15-23:25 (admitting that he has no expertise in software licenses or their meaning).

It is clear that Paragraphs 5 and 6 of Dr. Collins' Declaration are attempts to offer an interpretation of the GPL. Paragraph 6 of Collins' Declaration opines that Version 2 of the GPL is a viral license agreement. Paragraph 5 discusses the legal restrictions contained in open source licenses, generally including the concept that some open source licenses are "viral." He goes on to say "[a viral license's] terms and conditions apply not only to the open source program being used, but also to the program into which the open source code is integrated." Therefore, Collins is opining that the GPL's terms and conditions apply to any program which "integrates" a GPL component. These are pure legal conclusions which relate exclusively to the meaning of a contract. Pursuant to Tex. R. Civ. P. 166a(f), declarations used in support of Summary Judgment motions must "set forth such facts as would be admissible in evidence." It is black letter law in Texas that an expert cannot offer legal opinions about the meaning of unambiguous contracts, as that is the province of the Court. *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex. App. 2000), *citing Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Experts, of course cannot testify on pure questions of law. *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App. 2004). Therefore, this testimony is not admissible and must be excluded.

Moreover, Dr. Collins' opinions cannot be offered because they are new opinions that were not timely disclosed. With respect to expert affidavits, "the affidavit of an expert who is not properly designated may not be used as evidence in a summary judgment context." *Chau v. Riddle*, 212 S.W.3d 699, 704 (Tex.App.—Houston [1st Dist.] 2006), rev'd on other grounds 254 S.W.3d 453 (Tex. 2008). Dr. Collins' designation is attached as Exhibit 2. In it he is designated on a variety of topics, but nowhere does he say he will provide an interpretation of the GPL. The closest that designation comes is indicating that "Dr. Collins has also received Version 2 of the GNU GPL license. . . ." The designation does not go on to indicate that Dr. Collins has any opinions relating to the GPL.

Failure to disclose alone should be enough to strike Paragraphs 5 and 6. However, this case presents a more fundamental basis for sustaining Versata's objections because Dr. Collins himself disclaimed his competency to testify on the meaning of software license agreements or his intention to do so. *Collins Dep.* (Ex. 1) at 23:15-23:25. Therefore, not only is this expert not disclosed on this particular topic, but the expert himself does not believe that he is qualified to render a legal opinion on the meaning of a contract.

### 2. Exhibit B to the Declaration lacks foundation, and Paragraphs 8 and 9 are pure hearsay offered in violation of Rule 705(d).

In addition to the legal opinions, Ameriprise uses Dr. Collins in an attempt to prove that the GPL, which is Exhibit B to his Declaration, is the only license agreement Ximpleware has offered. Based on that "expert" opinion, Ameriprise offers Exhibit B, which Dr. Collins downloaded from the internet, as the alleged license between Versata and Ximpleware.

The first problem with the testimony is that it is an undisclosed expert opinion and one that Dr. Collins claimed he could not make. See Ex. 2 (failing to disclose that Dr. Collins would offer an opinion about this topic). During his deposition, Dr. Collins affirmatively stated that he did not know whether the GPL was the actual license between Versata and Ximpleware. *Collins*

*Dep.* (Ex. 1) at 28:11-28:23. Having failed to disclose the opinion and having the expert himself testify that he does not know whether the GPL is the actual license between Versata and Ximpleware, Ameriprise cannot now offer Dr. Collins as an expert to prove that the GPL is the license between Versata and Ximpleware.

Finally, the two paragraphs are not the subject of expert testimony and are merely attempts by Ameriprise to introduce hearsay through an expert. Dr. Collins is claiming that he looked at a website and that the versions of the Ximpleware software from that website come with the GPL. This testimony requires no expertise and is not the subject of expert testimony. Thus, what is left is an attempt by Ameriprise to have Dr. Collins testify about what he saw on a website and offer it for the truth of the matter. That testimony is classic hearsay[1] and should be excluded unless it complies with Texas Rule of Evidence 705(d), which excludes an expert from testifying about hearsay if there is a danger that it will be used for a purpose other than as explanation or support for an opinion rendered by the expert. Since Dr. Collins is rendering no opinions relating to the GPL, there is no proper basis for the inclusion of the hearsay in Paragraphs 8 and 9, and they should likewise be stricken.

---

[1] The problem with Dr. Collins' attempt to introduce hearsay is that it is untrue. If Dr. Collins had simply taken the time to look at Ximplewar's own website and the versions of it that have existed since 2007, it would be abundantly clear that Ximpleware offered licenses other than the GPL to commercial customers who requested it. Ex. 3. This discrepancy between Dr. Collins' Declaration and the truth is the exact reason why hearsay, such as that offered by Ameriprise, is objectionable.

Date:  August 22, 2013

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

*/s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093

ATTORNEYS FOR PLAINTIFFS

5

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested on August 22, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

/s/ Benjamin F. Foster
Benjamin F. Foster

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## EXHIBIT 1 TO
## PLAINTIFFS' OBJECTIONS TO AMERIPRISE'S
## SUMMARY JUDGMENT EVIDENCE

### (Redacted pursuant to Agreed Protective Order)

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a<br>TRILOGY SOFTWARE, INC., and VERSATA<br>DEVELOPMENT GROUP, INC., f/k/a<br>TRILOGY DEVELOPMENT GROUP, INC.,<br>    *Plaintiffs*, | § § § § § § § § | IN THE DISTRICT COURT |
| v. | § § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC.,<br>AMERIPRISE FINANCIAL SERVICES, INC.,<br>AMERICAN ENTERPRISE INVESTMENT<br>SERVICES, INC.,<br>    *Defendants*. | § § § § § § | 53rd JUDICIAL DISTRICT |

## AMERIPRISE'S SUPPLEMENTAL RESPONSE
## TO REQUEST FOR DISCLOSURE

To:    Versata Software, Inc. f/k/a Trilogy Software, Inc. and Versata Development Group, Inc. f/k/a Trilogy Development Group, Inc., by and through their attorneys of record, Travis Barton, McGinnis, Lochridge & Kilgore, LLP, 600 Congress Ave., Suite 2100, Austin, TX 78701 and Steven J. Mitby & Megan Bibb, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC, 1221 McKinney Street, Suite 3460, Houston, TX 77010.

Pursuant to the Texas Rules of Civil Procedure, Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively "Ameriprise") serve their Supplemental Response to Plaintiffs' Request for Disclosure.

1003784



EXHIBIT
2

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.

      Stephen E. McConnico
      State Bar No. 13450300
      Christopher D. Sileo
      State Bar No. 2402977
      600 Congress Avenue, Suite 1500
      Austin, Texas  78701-3234
      (512) 495-6300 – Telephone
      (512) 474-0731 – Facsimile

DORSEY & WHITNEY LLP

By: _Heather D. Redmond (ACW)_
      Peter M. Lancaster (SBN 0159840)
      Heather D. Redmond (SBN 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Phone: (612) 340-2600
E-Mail:  Lancaster.peter@dorsey.com
E-Mail: Redmond.heather@dorsey.com

***ATTORNEYS FOR DEFENDANTS***

1003784

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record by the methods stated below on the 21st day of June, 2013:

**Via Email: tcbarton@mcginnislaw.com**
Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Ave., Suite 2100
Austin, TX 78701
*Attorneys for Plaintiffs*

**Via Email: smitby@azalaw.com / bfoster@azalaw.com**
Steven J. Mitby
Benjamin F. Foster
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC
1221 McKinney Street, Suite 3460
Houston, TX 77010
*Attorneys for Plaintiffs*

Andrea Caron Wiltrout

3

1003784

f.   **For any testifying expert:**

**(1)  the expert's name, address, and telephone number;**

John Collins, 1042 Golden Oaks, Hudson, WI 54016, ph. 612-986-8222

**(2) – (3)   the subject matter on which the expert will testify; and  the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them;**

Dr. Collins has spent 33 years in industry and 11 years in academia. He has considerable experience as a developer, software architect, technical lead, and consultant. Dr. Collins earned a B.S. in Electrical Engineering from Iowa State University in 1969, an M.S. in Computer Science from the University of Minnesota in 1985, and a Ph. D. in Computer Science from the University of Minnesota in 2002.

After completing his Ph. D., Dr. Collins took a teaching position at the University of Minnesota, where he taught Operating Systems, Software Construction, Artificial Intelligence, and Software Design. For seven years, Dr. Collins directed the University's professional Masters program in Software Engineering. His publications are primarily in the intersection of Computer Science, Artificial Intelligence, and Economics. Dr. Collins currently is technical lead and co-founder of the Power TAC project (www.powertac.org). See also the Resume attached as **Exhibit A.**

Dr. Collins reviewed the DCM 3.9 software and its installation package, which contains compiled Java code, configuration files, an installer, and documentation. Dr. Collins's objective was to analyze the structure of the system, and to determine the extent to which it depends on the Ximpleware program. Dr. Collins's analysis included these elements:

- Gain an understanding of the structure and purpose of the DCM system, based on a review of the documentation.

- Gain some understanding of the structure of the code, primarily by using the JDepend dependency-analysis tool.

- Determine the extent to which the DCM code depends on the Ximpleware program. The first step was to build a directed dependency graph of Java packages rooted at packages with names beginning "com.ximpleware." Of the 701 packages with name prefixes "com.trilogy" and "com.versata," Dr. Collins found that 362 packages depend directly or indirectly on one of the "com.ximpleware" packages.

- Using the GraphViz graphing package, Dr. Collins graphed the dependencies in svg format of the graph rooted at com.ximpleware. Dr. Collins determined that the graph is very large and dense, and that, if one were to print it out at a readable size, it would fill up the wall of a sizable conference room.

4

- To get a clearer picture of these dependencies, Dr. Collins reduced the graph to a tree, removing all dependency relationships except for the first, shortest relationship. In other words, starting at the com.ximpleware packages, he extracted the direct package dependencies, then the first level of indirect dependencies, etc. Dr. Collins did this in such a way that each package only appears once, and included only the first dependency found in a breadth-first search of the full dependency graph. An outline of such dependencies is attached as **Exhibit B**.

Based on his review, Dr. Collins determined that the majority of the code in the DCM 3.9 system depends directly or indirectly on the com.ximpleware packages. All of the dependencies found by JDepend are either method-call dependencies or data dependencies. Since well-designed Java code generally avoids cross-package data dependencies, Dr. Collins concluded that all or virtually all of these dependencies involve either direct calls on the methods of classes in the com.ximpleware packages, or transitive method-call dependencies. Dr. Collins may provide further testimony regarding the overall structure of the DCM and its use of the com.ximpleware packages.

Dr. Collins has also reviewed Version 2 of the GNU GPL license, the license referenced by the stated owners of Ximpleware software. That license is attached as **Exhibit C**. Based upon his analysis of dependencies relating to Ximpleware, Dr. Collins has concluded that DCM Version 3.9 contains Ximpleware.

**(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:**

> **(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and**

Dr. Collins reviewed the DCM 3.9 software and its installation package, which contains compiled Java code, configuration files, an installer, and documentation.

> **(B) the expert's current resume and bibliography.**

See the above description of Dr. Collins background.

5

John Collins, Ph.D.                                                                                   Page 1 of 3

# John E. Collins

1042 Golden Oaks, Hudson, WI 54016
ph: 612.986.8222
email: jcollins@cs.umn.edu

## Capabilities

Research Interests

- Autonomous agents for Electronic Commerce, focusing on automated negotiation and contracting. This is my thesis research area.
- Scheduling and resource allocation problems, especially those involving real-time incremental-improvement search, anytime search, stochastic search, search performance analysis.
- Constraint processing, modeling and simulation of organizations and processes.
- Distributed systems architecture.

Technical Specialties:

- Object-Oriented analysis and design, multi-tier component architectures, distributed objects.
- Project planning and management, OOA/OOD, software engineering.

## Experience

Since Fall semester 2002, I am a Teaching Assistant Professor in the Computer Science department at the University of Minnesota. I teach in both the undergrad program and in the Master of Science in Software Engineering (MSSE) program. I expect to assume the directorship of the MSSE program in the next year or so.

Since 1998, I have taught a semester course in Distributed Object Systems in the University of Minnesota's MSSE program. The course is in the program because I submitted a proposal and was awarded a contract to develop it. I also teach the Advanced Software Engineering course in that program, and I developed and taught a 40-hour course on Enterprise Java Beans for the University's Continuing Engineering Education program.

Since October 1997, I have been an independent consultant. I have done technical pre-sales work, including customer interviews, project planning, risk analysis, and project proposals. I led a process improvement initiative for a local software company. Other projects have included technical analyses of potential partnerships and acquisitions, system architecture analysis, research and analysis on technology adoptions, and a detailed analysis of enterprise-class distributed object infrastructure products and standards.

I was at 3M from 1969 through 1997. While there, I had considerable freedom to explore and develop technologies, define products, put together business cases, propose projects, build development teams, and spend time with potential customers. At least 60% of my time at 3M was spent working on projects that I proposed. I am principal or co-inventor on 16 US patents. Highlights of my tenure at 3M include:

- 7 years researching, developing, and commercializing an advanced dynamic resource scheduling system for Field Service and similar markets. An alpha system was in production use inside 3M from 1993 through 1998. A Field Service product was field-tested and released, and was turned over to Imation. I conceived and sold the project initially. I alternated between technical leader and project leader for up to 17 people. 4 US patents have been issued related to this work.
- 4 years researching and developing a constraint-based system for altering garment patterns. The system was used for several research projects at the University of Minnesota and generated considerable excitement among potential customers. 3M decided not to pursue full commercialization and sold the 3 patents and all other rights to another company. During most of this period I led the team as it grew from 2 to 12 people.
- 2 years researching and developing an internal "demonstration of capability" application that predicted physical characteristics of polymer formulations. The system included a chemical structure editor and elaborate structure-matching capabilities. The prototype continued in use by several chemists until the Xerox Dandelion died.

John Collins, Ph.D.                                                                                                    Page 2 of 3

- 4 years as technical leader of an internal software and electronics design services group. Much of this work was in embedded systems. My role was divided among proposal writing, project organization and leadership, and development. A highlight was development of a page description language for an early version of a laser printer (around 1981).

## Education

Ph.D., Computer Science, University of Minnesota, 2002.
My research was primarily in advanced planning and scheduling systems in the context of autonomous agents. I was project leader for a research group studying issues in automated negotiation and electronic commerce. The group is designing and implementing the University of Minnesota's MAGNET market-oriented contracting system.

MS Computer Science, University of Minnesota, 1985.

BS, Electrical Engineering, Iowa State University, 1969.

## Memberships

ACM, American Association for Artificial Intelligence, IEEE Computer Society

## Selected recent publications

*Many of these are publicly available here.*

J. Collins, "Solving Combinatorial Auctions with Temporal Constraints in Economic Agents," Ph.D. thesis, University of Minnesota, Computer Science Department, 2002.

J. Collins, W. Ketter, M. Gini, and B. Mobasher. "A multi-agent negotiation testbed for contracting tasks with temporal and precedence constraints," Int'l Journal of Electronic Commerce, 2002.

J. Collins, C. Bilot, M. Gini, and B. Mobasher. "Decision processes in agent-based automated contracting," IEEE Internet Computing, pages 61-72, March 2001.

J. Collins and M. Gini, "An Integer Programming Formulation of the Bid Evaluation Problem for Coordinated Tasks," In B. Dietrich and R. V. Vohra, editors, *Mathematics of the Internet: E-Auction and Markets*, volume 127 of IMA Volumes in Mathematics and its Applications, pages 59-74. Springer-Verlag, New York, 2001.

J. Collins and M. Gini, "Exploring Decision Processes in Multi-Agent Automated Contracting," submitted to the *Fifth International Conference on Autonomous Agents*, Montreal, Canada, May 2001.

J. Collins, C. Bilot, M. Gini, and B. Mobasher, "Mixed-Initiative Decision Support in Agent-Based Automated Contracting," *Fourth International Conference on Autonomous Agents*, Barcelona, Spain, June 2000.

J. Collins, R. Sundareswara, M. Tsvetovat, M. Gini, and B. Mobasher, "Search Strategies for Bid Selection in Multi-Agent Contracting," *Agent-mediated Electronic Commerce (AmEC-99)*, at IJCAI'99, Stockholm, Sweden, August 1999.

J. Collins, M. Tsvetovat, R. Sundareswara, J. van Tonder, M. Gini, and B. Mobasher, "Evaluating Risk: Flexibility and Feasibility in Multi-Agent Contracting", *Third International Conference on Autonomous Agents*, Seattle, May 1999.

J. Collins, M. Tsvetovat, B. Mobasher, and M. Gini, "MAGNET: A Multi-Agent Contracting System for Plan Execution," *Workshop on Artificial Intelligence and Manufacturing: State of the Art and State of Practice*, AAAI Press, Albuquerque, NM, pp 63-68, August 1998.

J. Collins, B. Youngdahl, S. Jamison, B. Mobasher, M. Gini, "A Market Architecture for Multi-Agent Contracting," *Proceedings of the Second International Conference on Autonomous Agents*, Minneapolis, MN, pp. 285-292, May 1998.

Page 3 of 3

J. Collins, S. Jamison, M. Gini, B. Mobasher, "Temporal Strategies in a Multi-Agent Contracting Protocol," *AAAI-97 Workshop on AI in Electronic Commerce*, Providence, RI, 1997.

J. Collins and E. Sisley, "Automated Assignment and Scheduling of Service Personnel," *IEEE Expert* vol. 9 no. 2, pp 33-39, April 1994.

J. Collins and E. Sisley, "Experimental Evaluation of Distributed System Configurations," in *Proceedings of the International Workshop on Modeling, Analysis, and Simulation of Computer and Telecommunications Systems* (Mascots '93), Society for Computer Simulation, San Diego, CA, 1993.

J. Collins, "Documenting Protocols in CLOS: Keeping the Promise of Reuse," in *Object-Oriented Programming: The CLOS Perspective* , A. Paepcke, ed., pp. 253-274, MIT Press, Cambridge, MA, 1993.

J. Collins and E. Sisley, "AI in Field Service:The Dispatch Advisor," *AAAI-93 Workshop on AI in Service and Support* , Washington, DC, 1993.

