# EXHIBIT A
# PART 11 OF 12

Filed
13 September 25 P5:49
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-003588

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § § § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v | § § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § § § § § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

## DEFENDANTS' FIRST MOTION FOR CONTINUANCE OF TRIAL SETTING

### TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (together "Ameriprise") file this First Motion for Continuance of Trial Setting. Trial is set for November 18, 2013. Ameriprise requests the Court to continue this trial setting for 90 days, or until another date mutually agreeable to the parties and the Court, because (1) the failure of Plaintiffs Versata Software, Inc. and Versata Development Group, Inc. (together "Versata") to timely produce documents in response to Ameriprise's long-standing document requests has prevented Ameriprise from completing discovery necessary to file dispositive motions and prepare for trial; (2) Versata's delay in producing its source code has prevented Ameriprise from taking the discovery necessary to seek resolution of a planned motion for summary judgment; (3) Versata's failure to proffer its designated experts for depositions has prevented Ameriprise from identifying and preparing its

1029503

rebuttal experts; and (4) Versata has proposed to mediate the case.  This continuance is not sought for the purpose of delay, but so that justice may be done.

## I.     BACKGROUND

### A.     <u>Case Background</u>

Versata filed its Original Petition on November 13, 2012.  The parties conducted an unsuccessful mediation in December 2012.  In February, 2013, Versata moved for temporary injunctive relief, and the hearing was set for July 1, 2013.  On the eve of the hearing, the parties entered into a consent agreement related to the temporary relief sought, and removed the hearing from the Court's calendar.  Under the Court's procedural rules, discovery currently closes on October 8, 2013.  Without consulting Ameriprise, Versata unilaterally set the case for trial on November 18, 2013.

Document discovery in this case has been burdensome and time-consuming.  Versata issued five separate sets of document requests to Ameriprise – on January 30, February 6, February 18, May 14 and, most recently, on September 6, 2013.  Ameriprise collected and reviewed hundreds of thousands of potentially responsive documents, including a multiple of that number of pages.  Ameriprise produced documents on a rolling basis on June 7, June 19, August 14, and September 13, 2013.  In total, Ameriprise has produced more than 58,000 documents containing hundreds of thousands of pages and substantially completed its document production nearly a month prior to the close of discovery.

Ameriprise issued document requests to Versata on March 8 and May 15, 2013.  After the Court granted most of Ameriprise's previously-filed motion to compel (necessitated by an impending hearing on Versata's temporary injunction motion), on May 23, 2013, Versata

2

reproduced to Ameriprise 186,484 documents that Versata had produced in a separate federal court action between Versata and Infosys (the "Infosys Documents") and approximately 50 additional documents.   On June 26, 2013, Versata produced an additional 23 documents, 20 of which were copies of pleadings.  Thus, as of September 18, 2013, Versata had produced only 73 documents in response to Ameriprise's requests in this litigation beyond copies of the Infosys Documents.  Then, on September 19, 2013, Versata produced approximately 33,000 additional responsive documents and, on September 23, 2013 – two weeks before the discovery cut-off and less than two months before the trial setting – Versata produced another 31,000 responsive documents.

As discussed in detail below, at least 14 fact depositions and four expert depositions remain to be taken in five different states before trial.  That number may increase as Ameriprise reviews Versata's recent, but substantial document productions.   Ameriprise is likely to designate at least one additional expert after it deposes Versata's experts.  Both parties have indicated an intention to file dispositive motions, and Versata has requested that Ameriprise participate in a second mediation before trial.  Despite the impracticality of completing all of these activities before November 18, Versata's counsel refuses to agree to a continuance of trial. Accordingly, Ameriprise files this First Motion for Continuance of Trial Setting.

## II.     ARGUMENT

### A.     <u>Legal Standards</u>

A continuance is proper for sufficient cause supported by affidavit.  Tex. R. Civ. P. 251; *see In re E .L.T.*, 93 S.W.3d 372, 374 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  When considering a party's first application for a continuance, a trial court must accept all verified and

uncontroverted statements in the motion as true. *Verkin v. Southwest Center One*, 784 S.W.2d 92, 94 (Tex. App.—Houston [1st Dist.] 1989, writ denied); *Garza v. Serrato*, 699 S.W.2d 275, 281 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); *Piedmont Fire Ins. Co. v. Dunlap*, 193 S.W.2d 853, 856 (Tex. Civ. App.—Galveston 1946, writ ref'd n.r.e.).

If a continuance is sought in order to pursue further discovery, the motion must describe the evidence sought, explain its materiality, and show that the party requesting the continuance has used due diligence to obtain the evidence. *Wal–Mart Stores Tex., LP v. Crosby*, 295 S.W.3d 346, 356 (Tex. App.-Dallas 2009, pet. denied); *see* Tex. R. Civ. P. 252; *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). If a party shows a reasonable excuse for its inability to be present at trial, and that denial of a continuance will cause the party prejudice, the continuance should be granted. *See Ngo v. Ngo*, 133 S.W.3d 688, 693 (Tex. App.—Corpus Christi 2003, no pet.).

> **B.  Ameriprise Needs Additional Time to Review Versata's Recent Document Productions And Depose Versata's Witnesses**

Although Ameriprise issued document requests to Versata in March and in May, 2013, as of September 18, 2013, Versata had produced only 73 documents in response to Ameriprise's requests beyond copies of the Infosys Documents it previously produced in litigation with another defendant.

Ameriprise diligently sought to obtain the remainder of Versata's responsive documents. In a telephone call regarding discovery issues on August 23, 2013, Versata's counsel indicated for the first time that Versata had yet to make a "substantial" production of approximately 75,000 documents. Versata's counsel represented that most of Versata's production would be

4

1029503

forthcoming in approximately one week, with the remaining documents following within days thereafter. Ameriprise's counsel requested that Versata immediately begin rolling productions (as Ameriprise had done), providing to Ameriprise whatever documents were ready for production. In a follow-up call approximately one week later, Versata's counsel stated that he anticipated the production would be closer to 100,000 documents, and that Versata would need a few more days before it would be in a position to produce them. Several weeks passed without Versata producing any documents, and on September 12, 2013, Ameriprise's counsel sent an email stating that Ameriprise could not confirm dates for deposing Versata's witnesses until Versata made its "substantial" production. Ameriprise closed its communication with a request for a date certain by which Versata's production would be completed.

Ameriprise received no response to its September 12th request until late in the day on September 18th. That communication promised a production of approximately 33,000 documents on September 19th, and another production of approximately the same volume on September 23rd. Ameriprise filed a motion to compel Versata's complete production. Between September 19-23, Ameriprise finally received additional productions of approximately 64,000 new documents.

On September 13, 2013, Versata served deposition notices for five Ameriprise witnesses (Macomb, Doherty, Kupper, Strauss, and Newman) and Ameriprise's computer software expert (Collins), and on September 16, 2013, Versata served a deposition notice for a former Ameriprise employee (Bridgeman). Because Ameriprise did not yet have Versata's documents, and to prevent "deposition by ambush" using the new documents, Ameriprise filed a motion to quash the notices, which were scheduled to begin on September 24th. The parties have since

5

agreed, with certain restrictions, that some depositions can go forward, and they are in the process of confirming witness and counsel schedules.

On September 4, 2013, Ameriprise notified Versata of Ameriprise's intention to take the depositions of Versata's seven fact witnesses, a former Versata employee, and Versata's three designated experts.   Versata offered two of its fact witnesses for deposition the week of September 16; however, Versata's failure to complete its document production until a week later prevented those depositions from going forward.  To resolve Ameriprise's planned motion to extend the discovery cut-off, Versata agreed that Ameriprise could take depositions after the deadline; however, just two weeks before the discovery cut-off, only two Versata witnesses have a confirmed deposition date.

Ameriprise requests a continuance of the trial setting to allow it to review the 64,000 new documents Versata produced on September 19th and 23rd;[1]  to take Ameriprise's requested depositions; to prepare and file dispositive motions if appropriate at the completion of discovery; and to adequately prepare for trial.  Because of Versata's late production, those tasks will be impossible to complete before the dispositive motion deadline and trial, and Ameriprise's ability to conduct this litigation will be directly prejudiced as a result.

C.   **Ameriprise Needs Additional Time to Conduct Open Source Discovery and to Re-file Its Summary Judgment Motion**

In March 2013, Ameriprise sent a formal request that Versata produce to Ameriprise the source code at the center of this case.  After Versata objected, Ameriprise moved to compel.  At the May 8, 2013 hearing on Ameriprise's motion, the Court held over the issue, finding that it

---

[1] Ameriprise also has not yet had time to determine if any of Versata's recently-produced documents fall within the scope of the Court's April order compelling production within three business days.

did not have enough information regarding the materiality of the source code to the issues in the case. In late July 2013, Ameriprise filed a motion for summary judgment. In its opposition, Versata raised a source code analysis as a basis for the Court to find a genuine issue of material fact. Ameriprise withdrew its motion for summary judgment to allow it to conduct additional discovery and requested that Versata promptly produce its source code. Despite several promises of earlier production, Versata did not provide its source code to Ameriprise and its expert until September 9, 2013. Ameriprise is in the process of updating its expert disclosures regarding the issues, and Ameriprise expects Versata to depose its expert sometime between October 4th and October 9th. After that deposition, Versata's expert will need to update his own disclosures and submit to a deposition. Ameriprise also has repeatedly requested to depose the fact witness on which Versata relied in opposing Ameriprise's motion; however, that deposition date was only recently confirmed for October 3, 2013.

Ameriprise requests a continuance of the trial date to allow it to complete the discovery into open source issues that it requested long ago and to re-file its motion for summary judgment before trial.

### D.   Ameriprise Needs Additional Time to Designate Experts

Versata updated its expert disclosures on July 22, 2013, but did not provide expert reports. Pursuant to Texas Rule of Civil Procedure 195.3(a)(1), Ameriprise promptly sent written requests to depose two of Versata's designated experts with regard to computer software and security issues – Stuart Madnick and Jay Rosenfeld. As of the date of this motion, Versata still has not provided its experts for deposition. Ameriprise should, under the rules, have 30 days after the depositions to designate rebuttal experts. Even assuming Versata could proffer

7

Madnick and Rosenfeld for deposition in the next two weeks (an unlikely assumption given the other tasks the parties must complete), Ameriprise will have run out of time under the current schedule to designate rebuttal experts before trial. Ameriprise requests a continuance of the trial date to allow it to complete the requested depositions and designate rebuttal experts before trial.

**E.    The Parties Need Additional Time to Conduct Mediation**

There is a separate, but related, case between Versata and third party Infosys pending in federal court. On September 18, 2013, Versata and Infosys proposed that the parties engage in a three-way mediation effort prior to trial. Although Ameriprise is likely amenable to the request, no date has yet been agreed to for the mediation upon which all parties are available. It is simply not practical for the parties to resolve all of the scheduling issues discussed above and to conduct a mediation before the November 18th trial date. Ameriprise therefore requests a continuance of the trial setting to allow the parties to schedule and conduct the mediation Versata proposed.

### III.    CONCLUSION AND PRAYER

Ameriprise respectfully requests that the Court grant Defendants' First Motion for Continuance of Trial Setting and continue the current trial setting for 90 days, or until a later date agreeable to the parties and the Court. Ameriprise also requests all other and further relief to which it may be entitled.

8

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.


By:  /s/ Christopher D. Sileo
      Steve McConnico
      Texas Bar No. 13450300
      Christopher D. Sileo
      Texas Bar No. 24027977
      600 Congress Avenue, Suite 1500
      Austin, Texas 78701
      (512) 495-6300 (Telephone)
      (512) 474-0731 (Facsimile)
      smcconnico@scottdoug.com
      csileo@scottdoug.com

      Of Counsel:

      DORSEY & WHITNEY LLP
      Peter M. Lancaster (MN ID # 0159840)
      Heather D. Redmond (MN ID # 0313233)
      Suite 1500, 50 South Sixth Street
      Minneapolis, Minnesota 55402-1498
      (612) 340-2600 (Telephone)
      (612) 340-3868 (Facsimile)
      lancaster.peter@dorsey.com
      redmond.heather@dorsey.com

**ATTORNEYS FOR DEFENDANTS**

9

1029503

## VERIFICATION

My name is Heather Dawn Redmond, my date of birth is July 26, 1975, and my business address is Dorsey & Whitney, Suite 1500, 50 South Sixth Street, Minneapolis, Minnesota, 55402.  I declare under penalty of perjury that facts stated in the above Defendants' First Motion for Continuance of Trial Setting are true and correct.

Executed in Hennepin County, State of Minnesota on the 25th day of September, 2013.

/s/ Heather D. Redmond
Heather D. Redmond

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 20, 2013, I conferred with Benjamin Foster, one of Versata's attorneys, by telephone and requested Versata's consent to a continuance.  The parties have not yet been able to reach agreement on this issue.

/s/ Heather D. Redmond
Heather D. Redmond

10

1029503

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following counsel of record by the methods indicated below on this the 25th day of September, 2013.

***VIA FACSIMILE***
Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
*Attorneys for Plaintiffs*

***VIA FACSIMILE***
Amir Alavi
Ben Foster
Ahmad, Zavitsanos, Anaipakos, Alavi & Mesing, PC
1221 McKinney Street, Suite 3460
Houston, Texas 77010
*Attorneys for Plaintiffs*

/s/ Christopher D. Sileo
Christopher D. Sileo

11

1029503

Filed
13 October 4 P4:16
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-003588

NO. D-1-GN-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## PLAINTIFFS' NOTICE OF FILING RULE 11 AGREEMENT

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development

Group, Inc., f/k/a Trilogy Development, Inc. (collectively, "Versata") files this, their Rule 11

Agreement pursuant to Texas Rule of Civil Procedure 11. *See* correspondence, attached hereto

as Exhibit 1.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
P.C.

*s/ Amir H. Alavi*

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

2

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via facsimile on October 4, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

McCamish Systems, LLC
c/o Tommy Jacks
Fish & Richardson
One Congress Plaza, Suite 810
111 Congress Avenue, Austin, Texas 78701
(512) 226-8171 (Telephone)
(512) 320-8935 (Facsimile)

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

/s/ Amir H. Alavi
Amir H. Alavi

4830-3369-4486, v. 1

3

# EXHIBIT 1



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

**AMIR H. ALAVI**
*BOARD CERTIFIED-CIVIL TRIAL LAW*
*TEXAS BOARD OF LEGAL SPECIALIZATION*
DIRECT 713.600.4903
MAIN 713.655.1101
FAX 713.655.0062
AALAVI@AZALAW.COM

October 3, 2013

Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701

> Re:     Cause No. D-1-GN-12-003588; *Versata Software, Inc., f/k/a Trilogy Software, Inc., et al v. Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and Ameriprise Investment Services, Inc.;* In the 53rd Judicial District Court of Travis County, Texas.

Dear Chris:

This letter serves as a Rule 11 agreement between the Parties in the above captioned case (with the plaintiffs referred to as "Versata" and the defendants as "Ameriprise" and collectively as "Parties").

On September 25, 2013, Ameriprise filed Defendants' First Motion for Continuance of Trial Setting ("Motion for Continuance") and Versata oppose the relief sought. The parties have agreed to resolve their dispute over the Motion for Continuance as follows:

1.     The Parties will continue to current trial setting and set this case for trial during the week of February 24, 2014.

2.     Ameriprise will not move for any additional continuances, absent extraordinary circumstances. For purposes of clarification, extraordinary circumstances means events, outside the control of Ameriprise, that would materially impair Ameriprise's ability to go to trial such as, but not limited to, illness of lead trial counsel or the filing of new causes of action by Versata less than 30-days before trial.