References available upon request.

*The views and opinions expressed in this page are strictly those of the page author.*
*The contents of this page have not been reviewed or approved by the University of Minnesota.*

```
                              dependency-tree 2.txt
Level 0: com.ximpleware
   com.trilogy.fs.dms.tools
   com.trilogy.fs.dms.tools.loader
   com.trilogy.fs.dms.tools.loader.source
   com.trilogy.fs.dms.util
   com.versata.adhoc.tools
Level 1: com.trilogy.fs.dms.tools
   com.trilogy.fs.dms.awc
   com.trilogy.fs.dms.awc.buttons.directpayment
   com.trilogy.fs.dms.awc.modeling.database
   com.trilogy.fs.dms.core.massrenewal
   com.trilogy.fs.dms.core.templates
   com.trilogy.fs.dms.core.validator
   com.trilogy.fs.dms.directpayment
   com.trilogy.fs.dms.directpayment.transformer
   com.trilogy.fs.dms.dmpm.batch
   com.trilogy.fs.dms.dmpm.util
   com.trilogy.fs.dms.engine
   com.trilogy.fs.dms.modeling.processors
   com.trilogy.fs.dms.reporting.tools
   com.trilogy.fs.dms.tools.loader.postprocessor
   com.trilogy.fs.dms.tools.loader.ui
   com.trilogy.fs.dms.transformer
   com.trilogy.fs.dms.ui.massrenewal
   com.trilogy.fs.dms.ui.ppcustomfields
   com.trilogy.fs.dms.upload
   com.trilogy.fs.dms.webeft.xmlmapper
   com.trilogy.fs.dms.webeft.xmlmapper.maphandler
   com.trilogy.fs.primarycomp.batch
   com.trilogy.fs.primarycomp.util
   com.trilogy.fs.util
Level 1: com.trilogy.fs.dms.tools.loader
   com.trilogy.fs.dms.tools.loader.action
   com.trilogy.fs.dms.tools.loader.constant
   com.trilogy.fs.dms.tools.loader.destination
   com.trilogy.fs.dms.tools.loader.error
   com.trilogy.fs.dms.tools.loader.exception
   com.trilogy.fs.dms.tools.loader.extract
   com.trilogy.fs.dms.tools.loader.factory
   com.trilogy.fs.dms.tools.loader.htHandlers
   com.trilogy.fs.dms.tools.loader.ppclasses
   com.trilogy.fs.dms.tools.loader.resolve
   com.trilogy.fs.dms.tools.loader.row
   com.trilogy.fs.dms.tools.loader.rule
   com.trilogy.fs.dms.tools.loader.strategy
   com.trilogy.fs.dms.tools.loader.translate
   com.trilogy.fs.dms.tools.loader.trigger
   com.trilogy.fs.dms.tools.util
   com.trilogy.fs.dms.vif
   com.trilogy.tranzax.integration.util
   com.versata.adhoc.tools.extractor.destination
   com.versata.adhoc.tools.extractor.translate
Level 1: com.trilogy.fs.dms.util
   com.trilogy.awc
   com.trilogy.fs.debugframework
   com.trilogy.fs.dms.core.cascader
   com.trilogy.fs.dms.methods
   com.trilogy.fs.dms.pdb
   com.trilogy.fs.dms.provider
   com.trilogy.fs.dms.tranzax.integration.search
   com.versata.scheduler.job
   com.versata.scheduler.runjobschedule
Level 2: com.trilogy.fs.dms.awc
```

**EXHIBIT B**

```
                              dependency-tree 2.txt
    com.trilogy.awc.ui.providers
    com.trilogy.fs.dms.agreement.ui
    com.trilogy.fs.dms.awc.agreement
    com.trilogy.fs.dms.awc.agrhierarchy
    com.trilogy.fs.dms.awc.comprel
    com.trilogy.fs.dms.awc.contract
    com.trilogy.fs.dms.awc.modeling.dataset
    com.trilogy.fs.dms.awc.security
    com.trilogy.fs.dms.methods.awc.providers
    com.trilogy.fs.dms.scheduler.awc
    com.trilogy.fs.dms.uicore.pp
    com.trilogy.fs.twc.ext.format
    com.versata.fs.dms.awc
    com.versata.fs.dms.methods.awc.providers
Level 2: com.trilogy.fs.dms.core.validator
    com.trilogy.fs.core.dmpm
    com.trilogy.fs.dms.agreement
    com.trilogy.fs.dms.agreement.hierarchy
    com.trilogy.fs.dms.awc.providers
    com.trilogy.fs.dms.big
    com.trilogy.fs.dms.businesrules.manager
    com.trilogy.fs.dms.comprel
    com.trilogy.fs.dms.contract
    com.trilogy.fs.dms.contract.ui
    com.trilogy.fs.dms.core
    com.trilogy.fs.dms.core.hierarchy
    com.trilogy.fs.dms.core.security
    com.trilogy.fs.dms.core.validator.ui
    com.trilogy.fs.dms.directpayment.ui
    com.trilogy.fs.dms.dmpm
    com.trilogy.fs.dms.dmpm.engine.processor
    com.trilogy.fs.dms.importer
    com.trilogy.fs.dms.mccformula
    com.trilogy.fs.dms.niprgateway
    com.trilogy.fs.dms.pdb.migration
    com.trilogy.fs.dms.prodhier
    com.trilogy.fs.dms.ruleEngine.ce.core
    com.trilogy.fs.dms.ruleEngine.ce.core.tests
    com.trilogy.fs.dms.ruleEngine.core
    com.trilogy.fs.dms.security
    com.trilogy.fs.dms.setup
    com.trilogy.fs.dms.tools.helpers
    com.trilogy.fs.dms.tools.loader.validator
    com.trilogy.fs.dms.tools.xmlhandlers
    com.trilogy.fs.dms.transmgr.transaction
    com.trilogy.fs.dms.ui
    com.trilogy.fs.dms.ui.agrhierarchy
    com.trilogy.fs.dms.ui.hierarchy
    com.trilogy.fs.dms.versioning
    com.trilogy.fs.dms.webeft.processors
    com.trilogy.fs.tools.xmlhandlers
    com.trilogy.fs.transformer.tools.loader.strategy
    com.trilogy.fs.twc.ext
    com.trilogy.fs.twc.ext.accessor.validator
    com.versata.fs.dms.core.validator
    com.versata.scheduler.xmlhandler
Level 2: com.trilogy.fs.dms.directpayment
    com.trilogy.fs.dms.engineresultcomparison
Level 2: com.trilogy.fs.dms.dmpm.batch
    com.trilogy.fs.dms.enginerunner
Level 2: com.trilogy.fs.dms.dmpm.util
    com.trilogy.fs.dms.dmpm.debug
    com.trilogy.fs.dms.dmpm.engine
                                        Page 2
```

```
                              dependency-tree 2.txt
Level 2: com.trilogy.fs.dms.reporting.tools
   com.trilogy.reporting.awc.ui
Level 2: com.trilogy.fs.dms.webeft.xmlmapper
   com.trilogy.fs.dms.webeft
   com.trilogy.fs.dms.webeft.xmlmapper.util
Level 2: com.trilogy.fs.primarycomp.batch
   com.trilogy.fs.primarycomp.tools
Level 2: com.trilogy.fs.primarycomp.util
   com.trilogy.fs.dms.engine.vestedcomp
   com.trilogy.fs.primarycomp.engine
   com.trilogy.fs.primarycomp.loader
   com.trilogy.fs.primarycomp.manager.server
   com.trilogy.fs.primarycomp.methods
Level 2: com.trilogy.fs.util
   com.trilogy.awc.treecontrol
   com.trilogy.cm.engine
   com.trilogy.fs.audit
   com.trilogy.fs.dms.awc.buttons.parties
   com.trilogy.fs.dms.compengine
   com.trilogy.fs.dms.core.enum.xml
   com.trilogy.fs.dms.core.enums.bb
   com.trilogy.fs.dms.core.lock
   com.trilogy.fs.dms.core.security.tools
   com.trilogy.fs.dms.engine.core
   com.trilogy.fs.dms.modeling.ui
   com.trilogy.fs.dms.niprgateway.transaction.providers
   com.trilogy.fs.dms.ruleEngine.core.preconditions
   com.trilogy.fs.dms.ruleEngine.core.tests
   com.trilogy.fs.dms.setup.products
   com.trilogy.fs.dms.tools.adhoc
   com.trilogy.fs.dms.tools.migration
   com.trilogy.fs.transformer.core
   com.trilogy.fs.transformer.tools.util
   com.trilogy.reporting.ui
   com.trilogy.reporting.ui.providers
   com.trilogy.util.override
   com.versata.scheduler.schedulerunner
   com.versata.util.uideveloper
   com.versata.util.uideveloper.dcm.search
Level 2: com.trilogy.awc
   com.trilogy.awc.buttons.directpayment
   com.trilogy.awc.core
   com.trilogy.awc.format
   com.trilogy.awc.test
   com.trilogy.awc.xslt
   com.trilogy.fs.dms.awc.buttons
   com.trilogy.fs.dms.awc.buttons.dmpm
   com.trilogy.fs.dms.awc.format
   com.trilogy.fs.dms.awc.transmgr
   com.trilogy.fs.dms.awc.transmgr.compevent
   com.trilogy.fs.dms.awc.transmgr.transaction
   com.trilogy.fs.dms.dmpm.ui
   com.trilogy.fs.dms.scheduler.methods.awc.providers
   com.trilogy.fs.dms.ui.clientcontract
   com.trilogy.fs.dms.ui.mask
   com.trilogy.fs.dms.ui.providers
   com.trilogy.fs.dms.uicore
   com.trilogy.reporting.ui.datasource
Level 2: com.trilogy.fs.debugframework
   com.trilogy.cm.engine.debug
   com.trilogy.ipp.util
Level 2: com.trilogy.fs.dms.pdb
   com.trilogy.fs.dms.big.providers
```

```
                          dependency-tree 2.txt
    com.trilogy.fs.dms.core.validator.utility
    com.trilogy.fs.dms.pdb.install
    com.trilogy.fs.dms.pdb.report.impl
    com.trilogy.fs.dms.ruleEngine.niprgateway
    com.trilogy.util.dataMapping
Level 2: com.versata.scheduler.job
    com.versata.scheduler.commandbuilder
Level 3: com.trilogy.fs.dms.contract
    com.trilogy.fs.dms.methodology
Level 3: com.trilogy.fs.dms.core
    com.trilogy.fs.dms
    com.trilogy.fs.dms.bwc
    com.trilogy.fs.dms.constants
    com.trilogy.fs.dms.core.status
    com.trilogy.fs.dms.core.status.properties
    com.trilogy.fs.dms.install
    com.trilogy.fs.dms.licenseappt
    com.trilogy.fs.dms.ruleEngine
    com.trilogy.fs.dms.ruleEngine.ce
    com.trilogy.fs.dms.ruleEngine.ce.core.preconditions
    com.trilogy.fs.dms.ruleEngine.niprgateway.core.tests
    com.trilogy.fs.dms.tranzax.integration
    com.trilogy.fs.dms.webeft.providers
    com.trilogy.fs.transformer.tools.loader.translate
    com.trilogy.fs.twc.ext.locator.nodes
    com.trilogy.reporting.tools
    com.versata.adhoc.format
    com.versata.fs.correspondence.controller
    com.versata.fs.correspondence.monitor
    com.versata.fs.correspondence.processor
    com.versata.fs.dms.migration
    com.versata.fs.tws.acordpiservice.extractor
    com.versata.fs.tws.acordpiservice.validator.builder
    com.versata.scheduler
    com.versata.scheduler.utils
Level 3: com.trilogy.fs.dms.core.hierarchy
    com.trilogy.fs.effectivity
Level 3: com.trilogy.fs.dms.core.security
    com.trilogy.fs.dms.core.test
    com.trilogy.fs.tws.framework.hessian.impl
    com.trilogy.ipp.service.internal
    com.trilogy.portlet
    com.versata.fs.tws.genericservice.impl
Level 3: com.trilogy.fs.dms.niprgateway
    com.trilogy.fs.dms.niprgateway.fieldGenerators
Level 3: com.trilogy.fs.dms.ruleEngine.core
    com.trilogy.fs.dms.engine.licensecheck
    com.trilogy.fs.dms.ruleEngine.niprgateway.core.preconditions
    com.versata.fs.tws.acordpiservice.validator
Level 3: com.trilogy.fs.dms.ui
    com.trilogy.fs.dms.core.security.util
    com.trilogy.fs.dms.ui.lock
Level 3: com.trilogy.fs.tools.xmlhandlers
    com.trilogy.fs.tools
    com.trilogy.fs.tools.helpers
    com.trilogy.fs.tools.schema
Level 3: com.trilogy.fs.transformer.tools.loader.strategy
    com.trilogy.fs.transformer.tools
    com.trilogy.fs.transformer.tools.loader
    com.trilogy.fs.transformer.tools.loader.resolve
Level 3: com.trilogy.fs.twc.ext.accessor.validator
    com.trilogy.fs.twc.ext.locator
Level 3: com.trilogy.fs.primarycomp.tools
                                          Page 4
```