3.     The Parties agree that in any future motion for continuance, the parties will treat this continuance as opposed by Versata and sought by Ameriprise.

4.     Ameriprise will not use the time between the current trial setting and the new trial setting as a basis to argue to the Court or the Jury Versata delayed in seeking relief.

Christopher D. Sileo
October 3, 2013
Page 2

     5.     The parties agree to extend the discovery period in this case to January 24, 2014.

     6.     Notwithstanding the extension of the discovery period, expert deadlines under Rule 195.2 and 193.5 are not extended and shall be calculated using a trial date of November 18, 2013, except that the parties will treat the discovery period end date for any expert supplementation under Rule 193.5 as November 6, 2013.[1] This paragraph is only intended to establish these dates and does not otherwise alter the status quo regarding any party's expert rights, including without limitation not altering any rights pursuant to Rule 195.3 or Rule 193.6 and not impacting any rights to take depositions. Notwithstanding the following, Ameriprise may supplement its expert opinions after November 6, 2013 to incorporate new information acquired through the deposition of Ximpleware provided that the supplementation takes place no later than 10 days after the deposition. Notwithstanding the following, Versata may supplement its expert opinions after November 6, 2013 to incorporate new information acquired through the deposition of TCS provided that the supplementation takes place no later than 10 days after the deposition.

     7.     By October 31, 2013, Ameriprise will amend its pleadings to assert the causes of action, if any, it intends to assert in connection with its allegations regarding Ximpleware. For all parties, the pleading deadline for all other claims and defenses is December 20, 2013.

     8.     The parties agree to substantially complete depositions of fact witnesses that have been previously requested prior to December 20, 2013, other than witnesses that a party objects to presenting for a deposition, which will be subject to motion practice.

     9.     The parties withdraw all deposition notices currently outstanding and agree that Until after October 15 they will not schedule any depositions other than the deposition of Infosys witness Praveen Ramachandra, a witness to be offered by Ameriprise on October 7-8, and Ximpleware (for which Ameriprise will revise the current deposition notice to be for a date during November 5-7, but which date is subject to change based on the witness's availability).

     10.     The parties will work in good faith to agree by November 1, 2013 to deposition dates for all witnesses, both fact and expert, that have previously been requested, other than witnesses that a party objects to presenting for deposition.

---

[1]     The current Level 2 discovery period end date had been October 8, 2013.

4823-4896-6678, v. 1

Christopher D. Sileo
October 3, 2013
Page 3

       If this letter accurately sets forth the agreement of the parties, please sign it and
return it to me for filing.

Sincerely,

Amir H. Alavi

Agreed to by:

Christopher Sileo
*Counsel for Defendants* /Counter-Plaintiff

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a<br>TRILOGY SOFTWARE, INC., and<br>VERSATA DEVELOPMENT GROUP,<br>INC., f/k/a TRILOGY DEVELOPMENT<br>GROUP, INC., | § | IN THE DISTRICT COURT |
| | § | Filed in The District Court<br>of Travis County, Texas |
| Plaintiffs, | § | OCT 2 3 2013  JF |
| | § | At_____12:55p____M.<br>Amalia Rodriguez-Mendoza, Clerk |
| v | § | |
| | § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC.,<br>AMERIPRISE FINANCIAL SERVICES,<br>INC., AMERICAN ENTERPRISE<br>INVESTMENT SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

## DISCOVERY SUBPOENA
## THE STATE OF TEXAS

TO ANY SHERIFF, CONSTABLE OR ANY OTHER PERSON AUTHORIZED TO
SERVE AND EXECUTE SUBPOENAS OF THE STATE OF TEXAS

GREETINGS

   You are commanded to summon:

   **Ximpleware Corp.**
   **291 Oakhurst Way**
   **Milipitas, CA 95035**

   **Served upon Jimmy Zhang, Registered Agent**

to attend and give testimony at an oral deposition regarding the topics set forth on the
attached **Exhibit "A"** and to produce for inspection and copying the documents listed on
the attached **Exhibit "B"** for the use in Cause No. D-1-GN-12-003588; *Versata Software,
Inc. f/k/a Trilogy Software, Inc., et al. v. Ameriprise Financial Inc., et al.,* in the 53rd
Judicial Court of Travis County, Texas. The deposition shall commence at the following
place, date, and time and the requested documents shall be produced not later than at the
commencement of the deposition at the following place, date, and time:

1030571

SERVICE RETURN ATTACHED

**DORSEY & WHITNEY, LLP**
**305 Lytton Ave**
**Palo Alto CA 94301**

**DATE:  November 5, 2013**
**TIME: 9:00 a.m.**

This subpoena was issued at the request of Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and Ameriprise Enterprise Investment Services, Inc.  Defendants in the above-styled lawsuit, and whose attorneys of record are Steve McConnico and Christopher D. Sileo with the law firm Scott, Douglass & McConnico, L.L.P.

**Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.**

**Dated October 1, 2013.**

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300
(512) 474-0731 Fax

By: _____
Steve McConnico
State Bar No. 13450300
smcconnico@scottdoug.com
Christopher D. Sileo
State Bar No. 24027977
csileo@scottdoug.com



2

1030571

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

**ATTORNEYS FOR DEFENDANTS
AMERIPRISE FINANCIAL, INC., AMERIPRISE
FINANCIAL SERVICES, INC., AND
AMERIPRISE ENTERPRISE INVESTMENT
SERVICES, INC.**

3



## **RETURN OF SERVICE**

Came to hand the _____ day of _____, 2013, at _____ o'clock

_____.m., and executed the _____ day of _____, 2013, at

_____ o'clock _____.m., by delivering to the within named

_____ at _____ in

_____ County, _____ in person, a true copy of this Subpoena.


_____
Process Server


4

1030571

SERVICE RETURN ATTACHED

## EXHIBIT A

### DEFINITIONS AND INSTRUCTIONS

1.      "Versata" means Versata Software, Inc. and Versata Development Group, Inc. and their current and former parents, subsidiaries or affiliates, including, without limitation, Versata International, Inc.; Trilogy Software, Inc.; Trilogy Development Group, Inc.; and G-Dev Fz-LLC.

2.      "Ximpleware" means all versions of Ximpleware's vtd-xml parser made available through the Sourceforge.net site or elsewhere by Ximpleware Corp., including without limitation the .jar file vtd-xml.jar.

3.      "You" or "Your" means Ximpleware Corp. and all agents, employees, representatives, attorneys, and other persons or entities acting on its behalf.

### Corporate Deposition

Please designate a representative to testify on the following topics:

1.      Any license, agreement, or other permission granted to Versata to use, modify or distribute the Ximpleware XML parser.

2.      The forms of licenses under which You have offered Ximpleware to third parties.

3.      The means by which Ximpleware has been made available to third parties from January 1, 2006 to the present, including without limitation the identity of any third-party distributor and source and binary distributions of the Java version and .zip and .jar forms.

4.      Any basis for concluding that Versata could have obtained Ximpleware pursuant to terms and conditions other than those contained in GNU GPL Version 2, attached as Exhibit C hereto, including but not limited to any commercial license.

5



1030571

5.    The benefits vtd-xml is designed to provide to a Java-based program that must have the capability to parse xml files.

6.    Your source code distribution expectations for licensees who obtain Ximpleware via the Sourceforge.net site and incorporate the software into a proprietary product.

7.    The authenticity of and foundation for any documents produced in response to the attached set of document requests.



6

1030571

## EXHIBIT B

### DEFINITIONS AND INSTRUCTIONS

1.     "Versata" means Versata Software, Inc. and Versata Development Group, Inc. and their current and former parents, subsidiaries or affiliates, including, without limitation, Versata International, Inc.; Trilogy Software, Inc.; Trilogy Development Group, Inc.; and G-Dev Fz-LLC.

2.     "Ximpleware" means all versions of Ximpleware's vtd-xml parser made available through the Sourceforge.net site or elsewhere by Ximpleware Corp., including without limitation the jar file vtd-xml.jar.

3.     "You" or "Your" means Ximpleware Corp. and all agents, employees, representatives, attorneys, and other persons or entities acting on its behalf.

4.     If any information, communication or documents responsive to any of the Document Requests are withheld for any reason, describe generally the substance or subject matter of the information, identify the document withheld, and state the privilege or other basis upon which any response was withheld.

### DOCUMENT REQUESTS

Please produce copies of the following documents:

1.     All licenses or contracts between You and Versata.

2.     Records sufficient to show all contact with the website SourceForge.net (or from any other source by which Ximpleware may be obtained, if any) by Versata relating to Ximpleware, including records sufficient to identify the IP addresses making such contact.

3.     Records sufficient to show all downloads of Ximpleware by Versata, along with any associated license that accompanied such download.

7

1030571



SERVICE RETURN ATTACHED

4.      Records sufficient to demonstrate the forms of licenses under which you have offered Ximpleware to third parties (with redactions of financial terms of the license if desired) and the time periods during which such licenses were offered.

5.      Records sufficient to demonstrate all forms in which Ximpleware was distributed from January 1, 2006 to the present, including but not limited to source and binary distributions of the Java version and .zip and .jar forms, along with exemplars of all such distributions.

8

1030571



Giants like Microsoft and Apple are trying harder than ever to control the software you use. The FSF brings software freedom supporters together to amplify your voices and make an impact.

In 2013, we want to grow the free software movement.
Start your membership today with a $10 donation and help us crank up the volume.



# GNU General Public License, version 2

- The latest version of the GPL, version 3

Help crank it up. What to do if you see a possible GPL violation
**Donate now!**
- Translations of GPLv2
- GPLv2 Frequently Asked Questions
- The GNU General Public License version 2 (GPLv2) in other formats: plain text, Texinfo, LaTeX, standalone HTML, Docbook

## Table of Contents

- GNU GENERAL PUBLIC LICENSE
  - Preamble
  - TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION
  - How to Apply These Terms to Your New Programs

## GNU GENERAL PUBLIC LICENSE

Version 2, June 1991

```
Copyright (C) 1989, 1991 Free Software Foundation, Inc.
51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA

Everyone is permitted to copy and distribute verbatim copies
of this license document, but changing it is not allowed.
```

## Preamble

The licenses for most software are designed to take away your freedom to share and change it. By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software--to make sure the software is free for all its users. This General Public License applies to most of the Free Software Foundation's software and to any other program whose authors commit to using it. (Some other Free Software Foundation software is covered by the GNU Lesser General Public License instead.) You can apply it to your programs, too.

When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software (and charge for this service if you wish), that you receive source code or can get it if you want it, that you can

**EXHIBIT C**

SERVICE RETURN ATTACHED

change the software or use pieces of it in new free programs; and that you know you can do these things.

To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights. These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.

For example, if you distribute copies of such a program, whether gratis or for a fee, you must give the recipients all the rights that you have. You must make sure that they, too, receive or can get the source code. And you must show them these terms so they know their rights.

We protect your rights with two steps: (1) copyright the software, and (2) offer you this license which gives you legal permission to copy, distribute and/or modify the software.

Also, for each author's protection and ours, we want to make certain that everyone understands that there is no warranty for this free software. If the software is modified by someone else and passed on, we want its recipients to know that what they have is not the original, so that any problems introduced by others will not reflect on the original authors' reputations.

Finally, any free program is threatened constantly by software patents. We wish to avoid the danger that redistributors of a free program will individually obtain patent licenses, in effect making the program proprietary. To prevent this, we have made it clear that any patent must be licensed for everyone's free use or not licensed at all.

The precise terms and conditions for copying, distribution and modification follow.

## TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION

**0.** This License applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License. The "Program", below, refers to any such program or work, and a "work based on the Program" means either the Program or any derivative work under copyright law: that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/or translated into another language. (Hereinafter, translation is included without limitation in the term "modification".) Each licensee is addressed as "you".

Activities other than copying, distribution and modification are not covered by this License; they are outside its scope. The act of running the Program is not restricted, and the output from the Program is covered only if its contents constitute a work based on the Program (independent of having been made by running the Program). Whether that is true depends on what the Program does.

**1.** You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

You may charge a fee for the physical act of transferring a copy, and you may at your option offer warranty protection in exchange for a fee.

**2.** You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work under the terms of Section 1 above, provided that you also meet all of these conditions:

SERVICE RETURN ATTACHED

a) You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.
b) You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.
c) If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License. (Exception: if the Program itself is interactive but does not normally print such an announcement, your work based on the Program is not required to print an announcement.)

These requirements apply to the modified work as a whole. If identifiable sections of that work are not derived from the Program, and can be reasonably considered independent and separate works in themselves, then this License, and its terms, do not apply to those sections when you distribute them as separate works. But when you distribute the same sections as part of a whole which is a work based on the Program, the distribution of the whole must be on the terms of this License, whose permissions for other licensees extend to the entire whole, and thus to each and every part regardless of who wrote it.

Thus, it is not the intent of this section to claim rights or contest your rights to work written entirely by you; rather, the intent is to exercise the right to control the distribution of derivative or collective works based on the Program.

In addition, mere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this License.

**3.** You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following:

a) Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,
b) Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,
c) Accompany it with the information you received as to the offer to distribute corresponding source code. (This alternative is allowed only for noncommercial distribution and only if you received the program in object code or executable form with such an offer, in accord with Subsection b above.)

The source code for a work means the preferred form of the work for making modifications to it. For an executable work, complete source code means all the source code for all modules it contains, plus any associated interface definition files, plus the scripts used to control compilation and installation of the executable. However, as a special exception, the source code distributed need not include anything that is normally distributed (in either source or binary form) with the major components (compiler, kernel, and so on) of the operating system on which the executable runs, unless that component itself accompanies the executable.

If distribution of executable or object code is made by offering access to copy from a designated place, then offering equivalent access to copy the source code from the same place counts as distribution of

SERVICE RETURN ATTACHED!

the source code, even though third parties are not compelled to copy the source along with the object code.

**4.** You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

**5.** You are not required to accept this License, since you have not signed it. However, nothing else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.

**6.** Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. You are not responsible for enforcing compliance by third parties to this License.

**7.** If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program.

If any portion of this section is held invalid or unenforceable under any particular circumstance, the balance of the section is intended to apply and the section as a whole is intended to apply in other circumstances.

It is not the purpose of this section to induce you to infringe any patents or other property right claims or to contest validity of any such claims; this section has the sole purpose of protecting the integrity of the free software distribution system, which is implemented by public license practices. Many people have made generous contributions to the wide range of software distributed through that system in reliance on consistent application of that system; it is up to the author/donor to decide if he or she is willing to distribute software through any other system and a licensee cannot impose that choice.

This section is intended to make thoroughly clear what is believed to be a consequence of the rest of this License.

**8.** If the distribution and/or use of the Program is restricted in certain countries either by patents or by copyrighted interfaces, the original copyright holder who places the Program under this License may add an explicit geographical distribution limitation excluding those countries, so that distribution is permitted only in or among countries not thus excluded. In such case, this License incorporates the limitation as if written in the body of this License.

**9.** The Free Software Foundation may publish revised and/or new versions of the General Public License from time to time. Such new versions will be similar in spirit to the present version, but may differ in detail to address new problems or concerns.

http://www.gnu.org/licenses/old-licenses/gpl-2.0.html                    1/18/2013

SERVICE RETURN ATTACHED

Each version is given a distinguishing version number. If the Program specifies a version number of this License which applies to it and "any later version", you have the option of following the terms and conditions either of that version or of any later version published by the Free Software Foundation. If the Program does not specify a version number of this License, you may choose any version ever published by the Free Software Foundation.