dependency-tree 2.txt
```
      com.trilogy.fs.primarycomp.install
Level 3: com.trilogy.cm.engine
      com.trilogy.cm.engine.migration
Level 3: com.trilogy.fs.dms.core.lock
      com.trilogy.fs.dms.webeft.util
Level 3: com.trilogy.fs.dms.tools.adhoc
      com.versata.reporting.util
Level 3: com.trilogy.fs.transformer.tools.util
      com.trilogy.fs.transformer.tools.loader.destination
      com.trilogy.fs.transformer.tools.loader.error
      com.trilogy.fs.transformer.tools.loader.source
Level 3: com.trilogy.util.override
      com.trilogy.fs.dms.ui.contract
      com.trilogy.fs.dms.ui.navbar
      com.trilogy.fs.hierarchy
Level 3: com.versata.scheduler.schedulerrunner
      com.versata.scheduler.requestprocessor
Level 3: com.versata.util.uideveloper
      com.versata.util.uideveloper.dcm.flyout
Level 3: com.trilogy.fs.dms.uicore
      com.trilogy.awc.ui
      com.trilogy.html.gui.core
      com.trilogy.html.gui.ext.access
      com.trilogy.html.gui.ext.activator
      com.trilogy.html.gui.ext.jsp
Level 3: com.trilogy.ipp.util
      com.trilogy.fs.primarycomp.manager.client
      com.trilogy.ipp.methods
      com.trilogy.ipp.transport.testing
      com.trilogy.ipp.ui.core.actions
      com.trilogy.ipp.ui.methodology.dialogs
      com.trilogy.ipp.ui.methodology.template
      com.trilogy.ipp.ui.modelcontent
      com.trilogy.ipp.ui.modelcontent.actions.models
      com.trilogy.ipp.ui.table
      com.trilogy.ipp.ui.table.dialogs
      com.trilogy.ipp.util.ui
      com.trilogy.ipp.util.xmlrb
Level 3: com.trilogy.fs.dms.pdb.report.impl
      com.trilogy.fs.dms.pdb.report
Level 4: com.trilogy.fs.transformer.tools.loader.translate
      com.versata.fs.tws.acordservice.translate
      com.versata.fs.tws.drservice.translate
      com.versata.fs.tws.genericservice.builder
Level 4: com.trilogy.reporting.tools
      com.versata.fs.correspondence.reportgenerator
Level 4: com.versata.fs.correspondence.controller
      com.versata.fs.correspondence.engine
Level 4: com.versata.fs.correspondence.monitor
      com.versata.fs.correspondence.targetgenerator
Level 4: com.versata.fs.correspondence.processor
      com.versata.fs.correspondence.distributor
      com.versata.fs.correspondence.email
      com.versata.fs.correspondence.generator
Level 4: com.versata.scheduler.utils
      com.versata.scheduler.monitor
Level 4: com.trilogy.fs.effectivity
      com.trilogy.fs.effectivity.test
      com.trilogy.fs.hierarchy.effectivity
Level 4: com.trilogy.ipp.service.internal
      com.trilogy.ipp.service.internal.config
      com.trilogy.ipp.service.internal.inputType
      com.trilogy.ipp.service.internal.lock
```

```
                              dependency-tree 2.txt
    com.trilogy.ipp.service.internal.methodology
    com.trilogy.ipp.service.internal.misc
    com.trilogy.ipp.service.internal.model
    com.trilogy.ipp.service.internal.namedConstant
    com.trilogy.ipp.service.internal.questionnaire
    com.trilogy.ipp.service.internal.rename
    com.trilogy.ipp.service.internal.table
    com.trilogy.ipp.service.internal.testing
    com.trilogy.ipp.service.internal.variables
    com.trilogy.ipp.transport.commands
Level 4: com.versata.fs.tws.genericservice.impl
    com.versata.fs.tws.drservice.extractor
Level 4: com.trilogy.fs.tools
    com.trilogy.fs.tools.test
    com.trilogy.fs.tools.verifier
Level 4: com.trilogy.fs.tools.helpers
    com.trilogy.fs.tools.format
    com.trilogy.fs.tools.format.xml
    com.trilogy.fs.tools.format.xsd
Level 4: com.trilogy.fs.tools.schema
    com.trilogy.fs.tools.util
Level 4: com.trilogy.fs.transformer.tools.loader
    com.trilogy.fs.transformer.tools.loader.action
    com.trilogy.fs.transformer.tools.loader.constant
    com.trilogy.fs.transformer.tools.loader.extract
    com.trilogy.fs.transformer.tools.loader.row
    com.trilogy.fs.transformer.tools.loader.trigger
Level 4: com.trilogy.fs.dms.webeft.util
    com.trilogy.webeft.jaxbgen.IndividualInformationReport.impl
    com.trilogy.webeft.jaxbgen.MapParser.impl
    com.trilogy.webeft.jaxbgen.PostAccountingReport.impl
    com.trilogy.webeft.jaxbgen.PostApprovalsReport.impl
    com.trilogy.webeft.jaxbgen.PostDeficienciesReport.impl
    com.trilogy.webeft.jaxbgen.PostEnrollmentsReport.impl
    com.trilogy.webeft.jaxbgen.PostExamsReport.impl
    com.trilogy.webeft.jaxbgen.PostFingerprintReport.impl
    com.trilogy.webeft.jaxbgen.PostPendingReport.impl
    com.trilogy.webeft.jaxbgen.PostTerminationReport.impl
    com.trilogy.webeft.jaxbgen.u4.impl
Level 4: com.trilogy.html.gui.core
    com.trilogy.html.gui
    com.trilogy.html.gui.core.grid
    com.trilogy.html.gui.core.pp
Level 4: com.trilogy.ipp.transport.testing
    com.trilogy.ipp.transport.commands.testing
    com.trilogy.ipp.ui.modelcontent.actions.methods
    com.trilogy.ipp.ui.modelcontent.actions.testCases
    com.trilogy.ipp.ui.testing
    com.trilogy.ipp.ui.testing.actions
Level 4: com.trilogy.ipp.ui.core.actions
    com.trilogy.ipp.ui.core
Level 4: com.trilogy.ipp.ui.methodology.dialogs
    com.trilogy.ipp.ui.methodology
    com.trilogy.ipp.ui.methodology.actions
Level 4: com.trilogy.ipp.ui.methodology.template
    com.trilogy.ipp.ui.util
Level 4: com.trilogy.ipp.ui.modelcontent
    com.trilogy.ipp.ui.config
    com.trilogy.ipp.ui.modelcontent.actions.config
    com.trilogy.ipp.ui.modelcontent.actions.consts
    com.trilogy.ipp.ui.modelcontent.actions.contVars
    com.trilogy.ipp.ui.modelcontent.actions.dateVars
    com.trilogy.ipp.ui.modelcontent.actions.discVars
                                                    Page 6
```

```
                          dependency-tree 2.txt
    com.trilogy.ipp.ui.modelcontent.actions.questionnaires
    com.trilogy.ipp.ui.modelcontent.actions.strvars
    com.trilogy.ipp.ui.modelcontent.actions.tables
    com.trilogy.ipp.ui.modelcontent.actions.validity
    com.trilogy.ipp.ui.modelcontent.dialogs
    com.trilogy.ipp.ui.questionnaire
Level 4: com.trilogy.ipp.ui.table
    com.trilogy.ipp.ui.table.actions
Level 4: com.trilogy.ipp.util.ui
    com.trilogy.ipp.util.ui.ste
Level 4: com.trilogy.ipp.util.xmlrb
    com.trilogy.ipp.ui.methodology.stepFormatter
Level 5: com.trilogy.ipp.transport.commands
    com.trilogy.fs.primarycomp.manager.transport
    com.trilogy.ipp.service
    com.trilogy.ipp.service.rmi
    com.trilogy.ipp.transport
    com.trilogy.ipp.transport.commands.config
    com.trilogy.ipp.transport.commands.inputType
    com.trilogy.ipp.transport.commands.lock
    com.trilogy.ipp.transport.commands.methodology
    com.trilogy.ipp.transport.commands.misc
    com.trilogy.ipp.transport.commands.model
    com.trilogy.ipp.transport.commands.namedConstant
    com.trilogy.ipp.transport.commands.questionnaire
    com.trilogy.ipp.transport.commands.rename
    com.trilogy.ipp.transport.commands.table
    com.trilogy.ipp.transport.commands.variables
Level 5: com.trilogy.webeft.jaxbgen.IndividualInformationReport.impl
    com.trilogy.webeft.jaxbgen.IndividualInformationReport
Level 5: com.trilogy.webeft.jaxbgen.MapParser.impl
    com.trilogy.webeft.jaxbgen.MapParser
Level 5: com.trilogy.webeft.jaxbgen.PostAccountingReport.impl
    com.trilogy.webeft.jaxbgen.PostAccountingReport
Level 5: com.trilogy.webeft.jaxbgen.PostApprovalsReport.impl
    com.trilogy.webeft.jaxbgen.PostApprovalsReport
Level 5: com.trilogy.webeft.jaxbgen.PostDeficienciesReport.impl
    com.trilogy.webeft.jaxbgen.PostDeficienciesReport
Level 5: com.trilogy.webeft.jaxbgen.PostEnrollmentsReport.impl
    com.trilogy.webeft.jaxbgen.PostEnrollmentsReport
Level 5: com.trilogy.webeft.jaxbgen.PostExamsReport.impl
    com.trilogy.webeft.jaxbgen.PostExamsReport
Level 5: com.trilogy.webeft.jaxbgen.PostFingerprintReport.impl
    com.trilogy.webeft.jaxbgen.PostFingerprintReport
Level 5: com.trilogy.webeft.jaxbgen.PostPendingReport.impl
    com.trilogy.webeft.jaxbgen.PostPendingReport
Level 5: com.trilogy.webeft.jaxbgen.PostTerminationReport.impl
    com.trilogy.webeft.jaxbgen.PostTerminationReport
Level 5: com.trilogy.webeft.jaxbgen.u4.impl
    com.trilogy.webeft.jaxbgen.u4
Level 5: com.trilogy.html.gui
    com.trilogy.html.gui.core.filter
    com.trilogy.html.gui.core.inspector
    com.trilogy.html.gui.core.toolbar
    com.trilogy.html.gui.dialog
Level 6: com.trilogy.ipp.transport
    com.trilogy.ipp.engine.methods
    com.trilogy.ipp.engine.xml
Level 7: com.trilogy.ipp.engine.xml
    com.trilogy.ipp.engine.tools
```

Giants like Microsoft and Apple are trying harder than ever to control the software you use. The FSF brings software freedom supporters together to amplify your voices and make an impact.

In 2013, we want to grow the free software movement.
Start your membership today with a $10 donation and help us crank up the volume.

# GNU General Public License, version 2

Help crank it up.
**Donate now!**

- The latest version of the GPL, version 3
- What to do if you see a possible GPL violation
- Translations of GPLv2
- GPLv2 Frequently Asked Questions
- The GNU General Public License version 2 (GPLv2) in other formats: plain text, Texinfo, LaTeX, standalone HTML, Docbook

## Table of Contents

- GNU GENERAL PUBLIC LICENSE
  - Preamble
  - TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION
  - How to Apply These Terms to Your New Programs

## GNU GENERAL PUBLIC LICENSE

Version 2, June 1991

```
Copyright (C) 1989, 1991 Free Software Foundation, Inc.
51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA

Everyone is permitted to copy and distribute verbatim copies
of this license document, but changing it is not allowed.
```

## Preamble

The licenses for most software are designed to take away your freedom to share and change it. By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software--to make sure the software is free for all its users. This General Public License applies to most of the Free Software Foundation's software and to any other program whose authors commit to using it. (Some other Free Software Foundation software is covered by the GNU Lesser General Public License instead.) You can apply it to your programs, too.

When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software (and charge for this service if you wish), that you receive source code or can get it if you want it, that you can

**EXHIBIT C**

change the software or use pieces of it in new free programs; and that you know you can do these things.

To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights. These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.

For example, if you distribute copies of such a program, whether gratis or for a fee, you must give the recipients all the rights that you have. You must make sure that they, too, receive or can get the source code. And you must show them these terms so they know their rights.

We protect your rights with two steps: (1) copyright the software, and (2) offer you this license which gives you legal permission to copy, distribute and/or modify the software.

Also, for each author's protection and ours, we want to make certain that everyone understands that there is no warranty for this free software. If the software is modified by someone else and passed on, we want its recipients to know that what they have is not the original, so that any problems introduced by others will not reflect on the original authors' reputations.

Finally, any free program is threatened constantly by software patents. We wish to avoid the danger that redistributors of a free program will individually obtain patent licenses, in effect making the program proprietary. To prevent this, we have made it clear that any patent must be licensed for everyone's free use or not licensed at all.

The precise terms and conditions for copying, distribution and modification follow.

## TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION

**0.** This License applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License. The "Program", below, refers to any such program or work, and a "work based on the Program" means either the Program or any derivative work under copyright law: that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/or translated into another language. (Hereinafter, translation is included without limitation in the term "modification".) Each licensee is addressed as "you".

Activities other than copying, distribution and modification are not covered by this License; they are outside its scope. The act of running the Program is not restricted, and the output from the Program is covered only if its contents constitute a work based on the Program (independent of having been made by running the Program). Whether that is true depends on what the Program does.

**1.** You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

You may charge a fee for the physical act of transferring a copy, and you may at your option offer warranty protection in exchange for a fee.

**2.** You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work under the terms of Section 1 above, provided that you also meet all of these conditions:

**a)** You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.

**b)** You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.

**c)** If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License. (Exception: if the Program itself is interactive but does not normally print such an announcement, your work based on the Program is not required to print an announcement.)

These requirements apply to the modified work as a whole. If identifiable sections of that work are not derived from the Program, and can be reasonably considered independent and separate works in themselves, then this License, and its terms, do not apply to those sections when you distribute them as separate works. But when you distribute the same sections as part of a whole which is a work based on the Program, the distribution of the whole must be on the terms of this License, whose permissions for other licensees extend to the entire whole, and thus to each and every part regardless of who wrote it.

Thus, it is not the intent of this section to claim rights or contest your rights to work written entirely by you; rather, the intent is to exercise the right to control the distribution of derivative or collective works based on the Program.

In addition, mere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this License.

**3.** You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following:

**a)** Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,

**b)** Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,

**c)** Accompany it with the information you received as to the offer to distribute corresponding source code. (This alternative is allowed only for noncommercial distribution and only if you received the program in object code or executable form with such an offer, in accord with Subsection b above.)

The source code for a work means the preferred form of the work for making modifications to it. For an executable work, complete source code means all the source code for all modules it contains, plus any associated interface definition files, plus the scripts used to control compilation and installation of the executable. However, as a special exception, the source code distributed need not include anything that is normally distributed (in either source or binary form) with the major components (compiler, kernel, and so on) of the operating system on which the executable runs, unless that component itself accompanies the executable.

If distribution of executable or object code is made by offering access to copy from a designated place, then offering equivalent access to copy the source code from the same place counts as distribution of

the source code, even though third parties are not compelled to copy the source along with the object code.

4. You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

5. You are not required to accept this License, since you have not signed it. However, nothing else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.

6. Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. You are not responsible for enforcing compliance by third parties to this License.

7. If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program.

If any portion of this section is held invalid or unenforceable under any particular circumstance, the balance of the section is intended to apply and the section as a whole is intended to apply in other circumstances.

It is not the purpose of this section to induce you to infringe any patents or other property right claims or to contest validity of any such claims; this section has the sole purpose of protecting the integrity of the free software distribution system, which is implemented by public license practices. Many people have made generous contributions to the wide range of software distributed through that system in reliance on consistent application of that system; it is up to the author/donor to decide if he or she is willing to distribute software through any other system and a licensee cannot impose that choice.

This section is intended to make thoroughly clear what is believed to be a consequence of the rest of this License.

8. If the distribution and/or use of the Program is restricted in certain countries either by patents or by copyrighted interfaces, the original copyright holder who places the Program under this License may add an explicit geographical distribution limitation excluding those countries, so that distribution is permitted only in or among countries not thus excluded. In such case, this License incorporates the limitation as if written in the body of this License.

9. The Free Software Foundation may publish revised and/or new versions of the General Public License from time to time. Such new versions will be similar in spirit to the present version, but may differ in detail to address new problems or concerns.

GNU General Public License v2.0 - GNU Project - Free Software Foundation

Each version is given a distinguishing version number. If the Program specifies a version number of this License which applies to it and "any later version", you have the option of following the terms and conditions either of that version or of any later version published by the Free Software Foundation. If the Program does not specify a version number of this License, you may choose any version ever published by the Free Software Foundation.

10. If you wish to incorporate parts of the Program into other free programs whose distribution conditions are different, write to the author to ask for permission. For software which is copyrighted by the Free Software Foundation, write to the Free Software Foundation; we sometimes make exceptions for this. Our decision will be guided by the two goals of preserving the free status of all derivatives of our free software and of promoting the sharing and reuse of software generally.

**NO WARRANTY**

11. BECAUSE THE PROGRAM IS LICENSED FREE OF CHARGE, THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY APPLICABLE LAW. EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM IS WITH YOU. SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

12. IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MAY MODIFY AND/OR REDISTRIBUTE THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS), EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## END OF TERMS AND CONDITIONS

## How to Apply These Terms to Your New Programs

If you develop a new program, and you want it to be of the greatest possible use to the public, the best way to achieve this is to make it free software which everyone can redistribute and change under these terms.

To do so, attach the following notices to the program. It is safest to attach them to the start of each source file to most effectively convey the exclusion of warranty; and each file should have at least the "copyright" line and a pointer to where the full notice is found.

```
one line to give the program's name and an idea of what it does.
Copyright (C) yyyy  name of author

This program is free software; you can redistribute it and/or
modify it under the terms of the GNU General Public License
as published by the Free Software Foundation; either version 2
of the License, or (at your option) any later version.

This program is distributed in the hope that it will be useful,
but WITHOUT ANY WARRANTY; without even the implied warranty of
MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
```

```
GNU General Public License for more details.

You should have received a copy of the GNU General Public License
along with this program; if not, write to the Free Software
Foundation, Inc., 51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA.
```

Also add information on how to contact you by electronic and paper mail.

If the program is interactive, make it output a short notice like this when it starts in an interactive mode:

```
Gnomovision version 69, Copyright (C) year name of author
Gnomovision comes with ABSOLUTELY NO WARRANTY; for details
type `show w'.  This is free software, and you are welcome
to redistribute it under certain conditions; type `show c'
for details.
```

The hypothetical commands `show w' and `show c' should show the appropriate parts of the General Public License. Of course, the commands you use may be called something other than `show w' and `show c'; they could even be mouse-clicks or menu items--whatever suits your program.

You should also get your employer (if you work as a programmer) or your school, if any, to sign a "copyright disclaimer" for the program, if necessary. Here is a sample; alter the names:

```
Yoyodyne, Inc., hereby disclaims all copyright
interest in the program `Gnomovision'
(which makes passes at compilers) written
by James Hacker.

signature of Ty Coon, 1 April 1989
Ty Coon, President of Vice
```

This General Public License does not permit incorporating your program into proprietary programs. If your program is a subroutine library, you may consider it more useful to permit linking proprietary applications with the library. If this is what you want to do, use the GNU Lesser General Public License instead of this License.

# $<$XimpleWare$/>$

XimpleWare is a provider of next-generation XML processing solutions for Service Oriented Enterprises. Our mission is to help businesses and enterprises world-wide accelerate the adoption of SOA (Service Oriented Architecture), one XML message at a time. We are  privately held and located in Silicon Valley.

Our product/technology is protected by US patents 7133857 , 7260652, and 7761459.

Is your ESB running too slow? Want to turbo-charge XML gateways/appliances? How about cutting your application latency by 100x? With VTD-XML, you will look no further!

As discovered by Fortune 2000 companies around the world, VTD-XML vastly and reliably improves the performance of your SOA applications. It takes 10 minutes to verify the performance claim.

VTD-XML is also portable to custom hardware to achieve multi-Giga bit performance.

Interested in licensing VTD-XML?. Please email us for more details.

## A little about our technology

**A Demo** (Java Applet)   Introduce VTD (Virtual Token Descriptor)

To download our Java API (licensed under GPL), please go to http://vtd-xml.sf.net/

API Document (We are continuously making improvements)

XML on a Chip?

Some preliminary benchmark results: 1 2 3 4 (Some info is subject to change)

Our position paper (for W3C workshop on binary XML 09/2003)

We would like to know your thoughts.

We will re-launch our website soon!



EXHIBIT
3

Ximpleware

# Contact Us

8/22/13                                    Ximpleware

INTERNET ARCHIVE     http://www.ximpleware.com/                [Go]        MAY    JUN   JUL
WaybackMachine       70 captures                                            ◄     3    ►
                     29 Aug 03 - 19 Jul 13                                 2006  2007  2008

# \<XimpleWare/\>

XimpleWare is a provider of XML processing solutions targeting both XML–aware network equipment vendors and enterprise software application vendors. Our company mission is to help businesses and enterprises world–wide accelerate the adoption of SOA (Service Oriented Architecture), one XML message at a time. We are  privately held and located in Silicon Valley.

VTD–XML, XimpleWare's flagship product, is the next generation XML parser/indexer that goes beyond DOM, SAX and Pull in performance, memory usage, and ease of use. It is also highly reliable and widely used in Fortune 2000 companies around the globe. Available in C, C# and Java, the open–source version of VTD–XML can be downloaded here. A proprietary version is available under commercial licenses.

For a limited time only,  discounts are now available to qualified companies looking to embed VTD–XML into software products. Please email us for more details.

## A little about our technology

**A Demo** (Java Applet)    Introduce VTD (Virtual Token Descriptor)

To download our Java API (licensed under GPL), please go to http://vtd-xml.sf.net/

API Document (We are continuously making improvements)

Some preliminary benchmark results: 1 2 3 4 (Some info is subject to change)

Our position paper (for W3C workshop on binary XML 09/2003)

We would like to know your thoughts.

We will re-launch our website soon!

8/22/13                                         Ximpleware

## Contact Us

8/22/13                                          Ximpleware

http://www.ximpleware.com/     [Go]          FEB  MAY  JUN

**WayBackMachine**  70 captures                                    ◀  2  ▶
29 Aug 03 - 19 Jul 13                                     2006 2007 2008

# <XimpleWare/>

XimpleWare is a provider of XML processing solutions targeting both XML-aware network equipment vendors and enterprise software application vendors. Our company mission is to help businesses and enterprises world-wide accelerate the adoption of SOA (Service Oriented Architecture), one XML message at a time.

Our core technology is a patented (US 7,133,857) XML parsing algorithm called Virtual Token Descriptor (VTD), which can be mapped into both software and hardware. An open-sourced implementation in Java, C and C#(licensed under GPL) delivers 400Mb~500Mb per second sustained throughput on a 3GHz Pentium IV processor, easily making it the fastest XML processor in the world. An ASIC-based implementation running at 250MHz inspects XML content at 2Gb/second. We have more patents pending.