**10.** If you wish to incorporate parts of the Program into other free programs whose distribution conditions are different, write to the author to ask for permission. For software which is copyrighted by the Free Software Foundation, write to the Free Software Foundation; we sometimes make exceptions for this. Our decision will be guided by the two goals of preserving the free status of all derivatives of our free software and of promoting the sharing and reuse of software generally.

**NO WARRANTY**

**11.** BECAUSE THE PROGRAM IS LICENSED FREE OF CHARGE, THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY APPLICABLE LAW. EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM IS WITH YOU. SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

**12.** IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MAY MODIFY AND/OR REDISTRIBUTE THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS), EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**END OF TERMS AND CONDITIONS**

**How to Apply These Terms to Your New Programs**

If you develop a new program, and you want it to be of the greatest possible use to the public, the best way to achieve this is to make it free software which everyone can redistribute and change under these terms.

To do so, attach the following notices to the program. It is safest to attach them to the start of each source file to most effectively convey the exclusion of warranty; and each file should have at least the "copyright" line and a pointer to where the full notice is found.

```
one line to give the program's name and an idea of what it does.
Copyright (C) yyyy  name of author

This program is free software; you can redistribute it and/or
modify it under the terms of the GNU General Public License
as published by the Free Software Foundation; either version 2
of the License, or (at your option) any later version.

This program is distributed in the hope that it will be useful,
but WITHOUT ANY WARRANTY; without even the implied warranty of
MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
```

SERVICE RETURN ATTACHED

GNU General Public License v2.0 - GNU Project - Free Software Foundation                Page 6 of 6

```
GNU General Public License for more details.

You should have received a copy of the GNU General Public License
along with this program; if not, write to the Free Software
Foundation, Inc., 51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA.
```

Also add information on how to contact you by electronic and paper mail.

If the program is interactive, make it output a short notice like this when it starts in an interactive mode:

```
Gnomovision version 69, Copyright (C) year name of author
Gnomovision comes with ABSOLUTELY NO WARRANTY; for details
type `show w'.  This is free software, and you are welcome
to redistribute it under certain conditions; type `show c'
for details.
```

The hypothetical commands `show w' and `show c' should show the appropriate parts of the General Public License. Of course, the commands you use may be called something other than `show w' and `show c'; they could even be mouse-clicks or menu items--whatever suits your program.

You should also get your employer (if you work as a programmer) or your school, if any, to sign a "copyright disclaimer" for the program, if necessary. Here is a sample; alter the names:

```
Yoyodyne, Inc., hereby disclaims all copyright
interest in the program 'Gnomovision'
(which makes passes at compilers) written
by James Hacker.

signature of Ty Coon, 1 April 1989
Ty Coon, President of Vice
```

This General Public License does not permit incorporating your program into proprietary programs. If your program is a subroutine library, you may consider it more useful to permit linking proprietary applications with the library. If this is what you want to do, use the GNU Lesser General Public License instead of this License.

SERVICE RETURN ATTACHED

## AFFIDAVIT OF SERVICE

State of Texas                     County of Travis                     53rd Judicial District Court

Case Number: D-1-GN-12-003588

Plaintiff:
Versata Software, Inc. f/k/a Trilogy Software, Inc. and Versata
Development Group, Inc. f/k/a Trilogy Development Group, Inc.
vs.
Defendant:
Ameriprise Financial, Inc., Ameriprise Financial Serviecs, Inc. and
American Enterprise Investment Services, Inc.

For:
   Scott, Douglass & McConnico, LLP

Received by Austin Process LLC on the 2nd day of October, 2013 at 2:00 pm to be served on Ximpleware Corp.,
291 Oakhurst Way, Milipitas, CA 95035. I, __Ron____ Gardiner__, being duly sworn, depose and say
that on the __5th__ day of __Oct.__, 20 13 at 6:35 pm, executed service by delivering a true copy of the
Discovery Subpoena with Exhibits A and B and $11 Witness Tender in accordance with state statutes in the
manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of
the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as _____
_____

XX CORPORATE SERVICE: By serving __Jimmy Zhang_____ as
_____

( ) OTHER SERVICE: As described in the Comments below by serving _____ as
_____

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in
which this service was made.

State of California, County of __Santa Clara__
Subscribed and sworn to (or affirmed) before me
on this __22__ day of __Oct__ , 20 __13__
by __Ron Gardiner__
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.
Signature _____

PROCESS SERVER # __458__
Appointed in accordance with State Statutes

Austin Process LLC
809 Nueces
Austin, TX 78701
(512) 480-8071

Our Job Serial Number: 2013003871

PHYLLIS I. ARMENTA
Commission # 2034458
Notary Public - California
Santa Clara County
My Comm. Expires Aug 19, 2017

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.4t

NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a | § | IN THE DISTRICT COURT |
| TRILOGY SOFTWARE, INC., and VERSATA | § | |
| DEVELOPMENT GROUP, INC., f/k/a | § | |
| TRILOGY DEVELOPMENT GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, INC., | § | |
| AMERICAN ENTERPRISE INVESTMENT | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

## DEFENDANT'S FIRST AMENDED COUNTERCLAIM AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THE COURT:

NOW COMES Defendant Ameriprise Financial, Inc. ("Ameriprise" or "Defendant"), and files this First Amended Counterclaim and Application for Temporary and Permanent Injunctive Relief and states as follows.

Page 1

## COUNTERCLAIM

Counterclaimant Ameriprise, for its Counterclaim against all Plaintiffs (collectively, "Versata"), states and alleges as follows:

## DISCOVERY

1.      Discovery should be conducted pursuant to Level 3, Texas Rule of Civil Procedure 190.4, and Ameriprise moves that discovery be conducted in accordance with a discovery control plan tailored to the specific circumstances of this suit.

## INTRODUCTION AND PARTIES

2.      Ameriprise is a Delaware corporation with its principal place of business located at 55 Ameriprise Financial Center in Minneapolis, Minnesota. Ameriprise is a leading financial planning and services company. Ameriprise subsidiaries serve individual investors' and institutions' financial needs through financial planning, wealth management, retirement planning, asset management, annuities, and insurance. Ameriprise was formerly named American Express Financial Corporation. Ameriprise's field force includes numerous personnel within Travis County and elsewhere in Texas.

3.      Versata is a Delaware corporation with its principal place of business in Austin, Texas. On information and belief, Versata conducts business with fewer than five employees in Texas or anywhere else in the United States. Versata provides software and other technology products and services to companies in the financial services industry, among other areas. Versata was formerly named Trilogy Software, Inc.

4.      At the center of this action is a Master License Agreement ("Agreement") by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from an enterprise compensation software product currently called "Distribution Channel Management" or "DCM."

The terms of the Agreement, and the modifications to it by Versata's introduction of third-party software as explained below in paragraphs 29-42, are binding upon Versata and Ameriprise.

5.      In breach of its contractual obligations, Versata has threatened to terminate, and has stated that it has already terminated, Ameriprise's perpetual and worldwide license to use DCM, software that is a necessary component of an Ameriprise system called "Distribution Management Utility," or "DMU." Most remarkably, during the course of discovery in this case, Ameriprise has learned that Versata was in previous breach of the MLA prior to its purported termination in that it had breached its warranties to Ameriprise by both failing to exercise commercially reasonable efforts in implementing software upgrades and significantly failing to provide unencumbered code. As to the last point, Versata failed to provide DCM source code and otherwise failed to provide complete title to DCM by failing to comply with the terms of the General Public License (the "GPL") that applies to DCM Version 3.9 as a result of Versata's decision to incorporate open source software within DCM.

## JURISDICTION AND VENUE

6.      This Court has general jurisdiction over Plaintiffs because their principal place of business is in Travis County, Texas, and because they subjected themselves to the jurisdiction of this Court by commencing this action. This Court has specific jurisdiction in connection with these Counterclaims because these Counterclaims relate to issues presented in Plaintiffs' Petition.

7.      In accordance with § 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County and Versata's principal place of business in in Travis County.

<u>FACTS</u>

A.   <u>**The Master License Agreement**</u>

8.      The predecessors of Ameriprise and Versata entered into the Agreement, effective October 4, 1999, by which Versata granted to Ameriprise a "nonexclusive, nontransferable … perpetual, worldwide license to use" and to "modify and otherwise create derivative works" from DCM.  The core software and documentation relating to the DCM software are referred to in the Agreement as the "Products."

9.      DCM is Java-based software.  It was designed by Versata to be extended (i.e., modified and enhanced), and at Ameriprise DCM has been extended and customized with as much as a million lines of additional computer code, added by Ameriprise over many years through the use of Versata's services as well as different contractors and with Versata's full knowledge.

10.     DCM is a key component of Ameriprise's DMU system, which is part of the compensation and recordkeeping operations for all Ameriprise personnel registered to perform securities work.  It manages such personnel's licenses and registrations, calculates compensation, and manages payments to the Ameriprise field force.

11.     The Agreement gives Ameriprise the right to engage third parties to perform work on DCM, so that, among other things, Ameriprise need not be dependent upon Versata's ability to perform such work, upon the quality of Versata's work, or upon the pricing of Versata's work.  Furthermore, at the time of the license grant, Versata did not have sufficient personnel to provide the extensive customization services for the customizable software it was selling to entities like Ameriprise.  Accordingly, the Agreement contemplated from its inception that entities and people other than Versata would be working on DCM.  Specifically, section 4.4 of the Agreement grants Ameriprise the right to "maintain (directly or through a third party pursuant to

the provisions of this Agreement) the Products." The sole constraints on the right to use such third-party contractors, contained within section 4.8, are that such contractors subject themselves to confidentiality obligations and "do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software."

12.     Throughout the thus-far-thirteen year life of the Agreement, Ameriprise has relied upon such third-party contractors to host, customize, and extend DCM, and its predecessor versions of DCM, as explicitly authorized by section 4.4 of the Agreement. Throughout that period, Versata has been fully aware of Ameriprise's use of third-party contractors, including its use of Infosys Technologies, Ltd. ("Infosys"). Indeed, Versata has worked with, and in some cases trained such third-party contractors since 1999, including Infosys, to upgrade and customize Ameriprise's various versions of DCM code, pursuant to Ameriprise's rights under the Agreement. In addition, since at least 2008, Versata has been aware of, and participated in, occasional decompiling of DCM object code – that is, conversion of object code (0's and 1's readable only by a computer) into an approximation of source code (readable by programmers) - through the use of readily-available software.

13.     Despite this knowledge and acquiescence, in 2010 Versata raised concerns about Infosys decompiling DCM code. In response, Ameriprise, though it had no obligation to do so, began to phase Infosys out of its contractor role with respect to DCM enhancement work.

**B.     Versata's Efforts to Force Ameriprise to Convert to A New, Risky, Unproven, Unsafe Software System Or Additional Payments**

14.     Beginning around May 2012, Versata sought to sell Ameriprise a new, unproven, and substantially more expensive replacement for DCM. Versata called its sales proposal the "DCM Enterprise Cloud." Versata's new DCM Enterprise Cloud proposal would require Ameriprise to drastically increase its payments to Versata and to entrust the operation, storage and security of Ameriprise's highly sensitive and confidential business functions and information

to a third-party service provider's public cloud environment.  A "public cloud" is a shared storage and computing environment that is accessed by users like Ameriprise over a network.  In this case, the network is the public Internet.

15.     Ameriprise expressed skepticism about and reluctance to accept Versata's DCM Enterprise Cloud proposal for sound business judgment reasons, including but not limited to: security concerns associated with Ameriprise's highly confidential information and dependence on a fully functioning DCM, dissatisfaction with the capabilities of Versata's personnel, and greatly increased costs.

16.     On September 17, 2012, two business days after receiving Ameriprise's initial reaction to Versata's sales pitch, Versata sent Ameriprise's outside counsel a letter claiming an alleged "material breach" of the Agreement and demanding that Ameriprise cure such alleged breach within thirty days.  Fully aware that Ameriprise depends upon DCM and the contractors who customize and maintain it and fully aware that the curative measures Versata demanded vis-à-vis Infosys were impossible to implement within 30 days, Versata nonetheless threatened to terminate the Agreement at the end of the 30-day period.[1]  In that event, Versata threatened, by the October 17, 2012 deadline, "Ameriprise ... must immediately stop using all Versata-developed software and immediately must return all of Versata's software and other confidential information."  Versata's letter culminated in a demand for an immediate mediation to discuss the issues Versata raised.  Ameriprise agreed to Versata's mediation demand to continue negotiations regarding the resolution of Versata's concerns.

---

[1] Although Versata's demands could not be satisfied within the time demanded, any breaches alleged in Versata's September 17, 2012 were timely and adequately cured in that no further decompiling by Infosys is alleged to have occurred and all decompiled information has remained Confidential, and TCS has not has not been provided access to DCM after September 17, 2012.

17.     On November 12, 2012, despite Ameriprise's acquiescence to Versata's request for a prompt mediation, and in the midst of the parties' discussions with a third-party mediator, Versata filed suit against Ameriprise in Texas state court.

18.     Versata's conduct in wrongfully threatening to terminate the Agreement constitutes wrongful termination and a breach of the Agreement. The conduct is a willful and malicious act within the meaning of Article 11 of the Agreement.

19.     Ameriprise has provided Versata notice of its material breaches of the Agreement.

20.     Versata used other willful, improper and malicious acts in an attempt to make Ameriprise abandon DCM 3.9 and switch to the more expensive, cloud-based enterprise system.

21.     The Agreement in Section 6.5 requires Versata use "Best Commercial Efforts" to respond to reported problems with the DCM software. MLA Section 6.5. E-mails and documents produced by Versata clearly demonstrate that Versata intentionally withheld simple maintenance, fixes and work-arounds and directed its employees *not* to use their best or even reasonable efforts to provide maintenance and support during the critical upgrade from DCM version 3.3 to DCM 3.9.

22.     For example in April 2012, Abhinesh Sikka was employed by Versata and working on site at Ameriprise to assist in transitioning Ameriprise to DCM version 3.9. Hemant Shah and Chris Strahorn were also employed by Versata during this timeframe. In mid-April 2012, Ameriprise identified several issues with DCM version 3.9 which caused delays, stalls and missed project deadlines with respect to the "Buld Credential Service" portion of the DCM version 3.9 upgrade. Ameriprise reported these issues to Versata through several email chains and telephone conferences beginning on April 10, 2012.

23.     In response to the reported issue, a failure of DCM version 3.9 to perform a function already performed by the prior version of the software, Versata first tried again to up-

sell Ameriprise to its DCM Enterprise product. When that discussion failed, Versata employees Chris Strahorn and Abhinesh Sikka analyzed possible solutions for Ameriprise. On April 16, 2012, Chris Strahorn told Ann Pineault of Ameriprise that Versata, "ha[s] an option that could allow Ameriprise to meet your current web service needs using the stock DCM product and without requiring an upgrade to DCM Enterprise . . ." Rather than pursue that option, Mr. Shah instructed Strahorn and Sikka to stop assisting Ameriprise. On April 17, 2012, Shah stated "Scott and Chris don't want Ameriprise to build a custom solution for web services else they will never move to Enterprise."

24.     Sikka responded to Shah stating that Ameriprise was building a custom solution and Sikka was "helping them on this." Again, Shah instructed Sikka to stop supporting Ameriprise in clear terms: "Please hold off on this . . . . Bottom line is we should not be helping them build a solution for a feature that's in our [Enterprise] product roadmap."

25.     On March 15, 2012, during the transition to DCM 3.9, Ameriprise reported a bug "in the core DCM product," which was requiring Ameriprise to "restart the DCM application every 10-15 minutes, which in turn has stopped their upgrade dead in its tracks." Chris Strahorn of Versata noted that the "best case scenario" for having the Versata DevFactory issue a critical fix was "at least a week." At the same time, Strahorn had identified a "simple fix for the issue via changes to a couple lines of code." Instead of implementing or even attempting the "simple" fix identified by Strahorn, Versata persisted in developing an inefficient, elaborate and time consuming work around that took weeks, increasing Ameriprise's costs.