We are  privately held and located in Silicon Valley. Interested in licensing our technology? Please email us.

## A little about our technology

**A Demo** (Java Applet)   Introduce VTD (Virtual Token Descriptor)

To download our Java API (licensed under GPL), please go to http://vtd-xml.sf.net/

API Document (We are continuously making improvements)

Some preliminary benchmark results: 1 2 3 4 (Some info is subject to change)

Our position paper (for W3C workshop on binary XML 09/2003)

We would like to know your thoughts.

We will re-launch our website soon!

Contact Us

Ximpleware

Contact Us

8/22/13                                        Ximpleware

INTERNET ARCHIVE
**WayBackMachine**     http://www.ximpleware.com/        [Go]              DEC        MAY

70 captures                                              ◄  24  ►
28 Aug 03 - 19 Jul 13                                    2006       2008

# XimpleWare

XimpleWare is a provider of XML processing solutions targeting both XML-aware network equipment vendors and enterprise software application vendors.

Our core technology is a patented (US 7,133,857) XML parsing algorithm called Virtual Token Descriptor (VTD), which can be mapped into both software and hardware. An open-sourced implementation in Java, C and C#(licensed under GPL) delivers 400Mb~500Mb per second sustained throughput on a 3GHz Pentium IV processor, easily making it the fastest XML processor in the world. An ASIC-based implementation running at 250MHz inspects XML content at 2Gb/second. We have more patents pending.

We are  privately held and located in Silicon Valley. Interested in licensing our technology? Please email us.

## A little about our technology

**A Demo** (Java Applet)   Introduce VTD (Virtual Token Descriptor)

To download our Java API (licensed under GPL), please go to http://vtd-xml.sf.net/

API Document (We are continuously making improvements)

Some preliminary benchmark results: 1 2 3 (Some info is subject to change)

Our position paper (for W3C workshop on binary XML 09/2003)

We would like to know your thoughts.

We will re-launch our website soon!

## Contact Us

**CAUSE NO. D-1-GN-12-003588**

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., AND | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC., | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| V. | § | |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC., | § | |
| | § | 53RD JUDICIAL DISTRICT |
| DEFENDANTS | § | |

## NOTICE OF HEARING ON PLAINTIFFS' SPECIAL EXCEPTIONS TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Please take notice that a hearing will be held on August 29, 2013, at 2:00 p.m. on

Plaintiffs' Special Exceptions to Defendants' Motion for Partial Summary Judgment.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

*/s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

McGinnis, Lochridge & Kilgore, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record by certified mail, return receipt requested on August 22, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

_/s/ Benjamin F. Foster_
Benjamin F. Foster

2

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SPECIAL EXCEPTIONS TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. (collectively "Versata") respectfully file this Response to Motion for Partial Summary Judgment (the "Motion") filed by Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively, "Ameriprise").

### I.
### INTRODUCTION

In its Motion, Ameriprise asks this Court to do what Texas law expressly forbids, replace the contract between the parties with an entirely new contract. *American Mfgr. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language."). This is no exaggeration. Ameriprise's Motion seeks to have this Court declare that Ameriprise's right to use Versata's multi-million dollar software program is

governed by a document that Ameriprise downloaded from the world wide web, as opposed to the Master License Agreement ("MLA") that the parties negotiated and signed in 1999. Ameriprise seeks such relief despite the fact that such claims have never been pleaded in this action, that the legal theories and claims are not disclosed in its requests for disclosures, that Ameriprise's own pleadings affirmatively assert that the MLA is in the contract between the parties, and that Ameriprise's motion is wholly unsupported by the facts or the law.

This case is not about Ximpleware and license agreements for open source software. This case is about Ameriprise breaching the MLA by using one of Versata's competitors to access and use Versata's software called DCM Version 3.9 ("DCM"). Despite Ameriprise's novel attempt to create a new contract through its Motion, there is no legitimate dispute that the MLA governs the rights and obligations as of the parties.[1] Since 1999, Ameriprise and Versata have operated under a Master License Agreement ("MLA") setting forth each parties rights and obligations. Ex. A.[2] Ameriprise has reaffirmed the validity and existence of the MLA as the contract between the parties several times, including in its live counterclaims in this case. Ex. 4 at ¶ 4 ("the terms of the Agreement [the MLA] are binding upon Versata and Ameriprise."). Now, for the first time in its Motion, Ameriprise is asking this Court to declare that the only contract that governs Ameriprise's use of DCM is a document, referred to as the GPL, that its expert downloaded from the internet. Collins Decl. (attached to the Motion) at ¶ 9. Without a pleading to support the relief sought and without explaining under what legal doctrine such relief is possible, Ameriprise asks this Court to simply ignore the MLA and act as if another document, the GPL, is the contract between the parties.

---

[1] Plaintiff has taken the position that it has terminated the MLA but agrees that the MLA is the operative contract between the parties.

[2] Versata refers to Exhibits attached to Ameriprise's Motion using the exhibit letters assigned to exhibits in the Motion. New exhibits added by Versata are numbered as Exhibits 1 – 15.

Ameriprise's brazen attempt to simply replace the MLA with a new contract is baseless and a continued attempt by Ameriprise to avoid the consequences of its breaches of the MLA. Ameriprise's partial motion for summary judgment fails for the following reasons:

- Ameriprise's partial motion for summary judgment is procedurally improper, because it seeks summary judgment on claims it has not pleaded.

- The doctrine of estoppel by contract bars Ameriprise from disclaiming the MLA in favor of the GPL.

- There is a fact question on whether or not the GPL is even the license with Ximpleware as Versata has produced a different license agreement that contains terms materially different than those contained in the GPL that defeat Ameriprise's claims.

- There is no legal support for replacing the MLA with a new license and Ameriprise does not have standing to claim rights under the GPL because the only remedy for breach of the GPL is a copyright claim by Ximpleware. Ameriprise's rights are limited to its claims under the MLA.

- Even if the GPL is the license between Versata and Ximpleware, Ameriprise's interpretation of the GPL ignores the plain language of the documents.

- Finally, even if Ameriprise is correct about the meaning of the GPL, Ameriprise has failed to introduce evidence showing that DCM is a derivative work of Ximpleware and Versata's expert disputes Ameriprise's expert on key opinions necessary to establish that the GPL applies.

Ameriprise's improper pleading should not be entertained, but even if it is, Ameriprise's motion must fail.

## II.
## FACTUAL BACKGROUND

### A.    Ameriprise and Versata Enter into the MLA in 1999

Versata is a software development company that developed an enterprise software system called DCM.  In 1999, Versata and Ameriprise entered into a MLA that governs the rights and obligations of the parties with respect to Ameriprise's use of DCM.  Ex. A.  Ameriprise uses DCM to onboard new agents, confirm and maintain regulatory compliance for each agent, and

compensate each agent according to the practice of the company (e.g. a commission-based or salary and incentive-based model). Ex. A at ¶ 10.  The MLA, as admitted by Ameriprise, is the operative agreement between the parties.  *Id.* at ¶ 4 ("the terms of the Agreement [the MLA] are binding upon Versata and Ameriprise.").  It contains key terms such as the scope of the license (Ex. A at Article 4), confidentiality (*id.* at Article 10), and limits on the types of contractors Ameriprise may allow to use DCM (*id.* at §4.8).  Importantly, the MLA contains a warranty provision that dealing with intellectual property rights of third parties. Ex. A at § 8.1.

**B.    Ameriprise's Contractual Breach**

The genesis of this lawsuit is the confidentiality provisions of the MLA.  Under the MLA, Versata's software, product documentation, and related materials are strictly confidential. Therefore, the parties agreed in the MLA that Ameriprise would limit access to the software, product documentation, and related materials to Ameriprise employees and "Permitted Contractors." Ex. A at § 4.8.  The term "Permitted Contractors" is defined in the agreement as contractors that do not compete with Versata in the development of enterprise compensation or configuration software and that have signed a non-disclosure agreement.  *Id.*  The MLA also strictly prohibits any kind of copying, decompiling, or reverse engineering of Versata's software by Ameriprise or its agents. *Id.* at § 10.1.  A breach of these confidentiality requirements is sufficient grounds for Versata to terminate the MLA and revoke Ameriprise's license to the software. *Id.* at § 12.1.  Moreover, if Versata terminates the MLA for any breach by Ameriprise, Ameriprise's rights in the software shall cease, and Ameriprise must return the software to Versata, and Ameriprise must certify in writing that it has destroyed or returned all copies.  *Id.* at § 12.2.

Ameriprise has breached the confidentiality provisions of the MLA by giving a competitor access to Ameriprise's software.  Specifically, Ameriprise has given Infosys access to

Versata's Software. Infosys is not a "permitted contractor" as that term is used in the MLA. *Id.* at § 4.8. Infosys is a company that, among other things, develops and sells its own brand of enterprise compensation software, a product that directly competes with Versata's proprietary software. Infosys began competing with Versata when it acquired McCamish Systems in 2009. Since this acquisition, Infosys and McCamish have provided competing software to numerous customers in the United States and around the world. Infosys' subsidiary McCamish competes with Versata by selling products called PMACS and VPAS. These products perform similar functions to the software that Ameriprise licensed from Versata. *See* Exhibit 5 at 3 (McCamish Motion to Quash, describing function of software).

**C.      Infosys's Theft of Versata's Proprietary Source Code at Ameriprise**

Versata complained to Ameriprise about its use of Infosys and subsequently upper management at Versata learned that Infosys employees had been decompiling Versata software. Decompilation means that an individual has used decompiling software in order to convert the machine-readable code (which Amerprise had a license to use) into source code, which reveals the manner in which Versata has created the software and could enable the person viewing it to copy the software illegitimately. At first, Infosys claimed that it had decompiled only two files and that this behavior was an isolated incident involving low-level employees. In early 2012, during discovery in a lawsuit against Infosys, Versata discovered evidence that Infosys decompiled up to 25 files. Then, a revelation occurred. On October 25, 2012, Infosys admitted that it had approximately ***5,000 decompiled DCM source code files*** on a hard drive in Bangalore, India. Ex. 6. These files represent a little under half the total source code repository of DCM.

As the problems with Infosys began to unfold, Versata had numerous discussions with Ameriprise about the need to stop Infosys from having access to Versata's software. During these discussions, Ameriprise agreed to remove Infosys from projects that involve Versata

software. However, because of Ameriprise's failure to remove Infosys, Versata had no choice but to protect its intellectual property by terminating the MLA.

On September 17, 2012, Versata sent a breach notice to Ameriprise. Ex. 7. The letter identified multiple breaches of the MLA by Ameriprise related to Infosys's unauthorized access to Versata's software,[3] and stated that, if Ameriprise did not take steps to cure these breaches, the MLA would terminate automatically within 30 days. *Id.* Because Ameriprise did not cure these violations, the MLA terminated on October 17, 2012. To protect its intellectual property which remained exposed to competitors, Versata filed suit in Austin, Texas on November 13, 2012.

**D.     Ameriprise's Live Pleading and Discovery Responses Do Not Contain Allegations to Support the Motion**

Ameriprise's procedurally-improper partial motion for summary judgment is the first time that Ameriprise has even mentioned the GPL in a pleading. Ameriprise's Amended Counterclaims contain no legal or factual claims related to the GPL. Instead, Ameriprise has pleaded the following counterclaims against Versata, all of which rely on the MLA:

- **Breach of Contract Through [sic] Wrongful Termination**: Ameriprise asserts Versata breached the MLA by terminating it, after learning of Ameriprise's use of competitors as contractors. *See* Ex. 4 at ¶¶ 26-37.

- **Breach of Contractual Warranties**: Ameriprise asserts Versata breached the MLA by breaching the warranty clause of the MLA. *Id.* at ¶¶ 39-49.

- **Breach of Escrow Obligations**: Ameriprise asserts Versata breached the MLA by breaching the escrow clause of the MLA, which requires Versata to place DCM code in escrow. *Id.* at ¶¶ 51-62.

- **Imposition of Constructive Trust**: Ameriprise argues in the alternative that it is equitably entitled to DCM because of the financial support (presumably via its license payments) it provided for DCM over the years. The equitable claim is predicated upon the agreement, and Ameriprise states in support of this claim that the MLA "governs the scope of the business relationship between Ameriprise and Versata." *Id.* at ¶¶ 64-68.

---

[3] Versata also complained of other material breaches.

- **Declaration of Ameriprise's Rights:** Ameriprise seeks to have the Court interpret the MLA to hold that Versata has materially breached the MLA, that Ameriprise is therefore entitled to a "perpetual license," and that under the MLA Ameriprise is entitled to employ competitors as contractors (including but not limited to Infosys). *Id.* at ¶¶ 70-75.

Ameriprise's claims, in short, all turn on the MLA. *Nowhere* in its counterclaims does Ameriprise raise any claim based on the GPL, nor does Ameriprise argue that the GPL is binding on Ameriprise or Versata. Ameriprise's entire case is based upon the bedrock assumption that the MLA governs the relationship between Ameriprise and Versata, and that the MLA alone determines the parties' rights and responsibilities. Only in its Motion does Ameriprise now assert that the GPL governs the rights of the parties.

Ameriprise's discovery responses are consistent with its pleadings in failing to discuss the GPL or even put forth legal theories that support Ameriprise's Motion. See Ex. 8 (Ameriprise responses to Request for Disclosures which fail to disclose any legal theory regarding the GPL or the relief sought in the Motion). Counsel for Versata sent multiple reminders, weeks apart, but Minnesota counsel failed to supplement its disclosures to properly advise Versata of the legal theories underlying their counterclaims. See Ex. 15 (Correspondence of B. Foster to H. Redmond). This correspondence shows that Ameriprise filed its counterclaims April 16, 2013 – and as of June 5, 2013 had not yet updated their disclosures despite Versata's insistence. *Id.* Minnesota counsel's disregard of their discovery obligations is simply egregious.

## E. Minnesota Counsel's Allegations About Alleged "Admissions" by Versata are Misleading

Ameriprise alleges that Versata has somehow admitted that the GPL is the license for Ximpleware. But this assertion relies on a bald misinterpretation of Versata's interrogatory responses. Ameriprise asked Versata to identify all third-party licensors of any "components" of DCM. *See* Exhibit D at 7 (Interrogatory 7). Ximpleware is a library used by DCM, rather than a

"component" of DCM performing one of DCM's core functions. *See generally* Moulton Decl. (Ex. 1) at ¶ 10. Thus, when responding to the interrogatory, Versata only identified licenses it had with parties who developed actual DCM code. Ameriprise's attempt to misconstrue that response to suggest that Versata failed to identify an agreement with Ximpleware and conclude that Ameriprise is therefore entitled to rely on a document its expert downloaded from the internet is wholly dishonest. Ameriprise has adduced no proof that the version of the GPL that its expert downloaded from the internet is an agreement between Versata and Ximpleware. In fact, Ameriprise goes so far as to misstate how Ximpleware may be licensed at all: claiming through its expert that the GPL is the only license available for Ximpleware. Collins Decl. at ¶ 8. Ameriprise and its expert ignored Ximpleware's own website which makes clear that Ximpleware offers licenses other than the GPL. *See* Ex. 11-14.

Ameriprise's attempt to misconstrue Versata's discovery responses is compounded by the sworn declaration submitted Ameriprise's Minnesota counsel.[4] In it, Minnesota counsel declares that she has seen "no evidence that Versata has produced any evidence of any license agreement with Ximpleware other than the GPL attached as Exhibit B to the declaration of John Collins." Redmond Decl. at ¶ 10. That, of course, is untrue as Versata produced its open source licenses on June 26, 2013. Foster Decl. (Ex. 3) at ¶ 4. Moreover, Versata's counsel specifically used one

---

[4] Unfortunately, this is not the first time that Versata has had to deal with the conduct of Ameriprise's Minnesota counsel in this litigation. This has included dealing with Minnesota counsel filing affidavits that purported to disclose statements made in a mediation of this case in violation of Texas Civil Practice and Remedies Code Section 154.073. Foster Decl. at ¶ 3. It also includes dealing with attempts by Minnesota counsel to extort a settlement by threatening to encourage Ximpleware to bring claims against Versata under the GPL. Ex. G at p. 3 (suggesting that Versata abandon its claims and resolve the lawsuit because "the author and owner of the copyright to Ximpleware's software . . . may also have an interest in Versata's actions, and we believe that it would benefit Ameriprise and the Court to involve one or both entities in this case should it continue much longer").

of those licenses during the deposition of Ameriprise's expert.[5]  Collins Dep. (Ex. 10) at 34:3 –
35:13.

## III.
## ARGUMENT AND AUTHORITIES

**A.**  **Ameriprise's Motion Should be Denied Because it is Based on Unpleaded Claims**

A motion for summary judgment can only be taken from claim or defenses that are
pleaded or have been tried by consent.  Where, as here, responsive pleading objects to the raising
of the unpleaded claim or defense, the issue is not properly before the court.  *See Roark v.
Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991) (an unpleaded defense raised in a
motion for summary judgment was not a proper basis for summary judgment where the
respondent objected to the unpleaded defense in its response).  Versata objects that Ameriprise's
pleadings do not support its claims because its pleadings do not include claims for declaratory
judgments that Ameriprise seeks through its Motion.  *See* Motion at 15 (seeking a declaration
that DCM Version 3.9 is licensed to Ameriprise "subject to and governed by Version 2 of the
GNU General Public License" and a declaration that pursuant to the GPL, Ameriprise is entitled
"to obtain and freely use the source code for DCM Version 3.9 subject only to the terms and
condition of the GPL").