26.     Versata provided an express warranty that maintenance and other services would be provided "in a good, workmanlike and professional manner" using "reasonable commercial efforts to minimize any disruptions to [Ameriprise's] normal business operations." MLA Section 8.7.

27.     By instructing its employees to delay maintenance, and employ costly and time consuming work-arounds, rather than implementing an efficient and "simple" fix and by refusing to provide maintenance required by the parties' agreements, Versata breached is express warranty and its contractual obligations to Ameriprise.

28.     Versata's breach of warranty and breach of contract have caused Ameriprise to incur additional  and unwarranted maintenance fees, caused delay and disruption in Ameriprise's system and improperly increased the costs of upgrading to DCM 3.9.

**C.     DCM Version 3.9 is Based on Software that is Subject to the GNU General Public License.**

29.     Although Versata originally claimed that it owned all rights in DCM Version 3.9, and although it denied in multiple discovery responses that it had licensed any components of DCM from third parties, Versata has now admitted that DCM contains dozens of open source software components.  Open source software is computer software publicly available in source code (human-readable) form that can be used without charge and for any purpose, subject to the terms and conditions of the relevant open source license.  Virtually all open source licenses require a subsequent distributor of the open source software (like Versata) to notify the recipient (like Ameriprise) of the existence of open source software in the package delivered to the recipient and disclaim all warranties on behalf of the original developer.  Most open source licenses require the subsequent distributor of the software to provide or make available the source code to any recipients of the software and prohibit the distributor from imposing additional restrictions on the recipients' use of the software.  A few open source licenses have "hereditary" effects, in that their terms and conditions apply to any proprietary program that contains the open source software, even if other portions of the program were otherwise considered proprietary and were developed separately from the open source software with which it is integrated.

30.     One prominent type of open source license, the General Public License or "GPL," encompasses these hereditary features:

- A requirement to give the recipient notice of the existence of the GPL-licensed software in the combined work (GPL §1);

- A requirement that the entire package containing the open source software (in this case, DCM Version 3.9) is to be licensed as a whole under the terms and conditions of the GPL (*Id.*, §§2(b), 4 and 6); and

- A requirement that the user/distributor must provide or make available to the recipient the source code for the combined package, may not restrict the customer's use of the modified open source software, and must comply with any additional terms of the open source license (*Id.*, §§3, 5 and 6).

31.     After Versata sued Ameriprise, claiming that DCM was entirely Versata's own proprietary and confidential software, Ameriprise learned of the extent of open source software embedded within DCM.  Versata documents establish that DCM is nowhere near "free of all liens, claims, encumbrances and other restrictions" as warranted by Versata, because nearly one hundred third party open source programs have been incorporated into DCM Version 3.9.

32.     One example of open source software in DCM, identified on an internal list of open source components, is a file called "vtd-xml.jar," an XML parser offered by a company called Ximpleware.[2]  Ximpleware's XML parser is open source software that enables DCM to

_____

[2] "XML" refers to "eXtensible Markup Language," a language for communicating structured data in a format that is both human-readable and machine-readable.  An XML "parser" is a decoder that converts the human readable textual form of code into a binary data structure, commonly in the form of a tree.  Ximpleware's parser is open source software that enables a program to read and parse XML files pulled from external sources, so that the program can understand and manipulate the contents of such files. Parsers are critical to making large enterprise software programs work, because they provide for a universal exchange language that

read and parse XML files pulled from external sources, so that DCM can understand, manipulate, and use the contents of such files.  For example DCM uses an external list of licensed insurance salespersons to verify that Ameriprise is paying only properly licensed advisors for the sale of insurance products.  That list is written in XML and needs to be parsed to verify the license status of Ameriprise's advisors when processing sales transactions. The current DCM version installed at Ameriprise, DCM Version 3.9, incorporates the Ximpleware parser into multiple portions of DCM code.  The Ximpleware parser is highly integrated into DCM; indeed, more than half of the hundreds of component files of DCM that appear to originate with Versata depend directly or indirectly on the Ximpleware parser.

33.     Ximpleware is an open source program readily downloadable from the Internet. Its use is conditioned upon and governed by an open source license.  The GPL is an open source software license written and promulgated by the Free Software Foundation principally to ensure two things:  that parties cannot misappropriate the work product of open source software developers for commercial gain without severe consequences; and to ensure that all recipients of GPL-licensed software continue to have access to at least its source code, and remain free to use and modify the source code for their own purposes without restriction.  The GPL states:

> The licenses for most software are designed to take away your freedom to share and change it.  By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software – to make sure the software is free for all users …

> Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software …, that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free programs; and that you know you can do these things.

> To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights.  These restrictions translate

ties together various pieces of a large, complex system.

to certain responsibilities for you if you distribute copies of the software, or if you modify it.

34.     Among the obligations that Versata willingly accepted when it chose to incorporate the Ximpleware parser into DCM were the following obligations:

- to "conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty;"

- to "give any other recipients of the Program a copy of [the GPL] along with the Program";

- to cause any works based on the Program to be licensed as a whole at no charge to third parties under the terms of the GPL; and

- to provide or offer in writing to provide to recipients "the complete corresponding machine-readable source code."

When Versata delivered DCM Version 3.9 to Ameriprise, it violated each of these obligations.

35.     The GPL applies to copying, modification, and distribution of the "Program" (here, the Ximpleware software) and also to copying, modification, and distribution of any "work based on the Program." GPL § 0. Under the GPL, a work is "based on the Program" if it "contains the Program or a portion of it, either verbatim or with modifications." GPL § 0.

36.     DCM Version 3.9 incorporates the entire Ximpleware parser and is therefore a "work based on the Program" under the GPL. In fact, DCM is a single integrated product, provided to the customer on a disk or downloaded by the customer from an online secure system. DCM Version 3.9 incorporates Ximpleware into multiple portions of DCM code. If Ximpleware were removed from DCM 3.9, DCM 3.9 would not function.

37.     Versata's decision to incorporate the free GPL-licensed Ximpleware software in DCM Version 3.9 imposes upon Versata the obligations of the GPL and encumbers the DCM product thereby. The key obligation relevant to this case is that, when Versata made DCM

Page 12

Version 3.9 based on the Ximpleware parser by incorporating and integrating the open source Ximpleware parser into DCM Version 3.9 and distributing it to Ameriprise (among other customers), Versata agreed to accompany any distribution of the computer-executable version of DCM with the DCM source code, or with a written offer to provide the source code.  GPL § 3.

    38.      Versata did not provide Ameriprise with DCM source code when it delivered DCM Version 3.9 to Ameriprise; nor did it accompany the delivery with a written offer to do so. And despite Ameriprise's demand, Versata has refused to provide Ameriprise with the source code for DCM Version 3.9.[3]

    39.      In addition, pursuant to the express terms of the GPL, Ameriprise is entitled to a license and the right to copy, distribute or modify the DCM Version 3.9 software which contains Ximpleware's parser.  Section 6 of the GPL states that each time Versata redistributes a Program subject to the GPL or any work based on a Program, "the recipient receives a license from the original licensor to copy, distribute or modify the Program . . .You may not impose any further restrictions on the recipients' exercise of the rights granted herein."

    40.      By its terms, the GPL expressly contemplates additional licensees and third-party beneficiaries.  The express type or class of third party beneficiaries contemplated by the GPL are "recipients" of Programs to whom a software developer like Versata chooses to distribute copies of software containing a licensed Program.  GPL §§ 0,3, and 6.

    41.      By failing to provide the computer-executable version of DCM with the DCM source code, or with a written offer to provide the source code, Versata has breached the GPL in a manner that harms Ameriprise directly.

_____

[3] To be clear, Ameriprise does not contend that the GPL completely supplants the parties' MLA. However, Versata must comply with the GPL by providing Ameriprise the source code for DCM Version 3.9.  This is an additional obligation imposed on Versata and any license related to DCM by way of the GPL.

42.     As an express and contemplated third party beneficiary of the GPL, Ameriprise is entitled to enforce the GPL's terms against Versata and hold Versata accountable for its breach of the GPL.

**D.     Ameriprise's Right to Relief**

43.     Because Versata has purported to terminate the Agreement and has not withdrawn its purported termination, and Ameriprise has previously provided notice of Versata's breaches, Ameriprise must conclude that granting Versata any additional cure period ordinarily available under the Agreement would be futile. An effective cure by Versata would have required, among other actions to cure its breaches, (a) withdrawal of its purported termination and (b) withdrawal and dismissal of its pending lawsuit.

44.     Ameriprise has paid Versata all sums owed to it.

45.     Ameriprise is entitled to engage third-party contractors to provide software services for DCM who do not, to the best of Ameriprise's knowledge, compete with Versata in the development of enterprise compensation or configuration software.

46.     Ameriprise is entitled to continue to use DCM.

47.     Ameriprise was entitled to receive the DCM software unencumbered and as warranted by Versata.

48.     Ameriprise was entitled to receive the agreed-upon and warrantied maintenance and is entitled to damages caused by Versata's breach.

49.     Ameriprise is entitled to enforce the terms of the GPL that are intended to benefit Ameriprise, as a recipient of software containing a GPL-licensed Program.

50.     The harm that Versata's actions have caused and threaten to cause to Ameriprise is irreparable, with no adequate remedy at law.

## CONDITIONS PRECEDENT

51.     All conditions precedent to Ameriprise's causes of action and relief sought have been performed, excused, waived, or otherwise satisfied.

## CAUSES OF ACTION

### I.    BREACH OF CONTRACT THROUGH WRONGFUL TERMINATION

52.     Ameriprise realleges and reincorporates paragraphs 1-51 as if set forth herein.

53.     New York law governs the interpretation of the parties' Agreement.

54.     Pursuant to New York law, Versata is subject to an implied covenant of good faith and fair dealing in fulfilling the parties' Agreement.

55.     Versata's purported termination of the Agreement is a material breach of its own contractual obligations, which include these specific obligations:  upon notice and payment by Ameriprise, to provide maintenance services for the software (section 6.1); to provide "[u]pdates to each Product and" relevant Documentation (section 6.6); to make available to Ameriprise "any and all modifications to the Products" without additional cost to Ameriprise (section 6.7); and to warrant that Ameriprise's "use and possession of the Product Materials and Services and the license granted hereunder, shall not be adversely affected, interrupted or disturbed by Licensor (except as provided in the Agreement)" (section 8.1).  Versata's purported termination also is a breach of the covenant of good faith and fair dealing implied in the Agreement.

56.     In addition, Versata's purported termination of the Agreement is a material breach of the Agreement because Versata demanded a forfeiture of Ameriprise's rights and Versata failed to comply with the Agreement's termination requirements.

57.     Nothing in the Agreement or Ameriprise's actions justifies Versata's precipitous attempts to terminate the Agreement.

58.    Versata knew when it sent its September 17, 2012, letter that its demands could not be satisfied, and it knew or should have known that its letter failed to comply with the Agreement's termination requirements.

59.    In addition, even if Ameriprise's alleged breach of the Agreement was true, any such breach is not material. Only in the event of a material breach might the Agreement be terminated. Because the alleged breaches were not material, Versata's purported termination of the Agreement is itself a breach of the Agreement.

60.    Without the ability to use DCM as contemplated in the Agreement, Ameriprise and its advisors, franchisees and their employees will suffer irreparable injury.

61.    As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately.

62.    As a result of Versata's material breach of the Agreement through its legally deficient attempt at termination and forfeiture demand, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

63.    As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to obtain and use all escrowed versions of DCM and all related documentation.

64.    As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

65.    Ameriprise is also entitled to damages as a result of Versata's material and uncured and incurable breaches.

II.     **BREACH OF CONTRACT AND CONTRACTUAL WARRANTIES**
        **(FAILURE TO USE "BEST COMMERCIAL EFFORTS" and**
        **"REASONABLE COMMERCIAL EFFORTS")**

66.     Ameriprise realleges and reincorporates paragraphs 1-65 as if set forth herein.

67.     In Section 6.5 of the Agreement, Versata is obligated to use it Best Commercial Efforts to resolve reported problems in the DCM software.

68.     Versata further warrantied that all maintenance performed would be provided "in a good, workmanlike and professional manner" using "reasonable commercial efforts to minimize any disruptions to [Ameriprise's] normal business operations."

69.     As set forth in detail in paragraphs 21 through 29 above, Versata's failed to provide Best Commercial Efforts or even reasonable commercial efforts to provide necessary and reported maintenance to the DCM software.

70.     Versata intentionally and willfully refused to provide "simple" and timely fixes to bugs in the software it knew about or were identified by Ameriprise for Versata, and instead proceeded on a deliberate path to make maintenance and fixes to the DCM software inconvenient, inefficient and costly for Ameriprise.

71.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," including the DCM Version 3.9 software pursuant to section 12.2 of the Agreement.

72.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to obtain and use all escrowed versions of DCM, including DCM 3.9 and all related documentation.

73. As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

74. Ameriprise also is or will be entitled to damages as a result of Versata's material and uncured and incurable breaches whether by way of counterclaim or recoupment.

## III. BREACH OF CONTRACTUAL WARRANTIES
### (FAILURE TO DELIVER AN UNENCUMBERED PRODUCT)

75. Ameriprise realleges and reincorporates paragraphs 1-74 as if set forth herein.

76. In Section 8.1 of the Agreement, Versata warranted that (i) Licensor has the right to furnish [DCM] ... free of all liens, claims, encumbrances and other restrictions; [and] (ii) to the best of its knowledge, the Product Materials and Services furnished by [Versata] and/or [Ameriprise's] use of the same hereunder do not violate or infringe the rights of any third party ..."

77. The Agreement also required Versata to provide Ameriprise with "updates" of the Product. Updates were explicitly covered by (section 8.1) and "subject to the Warranty provisions" of the Agreement (section 4.1).

78. In 2011, Versata provided Ameriprise with a substantial update to DCM ("DCM 3.9"). The DCM 3.9 update effectively replaced, in its entirety, the immediately preceding version of DCM that had been in use at Ameriprise, which was version 3.3.

79. In fact the DCM 3.9 update was so substantial that Ameriprise was required to pay and did pay to Versata millions of dollars to incorporate the DCM Version 3.9 into Ameriprise's DMU system.

80. Versata's DCM 3.9 software incorporates significant open source code, including code from third-party Ximpleware, Inc., which renders the DCM 3.9 software subject to claims, encumbrances, restrictions and/or claims of violation or infringement of rights of third parties

81.     On information and belief, Versata knew that its DCM 3.9 software violated and/or infringed the rights of third parties or was otherwise encumbered by third party rights.

82.     Versata failed to inform Ameriprise of all the third parties with a right to subject DCM 3.9 to claims, encumbrances, restrictions, and/or claims of violation or infringement of rights of third parties.

83.     As a result of Versata's breach, pursuant to section 12.2 of the Agreement, Ameriprise is entitled to the identified contractual remedies immediately or following a thirty-day notice period.

84.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," including the DCM 3.9 software pursuant to section 12.2 of the Agreement.

85.     As a result of Versata's material breach of the Agreement, Ameriprise is or will be entitled to obtain and use all escrowed versions of DCM, including DCM 3.9 and all related documentation.

86.     As a result of Versata's material breach of the Agreement through its legally deficient termination letter and forfeiture demand, Ameriprise is entitled to an injunction prohibiting Versata from taking any actions interfering with Ameriprise's use of DCM.