Ameriprise has previously pleaded multiple counterclaims, but none is a claim for
declaratory judgment of the type that it seeks in its Motion.  *See* Section II(c), *supra* (describing
the relief sought in Ameriprise's live pleading).  In fact, the relief sought by Ameriprise in its
Motion is wholly inconsistent with Ameriprise's live pleadings.  For example, Ameriprise's
position in its Motion is that the GPL, and not the MLA, is the operative contract between the

---

[5]  The declaration also states that Versata failed to respond to a request for a corporate representative deposition or
to provide dates for such a deposition. Redmond Decl. at ¶ 6. That is incorrect as the declaration attaches the
corporate representative deposition that Versata offered in the case. *See id.* ¶ 11.

parties and that the Court should declare that the only conditions on Ameriprise's use of DCM are set forth in the GPL. Yet Ameriprise's live pleading affirmatively sets forth that the MLA is the contract that controls *and that Ameriprise is bound by the terms of the MLA*. Ex. 4 at ¶ 4 ("the terms of the Agreement [the MLA] are binding upon Versata and Ameriprise."). Moreover, Ameriprise's live pleading seeks to enforce the terms of the MLA, yet the Motion argues that the GPL prohibits Versata from imposing any obligations other than those in the GPL. *See* Exhibit 4 at ¶¶ 25-62 (seeking to enforce MLA under various theories); Motion at 12-13 (arguing that Versata is obligated to give DCM away for free and is "prohibited" from "imposing any restrictions on the recipient's use of the distributed program that differ from those in the GPL").

**B.   Ameriprise is Estopped from Arguing that the terms of the GPL, and not the terms of the MLA Govern Ameriprise's Use of DCM**

As Ameriprise states in its pleading, "[a]t the center of this action is a Master License Agreement." Ex. 4 at ¶ 4. Amerprise and Versata agreed to the Master License Agreement, or MLA, in 1999 and Versata has performed under it for over a decade. In its live pleading, as it has in its previous pleadings, Ameriprise has reaffirmed that the MLA is the operative agreement between the parties, judicially admitting the "terms of the [MLA] are binding upon Versata and Ameriprise." Ex. 4 at ¶ 4. Ameriprise has gone as far as submitting a declaration from its own employee stating that the MLA is the contract between the parties. *See* Ex. 9 at ¶ 14.[6] Now, Ameriprise wants to ignore its pleadings and the facts and replace the MLA with a document they downloaded from the internet, the GPL. *See* Collins Decl. at ¶ 9; Motion at 15. Equity does not allow replacing the MLA with the GPL. "Estoppel by contract is a form of "quasi estoppel" based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another." *Johnson v. Structured Asset Services, LLC*, 148

---

[6] Ameriprise attached the declaration to its response to Versata's Motion for Summary Judgment on Ameriprise's Breach of Warranty Claims. As that response makes clear, Ameriprise was already aware of the Ximpleware issue and had filed a breach of warranty claim based upon it.

S.W.3d 711, 721-22 (Tex. App.—Dallas 2004, no pet.) quoting *Stevens v. State Farm Fire & Cas. Co.,* 929 S.W.2d 665, 672 (Tex. App.—Texarkana 1996, writ denied); *accord Hawn v. Hawn,* 574 S.W.2d 883, 886 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.) (defendant-appellants estopped from denying they entered into written contract).

Here, Ameriprise admits it is a party to the MLA.   Ameriprise professes to have performed in accordance with the terms of the MLA since 1999.   Motion at 3.   In previous pleading, Ameriprise has acknowledged that Versata delivered multiple upgrades to Ameriprise during the course of the contractual relationship. *See* Ex. 9 at ¶¶ 7-8, 13.   After years of reliance and performance by Versata, it would be inequitable to replace the terms of the MLA with the GPL.

**C.   Ameriprise Has Failed in its Basic Burden of Establishing that the GPL is the License between Versata and Ximpleware**

Summary judgment must be denied because Ameriprise has provided not a scintilla of evidence that the GPL document they attach to their motion is the license agreement between Versata and Ximpleware.   *See* Ex. B.   The sole evidence Ameriprise offers is a GPL that was downloaded from the internet by Ameriprise's expert from the following website: sourceforge.net.   Collins Decl. at ¶¶ 8-9.

First, Versata has objected to the document and the testimony of Dr. Collins which attempts to prove up the document.[7]   If the objections are granted, then the GPL cannot be considered and summary judgment must be denied on that ground alone.

Second, even if the court considers the GPL document from the internet, there is no evidence that the GPL is the license between Versata and Ximpleware.   Ameriprise's expert,

---

[7] Versata has also filed evidentiary objections to the declaration of Dr. Collins in which he attempts to prove that the GPL license is the only license Ximpleware offers because it is outside the scope of his expert testimony and is wholly unreliable because the Ximpleware website explicitly offers different licenses. *See* Plaintiffs' Objections to Ameriprise's Summary Judgment Evidence.   Versata incorporates those objections into this response.

who Ameriprise relies upon to "prove up" the document testified that he did not know one way

or the other whether the GPL was in fact the license between Versata and Ximpleware.  Collins

Dep. (Ex. 10) at 28:18-22 ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Now after his deposition, Ameriprise offers that

same expert as the proof that the GPL is the license because he now states that he found no

evidence of Ximpleware using any contract other than the GPL.  Collins Decl. at ¶¶ 8-9.  Of

course, one of the many problems with his declaration is that one need only look at

Ximpleware's website to see that from 2007 to the present, Ximpleware had advertised that it

offers commercial licenses different than the GPL.  *See* Ex. 11-14.  Simply having an expert

download the document from a web site and opine that no other licenses are available falls short

of satisfying Ameriprise's evidentiary burden.  Ameriprise has sought no discovery on the GPL,

and has not subpoenaed the author of the agreement nor have they subpoenaed the alleged

counterparty, Ximpleware.

Ameriprise alleges that Versata has somehow conceded that the GPL applies.  But this

assertion relies on a misinterpretation of Versata's discovery responses.  In its response to

Ameriprise's interrogatory regarding licensors of "components" of DCM, Versata identified

certain licenses and supplemented its response when more information became available.  *See*

Ex. F.  But, as Versata's expert has explained, Ximpleware is not a "component" of DCM.  *See*

Moulton Decl. (Ex. 1) at ¶ 2.

Finally, there is a fact issue on whether the GPL is the license because Versata has

produced, in discovery, a different license than the GPL that Ameriprise is relying on to support

its Motion.  *See* Ex. 2, Attachment B. (GPL with Linking Exception).  Despite Ameriprise's

attempt to mislead the Court otherwise, Versata has both complied with its discovery obligations *and* produced a copy of the license governing Ximpleware.

**D.   Ameriprise Cites No Legal Authority for Replacing the MLA with the GPL**

Another fundamental defect in Ameriprise's claim is that there is no legal basis for finding that the GPL is the contract between the parties and thus governs the rights and obligations of Ameriprise and Versata. It is undisputed that the MLA is the contract between Versata and Ameriprise. *See* Ex. 4 at ¶ 4 (admitting that the operative contract between Versata and Ameriprise is the MLA). If the GPL restricts Versata's ability to impose license terms on DCM, Ameriprise's remedy is to sue Versata for breach of warranty under the MLA, and to pursue the allowed remedies for such a claim.[8] There is no authority, cause of action, or legal doctrine that Ameriprise cites to the Court, relies upon, or even attempts to prove that would allow the Court to substitute the GPL, a different contract, for the MLA that is the governing contract between the parties. This is especially true when the MLA contains clauses setting forth that the MLA is the complete agreement between the parties, superseding all others, and cannot be modified unless the modification is signed by both parties. Ex. A at § 12.12 (complete agreement); § 12.9 (no modification).

**E.   Ameriprise Lacks Standing to Assert that its Rights to DCM are Governed by the GPL**

**1.   Ameriprise is not a party to the GPL**

Ameriprise does not allege or prove that it is a party to the GPL. Ameriprise has not pleaded that it is a third-party beneficiary of the GPL in any prior pleading and has not even attempted to produce evidence that it is. Moreover, the law disfavors finding Ameriprise to be a

---

[8] Versata does not concede that it has breached the warranty provisions of the MLA. Instead, Versata is simply pointing out that the parties specifically negotiated for warranties and Ameriprise's claim is, at best, one for breach of the warranty provisions and not an argument that the terms of the MLA must be ignored.

third-party beneficiary. "There is a presumption *against*, not in favor of, third-party beneficiary agreements." *Farias v. Allstate Ins. Co.*, 13-10-00071-CV, 2011 WL 2175220 (Tex. App.—Corpus Christi June 2, 2011, pet. denied). To qualify as one for whose benefit the contract was made, the third party must show that he is either a donee or creditor beneficiary of, and not one who is benefited only by the performance of, the contract. *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). "In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) citing *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex.1975). "The intention to contract or confer a direct benefit to a third party must be *clearly and fully spelled out or enforcement by the third party must be denied*". *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (emphasis added).

The GPL gives no explicit enforcement right to third parties. Third parties are mentioned in the GPL only in two provisions. First, the license clarifies that the licensee is "not responsible for enforcing compliance by third parties to this license." Second, if the licensee distributes the program under Section 3, it must accompany the software with an ability to access the source code of Ximpleware. Neither of these provisions specifically gives a third party a right to enforce the term of the license. The provisions also do not give any kind of limited enforcement right to a third party to enforce particular terms of the agreement. To the extent a third party can be said to have rights, these rights are limited by the terms of the agreement to the opportunity to be provided with a copy of the source code of Ximpleware. As Ameriprise's expert testified, anyone may have access to the Ximpleware source code from the website. *See* Collins Dep. (Ex. 10) at 49:3-4. Therefore, Ameriprise is not deprived of the only possible third-party right that can be found in the plain language of the contract. Even under the broadest reading of the License's

14

terms, and even if the GPL were an enforceable contract, Ameriprise is seeking to assert rights that the GPL does not permit Ameriprise to vindicate.

### 2.    Ameriprise also cannot assert rights under the GPL because the GPL is not a contract, but a pure license, providing only Ximpleware with a cause of action

Even if Ameriprise were to plead it was a third-party beneficiary to the GPL, such an argument would fail because the GPL is a pure license and therefore only provides one remedy for its breach, a copyright action by Ximpleware.  Scholars have frequently observed that the GPL fails as a contract for want of consideration.  *See* Kumar, Sapna "Enforcing the GNU GPL" 2006 J. Law, Tech. & Policy 20; *see also* Nimmer, Raymond. "Is the GPL License a Contract? The Wrong Question" *Contemporary Intellectual Property, Licensing & Information Law* (6 Sept.    2005),    http://www.ipinfoblog.com/archives/licensing-law-issues-is-the-gpl-license-a-contract-the-wrong-question.html ("Neither the GPL nor any other piece of paper constitutes a contract without more.").  In order to form a contract, the law requires offer, acceptance and consideration. Consideration is a fundamental element of every valid contract.  *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.)    Consideration consists of benefits and detriments to the contracting parties. *Kunz v. Mach. Repair & Maint., Inc.,* 14-00-00422-CV, 2001 WL 1288995 (Tex. App.—Houston [14th Dist.] Oct. 25, 2001, no pet.).  "A lack of consideration occurs when a contract, at its inception, does not impose obligations on both parties." *Cheung-Loon, LLC v. Cergon, Inc.,* 392 S.W.3d 738, 747 (Tex. App.—Dallas 2012, no pet.). "A contract in which there is no consideration moving from one party, or no obligation upon him, lacks mutuality, is unilateral, and unenforceable." *Kunz v. Mach. Repair & Maint.,*

*Inc.,* 14-00-00422-CV, 2001 WL 1288995 (Tex. App.—Houston [14th Dist.] Oct. 25, 2001, no pet.).

Here, Ameriprise has not shown that any benefit passed to Ximpleware from Versata. All that Ameriprise has shown is that Ximpleware made a unilateral, limited grant of rights. No consideration passed from Versata to Ximpleware (or from Ameriprise to Ximpleware for that matter). Therefore, the declaratory judgment they seek, declaring the effect of the alleged contract, is unavailable because the condition precedent of contract formation has not been proved. Rather than creating a contract, the language of the GPL at best creates a pure license. *See* Kumar at 35; *accord* Nimmer. Therefore, the only enforcement tool available is a copyright action by Ximpleware against Versata. *Id.* Ameriprise's only remedy in this situation would be the indemnity provision of the MLA – not replacement of the MLA. For both the foregoing reasons, Ameriprise lacks standing to assert the rights it attempts to assert in its Motion.

**F.     Ameriprise's Argument that a Ximpleware License Prohibits Versata from Imposing Obligations on DCM is Unfounded**

To be entitled to summary judgment on, for example, a breach of license, the movant must establish there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Fort Worth Osteopathic Hosp. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004, reh'g denied). Only then does the burden shift to the non-movant to present evidence of an issue of fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). Texas courts "take all evidence favorable to the nonmovant as true and indulge every reasonable inference in the nonmovant's favor." *Nixon v. Mr. Property Mgmt Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985, reh'g denied). Here, Ameriprise has failed to meet its heavy burden and cannot conclusively establish it is entitled to the relief it seeks for the following reasons:

   **1.   Ameriprise cannot prevail because Versata adduces evidence to dispute that the generic GPL is the license between Versata and Ximpleware**

In the course of this litigation, Versata has produced a copy of the license it maintains applies to the Ximpleware software. Ex. 3 at ¶ 4; Ex. 2 at Attachment B. This license document was obtained from Versata's business records and is properly authenticated. Ex. 2 at ¶¶ 3-4. In contrast, Ameriprise freely admits that the GPL it is relying on was downloaded from the internet. A fact issue clearly exists with respect to which version of the GPL governs Versata's rights to use Ximpleware, and for this reason alone summary judgment in Ameriprise's favor is improper.

### 2. The Actual Version of the Contract between Versata and Ximpleware has an Exception that Defeats Ameriprise's Claim

Ameriprise's argument relies on a version of the GPL that does not contain a key provision: the classpath linking exception. The license that Ameriprise suggests applies is an incomplete document. That document is a generic document downloaded from the internet, with no indication of its authenticity or applicability. *See* Collins Decl. at ¶¶ 8-9. Dr. Collins even acknowledges in his deposition that he was unable to testify that the document he reviewed was the license between Ximpleware and Versata. *See* Collins Dep. (Ex. 10) at 28:18-22. The version of the document contained within Versata's records differs materially, and contains a classpath linking exception that permits precisely the use that Versata makes. *See* Ex. 2, Attachment B (Versata GPL).[9]

### a. The Linking Exception allows software programs to link to "libraries" without distributing those programs under the GPL.

---

[9] Although Dr. Collins was eager to testify on the other portions of the GPL, Dr. Collins declined to apply the classpath linking exception, demurring that he was not expert in contract interpretation. *See* Collins Dep. (Ex. 10) at 38:23-39:10.

The Classpath Linking Exception ("Linking Exception") is the name of an optional license clause that authors of software "libraries," like Ximpleware, can add to the General Public License ("GPL") they intend to use to license their software.[10] The Exception states:

> Linking this library statically or dynamically with other modules is making a combined work based on this library. .. As a special exception, the copyright holders of this library give you ***permission to link this library with independent modules to produce an executable***, regardless of the license terms of these independent modules, ***and to copy and distribute the resulting executable under terms of your choice***...An independent module is a module which is not derived from or based on this library.

Ex. 2, Attachment B at p. 5-6 (emphasis added).

Where a contract "is so worded that it can be given a certain or definite legal meaning, it is not ambiguous." *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981, reh'g denied). The Linking Exception is subject to only one plausible interpretation. As a matter of law, the effect of adding the Linking Exception to the GPL is that users may link to software covered by that license combination without distributing the resulting combination (the "executable") under the GPL. Ex. 2, Attachment B at p. 5-6.

### b.    The Linking Exception exempts DCM Version 3.9 from GPL Conditions.

The Linking Exception apples to the interaction between Ximpleware and DCM Version 3.9 ("DCM") because DCM is (a) an "executable" (b) that "links" its (c) "independent modules" with Ximpleware. First, DCM produces an "executable". The Linking Exception does not define the term executable and it is not a term commonly used in Java (the software programming

---

[10] Developers may add authorized clauses to the GPL at any time. Two users may have different terms depending on when they download the software. Ameriprise's expert acknowledged that "while a company may have a license on their Web site in 2013, what licenses they were using in prior years may be different." Collins Dep. (Ex. 10) 35:9-13. Further, that company "may offer special licenses" to customers. *Id.* at 35:14-17. Finally, the GPL expressly contemplates that a licensor may wish to utilize a different open source license at some point in the future:

> The Free Software Foundation may publish revised and/or new versions of the General Public License from time to time. Such new versions will be similar in spirit to the present version, but may differ in detail to address new problems or concerns.

Ex. 2, Attachment B at § 9

language used in DCM). Collins Dep. (Ex. 10) at 12:19-24. However, DCM is the equivalent of

an executable in Java according to Ameriprise's expert. *Id.* Second, the DCM packages *link*

with portions of the Ximpleware library. Collins Dep. (Ex.10) at 16:18-21; 38:2-8. Collins

agreed that linking is the *connection* of two packages within *independent* name spaces, creating a

"dependency." Collins Dep. (Ex. 10) at 52:9-53:8. DCM and Ximpleware are composed of a

large number of packages, located within name spaces. Collins Dep. (Ex. 10) at 50:23-51:19;

13:16-24. Collins also testified that DCM packages link with portions of the Ximpleware

library. Collins Dep. (Ex. 10) at 38:2-8. Third and finally, the DCM packages are *independent*

*modules.* The Linking Exception states: "[a]n independent module is a module which is not

derived from or based on this library." Ex. 2, Attachment B at p. 5-6. Ameriprise presented no

evidence that any DCM module is derived from or based on Ximpleware –instead, Ameriprise

has stated only that DCM modules *connect* to Ximpleware. Motion at 11-12. This mere

connection, as a feature of the JAVA language, does *not* mean that the modules are inextricably

intertwined. *See* Moulton Decl. (Ex. 1) at ¶¶ 6, 9.

Ameriprise argues the GPL requires Versata to distribute not only the Ximpleware source

code but also the DCM source code. Motion at 12. However, this ignores the Linking Exception,

which allows Versata to "link this [the Ximpleware] library with independent modules to

produce an executable . . ." and to "copy and distribute the resulting executable *under terms of*

*your choice.*" Ex. 2, Attachment B at p. 6. Because the Linking Exception applies to the link

between DCM and Ximpleware summary judgment for Ameriprise is inappropriate. Versata can

distribute DCM without its source code, for a fee, and not suffer liability.