87.     Ameriprise also is or will be entitled to damages as a result of Versata's material and uncured and incurable breaches whether by way of counterclaim or recoupment.

## IV.     BREACH OF CONTRACT - THIRD PARTY BENEFICIARY

88.     Ameriprise realleges and reincorporates paragraphs 1-87 as if set forth herein.

89.     Versata's DCM software contains dozens of open source software components, including but not limited to components from Ximpleware.

90.     The Ximpleware and other open source components contained in Versata's DCM software are governed by an open source license. One such license, the GNU GPL open source software license, applies to the Ximpleware parser incorported in Versata's DCM software as well as other open source software components.

91.     One condition the GPL requires of developers incorporating free, open source software in a program or source code is that the software developer must pass along to any recipient of a program incorporating open source software components subject to the GPL, the same rights the software developer had when it accessed, downloaded and incorporated the open source component into its program or code.

92.     Indeed, the specific language of the GPL ensures that all recipients of GPL-licensed software continue to have access to at least its source code, and remain free to use and modify the source code for their own purposes without restriction. The GPL states in pertinent part:

> . . . These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.
>
> For example, if you distribute copies of such a program, whether gratis or for a fee, *you **must** give the recipients all the rights that you have*. You **must** make sure that they, too, receive or can get the source code. And you **must** show them these terms *so that they know **their rights***. (emphasis added).

93.     The GNU GPL explicitly requires that if a software developer chooses to distribute copies of software containing components subject to the GPL, then the software developer must provide its recipients or customers, like Ameriprise, with the source code.

94.     Versata's obligations to Ameriprise vis-a-vis the GPL are clear and express. In both the preamble and Section of the GPL, the license contemplates conferring a benefit on a narrow, specifically identifiable population - any recipient of Versata's software containing open source components subject to the GPL, including Ameriprise. Specifically, the GPL states:

> Each time you redistribute the Program (or any work based on the
> Program), the recipient automatically receives a license from the
> original licensor to copy, distribute or modify the Program subject
> to these terms and conditions.  You may not impose any further
> restrictions on the recipients' exercise of the rights granted herein.
> You are not responsible for enforcing compliance by third parties
> to this License.  GPL §6.

95.     As explained in paragraph 33 to 41 above, Versata never showed the terms of the

GPL to Ameriprise, failed to inform Ameriprise that the DCM software contained any open

source components, let alone open source components subject to the GPL, and has steadfastly

refused to provide access to the source code which contains open source components.

96.     Versata has therefore breached its obligations under the GPL.

97.     Ameriprise is a third party beneficiary of the GPL entered into by Versata and is

entitled to sue for breach of Versata's obligations.

98.     Versata's breach of the GPL is causing harm to Ameriprise.

99.     As a result of Versata's material breach of the GPL and of Versata's warranties

under the Agreement, Ameriprise is entitled to specific performance, including delivery of the

DCM source code, as well as an injunction prohibiting Versata from taking any actions

interfering with Ameriprise's use of DCM.

## IV.    BREACH OF ESCROW OBLIGATIONS

100.     Ameriprise realleges and reincorporates paragraphs 1-99 as if set forth herein.

101.     The parties' Agreement requires Versata to "deposit the ["source code and all the

generally available Documentation thereto, for a Product or Updates"] with Data Securities

International Inc. ("DSI") no later than forty five (45) days after the execution of any Schedule

issued hereunder, if such Deposit Materials are not already in escrow with DSI." Versata is

obligated to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any

deposit pursuant to" stated terms.  Versata is obligated to "update the escrow at least every six

months" and "upon delivery of an Update" (sections 5.1 and 5.2).

102.     The parties' Escrow Agreement, an exhibit to the Agreement, acknowledges that "the availability of or access to certain proprietary data related to the proprietary technology and other materials is critical to [Ameriprise] in the conduct of its business."

103.     Section 5.1 of the Escrow Agreement similarly requires Versata to deposit "source code and all the generally available Documentation thereto for a Product or Updates" with Data Securities International, Inc. or a successor escrow agent.

104.     On information and belief, Versata failed to establish an accessible escrow account with Data Securities International, Inc. for the benefit of Ameriprise and failed to deposit source code or documentation into escrow as required by the Agreement and/or the Escrow Agreement.

105.     Ameriprise provided written notice to Versata of its breach of its escrow obligations over thirty days ago.

106.     Versata has materially breached its contractual obligations relating to the deposit and updating of source code on deposit from time to time, including these obligations:  to "deposit the [source code and related documentation] … no later than forty five (45) days after the execution of any Schedule" and to "employ reasonable efforts to ensure that [Ameriprise] has received notice of any deposit pursuant to" stated terms (Agreement sections 5.1 and 5.2); to deposit the "source code and all the generally available Documentation thereto, for a Product or Updates" with the escrow agreement (section 5.1 of the Escrow Agreement); to update the escrow at least every six months and also use commercially reasonable efforts to update the escrow upon delivery of a software update to Ameriprise (section 5.2 of the Escrow Agreement); to update the deposited software code and related documentation within thirty days after distribution of a technology release, with such deposits occurring at least every twelve months,

or, alternatively, to "certify to [Ameriprise] that the Deposit contains the latest technology release" (section 3 of the Escrow Agreement).

107.    Ameriprise is damaged by not having available to it current and/or updated software as contemplated by the Escrow Agreement.

108.    Ameriprise is entitled to remedies following termination of the Agreement as a result of Versata's breach pursuant to section 12.2 of the Agreement.

109.    In section 5.3, the Agreement provides for the release to Ameriprise of the source code held in escrow if Versata commits an "uncured, material breach of its maintenance or support obligations." Such uncured, material breaches have occurred.

110.    Versata's breaches entitle Ameriprise to obtain from the escrow agent and/or Versata, all "source code . . ., all necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person ..."

111.    Pursuant to section 14 of the Escrow Agreement, Ameriprise will be entitled to decompile, disassemble, or reverse engineer the escrowed code and documentation.

112.    As a result of Versata's material breach of the Agreement and the Escrow Agreement, Ameriprise is entitled to obtain from the escrow agent and/or Versata, and to use without constraint, all versions of DCM and all related documentation that have been escrowed or that Versata had a duty to place in escrow.

## IV.    IMPOSITION OF CONSTRUCTIVE TRUST

113.    Ameriprise realleges and reincorporates paragraphs 1-112 as if set forth herein.

114.    The Agreement governs the scope of the business relationship between Ameriprise and Versata and obligates Versata to act for the benefit of Ameriprise. Both parties have confidentiality obligations under the Agreement, and the nature of the services provided by

Versata requires Ameriprise to trust Versata with significant amounts of proprietary information and trust in Versata's ability and willingness to maintain a fully and continuously functioning DCM. The existence of such duties in turn gives rise to fiduciary obligations by Versata to Ameriprise. Specifically, the Agreement encompasses promises made by Versata with respect to DCM.

115.     Over thirteen years of operations, Ameriprise has contributed financially, operationally, and creatively to the development of DCM.

116.     The current version of DCM is as much the work product of Ameriprise as of Versata.

117.     Versata would be unjustly enriched if it were allowed to keep DCM for its own use and profit, and to prohibit Ameriprise from accessing the software.

118.     Ameriprise is entitled to a constructive trust preserving its access to DCM, prohibiting any interference with its use of DCM, and sharing in any revenue gained by Versata through exploitation of DCM, including any patent rights and patent-related revenue for any patent whose claims read on a feature or function in DCM, or variants or derivatives of DCM to which Ameriprise has contributed and which Versata has subsequently sold, licensed, or otherwise made available to any other party.

## V.     DECLARATION OF AMERIPRISE'S RIGHTS

119.     Ameriprise realleges and reincorporates paragraphs 1-118 as if set forth herein.

120.     Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Ameriprise requests, and the interests of the parties to this action require, a judicial determination of Ameriprise's rights and Versata's obligations under the Agreement.

121.     As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and

Ameriprise as to whether Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

122.    As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to obtain and use all escrowed versions of the DCM source code and all related documentation without constraint.

123.    As a result of Versata's material breaches of the Agreement and the irreparable harm resulting from such breaches, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to employ as contractors, to help enhance and maintain DCM, at least the following companies:  Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services.

124.    Furthermore, there is an actual controversy between Versata and Ameriprise as to whether Ameriprise is entitled to a copy of the source code for DCM 3.9 pursuant to the GNU General Public License applicable to DCM 3.9 because DCM 3.9 is a work based on Ximpleware's software within the meaning of the GNU General Public License.

125.    A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future obligations of the parties to this action.  Ameriprise requests that the Court grant relief by declaring the rights of the parties pursuant to New York law, as provided by the parties' Agreement.

126.    Accordingly, Ameriprise requests judicial declaration that: (1) Ameriprise possesses a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement; (2) Ameriprise is entitled to obtain and use, enhance, modify, and customize, all versions of DCM,

including source code and all related documentation that were, or should have been, escrowed; (3) Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies: Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services; (4) that DCM 3.9 is a work based on Ximpleware's software within the meaning of the applicable GNU General Public License; and (5) Ameriprise is entitled, pursuant to the terms of the applicable GNU General Public License, to obtain and freely use the source code for DCM Version 3.9 subject to the terms and conditions of the GPL.

## REQUEST FOR SPECIFIC PERFORMANCE AND FOR PERMANENT INJUNCTION

127.    Ameriprise realleges and reincorporates paragraphs 1-126 as if set forth herein.

128.    As a result of Versata's material breaches of the Agreement, the lack of an adequate remedy at law for Ameriprise, and the irreparable harm resulting from such breaches, Ameriprise is entitled to a "perpetual license to use the Product, Documentation and any other items provided hereunder without further charge or fee," pursuant to section 12.2 of the Agreement.

129.    Ameriprise therefore requests an injunction barring Versata from taking any action in furtherance of its purported termination of the Agreement.

130.    As a result of Versata's material breaches of the Agreement, the lack of an adequate remedy at law for Ameriprise, and the irreparable harm resulting from such breaches, Ameriprise is entitled to obtain and use, enhance, modify, and customize, all escrowed versions of DCM, or versions that should have been escrowed, and all related documentation without constraint.

131.    Ameriprise therefore requests specific performance and a permanent injunction compelling Versata to make delivery to Ameriprise of a current copy of all "source code ..., all

necessary and available information, proprietary information, and technical documentation which will enable [Ameriprise] to create, maintain and/or enhance the licensed material without the aid of [Versata] or any other person …"

132.     As a result of Versata's material breaches of the GPL, the lack of an adequate remedy at law for Ameriprise, and the irreparable harm resulting from such breaches, Ameriprise is entitled to obtain and use, enhance, modify, and customize, all versions of DCM provided to Ameriprise, and all related documentation without constraint.

133.     Ameriprise is entitled to specific performance and a permanent injunction compelling Versata to provide Ameriprise with the complete machine-readable source code for DCM Version 3.9, subject to the terms and conditions of the applicable GNU General Public License.

## PRAYER FOR RELIEF

WHEREFORE, Ameriprise requests that this Court enter a judgment and decree against Versata as follows:

(a)     Temporarily and permanently enjoining Versata from taking any actions adverse to Ameriprise with respect to its purported termination of the Agreement as more specifically set forth above;

(b)     Ordering specific performance and a permanent injunction compelling Versata to escrow and/or deliver to Ameriprise materials that should have been escrowed as specifically set forth above.

(c)     Ordering specific performance and a permanent injunction compelling Versata to deliver Ameriprise source code and related materials as specifically set forth above.

(d)     Declaring that as a result of Versata's breaches of contract, Ameriprise is entitled to a perpetual license to use the Product, Documentation and any other items provided

hereunder without further charge or fee," pursuant to section 12.2 of the Agreement and is entitled to obtain and use, enhance, modify, and customize, all versions of DCM, including source code and all related documentation that were, or should have been, escrowed;

(e)    Declaring that Ameriprise is entitled to employ as contractors, to help enhance and maintain the DCM, at least the following companies:  Cognizant Technology Solutions; Syntel, Inc.; Infosys Technologies, Ltd.; and Tata Consultancy Services;

(f)    Declaring that that DCM 3.9 is a work based on Ximpleware's software within the meaning of the applicable GNU General Public License;

(g)    Declaring that Ameriprise is entitled, pursuant to the terms of the applicable GNU General Public License, to obtain and freely use the source code for DCM Version 3.9 subject to the terms and conditions of the GPL.

(h)    Imposing a constructive trust protecting Ameriprise's investment in DCM;

(i)    Awarding damages in an amount to be proven at trial, which damages sought are within the jurisdictional limits of the court;

(j)    Attorney fees and costs pursuant to Texas Civil Practice and Remedies Code § 37.09 and § 38.01, *et seq.*, and other applicable law;

(k)    Awarding Ameriprise its costs of court;

(l)    Awarding Ameriprise pre and post judgment interest; and

(m)    Awarding Ameriprise such other and further general relief, at law or in equity, to which Ameriprise may be entitled.

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas  78701
Phone: (512) 495-6300
Fax:  (512) 474-0731


By      /s/ Christopher D. Sileo
        Steve McConnico
        Texas Bar No. 13450300
        E-Mail:  smcconnico@scottdoug.com
        Christopher D. Sileo
        Texas Bar No. 24027977
        E-Mail:  csileo@scottdoug.com

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

**ATTORNEYS FOR DEFENDANTS AND
COUNTERCLAIMANT**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below on October 31, 2013.

Travis Barton                                    *VIA FACSIMILE* 512.495.6093
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, No. 2100
Austin, Texas

Steven Mitby                                     *VIA FACSIMILE* 713.655.0062
Amir Alavi
Ben Foster
Ahmad, Zavitsanos, Anaipakos, Alavi &
Mensing, PC
1221 McKinney Street, No. 3460
Houston, Texas 77010


                               /s/ Christopher D. Sileo
                               Christopher D. Sileo


Page 30

AZA Law          Fax:7136550062          Nov  8 2013 04:22pm P002/047

## NO. D-1-GN-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC.,  F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO TATA CONSULTANCY SERVICES, LTD.

### Introduction

Plaintiffs Versata Software, Inc. and Versata Development Group, Inc. (Versata) served a valid subpoena on Tata Consultancy Services, Ltd. (TCS) on September 11, 2013.  *See* Exh. E (09-11-2013 Subpoena to TCS).  The subpoena seeks highly relevant information concerning Versata's dispute with Ameriprise that is solely within TCS's possession.  However, TCS neither complied with the subpoena, nor timely objected to the subpoena before the deadline passed.  TCS has refused to provide any documents or witness testimony without a court order.  Therefore, Versata respectfully moves to compel TCS to comply with the subpoena.

### Factual Background

A.    **Versata needs discovery about whether TCS develops enterprise compensation software that competes with Versata.**

This case is a software licensing dispute between Versata and Ameriprise.  Versata developed an innovative software system called Distribution Channel Management (DCM) that calculates compensation for large enterprises.  Ameriprise licensed DCM from Versata in 1999

1

and currently uses the software to determine commissions and other payments for its nationwide network of advisors. Versata has sued Ameriprise for breaching its October 4, 1999 Master License Agreement, which governs Ameriprise's use of Versata's software.

DCM requires ongoing maintenance and customization, and Ameriprise has used third party contractors to perform some of these tasks. The Master License Agreement places certain restrictions on the types of contractors that can work on Versata's software. Among other things, Ameriprise may only use "third party contractors . . . who do not, to the best of [Ameriprise's] knowledge, compete with [Versata] in the development of enterprise compensation or configuration software." MLA, § 4.8.