### E.     Even if the Version of the GPL Cited by Ameriprise is the Applicable, Ameriprise's Claims Fail

Ameriprise argues that the GPL ensures that "all recipients of GPL-licensed software

continue to have access to at least its source code, and remain free to use and modify the source

code for their own purposes without restriction." Motion at 5. In support of this argument, they cherry-pick portions of the GPL – but they leave out the fact that the GPL does not offer one simple, "free for all" license but contains tailored restrictions applying to three different scenarios: distribution of unmodified source code, distribution of modified source code, and distribution of the software in object code or executable form. *See* Section E(1) *Infra*. Further, Ameriprise argues that DCM is a "work based on the program" but ignores the plain text of the GPL that defines "work based on the program" with reference to copyright law, choosing instead to put its own gloss on the terms. *See* Motion at 10-12. Simply put, in order to reach Ameriprise's strained, "one size fits all" interpretation of the GPL, Ameriprise asks the court to simply ignore the parts of the contract that Ameriprise doesn't like.

### 1. Ameriprise's Proposed Interpretation of the GPL contravenes well-established rules of contract interpretation by rendering clauses of the GPL meaningless.

To interpret the GPL, a Court must consider the entirety of the license, particularly the three operative license sections placing conditions on the use of works licensed under the GPL.[11] When interpreting a contract, Texas courts must "striv[e] to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998).[12] If a contract "is so worded that it can be given a certain or definite legal meaning, it is not ambiguous" and a court will assign the terms their clear meaning. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981).

---

[11] Courts have not interpreted the terms of the GPL. Eli Greenbaum, *Open Source Semiconductor Core Licensing*, 25 Harv. J.L. & Tech. 131, 139 (2011). Ameriprise's motion suggests that the case *Computer Associates Intern. v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 697-98 (N.D. Ill. 2004), supports their position. But this case does *not* apply the GPL. This case interprets an *exception* to the GPL to find that the GPL does not in fact govern the distribution of that software.

[12] The standard rules of contractual interpretation apply to interpretation of licenses. *Womack+Hampton Architects, L.L.C. v. Metric Holdings Ltd. P'ship*, 102 F. App'x 374, 378 (5th Cir. 2004) (interpreting Texas law).

The three sections of the GPL are clearly-worded contract provisions that deal with verbatim source code distributions (Section 1); modifications of the licensed program, distributed in any format (Section 2); and distributions in object code or executable format (Section 3).

- **Section 1 (verbatim source code copies)** controls the copying and distribution of "verbatim copies of the [licensed] Program's *source code*. . . in any medium." GPL at § 1.[13] If a licensee copies and distributes the source code verbatim, they must "publish on each copy an appropriate copyright notice . . .; keep intact all the notices that refer to this License. . .; and give any other recipients. . . a copy of this License." *Id.*

- **Section 2 (modified source code copies)** applies where a licensee "*modif[ies]* [their] copy or copies of the Program or any portion of it, thus forming a work based on the Program." GPL at § 2. To comply with Section 2 the licensee must distribute the source code for the entire "work based on the Program"[14] "under the terms of [the GPL]." *Id.*

- **Section 3 (object code copies)** applies to distributions of object code or code in executable form. First, a licensee

> may copy and distribute the Program . . . in object code or executable form under the terms of Section[] 1 . . . above provided that [the License] also . . . (a) Accompany it [the Program] with the complete corresponding machine-readable source code, which must be distributed under the terms of Section[] 1 . . . above on a medium customarily used for software interchange; or [b] make the source code readily available; or c) accompany the source code with information as to the offer to distribute the source code]. GPL at § 3.

Second, a licensee

> may copy and distribute . . . ([] a work based on [the Program], under Section 2) in object code or executable form under the terms of Section[] . . . 2 above provided that [the Licensee] also do one of the following: (a) Accompany it [the Program] with the complete corresponding machine-readable source code, which must be distributed under the terms of Section[] 1 . . . above on a medium customarily used for software interchange; or [b] make the source code readily available; or c) accompany the source code with information as to the offer to distribute the source code]. *Id.*

---

[13] Without waiving any objection to Ameriprise's attempt to use a document downloaded from the internet without any evidentiary support, Versata refers to the GPL attached to Ameriprises' Motion.

[14] A "work based on the Program" is the GPL's term for "either the Program or any derivative work under copyright law; that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/or translated into another language." GPL at § 0. If a person modifies the Program, they form a "work based on the Program." GPL at § 2.

Section 3 does two things. One, it allows licensees to distribute *verbatim* copies of the Program in object code or executable form if they abide by the terms of section 1 and also distribute the Program's (meaning the Ximpleware program) source code. GPL at § 3. Two, it allows a licensee to distribute a "work based on the Program" in object code or executable form if the licensee abides by the terms of section 2, *and additionally* distributes the original, unmodified version of the Program's source code (rather than the source code for the entire work based on the program). *Id.* Section 1 does not apply to Versata's use of Ximpleware because Versata did not distribute verbatim copies of the Ximpleware source code. Section 2 does not apply because Section 2 requires that the Ximpleware source code be modified and that a derivative work be created. As is discussed below, Versata did not create a derivative work of Ximpleware. Instead, Versata distributes object code – including code that refers to the Ximpleware library.

Ameriprise does not even pretend to interpret the GPL in its Motion, simply plucking sentences and clauses at random to create an amenable interpretation. Motion at 12-13. Ameriprise's "interpretation" of the GPL is composed of one isolated quote from the Preamble and a quote from section 3 of the GPL. Ameriprise's interpretation hinges upon (1) demonstrating DCM is a "work based on the Program," which Plaintiff refutes below, and (2) the meaning of "the complete corresponding machine-readable source code." Ameriprise argues that a distribution of a "work based on the Program" in object code form (governed by section 3 of the GPL) must be accompanied by the source code for the entire "work based on the Program." But this would force us to read a section 2 requirement into section 3, reading out of the agreement the clearly separate import of section 3. In other words, this requires us to pretend that Section 3's distinct requirement to distribute the original program's source code if you

22

distribute software in object code is the same as Section 2's requirement to distribute source code for an entire "work based on the program."

This interpretation unnecessarily *duplicates* section 2's condition that any "work based on the Program" be accompanied by the source code for the entire "work based on the Program," not merely the source code for the Program itself. Under Ameriprise's interpretation the section 3 source code distribution requirements and section 2 source code distribution requirements are identical. This interpretation renders section 3(a) of the GPL surplusage, a contravention of the rules of contract interpretation. Courts must "construe the agreement, if possible, so as to give each provision meaning and purpose so that no provision is rendered meaningless or moot." *McCarty v. Montgomery*, 290 S.W.3d 525, 532 (Tex. App.—Eastland 2009, reh'g overruled). Plaintiff's construction of section 3(a) gives the clause meaning and purpose—a licensee distributing a modified "work based on the Program" in object code or executable form must also distribute the *unmodified* "complete corresponding machine-readable source code" of the Program.

Given the rules of contract interpretation it is clear that Ameriprise's interpretation of the GPL is incorrect as a matter of law. Because DCM is not a "work based on the program," section 2 does not apply, and Ameriprise's section 2-based argument that Versata must distribute DCM's source code fails.

**2.** **Ameriprise fails to meet its burden on summary judgment because Ameriprise Has Not Proved DCM is a "Work Based on [Ximpleware]."**

The GPL defines the term "work based on the program" by reference to the Copyright Law concept of derivative works. GPL at § 5. It provides:

> The "Program", below, refers to any such program or work, and ***a "work based on the Program" means either the Program or any derivative work under copyright law***: that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/or translated into another language.

23

GPL at § 0 (preamble); *see also* Theresa Gue, *Triggering Infection: Distribution and Derivative Works Under the Gnu General Public License*, U. Ill. J.L. Tech. & Pol'y, Spring 2012, at 95, 124 ("Both GPLv3 and GPLv2 expressly turn to copyright law to define derivative works."). Ameriprise argues DCM is a "work based on the Program" because DCM contains the Program (Ximpleware) "either verbatim or with modifications." Motion at 11. However, merely "incorporating and integrating the Ximpleware parser" does not create a work based on the Program under the GPL, because the GPL requires that a work based on the program meets the definition given by Copyright law. *Id.*[15] Ameriprise does not even mention the concept of "derivative work." Motion at 11-12. Ameriprise entirely fails to carry its burden of proof that DCM is a derivative work, adducing no evidence and no analysis in support of this argument, and for this reason alone summary judgment for Defendant is inappropriate.

Ameriprise has not adduced any evidence that DCM is a derivative work of Ximpleware under the copyright law. In effect, Ameriprise mischaracterizes its burden at summary judgment. Showing DCM "incorporate or integrates" Ximpleware, or "depends" upon Ximpleware is not enough. It must demonstrate DCM is a derivative work of Ximpleware under US copyright law, and it has failed to adduce sufficient evidence as to whether DCM is a derivative work.[16]

---

[15] Further, Dr. Collins argument cannot be that Versata modified Ximpleware, thus creating a "work based on the Program," because Dr. Collins has stated repeatedly that Ameriprise has no evidence of modification. Collins Dep. (Ex. 10) at 17:4-12.

[16] Additionally, Ameriprise argues that "incorporating and integrating the Ximpleware parser" creates a derivative work under the Copyright Act, but that definition is impermissibly broader than the Act's definition of "derivative work." A person cannot license fair use of their intellectual property or unprotectable elements of that property, because they have no right under the Act. See, e.g., *Computer Associates Intern., Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992) (elements of software program code, like organizational charts, are not copyrightable because they are scenes a fair, or materials whose inclusion are caused by external necessity); 17 U.S.C.A. § 102(b) (2013) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); *Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 267-68 (5th Cir. 1988) (copying thirty characters out of fifty pages of software source code does not create a derivative work when the two programs serve different functions); *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000) ("The object code of a program may be copyrighted as expression . . . but it also contains ideas and performs functions that are not entitled to copyright protection."). Put succinctly, a person can only license their property— and US copyright law has limited a person's property to the copyrighted work and "derivative works based upon the

Derivative works must "*incorporate* a portion of a copyrighted work in some *concrete or permanent form* (emphasis added)." *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.,* 964 F.2d 965, 967 (9th Cir. 1992, cert. denied) (reasoning "[t]he examples of derivative works provided by the [Copyright] Act all physically incorporate the underlying work or works"). [17] In determining whether a work is derivative, courts also ask whether the allegedly derivative work would supplant market demand for a component of the copyrighted work. *Galoob*, 704 F.2d at 969; *Midway Mfg. Co. v. Artic Int'l Inc.*, 704 F.2d 1009, 1013-14 (7th Cir. 1983, cert. denied) (in *Midway* a computer chip for a videogame system "substantially copied and *replaced* the chip that was originally distributed by [plaintiff]."). A derivative work is "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be *recast, transformed or adapted*. [. . .]." 17 U.S.C. § 101 (2013); *see also Lee v. A.R.T. Co.,* 125 F.3d 580, 582 (7th Cir. 1997) (determining that alleged derivative work did not sufficiently "alter[] [plaintiff's] works in one of the ways mentioned in the first sentence of [17 U.S.C. § 101]").

DCM Version 3.9 does not modify or change the Ximpleware library, does not incorporate any portion of the Ximpleware library in permanent or concrete form, and does not

---

copyright work." 17 U.S.C.A. § 106(2). Ameriprise cannot add the right to "incorporate[ion] and integrat[ion]" into that exclusive bundle of rights. Motion at 11-12.

[17]  In *Galoob* the defendant's video game program, Game Genie, enhanced audiovisual displays out of those originating from Nintendo game cartridges, but the connection between Nintendo and Game Genie disappeared when a game finished. *Id.* at 968. To accomplish this, Game Genie would interact briefly with the Nintendo system, "blocking the value for a single data byte sent by the game cartridge to the central processing unit in the Nintendo . . . System and replacing it with a new value." *Id.* at 967. Game Genie interacted with the Nintendo game but did "not incorporate a portion of a copyrighted work in some concrete or permanent form," and therefore it was not an infringing derivative work. *Id.* at 968. In contrast, it was an "concrete or permanent" "incorporation" of software source code where defendants took the entire source code without permission, modified the source code, edited links, and compiled it with other software. *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208—09 (3d Cir. 2002). The court stated "the derivative work exists in a concrete or permanent form and substantially incorporated protected material from the pre-existing work." *Id.* at 210.

supplant demand for Ximpleware. Moulton Decl. (Ex. 1) at ¶ 15. Ameriprise has not proved – because it cannot prove—that DCM is a derivative work of Ximpleware.

**First**, there is no evidence that any Ximpleware code was modified for use in DCM. Ameriprise's expert Dr. Collins could uncover no evidence of modification. Collins Dep. (Ex. 10) at 17:4-12. Instead, assuming the absence of copying, Dr. Collins said the two programs linked "separate name spaces," creating a dependency. *Id.* at 52:23-53:5. Versata's use of Ximpleware did not "recast, transform[] or adapt[]" the program: it simply connected the two programs together. 17 U.S.C.A. § 101. Merely connecting two programs, without modification, is insufficient to create a derivative work. 125 F.3d at 582. Further, the operation of the connection observed by Dr. Collins would not independently be sufficient to create a modification because JAVA libraries interact without modifying one another. *See* Moulton Decl. (Ex. 1) at ¶ 8.

**Second**, DCM does not permanently or "concretely" incorporate Ximpleware. Versata's expert Allen Moulton confirms that in general this is simply not how JAVA code functions: when JAVA libraries interact, or when a package mentions "the name "ximpleware," it does not mean the programs are physically linked." *See* Moulton Decl. (Ex. 1) at ¶¶7-9. In JAVA in general, and in the specific case of DCM/Ximpleware, "the link between DCM and Ximpleware is indirect because all operations in a JAVA program must pass through the Java Virtual Machine (JVM)." *Id.* Ameriprise's expert agrees: in his expert opinion, Dr. Collins determined that links, or dependencies, between DCM and Ximpleware are "method-call dependencies," *not* data dependencies. Collins Dep. (Ex. 10) at 20:10-15. DCM's "method-call dependenc[ies]" cause DCM to "call" Ximpleware and ask Ximpleware to complete a task, which Ximpleware then does independently of DCM. Collins Dep. (Ex. 10) at 19:3-20:1. By contrast, a data dependency allows DCM to just "access directly" any data that Ximpleware has. Collins Dep.

(Ex. 10) at 20:2-6. Data dependencies may permanently incorporate code, but Collins determined the relationship between DCM and Ximpleware is purely one of method-call dependencies. Collins Dep. (Ex. 10) at 20:10-15.

*Third*, although Ameriprise's Motion makes much of the fact that DCM could "not function at all" without Ximpleware, that argument misses the point, and is an inaccurate description of the functionality of Ximpleware. Motion at 12; *see also* Moulton Decl. (Ex. 1) at ¶¶ 19-22. Neither of the alleged-derivative works in *Galoob* or *Midway* could have functioned at all without the underlying video game systems or visual displays, so that fact alone is clearly not dispositive in derivative works analyses. *See Galoob*, 964 F.2d. at 968 ("the Game Genie merely enhances the audiovisual displays (or underlying data bytes) that originate in Nintendo game cartridges"); *Midway*, 704 F.2d at 1013-14 (defendants' chip copied the original software code and could not operate without it). Instead, how two programs interact with each other is far more critical. Where, as here, one program interacts with another at arm's length, instead of simply taking its data, then it is not a derivative work of that program. *See Galoob*, 964 F.2d at 968; Matt Asay, *A Funny Thing Happened on the Way to the Market: Linux, the General Public License, and a New Model for Software Innovation*, 17 (Apr. 2002), *available at* http://www.linuxfordevices.com/fil es/misc/asay-paper.pdf ("two separate bodies of code that talk to each other only as needed" are not derivative works). It is not accurate that DCM could "not function at all" without Ximpleware. Ximpleware is one of several programs that perform the function of parsing XML, and substituting one of these other programs for Ximpleware would allow DCM to function the same as if Ximpleware was used. *See* Moulton Decl. (Ex. 1) at ¶¶ 10, 19-21.

*Fourth*, to grant Ameriprise's motion would require an expansion of the definition of "derivative work" at copyright law. The Court should not expand the definition of derivative

work to include software code that links to an independent library. DCM does not supplant demand for Ximpleware. *See* Moulton Decl. (Ex. 1) at ¶¶ 15-16; *see also Galoob*, 704 F.2d at 969 (refusing to expand the definition without proof of detrimental "market effects" for the original work); *Midway* 704 F.2d at 1013-14. Persons who acquire DCM cannot simply use DCM to parse XML: they must separately make use of Ximpleware. *See* Moulton Decl. (Ex. 1) at ¶¶ 18-19. In fact, DCM may increase demand for Ximpleware because potential-users may not have been aware of Ximpleware without DCM. In short, DCM does not supplant demand for Ximpleware because DCM cannot do what Ximpleware does—parse XML. Moulton Decl. (Ex. 1) at ¶ 15.

       **3.**     **Even if the copyright law definition did not control, Ameriprise has failed to conclusively establish that DCM "incorporates and integrates the Ximpleware program"**

Because Ameriprise knows it cannot show that DCM is a derivative work of Ximpleware under copyright law, they propose that all they have to show is that DCM "incorporate[es] and integrat[es]" the Ximpleware parser. Motion at 11-12. Even if that were true, which it is not, Ameriprise has failed to meet its burden. Ameriprise cites testimony from non-expert witnesses –saying that all of DCM is integrated and that if you remove Ximpleware from DCM it doesn't work—and the dependency tree of Dr. Collins. Id.    But the expert testimony in this case demonstrates that Ameriprise is wrong. Mr. Moulton, who analyzed the way JAVA programs actually operate fundamentally disagrees with Ameriprise's core evidence. Moulton Decl. (Ex. 1) at ¶¶ 6, 22. As Moulton explains, "because of the way JAVA works, DCM and Ximpleware are never physically merged," and in fact, Ximpleware could be replaced by another XML parser without damaging DCM's functionality. Moulton Decl. (Ex. 1) at ¶¶ 11, 19-22. After reviewing Collins' analysis, Versata's expert disagrees with Collins' conclusion: "I do not agree with Dr. Collins that the dependency tree analysis demonstrates that DCM "contains, or incorporates,

Ximpleware." See Moulton Decl. (Ex. 1) at ¶¶ 23. Ameriprise's own expert admits there is no evidence DCM incorporates Ximpleware. ███████████████████████████████

████████████████████████████████████████████████████████████████

Collins Dep. (Ex. 10) at 52:5-8. ██████████████████████████████

████████████████████████████████████████████████████████████████

Collins Dep. (Ex. 10) at 53:23-54:5; see also Moulton Decl. at ¶ 14. ("[Dr. Collins] does not demonstrate that DCM software incorporates source code or object code from Ximpleware.") Thus, despite Ameriprise's attempts to shade his testimony to fit their argument, Dr. Collins' deposition testimony shows that there is no proof that Ximpleware was incorporated into DCM. Id. at 38:2-8. This testimony alone creates a genuine issue of material fact whether DCM is a "work based on the Program," even under Ameriprise's incorrect definition.