Ameriprise appears to have violated this provision by using Tata Consultancy Services (TCS) to work on DCM. TCS's website indicates that it develops enterprise compensation software that competes with Versata,[1] and TCS has not denied that it competes with Versata in this industry niche. To prove this, however, Versata needs to conduct a limited amount of deposition and document discovery concerning the functionality of TCS's enterprise compensation software products. This discovery is necessary to prove a breach of Section 4.8 of the Master License Agreement by Ameriprise.

<div align="center">

**Argument**

</div>

**A.    Texas law permits discovery concerning any matter "reasonably calculated to lead to the discovery of admissible evidence."**

Texas law permits discovery concerning any matter that "appears reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a). "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject

---

[1] These software programs include TCS Human Capital Management Platform, TCS HRO Platform, TCS BPO Solutions, TCS Analytics platform, TCS Automotive Retail Accelerator Solution, TCS Hosted OSS/BSS, and TCS BaNCS.

<div align="center">2</div>

matter of the pending action." *Id.* Texas Rule of Civil Procedure 176 imposes specific requirements on third parties in responding to a subpoena. Unless the third party objects before the due date as required by Rule 176.6(d), or moves for a protective order under Rule 176.6(e), the third party "must comply with the command stated therein unless discharged by the court or by the party summoning such witness. . ." Tex. R. Civ. P. 176.6(a).

**B.      Versata served a valid subpoena on TCS and TCS did not object timely or file a motion for protection as required by Rule 176.6.**

On September 11, 2013, Versata served a valid subpoena on TCS's registered agent in Texas. The subpoena contains narrow, focused document requests and deposition topics that center specifically on how TCS's enterprise compensation software functions. This information is required to show whether TCS develops enterprise compensation software that competes with Versata, and is therefore discoverable under Rule 192.3(a).

TCS has totally disregarded its obligations under Texas law. TCS did not object to the subpoena before the due date and did not file a motion for protection as required by Rule 176.6. *See* Rule 176.6(d)-(e). Instead, TCS simply failed to either comply or object, and then later refused to produce any documents and refusing to present a witness for deposition. *See* Exh. A (10-10-2013 Steiner to Mitby). In direct violation of Rule 176.6(a), TCS has categorically refused to comply with any part of the subpoena absent a Court order.

**C.      TCS's correspondence confirms that TCS has no basis for refusing to comply with Versata's subpoena.**

**1. TCS is unwilling to comply with any part of Versata's subpoena.**

TCS's correspondence shows that TCS has no legitimate basis for refusing to comply with Versata's subpoena. The day before the due date for compliance, TCS requested an extension, claiming that its lawyer was about to leave on an overseas trip to India. *See* Exhibit B

(9-24-13 Steiner to Mitby).   However, when Versata requested that TCS commit to a new response deadline as part of any extension, TCS did not respond. *See* Exh. C (9-26-13 Mitby to Steiner). TCS never obtained an extension and TCS did not respond timely to the subpoena.

Then, after TCS had blown the deadline for responding to the subpoena, TCS sent Versata a self-serving letter refusing to produce any documents, refusing to present a witness, and inviting Versata to file a motion to compel. *See* Exh. A (10-10-13 Steiner to Mitby).  To date, TCS still has not served objections or filed a motion for protection.

Despite TCS's stonewalling, Versata has bent over backwards to ease the burden on TCS. Versata offered to work with TCS on scheduling and offered to narrow the scope of the subpoena in an effort to reach agreement. *See* Exh. C (9/26/13 Mitby to Steiner); Exh. D (10/10/13 Mitby to Steiner). But although TCS wants Versata to make concessions, TCS has been unwilling to produce any documents or present any witness testimony.

## 2.   TCS's alleged reasons for violating Versata's subpoena are invalid.

TCS's alleged reasons for violating Versata's subpoena are legally invalid. First, TCS claims that its compliance with an earlier Versata subpoena involving different subject matter excuses TCS from having to respond.  This is not a valid objection.  Whereas the earlier subpoena concerned TCS's work at Ameriprise, Versata's current subpoena focuses on identifying specific enterprise compensation products that compete with Versata. *See* Exh. C (9/26/13 Mitby to Steiner, enclosing complaint). Not surprisingly, TCS cites no authority for its argument that the earlier subpoena somehow preempts the later one.

Second, TCS accuses Versata of trying to "fish for information" to develop a claim against TCS. Although TCS's characterization of Versata's motive is incorrect, TCS's worries about being sued by Versata are not a legitimate objection to discovery – especially when this

discovery is highly relevant to Versata's dispute with Ameriprise.  TCS's apparent concern that it may be liable to Versata does not justify withholding evidence that Versata is entitled to discover.

Third, TCS contends that it never had access to Versata's "software code."  But whether TCS specifically accessed Versata's source "code" is irrelevant.[2]  The issue is whether TCS had access to Versata's software at Ameriprise, while TCS was developing competing enterprise compensation software.  TCS does not deny that it worked on Versata's software at Ameriprise, and the topics in Versata's subpoena are designed to verify whether TCS develops enterprise compensation software that competes with Versata.  Whether TCS has access to Versata's source "code" – when it is undisputed that TCS accessed the software itself – is immaterial and a red herring.

## <u>Conclusion</u>

TCS did not object to Versata's subpoena in a timely manner, did not move for protection, and has no legitimate basis for refusing to comply with Versata's highly-relevant discovery requests.  For this reason, TCS should be required to produce documents and present a witness on the topics noticed in the subpoena.

---

[2] While Versata's allegations against Ameriprise involving Infosys include that Infosys impermissibly accessed Versata source code, the allegations involving TCS contend that TCS was a competitor who was permitted to work on Versata software – a key difference that the term "software code" obscures.

5

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
P.C.

/s/ Benjamin F. Foster
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093

**ATTORNEYS FOR PLAINTIFFS**

6

AZA Law                    Fax:7136550062           Nov  8 2013 04:22pm  P008/047

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via facsimile and/or certified mail, postage prepaid, return receipt requested and/or email on November 8, 2013:

Robert I. Steiner
Kelley, Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7897 (Facsimile)
rsteiner@kelleydrye.com

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

                              /s/ Benjamin F. Foster
                              Benjamin F. Foster

4848-5359-0550, v. 3

7

AZA Law                    Fax:7136550082          Nov  8 2013 04:22pm  P009/047

# EXHIBIT A

AZA Law                    Fax:7136550062           Nov  8 2013 04:23pm P010/047

| From: | Steiner, Robert |
|---|---|
| To: | Steve Mitby |
| Cc: | Amir Alavi; Benjamin Foster; "Travis C. Barton (tcbarton@mcginnislaw.com)" |
| Subject: | RE: TCS subpoena |
| Date: | Thursday, October 10, 2013 1:50:55 PM |
| Attachments: | Steven J Mitby Esq Ltr 10 10 2013.pdf |

Please see the attached.

Robert Steiner | Kelley Drye & Warren LLP
101 Park Avenue, New York, NY 10178
212.808.7965 | rsteiner@kelleydrye.com
www.kelleydrye.com

**From:** Steve Mitby [mailto:smitby@AZALAW.COM]
**Sent:** Thursday, October 10, 2013 1:17 PM
**To:** Steiner, Robert
**Cc:** Amir Alavi; Benjamin Foster; Travis C. Barton (tcbarton@mcginnislaw.com)
**Subject:** TCS subpoena

Rob,

Hope you had a safe trip back from India.  I am following up on the TCS deposition and document production.  We would like to have a specific deadline for the production and the deposition by the middle of next week.  I am available this week and early next week if you'd like to discuss any issues.

Thanks,

Steve

Steven J. Mitby
Partner
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.
1221 McKinney, Suite 3460
Houston, Texas 77010
713-600-4910

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the

purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

## 101 PARK AVENUE
### NEW YORK, NEW YORK 10178
(212) 808-7800

WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICE
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

ROBERT I. STEINER

DIRECT LINE: (212) 808-7985

EMAIL: rsteiner@kelleydrye.com

October 10, 2013

VIA E-MAIL & REGULAR MAIL

Steven J. Mitby, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing
1221 McKinney Street, Suite 3460
Houston, TX 77010

Re:  <u>Versata Software, Inc. et al v. Ameriprise Financial, Inc.</u>

Dear Steve:

As you know, we are counsel to Tata Consultancy Services, Ltd. ("TCS"),
recipients of a third-party subpoena issued by your firm in the above referenced matter.  I have
conferred with my client on the content of your September 27, 2013 e-mail, which revises your
September 11, 2013 subpoena for the production of documents and topics for testimony by a
TCS witness.  On behalf of TCS, for the reasons set forth herein, we object to producing the
discovery items requested, including providing a witness for testimony on the topics set forth in
your e-mail.

I have obtained a copy of the Complaint in this matter.  The primary allegation, as
it relates to TCS, is that Ameriprise breached a license agreement with Versata by engaging TCS
to "perform maintenance and customization work on Versata's software."  Unlike the allegations
made in the Complaint against Infosys, against whom we understand Versata has filed a separate
litigation, Versata does not contend that to the extent TCS had such access, it misappropriated
any Versata proprietary information and used it in TCS's own proprietary software.

Moreover, TCS previously responded to Versata's subpoena dated February 1,
2013 by producing documents and advising that it provided major and minor enhancements and
project implementation for Ameriprise on its DCM systems.  TCS further advised that it
provided general production support services to Ameriprise.  TCS produced documentation
relating to the work it performed.  These documents included the Statement of Work, Service
Agreement, Amendments and related information.  These documents belie any basis for

NY01\SteiR\1961585.1

### KELLEY DRYE & WARREN LLP

Steven J. Mitby, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing
October 10, 2013
Page Two

claiming, or in good faith believing, that TCS modified or had access to Versata's software code, and no such claim has been added to the litigation between Versata and Ameriprise.

  Your new requests seek a wide array of information, some of it proprietary, regarding TCS's business which has no apparent connection to any allegations in Versata's lawsuit against Ameriprise. Your request for the names of *all* software programs that TCS develops and markets, their functionality, and technical documentation which demonstrates the features and functionality of such programs appears to be entirely irrelevant to Versata's claim and is certainly overbroad. Nor do we see any justification for your demand for technical details of any "enterprise compensation and/or configuration software that TCS develops and markets." Advertising, marketing and website documentation that refers to such software, likewise, has nothing to do with the contentions in the litigation. Indeed, when we spoke you stated that TCS was not a target of any potential litigation by Versata, yet the clear purpose of these requests is to fish for information to establish a claim against TCS — where the Complaint essentially concedes, and the documents already provided by TCS establish, that none exists.

  In addition, discovery from Ameriprise has surely confirmed exactly what it engaged TCS to do; and what TCS did. There is no basis to burden TCS, a third party, with broad requests for information regarding its business. As your complaint notes, Versata is a competitor of TCS. It cannot use the discovery process in the current litigation to obtain all manner of proprietary (and irrelevant) information from TCS about its business, or use a current litigation as a vehicle to attempt to cobble together claims against an entity not a party to the current lawsuit.

  Please let me know if you have questions.

     Very truly yours,

     Robert I. Steiner

RIS/jj

NY01\SteiR\1961585.1

# EXHIBIT B

| From: | Steiner, Robert |
|---|---|
| To: | Steve Mitby |
| Subject: | Versata Software v. Ameriprise |
| Date: | Tuesday, September 24, 2013 6:00:48 PM |

Steve:

As discussed, my firm is outside counsel to Tata Consultancy Services. I received a copy of your subpoena from my client today, and am in the process of looking into the issues raised in it. I am not in a position to determine what if any objections my client has to the subpoena and accordingly will not be producing documents tomorrow. In addition, I am overseas beginning September 26, returning October 7. Thus, I would ask for the courtesy of a reasonable adjournment for the production of documents and any deposition, subject to any objections my client may have to any document requests and deposition. I understand you currently have a discovery cut-off of October 15 but will reach out to your adversary to see if they will consent to an extension for the purposes of the discovery you seek from my client.

In the meanwhile, if you could send me the Complaint in this action, that would be helpful.

Thank you for your courtesy.

Rob

---

**Robert Steiner | Kelley Drye & Warren LLP**
101 Park Avenue, New York, NY 10178
212.808.7965 | rsteiner@kelleydrye.com
www.kelleydrye.com

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

AZA Law                    Fax:7136550062          Nov  8 2013 04:23pm  P016/047

# EXHIBIT C

AZA Law          Fax:7136550062          Nov  8 2013 04:23pm  P017/047

| | |
|---|---|
| **From:** | Steve Mitby |
| **To:** | Robert L. Steiner (rsteiner@kelleydrye.com) |
| **Cc:** | Amir Alavi; Benjamin Foster; Travis C. Barton (tcbarton@mcginnislaw.com) |
| **Subject:** | Versata subpoena to TCS |
| **Date:** | Thursday, September 26, 2013 7:34:00 PM |
| **Attachments:** | 2013-05-13 Plfs" 1st Am Complaint & App for Preliminary Injunction.pdf |
| | Stephen E. McConnico.msg |

Mike,

To follow up on our discussion today and earlier in the week, we are happy to work out a reasonable accommodation for your travel schedule. The major practical concern is finding a date that allows us to depose the TCS witness and obtain TCS's documents before the October 7, 2013 deadline for completing discovery or afterward in a manner that would assure our right to use the testimony at trial.

We served the deposition notice and duces tecum on TCS on September 11 to ensure that TCS would have sufficient notice under the Texas Rules of Civil Procedure, but unfortunately TCS apparently did not forward you the subpoena until one day before the due date for documents and two days before you were planning to go to India. Despite this circumstance, I believe we can work out a reasonable schedule with the cooperation of Ameriprise and TCS.

Therefore, we are willing to adjourn the deposition and the deadline for document production if TCS (a) proposes alternative dates for document production and a subsequent deposition in Dallas; (b) obtains agreement from Ameriprise that Versata will be able to use the deposition at trial; and (c) commits to produce a witness at a specific date and time on the noticed topics and resolve any objections – by hearing or otherwise – before the deposition.

I have also attached copies of the complaint and contact information for Ameriprise's counsel (Steve McConnico). To streamline matters, some potentially more limited topics for the subpoena will follow that we can discuss as a compromise.

Thanks,
Steve


Steven J. Mitby
Partner
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.
1221 McKinney, Suite 3460
Houston, Texas 77010
713-600-4910

AZA Law          Fax:7136550062          Nov  8 2013 04:23pm  P018/047

Filed
13 May 3 P5:46
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-003588

CAUSE NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC.; and VERSATA DEVELOPMENT GROUP, INC., F/K/A TRILOGY DEVELOPMENT GROUP, INC. | § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | OF TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC. | § § § § § | 53rd JUDICIAL DISTRICT |
| Defendants. | § § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc. (collectively "Versata") respectfully file this First Amended Complaint for breach of contract and injunctive relief against Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc. (collectively, "Ameriprise").

## DISCOVERY CONTROL PLAN

1.   Pursuant to Texas Rule of Civil Procedure 190.3, Versata intends to conduct discovery under Level 2.

1

## PARTIES

2.   Plaintiff Versata Software, Inc., f/k/a Trilogy Software, Inc., is a Delaware corporation with its principal place of business at 401 Congress, Suite 2650, Austin, Texas 78730.

3.   Plaintiff Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc., is a Delaware corporation with its principal place of business at 401 Congress, Suite 2650, Austin, Texas 78730.

4.   Defendant Ameriprise Financial, Inc. is a Delaware corporation with its principal place of business at 1099 Ameriprise Financial Center, Minneapolis, MN 55474.

5.   Defendant Ameriprise Financial, Inc. may be served with process through its President, William Frederick Truscott, 707 2nd Ave. South, Minneapolis, MN 55474.