## IV.
## SPECIAL EXCEPTIONS

### Special Exception No. 1

Versata specially excepts to Ameriprise's Partial Motion for Summary Judgment because the claims for relief in the motion have not been previously properly asserted. Ameriprise has not pleaded any claim for declaratory judgment, or asked in any form to have the court interpret the GPL, in its current Counterclaims. *See* Exhibit 4. It is improper to move for Summary Judgment on an unpleaded claim. *See Rodriguez v. Sinclair Contractors, Inc.,* 14-04-01006-CV, 2005 WL 2787372 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (an unpleaded defense raised in a motion for summary judgment was not a proper basis for summary judgment where the respondent objected to the unpleaded defense in its response). Versata objects to the improper raising and specially excepts, and asks that the court require Ameriprise to conform its pleading to the Texas Rules of Civil Procedure and applicable law.

### Special Exception No. 2

Versata specially excepts to Ameriprise's Partial Motion for Summary Judgment because the motion fails to identify the counterclaim(s) on which it seeks summary judgment. As noted above, Ameriprise's motion does not appear to seek summary judgment on any claim pleaded in its original petition and counterclaims. Ameriprise's pleading does not clearly identify the claims on which it seeks summary judgment and does not set forth the legal elements of those claims, such as a movant must in order to demonstrate it has met its burden under the Texas Rules of Civil Procedure. Ameriprise simply recites facts and then requests declaratory relief. This vague and confusing pleading is nothing more than an attempt to shirk the rules and Ameriprise should be required to clearly plead the theories it puts forth and not "hide the ball" by failing to identify the claims on which it moves.

## V.
## CONCLUSION

Ameriprise's motion is procedurally improper, they lack the standing to bring it, they have failed to meet their burden on summary judgment by misinterpreting the terms of a contract they are not a party to, and by failing to apply the correct copyright law standard, and even if none of these things were true, equity bars the relief they seek. The court should require Ameriprise to file pleadings in accordance with the Texas Rules of Civil Procedure and not entertain this improper pleading. However, if the court entertains Ameriprise's pleading, Versata asks that the court deny Ameriprise's claims.

Date: August 22, 2013           Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

*/s/ Benjamin F. Foster*
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby

State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested on August 22, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

31

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

/s/ Benjamin F. Foster
Benjamin F. Foster

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

# EXHIBIT 1 TO
## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND
## SPECIAL EXCEPTIONS TO DEFENDANTS' MOTION FOR PARTIAL
## SUMMARY JUDGMENT

NO. D-1-GN-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## DECLARATION OF ALLEN MOULTON

1. My name is Allen Moulton. My address is 358 Commonwealth Avenue, Boston, Massachusetts 02115. I am over twenty-one years of age, of sound mind, and competent to make this Declaration.

2. I am an expert witness designated by Plaintiffs in this case, and I offer this declaration in connection with Plaintiff's Response to Defendant's Motion for Partial Summary Judgment. The facts and opinions I offer below are based on my education and experience, and on my investigation and analyses as described below.

3. I am currently a Research Scientist at the MIT Sociotechnical Systems Research Center, and have been in this role since 2010. My research includes research on "Predictive Analysis of Market Anomalies using Dynamic Modeling and Data Mining" involving data analytics and dynamic modeling based on publicly available millisecond level order and trade data for oil trading on a commodities exchange. This research requires me to use, among other things, C, C++, Python, MySQL, R, and Hadoop. In previous research and consulting I have also used the JAVA programming language.

4. I have a Bachelors of Science from MIT in Political Science, and wrote a thesis on computer education technology using the PRISM simulated pseudo-computer. I completed general exams in MIT's Sloan School of Management's Ph.D. program. More information about my educational and technical experience and qualifications can be found in a true and correct copy of my resume, which is attached hereto as Exhibit A.

5. I have reviewed the deposition testimony of Dr. Collins and Rangarajan Venkatesan (including referenced exhibits), and the affidavit of Dr. Collins (Exhibit 1 to the Partial Motion for Summary Judgment). I have reviewed pleadings in this case. I also have

reviewed Oracle documentation on the JAVA language. I have also reviewed the Ximpleware website and documentation about Ximpleware.

6. With respect to the JDepend dependency tree prepared by Dr. Collins, I note he appears to only have identified five packages within DCM that refer directly to Ximpleware (level 0 dependencies). I do not agree with Dr. Collins's conclusion that DCM contains or incorporates Ximpleware in those five packages or indirectly through them in the rest of DCM.

7. First, The JAVA language is a modular language and each part of a particular program, such as DCM, is discrete and dissociable. In fact, reducing interdependencies, increasing reusability, and information isolation are some of the reasons why programmers select JAVA as a programming language.

8. Second, JAVA libraries interact with one another without modifying one another, because when one file speaks to another (or performs a "call") the calling software does not modify the software it speaks to.

9. Third, this means that just because some packages in DCM mention the name "ximpleware," it does not mean the programs are physically linked. The link between DCM and Ximpleware is indirect because all operations in a JAVA program must pass through the Java Virtual Machine (JVM).

10. Fourth, when DCM refers to the name "ximpleware," the JVM simply uses this mention as "directions" to find a library called "ximpleware" on the runtime computer. Further, this means that the JVM must find class files with the name "ximpleware" and if something other than Ximpleware's software were called "ximpleware," the JVM would use that other file and not the software in question here. Any package of the name "ximpleware" with the same functionality could be substituted at any time.

11. Because of the way JAVA works, DCM and Ximpleware are never physically merged. The only connection happens at runtime, under the direction of the JVM.

12. Also, because of the way JAVA works, when DCM executes, Versata's DCM software does not modify the Ximpleware software nor is DCM software modified by Ximpleware software.

13. I have reviewed Dr. Collins' affidavit wherein he asserts only that the package name "com.ximpleware" was mentioned in the five Level 0 DCM packages. He does not make any statements about whether the file found by the JVM to match the name "com.ximpleware" was actually redistributed by Versasta, was obtained directly from Ximpleware or the Ximpleware Source Forge site, or whether the file that the JVM finds was some other package with the same name and functionality.

14. Further, the dependencies identified by Dr. Collins show only that DCM requests the services of classes named "ximpleware," but do not demonstrate that DCM software incorporates source code or object code from Ximpleware.

15. Based on the testimony of Rangarajan Venkatesan, DCM is a software program that performs complex calculations. DCM does not offer the same features as Ximpleware and is therefore not a substitute for Ximpleware.

16. Further, Ximpleware is not capable of performing complex calculations as a standalone program, because it only parses XML. XML is an industry standard convention for labeling (tagging) individual pieces of information within a document. A parser looks through a document for those tags and extracts the associated information elements for use by a program. A parser does not perform any processing on the extracted information.

17. The testimony of Rangarajan Venkatesan confirms that an XML parser is required for DCM to operate.

18. Based on a review of the three source code files marked as exhibits to Mr. Venkatesan's deposition it appears that the role of "ximpleware" in DCM is limited to extracting information from XML files. This understanding is consistent with the way in which XML parsers are typically used. Portions of the program do appear to depend on the information extracted from XML documents by an XML parser named "ximpleware."

19. Ximpleware is one of several programs that perform the function of XML parsing. Substituting one of these other programs for Ximpleware would allow DCM to function substantially the same as if Ximpleware were used. This substitution could occur in two ways:

20. First, based on the dependency tree, the five Level 0 DCM packages are the only places in DCM that perform XML parsing with Ximpleware. If these five DCM packages were modified to use a different XML parser, the rest of the DCM software would operate without change. Because of the JVM name-based file linkage, the five DCM packages could be replaced without modifying any of the other installed DCM software packages.

21. Second, because of the way the JVM operates, any other JAVA classes or package having the same name and functionality as "ximpleware" could be substituted for Ximpleware without any need to change, recompile, or reinstall the rest of DCM.

22. Therefore, while it is reasonable to say that certain portions of the five Level 0 DCM packages directly "depend" on "com.ximpleware" in the sense that they refer to the name "com.ximpleware," the only reasonable conclusion about the other 357 "indirectly dependent" DCM packages is that they depend upon the five Level 0 DCM packages for the functionality of XML parsing. It is clear from Dr. Collins's own dependency tree that the other 357 DCM packages make no reference to "com.ximpleware" and because of the characteristics of JAVA know nothing at all about "com.ximpleware." Moreover the five

Level 0 packages could be replaced at any time with any other XML parsing software without any need to change, recompile, or reinstall the rest of DCM.

23. Based on the foregoing, I do not agree with Dr. Collins that the dependency tree analysis demonstrates that DCM "contains, or incorporates, Ximpleware."

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Boston, Massachusetts on August _22_ 2013.

ALLEN MOULTON

4

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
|       Plaintiffs, | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
|       Defendants. | § | |

**EXHIBIT 2 TO
PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND
SPECIAL EXCEPTIONS TO DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |

## DECLARATION OF ABHINESH SIKKA

1.     My name is Abhinesh Sikka. I am over the age of 18, have never been convicted of a felony, and am in all ways competent to make this Deceleration. I swear under penalty of perjury that the statements herein are true and correct and that they are based on my personal knowledge.

2.     I am Technical Delivery Manager for Versata Software.

3.     Attached to this declaration are Exhibits A and B which are records from Versata Software. Exhibit A ("the spreadsheet") is a spreadsheet maintained by Versata which shows which software license is associated with which open source library. Exhibit B (the "license") is the particular license agreement stored in Versata's records which the spreadsheet lists as associated with the Ximpleware Product.

4.     The spreadsheet is kept by the company in the regular course of business, and it was the regular course of business of the company for an employee, contractor or representative of the company, who obtains and uses an open source library to update the spreadsheet and to store a copy of the license agreement for that library along with the spreadsheet. The spreadsheet is updated at or near the time or reasonably soon after the open source library is obtained or used. Additionally the license is also stored in the system at or near the time that the open source library is obtained or used. The records attached hereto are exact duplicates of the original.

I declare under penalty of perjury that the forgoing is true and correct.

_____
Abhinesh Sikka

Executed on the 22nd day of August, 2013.

| Library Name | License File Name | Notice File Name |
| --- | --- | --- |
| activation | Sun-BinCode-Lic.txt | UNKNOWN |
| ant-contrib | Apache2.0-Lic.txt | UNKNOWN |
| Antlr | ANTLR-BSD-Lic.txt | UNKNOWN |
| ApacheJMeter | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_components | Apache2.0-Lic.txt | apachejmeter-component-NOTICE.txt |
| ApacheJMeter_core | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_ftp | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_functions | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_http | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_java | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_jdbc | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_ldap | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_monitors | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| ApacheJMeter_tcp | Apache2.0-Lic.txt | apachejmeter-NOTICE.txt |
| avalon-framework-4.1.4 | Apache1.1-Lic.txt | UNKNOWN |
| avalon-framework-cvs-20020806 | Apache2.0-Lic.txt | UNKNOWN |
| axis | Apache2.0-Lic.txt | NOTICE.AXIS.txt |
| batik | Apache2.0-Lic.txt | UNKNOWN |
| collections | Apache2.0-Lic.txt | UNKNOWN |
| commons-beanutils-1.6 | commons-beanutils-1.6-LICENSE.txt | commons-beanutils-1.6-NOTICE.txt |
| commons-codec-1.3 | Apache2.0-Lic.txt | commons-codec-1.3-NOTICE.txt |
| commons-collections | Apache2.0-Lic.txt | NOTICE.Commons-collections.txt |
| commons-collections-3.1 | commons-collections-3.1-LICENSE.txt | commons-collection-3.1-NOTICE.txt |
| commons-dbcp-1.2.1 | commons-dbcp-1.2.1-LICENSE.txt | commons-dbcp-1.2.1-NOTICE.txt |
| commons-digester-1.5 | commons-digester-1.5-LICENSE.txt | commons-digester-1.5-NOTICE.txt |
| commons-discovery-0.2 | commons-discovery-0.2-LICENSE.txt | commons-discovery-0.2-NOTICE.txt |
| commons-fileupload-1.2 | commons-fileupload-1.2-LICENSE.txt | commons-fileupload-1.2-NOTICE.txt |
| commons-httpclient-3.1 | Apache2.0-Lic.txt | commons-httpclient-3.1-NOTICE.txt |
| commons-io-1.2 | Apache2.0-Lic.txt | commons-io-1.2-NOTICE.txt |
| commons-io-1.4 | Apache2.0-Lic.txt | commons-io-1.4-NOTICE.txt |
| commons-lang-2.4 | Apache2.0-Lic.txt | commons-lang-2.4-NOTICE.txt |
| commons-logging-1.0.4 | commons-logging-1.0.4-LICENSE.txt | commons-logging-1.0.4-NOTICE.txt |
| commons-math-1.0 | commons-math-1.0-LICENSE.txt | commons-math-1.0-NOTICE.txt |
| commons-net-1.3.0 | Apache2.0-Lic.txt | commons-net-1.3.0-NOTICE.txt |
| commons-pool-1.2 | commons-pool-1.2-LICENSE.txt | commons-pool-1.2-NOTICE.txt |
| commons-validator | commons-validator-LICENSE.txt | commons-validator-NOTICE.txt |
| commons-vfs | Apache2.0-Lic.txt | commons-vfs-NOTICE.txt |
| derby | Apache2.0-Lic.txt | derby-NOTICE.txt |
| dom | dom-LICENSE.txt | UNKNOWN |



EXHIBIT

A

| | | |
|---|---|---|
| dom4j | BSD-Lic.txt | UNKNOWN |
| eigenbase-properties | Apache2.0-Lic.txt | UNKNOWN |
| eigenbase-resgen | Apache2.0-Lic.txt | UNKNOWN |
| eigenbase-xom | Apache2.0-Lic.txt | UNKNOWN |
| emma | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| Emma_ant | common-public-LICENSE.txt | UNKNOWN |
| fop | common-public-LICENSE.txt | NOTICE-Apache-fop.txt |
| gwt-cal-0.9.2.jar | Apache2.0-Lic.txt | UNKNOWN |
| gwt-servlet | General-public-LICENSE-version3.txt | UNKNOWN |
| jaas | Apache2.0-Lic.txt | UNKNOWN |
| jai_codec | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jai_core | Sun-BinCode-Lic.txt | UNKNOWN |
| jakarta-oro-2.0.8 | Sun-BinCode-Lic.txt | UNKNOWN |
| jakarta-regexp-1.2 | Apache2.0-Lic.txt | UNKNOWN |
| javacup | Apache1.1-Lic.txt | UNKNOWN |
| jaxb1-impl | javacup-LICENSE.txt | UNKNOWN |
| jaxb-api | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxb-impl | SunMicrosystemsInc-LICENSE.txt | jaxb-impl-NOTICE.txt |
| jaxb-libs | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxb-xjc | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxen-full | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxp-api | jaxen-full-LICENSE.txt | UNKNOWN |
| jax-qname | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxrpc | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxrpc-sun-oracle-LICENSE.txt | | UNKNOWN |
| jaxws-api | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxws-rt | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jaxws-tools | SunMicrosystemsInc-LICENSE.txt | jaxws-tools-NOTICE |
| jcert | Sun-BinCode-Lic.txt | UNKNOWN |
| jcommon-1.0.0 | General-public-LICENSE-version3.txt | UNKNOWN |
| jcoverage | GNU-general-public-license(GPL)-version-2-LICENSE.txt | UNKNOWN |
| jdbc2_0-stdext | Sun-BinCode-Lic.txt | UNKNOWN |
| jdom | jdom-LICENSE.txt | UNKNOWN |
| jfreechart-1.0.0 | General-public-LICENSE-version3.txt | UNKNOWN |
| jgl3.1.0 | JGL-LICENSE-txt.txt | UNKNOWN |
| jmi | jmi-LICENSE.txt | UNKNOWN |
| jndi | Oracle-JDBC-Lic.txt | UNKNOWN |
| jnet | Apache2.0-Lic.txt | UNKNOWN |
| jorphan | Apache2.0-Lic.txt | jorphan-NOTICE.txt |
| js | mozilla-public-license.txt | UNKNOWN |

| | | |
|---|---|---|
| jsf-api | COMMON-DEVELOPMENT-AND-DISTRIBUTION-LICENSE(CDDL)Version1.1-LICENSE.txt | UNKNOWN |
| jsr173_api | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jsr181-api | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jsr250-api | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jsse | Sun-BinCode-Lic | UNKNOWN |
| jsti | COMMON-DEVELOPMENT-AND-DISTRIBUTION-LICENSE(CDDL)Version1.1-LICENSE.txt | UNKNOWN |
| jta-spec1_0_1 | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| jxl | GNU-general-public-license(GPL)-version-2-LICENSE.txt | UNKNOWN |
| log4j | log4j-1.2.16-LICENSE.txt | log4j-1.2.16-NOTICE.txt |
| logkit-1.2 | Apache2.0-Lic.txt | UNKNOWN |
| lotusssl | IBM-LotusXSL-Distribution-LICENSE.txt | UNKNOWN |
| mail | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| mailapi | Apache2.0-Lic.txt | UNKNOWN |
| mlib | GNU-general-public-license(GPL)-version-2-LICENSE.txt | UNKNOWN |
| mof | Sun-BinCode-Lic | UNKNOWN |
| namespace | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| opencsv-1.8 | Apache2.0-Lic.txt | UNKNOWN |
| oro | BSD-Lic.txt | UNKNOWN |
| parser | Apache1.1-Lic.txt | UNKNOWN |
| PDFBox-0.7.2 | BSD-Lic.txt | UNKNOWN |
| poi | Apache2.0-Lic.txt | poi-NOTICE.txt |
| providerutil | Sun-BinCode-Lic | UNKNOWN |
| quartz-all-1.6.0 | Apache2.0-Lic.txt | UNKNOWN |
| relaxngDatatype | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| resolver | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| saaj-api | COMMON-DEVELOPMENT-AND-DISTRIBUTION-LICENSE(CDDL)Version1.1-LICENSE.txt | UNKNOWN |
| saaj-impl | COMMON-DEVELOPMENT-AND-DISTRIBUTION-LICENSE(CDDL)Version1.1-LICENSE.txt | UNKNOWN |
| sax | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| saxpath | saxpath-LICENSE.txt | UNKNOWN |
| servlet | Sun-BinCode-Lic | UNKNOWN |
| servlet-api | GNU-general-public-license(GPL)-version-2-LICENSE.txt | UNKNOWN |
| sjsxp | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| smtp | Sun-BinCode-Lic | UNKNOWN |
| standard | Apache2.0-Lic.txt | UNKNOWN |
| struts | Apache2.0-Lic.txt | struts-NOTICE.txt |
| tidy.jar | tidy-LICENSE.txt | UNKNOWN |

| | | |
|---|---|---|
| vtd-xml | GNU-general-public-license(GPL)-version-2-LICENSE.txt | UNKNOWN |
| wsdl4j-1.5.1 | common-public-LICENSE.txt | UNKNOWN |
| xalan | Apache2.0-Lic.txt | NOTICE-Apache-xalan.txt / xalan-2.7.1-NOTICE.txt |
| xercesImpl | SunMicrosystemsInc-LICENSE.txt | xercesImpl-2.9.1-NOTICE.txt |
| xml4j | Apache1.1-Lic.txt | UNKNOWN |
| xml-apis | Apache2.0-Lic.txt | xml-api-1.3.04-NOTICE |
| xmlParserAPIs | Apache2.0-Lic.txt | UNKNOWN |
| xmlsec | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| xmlunit1.0 | xmlunit1.0-LICENSE.txt | UNKNOWN |
| xsdlib | SunMicrosystemsInc-LICENSE.txt | UNKNOWN |
| xsltc | Apache2.0-Lic.txt | UNKNOWN |

```
                GNU-general-public-license(GPL)-version-2-LICENSE
The GNU General Public License (GPL) Version 2, June 1991
```