6.   Defendant Ameriprise Financial Services, Inc. is a Delaware corporation with its principal place of business at 707 2nd Ave. South, Minneapolis, MN 55474.

7.   Defendant Ameriprise Financial Services, Inc. may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

8.   Defendant American Enterprise Investment Services, Inc. is a Minnesota corporation with its principal place of business at 200 Ameriprise Financial Center, Minneapolis, Minnesota 55474.

9.   Defendant American Enterprise Investment Services, Inc. may be served with process through its President, John Iachello, 200 Ameriprise Financial Center, Minneapolis, Minnesota 55474.

2

## JURISDICTION AND VENUE

10.   This Court has general jurisdiction over Defendants because they have continuous and systematic contacts with Texas.   Among other things, Defendants have property and employees throughout Texas; Defendants handle millions of dollars in financial transactions each year in Texas; and Defendants regularly conduct business throughout the state.

11.   This Court has specific jurisdiction over Defendants because the contract at issue was wholly or partially negotiated in Texas; the software at issue was developed in Texas; the parties' relationship centers around Texas; and Defendants have used the software to process compensation paid to Texas.

12.   This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirements of this Court.

## VENUE

13.   In accordance with Section 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County and Versata's principal office is in Travis County.

## FACTS

**A.    Ameriprise's use of Versata's Enterprise Software**

14.   Ameriprise is one of the country's largest financial services companies and has $631 billion in assets under management.

15.   With a network of approximately 10,000 advisors throughout the United States, Ameriprise provides a wide variety of investment, annuity, insurance, banking and other financial products to customers.

3

16.    The compensation system for Ameriprise advisors is heavily commission-based and involves sophisticated calculations, many of which are updated on a daily basis.

17.    To perform these calculations, Ameriprise uses proprietary enterprise software developed by Versata in Austin, Texas.

18.    Versata owns all title and rights to this software.

**B.    The Master License Agreement**

19.    Versata entered into a Master License Agreement (MLA) dated October 4, 1999 to provide enterprise software to Ameriprise.

20.    Because the specific terms of the MLA are confidential, a copy is not attached to this pleading.

21.    Versata negotiated and signed the MLA in Austin, Texas.

22.    Under the MLA, Versata's software, product documentation, and related materials are strictly confidential (§ 10.2) and the property of Versata (§ 4.9).

23.    Under the MLA, Ameriprise agreed to limit access to the software, product documentation, and related materials to Ameriprise employees and "Permitted Contractors" - i.e., contractors that do not compete with Versata in the development of enterprise compensation or configuration software and that have signed a non-disclosure agreement (§ 4.8).

24.    The MLA strictly prohibits any kind of copying, decompiling, or reverse engineering of Versata's software by Ameriprise or its agents (§ 10.1).

25.    A breach of these confidentiality or anti-decompiling requirements is sufficient grounds for Versata to terminate the MLA and revoke Ameriprise's license to the software (§ 12.2).

4

certify in writing that it has destroyed or returned all copies (§ 12.2).

**C.    Ameriprise's Use of Infosys**

27.    As early as 2007, Ameriprise began using Infosys—an outsourcing services provider based in Bangalore, India—to perform maintenance and customization work on Versata's proprietary software.

28.    Ameriprise gave Infosys's consultants in India access to Versata's confidential information, including Versata's software (both source code and object code), product documentation, and training materials.

29.    Infosys competes with Versata in the development of enterprise compensation and configuration software. In fact Infosys provides this kind of software to numerous customers in the United States and around the world. Therefore Infosys is not a "permitted contractor" as that term is used in the MLA (§ 4.8).

30.    Upon information and belief Infosys ceased being a permitted contractor no later than November of 2009 when Infosys acquired McCamish Systems, a company that develops and sells its own brand of enterprise compensation software, a product that directly competes with Versata's proprietary software.

**D.    Infosys's theft of Versata's proprietary source code at Ameriprise**

31.    Through litigation pending the Western District of Texas Versata learned that Infosys decompiled or copied more than 5,000 Versata source code files while working at Ameriprise, transported those files to India, and stored them on hard drives in Bangalore.

32.    Based on these revelations, it is becoming apparent to Versata that Infosys has incorporated these files into its own software that competes with Versata; used these files to train

5

26.   If Versata terminates the MLA for any breach by Ameriprise, Ameriprise's rights in the software shall cease, Ameriprise must return the software to Versata, and Ameriprise must

technical consultants to compete with Versata at rates that are significantly cheaper than Versata's rates; and developed its own enterprise software based on knowledge and understanding gained from these decompiled files.

33.   Furthermore, neither Ameriprise nor Infosys have fully explained to Versata the extent of these activities or their consequences for the security of Versata's software.  In 2010, Infosys claimed that it had decompiled two files and that this behavior was an isolated incident involving low-level employees.  In early 2012, Versata discovered evidence that Infosys may have decompiled up to 25 files.

34.   Then, following significant discovery against Infosys in litigation over these issues, Infosys admitted on October 25, 2012 that it had approximately 5,000 Versata software files on a hard drive in Bangalore, India.

35.   These files appear to be to constitute the key source code for Versata's enterprise software.

36.   Even when Versata believed the problem was relatively limited, Versata had numerous discussions with Ameriprise about the need to stop Infosys from having access to Versata's software.

37.   During these discussions, Ameriprise agreed to remove Infosys from projects that involve Versata software.

38.   However, at the present time Infosys contractors are still performing customization and maintenance work on Versata's software.

39.   This creates a substantial risk that Infosys will steal additional trade secrets from Versata.

40.   In addition, in 2011, Ameriprise began using TCS, another India-based outsourced services provider, to perform maintenance and customization work on Versata's software.

6

41.   Like Infosys, TCS is not a "Permitted Contractor" under the MLA.

42.   To Versata's knowledge, none of TCS's contractors has signed a non-disclosure agreement that relates to Versata's software, as required by the MLA.

43.   Versata is concerned about the security risk of Ameriprise giving yet another offshore competitor unauthorized access to Versata's source code.

44.   Despite multiple discussions about this issue, Ameriprise has not removed TCS from having access to Versata's software.

45.   Because of these actions, Versata sent a letter to Ameriprise providing the contractually mandated 30 day notice of breach of the MLA on September 17, 2012.

46.   The letter identified multiple breaches of the MLA by Ameriprise related to Infosys's and TCS's unauthorized access to Versata's software, including the fact that neither Infosys nor TCS were permitted contractors under the MLA. Versata further stated that if Ameriprise did not take steps to cure these breaches, the MLA would terminate automatically within thirty days.

47.   Because Ameriprise did not cure these violations, the MLA terminated on October 17, 2012.

48.   Ameriprise has refused to return Versata's software and other confidential information to Versata as required by the MLA.

49.   Today, Ameriprise is using Versata's software and other confidential information without authorization.

## CAUSES OF ACTION

**A.   Breach of Contract**

50.   Versata incorporates the foregoing paragraphs as if fully set forth here.

51.    Versata and Ameriprise entered into a Master License Agreement effective October 4, 1999.

52.    The MLA prohibits Ameriprise and its agents from decompiling, reverse engineering, or copying Versata's confidential information and prohibits Ameriprise from using third-parties, which are not permitted contractors or third-parties that have not signed non-disclosure agreements.

53.    Ameriprise has breached these provisions of the MLA and consequently Versata terminated the MLA effective October 17, 2012.

54.    The MLA requires Ameriprise to stop using Versata's software and confidential information, to return all of this software and other confidential information to Versata, and to certify that it has destroyed or returned any copies.

55.    Ameriprise has unjustifiably refused to comply with this requirement and therefore is in breach of the MLA.

56.    Ameriprise's breaches—coupled with its continued refusal to stop providing Infosys and TCS with access to Versata's software and other confidential information- create a high risk of irreparable harm to Versata.

**B.    Specific Performance**

57.    Versata incorporates the foregoing paragraphs as if fully set forth here.

58.    . The MLA requires Ameriprise to stop using Versata's software and confidential information, to return all of this software and other confidential information to Versata, and to certify that it has destroyed or returned any copies. This obligation survives Versata's rightful termination of the contract.

8

59.   To date Ameriprise has refused to stop using Versata software and confidential information, has refused to return the software and other confidential information to Versata and has not certified that it has destroyed or returned any copies.

60.   Versata would therefore ask the court to order Ameriprise to specifically perform these obligations under the MLA.

**C.**   **Declaratory Judgment**

61.   Versata incorporates the foregoing paragraphs as if fully set forth here.

62.   For the reasons set forth above, Versata seeks a declaration as follows: (a) that TCS and Infosys are not a permitted contractors under the MLA (§ 4.8); (b) that Ameriprise has breached the MLA (§ 12.2) by failing to stop using Versata's software, by failing to return this software and other confidential information to Versata, and by failing to certify that it has destroyed or returned any copies; (c) That Ameriprise has breached the MLA (§10.1) by failing to secure adequate confidentiality agreements from Infosys, TCS, and from their respective employees and contractors.

**D.**   **Attorneys' Fees**

63.   Versata incorporates the foregoing paragraphs as if fully set forth here.

64.   As a result of Ameriprise's wrongful conduct, Versata has been required to retain counsel to prosecute this action.  Consequently, in accordance with Sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code, Versata is entitled to recover its costs and reasonable and necessary attorney's fees from Ameriprise.

**E.**   **Conditions**

65.   Versata incorporates the foregoing paragraphs as if fully set forth here.

66.   All conditions precedent have been met or have occurred.

### Application for Temporary Injunction

67.   In accordance with Section 65.011 of the Texas Civil Practice and Remedies Code, Versata is entitled to injunctive relief and requests a temporary injunction from the Court ordering Ameriprise to cease allowing Infosys and TCS to use Versata's "Software" as that term is defined in the MLA including any source code, object code, product documentation, or other materials related to Versata's Software.

68.   Versata is likely to prevail on its claims after a trial on the merits.

69.   Because of the imminent threat posed to Versata's confidential information and Versata's rights under the MLA Versata will be irreparably harmed and have no adequate remedy at law if this injunction request is not granted.

70.   Versata is willing to provide security in the amount that this Court deems appropriate in accordance with Texas Rule of Civil Procedure 684.

### Application for Permanent Injunction

71.   Versata incorporates the foregoing paragraphs as if fully set forth here.

72.   Versata requests a permanent injunction ordering Ameriprise (a) to cease using Versata's enterprise software and confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software; and (b) to return to Versata or destroy all copies of Versata's enterprise software and confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software.

### Jury Demand

73.   Plaintiffs hereby demand a trial by jury and have tendered the appropriate fee.

10

AZA Law                    Fax:7136550062          Nov  8 2013 04:25pm  P028/047

### Requests for Disclosure to Defendants

74.   Pursuant to Texas Rule of Civil Procedure 194, Defendants are requested to disclose within fifty (50) days of service of this request the information and material described in Rule 194.2(a) through (1).

### PRAYER FOR RELIEF

For these reasons, Plaintiffs respectfully request that the Court:

a.   enter judgment in favor of Versata and against Ameriprise on all claims asserted by Versata;

b.   issue a judicial declaration that Ameriprise has breached the MLA.

c.   issue a temporary injunction ordering Ameriprise to cease providing or permitting Infosys and TCS access to Versata's confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software.

d.   issue a permanent injunction ordering Ameriprise (a) to cease using Versata's enterprise software and confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software; and (b) to return to Versata or destroy all copies of Versata's enterprise software and confidential information, including any source code, object code, product documentation, or other materials related to Versata's enterprise software;

e.   award Versata its reasonable and necessary attorney's fees and expenses;

f.   award Versata all costs of court;

g.   award Versata all actual and punitive damages; and

h.   grant all other relief to which Versata may show it is justly entitled.

11

Date: 05/03/2013                    Respectfully submitted,

                                    AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
                                    P.C.

                                    /s/ Benjamin F. Foster
                                    Demetrios Anaipakos
                                    State Bar No. 00793258
                                    Amir Alavi
                                    State Bar No. 00793239
                                    Steven J. Mitby
                                    State Bar No. 27037123
                                    Benjamin F. Foster
                                    State Bar No. 24080898
                                    1221 McKinney Street, Suite 3460
                                    Houston, Texas 77010
                                    Telephone: (713) 655-1101
                                    Facsimile: (713) 655-0062


                                    MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.


                                    /s/ Benjamin F. Foster
                                    Travis Barton
                                    State Bar No. 00790276
                                    600 Congress Avenue, Suite 2100
                                    Austin, Texas 78701
                                    Telephone: (512) 495-6000
                                    Facsimile: (512) 495-6093
                                    ATTORNEYS FOR PLAINTIFFS

12

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via certified mail, return receipt requested and/or via facsimile and/or via hand-delivery on May 3, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

                                        /s/ Benjamin F. Foster
                                        Benjamin F. Foster

4836-7402-1907, v. 1

13

** Transmit Confirmation Report **

P.1
Line Number:2
AZA Law Fax:7136550062

May 3 2013 05:58pm

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 916123402868 | Normal | 03,05:50pm | 7'19" | 14 | O K | |




1221 McKinney, Suite 3460
Houston, Texas 77010
Main 713.655.1101
Fax 713.655.0062
AZALAW.COM

# FAX COVER

Date: May 3, 2013 File No: TLG018

To: Steve McConnico, Christopher D. Sileo — Fax No: 512.474.0731

To: Travis Barton — Fax No: 512.495.6093

To: Peter M. Lancaster, Heather D. Redmond — Fax No: 612.340.2868

From: Benjamin F. Foster

Total pages including cover: 14

**MESSAGE**

**Attached is Plaintiffs' First Amended Complaint and Application for Preliminary Injunction which was filed today with the court.**

*Notice of Confidentiality:*
The information contained in and transmitted with this facsimile is
1. SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE;
2. ATTORNEY WORK PRODUCT; or
3. CONFIDENTIAL.
It is intended only for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, or use of or reliance upon the information contained in and transmitted with this facsimile by or to anyone other than the recipient designated above by the sender is *unauthorized and strictly prohibited*. If you have received this facsimile in error, please notify Ahmad, Zavitsanos, Anaipakos, Alavi, Mensing, P.C., by telephone at (713) 655-1101 immediately. Any facsimile erroneously transmitted to you should be immediately returned to the sender by U.S. Mail or, if authorization is granted by the sender, destroyed.

4822-1616-4370, v. 1

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL NICHOLE AT 713.600.4930 FOR ASSISTANCE.

## ** Transmit Confirmation Report **

P.1
Line Number:2                                           May  3 2013 05:59pm
AZA Law              Fax:7136550062

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915124956093 | Normal | 03,05:58pm | 0'21" | 14 | # O K | |



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

1221 MCKINNEY, SUITE 3460
HOUSTON, TEXAS 77010
MAIN 713.655.1101
FAX 713.655.0062
AZALAW.COM

## FAX COVER

Date: May 3, 2013                          File No: FLG018

To:   Steve McConnico                      Fax No: 512.474.0731
      Christopher D. Silco

To:   Travis Barton                        Fax No: 512.495.6093

To:   Peter M. Lancaster                   Fax No: 612.340.2868
      Heather D. Redmond

From: Benjamin F. Foster

Total pages including cover: 14

### MESSAGE

Attached is Plaintiffs' First Amended Complaint and Application for Preliminary Injunction which was filed today with the court.

Notice of Confidentiality:
The information contained in and transmitted with this facsimile is
1. SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE
2. ATTORNEY WORK PRODUCT; or
3. CONFIDENTIAL

It is intended only for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, or use of or reliance upon the information contained in and transmitted with this facsimile by or to anyone other than the recipient designated above by the sender is unauthorized and strictly prohibited. If you have received this facsimile in error, please notify Ahmad, Zavitsanos, Anaipakos, Alavi, Mensing, P.C., by telephone at (713) 655-1101 immediately. Any facsimile erroneously transmitted to you should be immediately returned to the sender by U.S. Mail or, if authorization is granted by the sender, destroyed.