Copyright (C) 1989, 1991 Free Software Foundation, Inc.
59 Temple Place, Suite 330, Boston, MA 02111-1307 USA

Everyone is permitted to copy and distribute verbatim copies
of this license document, but changing it is not allowed.

Preamble

The licenses for most software are designed to take away your freedom to share and
change it. By contrast, the GNU General Public License is intended to guarantee your
freedom to share and change free software--to make sure the software is free for all
its users. This General Public License applies to most of the Free Software
Foundation's software and to any other program whose authors commit to using it.
(Some other Free Software Foundation software is covered by the GNU Library General
Public License instead.) You can apply it to your programs, too.

When we speak of free software, we are referring to freedom, not price. Our General
Public Licenses are designed to make sure that you have the freedom to distribute
copies of free software (and charge for this service if you wish), that you receive
source code or can get it if you want it, that you can change the software or use
pieces of it in new free programs; and that you know you can do these things.

To protect your rights, we need to make restrictions that forbid anyone to deny you
these rights or to ask you to surrender the rights. These restrictions translate to
certain responsibilities for you if you distribute copies of the software, or if you
modify it.

For example, if you distribute copies of such a program, whether gratis or for a
fee, you must give the recipients all the rights that you have. You must make sure
that they, too, receive or can get the source code. And you must show them these
terms so they know their rights.

We protect your rights with two steps: (1) copyright the software, and (2) offer you
this license which gives you legal permission to copy, distribute and/or modify the
software.

Also, for each author's protection and ours, we want to make certain that everyone
understands that there is no warranty for this free software. If the software is
modified by someone else and passed on, we want its recipients to know that what
they have is not the original, so that any problems introduced by others will not
reflect on the original authors' reputations.

Finally, any free program is threatened constantly by software patents. We wish to
avoid the danger that redistributors of a free program will individually obtain
patent licenses, in effect making the program proprietary. To prevent this, we have
made it clear that any patent must be licensed for everyone's free use or not
licensed at all.

The precise terms and conditions for copying, distribution and modification follow.

TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION

0. This License applies to any program or other work which contains a notice placed
by the copyright holder saying it may be distributed under the terms of this General
Public License. The "Program", below, refers to any such program or work, and a
"work based on the Program" means either the Program or any derivative work under
copyright law: that is to say, a work containing the Program or a portion of it,
either verbatim or with modifications and/or translated into another language.
(Hereinafter, translation is included without limitation in the term
"modification".) Each licensee is addressed as "you".



Trilogy02284

GNU-general-public-license(GPL)-version-2-LICENSE
Activities other than copying, distribution and modification are not covered by this
License; they are outside its scope. The act of running the Program is not
restricted, and the output from the Program is covered only if its contents
constitute a work based on the Program (independent of having been made by running
the Program). Whether that is true depends on what the Program does.

1. You may copy and distribute verbatim copies of the Program's source code as you
receive it, in any medium, provided that you conspicuously and appropriately publish
on each copy an appropriate copyright notice and disclaimer of warranty; keep intact
all the notices that refer to this License and to the absence of any warranty; and
give any other recipients of the Program a copy of this License along with the
Program.

You may charge a fee for the physical act of transferring a copy, and you may at
your option offer warranty protection in exchange for a fee.

2. You may modify your copy or copies of the Program or any portion of it, thus
forming a work based on the Program, and copy and distribute such modifications or
work under the terms of Section 1 above, provided that you also meet all of these
conditions:

    a) You must cause the modified files to carry prominent notices stating that you
changed the files and the date of any change.

    b) You must cause any work that you distribute or publish, that in whole or in
part contains or is derived from the Program or any part thereof, to be licensed as
a whole at no charge to all third parties under the terms of this License.

    c) If the modified program normally reads commands interactively when run, you
must cause it, when started running for such interactive use in the most ordinary
way, to print or display an announcement including an appropriate copyright notice
and a notice that there is no warranty (or else, saying that you provide a warranty)
and that users may redistribute the program under these conditions, and telling the
user how to view a copy of this License. (Exception: if the Program itself is
interactive but does not normally print such an announcement, your work based on the
Program is not required to print an announcement.)

These requirements apply to the modified work as a whole. If identifiable sections
of that work are not derived from the Program, and can be reasonably considered
independent and separate works in themselves, then this License, and its terms, do
not apply to those sections when you distribute them as separate works. But when you
distribute the same sections as part of a whole which is a work based on the
Program, the distribution of the whole must be on the terms of this License, whose
permissions for other licensees extend to the entire whole, and thus to each and
every part regardless of who wrote it.

Thus, it is not the intent of this section to claim rights or contest your rights to
work written entirely by you; rather, the intent is to exercise the right to control
the distribution of derivative or collective works based on the Program.

In addition, mere aggregation of another work not based on the Program with the
Program (or with a work based on the Program) on a volume of a storage or
distribution medium does not bring the other work under the scope of this License.

3. You may copy and distribute the Program (or a work based on it, under Section 2)
in object code or executable form under the terms of Sections 1 and 2 above provided
that you also do one of the following:

    a) Accompany it with the complete corresponding machine-readable source code,
which must be distributed under the terms of Sections 1 and 2 above on a medium
customarily used for software interchange; or,

    b) Accompany it with a written offer, valid for at least three years, to give
Page 2

Trilogy02285

GNU-general-public-license(GPL)-version-2-LICENSE

any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,

c) Accompany it with the information you received as to the offer to distribute corresponding source code. (This alternative is allowed only for noncommercial distribution and only if you received the program in object code or executable form with such an offer, in accord with Subsection b above.)

The source code for a work means the preferred form of the work for making modifications to it. For an executable work, complete source code means all the source code for all modules it contains, plus any associated interface definition files, plus the scripts used to control compilation and installation of the executable. However, as a special exception, the source code distributed need not include anything that is normally distributed (in either source or binary form) with the major components (compiler, kernel, and so on) of the operating system on which the executable runs, unless that component itself accompanies the executable.

If distribution of executable or object code is made by offering access to copy from a designated place, then offering equivalent access to copy the source code from the same place counts as distribution of the source code, even though third parties are not compelled to copy the source along with the object code.

4. You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

5. You are not required to accept this License, since you have not signed it. However, nothing else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.

6. Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. You are not responsible for enforcing compliance by third parties to this License.

7. If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program.

If any portion of this section is held invalid or unenforceable under any particular circumstance, the balance of the section is intended to apply and the section as a whole is intended to apply in other circumstances.

It is not the purpose of this section to induce you to infringe any patents or other property right claims or to contest validity of any such claims; this section has

Page 3

Trilogy02286

GNU-general-public-license(GPL)-version-2-LICENSE

the sole purpose of protecting the integrity of the free software distribution system, which is implemented by public license practices. Many people have made generous contributions to the wide range of software distributed through that system in reliance on consistent application of that system; it is up to the author/donor to decide if he or she is willing to distribute software through any other system and a licensee cannot impose that choice.

This section is intended to make thoroughly clear what is believed to be a consequence of the rest of this License.

8. If the distribution and/or use of the Program is restricted in certain countries either by patents or by copyrighted interfaces, the original copyright holder who places the Program under this License may add an explicit geographical distribution limitation excluding those countries, so that distribution is permitted only in or among countries not thus excluded. In such case, this License incorporates the limitation as if written in the body of this License.

9. The Free Software Foundation may publish revised and/or new versions of the General Public License from time to time. Such new versions will be similar in spirit to the present version, but may differ in detail to address new problems or concerns.

Each version is given a distinguishing version number. If the Program specifies a version number of this License which applies to it and "any later version", you have the option of following the terms and conditions either of that version or of any later version published by the Free Software Foundation. If the Program does not specify a version number of this License, you may choose any version ever published by the Free Software Foundation.

10. If you wish to incorporate parts of the Program into other free programs whose distribution conditions are different, write to the author to ask for permission. For software which is copyrighted by the Free Software Foundation, write to the Free Software Foundation; we sometimes make exceptions for this. Our decision will be guided by the two goals of preserving the free status of all derivatives of our free software and of promoting the sharing and reuse of software generally.

NO WARRANTY

11. BECAUSE THE PROGRAM IS LICENSED FREE OF CHARGE, THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY APPLICABLE LAW. EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM IS WITH YOU. SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

12. IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MAY MODIFY AND/OR REDISTRIBUTE THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS), EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

END OF TERMS AND CONDITIONS

How to Apply These Terms to Your New Programs

If you develop a new program, and you want it to be of the greatest possible use to the public, the best way to achieve this is to make it free software which everyone can redistribute and change under these terms.

Page 4

Trilogy02287

GNU-general-public-license(GPL)-version-2-LICENSE

To do so, attach the following notices to the program. It is safest to attach them
to the start of each source file to most effectively convey the exclusion of
warranty; and each file should have at least the "copyright" line and a pointer to
where the full notice is found.

   One line to give the program's name and a brief idea of what it does.
   Copyright (C) <year> <name of author>

   This program is free software; you can redistribute it and/or modify it under
the terms of the GNU General Public License as published by the Free Software
Foundation; either version 2 of the License, or (at your option) any later version.

   This program is distributed in the hope that it will be useful, but WITHOUT ANY
WARRANTY; without even the implied warranty of MERCHANTABILITY or FITNESS FOR A
PARTICULAR PURPOSE. See the GNU General Public License for more details.

   You should have received a copy of the GNU General Public License along with
this program; if not, write to the Free Software Foundation, Inc., 59 Temple Place,
Suite 330, Boston, MA 02111-1307 USA

Also add information on how to contact you by electronic and paper mail.

If the program is interactive, make it output a short notice like this when it
starts in an interactive mode:

   Gnomovision version 69, Copyright (C) year name of author Gnomovision comes with
ABSOLUTELY NO WARRANTY; for details type `show w'. This is free software, and you
are welcome to redistribute it under certain conditions; type `show c' for details.

The hypothetical commands `show w' and `show c' should show the appropriate parts of
the General Public License. Of course, the commands you use may be called something
other than `show w' and `show c'; they could even be mouse-clicks or menu
items--whatever suits your program.

You should also get your employer (if you work as a programmer) or your school, if
any, to sign a "copyright disclaimer" for the program, if necessary. Here is a
sample; alter the names:

   Yoyodyne, Inc., hereby disclaims all copyright interest in the program
`Gnomovision' (which makes passes at compilers) written by James Hacker.

   signature of Ty Coon, 1 April 1989
   Ty Coon, President of Vice

This General Public License does not permit incorporating your program into
proprietary programs. If your program is a subroutine library, you may consider it
more useful to permit linking proprietary applications with the library. If this is
what you want to do, use the GNU Library General Public License instead of this
License.

"CLASSPATH" EXCEPTION TO THE GPL VERSION 2

Certain source files distributed by Oracle are subject to the following
clarification and special exception to the GPL Version 2, but only where Oracle has
expressly included in the particular source file's header the words "Oracle
designates this particular file as subject to the "Classpath" exception as provided
by Oracle in the License file that accompanied this code."

Linking this library statically or dynamically with other modules is making a
combined work based on this library. Thus, the terms and conditions of the GNU
General Public License Version 2 cover the whole combination.

Trilogy02288

GNU-general-public-license(GPL)-version-2-LICENSE

As a special exception, the copyright holders of this library give you permission to link this library with independent modules to produce an executable, regardless of the license terms of these independent modules, and to copy and distribute the resulting executable under terms of your choice, provided that you also meet, for each linked independent module, the terms and conditions of the license of that module.  An independent module is a module which is not derived from or based on this library.  If you modify this library, you may extend this exception to your version of the library, but you are not obligated to do so.  If you do not wish to do so, delete this exception statement from your version.

Page 6

Trilogy02289

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

# EXHIBIT 3 TO
## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### AND
## SPECIAL EXCEPTIONS TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## DECLARATION OF BENJAMIN F. FOSTER

1.     "My name is Benjamin F. Foster.  I am over the age of 18, have never been convicted of a felony, and am in all ways competent to make this Declaration.  I swear under penalty of perjury that the statements herein are true and correct and that they are based on my personal knowledge.

2.     I am an attorney licensed to practice in the State of Texas.  I am a counsel of record for Plaintiffs in this matter.

3.     During the ancillary Minnesota proceeding Brian Doherty, an Ameriprise Executive, swore out three affidavits, the third of these affidavits, which was attached to Ameriprise's failed reply in support of a Temporary Injunction, contained a lengthy purported discussion of a mediation between the parties. Ameriprise's Minnesota counsel relied on this affidavit in arguments made in its reply.

4.     On June 26, 2013, I produced a bates labeled copy of the license agreement now attached as Exhibit B to the business record affidavit of Abhinesh Sikka. This document was produced via FTP to counsel for Ameriprise. FTP is the system Versata has employed in all of its productions in this case due to the volume of discovery produced.

5.     The following exhibits attached to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment and Special Exceptions to Defendants' Motion for Partial Summary Judgment are true and correct copies of pleadings in this case:

Exhibit 4     Defendants' First Amended Counterclaim and Application for Temporary and Permanent Injunctive Relief

Exhibit 5       Third Party McCamish Systems, L.L.C.'s Motion to Quash Plaintiffs'
                Notice of Intent to Take Corporate Representative Deposition and
                *Subpoena Duces Tecum* and Motion for Protective Order

Exhibit 8       Defendants' Amended Response to Request for Disclosure

Exhibit 9       Exhibit B to Ameriprise's Response to Plaintiffs' Motion for Summary
                Judgment on Defendant's Counterclaim for Breach of Warranty

6.      The following exhibits attached to Plaintiffs' Response to Defendants' Motion for
Partial Summary Judgment and Special Exceptions to Defendants' Motion for Partial Summary
Judgment are true and correct copies of correspondence:

Exhibit 6       October 25, 2012 letter from Tommy Jacks to Travis C. Barton

Exhibit 7       September 17, 2012 letter from Steven J. Mitby to James W. Poradek

Exhibit 15      June 5, 2013 email from Benjamin Foster to Heather Redmond

7.      The following exhibits attached to Plaintiffs' Response to Defendants' Motion for
Partial Summary Judgment and Special Exceptions to Defendants' Motion for Partial Summary
Judgment are true and correct copies of deposition transcripts and deposition exhibits in this
case:

Exhibit 10      Deposition transcript of John Edgar Collins, Ph.D. dated June 26, 2013

8.      The following exhibit is a true and correct copy of the website indicated in the
exhibit description.

Exhibit 11      The     current     version     of     the     Ximpleware     website,
                http://www.ximpleware.com/ as of August 22, 2013.

9.      The following exhibits are historic versions of the Ximpleware website. This
historic website information was obtained from the website "Internet Archive" located at
http://archive.org/web/web.php. This website contains a feature called "The Wayback Machine"
which allows a user of the website to view achieved copies of publically available websites.
Using "The Wayback Machine" on August 22, 2013, I located historic versions of the
Ximpleware website, and are true and correct copies of the achived copies as follows:

Exhibit 12      The Ximpleware website, http://www.ximpleware.com/, as it existed June
                3, 2007.

Exhibit 13      The Ximpleware website, http://www.ximpleware.com/, as it existed May
                2, 2007.

Exhibit 14    The Ximpleware website, http://www.ximpleware.com/, as it existed on February 24, 2007.

I declare under penalty of perjury that the forgoing is true and correct.

Benjamin F. Foster

Executed on the 22nd day of August, 2013.

3

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| **Defendants.** | § | |

## EXHIBIT 4 TO
## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND
## SPECIAL EXCEPTIONS TO DEFENDANTS' MOTION FOR PARTIAL
## SUMMARY JUDGMENT