4822-1616-4370, v. 1

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL NICHOLE AT 713.600.4930 FOR ASSISTANCE.

## \*\* Transmit Confirmation Report \*\*

P.1
Line Number:2                                           May  3 2013 05:50pm
AZA Law          Fax:7136550062

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915124740731 | Normal | 03,05:48pm | 1'41" | 14 | # O K | |



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

1221 McKINNEY, SUITE 3460
HOUSTON, TEXAS 77010
MAIN 713.655.1101
FAX 713.655.0062
AZALAW.COM

## FAX COVER

Date: May 3, 2013                                        File No: TLG018

To: Steve McConnico                                      Fax No: 512.474.0731
    Christopher D. Sileo

To: Travis Barton                                        Fax No: 512.495.6093

To: Peter M. Lancaster                                   Fax No: 612.340.2868
    Heather D. Redmond

From: Benjamin F. Foster

Total pages including cover: 14

### MESSAGE

Attached is Plaintiffs' First Amended Complaint and Application for Preliminary
Injunction which was filed today with the court.

Notice of Confidentiality:
The information contained in and transmitted with this facsimile is
1. SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE
2. ATTORNEY WORK PRODUCT; or
3. CONFIDENTIAL

It is intended only for the individual or entity designated above. You are hereby notified that any
dissemination, distribution, copying, or use of or reliance upon the information contained in and
transmitted with this facsimile by or to anyone other than the recipient designated above by the
sender is unauthorized and strictly prohibited. If you have received this facsimile in error, please
notify Ahmad, Zavitsanos, Anaipakos, Alavi, Mensing, P.C. by telephone at (713) 655-1101
immediately. Any facsimile erroneously transmitted to you should be immediately returned to the
sender by U.S. Mail or, if authorization is granted by the sender, destroyed.

A822-1616-4370, v. 1

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL NICHOLE AT 713.600.4730 FOR ASSISTANCE.

AZA Law                  Fax:7136550062            Nov  8 2013 04:25pm  P034/047



## Filing Confirmation

Thank you for your order. Your confirmation number is 3080026.

**What you can expect next:**

- If necessary, we will convert your filing documents to PDF format.
- We will submit your order to Texas.gov eFiling for Courts.
- Upon receipt by Texas.gov, you will receive a confirmation email.

**Check the status of your order anytime in the Inbox.**

Phone: (800) 938-8815   E-mail: support@onelegal.com
Support hours: 8:15 a.m. to 5:30 p.m. PST                        Privacy Policy

AZA Law            Fax:7136550062            Nov  8 2013 04:25pm  P035/047

# EXHIBIT D

| From: | Steve Mitby |
|-------|-------------|
| To: | Robert I. Steiner (rsteiner@kelleydrye.com) |
| Cc: | Amir Alavi; Benjamin Foster; Travis C. Barton (tcbarton@mcginnislaw.com) |
| Subject: | TCS subpoena |
| Date: | Thursday, October 10, 2013 12:16:00 PM |

Rob,

Hope you had a safe trip back from India.  I am following up on the TCS deposition and document production.  We would like to have a specific deadline for the production and the deposition by the middle of next week.  I am available this week and early next week if you'd like to discuss any issues.

Thanks,

Steve

Steven J. Mitby

Partner

Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.

1221 McKinney, Suite 3460

Houston, Texas 77010

713-600-4910

# EXHIBIT E

AZA Law                    Fax:7136550062           Nov  8 2013 04:25pm  P038/047

## SUBPOENA DEPOSITION TO TESTIFY AND/OR PRODUCE DOCUMENTS OR THINGS

### THE STATE OF TEXAS

To any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under **RULE 176 OF TEXAS RULES OF CIVIL PROCEDURE. - GREETINGS -**

You are hereby commanded to subpoena and summon the following witness(es):

    Corporate Representative of Tata Consulting Services, LTD
    Registered Agent: CT Corporation System
    350 N. St. Paul St., Ste 2900
    Dallas, Texas 75201-4234

    **YOU ARE COMMANDED** to be and appear at a deposition and to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects): **SEE ATTACHED EXHIBIT "A & B":**

    McKool Smith
    300 Crescent Court, Suite 1500
    Dallas, Texas 75201

    on <u>Monday, September 30, 2013 at 9:00 a.m.</u>

    then and there to give evidence at the instance of the Plaintiffs, <u>Versata Software, Inc., f/ak/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc.</u> represented by <u>Steven J. Mitby</u>, Ahmad, Zavistsanos, Anipakos, Alavi, & Mensing P.C., 1221 McKinney Street, Suite 3460, Houston, Texas 77010 (713) 655-1101, Attorney of Record, in that Certain Cause No. <u>D-1-GN-003588</u> pending on the docket of the <u>53rd Judicial District Court of Travis County, Texas.</u> This Subpoena is issued under and by virtue of Rule 199.2, Texas Rules of Civil Procedure, and Petitioner's Notice of Intention to take Oral Deposition and Subpoena Duces Tecum on file with the above named court, styled:

        VERSATA SOFTWARE, INC., F/AK/A
        TRILOGY SOFTWARE, INC., and
        VERSATA DEVELOPMENT GROUP,
        INC., F/K/A TRILOGY DEVELOPMENT
        GROUP, INC.

        v.

        AMERIPRISE FINANCIAL, INC.,
        AMERIPRISE FINANCIAL SERVICES,
        INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC.

and there to remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this 11th day of September, 2013.

> N ELENA FERRETIZ DIAZ
> Notary Public, State of Texas
> My Commission Expires
> February 06, 2017

                                NOTARY PUBLIC

**176.8 Enforcement of Subpoena. (a) Contempt.** Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

### OFFICER'S RETURN

Came to hand this ___11___ day of ___September___, 2013, at ___3:05___ p.m. and executed this the ___11___ day of ___September___, 2013, at ___2:25___ p.m. in the following manner: By delivering to the witness

 ___Tata Consulting Services LTD___, a true copy hereof.

C/O CT corporation

Returned this ___12___ day of ___September___, 2013.

                ___Jennifer Duddington/refused___
                SIGNATURE of WITNESS

                ___J.T. - Vince Carrocia SCM305___
                PROCESS SERVER

## AFFIDAVIT OF SERVICE

State of Texas                 County of Travis                 53rd Judicial District Court

Case Number: D-1-GN-003586   Court Date: 9/30/2013  9:00 am

Plaintiffs:
**Versata Software, Inc., F/K/A Trilogy Software, Inc.; And Versata
Development Group, Inc., F/K/A Trilogy Development Group, Inc.**
vs.
Defendants:
**Ameriprise Financial, Inc., Ameriprise Financial Services, Inc.,
American Enterprise Investment Services, Inc.**

For:
Ahmad Zavitsanos Anaipakos Alavi, Mensing, P.C.
1221 McKinney Street
Suite 3460
Houston, TX 77010

Received by Express Litigation Services on the 10th day of September, 2013 at 3:05 pm to be served on **Tata
Consultancy Services, LTD. C/O CT Corporation System; Registered Agent, 350 North Saint Paul Street,
Suite 2900, Dallas, Dallas County, TX 75201.**

I, Vince Carroccia, being duly sworn, depose and say that on the **10th day of September, 2013 at 3:25 pm, I:**

Delivered to the within named Corporation a true copy of the Subpoena Deposition To Testify And/Or Produce
Documents Or Things With Plaintiffs' Notice Of Intention To Take The Deposition Of The Corporate
Representative Of Tata Consultancy Services, LTD. With Exhibits A And B With $11 Witness Fee with the date of
service endorsed thereon by me, to C.T. Corporation System. as Registered Agent and received by their
designated agent for acceptance of service of process Jennifer Duddington and informing said person of the
contents thereof.

I certify that I am over the age of 21 and have no interest in the above action and competent to testify. I am an
Authorized Process Server in good standing. I have never been convicted of a felony or misdemeanor involving
moral turpitude in any state. I have studied and am familiar with the Texas Rules of Court, Vernon's Civil Statutes,
and the Texas Rules of Civil Procedure regarding service of process. All statements contained herein are based on
my personal knowledge are true and correct.

Subscribed and Sworn to before me on the 11th day
of September, 2013 by the affiant who is personally
known to me.

NOTARY PUBLIC

Norman Lee Collins
Notary Public,
State of Texas
Comm. Exp. 05-24-15

Vince Carroccia
SCH305, EXP. 12/31/13

**Express Litigation Services**
530 Prairie Lane
Mesquite, TX 75150
**(214) 744-1981**

Our Job Serial Number: PEL-2013002065
Ref: 13603.001

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.8n

AZA Law                    Fax:7136550062          Nov  8 2013 04:26pm  P040/047

NO. D-1-GN-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., F/K/A | § | IN THE DISTRICT COURT OF |
| TRILOGY SOFTWARE, INC.; and | § | |
| VERSATA DEVELOPMENT GROUP, | § | |
| INC., F/K/A TRILOGY DEVELOPMENT | § | |
| GROUP, INC. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | 53rd JUDICIAL DISTRICT |
| AMERIPRISE FINANCIAL, INC., | § | |
| AMERIPRISE FINANCIAL SERVICES, | § | |
| INC., AMERICAN ENTERPRISE | § | |
| INVESTMENT SERVICES, INC. | § | |

## PLAINTIFFS' NOTICE OF INTENTION TO TAKE THE DEPOSITION OF THE CORPORATE REPRESENTATIVE OF TATA CONSULTANCY SERVICES, LTD.

TO:    Defendants, by and through their attorneys of record, Peter M. Lancaster and Heather D. Redmond, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402-1498; and Stephen McConnico and Christopher D. Sileo, Scott, Douglass & McConnico, LLP, 600 Congress Avenue, Suite 1500, Austin, Texas 78701 and Third Party McCamish Systems, LLC through their attorneys of record, Tommy Jacks, Fish & Richardson P.C., One Congress Plaza Suite 810, 111 Congress Avenue, Austin, Texas, 78701.

Please take notice that, under Texas Rule of Civil Procedure 200, Plaintiffs Versata

Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy

Development, Inc. (collectively, "Versata") will take the oral and videotaped deposition of the

Corporate Representative of Tata Consultancy Services, Ltd. ("TCS"), on the topics listed on

Exhibit A at 9:00 a.m. on September 30, 2013, at the offices of McKool Smith, 300 Crescent

Court, Suite 1500, Dallas, Texas, 75201.  The topics for examination are listed on Exhibit A.

1

Please also take notice that, under Texas Rule of Civil Procedure 176.2, TCS is requested to produce the documents listed on **Exhibit B** to Sam Baxter at the offices of McKool Smith, 300 Crescent Court, Suite 1500, Dallas, Texas, 75201 on or before September 25, 2013.

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.

_/s/ Steven J. Mitby_
Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas  78701
Telephone:  (512) 495-6000
Facsimile:  (512) 495-6093
ATTORNEYS FOR PLAINTIFFS

2

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via facsimile on September 11, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

McCamish Systems, LLC
c/o Tommy Jacks
Fish & Richardson
One Congress Plaza, Suite 810
111 Congress Avenue, Austin, Texas 78701
(512) 226-8171 (Telephone)
(512) 320-8935 (Facsimile)

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

_/s/ Steven J. Mitby_
Steven J. Mitby

3

**Exhibit A**
**<u>CORPORATE REPRESENTATIVE TOPICS</u>**

1.  The contractual and business relationships between Tata Consultancy Services, Ltd., as well as its subsidiaries, affiliates, and parents, (collectively, "TCS") and Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and American Enterprise Investment Services, Inc., as well as their subsidiaries, affiliates, and parents (collectively, "Ameriprise").

2.  The work performed by TCS for Ameriprise that relates to development, maintenance, or support for any enterprise configuration and/or compensation software or any software that assists a corporation in structuring and classifying its different contractors, employees or agents.

3.  The names of the software programs that TCS develops and markets that perform enterprise configuration or compensation functions or any software that assists a corporation in structuring and classifying its different contractors, employees or agents.

4.  Whether any of the following software programs perform configuration or compensation functions or whether any of the following software programs assist a corporation in structuring and classifying its different contractors, employees or agents. As well as whether TCS has developed and marketed the following software programs.

    a.  TCS Human Capital Management Platform
    b.  TCS HRO Platform
    c.  TCS BPO Solutions
    d.  TCS Analytics platform
    e.  TCS Automotive Retail Accelerator Solution
    f.  TCS Hosted OSS/BSS
    g.  TCS BaNCS and the Insurance, Property & Casualty, and Life & Pension Solutions from TCS BaNCS

5.  The features and functionality of any enterprise configuration and/or compensation software that TCS develops and markets and the features and functionality of any software programs that assist a corporation in structuring and classifying its different contractors, employees or agents.

4

### Exhibit B
### SUBPOENA DUCES TECUM

1.  Documents sufficient to identify the types of enterprise configuration and/or compensation software or any software that assists a corporation in structuring and classifying its different contractors, employees or agents that TCS develops and markets.

2.  Documents sufficient to identify whether the following software programs that assist a corporation in structuring and classifying its different contractors, employees or agents and whether any of the following software programs perform any enterprise configuration and/or compensation functions:

    a.  TCS Human Capital Management Platform
    b.  TCS HRO Platform
    c.  TCS BPO Solutions
    d.  TCS Analytics platform
    e.  TCS Automotive Retail Accelerator Solution
    f.  TCS Hosted OSS/BSS
    g.  TCS BaNCS and the Insurance, Property & Casualty, and Life & Pension Solutions from TCS BaNCS

3.  Documents sufficient to identify the features and functionality of any software programs that assist a corporation in structuring and classifying its different contractors, employees or agents.

4.  Documents sufficient to identify the features and functionality of any enterprise configuration and/or compensation software programs that TCS develops and markets, including but not limited to the software programs listed above.

5

TRILOGY SOFTWARE, INC.; and §
VERSATA DEVELOPMENT GROUP, §
INC., F/K/A TRILOGY DEVELOPMENT §
GROUP, INC. §
§
          **Plaintiffs,** §
§
v. §                  **OF TRAVIS COUNTY, TEXAS**
§
AMERIPRISE FINANCIAL, INC., §
AMERIPRISE FINANCIAL SERVICES, §
INC., AMERICAN ENTERPRISE §
INVESTMENT SERVICES, INC. §         **53rd JUDICIAL DISTRICT**
§
          **Defendants.** §

## ORDER GRANTING MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO TATA CONSULTANCY SERVICES LTD.

On this day came on for consideration Plaintiffs' Motion to Compel Compliance with Subpoena to Tata Consultancy Services, Ltd., the responses, if any, and the arguments of counsel and finds the motion should be granted. It is, therefore,

ORDERED, ADJUDGED and DECREED that Tata Consultancy Services Ltd. shall produce the requested documents within _____ days of the date of this order It is further,

ORDERED, ADJUDGED and DECREED that Tata Consultancy Services Ltd. shall produce a corporate representative for deposition who is knowledgeable about the topics listed in the deposition subpoena within _____ days of the date of this order.

SIGNED this _____ day of _____, 2013.

_____
TRAVIS COUNTY DISTRICT JUDGE

4820-9072-1045, v. 1

AZA Law                    Fax:7136550062              Nov  8 2013 04:26pm  P045/047

## CAUSE NO. D-1-GN-12-003588

**VERSATA SOFTWARE, INC. F/K/A**                    §            **IN THE DISTRICT COURT**